## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
**Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
**Defendants**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

### I.    INTRODUCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the plaintiff, Kleenit, Inc. ("Kleenit") has moved this Court for a preliminary injunction against three of the four named insurance company defendants (i.e., Royal & SunAlliance ("Royal"), Utica National Insurance Group ("Utica"), and Travelers Property & Casualty ("Travelers")[1])[2] seeking immediate payment from the insurers, pursuant to applicable policies and defense commitments, of all outstanding defense-related costs and expenses ($150,386.17 to date of which $106, 571.36 is unpaid) incurred by Kleenit in defending two Notices of Responsibility ("NORs") enforcement

---

[1]    Royal, Utica and Travelers are referred to hereinafter collectively as the "Three Defendants".

[2]    By not presently seeking injunctive relief against the fourth insurer, Sentry Insurance Company ("Sentry"), Kleenit does not waive any rights or claims against Sentry, such rights and claims being specifically reserved.

actions issued by the Massachusetts Department of Environmental Protection ("DEP") under the Commonwealth of Massachusetts "Superfund" statute, M.G.L. c. 21E. See, Second Affidavit of Keith Crider, ¶¶ 3,4.

The Three Defendants have paid only 29%, or $43,814.81, of Kleenit's documented environmental defense costs. One insurer, Royal, failed over sixteen (16) months to pay any of Kleenit's defense costs, despite its own written agreement to make timely payments, and when it finally made one payment after 485 days, it *paid only $573, or only 0.4%,* of Kleenit's documented defense costs. Royal, Utica and Travelers have refused to pay any *pre-tender* defense costs despite Massachusetts' established appellate case law holding that insurers are required to pay pre-tender defense costs absent proof of "actual prejudice," which proof has not been attempted, let alone made, by the Defendants in this case.

Furthermore, $65,522.97, or two-thirds, of the $106,571.36 of un-reimbursed defense costs is attributable to *post-tender* costs. The Three Defendants have not paid *any* pre-tender *or post-tender* attorneys fees incurred by Kleenit in defense of the NORs.

The Three Defendants' wrongful refusal to pay significant pre-tender and post-tender defense costs, including pre- and post-tender attorneys' fees, has forced Kleenit to shoulder 100% of such costs, which, in turn, threatens to wipe out Kleenit's dry-cleaning and laundering business. Furthermore, lacking reimbursement from the Defendants, Kleenit is not able to pay vendors, which causes irreparable harm to Kleenit's business reputation and hampers Kleenit's ability to comply with the NORs and M.G.L. c.21E.

A preliminary injunction requiring payment of all outstanding pre-tender and post-tender defense costs, totaling approximately $150,386.17 of which $106,571,36 is unpaid, will prevent irreparable harm to Kleenit's business and reputation. In addition, due to the Three Defendants'

2

unreasonable delays in making even *post-tender* defense payments, including attorneys' fees, the Defendants should be required to pay all future invoices for such costs within fourteen (14) days of being invoiced by Kleenit. Finally, in accordance with Massachusetts case law, the Three Defendants should be required to immediately pay Kleenit's claim-related and litigation costs, including attorneys' fees, to establish the Three Defendants' defense obligations under the policies.

## II.    STATEMENT OF FACTS

Kleenit relies upon and incorporates herein by reference the Statement of Facts set forth in its Memorandum of Law in Support of Plaintiff's Emergency Motion for Preliminary Injunction, and the Affidavit of Keith Crider and Affidavit of Peter J. Feuerbach in support thereof, that were filed with the Commonwealth of Massachusetts Middlesex Superior Court and have been filed with this Court following the defendants' removal of this case to the United States District Court.

In addition, Kleenit states that the drycleaning industry in which Kleenit operates has suffered very difficult economic times over the past several years. The industry has suffered from lower demand due to less formal business attire, increased price competition, and the regional economic recession. (See, Second Affidavit of Keith Crider, ¶ 5, filed herewith.) The extremely difficult business environment has forced many drycleaners to close even without facing the extreme financial pressure experienced by Kleenit due to the NORs and the Three Defendants' failure over the past seventeen months to make complete and timely defense payments to Kleenit. (Id.)

In addition to the irreparable harm specified in Kleenit's Massachusetts Superior Court papers[3], since commencing this lawsuit, Kleenit has been forced to plan for the disposition of business assets, including the sale of its business operations, in an attempt to carry itself through the extremely difficult business environment that has been compounded by the Three Defendants' failure to provide complete and timely reimbursements of defense costs incurred by Kleenit in response to the underlying NORs. (Id. at ¶ 6.)

As of the date of the Second Affidavit of Keith Crider, Kleenit has incurred approximately $150,386.17 in defense related expenses, $53,356.14 in claim related expenses, $22,352.24 in indemnity (clean-up) related expenses, for a total of $226,094.54 in expenses associated with the two subject sites located in Chelmsford and Acton, Massachusetts. (Id. ¶ 3) In contrast, Kleenit's insurance companies have only reimbursed $43,814.81, or merely 29%, of Kleenit's defense costs at the two sites, and still no payment for attorney's fees incurred in defending the subject NORs, clean-up, indemnification or claims. (Id.) The Three Defendants presently owe Kleenit $106,571.36 in defense costs based upon invoices presented for payment *one year ago* (March 11, 2003) and almost three months ago (December 24, 2003).

The Three Defendants waited until Kleenit filed its lawsuit before making timely defense payments to Kleenit. For instance, Royal failed over sixteen (16) months to pay any of Kleenit's defense costs and when it finally made one payment after 485 days, it *paid only $573, or only 0.4%,* of Kleenit's documented defense costs. *See,* Affidavit of Peter J. Feuerbach, Esq., Tab 18. In the 29 days since receiving Kleenit's Complaint and Motion for Preliminary Injunction, Royal has "accelerated" its payments by providing eleven checks to Kleenit. (Second Crider Aff. ¶ 4.)

---

[3]     See, Kleenit's Memorandum of Law in Support of Plaintiff's Emergency Motion for Preliminary Injunction, pp. 4-7, 11-14.

However, by totaling only $5,711.98, or 3%, of Kleenit's total defense costs, those checks still represent a "pennies on the dollar" settlement offer. (Id.)

## III.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION STANDARD

The standard for obtaining a preliminary injunction is well established in this district. Hannon v. Allen, 241 F.Supp.2d 71, 73 (D.Mass. 2003). "The court is required to weigh four factors. The first is whether the plaintiff has shown a likelihood of success on the merits. The second is whether the plaintiff has established an imminent threat of irreparable harm in the absence of a preliminary injunction. The court is also required to balance the hardship to the plaintiff if no injunction is issued against the hardship to the defendants if the requested injunction is ordered. In addition, the court must consider the effect of the proposed injunction on the public interest." Id. (citations omitted); McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001) ("A party who seeks a preliminary injunction must show: (1) that she has a substantial likelihood of success on the merits; (2) that she faces a significant potential for irreparable harm in the absence of immediate relief; (3) that the ebb and flow of possible hardships are in favorable juxtaposition (i.e., that the issuance of an injunction will not impose more of a burden on the nonmovant than its absence will impose on the movant); and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest"), citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996) ("Over time, we have crafted a four-part framework for use in determining whether the grant or denial of preliminary injunctive relief is appropriate. Under this formulation, trial courts must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of

the court's ruling on the public interest") and Narragansett Ind. Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).

Of these four familiar factors, likely success on the merits is the most important. See SEC v. Fife, 311 F.3d 1, 8 (1st Cir. 2002) ("The 'sine qua non' of a preliminary injunction analysis is whether the plaintiff is likely to succeed on the merits of its claim"), quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); Hannon v. Allen, 241 F.Supp.2d at 73 ("As the Court of Appeals for the First Circuit has said on a number of occasions, the likelihood of success on the merits is of primary importance.  It is the sine qua non for obtaining a preliminary injunction") (citations omitted).  "If a great showing of likely success on the merits is made by a plaintiff, a reduced showing of irreparable harm may be appropriate." Hannon v. Allen, 241 F.Supp.2d at 73.

Massachusetts applies a similar standard when ruling on a motion for preliminary injunction.  See, Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Kleenit meets this standard, as fully briefed in its Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction filed with Massachusetts Superior Court, which is now docketed with this Court, and respectfully requests that this Court refer to that Memorandum of Law regarding Kleenit's demonstration that it has met the standard to obtain a preliminary injunction.  See, Memorandum of Law in Support of Plaintiff's Emergency Motion for Preliminary Injunction, pp. 10-24.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to grant its Emergency Motion for Preliminary Injunction.

Respectfully submitted,

KLEENIT, INC.

By its Attorney,

Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970

Date: March 19, 2004