UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC. <br><br> Plaintiff, <br><br> v. <br><br> SENTRY INSURANCE COMPANY, ROYAL & SUNALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY, <br><br> Defendants. | CIVIL ACTION NO. 04-10351 (NG) |

### DEFENDANTS GLOBE INDEMNITY COMPANY'S AND ROYAL INSURANCE COMPANY OF AMERICA'S OPPOSITION TO KLEENIT'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Kleenit's request for a preliminary injunction against Globe Indemnity Company and Royal Insurance Company of America (collectively "Royal")[1] is based on neither the facts nor the law.[2] Rather, Kleenit relies on inflammatory rhetoric in an attempt to avoid the following points:

1. Kleenit's request for relief assumes the existence and applicability of insurance coverage. Yet Kleenit has not even provided the Court with the Royal policy or policies which it contends provides coverage for its pollution liability at the Chelmsford and Acton sites.

2. Royal is not obligated to reimburse Kleenit for costs incurred prior to tendering

---

[1] Kleenit also named "Royal & SunAlliance" as a defendant. As set forth in the insurers' notice of removal, Royal & SunAlliance is not a legal entity capable of being sued.

[2] Kleenit has also filed a Motion to shorten to seven days Royal's time to respond to the preliminary injunction. Royal does not oppose the motion to shorten its time to respond.

this matter to Royal regardless of whether Kleenit's notice was late and regardless of whether Royal suffered prejudice.

3. Royal has never denied **coverage** based on late notice or breach of the voluntary payments provision.

4. The only Royal policy at issue (which was discovered by Royal, not Kleenit) excludes coverage for pollution, such as that at issue in this case, unless the pollution was the result of a "sudden and accidental" discharge. There is no evidence whatsoever that Kleenit's pollution liability arises from such a discharge.

5. Royal, Utica and Travelers have agreed to reimburse 100% of Kleenit's post-tender defense costs notwithstanding serious questions regarding the existence of coverage for Kleenit's pollution liability.

Despite this, Kleenit seeks a preliminary injunction which: 1) requires Royal to pay Kleenit's pre-tender defense costs; 2) voids Royal's ability to challenge the propriety of post-tender defense costs; 3) may seek a ruling that Royal must indemnify Kleenit for its pollution liability;[3] and 4) awards Kleenit its attorneys fees. Kleenit's position is insupportable.

## STATEMENT OF FACTS

On September 25, 2002, Kleenit's counsel sent Royal two letters providing initial notice of its claims for defense and indemnification with respect to environmental contamination arising from dry cleaning operations located in Chelmsford and Acton, respectively. [Feuerbach Aff., Tabs 1 and 2] With respect to the Chelmsford site, Kleenit enclosed a Notice of Responsibility

---

[3] There is a significant ambiguity inherent in Kleenit's pending motion. In its Motion for a Preliminary Injunction filed with this Court, Kleenit appears to seek relief only with respect to defense costs (both pre- and post-tender) as well as attorneys fees, but not indemnity costs. However, Kleenit's State Court papers, upon which Kleenit relies in bringing the present motion, sought relief with respect to indemnity costs, as well as the defense costs and attorneys fees issues noted above. Thus, Royal's opposition addresses all the claims identified in Kleenit's State Court papers, including indemnity costs.

("NOR") issued by the Massachusetts Department of Environmental Protection ("DEP") on January 2, 2001, roughly twenty months earlier. [Feuerbach Aff., Tab 1 at Ex. 3] With respect to the Acton site, Kleenit enclosed a private party demand letter from Kleenit's landlord dated August 14, 2002. [Feuerbach Aff., Tab 2 at Ex. 3] On October 29, 2002, Kleenit submitted a Release Notification Form to the DEP regarding the Acton site. [Feuerbach Aff., Tab 7][4]

The NOR pertaining to the Chelmsford site indicates that in 1979 pollutants were detected in Chelmsford's municipal supply wells, and that contaminants have been "sporadically" detected since that time. [Feuerbach Aff., Tab 1 at Ex. 3] In August 2000, the DEP drilled monitoring wells which identified contaminants in the groundwater and which, based on the location of the wells and groundwater flows, the DEP believes are attributable to some extent to Kleenit's Chelmsford operations. [Id.] There is no suggestion of any specific discharge of contaminants which caused this contamination. [Id.]

With respect to the Acton site, the NOR from the DEP states that Kleenit has identified a "release" of hazardous substances resulting in the presence of pollutants in the soil. [Feuerbach Aff., Tab 7] Although Kleenit has not provided the Release Notification Form referenced by the NOR, in order for this "release" to implicate Royal's coverage it must meet the definition of "sudden and accidental" set forth in Lumbermens Mut. Cas. Co. v. Belleville Industries, Inc., 407 Mass. 675, 680-681, 555 N.E.2d 568, 572 (1990) and have occurred before the October 1, 1985 expiration of the only potentially applicable Royal policy. [See infra at pp. 9-10, 13] Kleenit has never attempted to make such a showing.

In its September 25, 2002 letters to Royal, Kleenit claimed coverage under certain policy numbers, but did not include copies of the policies. [Feuerbach Aff., Tabs 1 and 2] Kleenit did

---

[4] Tab 7 is to the Feuerbach Affidavit is the NOR from the DEP regarding the Acton site which references the requirement to submit a Notice of Release Form from Kleenit. Kleenit did not submit the notice of release with its motion.

3

provide certain specimen forms which it contended were applicable to Royal's coverage.[5] [Id.]

By letters dated October 2, 2002, Royal acknowledged Kleenit's claims at Chelmsford and Acton and agreed to investigate the claims under a full reservation of rights. [Vasiloff Aff., Exs. 1 and 2] As part of its investigation, Royal attempted to interview Kleenit's principal, Keith Crider, but was rebuffed in its efforts. [Vasiloff Aff., Ex. 3]

By letters dated December 16, 2002, Royal reiterated its request for a statement from Kleenit, and also advised Kleenit that Royal had not to date been able to locate copies of policies issued to Kleenit, and had not been provided sufficient information by Kleenit to reach a coverage determination. [Vasiloff Aff., Exs. 4 and 5]

Between December 2002 and April 2003, Kleenit did not provide any further information regarding the existence, terms or conditions of any alleged Royal policies. By letters dated April 1, 2003, Royal advised Kleenit that its policy search was continuing. [Vasiloff Aff., Exs. 6 and 7] Royal also advised Kleenit that, even if the specimen policy forms which Kleenit provided did supply the terms of Royal's coverage, these forms were clearly inapplicable to Kleenit's pollution liability claims. [Id.] The first form, a "SMP" policy form, is attached as part of the Feuerbach Affidavit, Tab 1 at Ex. 2 and Tab 2 at Ex. 2. Kleenit claimed coverage under Section I, Parts I and II of this form. [Feuerbach Aff., Tab 1] However, the referenced form clearly provides only first party property coverage, and not coverage for liabilities asserted by a third party against Kleenit. [Id., See Vasiloff Aff., Ex. 7] Kleenit also claimed coverage under a pollution liability coverage form **which Kleenit alleged** was in place from 1983-1985. [Feuerbach Aff., Tab 1 at Ex 2 and Tab 2 at Ex. 2] However, this form is a "claims made" form

---

[5] As set forth below, these specimen forms, even if they supplied the terms of Royal's policies, could not possibly provide the coverage sought by Kleenit.

4

which provides coverage for claims against Kleenit "provided that":

> (2) the claim for such damages is first made against the insured during the policy period and reported to the company during the policy period or within fifteen days after its termination.

Thus, under Kleenit's counsel's view of the applicable coverage, this form could apply only in the event that Chelmsford and Acton claims were asserted against Kleenit no later than January 15, 1986. The facts known then (and now) to Kleenit's counsel clearly establish that this is not the case. [See Feuerbach Aff., Tabs 1 and 2] Indeed, Kleenit has never challenged the conclusion that the SMP policy form and the claims made pollution liability coverage form under which it sought coverage are inapplicable.

After an exhaustive search, Royal ultimately located a number of policies issued to Kleenit. [Vasiloff Aff., Ex. 9][6] Royal produced these policies to Kleenit, and updated its coverage position. [Vasiloff Aff., Exs. 8 and 9] Significantly, with one exception, all of the policies contain Total or Absolute Pollution Exclusions (thus precluding any potential coverage) or provide coverage only for claims made during the policy period. With respect to these "claims made" policies, the policy periods had all expired well before any claim was made against Kleenit, thus negating any potential coverage. [Id. at Ex. 9]

The one exception is policy GYAD 36485 (10/1/84-10/1/85). This policy contains the following pollution exclusion:

This insurance does not apply:

> (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any

---

[6] These policies were actually found in an old claim file pertaining to Kleenit which was maintained in a warehouse storage facility.

5

>water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

[Vasiloff Aff., Ex. 10 at p. 11]

Despite the fact that Kleenit has never presented any evidence that its liability arises out of a "sudden and accidental" discharge of pollutants, Royal agreed to participate in Kleenit's defense under this policy. [Vasiloff Aff., Ex. 8]

Subsequently, at Kleenit's request, Kleenit and the insurers attempted to work out a cost sharing agreement which ultimately foundered on Kleenit's position that the carriers are liable for both pre- and post-tender defense costs. [See, eg., Feuerbach Aff., Tab 21][7] Royal, Travelers and Utica then advised Kleenit that they would reimburse Kleenit for 100% of its reasonable and necessary post-tender defense costs, with Travelers paying 47%, Utica paying 39% and Royal paying 14%. [Fuerbach Aff., Ex. 20; Vasiloff Aff., Ex. 11]

Kleenit has incurred slightly less than $67,000 in post-tender defense costs at the Acton and Chemlsford sites. [Feuerbach Aff., Tab 28] However, supporting documentation for $9,053.57 of this amount was not provided by Kleenit until March 4, 2004 and only because it was requested by Royal on March 2, 2004. [Vasiloff Aff., Exs. 12 and 13] Royal has paid $9,341.60 in post-tender defense costs, representing its share of all the post-tender defense costs submitted to the carriers to date. Kleenit's total pre-tender defense costs are roughly $84,000.

## ARGUMENT

I. **KLEENIT IS NOT ENTITLED TO PRE-TENDER DEFENSE COSTS.**

As noted, Kleenit did not tender the defense of the Chelmsford or Acton matters until September 25, 2002. As a matter of law, Kleenit cannot recover costs which it incurred prior to

---

[7] This issue surfaced as a point of contention even before Royal was able to locate copies of its policies. Feuerbach Aff., Tab 10.

6

tendering these matters to Royal.

The duty to defend is created by contract, and as such, it cannot arise "before the insurer has notice of the suit against the insured, or at the least of the underlying claim and the likelihood of suit." Hoppy's Oil Service, Inc. v. Insurance Company of North America, 783 F. Supp. 1505, 1509 (D. Mass. 1992) (Keeton, J.). Under this rule, it is clear that, assuming Royal has a duty to defend, it did not arise prior to September 25, 2002. Thus, costs incurred prior to this date cannot be within the scope of Royal's potential obligations.

This is the precise result reached by the Court in Managed Health Care Systems v. St. Paul Fire & Marine Insurance Company, 2001 WL 34114949 (D. Mass. 2001). In that case, the only issue was whether the costs incurred by the insured prior to tendering the suit to the insurer were recoverable. Id. at *2. There, as here, the insurer **did not** disclaim coverage based on late notice, but rather took the position that it should not be liable for the costs incurred prior to providing notice. In ruling that the insurer was not liable for those costs, the Managed Health Care Systems court explained why prejudice is not relevant:

> The prejudice requirement was adopted to prevent complete forfeiture based upon technical failure of the insured to provide timely notice. In contrast, enforcement of the rule that pre-tender defense costs are not recoverable does not result in complete forfeiture of an insured's right to recover fees. Rather, the rule gives the insured the choice of defending some or all of the claim on its own.[8]

Id. (quoting American Mutual Liability Ins. Co. v. Beatrice Companies, 924 F. Supp. 861, 873 (N.D. Ill. 1996) (applying Massachusetts law and ruling that insurer is not liable for pre-notice defense costs without regard to prejudice).

---

[8] Here, Kleenit admits that it made the decision to defend the claims on its own. Thus, at Paragraph 6 of his first affidavit, Mr. Crider states that he initially made the decision to handle the Chelmsford matter as an "ordinary operating expense." This was Mr. Crider's right, but the consequence is that he cannot require Royal or the other carriers to pick up the costs incurred while exercising this right.

7

This rule has been adopted in numerous other jurisdictions. Fireman's Fund Ins. Co. v. Ex-Cell-O Corp., 790 F. Supp. 1318, 1330 (D. Mich. 1991) (applying Michigan law); Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 333 (D.Pa. 1991) (applying Pennsylvania law); Great Am. Ins. Co. v. Aetna Cas. & Sur. Co., 876 P.2d 1314, 1319-20 (Haw. 1994) (applying Hawaii law); SL Indust. v. Amer. Motorists Ins. Co., 607 A.2d 1266, 1272-73 (N.J. 1992) (applying New Jersey law); Gully & Assoc., Inc. v. Wausau Ins. Co., 536 So. 2d 816, 818 (La. Ct. App. 1988) (applying Louisiana law); Towne Realty, Inc. v. Zurich Ins. Co., 548 N.W. 2d 64, 68 (Wis. 1996) (applying Wisconsin law); Legacy Partners, Inc. v. Travelers Indem. Co., 2003 WL 22905287, *4 (9th Cir. Dec. 9, 2003) (applying Texas law).

Kleenit attempts to avoid this rule by constructing a straw man – the argument that the insurers have not demonstrated prejudice and therefore cannot deny coverage based on late notice. [Kleenit's State Court Memorandum at pp. 16 - 20] However, the insurers have not denied **coverage** based on late notice, but rather refused to reimburse only Kleenit's pre-tender defense costs. As noted above, Royal is not required to pay such costs, regardless of prejudice. Beatrice Companies, 924 F. Supp. at 873.

Accordingly, the cases cited by Kleenit miss the mark. Kleenit devotes pages of its State Court Memorandum to the decisions in Atlas Tack Corp. v. Liberty Mutual Insurance Company, 48 Mass. App. Ct. 378 (1999); Employers Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465 (1997) and Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994).[9] Yet, it is clear from even the passages quoted by Kleenit that the issue in each of these cases was whether the insured's breach of a policy provision (either the notice or voluntary

---

[9] In American Mutual Liability Ins. Co. v. Beatrice Companies, Inc., supra, the court noted that Sarnafil did not even present the pre-tender defense costs issue for decision, since the facts demonstrated that there were no such costs at issue. 924 F. Supp. at 872-73.

8

payments provision) resulted in a complete forfeiture of coverage. [Kleenit's State Court Memorandum, pp. 16-19] Tellingly, not one of Kleenit's hand picked quotations addresses the narrower issue of whether the insurer can be held liable for pre-tender defense costs. As set forth above, the answer is no.

## II. KLEENIT IS NOT ENTITLED TO A RULING THAT ROYAL MUST INDEMNIFY KLEENIT.

As noted, in its State Court motion Kleenit sought "injunctive" relief on the issue of whether Royal is required to indemnify Kleenit for costs to remediate the pollution at the Chelmsford and Acton sites. Given Kleenit's continued reliance on its State Court motion papers, it is not entirely clear that this request has been withdrawn. If Kleenit has in fact withdrawn this request, it is because there is so little probability of Kleenit succeeding on the merits of its claim for indemnity costs.

As a threshold matter and as noted, Kleenit has not identified which Royal policy or policies it contends provides coverage for the pollution cleanup costs, much less submitted the contracts with its motion.[10] It is axiomatic under Massachusetts law that Kleenit bears the burden of proving the terms and existence of the insurance contracts under which coverage is sought. SCA Disposal Services of New England, Inc. v. Central Nat. Ins. Co. of Omaha, 1994 WL 879687, *9 (Mass. Super. Ct. Apr. 12 1994). See Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 230, 676 N.E.2d 801 (1997); Sonogram of New England, Inc. v. Metropolitan Property and Cas. Ins. Co., 2002 WL 731818, *2 (Mass. App. Div. Apr. 11, 2002). Kleenit's failure in this regard is fatal to all aspects of its motion.

---

[10] Incredibly, the only policy information submitted with Kleenit's motion are the patently inapplicable policy forms which Kleenit's counsel forwarded with the initial September 25, 2002 notice letters to Royal. If the Court were to rely only on this information, then Royal is entitled to judgment as a matter of law dismissing all of Kleenit's claims in this matter.

Kleenit's failure is also plainly deliberate. As noted above, after an exhaustive search, Royal located a number of policies issued to Kleenit, the earliest of which incepted in 1984. Only one of these polices, GYAD 36485 (10/1/84-10/1/85), has any potential coverage for the environmental claims against Kleenit, a position which Kleenit seems to accept. [See Discussion, supra, at pp. 4-5] However, there are serious questions regarding coverage under this policy including, most significantly, an exclusion for liability arising out of pollution unless the pollution was caused by a "sudden and accidental" discharge of pollutants. [Vasiloff Aff., Ex. 10]

Under settled Massachusetts law, in order for the "sudden and accidental" exception to the pollution exclusion to apply, the discharge of pollutants must be both "sudden" (i.e. – abrupt), and "accidental." Lumbermens Mut. Cas., 407 Mass. at 680-681, 555 N.E.2d at 572; Liberty Mut. Ins. Co. v. SCA Services, Inc., 588 N.E.2d 1346, 1349, 412 Mass. 330, 335 (1992); Covenant Ins. Co. v. Friday Engineering Inc., 742 F. Supp. 708, 710 (D. Mass. 1990); Millipore Corp. v. Travelers Indem. Co., 115 F.2d 21, 33 (1st Cir. 1997). Further, routine pollution discharges which occur in the ordinary course of business **do not** qualify as discrete, sudden discharges, but rather are excluded. See Lumbermens Mut. Cas. Co. v. Belleville Industries, Inc., 938 F.2d 1423, 1430 (1st Cir. 1991) (exception to pollution exclusion did not apply because insured discharged pollutants as an ordinary part of its business operations - "we simply cannot analyze these provisions as if it were a manufacturer of health foods that rarely, if ever, experienced a pollution-producing event"). Finally, it is Kleenit's burden to prove that the pollution at issue was caused by a "sudden and accidental" discharge of pollutants. Employers Ins. of Wausau v. George, 673 N.E.2d 572, 576, 41Mass. App. Ct. 719, 724 (1996).

10

In the present motion, Kleenit does not even discuss the nature (or timing) of the pollution discharges at issue, much less attempt to meet its burden of proof. To the contrary, on the record before the Court, the only conclusion that can be drawn is that there is no evidence of any "sudden and accidental" discharges which would negate the application of the pollution exclusion in the Royal policy GYAD 36485.

Recognizing this point, at pages 9-10 of its State Court Memorandum, Kleenit employs a strategy similar to that employed with respect to the pre-tender issue – Kleenit argues about certain **other** issues, some of which are irrelevant and some of which the insurers legitimately dispute.

Thus, Kleenit argues that it has provided sufficient evidence of the policies' existence and contents. However, Royal has not denied coverage based on the lost policy issue, and has in fact produced all the policies it has been able to locate to date. Indeed, in light of Kleenit's counsel's original tender of these claims under specimen policy forms **which by their own terms could not provide coverage**, Kleenit's argument on this point is frivolous.

Kleenit also argues that the defendants are jointly and severally liable for Kleenit's defense costs, and were wrong to attempt to limit defense costs to their respective time on the risk. Leaving aside the factual infirmities of these arguments (for example, Royal has never asserted that its agreement to defend Kleenit is limited to its "time on the risk"), Kleenit simply ignores that Royal, Utica and Travelers have agreed to pay 100% of Kleenit's reasonable and necessary post-tender defense costs. [See Kleenit's State Court Memorandum, p. 9]

Next, Kleenit asserts that the insurers "were wrong to attempt to exclude environmental assessment costs as defense costs." [Id.] Kleenit's self-serving factual citations in this regard (two letters from its own lawyer to Travelers) simply fail to demonstrate that Royal (or any other

insurer) took a demonstrably incorrect position on this issue. Indeed, the issue of whether a particular cost, such as "environmental assessment," qualifies as a defense cost or an indemnity cost is legitimate one upon which the insurers can and should reserve their rights.[11] This point was expressly recognized in the case relied upon by Kleenit, Preferred Mutual Insurance Company v. Gordon, 2003 WL 21077026 (Mass. Super. May 13, 2003). In Gordon, the court opined that environmental testing qualified as a defense cost, but that the costs of clean-up, "are the equivalent of damages upon resolution of a lawsuit." Id. at *11 n. 26. Accordingly, clean-up costs "fall under Preferred's duty to indemnify, **if any**, discussed below." Id. (emphasis added). As the Gordon noted, in accord with settled Massachusetts law, "[a]n obligation to indemnify does not automatically follow from the existence of a duty to defend." Id. at *11 quoting Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 762 n. 19, 601 N.E.2d 912 (1993).[12] As the Court can well imagine, there is not always a clear demarcation between testing/investigative costs and costs of cleanup, and it is clearly appropriate for an insurer to reserve its rights on this issue. To date, the insurers have not refused to reimburse any post-tender costs based on this demarcation.

Finally, Kleenit labels the "owned property exclusion" a "specious" defense. [Kleenit's State Court Memorandum, p. 9] This is another red herring, since Royal has not denied a defense obligation based on the owned property exclusion, but rather reserved simply reserved its rights regarding this exclusion.

The owned property exclusion in Royal policy GYAD 36485 excludes coverage for

---

[11] This is important, because if a cost qualifies as a cost of indemnity, and coverage is ultimately determined not to apply (because of the pollution exclusion, for example), then the insured is not entitled to recover this cost.

[12] In analyzing the duty to indemnify, the Gordon court went on to find an issue of fact regarding the applicability of the owned property exclusion, apparently the only potentially applicable exclusion. 2003 WL 21077026 at *11-12.

property damage to:

    (1)    property owned or occupied by or rented to the insured.

    (2)    property used by the insured, or

    (3)    property in the care custody or control of the insured or as to which the insured is for any purpose exercising physical control.

[Vasiloff Aff., Ex. 10 at p. 9]

In light of the NORs, which attribute pollution to Kleenit owned facilities, it certainly is not unreasonable for Royal to reserve its rights regarding this exclusion, even assuming that pollution from these facilities has migrated off-site. In Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275, 675 N.E.2d 1161 (1997), the Supreme Judicial Court held that the owned property exclusion precludes coverage for those costs incurred to clean up the insured's property, so long as the costs do not also serve to remediate or prevent off-site pollution. Id. at 282, 675 N.E.2d at 1166. While this issue cannot be resolved on the current record, Royal's reservation of its rights on this exclusion cannot possibly support the injunctive relief sought by Kleenit.[13]

## III. KLEENIT'S REQUEST FOR ATTORNEYS FEES MUST ALSO BE DENIED.

In seeking to prove a substantial likelihood that it will prevail on the merits of its claim to recover attorneys fees, Kleenit relies upon the decision of a divided SJC in Hanover Insurance Company v. Golden, 436 Mass. 584 (2002). In Golden, the insurer brought a declaratory

---

[13] It should also be noted that there are other coverage issues which preclude any ruling on indemnity at this point in the litigation. For example, Royal policy GYAD 36485 provides coverage only for "property damage" which occurs during the policy period. [Vasiloff Aff., Ex. 10] If the facts of the pollution at issue at either the Chelmsford or Acton sites are such that all the pollution occurred after the expiration of Royal policy GYAD 36485 on October 1, 1985, then coverage is not available. Similarly, if discovery demonstrates that the pollution was "expected or intended" by Kleenit, then coverage would be unavailable. Travelers Insurance Company v. Waltham Industrial Laboratories Corp., 883 F.2d 1092 (1st Cir. 1989); Utica Mutual v. Hamel, 708 N.E.2d 145 (Mass. App. Ct. 1999). And, although Royal has not denied Kleenit a defense based on late notice, if the facts developed during discovery reveal that Kleenit's substantial delay in providing notice prejudiced Royal, then coverage would be barred. Hoppy's Oil Service, Inc. v. Insurance Company of North America, 783 F. Supp. 1505 (D. Mass. 1992).

judgment action seeking a determination that its duty to defend would end at the time it paid its policy limits to the underlying claimant. Id. at 585. This issue was ultimately determined against the insurer by the trial court, and the insurer did not appeal the determination. Id. The Supreme Judicial Court held that since the insured had incurred costs and attorneys fees in resolving the duty to defend in its favor, the insurer had to reimburse these costs, because "to impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain." Id. at 587.

Golden is not on point. In the present case Kleenit was not required to bring this action to establish the insurers' defense obligation. To the contrary, the insurers have accepted this obligation and have agreed to pay 100% of Kleenit's post-tender defense costs.[14] Unlike the situation in Golden, Royal has not filed, let alone lost, an action seeking to terminate its defense obligation, nor forced Kleenit to incur costs in defending against such an action. Golden does not provide a basis for ordering Royal to pay Kleenit's attorneys fees under these circumstances.

It should also be noted that Kleenit is seeking the fees incurred by its outside counsel in presenting the Chelmsford and Acton claims to Royal. Kleenit's unilateral decision to employ counsel to present this claim to Royal (recall that the very first communication from Kleenit to Royal came from Kleenit's counsel), cannot form the basis of an order requiring Royal to reimburse counsel's fees for this work.

The conclusion that Kleenit is not entitled to recover attorneys fees incurred in handling its claim is especially true where, as here: 1) Kleenit's counsel tendered the claims under policy forms which, even if applicable, **could not possibly** provide the coverage sought; 2) Kleenit never presented Royal with any policies potentially applicable to this claim; 3) Royal nevertheless conducted an extensive independent search for potentially applicable policies, found

---

[14] As set forth above, pre-tender costs do not fall within the scope of Royal's defense obligation.

14

one in a warehouse and produced it to Kleenit,[15] and 4) Royal then agreed to participate in Kleenit's defense despite the presence of a pollution exclusion which on its face seems almost certain to apply. Kleenit is not entitled to injunctive relief on the attorneys fee issue.

## IV.  KLEENIT CANNOT MEET THE STANDARDS FOR PRELIMINARY INJUNCTIVE RELIEF.

As set forth above, Kleenit cannot demonstrate that it has a likelihood of succeeding on the merits of its claims. To the contrary, with respect to pre-tender defense costs, the duty to indemnify and its claim to attorney's fees, the law and the facts demonstrate that Kleenit's claims are without merit or, at a minimum, present a serious obstacle to any recovery by Kleenit. Accordingly, injunctive relief is not proper. Gately v. Comm. of Mass., 2 F.3d 1221, 1225 (1st Cir. 1993) (the "*sine qua non* of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits").

In addition to a reasonable likelihood of success on the merits, Kleenit must also demonstrate that: 1) it does not have an adequate remedy at law such that it will suffer irreparable harm without the injunction; 2) that the harm to Kleenit is greater than the harm the defendant(s) will suffer if the injunction is granted; and 3) that the injunction will not harm the public interest." Converse Construction Co. v. Mass. Bay Transportation Auth., 899 F. Supp. 753, 760 (D. Mass 1995). See also Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 60-61 (1st Cir. 1998); Concrete Machinery v. Classic Lawn Ornaments, 843 F.2d 600, 611 (1st Cir. 1988); Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993).

Kleenit cannot establish irreparable injury if it fails to obtain an injunction. At bottom, this is a private contract dispute, notwithstanding Kleenit's failure to identify the contracts which

---

[15] Royal actually produced all the Kleenit policies located in the warehouse to Kleenit; as set forth above, only one **potentially** provides coverage.

15

it contends are at issue. Accordingly, **if** Kleenit can demonstrate that Royal has failed to honor its contractual obligations, Kleenit has an adequate remedy at law – contract damages.[16] Both Massachusetts state and federal courts have denied preliminary injunctions when the moving party has an adequate remedy of law in the form of a breach of contract claim. See Cheschi v. Pizzillo, 1998 WL 1248002, *1 (Mass. Super. Ct. July 2, 1998) (court found that even if plaintiff was likely to succeed on merits at trial, preliminary injunction was inappropriate because plaintiff had adequate remedy at law, specifically, assessment of damages); Boston Professional Hockey Assoc. v. Cheevers, 348 F. Supp. 261, 269 (D. Mass. 1972) (court denied preliminary injunction because plaintiff had "a complete and adequate remedy at law, consisting of a suit for money damages for breach of contract" against the defendants); Entertainment Publications Inc. v. Goodman, 67 F. Supp. 2d 15, 20 (D. Mass. 1999) (court declined to impose injunctive relief when there remained an adequate remedy at the law against the defendant for breach of contract). The First Circuit has noted that "as first-year law students quickly learn, the enforcement of contracts by injunction is the exception rather than the rule." Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d at 61. Further, when monetary damage will afford complete relief, as in Kleenit's case, injunctive relief will not be granted. Id.

Accordingly, Kleenit cannot satisfy the next prong of the standard for injunctive relief, that the potential harm to Kleenit is greater than that which will be suffered by Royal if the injunction is not granted. Here, Kleenit is seeking an injunction requiring Royal to make payments for which it is either not obligated (pre-tender defense costs, attorneys claim handling fees), or to which Kleenit has not and very likely cannot demonstrate entitlement (indemnity

---

[16] In addition, Kleenit has failed to establish with any certainty its imminent bankruptcy or need to lay off employees because it has not filed any detailed financial evidence. See Dover Steel Co. v. Hartford Accid. and Indem. Co., 806 F. Supp. 63, 65 (D. Pa. 1992) (preliminary injunction seeking insurer to pay defense costs denied because insured could not prove irreparable harm of imminent bankruptcy through lack of introduction of any financial statements, tax returns, general ledgers or other documentary evidence of its financial health).

costs). Since Kleenit has an adequate remedy at law (assuming it is entitled to any remedy), the harm to Royal if an injunction is granted clearly outweighs any potential harm to Kleenit.

Finally, there is no merit to Kleenit's argument that the public interest will be vindicated by granting injunctive relief. To the contrary, Royal has acted in the utmost good faith. Rather than accept Kleenit's view of the applicable policy forms, which would have resulted in Kleenit being ineligible for any coverage, Royal searched for and ultimately located a policy under which it then agreed to participate in Kleenit's defense. Under these circumstances, to suggest that injunctive relief will protect the public from some unspecified harm is, in Kleenit's words, "specious."

## CONCLUSION

For the reasons set forth above, Royal respectfully requests that Kleenit's Emergency Motion for a Preliminary Injunction be denied.

Dated: March 26, 2004

ROYAL INSURANCE COMPANY OF AMERICA and GLOBE INDEMNITY COMPANY

By Their Attorneys,

_____
Karl S. Vasiloff, Esq. (BBO #555638)
ZELLE, HOFMANN, VOELBEL, MASON
& GETTE LLP
950 Winter Street, Suite 1300
Waltham, MA 02451
(781) 466-0700

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all counsel of record via First Class Mail on March 26, 2004.

_____
Karl S. Vasiloff