UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-10351 NG

KLEENIT, INC.,
                Plaintiff

vs.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE,
UTICA NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND CASUALTY,
                Defendants

**OPPOSITION OF DEFENDANT, UTICA NATIONAL INSURANCE GROUP,
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I.    Introduction

Plaintiff Kleenit, Inc. ("Kleenit") comes before this Court on an emergency basis seeking a preliminary injunction against Utica National Insurance Group ("Utica") on the grounds that Utica has failed to make its defense payments and as a result, Utica is "forcing Kleenit into dire financial conditions" which is in turn threatening Kleenit's ability to clean up the alleged pollution. In support of its motion, Kleenit represents to the Court that Utica has neither accepted its obligation to defend Kleenit nor paid Kleenit pursuant to its contract of insurance. The facts alleged by Kleenit could not be further from the truth.

Utica, along with Royal Insurance Company of America ("Royal") and Travelers Property and Casualty ("Travelers") (the insurers are hereinafter collectively referred to as "the carriers" or "the insurers"), has agreed to reimburse 100% of Kleenit's

reasonable post-tender defense costs notwithstanding questions regarding the existence of coverage for Kleenit's pollution liability. True to its word, Utica has issued its pro rata share of payment on all post-tender invoices submitted by Kleenit. The only payments Utica has not made are relative to pre-tender defense costs incurred by Kleenit. Pre-tender costs are those costs incurred before the time in which Kleenit put the insurers on notice of its claims. Utica has refused to pay any pre-tender defense costs not because of late notice or violation of the voluntary payment clause as alleged by Kleenit, but rather because Massachusetts law does not require Utica to do so. In Massachusetts, costs incurred by the insured prior to notice to the insurer are not recoverable. In short, Kleenit's recitation of the facts of this case is inaccurate: Utica has acted in the utmost good faith and in accordance with settled and established law.

Turning to Kleenit's analysis of the amounts owed to date, a closer look at the numbers cited by Kleenit reveals that, at most, Kleenit is quibbling over a few thousand dollars and not the $106,571.36 it claims it is due. Kleenit alleges that it has incurred approximately $150,386.17 in defense-related expenses of which the defendants have only paid $43,814.81, leaving $106,571.36 unpaid and due to Kleenit. (Second Affidavit of Keith Crider ("Crider Aff. II"), ¶ 3; Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction, p. 1, 2) However, of the $150,386.17 in defense-related expenses incurred, Kleenit admits that $84,863.20 constitute pre-tender defense costs and that the remaining $65,522.97 are post-tender defense costs. The carriers have refused to pay the $84,863.20 in pre-tender costs on the grounds that they are not required to do so under Massachusetts law. Operating under the assumption that they

2

are correct in their interpretation of the law, the carriers thus only owe Kleenit $65,522.97 in post-tender defense costs, not $106,571.36 as Kleenit contends.

As the record reflects, Utica has paid a total of $27,113.09 in post-tender defense costs, which is *more than* its 39% share of the $65,522.97 which Kleenit claims is outstanding. Upon information and belief, the other carriers have also made payments according to their pro rata shares. Kleenit's contention that it has been reimbursed for only 29% of its defense costs is disingenuous.

Notwithstanding the fact that Utica has paid its pro rata share of 100% of Kleenit's post-tender defense costs, despite the law on the issue of pre-tender costs and regardless of the carriers' agreement to reimburse Kleenit 100% for its post-tender costs, Kleenit files this emergency motion and asks this Court to order Utica to pay pre-tender defense costs; to eliminate any opportunity for Utica to challenge the propriety of post-tender defense costs; to indemnify Kleenit for its pollution liability and to award Kleenit attorney's fees. Kleenit's motion is simply without basis on the facts of this case or the law.

II.   **Statement of Facts**

Kleenit operates dry-cleaning services at facilities located at 28 Central Square in Chelmsford ("Chelmsford site"), 293-295 Main Street in Acton ("Acton site"), and 298 Boston Post Road, Wayland ("Wayland site")[1], all in Middlesex County, Massachusetts. The Department of Environmental Protection ("DEP"), by letter dated January 28, 2001,

---

[1] This lawsuit does not involve the Wayland site. Utica and Royal have agreed to reimburse Kleenit for 100% of its defense related costs relative to this site and have entered into a Defense Cost Sharing Agreement with Kleenit.

issued a Notice of Responsibility ("NOR") pursuant to M.G.L. c. 21E in connection with alleged environmental contamination at the Chelmsford site. (Affidavit of Peter J. Feuerbach, Esquire, ¶2, Tab 1) On December 30, 2003, the DEP issued an NOR in connection with alleged contamination at the Acton site. (Id. Tab 2) The NORs allege that Kleenit is a responsible party for the release or threat of release of hazardous materials at the Chelmsford and Acton sites.

A.  Tender of Claims and Utica's Insurance Policies

By letters dated September 25, 2002, Kleenit tendered notice to Utica of its claims for defense and indemnification with respect to the alleged pollution arising from Kleenit's dry-cleaning operations at the Chelmsford and Acton sites. (Affidavit of Richard E. Heifetz, Esquire ("Heifetz Aff."), Exhibit 1, Tender Letters, dated September 25, 2002) Kleenit alleged that Utica provided policies of insurance for both sites from 1979 – 1985, however, Kleenit did not include copies of those alleged policies.

In response to the September 25 letters, Utica conducted a diligent search of its records to locate policies issued to Kleenit during the period of 1979-1985. Utica subsequently found and acknowledged only one three-year policy. The policy was issued by Graphic Arts Mutual and it insured Kleenit for both the Acton and Chelmsford sites under FMP 1946 for the period 10/01/79 – 10/01/82. The general liability policy limits were $100,000 per occurrence and $100,000 in the aggregate. No other policies were located. Approximately one month after receiving notice of the claims, Utica sent Kleenit a Partial Disclaimer of Coverage and Reservation of Rights. (Id. Exhibit 2, Letters dated October 28, 2002 from Kristen Martin to Robert Fasanella)

4

Utica acknowledged Kleenit's claims at Chelmsford and Acton and agreed to investigate the claims under a full reservation of rights. In addition, Utica disclaimed coverage for any payment or expense incurred prior to September 27, 2002, the date of receipt of notice of the claims. (Id.)

In connection with the Chelmsford site, Kleenit waited as long as twenty months before putting Utica on notice of its claims for defense and indemnity. Keith Crider, President and Chief Financial Officer of Kleenit, admits that Kleenit chose to exercise its prerogative to provide its own defense against the NOR. (Crider Aff. I, ¶6) Kleenit intended to handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense. (Id.) However, upon the realization that it had miscalculated the financial consequences of these claims, Kleenit decided to put its insurers on notice. (Id. at ¶7)

Relative to the Acton site, in its September 25, 2002 letter, Kleenit enclosed notice of a private party demand from its landlord dated August 14, 2002. (Heifetz Aff., Exhibit 1) On October 29, 2002, Kleenit submitted a Release Notification Form to the DEP regarding the Acton site. It was not until December 30, 2002, that the DEP issued an NOR in connection with alleged contamination at the Acton site. (Feuerbach Aff., Exhibit 1) By letter dated January 10, 2003, Kleenit put Utica on notice of the potential suit.[2] (Heifetz Aff., Exhibit 3, Letter from Robert Fasanella, Esq. to Kristen Martin,

---

[2] Although Utica received notice in September 2002 of possible claims against Kleenit relative to the Acton site, its duty to defend was not triggered until January 13, 2003, when it received notice from Kleenit that the DEP issued an NOR relative to the Acton site on December 30, 2002. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990). Accordingly, Utica considers any defense-related costs incurred prior to January 13, 2003 as pre-tender costs and non-recoverable.

dated January 10, 2003, enclosing NOR) Utica acknowledged tender of the NOR and agreed to defend Kleenit under a reservation of rights in connection with the Acton site. (Heifetz Aff., Exhibit 4, Letter from Richard E. Heifetz to Robert Fasanella dated January 14, 2003)

B.   Defense Cost-Sharing Agreement

1.   *Proposed Agreement with Kleenit Fails*

Kleenit tendered the Chelmsford and Acton claims to not only Utica, but also to Royal and Travelers. At Kleenit's request, Kleenit and the carriers attempted to work out a defense cost sharing agreement. (Heifetz Aff., Exhibit 5, Letters from Robert Fasanella, Esq. to insurers dated March 11, 2003 and August 11, 2003) Discussions regarding the agreement began in the Spring of 2003 after the insurers had an opportunity to affirm or disaffirm coverage under the cited policies. Kleenit proposed that the parties enter an agreement whereby the insurers would pay Kleenit on a pro rata basis all pre-tender and post-tender defense costs incurred. (Id.) On the other hand, the insurers proposed that they would pay for all reasonable post-tender defense costs, but no pre-tender defense costs. Citing Massachusetts law, the insurers refused to pay any pre-tender defense costs on the grounds that pre-tender defense costs were not recoverable in Massachusetts. (Heifetz Aff., Exhibit 6, Letters dated July 16, 2003, September 10, 2003 and October 27, 2003, from Carriers to Attorney Fasanella stating legal basis for refusal to pay pre-tender defense costs) Kleenit rejected this proposal as well as the legal authority cited by the insurers. Eventually, discussions between the carriers and Kleenit broke down due to Kleenit's insistence that the carriers reimburse

Kleenit for pre-tender defense costs in addition to post-tender defense costs. Accordingly, the insurers executed an agreement among themselves.

    2.    *Defense Cost Sharing Agreement Entered Into Among The Carriers*

By letter dated September 10, 2003, the insurers advised Kleenit that they were entering into a defense cost sharing agreement among themselves and that they had collectively agreed to reimburse Kleenit for 100% of its reasonable and necessary post-tender defense costs. (Heifetz Aff., Exhibit 7, Letter from Travelers on behalf of carriers to Attorney Fasanella dated September 10, 2003) Pursuant to this agreement, Utica is responsible for its 39% pro rata share of Kleenit's reasonable post-tender defense costs, while Royal is responsible for its 14% share and Travelers for its 47% share.

In accordance with this agreement, the carriers established a standard practice for the review of invoices submitted by Kleenit for reimbursement. (Id.) Generally speaking, the practice is as follows. Once Kleenit submits it invoices to the insurers, Travelers in-house special liability unit reviews and analyzes the invoices. Traveler's then recommends to the carriers the amount of payment to be rendered according to each carrier's pro rata share of liability. Shortly thereafter, the individual carriers issue a check within forty-five (45) days of receipt of the invoice for their respective amount, assuming that they agree with Traveler's recommendations for payment.[3] Accordingly, for each invoice submitted by Kleenit for payment, Kleenit receives three separate

---

[3] Kleenit has requested that the carriers issue payment on submitted invoices within forty-five (45) days of receipt of the invoice. The carriers have honored Kleenit's request and have worked as quickly as possible to review the invoices and issue payment accordingly.

7

checks in satisfaction of the invoice–one from each carrier according to its pro rata share.

This established practice went into effect in September 2003 after Travelers reviewed, on behalf of the insurers, Kleenit's defense-related expenses incurred from January 2001 through March 2003. At this time, Travelers reviewed invoices not only relative to environmental work performed at the sites, but it also reviewed Kleenit's legal bills up through March 2003. By letter dated September 26, 2003, Travelers recommended each insurer pay its respective amount of those post-tender defense-related costs incurred by Kleenit.[4] (Heifetz Aff., Exhibit 8, Letter from Catherine Kozyra to Danielle M. Maloney, Esq. and Karl Vasiloff, Esq.) As was explained in an accompanying spreadsheet to that letter, several deductions were made for pre-tender and coverage costs. (Id.) Travelers advised Kleenit's attorney, Donald Nagle, of its review of the invoices and the deductions it made by letter dated August 29, 2003. (Id.)

C.   Post-tender Payments Made by Utica

Utica has paid its 39% share of all reasonable post-tender defense costs incurred by Kleenit. Specifically, Utica has paid a total of $27,113.09, which constitutes its 39% share of the total amount of post-tender costs owed to Kleenit. (Heifetz Aff., Exhibit 9, Records of Payment by Utica) Contrary to Kleenit's assertion that no carrier has paid attorney's fees, Utica has issued payment on all legal bills submitted by Kleenit. The

---

[4] The first check issued by each carrier covered all reasonable post-tender defense costs incurred by Kleenit beginning in January 2001 up through March 2003. Thus, this initial payment was not for one particular invoice, but rather a lump sum for all post-tender defense costs that had been incurred until March 2003. The following payments made by the carriers were typically specific to one particular invoice.

only costs for which Utica has not reimbursed Kleenit are those costs incurred prior to the date of tender of the claims. In other words, defense costs incurred by Kleenit prior to September 27, 2002, the date of receipt of tender of the claims relative to the Chelmsford site, and prior to January 13, 2003, the date of receipt of tender of the claims relative to the Acton site, have not been reimbursed by Utica.

Despite the carriers' agreement to reimburse Kleenit for 100% of its post-tender defense costs and despite the fact that Kleenit has received payment of the same, Kleenit comes before this Court seeking relief that is simply not warranted under the facts of this case or the law.

### III.  Preliminary Injunction Standard

The applicable standard for deciding the plaintiff's motion for preliminary injunction requires the court to consider whether the plaintiff has met its burden of showing (1) a likelihood of success on the merits; (2) that irreparable harm is likely to occur if the injunction is not granted; (3) that the harm likely to occur outweighs any hardship that would be inflicted on the other party by an injunction; and (4) that the public interest will not be adversely affected by the injunction. See Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).

For the reasons discussed in this memorandum, there is no likelihood that Kleenit will succeed on the merits of its claim that it is entitled to pre-tender costs, indemnity or attorneys' fees. Moreover, there is nothing in the record to support Kleenit's contention that irreparable harm will occur if relief is not granted.

9

A. **THERE IS NO LIKELIHOOD THAT KLEENIT WILL SUCCEED ON THE MERITS OF ITS CLAIM.**

   1. **KLEENIT IS NOT ENTITLED TO PRE-TENDER COSTS**

Kleenit did not tender the defense of the Chelmsford matter to Utica and the other carriers until September 25, 2002. Defense of the Acton matter was tendered on January 13, 2003. As a matter of law, Kleenit is not entitled to recovery of defense costs incurred prior to these dates.

In Massachusetts, the duty to defend or participate in a defense cannot arise before the insurer has notice of the suit against the insured. See Hoppies Oil Serv., Inc. v. Ins. Co. of N. Am., 783 F. Supp. 1505, 1509 (D. Mass. 1992). That being said, no duty to provide defense costs can arise until the time of notice. Id.; Am. Mut. Liab. Ins. Co. v. Beatrice Cos., 924 F. Supp. 861, 874 (N. D. Ill. 1996) (stating that under Massachusetts law, "insurers are not liable for pre-notice defense costs"). The underlying rationale for this rule is that an insurer should not be required to pay for a defense of a suit that it had "no opportunity to influence" or "power to affect the course and cost of the litigation at that time." Managed Health Care Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 2001 U.S. Dist. LEXIS 18302, at *5-6 (D. Mass. 2001) (finding that insurer not liable for pre-notice defense costs under Massachusetts law).

Applying this rule to the facts of this case, Utica's duty to defend did not arise until the date it received notice of these respective claims. Thus, any costs incurred prior to September 25 relative to the Chelmsford site, or January 13 relative to the Acton

site, are not recoverable because such costs are not within the scope of Utica's obligations.

Contrary to Kleenit's assertion of the law, Utica is not required to show actual and specific prejudice when refusing to pay pre-tender defense costs. See Managed Health Care Sys., Inc., 2001 U.S. Dist. LEXIS 18302, at *6 (no showing of prejudice required where no complete forfeiture of coverage); Hoppies, 783 F. Supp. at 1509. Citing *Employers' Liability Assurances Corp. Ltd. v. Hoechst Celanese Corp.*, *Atlas Tack Corp. v. Liberty Mutual Insurance Company*, and *Sarnafil, Inc. v. Peerless Insurance Company*, Kleenit erroneously asserts that the carriers must demonstrate actual and specific prejudice caused by Kleenit's actions if they purport to deny coverage for pre-tender costs. This is simply not true under the applicable case law. As the court in *American Mutual* explained:

> The prejudice requirement was adopted to prevent complete forfeiture based upon technical failure of the insured to provide timely notice. In contrast, enforcement of the rule that pre-tender defense costs are not recoverable does not result in complete forfeiture of an insured's right to recover fees. Rather, the rule gives the insured the choice of defending some or all of a claim on its own.

Am. Mut. Liab. Ins., 924 F. Supp. at 873. Accordingly, the "no pre-tender defense costs" rule remains viable even in jurisdictions that have adopted the "notice-prejudice" rule. Id. at 874, citing Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 333 (E.D. Pa. 1991) (applying Pennsylvania law); Great Am. Inc. Co. v. Aetna Casualty & Sur. Co. 76 Haw. 346 (1994) (applying Hawaii law); S.L. Indus. v. Am. Motorists Ins. Co., 128 N.J. 188 (N.J. 1992) (applying N.J. law).

11

The cases cited by Kleenit are not on point. First, neither *Employers' Liability*, *Atlas Tack*, nor *Sarnafil*, address the specific issue of pre-tender defense costs. Indeed, the phrase "pre-tender costs" is rarely, if at all mentioned, in any of those cases. Moreover, in each and every one of the cases cited by Kleenit, the insurer was seeking to disclaim coverage altogether on the grounds of late notice or violation of the voluntary payment clause. That is not the case here. Utica has agreed, along with the other carriers, to reimburse Kleenit for 100% of its post-tender defense costs and it is refusing payment of only pre-tender costs. Utica is not declaring a complete forfeiture of coverage. Where, as here, the insurer has accepted tender of the matter and is seeking to disclaim responsibility for pre-notice payments only, the insurer is not required to demonstrate actual prejudice in order to relieve itself of the obligation of paying the insured's pre-notice defense costs. See Managed Health Care Sys., Inc., 2001 U.S. Dist. LEXIS 18302, at *4-6; Am. Mut. Liab. Ins. Co., 924 F. Supp. at 873.

Suffice it to say, Kleenit cannot point to one Massachusetts case that holds that an insurer is liable for pre-tender defense costs. Nor can or does Kleenit address the overwhelming authority cited by the insurers in support of their position. In a weak attempt to garner support outside of this jurisdiction for its argument that pre-tender costs are recoverable, Kleenit cites *TPLC, Inc. v. United National Insurance Company*, 44 F.3d 1484 (10th Cir. 1995). While the Tenth Circuit held that pre-tender costs are recoverable in Pennsylvania, the Tenth Circuit admittedly disregarded two Third Circuit opinions which interpreted Pennsylvania law as *enforcing* the no pre-tender costs rule. See Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 333

(E.D. Pa. 1991) and Clemente v. Home Ins. Co., 791 F. Supp. 118 (E.D. Pa), aff'd without opinion, 981 F. 2d 1246 (3rd Cir. 1992). Kleenit's reliance on *TPLC* is thus questionable and hardly convincing. Other than *TPLC*, Kleenit offers no other case law to support its position that it is entitled to pre-tender defense costs from Utica. Kleenit does not have a leg to stand on with respect to recovery of pre-tender defense costs.

2.  KLEENIT IS NOT ENTITLED TO A RULING THAT UTICA MUST INDEMNIFY KLEENIT.

In Kleenit's papers filed with the Middlesex Superior Court, it seeks an order that Utica is required to indemnify Kleenit for costs to remediate the pollution at the Acton and Chelmsford sites. Ironically, Kleenit does not request this same relief in its motion filed with this Court. The omission is intentional. Kleenit knows that it cannot meet its burden of proof that the alleged pollution was sudden and accidental. To the extent that Kleenit is relying on the papers it filed in the Superior Court, Utica addresses Kleenit's previous request for injunctive relief regarding the issue of indemnity. Kleenit will not succeed on the merits of its claim for indemnity.

As a preliminary matter, it is well-settled that under Massachusetts law, Kleenit bears the burden of proving the terms and existence of the insurance contracts under which coverage is sought. See Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 230 (1997). Kleenit alleges Utica provided coverage from 1979 – 1985. While Utica has acknowledged that coverage existed for the years 1979 – 1982, Utica has denied that coverage existed from 1982 – 1985. To the extent that Kleenit has failed to produce

proof of a policy covering the years 1982 – 1985, its claim for indemnity against Utica fails.

Moreover, even though Utica has acknowledged a policy for the years 1979 – 1982, coverage is not automatically assumed. Serious questions exist regarding whether coverage is available under this policy. In particular, the policy contains an exclusion for liability arising out of pollution unless the pollution was "sudden and accidental."[5] Thus, in order for Kleenit to be covered despite this exclusion, Kleenit must allege and prove that the release of pollutants at the Acton and Chelmsford sites was "sudden and accidental." Liberty Mutual Ins. Co. v. SCA Services, Inc., 412 Mass. 330, 335 (1992). The "sudden and accidental" exclusion is conjunctive and both conditions must be met for the exception to be operative. See Hazen Paper Co. v. Untied States Fidelity & Guar. Co., 407 Mass. 689, 692 (1992). The Massachusetts Supreme Judicial Court has consistently held that "the word 'sudden' has a temporal element, and 'only an abrupt discharge or release of pollutants falls within the exception.'" Id., citing Lumbermens Mut. Casualty Co. v. Belleville Indus., 407 Mass. 675, 680-81 (1990). Routine pollution discharges which occur in the ordinary course of business do not qualify as discrete,

---

[5] The "sudden and accidental" exclusion provides as follows:

This insurance does not apply:

(f) to bodily injury or property damages arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

sudden discharges, but rather are excluded. See Lumbermens Mut. Casualty Co. v. Belleville Indus., 938 F.2d 1423, 1430 (1st Cir. 1991).

Kleenit knows that it cannot defeat this exclusion. In its papers filed with the Superior Court, Kleenit does not so much as even mention the nature or timing of the pollution discharges at issue let alone demonstrate that it has met its burden of proof. The record is likewise devoid of any proof. Absent evidence that the releases were sudden and accidental, Kleenit cannot prevail on its claim for indemnity. Because there is no such evidence in the record before this Court, Kleenit's request for an order from this Court that Utica indemnify it should be denied.

3. **KLEENIT IS NOT ENTITLED TO ATTORNEY'S FEES WHERE UTICA HAS ACKNOWLEDGED ITS DUTY TO DEFEND.**

In complete disregard of the insurers' agreement to pay 100% of Kleenit's post-tender defense costs, Kleenit asserts that it is entitled to attorney's fees in connection with this motion, the motion filed in Superior Court, and its claim presentment because it was forced to resort to litigation to establish the carriers' duty to defend. As is evident from the preceding discussions in this opposition, nothing could be further from the truth.

In support of its argument, Kleenit cites *Hanover Insurance Company v. Golden*, 436 Mass. 584 (2002), where a divided SJC held that an insurer had to reimburse the insured the costs and attorneys fees incurred in resolving the issue of the duty to defend in the insured's favor. Kleenit's reliance on *Golden* is misplaced. Not only has Utica *agreed* to pay 100% of Kleenit's post-tender defense costs, but Utica has already, in fact, issued

payments to Kleenit for these defense costs. (Heifetz Aff., Exhibit 9) In fact, Utica has been issuing checks to Kleenit as early as October 2003.

Contrary to Kleenit's blanket assertion that all the carriers have issued late payments, Utica has made a good faith effort to render payments within forty-five days of receipt of each invoice, as requested by Kleenit. Also, contrary to Kleenit's contention that all of the carriers waited until the filing of this lawsuit to make payments, Utica has been making payments since the fall of 2003.

Utica has not made any pre-tender payments. In so far as the issue of pre-tender defense costs is in dispute and presented on this motion, the carriers have provided on numerous occasions a legitimate legal basis for their denial of coverage. (Heifetz Aff., Exhibit 6) That Kleenit's attorneys chose to litigate this issue despite the clear and settled Massachusetts law on the issue of pre-notice defense costs is the insured's cross to bear, not Utica's.

In reality, Kleenit's motion has little to do, if anything, with esExhibitlishing the carriers' duty to defend and everything to do with fooling this Court into ordering the insurers to pay Kleenit's pre-tender defense costs, indemnify Kleenit and pay its attorney's fees. Given that Utica and the other carriers have accepted their defense obligations, Kleenit's request for attorney's fees as well as the theatrics it has created in filing this motion for injunctive relief is offensive. Where Utica has agreed to defend Kleenit despite the presence of exclusions in its policy which will likely apply, and where the law does not require Utica to pay pre-tender defense costs, Kleenit is not entitled to injunctive relief with respect to attorney's fees.

B.  **KLEENIT WILL NOT SUFFER IRREPARABLE HARM IF RELIEF IS DENIED.**

As shown above, Kleenit has no likelihood of success on the merits of its claims for pre-tender costs, indemnity and attorney's fees and for this reason alone its motion should be denied. In addition, Kleenit cannot demonstrate that it will suffer irreparable injury if the injunctive relief is denied.

Kleenit has an adequate remedy at law if Utica is found in breach of its contract with Kleenit, that being contract damages. The availability of monetary damages, as a general rule, prevents a plaintiff from showing irreparable injury. See Public Serv. Co. v. Patch, 167 F.3d 15, 27 (1st Cir. 1998); Entertainment Publications Inc. v. Goodman, 67 F. Supp.2d 15, 20 (D.Mass. 1999) (injunctive relief denied when there remained an adequate remedy at law against defendant for breach of contract).

Kleenit tries to circumvent this general rule by crying bankruptcy. Kleenit discusses at length its alleged dire financial state, but produces absolutely no financial evidence of imminent bankruptcy. In the absence of such evidence, Kleenit fails to establish irreparable harm. See Gorman v. Coogan, 273 F. Supp.2d 131, 134 (D. Me. 2003) (where moving party produced only two letters which described a company whose existence was at risk, preliminary injunction denied because moving party did not produce "compelling evidence" of financial ruin). See also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3rd Cir. 1989) (no irreparable injury where plaintiff failed to produce financial statements or projections indicating that it will be forced into bankruptcy); Dover Steel Co. v. Hartford Accid. and Indem. Co., 806 F. Supp. 63, 65 (D. Pa. 1992) (preliminary injunction seeking insurer to pay defense costs denied because

insured could not prove irreparable harm of imminent bankruptcy through lack of introduction of any financial statements, tax returns, general ledgers or other documentary evidence of its financial health). Self-serving averments regarding the downward spiral the dry-cleaning industry has sustained due to "less formal business attire, increased price competition and the regional economic recession" do not demonstrate irreparable injury. (Plaintiff's Memorandum of Law in Support of Emergency Motion for Preliminary Injunction, p. 3; Crider Aff. II, ¶ 5)

Turning now to Kleenit's accusations that the carriers have put it on the brink of financial ruin, it is particularly noteworthy that Mr. Crider has admitted that he waited almost two years before putting the carriers on notice of the claims against Kleenit. (Crider Aff. I, ¶ 6) During this two-year period, Kleenit incurred $84,863.74 in pre-tender defense costs, which to date, have not been reimbursed by the insurers for the reasons explained above. As President and Chief Financial Officer of Kleenit for thirty-seven (37) years, Mr. Crider is presumed to be knowledgeable and sophisticated regarding business matters. (Id. at ¶ 1) That he made a poor and costly mistake in judgment is not the fault of the carriers. To the contrary, Kleenit's own CFO is largely to blame for its current financial state.

Finally, given that Kleenit has failed to establish irreparable harm, Kleenit also fails to show that the potential harm to Kleenit is greater than that which will be suffered by Utica, if the injunction is not granted. Since Kleenit has an adequate remedy at law, Utica will suffer greater harm if ordered to make payments to Kleenit for which it is not required to make or for which Kleenit is not entitled to.

## Conclusion

For the reasons set forth above, Utica respectfully requests that Kleenit's Emergency Motion for a Preliminary Injunction be denied.

        Respectfully submitted,

        UTICA NATIONAL INSURANCE GROUP,
        Defendant

        By Its Attorney:

        _____
        Richard E. Heifetz    BBO #229000
        Danielle M. Maloney   BBO #647527
        TUCKER, HEIFETZ & SALTZMAN, LLP
        Three School Street
        Boston, MA 02108
        617-557-9696
        Dated: March 31, 2004

I hereby certify that I made service of the foregoing document in accordance with the provisions of Fed. R. Civ. P. 5.

_____ 4.1.04