## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 2004-10351 NG

| | |
|---|---|
| KLEENIT, INC., | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| SENTRY INSURANCE COMPANY, | ) |
| ROYAL & SUN ALLIANCE, | ) |
| UTICA NATIONAL INSURANCE GROUP, and | ) |
| TRAVELERS PROPERTY AND CASUALTY, | ) |
| Defendants | ) |

### AFFIDAVIT OF RICHARD E. HEIFETZ

I, Richard E. Heifetz, hereby depose and state as follows:

1.    I am a member of the law firm Tucker, Heifetz & Saltzman, LLP, and counsel to

Utica National Insurance Group and Graphic Arts Mutual Insurance Company

(collectively "Utica"). I make this affidavit based on my personal knowledge and solely

to authenticate documents relevant to Utica's Opposition to Plaintiff's Emergency

Motion for a Preliminary Injunction which is presently before this Court.

2.    True and accurate copies of the letters of tender, dated September 25, 2002, are

attached as Exhibit 1.

3.    True and accurate copies of the letters dated October 28, 2002 from Kristen

Martin to Robert Fasanella, Esq., are attached as Exhibit 2.

4.    A true and accurate copy of the letter from Robert Fasanella, Esq., to Kristen

Martin, dated January 10, 2003, is attached as Exhibit 3.

5.    A true and accurate copy of the letter from Richard E. Heifetz to Robert Fasanella dated January 14, 2003, is attached as Exhibit 4.

6.    True and accurate copies of the letters from Robert Fasanella, Esq. to the insurers dated March 11, 2003 and August 11, 2003, are attached as Exhibit 5.

7.    True and accurate copies of the letters dated July 16, 2003, September 10, 2003, and October 27, 2003, from the insurers to Robert Fasanella, are attached as Exhibit 6.

8.    A true and accurate copy of the letter from Travelers on behalf of the carriers to Robert Fasanella dated September 10, 2003, is attached as Exhibit 7.

9.    A true and accurate copy of the letter, with attachments, from Catherine Kozyra to Danielle Maloney, Esq. and Karl Vasiloff, Esq. dated September 26, 2003, is attached as Exhibit 8.

10.    True and accurate copies of records of payment by Utica, are attached as Exhibit 9.

Signed under the pains and penalties of perjury this 31st day of March 2004.

_____

Richard E. Heifetz

I hereby certify that I made service
of the foregoing document in accordance
with the provisions of Fed. R. Civ. P. 5.
_____

*EXHIBIT 1*

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

**Certified Mail Return**
**Receipt Requested No.  7000 1670 0007 7745 3619**

Utica National Insurance Group
401 Edgewater Place – Suite 300
Wakefield, Massachusetts 01880-6255
Attention: Claims Manager/Department

RE:    NOTICE OF CLAIM
      DEMAND FOR DEFENSE/COVERAGE
      Insured: Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
      Claim Type: Physical Loss/Property Damage/Hazardous Materials
      **Location: 293 and 295 Main Street, Acton, Massachusetts**
      Policy: All Risks/Special Multi-Peril, Policy No. FMP 1946 (1982 – 1985)
      Umbrella Liability, Policy No. LV 6406 (1982-1985)

Dear Sir or Madam:

Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 293 and 295 Main Street, Acton, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Utica National Insurance Group (the "Company").

The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. FMP 1946 ("SMP Policy"), and an Umbrella Policy, Policy No. LV 6406 ("Umbrella Policy") (collectively "Policies") between approximately October 1, 1982 and October 1, 1985. (Attached as <u>Tab 1</u> is a copy of Kleenit's "Prepaid Insurance" ledger from June 1984 proving the existence of the Policies. Attached as <u>Tab 2</u> are copies of the types of SMP Policy and Umbrella Policy that Kleenit believes were issued to it by the Company.)

Kleenit hereby requests defense and coverage for the foregoing claim under the Policies. In addition, Kleenit requests that the Company approve the risk assessment, soil and

522488_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 2

groundwater assessment, and other response actions that are discussed herein. Kleenit also
requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and
any endorsements or riders. If the Company contends that the Policies, Declaration Page(s),
endorsements and/or riders do not exist, the Company should fully explain the basis of its
contention and also provide a copy of its "specimen policies" issued during the relevant time
frame.

**Please respond in writing to me within 30 days of the date of this Notice of Claim.**

## Background of Hazardous Materials Release and Property and Building Damage

Since approximately 1962 Kleenit has leased building space and operated a dry cleaning
business at 293 and 295 Main Street, Acton, Massachusetts ("Property"), which is located within
the Acton Plaza shopping center. By letter dated August 14, 2002 Kleenit's landlord, E&A
Northeast Limited Partnership ("E&A"), notified Kleenit of a release of hazardous materials
beneath the Property and demanded that Kleenit cleanup the release pursuant to the
Massachusetts "Superfund" statute, General Laws Chapter 21E, and its implementing
regulations, 310 CMR 40.0000. (A copy of E&A's letter is attached as Tab 3) E&A claimed that
vapors from the release could potentially pose a human health risk to employees, tenants and
customers at the Property and Acton Plaza. E&A demanded that, inter alia, Kleenit report the
release of perchloroethylene ("PCE") to the Massachusetts Department of Environmental
Protection ("DEP") as required under Chapter 21E and 310 CMR 40.0000, by October 29, 2002.
E&A also demanded that Kleenit take actions to respond to the release. Based upon DEP's
practice under 310 CMR 40.0000, Kleenit expects that DEP will shortly issue a Notice of
Responsibility ("NOR") to Kleenit and/or E&A under G.L. c. 21E, ordering Kleenit and/or E&A
to assess and/or remediate the alleged release of hazardous materials.

In response to E&A's demand and Kleenit's potential obligations under Chapter 21E, 310
CMR 40.0000 and the lease, Kleenit has obtained proposals from two experienced environmental
consultants to evaluate the potential human health risks from vapors generated by the release of
PCE and to respond to the release in accordance with Chapter 21E and 310 CMR 40.0000.
Enclosed herewith as Tab 4 is a proposal from Risk Management Incorporated ("RMI"), dated
September 3, 2002, pertaining to the human health risk assessment of the vapors. I also enclose
as Tab 5 a proposal from Coler & Colantonio ("C&C"), dated September 5, 2002, pertaining to
the assessment of soil and groundwater conditions at the Property. On behalf of Kleenit we
request that the Company approve forthwith the proposed scope of services for RMI and C&C as
set forth in Tabs 4 and 5.

In addition, Kleenit requests the Company's approval to install an interior wall within
part of its leased space, so that any potential vapors from the release of PCE can be sealed from
other leased space within the building. Kleenit believes that it may be required to perform

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 3

additional response actions in the future pertaining to the release in accordance with Chapter
21E, 310 CMR 40.0000 and the lease, and a Notice of Responsibility ("NON") that Kleenit
expects will be issued shortly to Kleenit and/or E&A by DEP under the statute and regulations.
Kleenit requests that the Company agree to pay for all such future response actions. In addition,
Kleenit requests that the Company agree to pay Kleenit's legal expenses in defense of E&A's
demand and the requirements and responsibilities imposed by DEP, Chapter 21E and/or 310
CMR 40.0000.

## Request for Insurance Defense and Coverage

Based upon the foregoing, Kleenit requests that the Company provide defense and
indemnification under the Policies for all matters related to or arising out of DEP's NOR and
Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for
damage to the building on the Insured's Property under Section I, Parts I and II, and for property
damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's
Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against
"all risks of physical loss" to buildings and additions and fixtures thereto, and personal property,
and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further,
coverage for property damage to others and "Off-Premises" coverage, with no applicable
exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the
SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure
against a fortuitous event, casualty or accident, such as the release of contaminants discussed in
DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass. App.
Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the
discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk &
Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk"
policy for insured's loss caused by the discharge and migration of water from a broken pipe *at
the premises adjacent to the insured's property*). "Moreover, such fortuities are insured against
even if they are not specified in the policy." Mellon at 934. Although the Company in the
present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it
chose not to do so. As a result, the Company is obligated to provide coverage as requested
herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss
which Kleenit is legally obligated to pay in the present matter as damages because of property
damage or personal injury, including the defense of the claims discussed herein. The Pollution
Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is
obligated to pay as compensatory damages because of property damage or bodily injury, and to
reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR

522488_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 4

and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no applicable exclusions under the Policy.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In addition, insurance coverage is triggered by an enforcement letter issued by a government agency to an insured asserting that a release of contamination has occurred, such as the NOR and Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the Company should provide defense and indemnification under the Policies for all claims arising out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the standpoint of the Insured, and, according to DEP's claim, involves off-site contamination and/or impacts property and groundwater of another person if remediation is not undertaken, no exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning up environmental contamination which presents a threat to, or demonstrated contamination of, property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co., Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will be liable not only to defend an insured against an NOR but also to indemnify the insured for all cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854 (1998) (An insurer's liability for all response costs is triggered "even if the contaminating substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275 (1997).

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g., Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in the Policies period would be rendered ineffective by Rubenstein, supra., and Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage may be triggered during many time periods and not just when the damage manifests itself. As stated in Trustees of Tufts University,

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 5

[T]he three most common 'trigger theories' include: the exposure trigger (policies in effect during years claimant's property tortiously exposed to hazardous material triggered), the continuous (or multiple) trigger (property damage occurs during each year from the time of first hazardous exposure through manifestation), and the injury-in-fact (or actual injury) trigger requires inquiry into when property damage actually occurred).

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear that the loss and damage occurred many years ago, during the Policies period. As a result, coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982) and Camp, Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, regardless of whether the insurer acted in bad faith or unreasonably. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584 (2002).

**Please respond to me in writing within 30 days of the date of this Notice of Claim.**

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc:    Kleenit, Inc. (with enclosures)

522488_1

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

**Certified Mail Return**
**Receipt Requested No. 7000 1670 0007 7745 3695**

Utica National Insurance Group
401 Edgewater Place – Suite 300
Wakefield, Massachusetts 01880-6255
Attention: Claims Manager/Department

RE:    NOTICE OF CLAIM
       DEMAND FOR DEFENSE/COVERAGE
       Insured: Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
       Claim Type: Physical Loss/Property Damage/Hazardous Materials
       **Location: 28 Central Square, Chelmsford, Massachusetts**
       Policy: All Risks/Special Multi-Peril, Policy No. FMP 1946 (1982 – 1985)
               Umbrella Liability, Policy No. LV 6406 (1982-1985)

Dear Sir or Madam:

Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 28 Central Square, Chelmsford, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Utica National Insurance Group (the "Company").

The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. FMP 1946 ("SMP Policy"), and an Umbrella Policy, Policy No. LV 6406 ("Umbrella Policy") (collectively "Policies") between approximately October 1, 1982 and October 1, 1985. (Attached as Tab 1 is a copy of Kleenit's "Prepaid Insurance" ledger from June 1984 proving the existence of the Policies. Attached as Tab 2 are copies of the types of SMP Policy and Umbrella Policy that Kleenit believes were issued to it by the Company.)

Kleenit hereby requests defense and coverage for the foregoing claim under the Policies.

522162_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 2

In addition, Kleenit requests that the Company approve the risk assessment, soil and groundwater assessment, and other response actions that are discussed herein. Kleenit also requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and any endorsements or riders. If the Company contends that the Policies, Declaration Page(s), endorsements and/or riders do not exist, the Company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame.

**Please respond in writing to me within 30 days of the date of this Notice of Claim.**

## Background of Hazardous Materials Release and Property and Building Damage

On or about January 28, 2001 the Massachusetts Department of Environmental Protection ("DEP") issued to Kleenit a "Release Notification – Notice of Responsibility – Notice of Need to Conduct Immediate Response Actions" ("Notice of Responsibility" or "NOR"), claiming that Kleenit was a Potentially Responsible Party ("PRP") under Massachusetts General Laws Chapter 21E for the release of oil and/or hazardous materials at the Property. (Attached at Tab 3 is a copy of the NOR). DEP claimed that Kleenit was responsible for the release of volatile organic compounds ("VOCs") at the Property and that the VOCs had migrated off of the Property and were detected at locations outside of the Property's boundaries.

The Property was first used as a dry cleaning facility in 1960 and the septic system, which is considered a potential source of contamination, was in use until approximately 1990. Based upon the migration and extent of contamination claimed by DEP, the release of hazardous materials and the property damage likely occurred many years ago and within the Policy period. The release of hazardous materials such as VOCs may have resulted from the sudden and accidental releases from the malfunctions of older equipment, spills and/or inadvertent releases from the disposal of perchloroethylene ("PCE") waste products in containers or bags discarded in former dumpsters stored on-site for routine pick-up and disposal prior to the enactment of G.L. c. 21E, which, along with other laws, required licensed hazardous waste contractors to pick-up, manifest and dispose of hazardous wastes at licensed facilities.

DEP further asserted in the NOR that the VOCs at the Property "extend[ed] to the 34 Central Square property and Beaver Brook." (See NOR, p. 1, emphasis added). The NOR stated that "DEP has determined that a Condition of Substantial Release Migration ("SRM"), as described in 310 CMR 40.0006, exists at the subject site." DEP has incurred response action costs related to the release that DEP may recover under M.G.L. c. 21E. If Kleenit did not perform the Immediate Response Actions ("IRAs") ordered by DEP, the NOR stated that DEP would perform such actions and "seek to recover its costs and/or may initiate other appropriate enforcement actions to ensure that such response actions are conducted."

522162_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 3


On June 19, 2001 DEP issued a "Notice of Need to Conduct Immediate Response Actions" ("Notice to Conduct IRAs") to Kleenit, claiming that "contaminated groundwater at the subject site is discharging to Beaver Brook." (Attached at Tab 4 is a copy of the Notice to Conduct IRAs.) Beaver Brook is located outside of the Property's boundaries. The Notice to Conduct IRAs stated that,

> "[C]hlorinated volatile organic compounds ("CVOCs") have been detected in a sump water sample collected from 34 Central Square in Chelmsford, which operates a day care facility. In addition, CVOCs in indoor air at this location [i.e., at 34 Central Square, not the Property] were also detected. This condition constitutes a Critical Exposure Pathway ("CEP") in accordance with 310 CMR 40.0006. Information available to DEP indicates that a releases [sic] of hazardous material (primarily CVOCs) has occurred at the site which extends to the 34 Central Square property and Beaver Brook, and requires the initiation of one or more IRAs as described in 310 CMR 40.0410." (emphasis and brackets added)

The NOR and Notice to Conduct IRAs required Kleenit to take certain actions to address the condition of Substantial Release Migration ("SRM") and the Critical Exposure Pathway ("CEP") described by DEP. Kleenit has at the outset retained environmental scientists, including a Licensed Site Professional ("LSP"), and environmental legal counsel to initiate its response and defense to DEP's NOR and Notice to Conduct IRAs. Kleenit and its LSP have prepared and filed with DEP certain preliminary environmental reports required by DEP. Kleenit has taken these efforts to address contamination at the Property, the alleged Substantial Release Migration off of the Property, and the potential indoor air impacts at the building located at 34 Central Square, which is beyond the Property's boundaries.

As of this date, Kleenit is required to complete additional requirements under DEP's NOR and Notice to Conduct IRAs and under Chapter 21E and the regulations promulgated thereunder. Kleenit has not resolved its alleged responsibility and liability for other potential damages or costs pertaining to the alleged release at or from the Property, 34 Central Square, Beaver Brook, or any other off-site locations. Kleenit has had discussions with representatives of other PRPs identified by DEP and to whom DEP has sent separate Notices of Responsibility, namely, Mobil Business Resources Corporation ("ExxonMobil") and Energy North, Inc. ("Energy North"), addressing potential liability, contribution and other issues related to the claims set forth in the NOR and Notice to Conduct IRAs.

Although Kleenit presently believes that it is minimally responsible, if at all, for the contamination alleged in EPA's NOR and Notice to Conduct IRA's, the Company should be aware that ExxonMobil has asserted that Kleenit should contribute a one-third share of ExxonMobil's past and future response action costs. ExxonMobil has claimed that its past and projected future costs total more than $250,000. As of this date, Kleenit has not agreed to pay

RUBIN and RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 4

any of ExxonMobil's alleged costs.

## Request for Insurance Defense and Coverage

Based upon the foregoing, Kleenit requests that the Company provide defense and indemnification under the Policies for all matters related to or arising out of DEP's NOR and Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for damage to the building on the Insured's Property under Section I, Parts I and II, and for property damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against "all risks of physical loss" to buildings and additions and fixtures thereto, and personal property, and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further, coverage for property damage to others and "Off-Premises" coverage, with no applicable exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure against a fortuitous event, casualty or accident, such as the release of contaminants discussed in DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass. App. Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk" policy for insured's loss caused by the discharge and migration of water from a broken pipe *at the premises adjacent to the insured's property*). "Moreover, such fortuities are insured against even if they are not specified in the policy." Mellon at 934. Although the Company in the present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it chose not to do so. As a result, the Company is obligated to provide coverage as requested herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss which Kleenit is legally obligated to pay in the present matter as damages because of property damage or personal injury, including the defense of the claims discussed herein. The Pollution Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is obligated to pay as compensatory damages because of property damage or bodily injury, and to reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no applicable exclusions under the Policy.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 5

addition, insurance coverage is triggered by an enforcement letter issued by a government agency to an insured asserting that a release of contamination has occurred, such as the NOR and Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the Company should provide defense and indemnification under the Policies for all claims arising out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the standpoint of the Insured, and, according to DEP's claim, involves off-site contamination and/or impacts property and groundwater of another person if remediation is not undertaken, no exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning up environmental contamination which presents a threat to, or demonstrated contamination of, property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co., Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will be liable not only to defend an insured against an NOR but also to indemnify the insured for all cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854 (1998) (An insurer's liability for all response costs is triggered "even if the contaminating substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275 (1997).

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g., Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in the Policies period would be rendered ineffective by Rubenstein, supra., and Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage may be triggered during many time periods and not just when the damage manifests itself. As stated in Trustees of Tufts University,

[T]he three most common 'trigger theories' include: the exposure trigger (policies in effect during years claimant's property tortiously exposed to hazardous material triggered), the continuous (or multiple) trigger (property damage occurs during each year from the time of first hazardous exposure through manifestation), and the injury-in-fact (or actual injury) trigger requires inquiry into when property damage actually occurred).

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear that the loss and damage occurred many years ago, during the Policies period. As a result,

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 6

coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See <u>Cody v. Connecticut General Life Ins. Co.</u>, 387 Mass. 142, 146 (1982) and <u>Camp, Dresser & McKee, Inc. v. The Home Ins. Co.</u>, 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, <u>regardless</u> of whether the insurer acted in bad faith or unreasonably. See, e.g., <u>Hanover Insurance Co. v. Golden</u>, 436 Mass. 584 (2002).

**Please respond to me in writing within 30 days of the date of this Notice of Claim.**

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc:     Kleenit, Inc. (with enclosures)

522162_1

*EXHIBIT 2*



Kristen H. Martin
Staff Attorney

P.O. Box 6568, Utica, New York 13504
Telephone: (315) 734-2917
Fax: (315) 734-2198

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**PARTIAL DISCLAIMER OF COVERAGE AND**
**RESERVATION OF RIGHTS**

October 28, 2002

CRR: <u>7001 0360 0001 9522 4349</u>
Robert A. Fananella, Esq.
Reuben and Rudman, LLP
Counselors at Law
50 Rowes Wharf
Boston, MA 02110-3319

**DROP MAIL**

CRR: <u>7002 0860 0001 4416 0654</u>
Mr. Kevin Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

Re:   Utica File No:   711577
      28 Central Square, Chelmsford, MA

Dear Sirs:

**ACKNOWLEDGEMENT**

This will acknowledge the receipt of your letter dated September 25, 2002, advising us of a claim and requesting defense and indemnification relating to a release of hazardous materials that caused building and property damage at 28 Central Square, Chelmsford, Massachusetts.

**BACKGROUND**

According to the information provided, on or about January 28, 2001, the Massachusetts Department of Environmental Protection (hereinafter "DEP") issued to Kleenit a Notice of Responsibility relating to a release of oil and/or hazardous materials at the above referenced location. It is alleged that the hazardous waste has migrated off site to Beaver Brook. It is further alleged that

Re: Utica File No:   711577
   28 Central Square, Chelmsford, MA

2

the offsite migration is impacting indoor air at a building located at 34 Central Square.

It is our understanding that the property was first used as a dry cleaning facility in 1960 and that the septic system, which is being considered as a potential source of contamination, was used until 1990. Your letter claims that the release occurred many years ago within our policy period.

It is our understanding that you are seeking response costs, including costs for the environmental scientist retained by you. You further state that Exxon Mobil, another potentially responsible party, is seeking contribution from Kleenit for its share of response costs.

## YOUR POLICY

Kleenit, Inc. was insured by Graphic Arts Mutual under FMP 1946 for the period 10/01/79 – 10/1/82. The property damage policy limits were $100,000 per occurrence / $100,000 in the aggregate. Our archive search has not located any other policy issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance Group. If you are in possession of any documents which would establish the existence of a 1982 – 1985 policy and/or the umbrella policy referenced in your letter please forward said documents to my attention. Upon receipt of the documents, I will address any coverage that those policies may provide. We reserve our rights to deny coverage for defense and indemnification under all policies issued by Utica or a related company and further assert that you have the burden of producing any other policy upon which you claim coverage.

Your primary policy, a Comprehensive General Liability Policy, (6395a-x-c Ed. 1-73) contained the following language:

I.    COVERAGE A-BODILY INJURY LIABILITY

COVERAGE B-PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums, which the insured shall become legally obligated to pay as damages because of

A.    bodily injury or

B.    property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are

Re: Utica File No:   711577

28 Central Square, Chelmsford, MA

3

groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgements or settlements.

The policy also defines the terms "occurrence" and " property damage." Those terms are defined as:

"occurrence" means an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

Graphic Arts Mutual expressly reserves the rights to disclaim coverage for defense and indemnification because the facts known to date do not establish that there has been an "occurrence" which has resulted in "property damage" as defined by the policy. As the Property has been used as a dry cleaning facility for over 40 years it is possible that the contamination did not occur during the three years Graphic Arts Mutual insured Kleenit. Pending a determination as to when the contamination occurred, we reserve our rights to disclaim coverage at a later date if, and when, such a determination is made.

Furthermore as no suit has been commenced, no duty to defend had been triggered. As such, we expressly disclaim coverage for defense costs relating to this matter

Your policy also contained the following exclusions:

This policy does not apply:

(f)     to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental:

Graphic Arts Mutual expressly reserves the rights to disclaim coverage relating to this matter on the grounds that the release of the contaminants was neither

Re: Utica File No:   711577
   28 Central Square, Chelmsford, MA

4

sudden or accidental and therefore does not fall within the savings clause of exclusion f.

    (k)    to property damage to

        (1)    property owned or occupied by or rented to the insured.

        (2)    property used by the insured, or

        (3)    property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control:

        the insured is for any purpose exercising physical control: but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured:

    Graphic Arts Mutual expressly reserves the rights to disclaim coverage for any damage to the property owned or occupied by or rented by Kleenit. To the extent that there is any damage to property owned by a third party we will investigate and determine whether it is covered by the policy.

    The policy issued by Graphic Arts Mutual contains the following conditions.

## CONDITIONS

**4.**  Insured's Duties in the Event of Occurrence, Claim or Suit:

**(a)** In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

**(b)** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**(c)** The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who

Re: Utica File No:   711577
28 Central Square, Chelmsford, MA                                                    5

may be liable to the insured because of injury or damage with respect to
which insurance is afforded under this policy; and the insured shall attend
hearings and trials and assist in securing and giving evidence and obtaining
the attendance of witnesses.  The insured shall not, except at his own cost,
voluntarily make any payment, assume any obligation or incur any expense
other than for first aid to others at the time of accident.

It is our understanding that you first became aware of this claim on
January 28, 2001.  We did not receive notice of this claim until sometime on or
about September 25, 2002.

In addition to an almost two year delay in providing notice, Kleenit also
assumed obligations, incurred expense, and/or made voluntary payments by
retaining an environmental scientist, legal counsel and negotiating with the DEP.

As a result of the late notice and undertaking of voluntary payments,
Graphic Arts Mutual expressly disclaims coverage for any liabilities assumed or
incurred prior to our receipt of this claim on or about September 27, 2002.

The policy also has an other insurance condition that states as follows:

6.  Other Insurance: The insurance afforded by this policy is primary
insurance, except when stated to apply in excess of or contingent upon
the absence or other insurance.  When this insurance is primary and the
insured has other insurance which is stated to be applicable to the loss on
an excess or contingent basis, the amount of the company's liability under
this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the
same basis, whether primary, excess or contingent, the company shall not
be liable under this policy for a greater proportion of the loss than that
stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares**.  If all of such other valid and
collectible insurance provides for contribution by equal shares, the
company shall not be liable for a greater proportion of such loss than
would be payable if each insurer contributes an equal share until the
share of each insurer equals the lowest applicable limit of liability under
any one policy or the full amount of the loss is paid, and with respect to
any amount of loss not so paid the remaining insurers then continue to
contribute equal shares of the remaining amount of the loss until each
such insurer has paid its limit in full or the full amount of the loss is
paid.

(b) **Contribution by Limits**.  If any of such other insurance does not
provide for contribution by equal shares, the company shall not be

Re: Utica File No:   711577
28 Central Square, Chelmsford, MA                                         6

liable for a greater proportion of such loss than the applicable limit of
liability under this policy for such loss bears to the total applicable limit
of liability of all valid and collectible insurance against such loss.

We trust you have put all Kleenit carriers from 1960 to present on notice.
Please provide us with the responses you have received form any other carriers
to this claim

## CONCLUSION

As more fully set forth above, we are disclaiming coverage for any payment
or expense incurred prior to September 27, 2002 as well as expense costs. We
are reserving our rights under the policy in relation to the remainder of the claim.
Our investigation into this matter should not be deemed as a waiver of any rights
we may have under the policy and is undertaken under a full reservation of
rights.

I ask that you please forward to my attention any reports prepared by the
environmental scientist retained by Kleenit as well as any documentation
received from the DEP or prepared by or on behalf of Kleenit in response to a
request by the DEP at your earliest convenience.

Finally, as stated above our archive search did not reveal the existence of
any policy other than the Graphic Arts Mutual (1979-1982) and Kleenit has the
burden of producing any policy.  If other policies are located, we reserve our right
to address those policies at a later date.

Very truly yours,

Kristen H. Martin
Staff Attorney

KHM/pcs*



Kristen H. Martin
Staff Attorney

P.O. Box 6568, Utica, New York 13504
Telephone: (315) 734-2917
Fax: (315) 734-2198

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

PARTIAL DISCLAIMER OF COVERAGE AND RESERVATION OF RIGHTS

October 28, 2002

CRR 7001 0360 0001 9522 4233
Robert A. Fananella, Esq.
Rubin and Rudman, LLP
Counsellors at Law
50 Rowes Wharf
Boston, MA 02110-3319

**DROP MAIL**

CRR 7001 0360 0001 9522 4110
Mr. Kevin Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

Re:    Utica File No:    711578
       293 and 295 Main Street, Acton, Massachusetts

Dear Sirs:

ACKNOWLEDGEMENT

This will acknowledge the receipt of your letter dated September 25, 2002, advising us of a claim and requesting defense and indemnification relating to a release of hazardous materials that caused building and property damage at 293 and 295 Main Street, Acton, Massachusetts.

BACKGROUND

According to the information provided, on or about August 14, 2002, Kleenit's landlord, E & A Northeast Limited Partnership, notified Kleenit of a release of hazardous materials beneath the property at the above referenced location. E & A is claiming that the vapors from the release could potentially pose a health risk to employees, tenants and customers at the property. Kleenit

Re: Utica File No:   711577
    28 Central Square, Chelmsford, MA                                          2

has reported the release of perchloroethylene (PCE) to the Massachusetts
Department of Environmental Protection (hereinafter "DEP"). It is anticipated that
the DEP will issue to Kleenit a Notice of Responsibility.  It is our understanding
that Kleenit has leased the premises at issue since 1962. The premises have
been used as a dry cleaning facility.

       Kleenit has retained environmental consultants to evaluate the potential
human health risk. Kleenit is requesting approval from us to install an interior
wall within part of its leased space, so that any potential vapors from the release
of PCE can be sealed off.  Kleenit is also requesting that Graphic Arts pay for
additional response costs as well as defense costs.

## YOUR POLICY

       Kleenit, Inc. was insured by Graphic Arts Mutual under FMP 1946 for the
period 10/01/79 – 10/1/82. The property damage policy limits were $100,000 per
occurrence / $100,000 in the aggregate. Our archival search has not located any
other policy issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance
Group. If you are in possession of any documents that would establish the
existence of a 1982 – 1985 policy and/or the umbrella policy referenced in your
letter please forward said documents to my attention. Kleenit has the burden to
produce any policy on which it claim indemnity or tenders its defense. Upon
receipt of the documents, I will address any coverage that those policies may
provide. We reserve our rights to deny coverage for defense and indemnification
under all policies issued by Utica or a related company and undertake this
investigation under a full reservation of rights.

Your primary policy, a Comprehensive General Liability Policy, (6395a-x-c Ed. 1-
73) contained the following language:

I.     COVERAGE A-BODILY INJURY LIABILITY

       COVERAGE B-PROPERTY DAMAGE LIABILITY

       The company will pay on behalf of the insured all sums, which the
       insured shall become legally obligated to pay as damages because
       of

       A.     bodily injury or

       B.     property damage

       to which this insurance applies, caused by an occurrence, and the
       company shall have the right and duty to defend any suit against
       the insured seeking damages on account of such bodily injury or
       property damage, even if any of the allegations of the suit are

Re: Utica File No:   711577
  28 Central Square, Chelmsford, MA                                                      3

> groundless, false or fraudulent, and may make such investigation
> and settlement of any claim or suit as it deems expedient, but the
> company shall not be obligated to pay any claim or judgment or to
> defend any suit after the applicable limit of the company's liability
> has been exhausted by payment of judgements or settlements.

The policy also defines the terms "occurrence" and " property damage." Those
terms are defined as:

> "occurrence" means an accident including continuous or repeated
> exposure to conditions, which results in bodily injury or property damage
> neither expected nor intended from the standpoint of the insured;

> "property damage" means (1) physical injury to or destruction of tangible
> property which occurs during the policy period, including the loss of use
> thereof at any time resulting therefrom, or (2) loss of use of tangible
> property which has not been physically injured or destroyed provided such
> loss of use is caused by an occurrence during the policy period;

Graphic Arts Mutual expressly reserves the rights to disclaim coverage for
defense and indemnification because the facts known to date do not establish
that there has been an "occurrence" which has resulted in "property damage" as
defined by our policy.  As the Property has been used as a dry cleaning facility
for over 40 years it is possible that the contamination did not occur during the
three years Graphic Arts Mutual insured Kleenit.  Pending a determination as to
when the contamination occurred, we reserve our rights to disclaim coverage at a
later date.  Furthermore, as no suit has been commenced, no duty to defend has
been triggered.  As such, we expressly disclaim coverage for defense costs
relating to this matter.

Furthermore as no suit has been commenced, no duty to defend had been
trigger.  As such, we expressly disclaim coverage for defense costs relating to
this matter

Your policy also contained the following exclusions:

This policy does not apply:

> (f)    to bodily injury or property damage arising out of the discharge,
> dispersal, release or escape of smoke, vapors, soot, fumes, acids,
> alkalis, toxic chemicals, liquids or gases, waste materials or other
> irritants, contaminants or pollutants into or upon land, the
> atmosphere or any water course or body of water; but this
> exclusion does not apply if such discharge, dispersal, release or
> escape is sudden and accidental:

Re: Utica File No:   711577
   28 Central Square, Chelmsford, MA

                                                                    4

Graphic Arts Mutual expressly reserves the rights to disclaim coverage relating to this matter on the grounds that the release of the contaminants was neither sudden or accidental and therefore does not fall within the savings clause of exclusion f.

        (k)    to property damage to

                (1)   property owned or occupied by or rented to the insured.

                (2)   property used by the insured, or

                (3)   property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control:

the insured is for any purpose exercising physical control: but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured:

    Graphic Arts Mutual expressly reserves the rights to disclaim coverage for any damage to the property owned or occupied by or rented by Kleenit. To the extent that there is any damage to property owned by a third party we will investigate and determine whether it is covered by the policy.

    The policy issued by Graphic Arts Mutual contains the following conditions.

**CONDITIONS**

**4.** Insured's Duties in the Event of Occurrence, Claim or Suit:

**(a)** In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

**(b)** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Re: Utica File No:   711577
28 Central Square, Chelmsford, MA                                                5

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

It is our understanding that you first became aware of this claim on August 14, 2002. We did not receive notice of this claim until sometime on or about September 25, 2002.

Prior to putting us on notice of this claim, Kleenit assumed obligations, incurred expense and or made voluntary payments by retaining an environmental consultant and legal counsel.

As a result of the late notice and undertaking of voluntary payments, Graphic Arts Mutual expressly disclaims coverage for any liabilities assumed or incurred prior to our receipt of this claim on or about September 27, 2002.

The policy also has an other insurance condition that states as follows:

6. Other Insurance: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence or other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares**. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

*EXHIBIT 3*

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

January 10, 2003

BY FACSIMILE 315-734-2198 AND
CERTIFIED MAIL NO. 7099 3400 0021 4885 9854
RETURN RECEIPT REQUESTED

Kristen Martin
Utica National Insurance Group
401 Edgewater Place – Suite 300
Wakefield, Massachusetts 01880-6255

Demand Letter under MGL C. 93A and 176D
RE:     Insured:  Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
        Claim Type:  Physical Loss/Property Damage/Hazardous Materials
        Location:  293 and 295 Main Street, Acton, Massachusetts
        Policy:  All Risks/Special Multi-Peril, Policy No. FMP 1946 (1982 – 1985)
                 Umbrella Liability, Policy No. LV 6406 (1982-1985)
        Utica File No. 711578

Dear Ms. Martin:

As you know from our previous letters in September and November 2002, this firm represents your former insured, Kleenit, Inc. ("Kleenit") with respect to the above referenced matter. On behalf of Kleenit and in accordance with M.G.L. c. 93A, §11 and M.G.L. c. 176D, we hereby demand immediate defense and coverage under the policies for this matter. Because Utica has failed over the past three months to even acknowledge the existence of the policies, let alone confirm defense and coverage, if you fail before January 20, 2003 to either (1) enter into a tolling and/standstill agreement to stay time limitations, if any, to bring an action against Utica seeking coverage with respect to this matter, or (2) confirm that defense and coverage will be provided to Kleenit in this matter, Kleenit will be forced take steps to establish and protect its legal rights, which will likely include filing a declaratory judgment action to determine Utica's legal obligations to Kleenit. If we are required to file such a lawsuit and establish a duty of defense or coverage, we will seek and be entitled to multiple damages and attorney's fees in accordance with M.G.L. c. 93A and 176D based upon, inter alia, Utica's unfair, bad faith and/or deceptive practices relative to its investigation and claims settlement of Kleenit's claims.

536573_1

RUBIN AND RUDMAN LLP

Kristin Martin
January 10 2003
Page 2

We enclose a copy of a Notice of Responsibility ("NOR") issued by the Massachusetts Department of Environmental Protection ("DEP") to Kleenit, dated December 30, 2002, ordering Kleenit to perform hazardous waste cleanup actions at the site under M.G.L. c.21E and the Massachusetts Contingency Plan, 310 CMR 40.0000 ("MCP"). DEP's NOR requires Kleenit to inter alia, submit a completed Tier Classification submittal and Tier I Permit application, or a Response Action Outcome Statement on or before October 29, 2003. As we informed you in our letter dated September 25, 2002, the case law in Massachusetts clearly holds that an NOR issued by DEP triggers an insurer's duty to defend. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689 (1990).

As you are aware, on September 25, 2002 we provided you with specific and detailed information concerning the claim, the factual and legal basis for defense and indemnification, and Kleenit's policies, including policy numbers, coverage dates, contemporaneous company documents identifying and describing the policies, a copy of a specimen policy from the relevant coverage periods. The Appeals Court has determined that this evidence is more than sufficient to establish the existence and contents of the policies. See, e.g., Rubenstein v. Utica Ins. Co. of America, 44 Mass.App.Ct. 842, 846-847 (1998) (lost or destroyed policy proved through documents and testimony on, inter alia, the purchase of the policy, a schedule of insurance showing policy numbers and dates, and specimen forms of policies.) Kleenit has placed the loss within the insuring clause, and the burden is on you to prove that the cause of the claim is not covered as a result of particular exclusions within the policies or otherwise. Murray v. Continental Ins. Co., 313 Mass. 557 (1943).

On November 13, 2002, at your request, we also provided to you voluminous documents and reports substantiating the claim. Rubin and Rudman also responded to the litany of purported defenses to coverage that you had raised, including specific case citations negating your purported defenses. We believe that you have failed to demonstrate that there are valid, good faith defenses to Kleenit's claim.

Because more than 100 days have elapsed without Utica confirming that it will provide a defense in this instance, Utica has forfeited its opportunity to select counsel of its choice and Kleenit has therefore selected this firm to represent and defend it in this matter.

Based upon the foregoing, we demand that Utica inform us on or before January 20, 2003 whether it will enter into a tolling and standstill agreement or provide defense and indemnification under the Policy. If you fail to agree to one of those steps, Kleenit may file a

RUBIN AND RUDMAN LLP

Kristin Martin
January 10, 2003
Page 3

lawsuit to establish your defense and coverage obligations and seek multiple damages and
attorney's fees under M.G.L. c.93A and c.176D. Please contact us with your response.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

PJF/ees
Enclosure
cc:     Keith Crider, Kleenit, Inc. (with enclosure)



**COMMONWEALTH OF MASSACHUSETTS**
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
Central Regional Office, 627 Main Street, Worcester, MA 01608

JANE M SWIFT
Governor

BOB DURAND
Secretary

LAUREN A. LISS
Commissioner

**URGENT LEGAL MATTER: PROMPT ACTION NECESSARY**

DEC 3 0 2002

Kleenit, Inc.
d/b/a Dud's Cleaners & Launderers
44 Park Street
Ayer, MA 01432

RE: CRWSC-Acton
293 Main Street
Dud's Dry Cleaners

Attention: Keith Crider
President

RTN 2-14526

**NOTICE OF RESPONSIBILITY**
**120-DAY NOTIFICATION**
**M.G.L. C. 21E, 310 CMR 40.0000**

Dear Mr Crider:

Thank you for submitting the Release Notification Form (RNF) to the Department of Environmental Protection, Bureau of Waste Site Cleanup (the Department) on October 29, 2002. Your submittal presents the Department with information that the property at 293 Main Street, Acton, MA, has been subject to a release of hazardous materials, Tetrachloroethylene or dry cleaning fluid also known by the common name, Perc. According to the RNF the release has resulted in the presence of Tetrachloroethylene in the soil at concentrations that exceed the applicable Reportable Concentrations (RC). Based on this information, the Department has determined that the property, or portions thereof, is a disposal site that requires a response action.

The Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c 21E, which is implemented through regulations promulgated by the Department, governs the cleanup of disposal sites. These regulations are referred to as the Massachusetts Contingency Plan, (the MCP), and are codified at 310 CMR 40.0000. The Department wishes to ensure that you are aware of your rights and responsibilities under M.G.L. c. 21E and the MCP.

In your submittal, you (as used in this notice, "you" refers to Kleenit, Inc. d/b/a Dud's Cleaners & Launderers) identify yourself as the operator of Dud's Cleaners and Launderers and as a party with potential liability for response action costs and damages under M.G.L. c. 21E, §5. This notice and the attached summary are intended to provide you with information about

This information is available in alternate format. Call Aprel McCabe ADA Coordinator at (617) 556-2788
http://www.state.ma.us/dep • Phone (508) 792-7650 • Fax (508) 792-7621 • TDD # (508) 767-2788
♻ Printed on Recycled Paper

NOTICE OF RESPONSIBILTY    RTN 2-14526

2

liability under Chapter 21E to assist you in deciding what actions to take in response to the conditions that are present at this disposal site.

The Department has determined that there are two potentially responsible parties with respect to this release: 1) you, the operator of the property and, 2) E&A Northeast Limited Partnership, the property owner. The Department requests that the two parties determine amongst themselves how to allocate responsibility for the necessary response actions at the site.

You should be aware that you might have claims against third parties for damages, including claims for contribution or reimbursement for the costs of cleanup. Such claims do not exist indefinitely but are governed by laws that establish the time allowed for bringing litigation. The Department encourages you to take any action necessary to protect any such claims you may have against third parties.

## BACKGROUND

On October 29, 2002, the Department received a RNF from you for a release of Tetrachloroethylene or Perc to the property at 293 Main Street, Acton. The RNF reports the presence of Tetrachloroethylene in the soil at a concentration level that exceeds the applicable RC identified in the RNF. The concentration level reported in the RNF is summarized in parts million (ppm) and compared to the soil reportable concentrations below.

| QHM Released | SOIL Concentration (ppm | RCS-1 (ppm) |
|---|---|---|
| Tetrachloroethylene | 160 | 0.5 |

The Department has assigned Release Tracking Number (RTN) 2-14526 to the disposal site. The Department has no information regarding further actions taken or proposed for this disposal site.

## NECESSARY RESPONSE ACTIONS AND APPLICABLE DEADLINES

October 29, 2002 is the date of release notification for RTN 2-14526. Unless otherwise stated, this date will be the baseline for calculating compliance of this disposal site with the deadlines contained in the MCP.

No disposal site will be deemed to have had all the necessary and required response actions taken for it unless and until all substantial hazards presented by the release and/or threat of release have been eliminated and a level of no significant risk exists or has been achieved in compliance with the MCP. The MCP requires persons undertaking response actions at a disposal site to submit to the Department a Response Action Outcome (RAO) Statement prepared by a Licensed Site Professional upon determining that a level of no significant risk exists or has been achieved at the disposal site. A fee of $750.00 is assessed if an RAO is filed 120 days after release notification, but before Tier Classification. Therefore, if all remediation work has been completed, you are encouraged to have the RAO submitted promptly to avoid the fee.

NOTICE OF RESPONSIBILTY          RTN 2-14526

3

Unless otherwise provided by the Department, responsible parties have one year from the initial date notice of a release or threat of release is provided to the Department pursuant to 310 CMR 40.0300 or from the date the Department issues a Notice of Responsibility, whichever occurs earlier, to file with the Department one of the following submittals: (1) a completed Tier Classification Submittal; or (2) a Response Action Outcome Statement. If required by the MCP, a completed Tier I Permit Application must also accompany a Tier Classification Submittal. Unless otherwise specified by the Department, the deadline for these submittals for this disposal site is October 29, 2003.

The MCP requires responsible parties and any other person undertaking response actions to perform Immediate Response Actions in response to sudden releases, Imminent Hazards and Conditions of Substantial Release Migration. Such persons must continue to evaluate the need for Immediate Response Actions and notify the Department immediately if such a need exists.

## PROCEDURES TO FOLLOW TO UNDERTAKE RESPONSE ACTIONS

The Department encourages parties having liability under M.G.L. c. 21E to take prompt action in response to releases and threats of release of oil and hazardous materials. By taking prompt action, liable parties may significantly lower cleanup costs and avoid the imposition of, or reduce the amount of, certain permit and/or annual compliance assurance fees payable under 310 CMR 4.00.

You must continue to employ or engage a Licensed Site Professional (LSP) to manage, supervise or perform all response actions that you intend to undertake at this disposal site. You may obtain a list of the names and addresses of LSPs by visiting www.mass.gov/lsp; by contacting the Board of Registration of Hazardous Waste Site Cleanup Professionals by telephone at (617) 556-1091, or in person or by mail at One Winter Street, 10th Floor, Boston, Massachusetts 02108.

NOTICE OF RESPONSIBILTY          RTN 2-14526                                4

If you have any questions, please contact the Central Regional Office at the letterhead address or at 508-792-7653. <u>The Department requests that you inform your LSP of this Notice</u>. All future correspondence and communications regarding the disposal site should reference **RTN 2-14526.**

Sincerely,

DEC 30 2002

Frank Sciannameo
Section Chief
Bureau of Waste Site Cleanup

FS\PAS
[ NOR/ISSUED ]
Enclosure
La

cc:  Acton Board of Health.
     Lisa Feagain, E&A Northeast Limited Partnership, 360 Newbury Street, Boston, MA 02115
     Mark Germano, LSP, Coler & Colantonio, Inc., 101 Accord Park Drive, Norwell, MA 02061
     Database Entry
     File

C \WINNT\NORs2002\2-14526ActonKleeidIncnoperatoror.doc

NOTICE OF RESPONSIBILTY          RTN 2-14526

5

## SUMMARY OF LIABILITY UNDER CHAPTER 21E

As stated in the Notice of Responsibility accompanying this summary, the Department has reason to believe that you are a Potentially Responsible Party ("PRP") with potential liability under M.G.L. c. 21E, section 5, for response action costs and damages to natural resources caused by the release and/or threat of release. The Department has identified you as a PRP because it believes you fall within one or more of the following categories of persons made potentially liable by subsection 5(a):

- any current owner or operator of a site from or at which there is or has been a release or threat of release of oil and/or hazardous material;
- any person who owned or operated a site at the time hazardous material was stored or disposed of;
- any person who arranged for the transport, disposal, storage or treatment of hazardous material;
- any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release or threat of release of such material; and
- any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material at a site.

For purposes of the MCP, you are considered a Responsible Party ("RP") with actual liability under Chapter 21E if you fall within one of these categories unless you (1) are entitled to a defense under section 5 or other applicable law, and (2) have reasonably incurred cleanup costs in an amount equal to or greater than any applicable cap on liability under subsection 5(d).

This liability is "strict," meaning it is not based on fault, but solely on your status as an owner, operator, generator, transporter or disposer. It is also joint and several, meaning that each person who falls within one of these categories may be held liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

Section 5 provides a few narrowly drawn defenses to liability, including a defense for releases and damages caused by an act of God, an act of war or an act by a third party other than an employee, agent or person with whom the party has a contractual relationship (see subsection 5(c)); a defense for certain owners of residential property at which the owner maintains a permanent residence (see subsection 5(h)); and a defense for certain public utilities and agencies of the Commonwealth which own a right-of-way that is a site (see subsection 5(j)).

You may voluntarily undertake response actions under the MCP without having your liability under Chapter 21E formally adjudicated by the Department. If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, the Department is authorized by Chapter 21E to perform the necessary work.

By taking the necessary response actions, you can avoid liability for response action costs incurred by the Department in performing these actions. If you are an RP and you fail to perform necessary response actions at the site, you may be held liable for up to three (3) times all response action costs incurred by the Department and sanctions may be imposed on you for failure to perform response actions required by the MCP.

Response action costs include, without limitation, the cost of direct hours spent by Department employees arranging for response actions or overseeing work performed by persons other than the Department or its contractors, expenses incurred by the Department in support of those direct hours, and payments to the Department's contractors (for more detail on cost liability, see 310 CMR 40.1200: Cost Recovery). The Department may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually.

Any liability to the Commonwealth under Chapter 21E constitutes a debt to the Commonwealth. To secure payment of this debt, the Department may place liens on all of your property in the Commonwealth under M.G.L. c. 21E, section 13. To recover this debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against you.

In addition to your potential liability for response action costs and damages to natural resources caused by the release, civil and criminal liability may also be imposed by a court of competent jurisdiction under M.G.L. c. 21E, section 11, and civil administrative penalties may be assessed by the Department under M.G.L. c. 21A, section 16, for each violation of Chapter 21E, the MCP or any order, permit or approval issued thereunder.

If you are an RP and you have reason to believe that your performance of the necessary response actions is beyond your technical, financial or legal ability, you should promptly notify the Department in writing of your inability in accordance with Chapter 21E, subsection 5(e) and 310 CMR 40.0172. If you assert and demonstrate in compliance therewith that performing or paying for such response action is beyond your ability, subsection 5(e) provides you with a limited defense to an action by the Commonwealth for recovery of two to three times the Department's response action costs and 310 CMR 40.0172 provides you with a limited defense to the Department's assessment of civil administrative penalties.

*EXHIBIT 4*

# TUCKER, HEIFETZ & SALTZMAN, LLP

THREE SCHOOL STREET
BOSTON, MASSACHUSETTS 02108
617-557-9696

RICHARD E. HEIFETZ

FACSIMILE - 617-227-9191
HEIFETZ@THS-LAW.COM

January 14, 2003

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**NO. 7001 0320 0003 3484 1057**

Robert A. Fasanella, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA 02110-3319

| Re: | Insured: | Kleenit, Inc. |
| --- | --- | --- |
| | Locus: | 28 Central Square, Chelmsford, MA |
| | Client: | Graphic Arts Mutual Insurance Company |
| | | as part of the Utica National Insurance Group |
| | Client File: | 711577 |

## Response to Demand Letter Pursuant to Massachusetts
### General Laws, Chapter 93A, §§2, 11 and Chapter 176D

Dear Mr. Fasanella:

Kindly be advised that this office represents the interests of the Utica National Insurance Group ("Utica") relative to the above matter. I have left voice mail messages for you and Mr. Feuerbach; however, my telephone calls have not been returned. Your letter of January 8, 2003 has been forwarded to this office for review and response. We take this opportunity to comment upon several of the allegations contained in your correspondence, and to set forth the present position of Utica with respect to your demand.

At the outset, we do not accept your correspondence as a proper demand for relief under the provisions of M.G.L. c.93A. As your client is a Section 11 claimant, there is a serious issue as to whether it even has standing to pursue any claims under Chapter 176D. While Section 9 expressly grants a private litigant standing to pursue a Chapter 176D claim, there is no such corollary right granted to a commercial claimant in Section 11 of Chapter 93A. Accordingly, we do not waive the right to contest that your client simply lacks standing to pursue a Chapter 176D claim in this matter. The

**TUCKER, HEIFETZ & SALTZMAN, LLP**

Robert A. Fasanella, Esq.
January 14, 2003
Page Two

correspondence is, therefore, not in compliance with the provisions of M.G.L. c.93A, §9, and, as such, does not constitute a proper demand under that statute. Without accepting your correspondence as such a demand, we are constrained, due to the tenor and misconstruction of facts, to provide this response.

On October 28, 2002, Kristen H. Martin, staff attorney for Utica forwarded to you a Partial Disclaimer of Coverage and Reservation of Rights (hereinafter the "ROR"). In your initial notice letter of September 25, 2002, you referred to the fact that the insured had a so-called umbrella policy with Utica, policy number LV 6406. As stated in the ROR, Utica has no record of the issuance of such a policy to your client, Kleenit, Inc. or any of its related entities. The mere rendition of a policy number is hardly proof of coverage. The insured has the burden of proof relative to proving coverage within the policy description of the covered risks. *Markline Co. Travelers Ins. Co.*, 384 Mass. 139, 140 (1981).

Your claim for indemnity is premature. The duties to defend and indemnify are separate and distinct under the policy. The policy issued by Utica requires an occurrence or accident within the policy term. I have reviewed all of the material forwarded to Ms. Martin and it is absent any proof of an occurrence or release of hazardous materials during the Utica policy period. Nonetheless, this issue need not be decided at this time, and as the facts unfold, a determination may be made at a later date relative to any indemnity obligation that Utica may have under its policy.

Further, your claim for pre-tender defense is misplaced. The policy requires that no insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, without Utica's consent. Any such voluntary obligation incurred by your client would be at its own expense. *Augat, Inc. v. Liberty Mutual Insurance Co.*, 410 Mass. 117 (199); *Catholic Relief Insurance Co. of America v. Liquor Liability Joint Underwriting Association of Massachusetts*, No. 93-0840, 1997 Super. Lexis 68, at *51, 1997 Westlaw 781448 (Mass. Super. Ct. Dec. 22, 1997).

It is Utica's intention to contact the other insurers in this matter to discuss a cost sharing agreement relative to the defense of this claim. Please forward copies of the Travelers, Sentry and Globe Indemnity policies at your earliest convenience in order to ascertain the rights of each such Insurer as it may relate to the defense of your client's claim. Please also advise if any representative of the Sentry Insurance Company has acknowledged your claim, and, if so, please forward a copy of the response.

**TUCKER, HEIFETZ & SALTZMAN, LLP**

Robert A. Fasanella, Esq.
January 14, 2003
Page Three


Finally, please be advised that nothing set forth in this letter is to be construed as a waiver or relinquishment of any right of Utica National Insurance Group, its agents, servants, employees or attorneys, whether specified within this letter or not, and no act or acts of our client, its agents, servants, employees or attorneys, is to be so construed.

I look forward to discussing this matter with you. Should you have any questions, please feel free to contact me.

Very truly yours,


REH/cf                      Richard E. Heifetz

cc    Peter J. Feuerbach, Esq.
      Kristen H. Martin, Esq.

*EXHIBIT 5*

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

## CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

March 11, 2003

Michael F. Aylward, Esquire
Morrison, Mahoney and Miller
250 Summer Street
Boston, MA  02210
(for Sentry)

Karl A. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason & Gette LLP
950 Winter Street - Suite 1300
Waltham, MA  02451
(for Royal)

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA  02110
(for Graphic Arts/Utica)

T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit
Travelers
Three Farm Glen Boulevard
Farmington, CT 06032-1970

RE:    **Kleenit, Inc. - Acton and Chelmsford Sites, Massachusetts**

Dear Counsel:

This letter is to further our discussions on insurance coverage pertaining to the Notices of Responsibility and alleged releases of oil and hazardous materials at the sites operated by Kleenit, Inc. in Acton and Chelmsford, Massachusetts. We have enclosed a chart summarizing Kleenit's expert costs and expenses through January 2003, and attorneys' fees through February, 2003, along with copies of the invoices and checks. As you can see, for the present purposes of identifying defense costs, we have deducted from Kleenit's total payments the amounts attributable to the presentment of its insurance claims and the amounts attributable to indemnification, which relate principally to the removal of some contaminated material from the Chelmsford site. Although presentment and indemnification costs are not included in the present analysis, Kleenit reserves its rights to pursue payment of them in the future.

Kleenit's defense-related costs pertain to assessment and investigation activities in response to the NORs and the releases and, therefore, should be reimbursed promptly by the insurance companies. As you can see in the proposed Joint Defense and Insurance Defense Agreement that is enclosed herewith, we propose a cost sharing arrangement whereby your clients would pay Kleenit's defense costs on a pro rata basis. That approach was adopted in Rubenstein v. Royal Ins. Co. of America, 45 Mass App Ct. 244, 247 (1998), rev. den. 428 Mass.

543600_1

CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

## RUBIN and RUDMAN LLP

Michael F. Aylward, Esquire, et al.
March 11, 2003
Page 2

1105 (1998) ("Requiring [one insured] to pay its pro rata share of the defense costs advanced by [another insurer] will deter insurers from stonewalling their defense obligations while other insurers are forced to shoulder more than their share involving the shared risk.")

In response to coverage defenses that have been raised, your clients would be wrong to assert that they are not obligated to pay defense costs incurred by Kleenit prior to tendering its claims in September 2002. Reliance on Augat, Inc. vs. Liberty Mutual Insurance Co., 410 Mass. 117 (1991) is misplaced, and that case does not relieve the insurance companies of their obligations with regard to Kleenit. Augat does not stand for the proposition that an insurer is free of liability under a policy, without having to show prejudice, if an insured makes a voluntary payment. In fact, subsequent to Augat, the Appeals Court ruled that such an argument is "fallacious." See Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465, 480 (1997). "[T]he general rule is that the insured's noncompliance with a voluntary payment clause does not discharge the insurer's contractual duty unless the insurer demonstrates actual prejudice. . . ." Atlas Tack Corp. v. Liberty Mut. Ins. Co., 48 Mass. App. Ct. 378, 383 (1999), citing Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305-306 (1994) and Employers' Liability Assur. Corp., supra.

We also note that in Augat, unlike in Kleenit's matters, the insured, without the knowledge or permission of its insurer, engaged in extensive settlement discussions with government regulators, agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cleanup cost, and paid a portion of that cost. In Kleenit's case, it has merely conducted assessment activities without engaging in or obligating itself to perform costly cleanup except for limited costs to remove discrete contamination in the Chelmsford matter to mitigate its potential damages to other third-party claimants, as discussed above. In addition, Kleenit has not engaged in formal settlement discussions, agreed to pay any settlement amount nor entered into any consent orders. As a result, the extremely reasonable measures that Kleenit undertook prior to September 2002 to defend itself and/or mitigate potential damages have not caused any prejudice or deprived the insurance companies of any opportunity to protect their respective interests.

An insurer cannot merely assert prejudice, but instead must demonstrate specific and material prejudice:

> [T]he prejudice shown, to relieve the insurer, must have been **material and specific**. The insurer is challenged to show that it suffered 'actual prejudice,' not just a **'possibility'** of it; that there has been **'actual harm'** to its interests; that it has been relegated to a 'substantially less favorable position than it would have been in had timely notice been provided.' Further, the insurer has 'the burden of identifying the precise manner in which its interests have suffered.'

RUBIN AND RUDMAN LLP

**CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE**

Michael F. Aylward, Esquire, et al.
March 11, 2003
Page 3


Employers' Liability Assur. Corp., Ltd., 43 Mass. App. Ct. at 476, citing Darcy v. Hartford Ins. Co., 407 Mass. 481, 486-487 (1990).

In the present matters, despite several months of investigations, the insurance companies have failed to assert, let alone demonstrate, specific and material prejudice caused by Kleenit's actions. However, the companies have at the same time attempted to deny Kleenit's costs incurred prior to September 2002. The insurance companies should reconsider their wrongly held positions and agree to pay such defense costs in light of their clear obligations under Massachusetts law.

In view of Kleenit's ongoing, extensive defense at the two separate sites, and in view of the financial burden it is suffering as a result, the insurance companies should promptly agree to pay the defense costs enumerated in the enclosed documents and agree to the insurance Defense Cost Sharing Agreement proposed herein.

Under separate cover we will provide you with status reports concerning activities at the two sites, along with information on future defense costs as they are incurred.

Please feel free to contact us if you have any questions concerning these enclosures or matters. Thank you for your assistance and consideration.

Very truly yours,

Robert A. Easanella

Peter J. Feuerbach

PJF/ees
Enclosures
cc:    Keith Crider, Kleenit, Inc. (w/encls.)
       Jonathan P. Metz, Travelers SLG-HOECU (w/encls.)

543600_1

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

August 11, 2003

**By Facsimile: 617-227-9191**

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA 02110
(For Utica)

**By Facsimile: 781-466-0701**

Karl S. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason
& Gette LLP
950 Winter Street, Suite 1300
Waltham, MA 02451
(For Royal)

RE:     **Final Demand for Defense Pursuant to M.G.L. c.93A, §11 and c.176D**
         Policy Holder:     Kleenit, Inc. ("Kleenit")
         Sites:             Acton and Chelmsford Sites, Massachusetts

Dear Rick and Karl:

This letter responds to Attorney Vasiloff's letter dated July 25, 2003, wherein he enclosed a proposed "Interim Defense Cost-Sharing and Non-Waiver Agreement" ("Proposed Defense Agreement") on behalf of Royal Insurance Company ("Royal"), Utica Mutual Insurance Company ("Utica") and The Travelers Indemnity Company of America ("Travelers") (Royal, Utica and Travelers are collectively referred to as the "Carriers".) We are somewhat pleased that the Carriers have finally agreed on a cost sharing pro-rata share that covers %100 of certain defense fees. However, Kleenit is troubled by the attempt to exclude pre-tender defense fees without just cause.

Kleenit is extremely disappointed and frustrated by the Carriers' long-awaited Proposed Defense Agreement because, inter alia, it is overreaching and violates established case law to which we have referred the Carriers on many occasions during the past ten (10) months when the Carriers have purportedly been "investigating" Kleenit's claims. The Proposed Agreement seeks to require Kleenit to waive and release important legal rights while at the same time denying Kleenit basic financial and procedural protections afforded by the policies and law. Some provisions are so vague as to be unworkable in practice and will likely result in future arguments about defense costs and little real reimbursement by the Carriers.

560366_1

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 2

Due to the Carriers' long intransigence and unfair settlement practices over the past ten (10) months, which has forced Kleenit to spend tens of thousands of dollars in legal fees to pursue its claims, we could not recommend the proposed "Defense Agreement" to Kleenit unless, inter alia, it paid Kleenit's costs to pursue its claims and provide a full defense (i.e., including pre-tender costs). Kleenit has for months now challenged the Carriers' rote assertion that they are not liable for pre-tender defense costs or voluntary payments. As discussed in our multiple letters to you on this issue, the case law clearly holds that the Carriers are obligated by law to demonstrate actual and specific prejudice allegedly caused by Kleenit's actions, if they purport to deny coverage for alleged pre-tender costs or voluntary payments. Based on 10 months of "investigations" we would think the Carriers would have been able to demonstrate numerous actual and specific elements of prejudice, if such prejudicial actions in fact existed. Despite the Carriers' clear liability for pre-tender costs under established case law, Rick Heifetz's and Travelers' recent letters and the Proposed Agreement all purport to deny Kleenit's pre-tender costs without any evidence whatsoever demonstrating actual prejudice. In short, the Proposed Agreement is but the latest piece to the Carriers' persistent pattern of unfair and deceptive claim settlement practices in violation of M.G.L. c.93A, §11, and M.G.L. c.176, §3(9), and is therefore rejected by Kleenit as presently drafted. The Proposed Defense Agreement must eliminate the exclusion of pre-tender defense costs.

We have challenged the Carriers several times on any allegations of prejudice, including our letter dated March 11, 2003, the pertinent parts of which are quoted below for your convenience. Almost five months have passed and not one of the Carriers has demonstrated one instance of actual prejudice in this matter contrary to their clear, legal obligations. The Carriers nonetheless continue to deny pre-tender costs, which has caused Kleenit to incur substantial legal fees prosecuting its claims, and which constitutes unfair claim settlement practices in violation of M.G.L. c.93A and M.G.L. c.176D.

Our March 11, 2003 letter to the Carriers stated:

"In response to coverage defenses that have been raised, your clients would be wrong to assert that they are not obligated to pay defense costs incurred by Kleenit prior to tendering its claims in September 2002. Reliance on Augat, Inc. vs. Liberty Mutual Insurance Co., 410 Mass. 117 (1991) is misplaced, and that case does not relieve the insurance companies of their obligations with regard to Kleenit. **Augat does not stand for the proposition that an insurer is free of liability under a policy, without having to show prejudice, if an insured makes a voluntary payment. In fact, subsequent to Augat, the Appeals Court ruled that such an argument is "fallacious." See Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465, 480 (1997). "[T]he general rule is that the insured's noncompliance with a**

560366_1

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 3

**voluntary payment clause does not discharge the insurer's contractual duty unless the insurer demonstrates actual prejudice. . . ."** Atlas Tack Corp. v. Liberty Mut. Ins. Co., **48 Mass. App. Ct. 378, 383 (1999),** citing Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305-306 (1994) and Employers' Liability Assur. Corp., supra.

We also note that in Augat, unlike in Kleenit's matters, the insured, without the knowledge or permission of its insurer, engaged in extensive settlement discussions with government regulators, agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cleanup cost, and paid a portion of that cost. In Kleenit's case, it has merely conducted assessment activities without engaging in or obligating itself to perform costly cleanup except for limited costs to remove discrete contamination in the Chelmsford matter to mitigate its potential damages to other third-party claimants, as discussed above. In addition, Kleenit has not engaged in formal settlement discussions, agreed to pay any settlement amount nor entered into any consent orders. As a result, the extremely reasonable measures that Kleenit undertook prior to September 2002 to defend itself and/or mitigate potential damages have not caused any prejudice or deprived the insurance companies of any opportunity to protect their respective interests.

An insurer cannot merely assert prejudice, but instead must demonstrate specific and material prejudice:

**[T]he prejudice shown, to relieve the insurer, must have been material and specific. The insurer is challenged to show that it suffered 'actual prejudice,' not just a 'possibility' of it; that there has been 'actual harm' to its interests; that it has been relegated to a 'substantially less favorable position than it would have been in had timely notice been provided.' Further, the insurer has 'the burden of identifying the precise manner in which its interests have suffered.'**

Employers' Liability Assur. Corp., Ltd., 43 Mass. App. Ct. at 476, citing Darcy v. Hartford Ins. Co., 407 Mass. 481, 486-487 (1990).

In the present matters, despite several months of investigations [as of March 11, 2003], the insurance companies have failed to assert, let alone demonstrate, specific and material prejudice caused by Kleenit's actions. However, the companies have at the same time attempted to deny Kleenit's costs incurred prior to September 2002. The insurance companies should reconsider their wrongly held positions and agree to pay such defense costs in light of their clear obligations under Massachusetts law."

RUBIN and RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 4


See, also, Augat, 410 Mass. at 122 ("We have previously ruled that a showing of actual prejudice is required where the insurer seeks to disclaim coverage based on the violation of a provision requiring: that the insured promptly notify the insurer of a claim, [or] that the insurer consent to a settlement affecting a claim . . . .")

Even though we do not agree with the Appeals Court's ruling in Eastern Products Corporation v. Continental Casualty Company, 58 Mass.App.Ct. 16 (2003), the case which the Carriers recently proffer, that decision still does not relieve the Carriers of their legal burden to demonstrate actual prejudice. In fact, if the Carriers read Eastern Products carefully they will be forced to acknowledge that the case fully supports Kleenit's position that the Carriers must demonstrate actual prejudice.

The Court in Eastern Products determined that the insurers in that case met their burden of demonstrating actual prejudice where, inter alia, the long-time president and largest shareholder of the insured had died and the insured had wound up its business and "destroyed all of its correspondence and business receipts." Id. at 21, 23-24. Furthermore, the Court determined that the insured in Eastern Products had "entered into a binding agreement" with the Department of Environmental Protection to completely clean up its site at its own expense by "appl[ying] to DEP for a waiver of the written approvals necessary for remedial response actions. . . .".. Id., at 24-26.

As you and the Carriers know, none of the circumstances at issue in Eastern Products are present in Kleenit's case. (Kleenit's documents and witnesses are available and Kleenit has not entered into "waivers" or any binding agreements to completely clean the sites). See also, M.G.L. c.175, §112, requiring the Carriers to demonstrate prejudice due to alleged late notice. The Carriers are therefore unable in the present case to demonstrate actual prejudice or deny pre-tender costs.

Given the amount of time, expense and delay in reaching this point in the proposed Defense Agreement, Kleenit will not release (as suggested in the draft Defense Agreement #5) its bad faith claims that it may be entitled to bring against the Carriers for failure to provide defense, especially if the Carriers continue to maintain that they do not owe pre-tender defense expenses and have acted or do act in bad faith regarding their duty to indemnify Kleenit pursuant to the respective policies. Furthermore, Kleenit will not agree to allow the Carriers to attempt at some later time to recoup its defense fees as suggested in Paragraph 4 of the draft proposed Defense Agreement. As you know, an insurer has a duty to provide such defense even if claims made by the litigants, such as the DEP or other third parties are presently or are eventually determined to be frivolous or baseless. These defense rights are what Kleenit paid for and are

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 5

expecting from its Carriers. Therefore, we have deleted such provisions from the proposed Defense Agreement.

Based upon the foregoing, we demand that the Carriers, including Travelers, which will obtain a copy of this letter through Attorney Donald Nagle (Kleenit's counsel in its claim with Travelers), to promptly revise the Proposed Agreement so that it is not overreaching and immediately provide specific evidence of actual prejudice, if you continue to propose to exclude Kleenit's pre-tender costs. We have enclosed a marked-up tracked revision of the proposed Defense Agreement with changes highlighted for your convenience. We believe that failure to revise the Agreement as proposed or to provide such evidence will constitute unfair settlement practices in violation of M.G.L. c.93A and M.G.L. c.176D. If we cannot resolve the matter of pre-tender defense costs, then we unfortunately must recommend that Kleenit reject the proposed Defense Agreement and file a declaratory Judgment Action seeking a Court Order and all defense and claim related fees and expenses incurred to date.

Very truly yours,

Robert A. Fasanella

RAF/PJF/ees
Enclosure
cc:     Keith Crider, Kleenit, Inc.
        Peter J. Feuerbach, Esq.
        Donald P. Nagle (by facsimile 508-732-8971)
        Andrew Cardoza (for Hanover)

560366_1