IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10351-NG

| | |
|---|---|
| KLEENIT, INC.,<br>Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>) |
| SENTRY INSURANCE CO.,<br>ROYAL & SUNALLIANCE,<br>UTICA NATIONAL INSURANCE<br>GROUP, and TRAVELERS<br>PROPERTY AND CASUALTY,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

**OPPOSITION OF THE TRAVELERS INDEMNITY COMPANY,
MIS-NAMED IN THE COMPLAINT AS "TRAVELERS PROPERTY
AND CASUALTY" TO THE EMERGENCY MOTION FOR A PRELIMINARY
INJUNCTION FILED BY THE PLAINTIFF**

Defendant The Travelers Indemnity Company ("Travelers") opposes Plaintiff Kleenit Inc.'s ("Kleenit's") Emergency Motion for a Preliminary Injunction because plaintiff will be unable to demonstrate substantial likelihood of success on the merits and irreparable harm. This case concerns Kleenit's claim for insurance coverage for costs it voluntarily incurred before it tendered its claim to Travelers. As a matter of law, the plaintiff is not entitled to reimbursement of those costs. Moreover, this is a dispute about money, and there is no reliable record evidence that the plaintiff would be irreparably harmed if an injunction did not issue.

## STATEMENT OF FACTS

Kleenit owns and operates dry-cleaning and laundering service facilities in Chelmsford, Massachusetts ("the Chelmsford facility") and Acton, Massachusetts ("the Acton facility"). See Complaint, ¶12. The Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility ("NOR") to Kleenit regarding the Chelmsford facility on January 28, 2001 and issued a second NOR to Kleenit regarding the Chelmsford facility on June 19, 2001. Id., ¶14. According to Kleenit, DEP also issued a NOR to Kleenit pertaining to the Acton facility on December 30, 2002. Id.

Although Kleenit received its first NOR on January 28, 2001, it did not request any insurance coverage from Travelers until September 27, 2002, approximately twenty (20) months after the initial NOR was issued by DEP (and approximately fourteen (14) months after the second NOR regarding the Chelmsford facility was issued on June 19, 2001). See Affidavit of Catherine Kozyra ("Kozyra Aff."), attached hereto as Exhibit A, at ¶3. Kleenit's president and chief financial officer, Keith Crider, has acknowledged that Kleenit delayed in requesting coverage from Travelers because "[a]t first Kleenit believed that it could handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense." See Affidavit of Keith Crider ("Crider Aff."), attached hereto as Exhibit B, at ¶6.

On January 13, 2003, Kleenit notified Travelers of the NOR regarding the Acton facility. See Kozyra Aff., at ¶3. Four days later, on January 17, 2003, Travelers furnished counsel for Kleenit with a comprehensive reservation of rights letter ("the ROR letter") that identified and explained Travelers' coverage position regarding the three aforementioned NORs issued to Kleenit. A true and complete copy of the ROR letter is attached hereto, as Exhibit C.

Travelers agreed to defend Kleenit against the three NORs, subject to a full reservation of rights. See Exhibit C, at pp. 1 and 4. More specifically, Travelers agreed to "contribute to the reasonable and necessary defense-related counsel fees and expenses billed by an appropriately qualified law firm of Kleenit's choice and incurred subsequent to the tender of the Chelmsford and Acton NORs to Travelers by Kleenit on September 27, 2002." Id., at p. 4. Travelers further agreed to pay other expenses incurred by Kleenit for work required by the NORs, but only if these other expenses qualify as "defense costs" in that they "clearly relate to the resolution of a question of Kleenit's liability at issue in this matter, and if resolving such issue is necessary to Kleenit's defense." Id.

As explained by Travelers in the ROR letter, Travelers has no obligation to reimburse Kleenit for costs and expenses incurred by Kleenit prior to September 27, 2002, when Kleenit first requested insurance coverage from Travelers. Id., at pp. 2 and 3. Travelers' position in this regard is based upon, without limitation, the relevant insurance policies' provision that Kleenit "shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident." Id., at p. 3 (citing *Augat, Inc. v. Liberty Mutual Ins. Co.*, 410 Mass. 117, 121-123 (1991)). As noted above, Kleenit voluntarily incurred costs for twenty months before requesting insurance coverage from Travelers, because "Kleenit believed that it could handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense." See Crider Aff., attached hereto as Exhibit B, at ¶6.

The ROR letter sent by Travelers also identified several other issues that potentially could preclude coverage, including the policies' exclusion for property damage "arising out of any

3

emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured ... " See Exhibit C, at p. 5, ¶¶ 6 and 7.[1]

Travelers has paid, or has agreed to pay, its full share (as calculated under the terms of a joint cost-sharing agreement among the defendants) of the defense costs incurred by Kleenit since September 27, 2002. See Kozyra Aff., attached hereto as Exhibit A, at ¶¶4 and 5. As of this date, Travelers has paid $29,087.25 to Kleenit for said defense costs. Id., at ¶5. Moreover, Travelers intends to continue to reimburse Kleenit for defense costs incurred by Kleenit after September 27, 2002, pursuant to the cost-sharing agreement reached by and among the defendants. Id., at ¶6. Travelers continues to decline payment of those costs incurred by Kleenit before Kleenit requested insurance coverage from Travelers on September 27, 2002 because, as set forth above, these defense costs were voluntarily incurred by Kleenit. Id., at ¶7. See, also, Crider Aff., attached hereto as Exhibit B, at ¶6 and Exhibit C, at pp. 2 and 3.

## LEGAL ARGUMENT

As the party seeking injunctive relief, Kleenit bears the burden of establishing that "(1) it is *substantially* likely to succeed on the merits of its claim; (2) absent the injunction there is a significant risk of *irreparable* harm; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest." *Lanier Professional Services, Inc. v. Ricci*, 192 F.3d 1,3 (1st Cir. 1999), quoting *I.P. Lund Trading Aps v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998) (emphasis added). The heavy burden borne by Kleenit is reflected in the Supreme Court's

---

[1] Please note that Travelers, by referring to the ROR letter and attaching it hereto, does not waive any potential coverage defense(s) not enumerated or otherwise identified in the ROR letter.

guidance that "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 117 S.Ct 1865, 1867, 520 U.S. 968, 972 (1997), quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, §2948 pp. 129-130 (2d ed.1995) (emphasis added by Court). As set forth in more detail below, Kleenit cannot meet this burden because, without limitation, Kleenit cannot establish either (1) that "it is *substantially* likely to succeed on the merits of its claim" and/or (2) "absent the injunction there is a significant risk of *irreparable* harm." See *Lanier Professional Services, Inc. v. Ricci*, 192 F.3d at 3 (emphasis added).

I.   **Kleenit is not substantially likely to succeed on the merits of its claim against Travelers.**

As repeatedly established by the First Circuit, "likelihood of success is the touchstone of the preliminary injunction inquiry." *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir. 1998), citing *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996) and *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993). Moreover, in order to obtain preliminary injunctive relief, the movant must establish that its likelihood of success on the merits is "substantial." *Lanier Professional Services, Inc. v. Ricci*, 192 F.3d 1,3 (1st Cir. (Mass)(1999), quoting *I.P. Lund Trading Aps v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998). Kleenit cannot satisfy this burden because Travelers is not responsible for the pre-tender defense costs Kleenit voluntarily incurred during the twenty-month period before Kleenit requested insurance coverage. Moreover, Travelers has identified a host of additional coverage defenses that significantly diminish Kleenit's likelihood of success on the merits of its claims against

Travelers.

> A.  *The defense costs incurred by Kleenit prior to September 27, 2002 and sought by Kleenit in its motion for injunctive relief constitute voluntary payments for which Travelers is not responsible.*

As noted above, Travelers has paid, or has agreed to pay, its full share of all defense costs incurred by Kleenit since Kleenit requested insurance coverage on September 27, 2002. See Kozyra Aff., attached hereto as Exhibit A, at ¶¶ 4 and 5.[2] Nevertheless, Kleenit has filed suit to recover the costs it incurred prior to September 27, 2002, and is seeking to recover these costs through this motion for injunctive relief. There is no legal or factual basis for Kleenit to recover its voluntarily-paid, pre-tender defense costs.

The Travelers policies clearly state that Kleenit "shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident." See Exhibit C, at p. 3. Kleenit's own president and chief financial officer, Keith Crider, has acknowledged that, for the twenty-month period between January 28, 2001 (when Kleenit received its first NOR from DEP) and September 27, 2002 (when Kleenit requested insurance coverage from Travelers), Kleenit voluntarily incurred the costs associated with the NORs as "an ordinary operating expense," rather than seeking insurance coverage for these costs. See Crider Aff., attached hereto as Exhibit B, at ¶6. Kleenit even continued with this voluntary course of action after it received its second NOR for the Chelmsford facility, on June 19, 2001. Mr. Crider

---

[2] In its motion, Kleenit seeks an injunction requiring the defendants to pay post-tender defense costs and asserts that the defendants have failed to do so. To the contrary, the defendants have paid or will pay all post-tender costs under reservations of rights and pursuant to a cost-sharing agreement among them. Kozyra Affid., para. 5-6. Accordingly, Kleenit's request for post-tender costs is moot.

6

has been the chief financial officer of Kleenit since approximately 1967,[3] and the Travelers policies at issue were in effect during the 1970s; consequently, neither Kleenit nor Mr. Crider can reasonably argue that Mr. Crider was unaware of the Travelers policies at the time Kleenit decided to voluntarily incur the costs associated with the Chelmsford NORs. Similarly, Kleenit cannot argue that, because the pre-September 27, 2002 defense costs were incurred by Kleenit pursuant to a mandate from DEP, those costs were not "voluntarily" incurred; as explained by the Supreme Judicial Court in *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 117, 122 (1991), the term "voluntary," when used in the context of environmental defense and cleanup costs incurred by an insured pursuant to a governmental mandate, refers to whether the insured party exercised its option to seek insurance coverage for the costs or (as here) chose to incur those costs itself.

Kleenit argues that Travelers cannot disclaim coverage for Kleenit's voluntary payments unless and until Travelers establishes that it was prejudiced by these voluntary payments. Again, however, Kleenit's position is incorrect. In situations where an insured voluntarily incurs obligations before tendering its claim to the insurer, there is no requirement that the carrier prove that it was prejudiced. *Augat, supra.* Prejudice is presumed. The argument about "prejudice" is a red herring.

Kleenit confuses the doctrine of "voluntary payments" with other judicial guidance regarding an insurer's obligation to establish prejudice before disclaiming coverage on the basis of late notice. Although Kleenit may have failed to timely notify its carriers of the NORs, Travelers need not rely upon that coverage defense in order to establish that it is not responsible for the NOR-related costs Kleenit voluntarily incurred before eventually requesting insurance

---

[3]See Crider Aff, attached as Exhibit B, at ¶1.

coverage on September 27, 2002.

As explained by the SJC in *Augat*, an insured who voluntarily incurs environmental clean-up costs is not eligible for subsequent reimbursement from the insurer. *Id.*, at 122-123. More specifically, insurance coverage is not available if, by the time the insured requests coverage from the insurer, "[t]here [is] nothing left for the insurer to do but issue a check." *Id.*, at 123. See, also, *Managed Health Care Systems, Inc. v. St. Paul Fire and Marine Ins. Co.*, 2001 WL 34114949 (D.Mass. 2001) (applying Massachusetts law and citing *Augat*, court held that an insured was not entitled to recover from its insurer defense costs that the insured incurred for one year prior to notifying the insurer of the underlying claim). This guidance precludes Kleenit from recovering the costs it voluntarily incurred, *for a period of twenty months*, before September 27, 2002 because, by the time Kleenit chose to seek insurance coverage, "there was nothing left for [Travelers] to do but issue a check" for the pre-September 27, 2002 costs. Stated differently, Travelers' defense goes far beyond potential late notice; rather, by Kleenit's own admission, Kleenit (1) voluntarily elected to respond to the Chelmsford NORs on its own, without seeking insurance coverage, (2) subsequently spent twenty months responding to the Chelmsford NORs on its own, characterizing the related costs as an "ordinary operating expense", and (3) then, only after deciding that the costs were becoming too much to bear, sought to involve Travelers by seeking insurance coverage. See Crider Aff, attached as Exhibit B, at ¶1.

Given this fact pattern, and the clear guidance set forth in the factually analogous *Augat* and *Managed Health Care Systems* decisions, Kleenit is not entitled to recover from Travelers the costs Kleenit incurred before requesting coverage on September 27, 2002. In the context of its motion for preliminary injunction, Kleenit is not "*substantially*" likely to succeed on the merits

8

of its claim" against Travelers. *Lanier Professional Services, Inc. v. Ricci*, 192 F.3d 1,3 (1st Cir. (Mass)(1999), quoting *I.P. Lund Trading Aps v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998) (emphasis added).[4]

> B. *Kleenit's likelihood of success on the merits is further diminished by the numerous, and wide ranging, additional coverage defenses available to Travelers.*

The ROR letter sent by Travelers to Kleenit identifies two pages of coverage exclusions, in addition to the "voluntary payment" provision discussed above, that undermine Kleenit's alleged right to insurance coverage. See Exhibit C, at pp. 4 and 5. These additional defenses include the pollution exclusion set forth in the relevant Travelers' policies, which precludes coverage for property damage "arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured ... " See Exhibit C, at p. 5, ¶¶ 6 and 7.

As noted above, the Supreme Court has characterized "a preliminary injunction [a]s an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 117 S.Ct 1865, 1867, 520 U.S. 968, 972 (1997), quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, §2948 pp. 129-130 (2d ed.1995) (emphasis added by Court). Given the "drastic" and "extraordinary" nature of preliminary injunctive relief, and the correspondingly arduous burden of persuasion placed upon the party seeking such relief, the numerous and viable coverage

---

[4]Kleenit's counsel is aware of the Augat decision, since he was involved in a case last year before the Massachusetts Appeals Court in which, on behalf of another client, he apparently made a similar argument, which the Appeals Court rejected. *Eastern Products Corp. v. Continental Casualty Co.*, 58 Mass. App. Ct. 16, 26 (2003).

9

defenses available to Travelers in this litigation establish that Kleenit's motion should be denied.

## II. Kleenit will not suffer irreparable harm.

In order to obtain the injunctive relief it is seeking, Kleenit must prove that "absent the injunction there is a significant risk of *irreparable* harm." *Lanier Professional Services, Inc. v. Ricci*, 192 F.3d 1,3 (1st Cir. (Mass)(1999), quoting *I.P. Lund Trading Aps v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998) (emphasis added). Kleenit attempts to satisfy this burden of proof by alleging that "Kleenit has incurred severe financial hardship over the past two years, which at times has threatened the very existence of the business, as a result of extraordinary expenses associated with" the NORs. See Crider Aff, attached as Exhibit B, at ¶2. Kleenit further alleges that it will "suffer irreparable financial and fiscal harm if it is not reimbursed for all outstanding defense costs at the Chelmsford and Acton sites...." Id., at ¶10. In sum, Kleenit alleges that the unreimbursed defense costs it has incurred are so high that Kleenit will suffer irreparable harm if Travelers is not compelled, by a preliminary injunction, to pay Kleenit for said costs.

Kleenit's motion runs up against the well-established doctrine that, if the asserted damages are monetary, the moving party has an adequate remedy at law at the conclusion of the case. *See, e.g. Ross Simmons of Warwic, Inc. v. Baccarat*, 102 F.3d 12, 18-19 ( 1st Cir. 1996); *CMM Cable Dep., Inc. v. Ocean Coast Properties, Inc.*, 48 F. 3d 618, 622 (1st Cir. 1995). In such cases, the plaintiff will normally be unable to demonstrate irreparable harm.

In an apparent effort to assert non-monetary damages, Kleenit alleges that, if payments are not made, it may be "unable to implement cost effective site assessment and cleanup (response actions). For example, irreparable harm may result to downgradient property owners and occupants of the day-care facility in Chelmsford on other sensitive environmental

10

receptors..." Crider Affid., para. 11. The Court should reject this argument for several reasons. First, it is totally speculative. Kleenit frames its argument in terms of hypothetical possibilities as to what **might** happen if its motion were denied. There is no evidence in the record that irreparable harm to the environment is imminent or even a probability. Courts have repeatedly held that an injunction may not issue if the allegedly irreparable harm is speculative or attenuated. *See, e.g. Southex Exhibitions, Inc. v. Rhode Island*, 215 F.3d 1312 (Table)(1st Cir. 2000); *Ross-Simmons, supra.*, 102 F. 3d at 19; *see also Micro Networks Corp. v. HIG Hightec, Inc.*, 188 F. Supp. 2d 18, 22 (D.Mass. 2002). "Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction." *In re Rare Coin Galleries of America, Inc.*, 862 F. 2d 896, 902 (1st Cir. 1988). In addition, Kleenit's argument is not supported by the record evidence. There is no evidence that denial of the motion would lead to irreparable environmental contamination. Nor is there any support for Kleenit's argument that denial of the motion could lead to employee lay-offs, the sale of facilities or bankruptcy. Crider Affid., para. 12.

Moreover, "[a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *FIBA Leasing Co., Inc. v. Airdyne Indus., Inc.*, 826 F.Supp. 38, 39 (D.Mass. 1993), citing *San Francisco Real Estate Investors v. Real Estate Investment Trust of America*, 692 F.2d 814, 818 (1st Cir. 1982). Consequently, because Kleenit chose, for twenty months, to voluntarily incur the NOR-related costs and treat them as "an ordinary operating expense,"[5] Kleenit cannot now obtain a preliminary injunction that compels Travelers to reimburse Kleenit for these voluntary costs. Indeed, such a pre-trial result would be

---

[5] See Crider Aff., attached hereto as Exhibit B, at ¶6.

11

highly inequitable, given Travelers' viable coverage defenses and the fact that the harm complained of by Kleenit is attributable to Kleenit's own, and voluntary, course of action.[6]

## CONCLUSION

For the reasons set forth above, Travelers respectfully asserts that the Emergency Motion for Preliminary Injunction filed by Kleenit is without merit as a matter of fact or of law and, consequently, should be denied by this Court.

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(D) of the Local Rules of the United States District Court for the District of Massachusetts, Travelers respectfully requests a hearing on the issues raised herein.

Respectfully submitted,
**The Travelers Indemnity Company**,
By its attorneys,

Joseph S. Berman, Esq., BBO 566006
Berman & Dowell
210 Commercial Street
Boston, MA 02109
617-723-9911

---

[6] For these same reasons, Kleenit cannot show that the balance of equities or the public interest would support an injunction.

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, 2004, I served a copy of the foregoing by first class mail, postage prepaid, to: Danielle M. Maloney, Esq., Tucker, Heiftez & Saltzman, LLP, Three School Street, Boston, MA 02108; Michael Aylward, Esq., Morrison, Mahoney & Miller, 250 Summer Street, Boston, MA 02110; Karl S. Vasiloff, Esq., Zelle, Hoffman, Voelbel, Mason & Gette, 950 Winter Street, Suite 1300, Waltham, MA 02451; Donald P. Nagle, Esq., Law Office of Donald P. Nagle, P.C., 5 Main Street Extension, Suite 300, Plymouth, MA 02360; and Peter J. Feuerbach, Esq., Rubin & Rudman, 50 Rowes Wharf, Boston, MA 02110.

_____
Joseph S. Berman