UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC. )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>SENTRY INSURANCE COMPANY, )<br>ROYAL & SUNALLIANCE, UTICA )<br>NATIONAL INSURANCE GROUP, and )<br>TRAVELERS PROPERTY AND )<br>CASUALTY, )<br>)<br>    Defendants. )<br>) | CIVIL ACTION NO.  04-10351 (NG) |

**DEFENDANTS GLOBE INDEMNITY COMPANY AND ROYAL INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Globe Indemnity Company and Royal Insurance Company of America (collectively "Royal") [1] submit this memorandum of law in support of their Motion for Partial Summary Judgment concerning Kleenit's claim that Royal has an obligation to pay Kleenit's pre-tender defense costs and that Royal has violated G.L. c. 93A and c. 176D.

Kleenit seeks defense costs and indemnification from Royal, Travelers and Utica ("the insurers") with respect to environmental contamination arising from dry cleaning operations located in Chelmsford and Acton.  To date, the insurers, including Royal, have paid 100% of all *post-tender* defense costs notwithstanding serious questions regarding the existence of coverage for Kleenit's pollution liability.

---

[1] Kleenit also named "Royal & SunAlliance" as a defendant.  As set forth in the insurers' notice of removal and Royal's Opposition to Kleenit's Emergency Motion for a Preliminary Injunction, Royal & SunAlliance is not a legal entity capable of being sued.

Kleenit's claim for *pre-tender* defense costs must fail because, under black-letter Massachusetts law, Kleenit is not entitled to pre-tender defense costs regardless of whether Kleenit's notice was late and regardless of whether Royal suffered prejudice.  Kleenit's Chapter 93A and 176D claims also must fail because Royal responded to Kleenit's claim reasonably and in good faith.  For these reasons, Royal's Motion for Partial Summary Judgment should be granted.

## **STATEMENT OF UNDISPUTED FACTS**

### I.   THE UNDERLYING ENVIRONMENTAL CLAIMS.

On September 25, 2002, Kleenit's counsel sent Royal two letters providing initial notice of its claims for defense and indemnification with respect to environmental contamination arising from dry cleaning operations located in Chelmsford and Acton.  [Royal's Statement of Material Facts ("SMF"), ¶ 1]  With respect to the Chelmsford site, Kleenit enclosed a Notice of Responsibility ("NOR") issued by the Massachusetts Department of Environmental Protection ("DEP") on January 2, 2001, roughly twenty months earlier.  [SMF, ¶ 2]  When it received the Chelmsford NOR, Kleenit initially decided to handle the claim and its costs as an "ordinary operating expense."  [Id.]

With respect to the Acton site, Kleenit enclosed a private party demand letter from Kleenit's landlord dated August 14, 2002.  [SMF, ¶ 3]  Subsequently, the DEP issued an NOR to Kleenit for the Acton site by letter dated December 30, 2002.  [SMF, ¶ 3]  According to the Acton NOR, Kleenit submitted a Release Notification Form to the DEP regarding the Acton site to the DEP on October 29, 2002.  [Id.]

The NOR pertaining to the Chelmsford site indicates that in 1979 pollutants were detected in Chelmsford's municipal supply wells, and that contaminants have been "sporadically" detected since that time.  [SMF, ¶ 4]   In August 2000, the DEP drilled

2

monitoring wells which identified contaminants in the groundwater and which, based on the location of the wells and groundwater flows, the DEP believes are attributable to some extent to Kleenit's Chelmsford operations. [SMF, ¶ 5]  There is no suggestion of any specific discharge of contaminants which caused this contamination. [Id.]

With respect to the Acton site, the NOR from the DEP states that Kleenit has identified a "release" of hazardous substances resulting in the presence of pollutants in the soil.[2] [SMF, ¶ 6] Although Kleenit has not provided any evidence indicating that the "release" implicates the "sudden and accidental" exception to the pollution exclusion contained in the only potentially applicable Royal policy,[3] or that the "release" occurred before the October 1, 1985 expiration of this policy, Royal agreed to defend Kleenit and pay its share of applicable post-tender defense costs.[4] [SMF, ¶ 7]

## II.   THE SUBJECT ROYAL POLICY.

In its September 25, 2002 letters to Royal, Kleenit claimed coverage under certain policy numbers, but did not include copies of the policies. [SMF, ¶ 8]  Kleenit did provide certain specimen forms which it contended were applicable to Royal's coverage. [Id.]  By letters dated October 2, 2002, Royal acknowledged Kleenit's claims at Chelmsford and Acton and agreed to investigate the claims under a full reservation of rights. [SMF, ¶ 9]  As part of its investigation, Royal attempted to interview Kleenit's principal, Keith Crider, but was rebuffed in its efforts. [Id.]

---

[2]  The Acton site has already achieved a "No Significant Risk" designation and additional testing should result in the closure of Acton **without any remediation expenditures**. [Id.]  At the Chelmsford site, Kleenit has only sought defense-related costs pertaining to assessment and investigation activities, not for remediation activities. [Id.]

[3]  As set forth below, the Royal policy at issue excludes coverage for property damage caused by pollution unless the pollution was the result of a "sudden and accidental" discharge. See Lumbermens Mut. Cas. Co. v. Belleville Industries, Inc., 407 Mass. 675, 680-681, 555 N.E.2d 568, 572 (1990).

[4]  As set forth below, Royal, Travelers and Utica has are collectively paying 100% of Kleenit's post-tender defense costs.

3

By letters dated December 16, 2002, Royal reiterated its request for a statement from Kleenit. Those letters also advised Kleenit that Royal had not been able to locate copies of the subject policies, and had not been provided sufficient information by Kleenit to reach a coverage determination. [SMF, ¶ 10]

Between December 2002 and April 2003, Kleenit failed to provide any further information regarding the existence, terms or conditions of any alleged Royal policies. By letters dated April 1, 2003, Royal advised Kleenit that its policy search was ongoing. [SMF, ¶ 11] Royal also advised Kleenit that, even if the specimen forms which Kleenit provided did supply the terms of Royal's coverage, the claimed coverage under Section I, Parts I and II of the "SMP" policy form were clearly inapplicable to Kleenit's pollution liability claims, since the referenced form provides only first party property coverage, and not coverage for liabilities asserted by a third party against Kleenit. [SMF, ¶ 12]

Kleenit had also claimed coverage under a pollution liability coverage form **which Kleenit alleged** was in place from 1983-1985. [SMF, ¶ 13] However, this form is a "claims made" form which provides coverage for claims against Kleenit "provided that":

> (2)  the claim for such damages is first made against the insured during the policy period and reported to the company during the policy period or within fifteen days after its termination.

Thus, under Kleenit's counsel's view of the applicable coverage, this form could apply only in the event that Chelmsford and Acton claims were asserted against Kleenit no later than January 15, 1986. As set forth above, the facts known then and now demonstrate that this form could not provide coverage to Kleenit.

4

After an exhaustive search, Royal ultimately located a number of policies issued to Kleenit.[5]  [SMF, ¶ 15]  Royal produced these policies to Kleenit and updated its coverage position.  [Id.]  Significantly, with one exception, all of the policies contain Total or Absolute Pollution Exclusions (thus precluding any potential coverage) or provide coverage only for claims made during the policy period.  [SMF, ¶ 16]  With respect to these "claims made" policies, the policy periods had all expired well before any claim was made against Kleenit, thus negating any potential coverage.  [SMF, ¶ 17]

The one exception is policy GYAD 36485 (10/1/84-10/1/85) which contains the following pollution exclusion:

> This insurance does not apply:
>
> (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

[SMF, ¶ 18]

### III.   PRE- AND POST-TENDER DEFENSE COSTS.

Despite the fact that Kleenit has never presented any evidence that its liability arises out of a "sudden and accidental" discharge of pollutants, Royal agreed to participate in Kleenit's defense under this policy.  [SMF, ¶ 19]  Subsequently, at Kleenit's request, Kleenit and the insurers attempted to work out a cost-sharing agreement which ultimately foundered on Kleenit's

---

[5] These policies were actually found in an old claim file pertaining to Kleenit which was maintained in a warehouse storage facility.

position that the carriers are liable for both pre- and post-tender defense costs. [SMF, ¶ 20][6] The insurers then advised Kleenit that they would reimburse Kleenit for 100% of its reasonable and necessary post-tender defense costs, with Travelers paying 47%, Utica paying 39% and Royal paying 14%. [SMF, ¶ 21]

## ARGUMENT

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

### II.    ROYAL SHOULD BE GRANTED PARTIAL SUMMARY JUDGMENT ON KLEENIT'S CLAIM FOR PRE-TENDER DEFENSE COSTS.

There is no factual dispute regarding the timing or amount of the defense costs which were incurred prior to Kleenit tendering the Acton and Chelmsford sites to Royal. Since Massachusetts law clearly provides that Kleenit cannot recover these pre-tender costs, Royal is entitled to summary judgment.

####     A.     Massachusetts Law Precludes Recovery of Pre-Tender Defense Costs.

---

[6] This issue surfaced as a point of contention even before Royal was able to locate copies of its policies. [SMF, ¶ 20].

The duty to defend is created by contract, and as such, it cannot arise "before the insurer has notice of the suit against the insured, or at the least of the underlying claim and the likelihood of suit." Hoppy's Oil Service, Inc. v. Insurance Company of North America, 783 F. Supp. 1505, 1509 (D. Mass. 1992) (Keeton, J.). Under this rule, it is clear that, assuming Royal has a duty to defend, it did not arise prior to September 25, 2002. Kleenit's defense costs incurred prior to that date are simply not within the scope of Royal's potential coverage.

This is the precise result reached by the Court in Managed Health Care Systems v. St. Paul Fire & Marine Insurance Company, 2001 WL 34114949 (D. Mass. 2001). In that case, the only issue was whether the costs incurred by the insured prior to tendering the suit to the insurer were recoverable. Id. at *2. There, as here, the insurer **did not** disclaim coverage based on late notice, but rather took the position that it should not be liable for the costs incurred prior to providing notice. In ruling that the insurer was not liable for those costs, the Managed Health Care Systems court explained why prejudice is not relevant:

> The prejudice requirement was adopted to prevent complete forfeiture based upon technical failure of the insured to provide timely notice. In contrast, enforcement of the rule that pre-tender defense costs are not recoverable does not result in complete forfeiture of an insured's right to recover fees. Rather, the rule gives the insured the choice of defending some or all of the claim on its own.

Id. (quoting American Mutual Liability Ins. Co. v. Beatrice Companies, 924 F. Supp. 861, 873 (N.D. Ill. 1996). Here, Kleenit admits that it made a conscious decision initially to defend the claims on its own. Thus, Kleenit's President, Mr. Crider, stated in his affidavit that when the Chelmsford claim was first asserted against Kleenit, he elected to handle the Chelmsford matter as an "ordinary operating expense." [SMF, ¶ 4] This was Mr. Crider's right, but the consequence is that he cannot require Royal or the other carriers to pick up the costs incurred while exercising this right.

In Beatrice Companies, supra, the court, applying Massachusetts law, ruled that the insurer was not liable for pre-notice defense costs without regard to prejudice. Id. Significantly, the Beatrice Companies court rejected the insured's argument that the Massachusetts Appellate Court in Sarnafil, Inc. v. Peerless Ins. Co., 34 Mass. App. Ct. 248 (1993), effectively overruled the "no pre-notice defense costs" standard in Hoppy's Oil, supra. Id. at 872-873.[7] The court found the insured's argument unpersuasive because "there was never any dispute in [Sarnafil] as to pre-notice defense costs." Id. There, as here, the fact that the insured's costs were incurred prior to tendering notice was dispositive.

        **B.    The Great Weight of Authority from Other Jurisdictions Supports Royal's Position.**

In addition to Massachusetts, the weight of authority in other jurisdictions is that pre-tender defense costs are not recoverable under any circumstances. For example, in a leading decision on the issue, the Supreme Court of New Jersey held that an insured cannot demand reimbursement from its insurer for defense costs that the insurer had no opportunity to control (i.e, prior to tender), regardless of a showing of prejudice. SL Indust. Inc. v. Amer. Motorists Ins. Co., 607 A.2d 1266, 1272 (N.J. 1992). The court stated that "the insurance company is liable only for that portion of the defense costs arising after it was informed of the facts triggering the duty to defend." Id. at 1273. See also Towne Realty Inc. v. Zurich Ins. Co., 548 N.W.2d 64, 68 (Wis. 1996) (under Wisconsin law, insurer not liable for any expenses incurred by insured prior to tender of claim because insurer had no duty to defend until notice.).[8]

---

[7] The Appeals Court decision in Sarnafil was affirmed. Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994). Consistent with the Appeals Court decision, the Supreme Judicial Court in Sarnafil had no occasion to consider the pre-tender defense cost issue, thus leaving the reasoning of Beatrice Companies undisturbed.

[8] Similarly, under Utah law, pre-tender expenses are not recoverable before notice to an insurer because the burden of promptly notifying the insurer rests with the insured. Crist v. Ins. Co. of North America, 529 F. Supp. 601, 604 (D. Utah 1982). The court stated: "[a]ny windfall would on the contrary result from requiring the [insurers] to bear the burden of the defense prior to their knowledge of the action." Id.

In Legacy Partners, Inc. v. Travelers Indem. Co., 2003 WL 22905287, *4 (9th Cir. Dec. 9, 2003) the Ninth Circuit, applying Texas law, rejected the insured's argument that so long as the failure to notify did not cause the insurer actual prejudice, the insured could recover under the policy pursuant to Texas' "notice-prejudice" rule. The court instead held that "prejudice is only a factor when the insurer is seeking to avoid **all coverage** for failure to comply with the notice provisions of the policy. Id. (quoting Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 399 n. 19 (5th Cir. 1995)) (Emphasis added.) In following well-established Texas authority, the court affirmed the district court's holding that the insured was not entitled to pre-tender defense costs regardless of prejudice. Id.

Similarly, the Louisiana Court of Appeals affirmed a judgment denying the insured recovery of pre-tender defense costs and attorney fees associated with a warranty claim. Gully & Assoc., Inc. v. Wausau Ins. Co., 536 So. 2d 816, 818 (La. Ct. App. 1988). The court reasoned that prejudice to the insurer from the late notice was not a factor "since [the insurer] is **not denying coverage** or trying to use the late notification as a **basis for denying coverage**." Id. (Emphasis added.)

Michigan law is to the same effect. In Fireman's Fund Ins. Co. v. Ex-Cell-O Corp., 790 F. Supp. 1318, 1330 (D. Mich. 1992), the court stated that "[a]n insured can waive some past defense cost coverage without waiving future coverage" because "computation of defense costs can be allocated or divided along a time line." Thus, "the moment of tendering the defense is the critical point in such a calculation." [9] Id. See also Great Am. Ins. Co. v. Aetna Cas. & Sur. Co.,

---

[9] Kleenit placed heavy reliance on the Tenth Circuit decision of TPLC, Inc. v. United Nat. Ins. Co., 44 F.3d 1484, 1493 (10th Cir. 1995), which, applying Pennsylvania law, engrafted a prejudice requirement for pre-tender defense costs based upon Brakeman v. Potomac, 371 A.2d 193, 195-196 (Pa. 1977). However, the court in Brakeman addressed only a denial of coverage due to late notice, and had no occasion to consider the pre-tender issue. Id. A better reasoned decision applying Pennsylvania law, Safeguard Scientific, Inc. v. Liberty Mutual Co., 766 F.Supp.

9

876 P.2d 1314, 1319-20 (Haw. 1994) (under Hawaii law and following principles set out in Fireman's Fund, insurer's duty to defend did not include duty to contribute to defense costs incurred before insurer had notice of claim against insured).

### C.  Kleenit's Authorities Are Misplaced.

In Kleenit's Motion for Preliminary Injunction, Kleenit attempted to avoid the "no pre-tender costs" rule by constructing a straw man – the argument that the insurers have not demonstrated prejudice and therefore cannot deny coverage based on late notice.  [Kleenit's State Court Memorandum at pp. 16 - 20]  However, the insurers have not denied **coverage** based on late notice, but rather refused to reimburse only Kleenit's pre-tender defense costs.

Accordingly, the cases cited by Kleenit miss the mark.  Kleenit devoted pages of its State Court Preliminary Injunction Memorandum to the decisions in Atlas Tack Corp. v. Liberty Mutual Insurance Company, 48 Mass. App. Ct. 378 (1999); Employers Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465 (1997) and Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994).[10]  Yet, it is clear from even the passages quoted by Kleenit that the issue in each of these cases was whether the insured's breach of a policy provision (either the notice or voluntary payments provision) resulted in a complete forfeiture of coverage.  [Kleenit's State Court Memorandum, pp. 16-19]  Tellingly, not one of Kleenit's hand picked quotations addresses the narrower issue of whether the insurer can be held liable for pre-tender defense costs.  As set forth above, the answer is no.

### III.  ROYAL SHOULD BE GRANTED PARTIAL SUMMARY JUDGMENT ON KLEENIT'S G.L. c. 93A and c. 176D CLAIMS BECAUSE ROYAL HAS NOT ENGAGED IN ANY UNFAIR AND DECEPTIVE PRACTICES.

---

324 (E.D.Pa. 1991), came to the opposite conclusion and held that pre-tender costs are unrecoverable regardless of prejudice.  Pennsylvania law is inconclusive at best.

[10]  In Beatrice Companies, Inc., supra, the court noted that Sarnafil did not even present the pre-tender defense costs issue for decision, since the facts demonstrated that there were no such costs at issue.  924 F. Supp. at 872-73.

The Court should grant partial summary judgment in favor of Royal because Kleenit's Chapter 93A and 176D claims are without merit. Chapter 93A imposes liability as a consequence of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." G.L. c. 93A, § 2.

It is settled that an insurance company has **not** violated Chapter 93A when its interpretation of the policy is reasonable. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 14 (1989). In Boston Symphony, the Supreme Judicial Court held that the insurer did not violate Chapter 93A by declining to defend its insured because it relied in good faith "upon a plausible, although ultimately incorrect, interpretation of its policy." Id. at 15.

Similarly, a violation of Chapter 176D, § 2 is defined as: "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." The statute sets out acts or omissions that constitute unfair claim settlement practices including "refusing to pay claims without conducting a reasonable investigation," "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," and "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Chapter 176D, § 3(9). In Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 341 (1994), the court concluded that a "plausible, reasoned legal position that may ultimately turn out to be mistaken" does not subject an insurer to Chapters 93A or 176D liability.

As a matter of law, Royal did not commit an unfair or deceptive act or practice under Chapters 93A and 176D in declining to pay Kleenit's pre-tender defense costs. To the contrary,

11

as set forth above, Royal reasonably declined to pay these costs based upon Massachusetts case law and precedent.  See Hoppy's Oil, supra; Managed Health Care Systems, supra.

Further, Royal has acted at all times with the utmost good faith in regards to this matter. For example, after Kleenit failed to present Royal with any policies potentially applicable to the claim, Royal nevertheless conducted an extensive independent search for applicable policies, ultimately located policies stored in a warehouse and produced them to Kleenit.[11]  Further, Royal agreed to participate in Kleenit's defense despite the presence of a pollution exclusion in its policy and, in conjunction with the other insurers, has paid 100% of all post-tender defense costs. Therefore, Royal should be granted partial summary judgment on Kleenit's Chapters 93A and 176D claims.

## CONCLUSION

WHEREFORE, Royal respectfully requests that this Court enter an Order granting partial summary judgment in Royal's favor with respect to the pre-tender defense costs and the Chapter 93A and 176D claims.

---

[11] As set forth above, had Royal simply relied on Kleenit's counsel's representations regarding the policy forms under which coverage was sought, Royal would have been justified in simply denying Kleenit's claim since the forms relied upon by Kleenit could not have possibly provided coverage.  This case brings to mind the adage that "no good deed goes unpunished."

| | |
|---|---|
| Dated:  June 14, 2004 | **ROYAL INSURANCE COMPANY OF AMERICA and GLOBE INDEMNITY COMPANY** |
| | By Their Attorneys, |
| | /s/ Seth V. Jackson<br>Karl S. Vasiloff, Esq. (BBO #555638)<br>Seth V. Jackson, Esq. (BBO #658669)<br>ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP<br>950 Winter Street, Suite 1300<br>Waltham, MA 02451<br>(781) 466-0700 |

## CERTIFICATE OF SERVICE

      I hereby certify that on June 14, 2004, I electronically filed Defendants Globe Indemnity Company and Royal Insurance Company of America's Memorandum of Law in Support of Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**Plaintiff, Kleenit, Inc.  (Electronically)**
Donald P. Nagle, Esq.
**Law Office of Donald P. Nagle, P.C.**
5 Main Street Extension, Suite 300
Plymouth, MA  02360

**Defendant, Sentry Insurance Company (Electronically)**
Michael Aylward, Esq.
**Morrison, Mahoney & Miller, LLP**
250 Summer Street
Boston, MA  02210

**Defendant, Utica National Insurance Group (Electronically)**
Richard E. Heifetz, Esq.
**Tucker, Heifetz & Saltzman, LLP**
Three School Street
Boston, MA  02108

**Defendant, Travelers Indemnity Company (Electronically)**
Joseph S. Berman, Esq.
**Berman & Dowell**
210 Commercial Street
Boston, MA  02109

**Defendant, Utica National Insurance Group (First Class Mail)**
Danielle M. Maloney, Esq.
**Tucker, Heifetz & Saltzman, LLP**
Three School Street
Boston, MA  02108

Dated:  June 14, 2004
                                          /s/ Seth V. Jackson
                                          Karl S. Vasiloff, Esq. (BBO #555638)
                                          Seth V. Jackson, Esq. (BBO #658669)
                                          **ZELLE, HOFMANN, VOELBEL,**
                                          **MASON & GETTE LLP**
                                          950 Winter Street, Suite 1300
                                          Waltham, MA 02451
                                          (781) 466-0700