## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10351-NG

_____
                                          )
KLEENIT, INC.,                            )
      Plaintiff,                     )
                                          )
v.                                        )
                                          )
SENTRY INSURANCE CO.,                     )
ROYAL & SUNALLIANCE,                      )
UTICA NATIONAL INSURANCE                  )
GROUP, and TRAVELERS                      )
PROPERTY AND CASUALTY,                    )
      Defendants.                    )
_____)

## MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT MOTION OF DEFENDANT TRAVELERS INDEMNITY COMPANY

### I.    __Introduction__

The plaintiff, the owner of several dry cleaning stores, received Notices of Responsibility from the Massachusetts Department of Environmental Protection with respect to possible contamination at two of its sites.  Prior to submitting a claim to the defendant insurance companies, the plaintiff undertook – on its own – to handle the matter.  Not until over one year later did the plaintiff notify the defendants of the matter or seek insurance coverage.  As a matter of law, the plaintiff is not entitled to reimbursement for so-called "pre-tender" defense costs.  The rule is clearly stated, regularly applied, and rests on sound underlying principles.  Accordingly, the Court should enter summary judgment on behalf of defendant Travelers Indemnity Company ("Travelers"), and should order that Travelers has no obligation for such costs and no liability for alleged violations of Mass. G.L. c. 93A in denying coverage for such costs.

II.    **Statement of Undisputed Material Facts**

Pursuant to Local Rule (D. Mass.) 56.1, Travelers states that the following facts are undisputed.  Travelers will submit a separate Statement of Undisputed Material Facts in connection with this motion.

1.    Plaintiff Kleenit, Inc. ("Plaintiff" or "Kleenit") owns and operates dry-cleaning service facilities in Chelmsford and Acton, Massachusetts.  See Complaint, ¶12.

2.    The Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility ("NOR") to Kleenit regarding the Chelmsford facility on January 28, 2001 and issued a second NOR to Kleenit regarding the Chelmsford facility on June 19, 2001.  Id., ¶14.  According to Kleenit, DEP also issued a NOR to Kleenit pertaining to the Acton facility on December 30, 2002.  Id.

3.    Kleenit did not request any insurance coverage from Travelers until September 27, 2002, approximately twenty (20) months after the initial NOR was issued by DEP (and approximately fourteen (14) months after the second NOR regarding the Chelmsford facility was issued on June 19, 2001).  See Affidavit of Catherine Kozyra ("Kozyra Aff."), attached to Statement of Undisputed Material Facts as Exhibit A, at ¶3.

4.    Kleenit's president and chief financial officer, Keith Crider, has acknowledged that Kleenit delayed in requesting coverage from Travelers because "[a]t first Kleenit believed that it could handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense."  See Affidavit of Keith Crider ("Crider Aff."), attached to Statement of Undisputed

2

Material Facts as Exhibit B, at ¶6.

5.    On January 13, 2003, Kleenit notified Travelers of the NOR regarding the Acton facility. See Kozyra Aff., at ¶3.

6.    Four days later, on January 17, 2003, Travelers furnished counsel for Kleenit with a comprehensive reservation of rights letter ("the ROR letter") that identified and explained Travelers' coverage position regarding the three aforementioned NORs issued to Kleenit. A true and complete copy of the ROR letter is attached to the Statement of Undisputed Material Facts, as Exhibit C.

7.    Notwithstanding that Travelers has several viable defenses to the plaintiff's claim for insurance coverage, Travelers agreed to defend Kleenit against the three NORs, subject to a full reservation of rights. See Exhibit C, at pp. 1 and 4.[1]

8.    As explained by Travelers in the ROR letter, Travelers took the position that it had no obligation to reimburse Kleenit for costs and expenses incurred by Kleenit prior to September 27, 2002, when Kleenit first requested insurance coverage from Travelers. Id., at pp. 2 and 3. Travelers' position in this regard is based upon, without limitation, the relevant insurance policies' provision that Kleenit "shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident." Id., at p. 3

---

[1]Travelers, along with co-defendants Utica National Insurance Group and Globe Indemnity Company/Royal Insurance Company of America, have entered into a cost-sharing arrangement whereby post-tender costs submitted by Kleenit are reviewed and, upon approval, paid by the three carriers based on an agreed-to formula.

(*citing Augat, Inc. v. Liberty Mutual Ins. Co.*, 410 Mass. 117, 121-123 (1991)).

9.      The ROR letter sent by Travelers also identified several other issues that
potentially could preclude coverage, including the policies' exclusion for property
damage "arising out of any emission, discharge, seepage, release or escape of any
liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge,
seepage, release or escape is either expected or intended from the standpoint of
any insured ... " See Exhibit C, at p. 5, ¶¶ 6 and 7.

10.     Travelers has paid, or has agreed to pay, its full share (as calculated under the
terms of a joint cost-sharing agreement among the defendants) of the defense
costs incurred by Kleenit since September 27, 2002. See Kozyra Aff., attached to
Statement of Undisputed Material Facts as Exhibit A, at ¶¶4 and 5. As of this
date, Travelers has paid $29,087.25 to Kleenit for said defense costs. Id., at ¶5.

11.     Moreover, Travelers intends to continue to reimburse Kleenit for defense costs
incurred by Kleenit after September 27, 2002, pursuant to the cost-sharing
agreement reached by and among the defendants. Id., at ¶6. Travelers continues
to decline payment of those costs incurred by Kleenit before Kleenit requested
insurance coverage from Travelers on September 27, 2002 because, as set forth
above, these defense costs were voluntarily incurred by Kleenit. Id., at ¶7. See,
also, Crider Aff., Exhibit B, at ¶6 and Exhibit C, at pp. 2 and 3.

12.     To date, Travelers has paid Kleenit a total of approximately $41,207.38 in post-
tender defense costs. Travelers' share of the total defense costs is forty seven
percent (47%) based on an arrangement agreed to among Travelers, Utica, and

4

Royal Insurance.  Travelers, along with the other defendants, has declined to its

share of the approximately $71,903.62 in pre-tender defense costs

### III.    Argument

#### A.    Summary Judgment Standard

The party moving for summary judgment (Travelers, here), "'bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of the records which it believes demonstrate the absence of a genuine issue of material

fact.'"  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  "Once the moving

party has properly supported its motion for summary judgment, the burden shifts to the

nonmoving party, with respect to each issue on which it has the burden of proof, to demonstrate

that a trier of fact reasonably could find it its favor."  DeNovellis v. Shalala, 124 F.3d 298, 306

(1st Cir. 1997) (citing Celotex).  In opposing summary judgment, the nonmoving party "may not

rest upon the mere allegations or denials of the pleading, but must set forth specific facts showing

that there is a genuine issue of material fact as to each issue on which he or she would bear the

ultimate burden of proof at trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct.

2505 (1986).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury

could resolve the point in the favor of the non-moving party.  A fact is material if it carries with it

the potential to affect the outcome of the suit under the applicable law."  Santiago-Ramos, supra.,

217 F.3d at 52 (citations omitted).

In light of this standard, it is clear that Kleenit will be unable to satisfy its burden in

opposing summary judgment.  There are no material issues of fact.  Indeed, there are no disputed

facts whatsoever: the issue presented by this motion is a clear issue of law.  Moreover, the law

with respect to this point is also clear, having been decided by the Supreme Judicial Court over a

decade ago in <u>Augut, Inc. v. Liberty Mutual Ins. Co.</u>, 410 Mass. 117 (1991).

### B. <u>Plaintiff's Claim for "Pre-Tender" Costs</u>

In Massachusetts, the duty to defend does not arise before the insurer receives notice of

the suit against the insured.  <u>Hoppy's Oil Serv., Inc. v. Insurance Co. of North America</u>, 783

F.Supp. 1505, 1509 (D. Mass. 1992).[2]  Put another way, "[i]nsurers are not liable for pre-notice

defense costs."  <u>American Mutual Liability Insurance Co. v. Beatrice Cos.</u>, 924 F.Supp. 861, 874

(N.D. Ill. 1996).  The underlying rationale for the rule is that an insurer should not be required to

pay for defense of a suit that it had "no opportunity to influence" or "power to affect the course

and cost of the litigation at that time."  <u>Managed Health Care Systems, Inc. v. St.Paul Fire &</u>

<u>Marine Ins. Co.</u>, 2001 WL 34114949 (D. Mass. 2001) (<i>citing</i> <u>Augut</u>, <i>supra.</i>, 410 Mass. at 121-

123 (1991).[3]

The rule protects the insurer even in the absence of prejudice.  <u>Managed Health Care</u>

<u>Systems, Inc.</u>, <i>supra.</i>, at 6; <u>Augut</u>, <i>supra.</i>, 410 Mass. at 123.  Thus, Kleenit may not recover its

---

[2]In this diversity action, Massachusetts law applies, because, under that state's choice of
law rules, Massachusetts has the most significant relationship with the events giving rise to the
lawsuit and because the policies were issued in Massachusetts to a Massachusetts insured.  <u>Auto</u>
<u>Europe LLC v. Connecticut Indemnity Co.</u>, 321 F.3d 60, 64 (1st Cir. 2003).

[3]In this partial summary judgment motion, Travelers and the other defendants are not
seeking to disclaim coverage for costs incurred after Kleenit tendered its claims.  There may be
other defenses for the post-tender defense costs, which will be addressed separately, including,
for example, a potential defense based on the late notice.  However, the issue before the Court on
the present motion is limited to pre-tender defense costs, which are not recoverable even in the
absence of prejudice.

pre-tender defense costs even if there were no showing of prejudice.[4]

The policy behind the plain rule is based on the reality of how insurers handle claims against their insureds. An insured who fails to notify its insurer of a claim has precluded the carrier from participating in important decisions that could have an impact on the entire matter. The early stages of a claim can be critical. This is the time when important information is gathered and statements are made that could bind both the insured and the insurer. Defenses may be lost, along with the ability to settle a disputed claim at an early stage. An insured who tries to "go it alone" has severely hampered the ability of its insurance company to protect both its interests and those of its policyholder. As the standard liability policies provide, the insurer has both the "right and duty" to defend its insured. While cases often hinge on the "duty," the insurer's **right** to participate in the defense must not be ignored.

As explained by the SJC in *Augat*, an insured who voluntarily incurs environmental clean-up costs is not eligible for subsequent reimbursement from the insurer. *Id.*, at 122-123. More specifically, insurance coverage is not available if, by the time the insured requests coverage from the insurer, "[t]here [is] nothing left for the insurer to do but issue a check." *Id.*, at 123. See, also, Managed Health Care Systems, Inc. v. St. Paul Fire and Marine Ins. Co., 2001

---

[4]Based on prior papers submitted in this case, Kleenit may argue that the defendants may not disclaim coverage in the absence of prejudice. This straw man argument is based on confusing the issue in this case – pre-tender defense costs – with a different issue – late notice of a claim. In the latter circumstance, an insurer seeking to deny coverage for all costs, including those that may arise in the future, must demonstrate that the late notice caused it some prejudice. See, e.g., Employers Liability Assur. Corp. Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465 (1997). Late notice applies regardless of whether the insured incurred costs prior to tendering the claim to the carrier. Here, the issue is not one of late notice, but of incurring costs before tendering the claim to Travelers, a much more serious and **inherently prejudicial** situation.

WL 34114949 (D.Mass. 2001) (applying Massachusetts law and citing *Augat*, court held that an insured was not entitled to recover from its insurer defense costs that the insured incurred for one year prior to notifying the insurer of the underlying claim).   This guidance precludes Kleenit from recovering the costs it voluntarily incurred, *for a period of twenty months*, before September 27, 2002 because, by the time Kleenit chose to seek insurance coverage, "there was nothing left for [Travelers] to do but issue a check" for the pre-September 27, 2002 costs.  Stated differently, Travelers' defense goes far beyond potential late notice; rather, by Kleenit's own admission, Kleenit (1) voluntarily elected to respond to the Chelmsford NORs on its own, without seeking insurance coverage, (2) subsequently spent twenty months responding to the Chelmsford NORs on its own, characterizing the related costs as an "ordinary operating expense", and (3) then, only after deciding that the costs were becoming too much to bear, sought to involve Travelers by seeking insurance coverage. See Crider Aff, attached as Exhibit B, at ¶1.

Given this fact pattern, and the clear guidance set forth in the factually analogous *Augat* and *Managed Health Care Systems* decisions, Kleenit is not entitled to recover from Travelers the costs Kleenit incurred before requesting coverage on September 27, 2002**.**  Accordingly, the Court should enter summary judgment in favor of Travelers on Count I (Declaratory Judgment) and Count II (Breach of Contract) to the extent those counts seeks relief for the payment of per-tender defense costs.

### C.        **Plaintiff's Claim Under Mass. G.L. c. 93A**

In addition to asserting a right to pre-tender defense costs, plaintiff alleges that the defendant insurers have violated the Massachusetts business practices statute (Mass. G.L. c. 93A) and the Massachusetts insurance settlement statute (Mass. G.L. c. 176D).  Although the

allegations are not pled with specificity, the allegation appears to be that the defendants, including Travelers, have failed to settle a claim where their liability is "reasonably clear." Mass. G.L. c. 176D, § 3(9)(f). The "bad faith" allegations against Travelers are baseless.

As an initial matter, the plaintiff, a corporate business entity, may not maintain an action against Travelers pursuant to Mass. G.L. c. 176D, § 3(9) (see Complaint, para. 32). Actions under that statute are available only to individuals, whose cause of action arises under Mass. G.L. c. 93A, § 9.[5] Since the sole allegation under the plaintiff's chapter 93A count appears to be based on an alleged violation of chapter 176D, the count fails to state a claim as to both pre-tender and post-tender costs.

Even if Kleenit could bring a cause of action against Travelers for alleged violations of chapter 176D, its allegations fall far short of the mark. The plaintiff's burden in these cases is high, the standard for recovery being that "no reasonable insurer" would have acted as the defendant did. Hartford Casualty Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 121 (1994) (standard for whether insurer would have settled third party claim within policy limits is "whether no reasonable insurer would have failed to settle the case within the policy limits"). Unless liability is "reasonably clear," an insurer has not violated c. 93A by not acceding to the plaintiff's settlement demands. Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994).

---

[5]Chapter 176D, the insurance practices statute, does not create a private cause of action to an aggrieved individual. Adams v. Liberty Mutual Ins. Co., 60 Mass. App. Ct. 55, 63, fn. 14 (2003). Recourse for an individual allegedly injured by an insurer's G.L. c. 176D violation is available only through G.L. c. 93A and only to those plaintiffs able to sue under section 9 as consumers. Id. Section 11, of G.L. c. 93A, which creates a cause of action in favor of businesses, does not provide a cause of action under G.L. c. 176D. Put another way, an individual may sue an insurer for alleged violations of chapter 176D, but a business, such as Kleenit, may not. See also Kay Construction Co. V. Control Point Associates, Inc., et al., 15 Mass.L.Rptr. 203, 2002WL31187825 (Mass. Super. Court, Agnes, J., Aug. 16, 2002).

Whether liability is "reasonably clear" calls for an objective inquiry into the facts and the law and calls on the fact finder to decide whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded for good reason that the insurer was liable to the plaintiff. Demeo v. State Farm Mut. Auto Ins. Co., 38 Mass. App. Ct. 955. "A plausible, reasoned legal position that may ultimately turn out to be mistaken – or, simply, as here, unsuccessful – is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." Guity, 36 Mass. App. Ct. at 343 (insurer denied claim when insured's car was stolen; although jury ultimately found that insurer was obligated to pay, the insurer was not liable under c. 93A/176D where, among other things, insurer had evidence that "theft of the BMW may have been contrived"); Pediatricians, Inc. v. Provident Life & Acc. Ins. Co., 965 F.2d 1164, 1173 (1st Cir. 1992) ("[l]iability under c. 176D and c. 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous"); Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 14 (1989).

The fact that the plaintiff even asserts such a claim is amazing given that plaintiff's counsel recently brought, and lost on summary judgment, a case dealing with similar voluntary payments issue raised by Travelers' instant motion. That decision, including the dismissal of all chapter 93A and 176D claims, was subsequently affirmed by the Massachusetts Appellate Court. Eastern Products Corp. v. Continental Cas. Co., 58 Mass.App.16 (2003). Travelers respectfully submits that this Court should follow the lead of the Massachusetts Appellate Court and likewise dismiss the plaintiff's claims for recovery of pre-tender costs and for violations of chapters 93A and 176D.

## IV.    Conclusion

For all of the foregoing reasons, the Court should enter partial summary judgment in favor of The Travelers Indemnity Company as to all counts to the extent the plaintiff seeks recovery for pre-tender defense costs, and the Court should enter summary judgment on Count III in its entirety, for both pre-tender costs and post-tender costs.

## VI.    Request for Oral Argument

Pursuant to Local Rule (D. Mass.) 7.1(D), defendant respectfully requests a hearing on its Motion for Summary Judgment.

## VII.    Certification Pursuant to Local Rule 7.1(A)(2)

Pursuant to Local Rule (D. Mass.) 7.1(A)(2), undersigned counsel certifies that he has conferred with plaintiff's counsel in a good faith effort to resolve or narrow the issues presented by this motion.

Respectfully submitted,
**The Travelers Indemnity Company**,
By its attorneys,


/s/ Joseph S. Berman
_____
Joseph S. Berman, Esq., BBO 566006
Berman & Dowell
210 Commercial Street
Boston, MA 02109
617-723-9911
Jberman@bermandowell.com

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of June, 2004, I served a copy of the foregoing by email or first class mail, postage prepaid, to: Danielle M. Maloney, Esq., Tucker, Heiftez & Saltzman, LLP, Three School Street, Boston, MA 02108; Michael Aylward, Esq., Morrison, Mahoney & Miller, 250 Summer Street, Boston, MA 02110; Karl S. Vasiloff, Esq., Zelle, Hoffman, Voelbel, Mason & Gette, 950 Winter Street, Suite 1300, Waltham, MA 02451;and Donald P. Nagle, Esq., Law Office of Donald P. Nagle, P.C., 5 Main Street Extension, Suite 300, Plymouth, MA 02360.

_____
Joseph S. Berman