

T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit

Three Farm Glen Boulevard
Farmington, CT 06032-1970

Telephone: (860) 954-5040
Facsimile: (860) 954-5857

Via Facsimile Transmission (508) 732-8971
and
Certified Mail/RRR (#7099 3400 0015 9498 7999)

January 17, 2003

Donald P. Nagle, Esq.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360

   Policyholder: Kleenit, Inc. ("Kleenit")

    Site 1: 28 Central Square and Beaver Brook, Chelmsford, Massachusetts
    Re: Massachusetts Department of Environmental Protection ("MA-DEP")
     Notice of Responsibility ("NOR") letter dated January 28, 2001

    Site 2: 293 and 295 Main Street, Acton, Massachusetts
    Re: Massachusetts Department of Environmental Protection ("MA-DEP")
     Notice of Responsibility ("NOR") letter dated December 30, 2002

Dear Mr. Nagle:

I am in receipt of your January 13, 2003 correspondences. I understand that your firm has taken ove the handling of the coverage aspect of these matters from Rubin and Rudman ("R&R"). As you may know, I am a member of Travelers Special Liability Coverage Unit ("SLCU"). The SLCU has revie these letters with counsel, and believes that your claim that Kleenit is entitled to multiple damages a attorney's fees in accordance with M.G.L. c. 93A is incorrect. A detailed response will follow by a separate letter. However, as set forth in this letter, Travelers is willing to participate in Kleenit's def of the captioned NORs, subject to the following reservation of rights.

SUMMARY OF POLICIES

Travelers policy research has been unable to locate in our records copies of any Commercial General Liability ("CGL") policies which were issued to Kleenit. The copy of the policy which Kleenit's former counsel, R&R, provided to the SLCU appears to be a policy issued by The Travelers Indemnity Company:

Donald P. Nagle, Esq.
January 17, 2003
Page 2

| Policy Number | Policy Period |
|---|---|
| ND 9087145 | August 28, 1970 to August 28, 1973 |

Because Travelers has been unable to locate a copy in its records of the policy provided by R&R, Travelers reserves its rights should any other evidence of policy content come to light.

Additionally, Travelers research has located reference in its records to the following policy (the "Alleged Policy"), but has been unable to locate a copy of this policy:

| Policy Number | Policy Period |
|---|---|
| ND 3873892 | August 1, 1967 to August 1, 1970 |

Please be aware that because this Alleged Policy has not been located, Travelers is unable to confirm the terms, limits and conditions of the Alleged Policy. Please provide us with any information you have regarding the Alleged Policy.

Please note that R&R previously alleged that Travelers issued policies to Kleenit from 1962 through 1973. However, Travelers has searched exhaustively through all available records and finds no evidence of any other CGL policies than the above two.

## LATE NOTICE / PRE-TENDER COSTS

We have reviewed with our counsel the case law related to late notice and pre-tender costs referenced by R&R in previous correspondence and found it to be unpersuasive. A detailed response will follow by a separate letter. Travelers has no obligation to reimburse Kleenit for any costs it incurred in connection with the Chelmsford NOR prior to tender, i.e., prior to September 27, 2002. In addition, Travelers may have no potential defense or indemnity obligations for the Chelmsford matter to the extent that Kleenit did not provide timely and adequate notice of the Chelmsford matter to Travelers, and/or to the extent that Kleenit voluntarily incurred costs or obligations without Travelers knowledge and consent, and/or to the extent that Kleenit has violated any other conditions precedent to coverage under the policy. Please note that the policy issued to Kleenit contains the following pertinent provisions:

## GENERAL CONDITIONS

. . .

3.  Insured's Duties in the Event of Loss, Accident or Occurrence

    a.  Sections II and III -

        (1)  In the event of an accident or occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information respecting time, place and circumstances thereof, and the

Donald P. Nagle, Esq.
January 17, 2003
Page 3

        names and addresses of the injured and of available witnesses, shall be given by or on behalf of the Insured to The Travelers or any of its authorized agents as soon as practicable.

(2)    If a claim is made or suit is brought against the Insured, the Insured shall immediately forward to The Travelers every demand, notice, summons or other process received by him or his representative.

(3)    Coverages D, F, and G- The insured shall cooperate with The Travelers and, upon The Travelers request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

Based on the information you have provided the SLCU, it is apparent that Kleenit has been aware of the Chelmsford matter since at least January, 2001. Kleenit was aware of its alleged liability for a period of over two (2) years prior to its notice to Travelers. Therefore, it appears that Travelers may have no defense or indemnity obligation because Kleenit did not "notify Travelers of an 'occurrence' which might result in a claim as soon as practicable," nor did it "immediately forward to Travelers copies of the demands, notices, summonses or other process received by it regarding the Chelmsford NOR immediately." In addition, all defense and indemnification costs that were paid by Kleenit prior to Kleenit's September 27, 2002 tender of the Chelmsford NOR to Travelers, as well as all defense and indemnification costs which Kleenit has agreed or committed to pay prior to September 27, 2002, are not covered under any policy issued to Kleenit by Travelers.

Nevertheless, without waiver of Travelers position that it has or may have no defense or indemnity obligations to Kleenit, and explicitly reserving Travelers right to decline all coverage for these matters, Travelers is willing to further consider these matters as set forth below. However, consistent with Massachusetts law, although Travelers agrees to defend Kleenit under the policy, to the extent that any costs related to the Chelmsford matter that you tender to Travelers for payment are for costs associated with the fulfillment of work previously agreed to be completed at that site, those costs are not reimbursable. Augat, Inc. v. Liberty Mutual Insurance Company, 410 Mass. 117, 121-123, 571 N.E.2d 357 (1991).

Donald P. Nagle, Esq.
January 17, 2003
Page 4

## OFFER OF DEFENSE

Please be advised that Travelers will participate in Kleenit's defense of the Chelmsford and Acton NORs under the policy in effect from August 28, 1970 to August 28, 1973, subject to the complete reservation of rights set forth in this letter, which includes, but is not limited to, the right to seek recoupment of defense costs should it be determined that there is no potential indemnity coverage for these matters.

Pursuant to this offer of defense, Travelers will contribute to the reasonable and necessary defense-related counsel fees and expenses billed by an appropriately qualified law firm of Kleenit's choice and incurred subsequent to the tender of the Chelmsford and Acton NORs to Travelers by Kleenit on September 27, 2002. Please note that "defense-related counsel fees and expenses" do not include certain costs relating to the relief that the MA-DEP is attempting to obtain from Kleenit by the NORs. Such costs, which may include the expense of conducting studies to determine the nature and extent of contamination at or around the captioned Site, and/or medical monitoring costs, or to plan or undertake containment, abatement or other remedial measures at or around the Site, or otherwise to implement measures designed to bring the Site or its environs into compliance with governmental regulations, will only be considered for payment as "defense-related expenses" if they clearly relate to the resolution of a question of Kleenit's liability at issue in this matter, and if resolving such issue is necessary to Kleenit's defense. Otherwise, these costs will be considered for indemnity coverage, should Travelers determine that it may have an indemnity obligation to Kleenit.

## RESERVATION OF RIGHTS

The policy contains conditions, exclusions and other language which may limit or preclude coverage for this matter. Therefore, Travelers investigation of this matter is not intended to be, and should not be deemed or construed as: an admission that any defense or indemnity coverage is available for this matter; an expansion of any obligation that Travelers may subsequently acknowledge (if any); a waiver of any right or defense to coverage available to Travelers, whether under the policy or at law or in equity; or a course of performance. Travelers reservation of rights includes, but is not limited to, the following specific reservations:

1) Coverage applies only to sums which the insured is legally obligated to pay as damages because of property damage.

2) Except as required by policy provisions or applicable and controlling law, coverage does not apply to punitive or exemplary damages, fines or penalties sought or recovered in the captioned matter.

3) Coverage does not apply to any alleged damage or injury which does not constitute property damage as defined in the policy.

Donald P. Nagle, Esq.
January 17, 2003
Page 5

4) Any property damage which takes place prior and/or subsequent to the dates during which Travelers provided liability insurance to Kleenit is not covered by the policy issued by Travelers, and thus, Travelers is under no obligation to defend lawsuits or pay claims, settlements or judgments for any such property damage.

5) Coverage does not apply to any alleged damage or injury unless caused by an accident or occurrence as defined in the policy.

6) Coverage does not apply to property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.

7) Coverage does not apply to property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant resulting from or contributed to by any condition in violation of or non-compliance with any governmental rule, regulation or law applicable thereto.

8) Coverage does not apply to property damage arising out of any emission, discharge, seepage, release or escape of petroleum or petroleum derivatives into any body of water.

9) Coverage does not apply if the insured failed or fails to provide notice to or cooperate with Travelers, or impairs Travelers contribution or subrogation or other insurance rights (if any), in accordance with the conditions of the policy and with applicable law.

10) Coverage does not apply to any payment made, obligation assumed or expense incurred voluntarily by the insured or without Travelers knowledge and consent (other than for first aid to others at the time of any occurrence) in accordance with the conditions of the policy, nor to any pre-tender costs.

11) For the purpose of determining the limit of Travelers liability under the policy (if any), all property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered arising out of one occurrence.

12) Any payments that might be made by Travelers in this case are subject to the applicable limits of liability and/or deductibles as contained in (or as otherwise applicable to) the policy.

13) In accordance with the assignment condition of the policy, coverage is not afforded for any person or entity whose interest in the policy is secured without the written consent of Travelers.

In addition to the foregoing, Travelers specifically reserves its right to withdraw its participation in Kleenit's defense of the Chelmsford and Acton NORs, and to seek recoupment of any defense costs or other sums paid to Kleenit or on its behalf. Travelers also reserves all rights and defenses to coverage which might arise under any other policies of insurance which it may subsequently confirm that it issued to Kleenit (if any).

Donald P. Nagle, Esq.
January 17, 2003
Page 6

Travelers also expressly reserves the right to contest the adequacy of your purported demand letter of January 13, 2002 as a sufficient ad proper demand under Chapters 93A and/or 176D and Travelers specifically denies that its conduct in response to Kleenit's demands for coverage of these matters has in any way been violative of the provisions of Chapters 93A and/or 176D.

Further, should Travelers coverage position be litigated and should a court of appropriate jurisdiction reject any right or defense to coverage asserted by Travelers with respect to the Chelmsford and Acton NORs, whether specifically enumerated above, or otherwise reserved by this or any other communication from the SLCU, Travelers will provide coverage only to the extent mandated by such court (subject to its right to pursue reconsideration, review or appeal, etc.), and will seek recoupment of any payments made other than in accordance with the theory of coverage adopted by such court.

As these matters develop further, you will be advised of any additional legal principles or policy provisions which might limit or preclude any obligations which Travelers has undertaken or may undertake, if any.

As previously stated, the SLCU's role in these matters will be limited to determining Travelers defense and/or indemnity obligations, if any. A staff member from Travelers Special Liability Group – Home Office Environmental Claims Unit ("SLG-HOECU") located in Farmington, Connecticut may also be in touch with you. That individual will not be involved in the investigation and resolution of the coverage issues but will be available to assist Kleenit with regard to defense of the Chelmsford and Acton matters, and will be your contact person for the review and payment of defense bills consistent with the parameters set forth in this letter. Information Kleenit provides to the SLG-HOECU with regard to the liability issues raised by these matters will not be forwarded to the SLCU without Kleenit's express, written permission. If you wish to avoid potentially duplicative requests for information, please advise me in writing that you have no objection to the SLG-HOECU sharing such information it receives from Kleenit with the SLCU.

Please note that the SLCU, not the SLG-HOECU, will determine Travelers share of Kleenit's post-tender defense costs relative to the shares borne by Kleenit's other carriers. Please inform us of the identity, policy number and period, address and phone number, and claim representative name for all other carriers to which Kleenit has tendered this matter, so we may contact them to arrange cost-sharing.

Kleenit should forward all liability related correspondence and bills for defense related costs to:

> Mr. Jonathan P. Metz
> Travelers Special Liability Group
> Home Office Environmental Claims Unit
> One Farm Glen Blvd.
> Farmington, Connecticut 06032

Donald P. Nagle, Esq.
January 17, 2003
Page 7

Please reference file numbers ANU2983 (the Chelmsford matter) and ANU3053 (the Acton matter) on all communication and submissions to SLG-HOECU. Please be advised that the SLG-HOECU's availability and assistance is not, and shall not be construed as: an admission of coverage; a waiver of Travelers right to decline coverage; grounds for any claim of estoppel against Travelers; or a course of performance. Travelers coverage position with regard to the captioned matter will be conveyed to Kleenit only by a member of the SLCU.

Please be aware that it is Kleenit's burden to provide evidence that third-party property damage occurred during Travelers policy period and was caused by an occurrence. Therefore, in order to assist the SLCU with its investigation of this matter, please provide the following information, if and when it becomes available:

Please provide all available information regarding the source and timing of pollutant releases at or from the site, including all documentation of the handling of dry cleaning chemicals (PCE, etc.) or other pollutants, and the identity and last known address of all individuals who worked at the sites prior to and/or during Travelers policy period or who may otherwise have any knowledge regarding the storage, handling, use, disposal or other release of any pollutants at the sites.

Any additional information you believe would facilitate the SLCU's coverage analysis should be forwarded to my attention for review and consideration.

Please contact me at the direct dial number above if you have any questions regarding this letter. If it is more convenient, you may leave a message for me at our toll-free number (1-800-954-9633), and I will return your call as soon as possible. If I am unavailable at the time of your telephone call, you may contact Mr. Robert Harris at (860) 954-2959 for assistance.

Sincerely,

*T. Jill Donan* / RJH

T. Jill Donan
Associate Account Executive

cc:   SLG – HOECU
      File No.: ANU2983 – Chelmsford
      File No.: ANU3053 – Acton

tjd497