UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

KLEENIT, INC.,                                              )
                                   Plaintiff               )
                                                           )
vs.                                                        )
                                                           )          CIVIL ACTION
SENTRY INSURANCE COMPANY,                                  )          NO. 04-10351-NG
ROYAL & SUN ALLIANCE,                                      )
UTICA NATIONAL INSURANCE GROUP, and                        )
TRAVELERS PROPERTY AND CASUALTY,                           )
                                   Defendants              )

## DEFENDANT UTICA NATIONAL INSURANCE GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

### Introduction

The plaintiff, Kleenit, Inc. ("Kleenit") commenced this action seeking defense

costs and indemnification from Defendants, Utica National Insurance Group ("Utica"),

Royal & SunAlliance ("Royal") and Travelers Property and Casualty ("Travelers")

(collectively referred to as "the insurers"), in connection with claims brought against it

by the Department of Environmental Protection ("DEP") for the alleged contamination

of two sites arising out of dry-cleaning operations.  Utica submits this memorandum of

law in support of its motion for partial summary judgment as to Kleenit's claims that

Utica is obligated under Massachusetts law to pay Kleenit's pre-tender defense costs

and that its failure to do so is in violation of G.L. c. 93A and 176D.

Utica is not required to pay Kleenit's pre-tender defense costs under

Massachusetts law. Utica, along with Royal and Travelers, has agreed to reimburse

100% of Kleenit's reasonable post-tender defense costs notwithstanding questions regarding the existence of coverage for Kleenit's pollution liability. Indeed, the insurers, including Utica, have paid 100% of Kleenit's post-tender defense costs. The only payments Utica has not made are relative to pre-tender defense costs incurred by Kleenit. Pre-tender costs are those costs incurred before the time in which Kleenit put the insurers on notice of its claims. Utica has refused to pay any pre-tender defense costs not because of late notice or violation of the voluntary payment clause as alleged by Kleenit, but rather because under Massachusetts law, pre-tender costs are not recoverable. As such, Kleenit's claim for pre-tender defense costs fails as a matter of law. Likewise, Kleenit's Chapter 93A and 176D claims must also fail as a matter of law, as Utica has acted reasonably and in the utmost good faith.

## STATEMENT OF UNDISPUTED FACTS

Kleenit operates dry-cleaning services at facilities located at 28 Central Square in Chelmsford ("Chelmsford site") and 293-295 Main Street in Acton ("Acton site"), all in Middlesex County, Massachusetts. (Utica's Concise Statement of Material Facts ("SMF"), ¶1) The Department of Environmental Protection ("DEP"), by letter dated January 28, 2001, issued a Notice of Responsibility ("NOR") pursuant to M.G.L. c. 21E in connection with alleged environmental contamination at the Chelmsford site. (SMF ¶2) On December 30, 2003, the DEP issued an NOR in connection with alleged contamination at the Acton site. (SMF ¶3) The NORs allege that Kleenit is a responsible

party for the release or threat of release of hazardous materials at the Chelmsford and Acton sites. (Id.)

## A.    Kleenit's Tender of Claims

By letters dated September 25, 2002, Kleenit tendered notice to Utica of its claims for defense and indemnification with respect to the alleged pollution arising from Kleenit's dry-cleaning operations at the Chelmsford and Acton sites. (SMF ¶5) Kleenit alleged that Utica provided policies of insurance for both sites from 1979 – 1985, however, Kleenit did not include copies of these alleged policies. (SMF ¶6)

In connection with the Chelmsford site, Kleenit waited as long as twenty months before putting Utica on notice of its claims for defense and indemnity. (SMF ¶7) Keith Crider, President and Chief Financial Officer of Kleenit, admits that Kleenit opted to provide its own defense against the NOR. (Id.) Mr. Crider believed that Kleenit could handle the costs associated with the initial NOR as an "ordinary operating expense." (SMF ¶8) However, upon the realization that it had miscalculated the financial consequences of these claims, Kleenit decided to put its insurers on notice some twenty months later. (SMF ¶9)

Relative to the Acton site, in its September 25, 2002 letter, Kleenit enclosed notice of a private party demand from its landlord dated August 14, 2002. (SMF ¶10) On October 29, 2002, Kleenit submitted a Release Notification Form to the DEP regarding the Acton site. (SMF ¶11) It was not until December 30, 2002, that the DEP issued an

NOR in connection with alleged contamination at the Acton site. (SMF ¶12) By letter dated January 10, 2003, Kleenit put Utica on notice of the potential suit.[1] (SMF ¶13)

**B.      Utica's Policies**

In response to the September 25 letters, Utica conducted a diligent search of its records to locate policies issued to Kleenit during the period of 1979-1985. Utica subsequently found and acknowledged only one three-year policy. (SMF ¶14) The policy was issued by Graphic Arts Mutual and it insured Kleenit for both the Acton and Chelmsford sites under FMP 1946 for the period 10/01/79 – 10/01/82. (SMF ¶15) The general liability policy limits were $100,000 per occurrence and $100,000 in the aggregate. (Id.) No other policies were located. (Id.) Approximately one month after receiving notice of the claims, Utica sent Kleenit a Partial Disclaimer of Coverage and Reservation of Rights. (SMF ¶16) Utica acknowledged Kleenit's claims at Chelmsford and Acton and agreed to investigate the claims under a full reservation of rights.[2] (SMF ¶17) In addition, Utica disclaimed coverage for any payment or expense incurred prior to September 27, 2002, the date of receipt of notice of the claims. (SMF ¶19)

---

[1] Although Utica received notice in September 2002 of possible claims against Kleenit relative to the Acton site, its duty to defend was not triggered until January 13, 2003, when it received notice from Kleenit that the DEP issued an NOR relative to the Acton site on December 30, 2002. See Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990). Accordingly, Utica considers any defense-related costs incurred prior to January 13, 2003 as pre-tender costs and non-recoverable.
[2] By letter dated January 14, 2003, Utica acknowledged tender of the NOR issued in connection with the Acton site and agreed to defend Kleenit under a reservation of rights. (SMF ¶18)

**C.**     **Utica Agrees to Pay Its Pro Rata Share of 100% of Kleenit's Post-Tender Defense Costs**

1.     *Proposed Defense Cost Sharing Agreement with Kleenit Fails*

Kleenit tendered the Chelmsford and Acton claims to not only Utica, but also to Royal and Travelers.   At Kleenit's request, Kleenit and the carriers attempted to work out a defense cost sharing agreement. (SMF ¶20)  Kleenit proposed that the parties enter an agreement whereby the insurers would pay Kleenit on a pro rata basis all pre-tender and post-tender defense costs incurred, while the insurers proposed that they pay all reasonable post-tender defense costs, but no pre-tender defense costs.  (Id.) Citing Massachusetts law, the insurers refused to pay any pre-tender defense costs on the grounds that pre-tender defense costs were not recoverable in Massachusetts. (SMF ¶21)  Kleenit rejected this proposal as well as the legal authority cited by the insurers.  (SMF ¶22)  Eventually, discussions between the carriers and Kleenit broke down due to Kleenit's insistence that the carriers reimburse Kleenit for pre-tender defense costs in addition to post-tender defense costs.  (SMF ¶23)  Accordingly, the insurers executed an agreement among themselves.  (SMF ¶24)

2.     *Defense Cost Sharing Agreement Entered Into Among The Carriers*

By letter dated September 10, 2003, the insurers advised Kleenit that they were entering into a defense cost sharing agreement among themselves and that they had collectively agreed to reimburse Kleenit for 100% of its reasonable and necessary post-tender defense costs. (SMF ¶24)  Pursuant to this agreement, Utica is responsible for its

39% pro rata share of Kleenit's reasonable post-tender defense costs, while Royal is responsible for its 14% share and Travelers for its 47% share. (SMF ¶25)

## SUMMARY JUDGMENT STANDARD

Summary Judgment is a favored procedure, not a mere procedural shortcut. <u>See</u> <u>Celotex Corp. v Catrett</u>, 477 U.S. 317, 327 (1986). Summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment must be granted under Rule 56 unless there is a "genuine" issue as to a "material" fact. A factual issue is "material" only if it will affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Morrissey v. Boston Five Cents Savings Bank</u>, 54 F.3 27, 31 (1st Cir. 1995).

## ARGUMENT

I.    **THE COURT SHOULD ALLOW UTICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KLEENIT'S CLAIM FOR PRE-TENDER DEFENSE COSTS.**

There being no factual dispute between the parties as to the timing or amount of pre-tender defense costs incurred, the issue before this Court is solely a matter of law

for the Court's determination: whether under Massachusetts law, Kleenit is entitled to recovery of its pre-tender defense costs. Given that Massachusetts case law unequivocally provides that pre-tender defense costs are non-recoverable, summary judgment should enter in favor of Utica.

A.    **Massachusetts Law Precludes Kleenit From Recovering Pre-Tender Defense Costs From Utica.**

Kleenit did not tender the defense of the Chelmsford matter to Utica and the other carriers until September 25, 2002. Defense of the Acton matter was tendered on January 13, 2003. As a matter of law, Kleenit is not entitled to recovery of defense costs incurred prior to these dates.

In Massachusetts, the duty to defend is created by contract and as such, it cannot arise "before the insurer has notice of the suit against the insured, or at least of the underlying claim and the likelihood of suit." See Hoppies Oil Serv., Inc. v. Ins. Co. of N. Am., 783 F. Supp. 1505, 1509 (D. Mass. 1992). That being said, no duty to provide defense costs can arise until the time of notice. Id.; Am. Mut. Liab. Ins. Co. v. Beatrice Cos., 924 F. Supp. 861, 874 (N. D. Ill. 1996) (stating that under Massachusetts law, "insurers are not liable for pre-notice defense costs"). This rule allows the insured the choice of defending some or all of the claim on its own. See Beatrice Cos., 924 F. Supp. at 873. Thus, the underlying rationale for the rule is that an insurer should not be required to pay for a defense of a suit that it had "no opportunity to influence" or "power to affect the course and cost of the litigation at that time." Managed Health Care Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 2001 U.S. Dist. LEXIS 18302, at *5-6

(D. Mass. 2001) (holding that insurer not liable for pre-notice defense costs under Massachusetts law).

Applying this rule to the facts of this case, Utica's duty to defend did not arise until the date it received notice of these respective claims. Thus, any costs incurred prior to September 25 relative to the Chelmsford site, or January 13 relative to the Acton site, are not recoverable because such costs are not within the scope of Utica's obligations. This case exemplifies the purpose underlying the no pre-tender cost recovery rule where Mr. Crider chose to defend against the NORs on his own for a period of almost two years. As the case law asserts, because Mr. Crider exercised his right to defend himself, Utica had "no opportunity to influence" the defense of these claims and as such, should not be held responsible for pre-notice defense costs. Managed Health Care Sys., Inc., 2001 U.S. Dist. LEXIS at *5-6.

> **B.    Under The Massachusetts No Pre-Tender Costs Rule, Utica Is Not Required To Demonstrate Actual or Specific Prejudice As A Result Of The Late Notice.**

Utica is not required to show actual and specific prejudice when refusing to pay pre-tender defense costs where it has accepted its obligation to defend Kleenit. See Managed Health Care Sys., Inc., 2001 U.S. Dist. LEXIS 18302, at *6 (no showing of prejudice required where insurer not seeking complete forfeiture of coverage); Hoppies, 783 F. Supp. at 1509. Citing *Employers' Liability Assurances Corp. Ltd. v. Hoechst Celanese Corp., Atlas Tack Corp. v. Liberty Mutual Insurance Company*, and *Sarnafil, Inc. v. Peerless Insurance Company*, Kleenit erroneously asserts that Utica must demonstrate actual and specific prejudice caused by Kleenit's late notice if it purports to deny coverage for pre-

tender defense costs. This is simply not true under the applicable case law. As the

court in *Beatrice Companies* explained:

> The prejudice requirement was adopted to prevent complete
> forfeiture based upon technical failure of the insured to provide
> timely notice. In contrast, enforcement of the rule that pre-tender
> defense costs are not recoverable does not result in complete
> forfeiture of an insured's right to recover fees. Rather, the rule
> gives the insured the choice of defending some or all of a claim on
> its own.

Beatrice Cos., 924 F. Supp. at 873. In other words, a showing of prejudice is required

only where the insurer is seeking to disclaim coverage altogether. Utica has agreed, and

has in fact paid, 100% of Kleenit's post-tender defense costs. Utica has accepted its

defense obligation and has only refused to pay Kleenit's pre-tender defense costs.

Where Utica is solely contesting payment of pre-notice defense costs and is not

disclaiming coverage, Utica is not required under Massachusetts law to show actual or

specific prejudice as a result of Kleenit's late notice.

### C.    Kleenit's Authorities Are Misplaced.

In support of the argument it raised in its Motion for a Preliminary Injunction

that Utica must show actual and specific prejudice, Kleenit relies on *Atlas Tack Corp. v.*

*Liberty Mutual Insurance Company*, 48 Mass. App. Ct. 378 (1999), *Employers Liability*

*Assur. Corp. Ltd. v. Hoechst Celanese Corp.*, 43 Mass. App. Ct. 465 (1997) and *Sarnafil, Inc.*

*v. Peerless Ins. Co.*, 418 Mass. 295 (1994). The cases cited by Kleenit are not on point.

First, neither *Employers' Liability, Atlas Tack,* nor *Sarnafil,*[3] address the specific issue of pre-tender defense costs. Indeed, the phrase "pre-tender costs" is rarely, if at all mentioned, in any of those cases. Moreover, in each and every one of the cases cited by Kleenit, the insurer was seeking to disclaim coverage entirely on the grounds of late notice or violation of the voluntary payment clause. That is not the case here. Utica has agreed, along with the other carriers, to reimburse Kleenit for 100% of its post-tender defense costs and it is refusing payment of only pre-tender costs. Utica is not declaring a complete forfeiture of coverage. Where, as here, the insurer has accepted tender of the matter and is seeking to disclaim responsibility for pre-notice payments only, the insurer is not required to demonstrate actual prejudice in order to relieve itself of the obligation of paying the insured's pre-notice defense costs. See Managed Health Care Sys., Inc., 2001 U.S. Dist. LEXIS 18302, at *4-6; Beatrice Cos., 924 F. Supp. at 873.

In an attempt to garner support outside of this jurisdiction for its argument that pre-tender costs are recoverable, Kleenit cites *TPLC, Inc. v. United National Insurance Company,* 44 F.3d 1484 (10th Cir. 1995). In this case, the court, construing Pennsylvania law, imposed a prejudice requirement for recovery of pre-tender costs based upon *Brakeman v. Potomac,* 371 A.2d 193, 195-196 (Pa. 1977). However, the court in *Brakeman* addressed only a denial of coverage due to late notice. Not to mention, the insurer in *Brakeman* was also disclaiming coverage under the policy as a result of the late notice.

---

[3] It is particularly noteworthy that in *Beatrice Companies, supra,* the court, applying Massachusetts law, held that the insurer was not liable for pre-notice defense costs without regard to prejudice and rejected the insured's argument that the Massachusetts Appeals Court in *Sarnafil Inc. v. Peerless Ins. Co.,* effectively overruled the "no pre-notice defense costs" rule announced in *Hoppy's Oil, supra. Beatrice Companies,* 924 F. Supp. at 873. The court found the insured's argument unpersuasive because "there was never any dispute in [Sarnafil] as to pre-notice defense costs." Id.

That is not the case here as Utica has paid Kleenit's post-tender defense costs. A more

persuasive and better-reasoned decision in Pennsylvania is _Safeguard Scientifics, Inc. v._

_Liberty Mut. Ins. Co.,_ 766 F. Supp. 324, 333 (E.D. Pa. 1991), in which that court came to

the opposite conclusion regarding the issue of prejudice. Kleenit's heavy reliance on

_TPLC_ is thus questionable and hardly convincing. Indeed, Pennsylvania law is

inconclusive at best. More importantly, the holding in _TPLC_ is _not_ the law in

Massachusetts.

Other than _TPLC_, Kleenit offers no other case law to support its position that it is

entitled to pre-tender defense costs from Utica. This is because the great weight of

authority favors a no pre-tender cost recovery rule. See SL Indust. Inc. v. Amer.

Motorists Ins. Co., 607 A.2d 1266, 1273 (N.J. 1992) (insurer liable only for "that portion

of the defense costs arising after it was informed of the facts triggering the duty to

defend"); Towne Realty Inc. v. Zurich Ins. Co., 548 N.W.2d 64, 68 (Wis. 1996) (insurer

not liable for expenses incurred by insured prior to tender of claim because insurer had

no duty to defend until notice and these damages did not naturally flow from its

"breach of a contractual duty"); Crist v. Ins. Co. of North America, 529 F. Supp. 601, 604

(D. Utah 1982) (pre-tender expenses are not recoverable before notice to an insurer

because burden of promptly notifying insurer rests with insured as a "windfall would

on the contrary result from requiring the [insurers] to bear the burden of the defense

prior to their knowledge of the action"); Legacy Partners, Inc. v. Travelers Indem. Co.,

2003 WL 22905287, *4 (9th Cir. Dec. 9, 2003) (insured not entitled to pre-tender defense

costs regardless of prejudice); Gully & Assoc., Inc. v. Wausau Ins. Co., 536 So. 2d 816,

818 (La. Ct. App. 1988) (no pre-tender costs recoverable "since [the insurer] is **not denying coverage** or trying to use the late notification as a **basis for denying coverage**") (Emphasis added); Great Am. Ins. Co. v. Aetna Cas. & Sur. Co., 876 P.2d 1314, 1319-20 (Haw. 1994) (holding insurer's duty to defend did not include duty to contribute to defense costs incurred before insurer had notice of claim against insured).

Suffice it to say, Kleenit cannot point to one Massachusetts case that holds that an insurer is liable for pre-tender defense costs where it has not disclaimed coverage. Indeed, since Kleenit and Utica first began debating the issue of pre-tender costs, Kleenit has not once addressed the overwhelming authority cited by Utica in support of its position.   Kleenit's silence speaks volumes.

II.     **THE COURT SHOULD ALLOW UTICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KLEENIT'S CHAPTER 93A AND 176D CLAIMS BECAUSE UTICA HAS NOT ENGAGED IN ANY UNFAIR AND DECEPTIVE PRACTICES.**

Kleenit's Chapter 93A and 176D claims against Utica are without merit. Chapter 93A imposes liability as a consequence of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . " G.L. c. 93A, § 2. In determining a Chapter 93A violation, the court stated: "We focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G.L c. 93A fairness determination." Mass. Employers Ins. Exchange v. Propac-Mass. Inc., 420 Mass. 39, 42-43 (1995).

An insurance company has not violated Chapter 93A when its interpretation of the policy is reasonable. Boston Symphony Orchestra, Inc. v. Commercial Union Ins.

Co., 406 Mass. 7, 14 (1989). In Boston Symphony, the Supreme Judicial Court held that

the insurer did not violate Chapter 93A by declining to defend its insured because it

relied in good faith "upon a plausible, although ultimately incorrect, interpretation of

its policy." Id. at 15. The court stated: "There is nothing immoral, unethical or

oppressive in such an action." Id.

Similarly, a violation of Chapter 176D, § 2 is defined as: "an unfair method of

competition or an unfair or deceptive act or practice in the business of insurance." The

statute sets out acts or omissions that constitute unfair claim settlement practices

including "refusing to pay claims without conducting a reasonable investigation,"

"failing to acknowledge and act reasonably promptly upon communications with

respect to claims arising under insurance policies," and "failing to effectuate prompt,

fair and equitable settlements of claims in which liability has become reasonably clear."

Chapter 176D, § 3(9). In Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 341 (1994),

the court concluded that a "plausible, reasoned legal position that may ultimately turn

out to be mistaken" does not subject an insurer to Chapters 93A or 176D liability.

Utica did not commit an unfair or deceptive act or practice under Chapters 93A

and 176D in declining to pay Kleenit's pre-tender defense costs. To the contrary, as set

forth above, Utica reasonably declined to pay these costs based upon Massachusetts

case law and precedent. See Boston Symphony and Guity, supra. Further, Utica has

acted at all times with the utmost good faith in regards to this matter. For example,

after Kleenit failed to present Utica with any policies potentially applicable to the claim,

Utica nevertheless conducted an extensive independent search for applicable policies.

Also, Utica agreed to participate in Kleenit's defense despite the presence of a pollution exclusion and has paid 100% of all post-tender defense costs. Therefore, Utica should be granted partial summary judgment on Kleenit's Chapters 93A and 176D claims.

## CONCLUSION

WHEREFORE, Utica respectfully requests that this Court enter an Order granting partial summary judgment in Utica's favor with respect to the pre-tender defense costs and the Chapter 93A and 176D claims.

Respectfully submitted,

UTICA NATIONAL INSURANCE GROUP,
Defendant

By Its Attorney:

_____

Richard E. Heifetz        BBO #229000
Danielle M. Maloney      BBO #647527
TUCKER, HEIFETZ & SALTZMAN, LLP
Three School Street
Boston, MA 02108
617-557-9696
Dated: June 14, 2004

I hereby certify that I made service
of the foregoing document in accordance
with the provisions of Fed. R. Civ. P. 5.

_____

14