*EXHIBIT  4*

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
C.A. NO. MICV2003-4677

|  |  |
|---|---|
| KLEENIT, INC. | ) |
| Plaintiff, | ) |
| v. | ) |
| SENTRY INSURANCE COMPANY,<br>ROYAL & SUN ALLIANCE,<br>UTICA NATIONAL INSURANCE GROUP, and<br>TRAVELERS PROPERTY AND CASUALTY | ) |
| Defendants. | ) |

### AFFIDAVIT OF KEITH CRIDER

I, Keith Crider, hereby depose and state the following:

1.     My name is Keith Crider, President of Kleenit, Inc. ("Kleenit"). I have been the

Chief Financial Officer of Kleenit, Inc. for 37 years. Kleenit is a small, closely held family

corporation based presently in Ayer, Massachusetts. As President and Chief Financial Officer of

Kleenit I am familiar with the assets and liabilities of the corporation

2.     Kleenit has incurred severe financial hardship over the past two years, which at

times has threatened the very existence of the business, as a result of extraordinary expenses

associated with the defense, site assessment and clean-up obligations it has incurred as a result of

the receipt of three Notices of Responsibility (NORs) sent by the Department of Environmental

Protection (DEP) to Kleenit for its facilities located in Chelmsford, Acton and Wayland,

Massachusetts.

3.      Kleenit has incurred approximately $149,586.74 in defense related expenses, $53,356.14 in claim related expenses, $22,352.44 in indemnity (clean-up) related expenses, for a total of $225,205.11 in expenses associated with the Chelmsford and Acton sites as further detailed in the attached spreadsheet of Chelmsford and Acton's costs (See Attachment No. 1).

4.      With the Wayland site included, Kleenit has incurred approximately $166,242.46 in defense, 22,352.44 in claim costs and $56,598.67 in indemnification and clean-up costs for a total of $245,103.36 (See Attachment No. 2).

5.      In contrast, Kleenit's insurance companies have only reimbursed $18,590.77, or merely 12%, of Kleenit's defense costs at the Chelmsford and Acton sites, and no payment for clean-up, indemnification or claims.

6.      Kleenit timely put its insurance carriers on notice once it became aware of each NOR and the need for defense and reimbursement of defense related expenses associated with these NORs. At first Kleenit believed that it could handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense. However, as a result of the claims made by other third parties, including the DEP, ExxonMobil and a day care facility, Kleenit realized that the costs and liabilities associated with defense alone of this matter could financially bankrupt the corporation.

7.      Upon realization of the severe financial consequences of these claims, Kleenit made diligent efforts to investigate, locate and notify any and all insurers of its facilities, some of which dated back to the 1960s.

8.      Unfortunately, some of Kleenit's former insurance agents lost older insurance policy records and it was extremely difficult and burdensome to reconstruct its insurance records, which

possibly have been archived and/or lost. Kleenit pursued all reasonable sources to recover its records, including contacting former agents, accountants and the insurance companies directly.

9.    Despite providing timely notice of the DEP and third party claims, none of the insurers promptly responded to initial notices and claims to provide defense to Kleenit. Kleenit was required to retain environmental consultants and insurance defense and coverage counsel to represent its interest, defend claims, and pursue defense and coverage from the various insurers.

10.    Kleenit will suffer irreparable financial and fiscal harm if it is not reimbursed for all outstanding defense costs at the Chelmsford and Acton sites, or if it is obligated to pay defense and coverage for claims made by various third parties in these three matters.

11.    Kleenit cannot afford to pay for defense and indemnity (clean-up) related expenses at the Chelmsford and Acton sites. As a result of the insurers' unreasonable delay and refusal to pay Kleenit's defense costs, Kleenit has been forced to concentrate its limited financial resources on only defense-related expenses. Thus irreparable harm may likely occur to third parties and/or the environment if Kleenit becomes financially unable to implement cost effective site assessment and clean-up (response actions). For example, irreparable harm may result to downgradient property owners and occupants of the day care facility in Chelmsford and other sensitive environmental receptors, if Kleenit lacks the financial resources to participate in a clean-up. Exxon has threatened to sue Kleenit if it fails to participate equally in response actions in the vicinity of the Chelmsford site.

12.    Kleenit requires immediate equitable relief from the Court to order full payment of all defense related costs incurred by Kleenit at the Chelmsford and Acton sites so that Kleenit can fund necessary defense and response action costs and so that Kleenit can avoid having to downsize

its operations, sell off company facilities and assets, lay off employees and/or file for bankruptcy protection from its creditors.

13.    In an effort to avoid laying off employees and irreparable financial harm to the corporation, I have taken little, if any, financial compensation for 2 years and have had to exercise other extreme austerity measures.  For example, I have had to extend business credits and loans, for which I have had to personally guarantee payment.

14.    Kleenit's business reputation with its vendors has been disrupted, and also its reputation with environmental defense consultants has also been irreparably damaged, since some will not provide further services without promissory notes and personal guarantees.

I swear under the pains and penalties of perjury the above statements of fact are true and accurate to the best of my personal knowledge.

Keith Crider, President
Kleenit, Inc.

Dated:  February 5, 2004

584800_1

*EXHIBIT  5*

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: 617) 330-7016
E-mail: rfasanella@rubinrudman.com

January 10, 2003

BY FACSIMILE 315-734-2198 AND
CERTIFIED MAIL NO. 7099 3400 0021 4885 9854
RETURN RECEIPT REQUESTED

Kristen Martin
Utica National Insurance Group
401 Edgewater Place – Suite 300
Wakefield, Massachusetts 01880-6255

Demand Letter under MGL C. 93A and 176D
RE:         Insured: Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
            Claim Type: Physical Loss/Property Damage/Hazardous Materials
            Location: 293 and 295 Main Street, Acton, Massachusetts
            Policy: All Risks/Special Multi-Peril, Policy No. FMP 1946 (1982 – 1985)
                    Umbrella Liability, Policy No. LV 6406 (1982-1985)
            Utica File No. 711578

Dear Ms. Martin:

As you know from our previous letters in September and November 2002, this firm represents your former insured, Kleenit, Inc. ("Kleenit") with respect to the above referenced matter. On behalf of Kleenit and in accordance with M.G.L. c. 93A, §11 and M.G.L. c. 176D, we hereby demand immediate defense and coverage under the policies for this matter. Because Utica has failed over the past three months to even acknowledge the existence of the policies, let alone confirm defense and coverage, if you fail before January 20, 2003 to either (1) enter into a tolling and standstill agreement to stay time limitations, if any, to bring an action against Utica seeking coverage with respect to this matter, or (2) confirm that defense and coverage will be provided to Kleenit in this matter, Kleenit will be forced take steps to establish and protect its legal rights, which will likely include filing a declaratory judgment action to determine Utica's legal obligations to Kleenit. If we are required to file such a lawsuit and establish a duty of defense or coverage, we will seek and be entitled to multiple damages and attorney's fees in accordance with M.G.L. c. 93A and 176D based upon, inter alia, Utica's unfair, bad faith and/or deceptive practices relative to its investigation and claims settlement of Kleenit's claims.

536573_1

RUBIN AND RUDMAN LLP

Kristin Martin
January 10 2003
Page 2

We enclose a copy of a Notice of Responsibility ("NOR") issued by the Massachusetts Department of Environmental Protection ("DEP") to Kleenit, dated December 30, 2002, ordering Kleenit to perform hazardous waste cleanup actions at the site under M.G.L. c.21E and the Massachusetts Contingency Plan, 310 CMR 40.0000 ("MCP"). DEP's NOR requires Kleenit to inter alia, submit a completed Tier Classification submittal and Tier I Permit application, or a Response Action Outcome Statement on or before October 29, 2003. As we informed you in our letter dated September 25, 2002, the case law in Massachusetts clearly holds that an NOR issued by DEP triggers an insurer's duty to defend. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689 (1990).

As you are aware, on September 25, 2002 we provided you with specific and detailed information concerning the claim, the factual and legal basis for defense and indemnification, and Kleenit's policies, including policy numbers, coverage dates, contemporaneous company document identifying and describing the policies, a copy of a specimen policy from the relevant coverage periods. The Appeals Court has determined that this evidence is more than sufficient to establish the existence and contents of the policies. See, e.g., Rubenstein v. Utica Ins. Co. of America, 44 Mass.App.Ct. 842, 846-847 (1998) (lost or destroyed policy proved through document and testimony on, inter alia, the purchase of the policy, a schedule of insurance showing policy numbers and dates, and specimen forms of policies.) Kleenit has placed the loss within the insuring clause, and the burden is on you to prove that the cause of the claim is not covered as a result of particular exclusions within the policies or otherwise. Murray v. Continental Ins. Co., 313 Mass. 557 (1943).

On November 13, 2002, at your request, we also provided to you voluminous documents and reports substantiating the claim. Rubin and Rudman also responded to the litany of purported defenses to coverage that you had raised, including specific case citations negating your purported defenses. We believe that you have failed to demonstrate that there are valid, good faith defenses to Kleenit's claim.

Because more than 100 days have elapsed without Utica confirming that it will provide a defense in this instance, Utica has forfeited its opportunity to select counsel of its choice and Kleenit has therefore selected this firm to represent and defend it in this matter.

Based upon the foregoing, we demand that Utica inform us on or before January 20, 2003 whether it will enter into a tolling and standstill agreement or provide defense and indemnification under the Policy. If you fail to agree to one of those steps, Kleenit may file a

536573.1

RUBIN AND RUDMAN LLP

Kristin Martin
January 10, 2003
Page 3

lawsuit to establish your defense and coverage obligations and seek multiple damages and attorney's fees under M.G.L. c.93A and c.176D. Please contact us with your response.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

PJF/ees
Enclosure
cc:    Keith Crider, Kleenit, Inc. (with enclosure)



**COMMONWEALTH OF MASSACHUSETTS**
**EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
Central Regional Office, 627 Main Street, Worcester, MA 01608

JANE M SWIFT
Governor

BOB DURAND
Secretary

LAUREN A. LISS
Commissioner

<u>URGENT LEGAL MATTER: PROMPT ACTION NECESSARY</u>    DEC 3 0 2002

Kleenit, Inc.
d/b/a Dud's Cleaners & Launderers
44 Park Street
Ayer, MA 01432

RE: CRWSC-Acton
293 Main Street
Dud's Dry Cleaners

Attention: Keith Crider
President

RTN 2-14526

<u>NOTICE OF RESPONSIBILITY
120-DAY NOTIFICATION
M.G.L. C. 21E, 310 CMR 40.0000</u>

Dear Mr Crider:

Thank you for submitting the Release Notification Form (RNF) to the Department of Environmental Protection, Bureau of Waste Site Cleanup (the Department) on October 29, 2002. Your submittal presents the Department with information that the property at 293 Main Street, Acton, MA, has been subject to a release of hazardous materials, Tetrachloroethylene or dry cleaning fluid also known by the common name. Perc. According to the RNF, the release has resulted in the presence of Tetrachloroethylene in the soil at concentrations that exceed the applicable Reportable Concentrations (RC). Based on this information, the Department has determined that the property, or portions thereof, is a disposal site that requires a response action.

The Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c 21E, which is implemented through regulations promulgated by the Department, governs the cleanup of disposal sites. These regulations are referred to as the Massachusetts Contingency Plan, (the MCP), and are codified at 310 CMR 40.0000. The Department wishes to ensure that you are aware of your rights and responsibilities under M.G.L. c. 21E and the MCP.

In your submittal, you (as used in this notice, "you" refers to Kleenit, Inc. d/b/a Dud's Cleaners & Launderers) identify yourself as the operator of Dud's Cleaners and Launderers and as a party with potential liability for response action costs and damages under M.G.L. c. 21E, §5. This notice and the attached summary are intended to provide you with information about

This Information is available in alternate format. Call Aprel McCabe ADA Coordinator at (617) 556-2788
http://www.state.ma.us/dep • Phone (508) 792-7650 • Fax (508) 792-7621 • TDD # (508) 767-2788
Printed on Recycled Paper

NOTICE OF RESPONSIBILTY            RTN 2-14526

2

liability under Chapter 21E to assist you in deciding what actions to take in response to the conditions that are present at this disposal site.

The Department has determined that there are two potentially responsible parties with respect to this release: 1) you, the operator of the property and, 2) E&A Northeast Limited Partnership, the property owner. The Department requests that the two parties determine amongst themselves how to allocate responsibility for the necessary response actions at the site.

You should be aware that you might have claims against third parties for damages, including claims for contribution or reimbursement for the costs of cleanup. Such claims do not exist indefinitely but are governed by laws that establish the time allowed for bringing litigation. The Department encourages you to take any action necessary to protect any such claims you may have against third parties.

## BACKGROUND

On October 29, 2002, the Department received a RNF from you for a release of Tetrachloroethylene or Perc to the property at 293 Main Street, Acton. The RNF reports the presence of Tetrachloroethylene in the soil at a concentration level that exceeds the applicable RC identified in the RNF. The concentration level reported in the RNF is summarized in parts million (ppm) and compared to the soil reportable concentrations below.

| OHM Released | SOIL Concentration (ppm | RCS-1 (ppm) |
|---|---|---|
| Tetrachloroethylene | 160 | 0.5 |

The Department has assigned Release Tracking Number (RTN) 2-14526 to the disposal site. The Department has no information regarding further actions taken or proposed for this disposal site.

## NECESSARY RESPONSE ACTIONS AND APPLICABLE DEADLINES

October 29, 2002 is the date of release notification for RTN 2-14526. Unless otherwise stated, this date will be the baseline for calculating compliance of this disposal site with the deadlines contained in the MCP.

No disposal site will be deemed to have had all the necessary and required response actions taken for it unless and until all substantial hazards presented by the release and/or threat of release have been eliminated and a level of no significant risk exists or has been achieved in compliance with the MCP. The MCP requires persons undertaking response actions at a disposal site to submit to the Department a Response Action Outcome (RAO) Statement prepared by a Licensed Site Professional upon determining that a level of no significant risk exists or has been achieved at the disposal site. A fee of $750.00 is assessed if an RAO is filed 120 days after release notification, but before Tier Classification. Therefore, if all remediation work has been completed, you are encouraged to have the RAO submitted promptly to avoid the fee.

NOTICE OF RESPONSIBILTY                RTN 2-14526

3

Unless otherwise provided by the Department, responsible parties have one year from the initial date notice of a release or threat of release is provided to the Department pursuant to 310 CMR 40.0300 or from the date the Department issues a Notice of Responsibility, whichever occurs earlier, to file with the Department one of the following submittals: (1) a completed Tier Classification Submittal; or (2) a Response Action Outcome Statement. If required by the MCP, a completed Tier I Permit Application must also accompany a Tier Classification Submittal. Unless otherwise specified by the Department, the deadline for these submittals for this disposal site is October 29, 2003.

The MCP requires responsible parties and any other person undertaking response actions to perform Immediate Response Actions in response to sudden releases, Imminent Hazards and Conditions of Substantial Release Migration. Such persons must continue to evaluate the need for Immediate Response Actions and notify the Department immediately if such a need exists.

# PROCEDURES TO FOLLOW TO UNDERTAKE RESPONSE ACTIONS

The Department encourages parties having liability under M.G.L. c. 21E to take prompt action in response to releases and threats of release of oil and hazardous materials. By taking prompt action, liable parties may significantly lower cleanup costs and avoid the imposition of, or reduce the amount of, certain permit and/or annual compliance assurance fees payable under 310 CMR 4.00.

You must continue to employ or engage a Licensed Site Professional (LSP) to manage, supervise or perform all response actions that you intend to undertake at this disposal site. You may obtain a list of the names and addresses of LSPs by visiting www.mass.gov/lsp; by contacting the Board of Registration of Hazardous Waste Site Cleanup Professionals by telephone at (617) 556-1091, or in person or by mail at One Winter Street, 10th Floor, Boston, Massachusetts 02108.

NOTICE OF RESPONSIBILTY          RTN 2-14526                                    4

    It you have any questions, please contact the Central Regional Office at the letterhead address cr at 508-792-7653. The Department requests that you inform your LSP of this Notice. All future correspondence and communications regarding the disposal site should reference RTN 2-14526.

                                                        Sincerely,

                    · DEC 30 ???2
                    ─────────────                       Frank Sciannameo
                                                        Section Chief
                                                        Bureau of Waste Site Cleanup

FS\PAS
[ NOR/ISSUED ]
Enclosure
La

cc:  Ac on Board of Health.
     Lisa Feagain, E&A Northeast Limited Partnership, 360 Newbury Street, Boston, MA 02115
     Mark Germano, LSP, Coler & Colantonio, Inc., 101 Accord Park Drive, Norwell, MA 02061
     Da abase Entry
     Fil :

        C \WINNT\NORs2002\2-14526ActonKleeitlncnoperatoror.doc

## SUMMARY OF LIABILITY UNDER CHAPTER 21E

As stated in the Notice of Responsibility accompanying this summary, the Department has reason to believe that you are a Potentially Responsible Party ("PRP") with potential liability under M.G.L. c. 21E, section 5, for response action costs and damages to natural resources caused by the release and/or threat of release. The Department has identified you as a PRP because it believes you fall within one or more of the following categories of persons made potentially liable by subsection 5(a):

- any current owner or operator of a site from or at which there is or has been a release or threat of release of oil and/or hazardous material;
- any person who owned or operated a site at the time hazardous material was stored or disposed of;
- any person who arranged for the transport, disposal, storage or treatment of hazardous material to or at a site;
- any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release or threat of release of such material; and
- any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material at a site.

For purposes of the MCP, you are considered a Responsible Party ("RP") with actual liability under Chapter 21E if you fall within one of these categories unless you (1) are entitled to a defense under section 5 or other applicable law, and (2) have reasonably incurred cleanup costs in an amount equal to or greater than any applicable cap on liability under subsection 5(d).

This liability is "strict," meaning it is not based on fault, but solely on your status as an owner, operator, generator, transporter or disposer. It is also joint and several, meaning that each person who falls within one of these categories may be held liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

Section 5 provides a few narrowly drawn defenses to liability, including a defense for releases and damages caused by an act of God, an act of war or an act by a third party other than an employee, agent or person with whom the party has a contractual relationship (see subsection 5(j)); a defense for certain owners of residential property at which the owner maintains a permanent residence (see subsection 5(h)); and a defense for certain public utilities and agencies of the Commonwealth which own a right-of-way that is a site (see subsection 5(j)).

You may voluntarily undertake response actions under the MCP without having your liability under Chapter 21E formally adjudicated by the Department. If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, the Department is authorized by Chapter 21E to perform the necessary work.

By taking the necessary response actions, you can avoid liability for response action costs incurred by the Department in performing these actions. If you are an RP and you fail to perform necessary response actions at the site, you may be held liable for up to three (3) times all response action costs incurred by the Department and sanctions may be imposed on you for failure to perform response actions required by the MCP.

Response action costs include, without limitation, the cost of direct hours spent by Department employees arranging for response actions or overseeing work performed by persons other than the Department or its contractors, expenses incurred by the Department in support of those direct hours, and payments to the Department's contractors (for more detail on cost liability, see 310 CMR 40.1200: Cost Recovery). The Department may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually.

Any liability to the Commonwealth under Chapter 21E constitutes a debt to the Commonwealth. To secure payment of this debt, the Department may place liens on all of your property in the Commonwealth under M.G.L. c. 21E, section 13. To recover this debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against you.

In addition to your potential liability for response action costs and damages to natural resources caused by the release, civil and criminal liability may also be imposed by a court of competent jurisdiction under M.G.L. c. 21E, section 11, and civil administrative penalties may be assessed by the Department under M.G.L. c. 21A, section 16, for each violation of Chapter 21E, the MCP or any order, permit or approval issued thereunder.

If you are an RP and you have reason to believe that your performance of the necessary response actions is beyond your technical, financial or legal ability, you should promptly notify the Department in writing of your inability in accordance with Chapter 21E, subsection 5(e) and 310 CMR 40.0172. If you assert and demonstrate in compliance therewith that performing or paying for such response action is beyond your ability, subsection 5(e) provides you with a limited defense to an action by the Commonwealth for recovery of two to three times the Department's response action costs and 310 CMR 40.0172 provides you with a limited defense to the Department's assessment of civil administrative penalties.

*EXHIBIT  6*



Kristen H. Martin
Staff Attorney

P.O. Box 6568, Utica, New York 13504
Telephone: (315) 734-2917
Fax: (315) 734-2198

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

<u>PARTIAL DISCLAIMER OF COVERAGE AND RESERVATION OF RIGHTS</u>

October 28, 2002

CRR <u>7001 0360 0001 9522 4233</u>
Robert A. Fananella, Esq.
Rubin and Rudman, LLP
Counsellors at Law
50 Rowes Wharf
Boston, MA 02110-3319

**DROP MAIL**

CRR <u>7001 0360 0001 9522 4110</u>
Mr. Kevin Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

Re:    Utica File No:    711578
       293 and 295 Main Street, Acton, Massachusetts

Dear Sirs:

<u>ACKNOWLEDGEMENT</u>

This will acknowledge the receipt of your letter dated September 25, 2002, advising us of a claim and requesting defense and indemnification relating to a release of hazardous materials that caused building and property damage at 293 and 295 Main Street, Acton, Massachusetts.

<u>BACKGROUND</u>

According to the information provided, on or about August 14, 2002, Kleenit's landlord, E & A Northeast Limited Partnership, notified Kleenit of a release of hazardous materials beneath the property at the above referenced location. E & A is claiming that the vapors from the release could potentially pose a health risk to employees, tenants and customers at the property. Kleenit

Re: Utica File No:   711577                                                                    2
28 Central Square, Chelmsford, MA

the offsite migration is impacting indoor air at a building located at 34 Central Square.

It is our understanding that the property was first used as a dry cleaning facility in 1960 and that the septic system, which is being considered as a potential source of contamination, was used until 1990. Your letter claims that the release occurred many years ago within our policy period.

It is our understanding that you are seeking response costs, including costs for the environmental scientist retained by you. You further state that Exxon Mobil, another potentially responsible party, is seeking contribution from Kleenit for its share of response costs.

## YOUR POLICY

Kleenit, Inc. was insured by Graphic Arts Mutual under FMP 1946 for the period 10/01/79 – 10/1/82. The property damage policy limits were $100,000 per occurrence / $100,000 in the aggregate. Our archive search has not located any other policy issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance Group. If you are in possession of any documents which would establish the existence of a 1982 – 1985 policy and/or the umbrella policy referenced in your letter please forward said documents to my attention. Upon receipt of the documents, I will address any coverage that those policies may provide. We reserve our rights to deny coverage for defense and indemnification under all policies issued by Utica or a related company and further assert that you have the burden of producing any other policy upon which you claim coverage.

Your primary policy, a Comprehensive General Liability Policy, (6395a-x-c Ed. 1-73) contained the following language:

I.       COVERAGE A-BODILY INJURY LIABILITY

COVERAGE B-PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums, which the insured shall become legally obligated to pay as damages because of

A.       bodily injury or

B.       property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are

> groundless, false or fraudulent, and may make such investigation
> and settlement of any claim or suit as it deems expedient, but the
> company shall not be obligated to pay any claim or judgment or to
> defend any suit after the applicable limit of the company's liability
> has been exhausted by payment of judgements or settlements.

The policy also defines the terms "occurrence" and " property damage." Those
terms are defined as:

> "occurrence" means an accident including continuous or repeated
> exposure to conditions, which results in bodily injury or property damage
> neither expected nor intended from the standpoint of the insured;

> "property damage" means (1) physical injury to or destruction of tangible
> property which occurs during the policy period, including the loss of use
> thereof at any time resulting therefrom, or (2) loss of use of tangible
> property which has not been physically injured or destroyed provided such
> loss of use is caused by an occurrence during the policy period;

Graphic Arts Mutual expressly reserves the rights to disclaim coverage for
defense and indemnification because the facts known to date do not establish
that there has been an "occurrence" which has resulted in "property damage" as
defined by the policy.  As the Property has been used as a dry cleaning facility
for over 40 years it is possible that the contamination did not occur during the
three years Graphic Arts Mutual insured Kleenit.  Pending a determination as to
when the contamination occurred, we reserve our rights to disclaim coverage at a
later date if, and when, such a determination is made.

Furthermore as no suit has been commenced, no duty to defend had been
triggered.  As such, we expressly disclaim coverage for defense costs relating to
this matter

Your policy also contained the following exclusions:

This policy does not apply:

> (f)    to bodily injury or property damage arising out of the discharge,
> dispersal, release or escape of smoke, vapors, soot, fumes, acids,
> alkalis, toxic chemicals, liquids or gases, waste materials or other
> irritants, contaminants or pollutants into or upon land, the
> atmosphere or any water course or body of water; but this
> exclusion does not apply if such discharge, dispersal, release or
> escape is sudden and accidental:

Graphic Arts Mutual expressly reserves the rights to disclaim coverage relating to
this matter on the grounds that the release of the contaminants was neither

sudden or accidental and therefore does not fall within the savings clause of exclusion f.

    (k)    to property damage to

        (1)    property owned or occupied by or rented to the insured.

        (2)    property used by the insured, or

        (3)    property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control:

the insured is for any purpose exercising physical control: but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured:

Graphic Arts Mutual expressly reserves the rights to disclaim coverage for any damage to the property owned or occupied by or rented by Kleenit. To the extent that there is any damage to property owned by a third party we will investigate and determine whether it is covered by the policy.

The policy issued by Graphic Arts Mutual contains the following conditions.

## CONDITIONS

**4.** Insured's Duties in the Event of Occurrence, Claim or Suit:

**(a)** In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

**(b)** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**(c)** The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who

Re: Utica File No:   711577
28 Central Square, Chelmsford, MA

5

may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

It is our understanding that you first became aware of this claim on January 28, 2001. We did not receive notice of this claim until sometime on or about September 25, 2002.

In addition to an almost two year delay in providing notice, Kleenit also assumed obligations, incurred expense, and/or made voluntary payments by retaining an environmental scientist, legal counsel and negotiating with the DEP.

As a result of the late notice and undertaking of voluntary payments, Graphic Arts Mutual expressly disclaims coverage for any liabilities assumed or incurred prior to our receipt of this claim on or about September 27, 2002.

The policy also has an other insurance condition that states as follows:

6. Other Insurance: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence or other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares**. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits**. If any of such other insurance does not provide for contribution by equal shares, the company shall not be

liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

We trust you have put all Kleenit carriers from 1960 to present on notice. Please provide us with the responses you have received form any other carriers to this claim

## CONCLUSION

As more fully set forth above, we are disclaiming coverage for any payment or expense incurred prior to September 27, 2002 as well as expense costs. We are reserving our rights under the policy in relation to the remainder of the claim. Our investigation into this matter should not be deemed as a waiver of any rights we may have under the policy and is undertaken under a full reservation of rights.

I ask that you please forward to my attention any reports prepared by the environmental scientist retained by Kleenit as well as any documentation received from the DEP or prepared by or on behalf of Kleenit in response to a request by the DEP at your earliest convenience.

Finally, as stated above our archive search did not reveal the existence of any policy other than the Graphic Arts Mutual (1979-1982) and Kleenit has the burden of producing any policy. If other policies are located, we reserve our right to address those policies at a later date.

Very truly yours,

Kristen H. Martin
Staff Attorney

KHM/pcs*