UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC.<br><br>Plaintiff,<br><br>v.<br><br>SENTRY INSURANCE COMPANY, ROYAL & SUNALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY,<br><br>Defendants. | CIVIL ACTION NO. 04-10351 (NG) |

**EXHIBITS TO THE AFFIDAVIT OF KARL S. VASILOFF IN SUPPORT OF DEFENDANTS GLOBE INDEMNITY COMPANY AND ROYAL INSURANCE COMPANY OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT 1

FILE COPY

RUBIN AND RUDMAN LLP
COUNSELLORS AT LAW
50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319
TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

**Certified Mail Return**
**Receipt Requested No. 7000 1670 0007 7745 3664**

Globe Indemnity Company
9300 Arrowpoint Boulevard
P. O. Box 1000
Charlotte, North Carolina 28201-1000
Attention: Claims Manager/Department

**Certified Mail Return**
**Receipt Requested No. 7000 1670 0007 7745-3657**

Globe Indemnity Company
Royal & Sun Alliance
25 New Chardon Street
P. O. Box 8808
Boston, Massachusetts 02114
Attention: Claims Manager/Department

RE: NOTICE OF CLAIM AND REQUEST FOR DEFENSE/COVERAGE
Insured: Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
Claim Type: Physical Loss/Property Damage/Hazardous Materials
**Location: 28 Central Square, Chelmsford, Massachusetts**
Policies: All Risks/Special Multi-Peril, Policy No. YAD36485/D36485 (1983-1985)
Pollution Liability, Policy No. GLZ102708/102708 (1983-1985)
Umbrella Liability, Policy No. GLZ102708/102708 (1983-1985)

Dear Sir or Madam:

Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 28 Central Square, Chelmsford, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Globe Indemnity Company (the "Company").

The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. YAD36485 or D36485 ("SMP Policy"), a Pollution Liability, Policy No. GLZ102708 or 102708 ("Pollution Policy"), and an Umbrella Liability Policy, Policy No. GLZ102708 or 102708 ("Umbrella Policy") (collectively "Policies") between approximately December 20, 1983 and December 20, 1985. (Attached as Tab 1 are copies of Kleenit's "Prepaid Insurance" ledgers from June 1984 and June 1985, proving the existence of the Policies. Attached as Tab 2 are copies of the types of SMP Policy and Pollution Policy that Kleenit believes were issued to it by the Company.)

Kleenit hereby requests defense and coverage for the foregoing claim under the Policies. In addition, Kleenit requests that the Company approve the risk assessment, soil and groundwater assessment, and other response actions that are discussed herein. Kleenit also requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and any endorsements or riders. If the Company contends that the Policies, Declaration Page(s), endorsements and/or riders do not exist, the Company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame.

**Please respond in writing to me within 30 days of the date of this Notice of Claim.**

**Background of Hazardous Materials Release and Property and Building Damage**

On or about January 28, 2001 the Massachusetts Department of Environmental Protection ("DEP") issued to Kleenit a "Release Notification – Notice of Responsibility – Notice of Need to Conduct Immediate Response Actions" ("Notice of Responsibility" or "NOR"), claiming that Kleenit was a Potentially Responsible Party ("PRP") under Massachusetts General Laws Chapter 21E for the release of oil and/or hazardous materials at the Property. (Attached at Tab 3 is a copy of the NOR). DEP claimed that Kleenit was responsible for the release of volatile organic compounds ("VOCs") at the Property and that the VOCs had migrated off of the Property and were detected at locations outside of the Property's boundaries.

The Property was first used as a dry cleaning facility in 1960 and the septic system, which is considered a potential source of contamination, was in use until approximately 1990. Based upon the migration and extent of contamination claimed by DEP, the release of hazardous materials and the property damage likely occurred many years ago and within the Policy period. The release of hazardous materials such as VOCs may have resulted from the sudden and accidental releases from the malfunctions of older equipment, spills and/or inadvertent releases from the disposal of perchloroethylene ("PCE") waste products in containers or bags discarded in former dumpsters stored on-site for routine pick-up and disposal prior to the enactment of G.L. c. 21E, which, along with other laws, required licensed hazardous waste contractors to pick-up, manifest and dispose of hazardous wastes at licensed facilities.

DEP further asserted in the NOR that the VOCs at the Property "extend[ed] to the 34 Central Square property and Beaver Brook." (See NOR, p. 1, emphasis added). The NOR stated that "DEP has determined that a Condition of Substantial Release Migration ("SRM"), as described in 310 CMR 40.0006, exists at the subject site." DEP has incurred response action costs related to the release that DEP may recover under M.G.L. c. 21E. If Kleenit did not perform the Immediate Response Actions ("IRAs") ordered by DEP, the NOR stated that DEP would perform such actions and "seek to recover its costs and/or may initiate other appropriate enforcement actions to ensure that such response actions are conducted."

On June 19, 2001 DEP issued a "Notice of Need to Conduct Immediate Response Actions" ("Notice to Conduct IRAs") to Kleenit, claiming that "contaminated groundwater at the subject site is discharging to Beaver Brook." (Attached at Tab 4 is a copy of the Notice to Conduct IRAs.) Beaver Brook is located outside of the Property's boundaries. The Notice to Conduct IRAs stated that,

> "[C]hlorinated volatile organic compounds ("CVOCs") have been detected in a sump water sample collected from 34 Central Square in Chelmsford, which operates a day care facility. In addition, CVOCs in indoor air at this location [i.e., at 34 Central Square, not the Property] were also detected. This condition constitutes a Critical Exposure Pathway ("CEP") in accordance with 310 CMR 40.0006. Information available to DEP indicates that a releases [sic] of hazardous material (primarily CVOCs) has occurred at the site which extends to the 34 Central Square property and Beaver Brook, and requires the initiation of one or more IRAs as described in 310 CMR 40.0410." (emphasis and brackets added)

The NOR and Notice to Conduct IRAs required Kleenit to take certain actions to address the condition of Substantial Release Migration ("SRM") and the Critical Exposure Pathway ("CEP") described by DEP. Kleenit has at the outset retained environmental scientists, including a Licensed Site Professional ("LSP"), and environmental legal counsel to initiate its response and defense to DEP's NOR and Notice to Conduct IRAs. Kleenit and its LSP have prepared and filed with DEP certain preliminary environmental reports required by DEP. Kleenit has taken these efforts to address contamination at the Property, the alleged Substantial Release Migration off of the Property, and the potential indoor air impacts at the building located at 34 Central Square, which is beyond the Property's boundaries.

As of this date, Kleenit is required to complete additional requirements under DEP's NOR and Notice to Conduct IRAs and under Chapter 21E and the regulations promulgated thereunder. Kleenit has not resolved its alleged responsibility and liability for other potential damages or costs pertaining to the alleged release at or from the Property, 34 Central Square, Beaver Brook, or any other off-site locations. Kleenit has had discussions with representatives of other PRPs identified by DEP and to whom DEP has sent separate Notices of Responsibility,

namely, Mobil Business Resources Corporation ("ExxonMobil") and Energy North, Inc. ("Energy North"), addressing potential liability, contribution and other issues related to the claims set forth in the NOR and Notice to Conduct IRAs.

Although Kleenit presently believes that it is minimally responsible, if at all, for the contamination alleged in EP's NOR and Notice to Conduct IRA's, the Company should be aware that ExxonMobil has asserted that Kleenit should contribute a one-third share of ExxonMobil's past and future response action costs. ExxonMobil has claimed that its past and projected future costs total more than $250,000. As of this date, Kleenit has not agreed to pay any of ExxonMobil's alleged costs.

**Request for Insurance Defense and Coverage**

Based upon the foregoing, Kleenit requests that the Company provide defense and indemnification under the Policies for all matters related to or arising out of DEP's NOR and Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for damage to the building on the Insured's Property under Section I, Parts I and II, and for property damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against "all risks of physical loss" to buildings and additions and fixtures thereto, and personal property, and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further, coverage for property damage to others and "Off-Premises" coverage, with no applicable exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure against a fortuitous event, casualty or accident, such as the release of contaminants discussed in DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass. App. Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk" policy for insured's loss caused by the discharge and migration of water from a broken pipe *at the premises adjacent to the insured's property*). "Moreover, such fortuities are insured against even if they are not specified in the policy." Mellon at 934. Although the Company in the present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it chose not to do so. As a result, the Company is obligated to provide coverage as requested herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss which Kleenit is legally obligated to pay in the present matter as damages because of property damage or personal injury, including the defense of the claims discussed herein. The Pollution Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is

obligated to pay as compensatory damages because of property damage or bodily injury, and to reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no applicable exclusions under the Policy.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In addition, insurance coverage is triggered by an enforcement letter issued by a government agency to an insured asserting that a release of contamination has occurred, such as the NOR and Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the Company should provide defense and indemnification under the Policies for all claims arising out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the standpoint of the Insured, and, according to DEP's claim, involves off-site contamination and/or impacts property and groundwater of another person if remediation is not undertaken, no exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning up environmental contamination which presents a threat to, or demonstrated contamination of, property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co., Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will be liable not only to defend an insured against an NOR but also to indemnify the insured for all cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854 (1998) (An insurer's liability for all response costs is triggered "even if the contaminating substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275 (1997).

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g., Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in the Policies period would be rendered ineffective by Rubenstein, supra., and Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage may be triggered during many time periods and not just when the damage manifests itself. As stated in Trustees of Tufts University,

> [T]he three most common 'trigger theories' include: the exposure trigger (policies in effect during years claimant's property tortiously exposed to hazardous material triggered), the continuous (or multiple) trigger (property damage occurs during each year from the time of first hazardous exposure through manifestation), and the injury-in-fact (or actual injury) trigger requires inquiry into when property damage actually occurred).

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear that the loss and damage occurred many years ago, during the Policies period. As a result, coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982) and Camp, Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, regardless of whether the insurer acted in bad faith or unreasonably. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584 (2002).

**Please respond to me in writing within 30 days of the date of this Notice of Claim.**

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc: Kleenit, Inc. (with enclosures)