UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC._____ )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SENTRY INSURANCE COMPANY, )<br>ROYAL & SUNALLIANCE, UTICA )<br>NATIONAL INSURANCE GROUP, and )<br>TRAVELERS PROPERTY AND )<br>CASUALTY, )<br>)<br>Defendants. )<br>_____) | CIVIL ACTION NO. 04-10351 (NG) |

**EXHIBITS TO THE AFFIDAVIT OF KARL S. VASILOFF IN SUPPORT OF DEFENDANTS GLOBE INDEMNITY COMPANY AND ROYAL INSURANCE COMPANY OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT 2

FILE COPY

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

**Certified Mail Return**
**Receipt Requested No. 70001670 0007 7745 3640**

Globe Indemnity Company
9300 Arrowpoint Boulevard
P. O. Box 1000
Charlotte, North Carolina 28201-1000
Attention: Claims Manager/Department

**Certified Mail Return**
**Receipt Requested No. 7000 1670 0007 7745 3596**

Globe Indemnity Company
Royal & Sun Alliance
25 New Chardon Street
P. O. Box 8808
Boston, Massachusetts 02114
Attention: Claims Manager/Department

RE:  NOTICE OF CLAIM AND REQUEST FOR DEFENSE/COVERAGE
   Insured: Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
   Claim Type: Physical Loss/Property Damage/Hazardous Materials
   **Location: 293 and 295 Main Street, Acton, Massachusetts**
   Policies: All Risks/Special Multi-Peril, Policy No. YAD36485/D36485 (1983-1985)
       Pollution Liability, Policy No. GLZ102708/102708 (1983-1985)
       Umbrella Liability, Policy No. GLZ102708/102708 (1983-1985)

Dear Sir or Madam:

   Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 293 and 295 Main Street, Acton, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Globe Indemnity Company (the "Company").

522485_1

RUBIN AND RUDMAN LLP

Globe Indemnity Company, Claims Manager/Department
September 25, 2002
Page 2

    The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. YAD36485 or D36485 ("SMP Policy"), a Pollution Liability, Policy No. GLZ102708 or 102708 ("Pollution Policy"), and an Umbrella Liability Policy, Policy No. GLZ102708 or 102708 ("Umbrella Policy") (collectively "Policies") between approximately December 20, 1983 and December 20, 1985. (Attached as <u>Tab 1</u> are copies of Kleenit's "Prepaid Insurance" ledgers from June 1984 and June 1985, proving the existence of the Policies. Attached as <u>Tab 2</u> are copies of the types of SMP Policy and Pollution Policy that Kleenit believes were issued to it by the Company.)

    Kleenit hereby requests defense and coverage for the foregoing claim under the Policies. In addition, Kleenit requests that the Company approve the risk assessment, soil and groundwater assessment, and other response actions that are discussed herein. Kleenit also requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and any endorsements or riders. If the Company contends that the Policies, Declaration Page(s), endorsements and/or riders do not exist, the Company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame.

    **Please respond in writing to me within 30 days of the date of this Notice of Claim.**

<u>**Background of Hazardous Materials Release and Property and Building Damage**</u>

    Since approximately 1962 Kleenit has leased building space and operated a dry cleaning business at 293 and 295 Main Street, Acton, Massachusetts ("Property"), which is located within the Acton Plaza shopping center. By letter dated August 14, 2002 Kleenit's landlord, E&A Northeast Limited Partnership ("E&A"), notified Kleenit of a release of hazardous materials beneath the Property and demanded that Kleenit cleanup the release pursuant to the Massachusetts "Superfund" statute, General Laws Chapter 21E, and its implementing regulations, 310 CMR 40.0000. (A copy of E&A's letter is attached as <u>Tab 3</u>) E&A claimed that vapors from the release could potentially pose a human health risk to employees, tenants and customers at the Property and Acton Plaza. E&A demanded that, <u>inter alia</u>, Kleenit report the release of perchloroethylene ("PCE") to the Massachusetts Department of Environmental Protection ("DEP") as required under Chapter 21E and 310 CMR 40.0000, by October 29, 2002. E&A also demanded that Kleenit take actions to respond to the release. Based upon DEP's practice under 310 CMR 40.0000, Kleenit expects that DEP will shortly issue a Notice of Responsibility ("NOR") to Kleenit and/or E&A under G.L. c. 21E, ordering Kleenit and/or E&A to assess and/or remediate the alleged release of hazardous materials.

522485_1

RUBIN AND RUDMAN LLP

Globe Indemnity Company, Claims Manager/Department
September 25, 2002
Page 3

In response to E&A's demand and Kleenit's potential obligations under Chapter 21E, 310 CMR 40.0000 and the lease, Kleenit has obtained proposals from two experienced environmental consultants to evaluate the potential human health risks from vapors generated by the release of PCE and to respond to the release in accordance with Chapter 21E and 310 CMR 40.0000. Enclosed herewith as Tab 4 is a proposal from Risk Management Incorporated ("RMI"), dated September 3, 2002, pertaining to the human health risk assessment of the vapors. I also enclose as Tab 5 a proposal from Coler & Colantonio ("C&C"), dated September 5, 2002, pertaining to the assessment of soil and groundwater conditions at the Property. On behalf of Kleenit we request that the Company approve forthwith the proposed scope of services for RMI and C&C as set forth in Tabs 4 and 5.

In addition, Kleenit requests the Company's approval to install an interior wall within part of its leased space, so that any potential vapors from the release of PCE can be sealed from other leased space within the building. Kleenit believes that it may be required to perform additional response actions in the future pertaining to the release in accordance with Chapter 21E, 310 CMR 40.0000 and the lease, and a Notice of Responsibility ("NON") that Kleenit expects will be issued shortly to Kleenit and/or E&A by DEP under the statute and regulations. Kleenit requests that the Company agree to pay for all such future response actions. In addition, Kleenit requests that the Company agree to pay Kleenit's legal expenses in defense of E&A's demand and the requirements and responsibilities imposed by DEP, Chapter 21E and/or 310 CMR 40.0000.

### Request for Insurance Defense and Coverage

Based upon the foregoing, Kleenit requests that the Company provide defense and indemnification under the Policies for all matters related to or arising out of DEP's NOR and Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for damage to the building on the Insured's Property under Section I, Parts I and II, and for property damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against "all risks of physical loss" to buildings and additions and fixtures thereto, and personal property, and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further, coverage for property damage to others and "Off-Premises" coverage, with no applicable exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure against a fortuitous event, casualty or accident, such as the release of contaminants discussed in DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass. App. Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk &

522485_1

RUBIN AND RUDMAN LLP

Globe Indemnity Company, Claims Manager/Department
September 25, 2002
Page 4

Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk" policy for insured's loss caused by the discharge and migration of water from a broken pipe *at the premises adjacent to the insured's property*). "Moreover, such fortuities are insured against even if they are not specified in the policy." Mellon at 934. Although the Company in the present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it chose not to do so. As a result, the Company is obligated to provide coverage as requested herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss which Kleenit is legally obligated to pay in the present matter as damages because of property damage or personal injury, including the defense of the claims discussed herein. The Pollution Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is obligated to pay as compensatory damages because of property damage or bodily injury, and to reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no applicable exclusions under the Policy.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In addition, insurance coverage is triggered by an enforcement letter issued by a government agency to an insured asserting that a release of contamination has occurred, such as the NOR and Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the Company should provide defense and indemnification under the Policies for all claims arising out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the standpoint of the Insured, and, according to DEP's claim, involves off-site contamination and/or impacts property and groundwater of another person if remediation is not undertaken, no exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning up environmental contamination which presents a threat to, or demonstrated contamination of, property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co., Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will be liable not only to defend an insured against an NOR but also to indemnify the insured for all cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854 (1998) (An insurer's liability for all response costs is triggered "even if the contaminating substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275 (1997).

522485_1

RUBIN AND RUDMAN LLP

Globe Indemnity Company, Claims Manager/Department
September 25, 2002
Page 5

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g., Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in the Policies period would be rendered ineffective by Rubenstein, supra., and Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage may be triggered during many time periods and not just when the damage manifests itself. As stated in Trustees of Tufts University,

[T]he three most common 'trigger theories' include: the exposure trigger (policies in effect during years claimant's property tortiously exposed to hazardous material triggered), the continuous (or multiple) trigger (property damage occurs during each year from the time of first hazardous exposure through manifestation), and the injury-in-fact (or actual injury) trigger requires inquiry into when property damage actually occurred).

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear that the loss and damage occurred many years ago, during the Policies period. As a result, coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982) and Camp, Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, regardless of whether the insurer acted in bad faith or unreasonably. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584 (2002).

522485_1

RUBIN AND RUDMAN LLP

Globe Indemnity Company, Claims Manager/Department
September 25, 2002
Page 6

Please respond to me in writing within 30 days of the date of this Notice of Claim.

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc:   Kleenit, Inc. (with enclosures)

522485_1