UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC.<br><br>Plaintiff,<br><br>v.<br><br>SENTRY INSURANCE COMPANY,<br>ROYAL & SUNALLIANCE, UTICA<br>NATIONAL INSURANCE GROUP, and<br>TRAVELERS PROPERTY AND<br>CASUALTY,<br><br>Defendants. | CIVIL ACTION NO. 04-10351 (NG) |

**EXHIBITS TO THE AFFIDAVIT OF KARL S. VASILOFF IN SUPPORT OF DEFENDANTS GLOBE INDEMNITY COMPANY AND ROYAL INSURANCE COMPANY OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT 4

**goulston&storrs**
counsellors at law

WRITER'S INFORMATION
nebelson@goulstonstorrs.com
617.574.4082 Tel
617.574.7562 Fax

August 14, 2002

*By Facsimile And Overnight Courier*

Mr. Keith Crider
Kleenit, Inc.
d/b/a Dud's Cleaners and Launderers
44 Park Street
Ayer, MA 01432

Re:  293 and 295 Main Street
     Acton Plaza
     Acton, MA

Dear Mr. Crider:

This office represents E&A Northeast Limited Partnership ("EANLP"), which is the landlord of Kleenit, Inc. d/b/a Dud's Cleaners and Launderers ("Kleenit") at the two above-referenced locations (collectively, the "Premises") at Acton Plaza in Acton, Massachusetts (the "Property"). EANLP recently requested Sanborn Head & Associates, Inc. ("SHA") to perform certain site assessment work at a portion of the Premises. SHA performed that work on June 13, 2002 and forwarded a memorandum dated July 2, 2002 summarizing the data that resulted from that work. A copy of SHA's July 2, 2002 memorandum is attached.

SHA's site assessment work identified the presence of tetrachloroethylene, also known as perchloroethylene ("PCE"), in soil at the Premises at concentrations that exceed the applicable Reportable Concentration (RCS-1) that is set forth in the Massachusetts Contingency Plan (the "MCP"), 310 CMR 40.0000 et seq. Specifically, SHA identified PCE above the applicable MCP Reportable Concentration in five of the six soil samples that were taken. As noted in the SHA memorandum, these data constitute a reportable condition under the MCP, with a 120 day reporting obligation trigger. Based on the July 2, 2002 date of the memorandum prepared by SHA, the 120 day reporting deadline expires on or about October 29, 2002.

Kleenit is responsible to address the identified PCE contamination, both pursuant to the terms of that certain Agreement of Settlement and General Release dated as of October 19, 1993 between Acton Ventures I Limited Partnership ("Action Ventures"), the predecessor to EANLP, and Kleenit, as well as the two leases concerning the Premises, dated July 1, 1977 and August 28, 1980, respectively, as the same were amended by that certain Amendment to Leases dated as of October 19, 1993 between Acton Ventures and Kleenit.

Mr. Keith Crider
August 14, 2002
Page 2

---

EANLP requested SHA to prepare a Recommended Work Plan in response to the identified reportable PCE contamination at the Premises. A copy of that Recommended Work Plan dated August 13, 2002 is attached for your information and review. This Recommended Work Plan has been prepared to identify those follow up tasks that seem to make sense based on the data that are currently available. This Recommended Work Plan may need to be modified in the future if so warranted due to additional data that are obtained concerning the Premises and the Property. Accordingly, at present, we believe that the attached Recommended Work Plan should be implemented by Kleenit as soon as possible. We believe that doing so and moving forward promptly is in the best interests of both of the parties, both from an environmental perspective and from an economic perspective.

Please note that the demand in this letter is without prejudice to all other legal and equitable rights and remedies EANLP may have to recovery from Kleenit of all of EANLP's damages, including but not limited to Chapter 21E response costs, whether specified in this letter or not.

We look forward to your prompt response concerning the above and the enclosed information, and in any event within two weeks from your receipt of this letter.

Sincerely,

H. Edward Abelson

HEA:tmr

cc (w/enc.):   Messrs. Guilmette and Matelski

GSDocs-1146710-1

# SHA
## Sanborn, Head & Associates
*Consulting Engineers & Scientists*

August 13, 2002
File No. 2145

Mr. Larry Guilmette
Samuels & Associates
333 Newbury Street
Boston, MA 02115

Re: Recommended Work Plan
Dud's Cleaners, Main Street, Acton

Dear Larry:

Sanborn Head & Associates, Inc. (SHA) has prepared this letter to outline the plan of work we recommend for the Dud's Acton location. We understand that the tenant and operator of the dry cleaning facility will be taking the lead on these efforts. In that regard, what follows is how we believe the site needs to be managed given the recent discovery of PCE at concentrations that exceed the applicable Massachusetts Contingency Plan (MCP) RCS-1 Reportable Concentration.

We also understand that both you and the tenant wish to proceed with the lease area take back and releasing of the space along the south end of the building where we conducted the below the floor soil sampling. Therefore, we have suggested in the work task list below the steps which we believe will allow both (i) the take back space to be leased to a new tenant in the nearer term, and (ii) the MCP Response Actions that are necessary to be performed, which are likely to continue over an extended period.

Given that the GW-1 criteria do not apply to this location, the primary potential risk that will drive the decision on the potential need for remediation is the indoor air risk. Air within the dry cleaner itself is likely to contain some PCE and is managed for the on-site workers under the OSHA rules. Workers in the adjacent take back space, the nearby Middlesex Bank building, and Blockbuster Video store located downhill from the cleaners are the potential receptors who must be evaluated under the MCP.

Tasks 1:   Submit Release Notification Form (RNF) to DEP.

SHA informed you on July 2, 2002 of the existence of an MCP Reportable Condition. Therefore, Kleenit as the operator must file an RNF with the Massachusetts Department of Environmental Protection (DEP) no later than 120 days after July 2, that is on or about October 29, 2002. This step can be completed by Kleenit or their LSP in approximately two days. You will want to review drafts of these materials before they are submitted to DEP.

Paul M. Sanborn ■ Charles L. Head ■ Mathew A. DiPilato ■ Duncan W. Wood
Joseph C. Engels ■ R. Scott Shilfaber ■ Charles A. Crocetti ■ Daniel B. Carr

Sanborn, Head & Associates, Inc.
239 Littleton Road, Suite 1C, Westford, Massachusetts 01886
Fax (978) 392-0587 ■ Phone (978) 392-0900



*Larry Guilmette, Samuels, Recommended Work Plan for Dad's Acton*  
File No. 2145 / 081302 WorkPlan

August 13, 2002  
Page 2 of 3

**Task 2:** Install Subdividing Wall and Modify HVAC

In order to lease out the take-back space, it will be necessary to demonstrate that the PCE in the soils below that space is not causing an unsafe condition in the work space. Before taking any measurements of PCE in the newly separated space, it is appropriate to finish the proposed dividing wall and reconfigure the HVAC so that the tests will represent the isolated space, and will not include PCE in air that is directly off-gassed from the dry cleaning equipment. The dividing wall needs to be as air tight as possible. It is unclear to SHA whether the proposed wall was to carry to the roof decking or only as high as the suspended ceiling. I do not know how much effort is involved in the HVAC modifications. I expect that the construction could be completed in less than a month, after the Building Permit was issued.

**Task 3:** Conduct Indoor Air Sampling on Three Occasions

After the take back space is isolated, we recommend at least three rounds of indoor air sampling. The time of sampling should be varied and the weather conditions should be varied so that different heating and ventilating conditions are encountered. I would suggest a minimum of two weeks of time between each sampling round, so that this would take a month after the subdividing wall is completed.

**Task 4:** Compare to Risk Criteria and Prepare Data Summary for Tenants

Prepare a data summary and risk characterization summary for tenants for future MCP use. Assuming that the indoor air data do not identify a documented risk, we believe you will need to provide future tenants with knowledge of the PCE in soils below the floor and the potential for vapor migration. Providing the indoor air testing data as good faith due diligence to document the level of risk should help with the leasing of the space. We believe this could be completed within two weeks after the third round of air sampling data was obtained from the laboratory. You will want to review this documentation as a draft before the document is finalized.

**Task 5:** Evaluate Potential for Ongoing Release

This location was previously in the MCP based on PCE discovered at the rear of the building within and near the septic system. The working assumption made during the prior MCP work was that the primary release had been in rinse water that passed through the septic system. The presence of PCE in soils below the floor of the building indicates that there were other release conditions and locations. Before moving forward through the MCP it is important to take a hard look at the current dry cleaning operations taking place at the site, the equipment in use, and the procedures that are now being followed to add new PCE to the equipment and to remove the PCE waste from the still or filters. The objective of that hard look is to minimize the potential for any additional future releases. This is a short effort that could be completed concurrently with the indoor air sampling program. You should require that Kleenit submit a summary of their PCE handling procedures to you so that you can review their plan and provide oversight that they are implementing the plan consistently.



Larry Guthnette, Samuels, Recommended Work Plan for Dud's Action  
File No. 2145 / 081302WorkPlan

August 13, 2002  
Page 3 of 3

**Task 6:** Conduct Exterior Soil Gas Investigation

Given that the groundwater below the building appears to be in bedrock, and that the primary risk pathway is likely to be through soil gas to confined spaces, we recommend that the primary investigation tool be an extended soil gas survey. We recommend that soil gas probes be installed in front of the building, at the rear of the building, adjacent to the south end of the building, adjacent to the Middlesex Bank building, and adjacent to the Blockbuster store. Two of the borings we installed inside the building can also be used for soil gas sampling prior to the placement of a new floor surface in the take back space. This would involve two days of field work and a total time frame of approximately three weeks. You should review the scope of work for this effort before it is undertaken.

**Task 7:** Resample Existing Monitoring Wells

SHA believes that there are still at least three of the former wells located at the rear of the building that could be re-sampled to obtain current groundwater data in the area that was previously found to be acceptable under the MCP. This is a one-day effort that could be done as part of the same field effort as the soil gas sampling, but would extend the effort by a day. You should review the scope of work for this effort before it is undertaken.

**Task 8:** Prepare MCP Phase I and Tier Classification, and Phase II Scope of Work

We believe Tasks 3 and 5 though 7 would provide sufficient field data to prepare an MCP Phase I Report and to Tier Classify the site. During the preparation of the Phase I, Kleenit will also need to assess whether any interim remediation under a RAM is required or appropriate. The Phase I needs to be completed under the MCP within one year of the RNF, but could be accomplished within 4 to 5 months from the RNF submission. You should require that all submissions to the DEP be provided to you for review before they are finalized.

We believe the above scope of work responds to your current needs. Should you have any questions, please do not hesitate to call us.

Very truly yours,  
SANBORN, HEAD & ASSOCIATES, INC.

Duncan W. Wood, PE, LSP  
Principal

DWW:lmd

S:\DATA\2100\2145.00\081302WorkPlan.doc

TOTAL P.04



# SHA
## Sanborn, Head & Associates
*Consulting Engineers & Scientists*

July 2, 2002
File No. 2145

Larry Guilmette
Samuels & Associates
333 Newbury Street
Boston, MA 02115

Re: Summary of Data from Interior Sampling
Dud's Cleaners, Main Street, Acton

Dear Larry:

Sanborn, Head & Associates, Inc. (SHA) is pleased to provide you with this summary of the observations and soils data we collected during the interior sampling services completed at the Dud's Cleaners in Acton on June 13, 2002.

Given that a portion of the store is proposed to be separated out for "take back" by the land lord, and that area is located approximately five feet to the side of one of the current dry cleaning machines, we recommended that you investigate below the floor in the "take back" area to document the current status quo prior to the time of the transfer. After making arrangements with the operators of the store we conducted out investigation on the evening of June 13, 2002.

We intended to install five Geoprobe borings with three of the five finished as micro-wells. We encountered equipment refusal above the water table at all locations and thus we were not able to collect groundwater samples. We did install a 1-inch diameter well at two of the locations, which could serve as a soil vapor monitoring point in the future.

The locations of the borings we completed are shown on the attached Figure 1. The boring logs for the subsurface explorations are included as Attachment #1. We submitted six soil samples to Alpha Analytical Laboratories for Volatile Organic Compound testing by Method 8260B. The laboratory data report is included as Attachment #2.

The Duds store is located within 500 feet of properties that are used as residences. Therefore the RCS-1 Reportable Condition criteria apply under the Massachusetts Contingency Plan (MCP). Only perchloroethylene (PCE) was detected above the RCS-1. The RCS-1 concentration for PCE is 0.5 mg/kg. For your information the RCS-2 is 30 mg/kg. The data we obtained is as follows:

| Sample ID | 061302-S1 | 061302-S2 | 061302-S3 | 061302-S4 | 061302-S5 | 061302-S6 |
|---|---|---|---|---|---|---|
| Sampling Location | SH-1 | SH-1 | SH-2 | SH-3 | SH-4B | SH-5 |
| Sampling Depth | 4 ft bgs | 14 ft bgs | 9.5 ft bgs | 11 ft bgs | 14 ft bgs | 1 ft bgs |
| Concentration of PCE (mg/kg) | 0.74 | 1.2 | 160. | 1.7 | 0.072 | 1.5 |

Paul M. Sanborn ■ Charles L. Head ■ Mathew A. DiPilato
Duncan W. Wood ■ R. Scott Shillaber ■ Charles A. Crocetti ■ Daniel B. Carr

Sanborn, Head & Associates, Inc.
239 Littleton Road, Suite 1C ■ Westford, Massachusetts 01886
e-mail: westford@sanborn-head.com ■ www.sanborn-head.com
Fax (978) 392-0987 ■ Phone (978) 392-0900

SHA concludes that this data constitutes a reportable condition for PCE in soil, with a 120-day requirement for reporting.

Thank you for the opportunity to undertake this effort on your behalf. We will await your guidance on how you wish to proceed any further with this matter. Should you have any questions, please do not hesitate to call us.

Very truly yours,
SANBORN, HEAD & ASSOCIATES, INC.

Duncan W. Wood

Duncan W. Wood, PE, LSP
Principal

Attachments:  Figure
              Boring Logs
              Laboratory Data from Alpha Analytical

S:\DATA\2100\2145.00\070202Guilmette.data.sum.doc