UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04
10351 NG

KLEENIT, INC.,
    Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
    Defendants

## PLAINTIFF KLEENIT, INC.'S CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH GENUINE ISSUES REMAIN TO BE DETERMINED AT TRIAL

Pursuant to Local Rule 56.1, Kleenit hereby provides a concise statement of the material facts of record in support of Kleenit's opposition to the Insurers' respective Motions for Partial Summary Judgment regarding Kleenit's claim for pre-tender costs and claims under G.L. c. 93A and c. 176D.

Kleenit contends that there exists genuine issues to be determined at trial, as follows:

    a) Whether Massachusetts law requires the Insurers to demonstrate prejudice as a precondition for denying pre-tender costs to Kleenit and,

    b) Whether the Insurers denial of Kleenit's pre-tender costs is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance, as determined under G.L. c. 176D or, under G.L. c. 93A, whether

the Insurers engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

Kleenit's concise statement of the material facts are as follows:

1.  Kleenit owns and operates dry-cleaning and laundering service facilities located at 28 Central Square in Chelmsford ("Chelmsford Site"), and 293-295 Main Street in Acton ("Acton Site"), both in Middlesex County, Massachusetts.

2.  By letter dated January 28, 2001, Kleenit received a Notice of Responsibility ("NOR") issued by the Massachusetts Department of Environmental Protection ("DEP") pursuant to M.G.L. c.21E with regard to alleged environmental contamination at the Chelmsford Site. (Affidavit of Donald P. Nagle, Esquire ("Nagle Aff."), **Tab 1**)

3.  On December 30, 2002, Kleenit was also issued an NOR regarding alleged contamination at the Acton Site. (Id. **Tab 2**) ( Collectively, the Chelmsford and Acton Sites are hereinafter referred to as "the Sites"). DEP alleged in its NORs that Kleenit is liable as a responsible party for the release or threat of release of hazardous materials at the Sites under M.G.L. c.21E.

### A.  Insurance Policies and Notice of Claim

4.  Kleenit is an insured under occurrence-based comprehensive general liability, multi-peril, and other insurance policies (collectively "Policies") issued by all Defendants in the 1960's, 1970's and 1980's regarding the Chelmsford and Acton Sites. (Id., **Tab 3**). Kleenit tendered claims to all Defendants relative to the NORs and claims concerning alleged contamination at the Chelmsford Site (Id., **Tab 4**) and the Acton Site (Id., **Tab 5**) on or about September 25, 2002. Kleenit's notice of claim letters requested

that all Defendants defend and indemnify Kleenit with respect to the NORs and related claims pursuant to the terms of the Policies. (Id., **Tab 4,5**).

5. Kleenit promptly put its insurance carriers on notice once it became aware of each NOR and the need for defense and reimbursement of defense related expenses associated with these NORs. Kleenit believed at first that it could handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense. (Id., **Tab 5**).

6. However, as a result of claims made by other third parties, including the DEP, ExxonMobil and a nearby day care facility, Kleenit realized that the costs and liabilities associated with defense alone of this matter could financially bankrupt the corporation. Upon realization of the severe financial consequences of these claims, Kleenit made diligent efforts to investigate, locate and notify past insurers of its facilities, some of which dated back to the 1960's. (**Id, Tab 6**).

7. Unfortunately, some of Kleenit's former insurance agents lost older insurance policy records and it was extremely difficult and burdensome to reconstruct its insurance records, which possibly have been archived and/or lost. Kleenit pursued all reasonable sources to recover its records, including contacting former agents, accountants and the insurance companies directly. (**Id.**)

8. Despite providing prompt notice of the NORs and the DEP and third party claims, none of the insurers promptly addressed the initial notices and claims to provide defense to Kleenit. Kleenit was required to retain environmental consultants and insurance defense and coverage counsel to represent its interest, defend claims, and pursue defense

and coverage from the various insurers. (**Id.**) The Three Defendants have not alleged or proven that prompt notice is an express condition precedent to liability under the Policies.

### B.    Kleenit's Defense-Related Costs

9.    During 2002-2003, Kleenit has incurred severe financial hardship, which at times has threatened the very existence of the business, as a result of extraordinary expenses associated with the defense, site assessment and clean-up obligations it has incurred as a result of the two NORs for Kleenit's facilities located in Chelmsford and Acton and a third NOR issued for its facility located in Wayland, Massachusetts. (**Id.**)

10.    Through January 2004, Kleenit has incurred approximately $149,586.74 in defense related expenses, $53,356.14 in claim related expenses, and $22,352.44 in indemnity (clean-up) related expenses, for a total of $225,205.11 in expenses associated with the Chelmsford and Acton sites. (**Id. and Attachment No. 1 thereto**). With the Wayland site included, Kleenit has incurred approximately $166,242.46 in defense, 22,352.44 in claim costs and $56,598.67 in indemnification and clean-up costs, for a total of $245,103.36. (Id. and Attachment No. 2 thereto).

11.    In contrast, Kleenit's insurance companies have only reimbursed approximately $18,590.77, or merely 12%, of Kleenit's defense costs at the Chelmsford and Acton sites as of January, 2004, and no payment or reimbursement for clean-up, indemnification or claims. (**Id.**).

12.    Kleenit will suffer irreparable financial and fiscal harm if it is not immediately reimbursed for all outstanding defense costs at the Chelmsford and Acton sites, and if it is obligated to pay defense and coverage for claims made by various third parties at

the Chelmsford, Acton and Wayland Sites. (**Id.**). Kleenit cannot afford to pay for both defense and indemnity (clean-up) related expenses at the Chelmsford and Acton sites.

13.  As a result of the Three Defendants' unreasonable delay and refusal to pay Kleenit's defense costs, Kleenit has been forced to concentrate its limited financial resources on only defense-related expenses, with little financial reserves for actual clean-up efforts.[1] (**Id.**)

### C. Unreasonable Delay and Declination by the Insurers

14.  The Three Defendants unreasonably delayed their investigation of Kleenit's claims and their determination of defense coverage under the Policies. For example:

- Sentry delayed more than 50 days before corresponding with Kleenit. (**Id., Tab 7**);

- Royal delayed more than 100 days before even providing Kleenit's claim to its attorney. (**Id., Tab 8**);

- Travelers delayed more than 100 days before acknowledging the existence of policies issued to Kleenit. (**Id., Tab 9**);

- Counsel for the Three Defendants waited more than six months to schedule a meeting to discuss Kleenit's claims. (**Id., Tab 10**)

- Seven months after the claim, Utica was still searching for policy documents that Kleenit had submitted. (**Id., Tab 11**)

---

[1] Environmental site assessment and site investigation costs constitute defense costs under liability insurance policies. See, e.g., Preferred Mutual Insurance Company v. Gordon, 2003 WL 21077026, and Wasserman v. Commerce Insurance Co., 2002 WL 31187681.

- Royal delayed nine (9) months before acknowledging the existence of eighteen (18) separate policies issued to Kleenit. (**Id., Tab 12**);

- The Three Defendants delayed ten months before notifying Kleenit that they were "in the process of working out" a defense cost sharing agreement. (**Id., Tab 13**) The agreement would exclude pre-tender costs, however. (Id.)

- Royal delayed more than 320 days before agreeing to provide Kleenit with a defense. (**Id., Tab 14**);

- Royal delayed 485 days before making its first defense reimbursement, which itself was wholly unreasonable because, at $573, it represented only 0.4% of Kleenit's defense costs. (**Id., Tab 15**)

15. In response to Kleenit's presentment of documented defense costs totaling $87,248, Travelers responded with a proposal to pay $296, or merely 0.3%, of Kleenit's costs. (**Id., Tab 16**). Utica responded with a proposed payment of $3,630, or merely 4.1%, of Kleenit's documented costs. (**Id., Tab 17**). Royal did not even respond with a proposed payment.

16. The Three Defendants have never in their various letters attempted to demonstrate, let alone proven, any "actual prejudice" to them caused by Kleenit's alleged late notice of the two NORs. Contrary to Massachusetts law, the Three Defendants have taken the position that they are entitled to deny Kleenit's *pre-tender* defense costs based solely on Kleenit's alleged late notice, without having to demonstrate actual prejudice. (**Id., Tab 18, 19**).

6

### D. Specious Defenses Asserted By Defendants

17. Since receiving Kleenit's notice of claim letters September 25, 2002, the Three Defendants have proffered numerous legal arguments to avoid their duty to pay Kleenit's defense costs. However, their legal arguments violate established Massachusetts law of which the Defendants were aware. Kleenit has been forced to spend thousands of dollars responding to the Three Defendants' specious arguments. For instance:

- Kleenit provided sufficient evidence of the policies' existence and contents, citing Rubenstein v. Royal Ins. Co., 44 Mass.App.Ct. 842 (1998). **(Id., Tab 20)**

- The Three Defendants have joint and several liability to pay 100% of Kleenit's defense costs on a pro rata basis, citing Rubenstein, supra. **(Id., Tab 21)** ;

- The Three Defendants were wrong to exclude environmental assessment costs as defense costs, citing Preferred Mutual Insurance Company v. Gordon, 2003 WL 21077026, and Wasserman v. Commerce Insurance Co., 2002 WL 31187681, et al. **(Id., Tab 22).**

- Furthermore, and in particular, Kleenit sent the Three Defendants at least 6 separate letters demonstrating that they are required as a matter of law to pay pre-tender and post-tender defense costs unless they demonstrated "actual prejudice," citing Atlas Tack Corp. v. Liberty Mutual Ins. Co., 48 Mass.App.Ct. 378 (1999) and numerous other cases **(Id., Tab 16, 17, 22, 23, 24, 25).**

Respectfully submitted,

KLEENIT, INC.

By its Attorney,


/s/  Donald P. Nagle
Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970

July 19, 2004


**CERTIFICATE OF SERVICE**

I hereby certify that I made service of the foregoing document in accordance with the provisions of Fed.R.Civ.P.5.


/s/  Donald P. Nagle
Donald P. Nagle