UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
     **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
     **Defendants**

EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

# **TAB 6**

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
C.A. NO. MICV2003-4677

|  |  |
|---|---|
| KLEENIT, INC. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SENTRY INSURANCE COMPANY, | ) |
| ROYAL & SUN ALLIANCE, | ) |
| UTICA NATIONAL INSURANCE GROUP, and | ) |
| TRAVELERS PROPERTY AND CASUALTY | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## AFFIDAVIT OF KEITH CRIDER

I, Keith Crider, hereby depose and state the following:

1.    My name is Keith Crider, President of Kleenit, Inc. ("Kleenit"). I have been the

Chief Financial Officer of Kleenit, Inc. for 37 years. Kleenit is a small, closely held family

corporation based presently in Ayer, Massachusetts. As President and Chief Financial Officer of

Kleenit I am familiar with the assets and liabilities of the corporation

2.    Kleenit has incurred severe financial hardship over the past two years, which at

times has threatened the very existence of the business, as a result of extraordinary expenses

associated with the defense, site assessment and clean-up obligations it has incurred as a result of

the receipt of three Notices of Responsibility (NORs) sent by the Department of Environmental

Protection (DEP) to Kleenit for its facilities located in Chelmsford, Acton and Wayland,

Massachusetts.

584800_1

3.     Kleenit has incurred approximately $149,586.74 in defense related expenses, $53,356.14 in claim related expenses, $22,352.44 in indemnity (clean-up) related expenses, for a total of $225,205.11 in expenses associated with the Chelmsford and Acton sites as further detailed in the attached spreadsheet of Chelmsford and Acton's costs (See Attachment No. 1).

4.     With the Wayland site included, Kleenit has incurred approximately $166,242.46 in defense, 22,352.44 in claim costs and $56,598.67 in indemnification and clean-up costs for a total of $245,103.36 (See Attachment No. 2).

5.     In contrast, Kleenit's insurance companies have only reimbursed $18,590.77, or merely 12%, of Kleenit's defense costs at the Chelmsford and Acton sites, and no payment for clean-up, indemnification or claims.

6.     Kleenit timely put its insurance carriers on notice once it became aware of each NOR and the need for defense and reimbursement of defense related expenses associated with these NORs. At first Kleenit believed that it could handle the costs associated with the initial NOR relating to the Chelmsford facility as an ordinary operating expense. However, as a result of the claims made by other third parties, including the DEP, ExxonMobil and a day care facility, Kleenit realized that the costs and liabilities associated with defense alone of this matter could financially bankrupt the corporation.

7.     Upon realization of the severe financial consequences of these claims, Kleenit made diligent efforts to investigate, locate and notify any and all insurers of its facilities, some of which dated back to the 1960s.

8.     Unfortunately, some of Kleenit's former insurance agents lost older insurance policy records and it was extremely difficult and burdensome to reconstruct its insurance records, which

possibly have been archived and/or lost. Kleenit pursued all reasonable sources to recover its records, including contacting former agents, accountants and the insurance companies directly.

9.      Despite providing timely notice of the DEP and third party claims, none of the insurers promptly responded to initial notices and claims to provide defense to Kleenit. Kleenit was required to retain environmental consultants and insurance defense and coverage counsel to represent its interest, defend claims, and pursue defense and coverage from the various insurers.

10.     Kleenit will suffer irreparable financial and fiscal harm if it is not reimbursed for all outstanding defense costs at the Chelmsford and Acton sites, or if it is obligated to pay defense and coverage for claims made by various third parties in these three matters.

11.     Kleenit cannot afford to pay for defense and indemnity (clean-up) related expenses at the Chelmsford and Acton sites. As a result of the insurers' unreasonable delay and refusal to pay Kleenit's defense costs, Kleenit has been forced to concentrate its limited financial resources on only defense-related expenses. Thus irreparable harm may likely occur to third parties and/or the environment if Kleenit becomes financially unable to implement cost effective site assessment and clean-up (response actions). For example, irreparable harm may result to downgradient property owners and occupants of the day care facility in Chelmsford and other sensitive environmental receptors, if Kleenit lacks the financial resources to participate in a clean-up. Exxon has threatened to sue Kleenit if it fails to participate equally in response actions in the vicinity of the Chelmsford site.

12.     Kleenit requires immediate equitable relief from the Court to order full payment of all defense related costs incurred by Kleenit at the Chelmsford and Acton sites so that Kleenit can fund necessary defense and response action costs and so that Kleenit can avoid having to downsize

its operations, sell off company facilities and assets, lay off employees and/or file for bankruptcy protection from its creditors.

13.    In an effort to avoid laying off employees and irreparable financial harm to the corporation, I have taken little, if any, financial compensation for 2 years and have had to exercise other extreme austerity measures. For example, I have had to extend business credits and loans, for which I have had to personally guarantee payment.

14.    Kleenit's business reputation with its vendors has been disrupted, and also its reputation with environmental defense consultants has also been irreparably damaged, since some will not provide further services without promissory notes and personal guarantees.

I swear under the pains and penalties of perjury the above statements of fact are true and accurate to the best of my personal knowledge.

Keith Crider
_____
Keith Crider, President
Kleenit, Inc.

Dated:  February 5, 2004

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
### Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| R.G. Construction (Chelmsford) | 2/22/02 | $5,505.72 | 0 | $5,505.72 | 0 |
| Waste Management (Chelmsford) | 5/2/02 | $2,930.84 | 0 | 0 | $2,930.84 |
| | 5/2/02 | $3,000.00 | 0 | 0 | $3,000.00 |
| | 5/2/02 | $3,000.00 | 0 | 0 | $3,000.00 |
| Regenisis | 6/19/02 | $3,164.40 | 0 | 0 | $3,164.40 |
| Enviro-Safe Corp. | 9/19/01 | $1,658.00 | 0 | 0 | $1,658.00 |
| | 9/19/01 | $1,500.00 | 0 | 0 | $1,500.00 |
| | 10/17/01 | $952.00 | 0 | 0 | $952.00 |
| D'Amore Associates, Inc. | 3/3/01 | $1,650.00 | 0 | $1,650.00 | 0 |
| | 4/26/01 | $1,628.00 | 0 | $1,628.00 | 0 |
| | 5/28/01 | $300.00 | 0 | $300.00 | 0 |
| | 6/27/01 | $300.00 | 0 | $300.00 | 0 |

---

1    Kleenit offers these amounts for insurance settlement purposes only and Kleenit's proffer of such amounts is not and shall not be construed as a waiver of Kleenit's right to seek or obtain insurance coverage and payment for such amounts, or the admission of any fact, law or liability. Kleenit specifically reserves the right to pursue and obtain coverage for such amounts.

2    See Note 1, above.

538758_7

1

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
JANUARY 2001 TO JANUARY 2004
Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| D'Amore Associates, Inc. (continued) | 8/4/01 | $4,450.00 | 0 | $4,450.00 | 0 |
| | 9/1/01 | $2,025.00 | 0 | $2,025.00 | 0 |
| | 10/1/01 | $3,384.88 | 0 | $2,634.88 | $750.00 |
| | 10/27/01 | $1,612.50 | 0 | $1,612.50 | 0 |
| | 11/30/01 | $4,351.54 | 0 | $3,301.54 | $1,050.00 |
| | 12/30/01 | $337.50 | 0 | $337.50 | 0 |
| | 2/1/02 | $3,150.00 | 0 | $3,150.00 | 0 |
| | 3/1/02 | $953.00 | 0 | $953.00 | 0 |
| | 3/30/02 | $3,354.00 | 0 | $3,354.00 | 0 |
| | 5/1/02 | $1,500.00 | 0 | $1,500.00 | 0 |
| | 5/31/02 | $1,800.00 | 0 | $1,800.00 | 0 |
| | 5/31/02 | $1,050.00 | 0 | $1,050.00 | 0 |
| | 7/2/02 | $750.00 | 0 | $750.00 | 0 |
| | 8/2/02 | $2,054.00 | 0 | $2,054.00 | 0 |
| | 9/2/02 | $300.00 | 0 | $300.00 | 0 |
| | 9/29/02 | $300.00 | 0 | $300.00 | 0 |
| | 11/1/02 | $463.50 | 0 | $463.50 | 0 |
| | 11/29/02 | $600.00 | 0 | $600.00 | 0 |
| | 5/3/03 | $13,757.00 | 0 | $9,410.00 | $4,347.00 |
| | 5/30/03 | $1,400.00 | 0 | $1,400.00 | 0 |
| | 6/30/03 | $750.00 | 0 | $750.00 | 0 |
| | 7/7/03 | $3,282.52 | 0 | $3,282.52 | 0 |
| | 8/12/03 | $2,090.00 | 0 | $2,090.00 | 0 |

538758_7

2

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
JANUARY 2001 TO JANUARY 2004
Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| D'Amore Associates, Inc. (continued) | 12/15/03 | $2,575.00 | | $2,575.00 | 0 |
| | 12/24/03 | $1,200.00 | 0 | $1,200.00 | 0 |
| Coler & Colantonio, Inc. | 11/6/02 | $8,616.42 | 0 | $8,616.42 | 0 |
| | 12/20/02 | $4,906.81 | 0 | $4,906.81 | 0 |
| | 03/29/03 | $6,758.27 | 0 | $6,758.27 | 0 |
| | 10/17/03 | $4,098.33 | | $4,098.33 | 0 |
| | 11/25/03 | $4,083.66 | | $4,083.66 | 0 |
| | 12/16/03 | $999.21 | | $999.21 | 0 |
| | 1/12/04 | $115.08 | | $115.08 | 0 |
| Risk Management Inc. | 10/30/02 | $1,500.00 | 0 | $1,500.00 | 0 |
| | 10/30/02 | $1,245.65 | 0 | $1,245.65 | 0 |
| | 12/20/02 | $198.60 | 0 | $198.60 | 0 |
| | 09/4/03 | $2,750.00 | | $2,750.00 | 0 |
| | 11/6/03 | $7,183.63 | | $7,183.63 | 0 |
| | 12/6/03 | $76.69 | | $76.69 | 0 |
| | 12/20/03 | $467.50 | | $467.50 | 0 |
| | 01/12/04 | $1,260.00 | 0 | $1,260.00 | 0 |
| Commonwealth of MA RE: Annual Compliance Fees | | $3,500.00 | 0 | $3,500.00 | 0 |

3

538758_7

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
### Chelmsford and Acton Sites, Massachusetts

RUBIN AND RUDMAN LLP

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| Rubin and Rudman LLP | | | | | |
| Acton | 07/22/02 | $189.30 | $114.30 | $75.00 | 0 |
| Acton | 09/09/02 | $1,510.75 | $1,510.75 | 0 | 0 |
| Acton | 10/09/02 | $2,299.62 | $743.75 | $1,555.87 | 0 |
| Acton | 10/30/02 | $3,768.70 | $2,271.22 | $1,497.48 | 0 |
| Acton | 11/11/02 | $2,705.24 | $2,001.37 | $703.87 | 0 |
| Acton | 12/11/02 | $2,965.82 | $298.08 | $2,667.74 | 0 |
| Acton | 01/16/03 | $2,527.69 | $855.72 | $1,671.97 | 0 |
| Acton | 01/31/03 | $4,065.50 | $2,532.00 | $1,533.50 | 0 |
| Acton | 02/05/03 | $1,688.03 | $528.41 | $1,159.62 | 0 |
| Acton | 02/26/03 | $3,053.19 | $261.60 | $2,791.59 | 0 |
| Acton | 03/12/03 | $3,156.33 | $2,404.46 | $751.87 | 0 |
| Acton | 04/07/03 | $1,706.93 | $568.41 | $1,138.52 | 0 |
| Acton | 04/23/03 | $223.99 | $223.99 | 0 | 0 |
| Acton | 05/27/03 | $1,321.67 | $1,173.64 | $148.03 | 0 |
| Acton | 06/18/03 | $1,033.23 | $1,033.23 | 0 | 0 |
| Acton | 07/21/03 | $1,220.66 | $1,171.84 | $48.82 | 0 |
| Acton | 08/22/03 | $3,243.44 | $2,488.51 | $754.93 | 0 |
| Acton | 09/26/03 | $2,615.78 | $1,587.21 | $1,028.57 | 0 |
| Acton | 10/15/03 | $2,773.45 | $673.73 | $2,099.72 | 0 |
| Acton | 10/28/03 | $4,848.69 | $51.08 | $4,797.61 | 0 |
| SUB TOTAL | | $130,839.25 | 0 | $108,487.01 | $22,352.24 |

538758_7

4

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
#### Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| Rubin and Rudman LLP (continued) Acton | 1/28/04 | $3,550.89 | $1,169.60 | $2,381.29 | 0 |
| Chelmsford | 07/22/02 | $248.75 | $248.75 | 0 | 0 |
| Chelmsford | 09/09/02 | $1,470.80 | $1,292.40 | $178.40 | 0 |
| Chelmsford | 10/09/02 | $1,050.47 | $1,050.47 | 0 | 0 |
| Chelmsford | 10/30/02 | $2,840.72 | $2,301.61 | $539.11 | 0 |
| Chelmsford | 11/11/02 | $2,190.23 | $1,580.23 | $610.00 | 0 |
| Chelmsford | 12/11/02 | $1,546.00 | $1,001.80 | $544.20 | 0 |
| Chelmsford | 1/31/03 | $1,172.50 | $1,020.00 | $152.50 | 0 |
| Chelmsford | 02/05/03 | $121.10 | $121.10 | 0 | 0 |
| Chelmsford | 02/26/03 | $2,879.01 | $2,879.01 | 0 | 0 |
| Chelmsford | 03/12/03 | $3,455.29 | $3,392.79 | $62.50 | 0 |
| Chelmsford | 04/07/03 | $2,891.93 | $1,356.32 | $1,535.61 | 0 |
| Chelmsford | 04/23/03 | $329.37 | $55.00 | $274.37 | 0 |
| Chelmsford | 05/27/03 | $2,262.77 | $868.90 | $1,393.87 | 0 |
| Chelmsford | 06/18/03 | $1,586.03 | $674.06 | $911.97 | 0 |
| Chelmsford | 07/21/03 | $4,069.06 | $476.08 | $3,592.98 | 0 |
| Chelmsford | 08/22/03 | $2,151.45 | $1,101.50 | $1,049.95 | 0 |
| Chelmsford | 09/26/03 | $2,250.00 | $1,237.94 | $1,012.06 | 0 |
| Chelmsford | 10/28/03 | $897.23 | $543.81 | $353.42 | 0 |
| Chelmsford | 1/28/04 | $1,378.14 | $734.70 | $733.45 | 0 |
| Donald Nagle P.C. | 2/1/03 | $1,622.02 | $1,297.62 | $324.40 | 0 |

538758_7

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
#### Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
|  | 5/1/03 | $999.00 | $925.00 | $74.00 | 0 |
|  | 5/31/03 | $518.00 | $463.00 | $55.00 | 0 |
|  | 7/1/03 | $499.50 | $481.00 | $18.50 | 0 |
|  | 9/1/03 | $259.00 | $259.00 |  | 0 |
|  | 10/1/03 | $221.06 | $221.06 | 0 | 0 |
|  | 11/4/03 | $600.35 | $600.35 | 0 | 0 |
| SUB TOTAL |  | $94,365.86 | $53,356.14 | $41,099.73 | 0 |
| Harry Nason, Inc. | 6/30/02 | $4,387.18 | $3,509.74 | $877.44 | 0 |
| SUB TOTAL |  | $4,387.18 | $3,509.74 | $877.44 | 0 |
| TOTAL |  | $225,205.11 | $53,356.14 | $149,586.74 | $22,352.24 |

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### June 2003 TO DECEMBER 2003
*Wayland, Massachusetts*

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| MyKroWaters, Inc. | 8/27/03 | $850.00 | | $850.00 | |
| | 8/27/03 | $1,690.00 | | $1,690.00 | |
| | 11/07/03 | $359.58 | | $359.58 | |
| | | | | 0 | |
| Subtotal | | $2,899.58 | | $2,899.58 | |
| Rubin and Rudman LLP | 6/10/03 | $1,700.30 | $163.00 | $1,537.30 | |
| | 7/21/03 | $3,618.12 | $1,982.73 | $1,655.39 | |
| | 8/22/03 | $3,194.09 | $433.42 | $2,760.67 | |
| | 9/26/03 | $3,054.27 | $238.54 | $2,815.73 | |
| | 10/15/03 | $2,707.20 | $349.84 | $2,357.36 | |
| | 10/28/03 | $1,145.77 | 0 | $1,145.77 | |
| | 12/18/03 | $1,578.92 | $75.00 | $1,503.92 | |
| TOTAL | | $19,898.25 | $3,242.53 | $16,655.72 | |

[1]    Kleenit offers these amounts for insurance settlement purposes only and Kleenit's proffer of such amounts is not and shall not be construed as a waiver of Kleenit's right to seek or obtain insurance coverage and payment for such amounts, or the admission of any fact, law or liability. Kleenit specifically reserves the right to pursue and obtain coverage for such amounts.

[2]    See Note 1, above.

538758_6

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
        Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
        Defendants

**EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

# TAB 7

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

November 15, 2002

**Certified Mail Return**
**Receipt Requested No. 7099 3400 0017 8239 5599**

Sentry Insurance Company
3 Carlisle Road
P. O. Box 584
Westford, Massachusetts 01886
Attention: Claims Manager/Department

RE:  **SECOND NOTICE OF CLAIM**
    DEMAND FOR DEFENSE/COVERAGE
    Insured: Kleenit, Inc./Sudz-It/ Duds Cleaners/Care Cleaners
    Claim Type: Physical Loss/Property Damage/Hazardous Materials
    **Location: 28 Central Square, Chelmsford, Massachusetts**
    Policy: All Risks/Special Multi-Peril, Policy No. 7014014-01 (1974-1977)

Dear Sir or Madam:

By a letter dated September 25, 2002, we provided Sentry Insurance Company with a detailed Notice of Claim on behalf of our insured, Kleenit, Inc., with respect to the above-referenced matter. A copy of our letter dated September 25 (without enclosures) along with a copy of Sentry's signed, certified receipt thereof, is enclosed herewith. We requested Sentry to respond to our letter within 35 days, i.e., on or before October 30, 2002. As of the present date, Sentry has failed to provide any response to our Notice of Claim letter. Sentry's failure to respond has materially prejudiced Kleenit with respect to, inter alia, its ability to fund the underlying claim and legal fees related thereto and its on-going operations.

This is to inform you that Sentry's failure to promptly respond to or investigate our Notice of Claim constitute unfair claim settlement practices under M.G.L. c.176D, §3(9). Such violations by Sentry are actionable under M.G.L. c.176D and M.G.L. c.93A, thereby exposing Sentry to multiple damages and attorneys' fees.

Without waiving any of its rights or remedies, we hereby notify you that Kleenit will take all measures necessary to obtain a defense and indemnification under its policies with Sentry and to seek multiple damages and fees under M.G.L. c.93A and c.176D, in the event that Sentry continues its unlawful and unfair claim settlement practices.

530018_1

RUBIN AND RUDMAN LLP

Sentry Insurance Company, Claims Manager/Department
November 15, 2002
Page 2


We demand that you contact us in writing on or before November 22, 2002, concerning whether Sentry will provide Kleenit with defense and indemnification under the policies.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/ees
Enclosures
cc:    Keith Crider, Kleenit, Inc. (with enclosures)

530018_1

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

**FILE COPY**

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

Certified Mail Return
Receipt Requested No. 7000 1670 0007 7745 3671

Sentry Insurance Company
3 Carlisle Road
P. O. Box 584
Westford, Massachusetts 01886
Attention: Claims Manager/Department

RE:    NOTICE OF CLAIM
       DEMAND FOR DEFENSE/COVERAGE
       Insured: Kleenit, Inc./Sudz-It/ Duds Cleaners/Care Cleaners
       Claim Type: Physical Loss/Property Damage/Hazardous Materials
       Location: 28 Central Square, Chelmsford, Massachusetts
       Policy: All Risks/Special Multi-Peril, Policy No. 7014014-01 (1974-1977)

Dear Sir or Madam:

Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 28 Central Square, Chelmsford, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Sentry Insurance Company (the "Company").

The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. 7014014-01 ("Policy"), between approximately August 1, 1974 and August 1, 1977. (Attached as Tab 1 are copies of Kleenit's "Prepaid Insurance" ledgers from July 1976 and July 1977 proving the existence of the Policy. Attached as Tab 2 is a copy of the type of SMP Policy that Kleenit believes was issued to it by the Company.)

Kleenit hereby requests defense and coverage for the foregoing claim under the Policies. In addition, Kleenit requests that the Company approve the risk assessment, soil and groundwater assessment, and other response actions that are discussed herein. Kleenit also requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and

518641_2

RUBIN AND RUDMAN LLP

Sentry Insurance Company, Claims Manager/Department
September 25, 2002
Page 2

any endorsements or riders. If the Company contends that the Policies, Declaration Page(s), endorsements and/or riders do not exist, the Company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame.

Please respond in writing to me within 30 days of the date of this Notice of Claim.

## Background of Hazardous Materials Release and Property and Building Damage

On or about January 28, 2001 the Massachusetts Department of Environmental Protection ("DEP") issued to Kleenit a "Release Notification – Notice of Responsibility – Notice of Need to Conduct Immediate Response Actions" ("Notice of Responsibility" or "NOR"), claiming that Kleenit was a Potentially Responsible Party ("PRP") under Massachusetts General Laws Chapter 21E for the release of oil and/or hazardous materials at the Property. (Attached at Tab 3 is a copy of the NOR). DEP claimed that Kleenit was responsible for the release of volatile organic compounds ("VOCs") at the Property and that the VOCs had migrated off of the Property and were detected at locations outside of the Property's boundaries.

The Property was first used as a dry cleaning facility in 1960 and the septic system, which is considered a potential source of contamination, was in use until approximately 1990. Based upon the migration and extent of contamination claimed by DEP, the release of hazardous materials and the property damage likely occurred many years ago and within the Policy period. The release of hazardous materials such as VOCs may have resulted from the sudden and accidental releases from the malfunctions of older equipment, spills and/or inadvertent releases from the disposal of perchloroethylene ("PCE") waste products in containers or bags discarded in former dumpsters stored on-site for routine pick-up and disposal prior to the enactment of G.L. c. 21E, which, along with other laws, required licensed hazardous waste contractors to pick-up, manifest and dispose of hazardous wastes at licensed facilities.

DEP further asserted in the NOR that the VOCs at the Property "extend[ed] to the 34 Central Square property and Beaver Brook." (See NOR, p. 1, emphasis added). The NOR stated that "DEP has determined that a Condition of Substantial Release Migration ("SRM"), as described in 310 CMR 40.0006, exists at the subject site." DEP has incurred response action costs related to the release that DEP may recover under M.G.L. c. 21E. If Kleenit did not perform the Immediate Response Actions ("IRAs") ordered by DEP, the NOR stated that DEP would perform such actions and "seek to recover its costs and/or may initiate other appropriate enforcement actions to ensure that such response actions are conducted."

RUBIN AND RUDMAN LLP

Sentry Insurance Company, Claims Manager/Department
September 25, 2002
Page 3

On June 19, 2001 DEP issued a "Notice of Need to Conduct Immediate Response Actions" ("Notice to Conduct IRAs") to Kleenit, claiming that "contaminated groundwater at the subject site is discharging to Beaver Brook." (Attached at Tab 4 is a copy of the Notice to Conduct IRAs.) Beaver Brook is located outside of the Property's boundaries. The Notice to Conduct IRAs stated that,

> "[C]hlorinated volatile organic compounds ("CVOCs") have been detected in a sump water sample collected from 34 Central Square in Chelmsford, which operates a day care facility. In addition, CVOCs in indoor air at this location [i.e., at 34 Central Square, not the Property] were also detected. This condition constitutes a Critical Exposure Pathway ("CEP") in accordance with 310 CMR 40.0006. Information available to DEP indicates that a releases [sic] of hazardous material (primarily CVOCs) has occurred at the site which extends to the 34 Central Square property and Beaver Brook, and requires the initiation of one or more IRAs as described in 310 CMR 40.0410." (emphasis and brackets added)

The NOR and Notice to Conduct IRAs required Kleenit to take certain actions to address the condition of Substantial Release Migration ("SRM") and the Critical Exposure Pathway ("CEP") described by DEP. Kleenit has at the outset retained environmental scientists, including a Licensed Site Professional ("LSP"), and environmental legal counsel to initiate its response and defense to DEP's NOR and Notice to Conduct IRAs. Kleenit and its LSP have prepared and filed with DEP certain preliminary environmental reports required by DEP. Kleenit has taken these efforts to address contamination at the Property, the alleged Substantial Release Migration off of the Property, and the potential indoor air impacts at the building located at 34 Central Square, which is beyond the Property's boundaries.

As of this date, Kleenit is required to complete additional requirements under DEP's NOR and Notice to Conduct IRAs and under Chapter 21E and the regulations promulgated thereunder. Kleenit has not resolved its alleged responsibility and liability for other potential damages or costs pertaining to the alleged release at or from the Property, 34 Central Square, Beaver Brook, or any other off-site locations. Kleenit has had discussions with representatives of other PRPs identified by DEP and to whom DEP has sent separate Notices of Responsibility, namely, Mobil Business Resources Corporation ("ExxonMobil") and Energy North, Inc. ("Energy North"), addressing potential liability, contribution and other issues related to the claims set forth in the NOR and Notice to Conduct IRAs.

Although Kleenit presently believes that it is minimally responsible, if at all, for the contamination alleged in EP's NOR and Notice to Conduct IRA's, the Company should be aware that ExxonMobil has asserted that Kleenit should contribute a one-third share of ExxonMobil's

RUBIN AND RUDMAN LLP

Sentry Insurance Company, Claims Manager/Department
September 25, 2002
Page 4

past and future response action costs. ExxonMobil has claimed that its past and projected future costs total more than $250,000. As of this date, Kleenit has not agreed to pay any of ExxonMobil's alleged costs.

## Request for Insurance Defense and Coverage

Based upon the foregoing, Kleenit requests that the Company provide defense and indemnification under the Policies for all matters related to or arising out of DEP's NOR and Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for damage to the building on the Insured's Property under Section I, Parts I and II, and for property damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against "all risks of physical loss" to buildings and additions and fixtures thereto, and personal property, and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further, coverage for property damage to others and "Off-Premises" coverage, with no applicable exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure against a fortuitous event, casualty or accident, such as the release of contaminants discussed in DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co:, 19 Mass. App. Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk" policy for insured's loss caused by the discharge and migration of water from a broken pipe at the premises adjacent to the insured's property). "Moreover, such fortuities are insured against even if they are not specified in the policy." Mellon at 934. Although the Company in the present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it chose not to do so. As a result, the Company is obligated to provide coverage as requested herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss which Kleenit is legally obligated to pay in the present matter as damages because of property damage or personal injury, including the defense of the claims discussed herein. The Pollution Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is obligated to pay as compensatory damages because of property damage or bodily injury, and to reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no applicable exclusions under the Policy.

RUBIN AND RUDMAN LLP

Sentry Insurance Company, Claims Manager/Department
September 25, 2002
Page 5

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In addition, insurance coverage is triggered by an enforcement letter issued by a government agency to an insured asserting that a release of contamination has occurred, such as the NOR and Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the Company should provide defense and indemnification under the Policies for all claims arising out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the standpoint of the Insured, and, according to DEP's claim, involves off-site contamination and/or impacts property and groundwater of another person if remediation is not undertaken, no exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning up environmental contamination which presents a threat to, or demonstrated contamination of, property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co., Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will be liable not only to defend an insured against an NOR but also to indemnify the insured for all cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854 (1998) (An insurer's liability for all response costs is triggered "even if the contaminating substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275 (1997).

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g., Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in the Policies period would be rendered ineffective by Rubenstein, supra., and Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage may be triggered during many time periods and not just when the damage manifests itself. As stated in Trustees of Tufts University,

[T]he three most common 'trigger theories' include: the exposure trigger (policies in effect during years claimant's property tortiously exposed to hazardous material triggered), the continuous (or multiple) trigger (property damage occurs during each year from the time of first hazardous exposure through manifestation), and the injury-in-fact (or actual injury) trigger requires inquiry into when property damage actually occurred).

518641_2

RUBIN AND RUDMAN LLP

Sentry Insurance Company, Claims Manager/Department
September 25, 2002
Page 6

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear that the loss and damage occurred many years ago, during the Policies period. As a result, coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982) and Camp, Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, regardless of whether the insurer acted in bad faith or unreasonably. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584 (2002).

Please respond to me in writing within 30 days of the date of this Notice of Claim.

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanalla

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc:    Kleenit, Inc. (with enclosures)

518641_2

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

P.O. Keene C 888-100-5

| | | |
|---|---|---|
| Postage | $ | 1.52 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 5.57 |

Postmark Here — FORT POINT STA BOSTON MA SEP 25 2002 USPS

Sent To
Sentry Insurance Company - Claims Mgr
Street, Apt. No.; or PO Box No.
8 Carlisle Road - P.O. Box 584
City, State, ZIP+4
Westford, MA 01886

7000 1670 0007 7745 3671

PS Form 3800, May 2000                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sentry Insurance Company
3 Carlisle Road
P.O. Box 584
Westford, MA 01886

Attn: Claims Mgr / Dept.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
7000 1670 0007 7745 3671

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-0952



ROYAL &
SUNALLIANCE™

**Environmental Claim Dept**
Suite 440
9140 Arrowpoint Blvd
Charlotte NC 28273

Phone
704 522-2000

December 16, 2002

Peter J. Feuerbach
Rubin and Rudman, LLP
50 Rowes Wharf
Boston, MA 02110

RE:  Insured:    Kleenit, Inc. (a.k.a. Sudz-It; Duds Cleaners & Care Cleaners)
     Site:       28 Central Square, Chelmsford, MA
     Claimant:   MADEP
     Type of Loss: Alleged release of hazardous materials
     Our File No:  0650008155

Dear Mr. Feuerbach:

This will acknowledge your letter of November 26, 2002.

This will confirm that we retained George Butler Adjusters and their employee, Richard Blume, to obtain a statement from your client regarding the specifics of this claim. In addition we requested that Mr. Blume obtain information from your client regarding the history of the insured including past and present locations and any mergers or acquisitions.

We have performed a search of our records and have been unable to locate any information concerning the policies under which your client is seeking coverage.

You have provided us with a copy of a handwritten ledger listing alleged policy numbers and dates as well as sample SMP and pollution liability policies. A handwritten ledger listing alleged policy numbers and dates of alleged coverage is not sufficient authentication of the locations insured, terms, conditions, limit of liability and exclusions of policies allegedly issued by Globe Indemnity Co. Therefore, the information you have provided to date is not sufficient for us to affirm or deny coverage.

• American and Foreign Insurance Company
• Atlantic Indemnity Company
• Atlantic Security Insurance Company
• Carolina American Insurance Company
• The Connecticut Indemnity Company
• Connecticut Specialty Insurance Company

• Design Professionals Insurance Company
• Elli Indemnity Company
• Employee Benefits Insurance Company
• Financial Structures Insurance Company
• The Fire and Casualty Insurance Company of Connecticut
• Globe Indemnity Company

• Grocers Insurance Company
• Guaranty National Insurance Company
• Guaranty National Insurance Company of Connecticut
• Landmark American Insurance Company
• Marine Indemnity Insurance Company of America
• Orion Insurance Company

• Peak Property and Casualty Insurance Corporation
• Phoenix Assurance Company of New York
• Royal & SunAlliance Personal Insurance Company
• Royal Indemnity Company
• Royal Insurance Company of America
• Royal Lloyd's of Texas

• Royal Surplus Lines Insurance Company
• Safeguard Insurance Company
• The Sea Insurance Company of America
• Security Insurance Company of Hartford
• Unison Insurance Company
• Viking Insurance Company of Wisconsin

A member of the worldwide Royal & Sun Alliance Insurance Group plc

87964 0502

Sincerely,

Kevin S. Keyes
Environmental Claim Dept
704-522-2274
kevin_keyes@rsausa.com


cc:

Richard Blume
George Butler Adjusters, Inc.
15 Mulberry St.
Springfield, MA  01105



# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

January 10, 2003

<u>VIA FACSIMILE 704-522-2888 AND</u>
<u>CERTIFIED MAIL NO. 7099 3400 0021 4885 9861</u>
RETURN RECEIPT REQUESTED

Kevin S. Keyes
Environmental Claim Department
Royal & Sunalliance
9140 Arrowpoint Blvd., Suite 440
Charlotte, NC 28273

<u>Demand Letter under MGL C. 93A and 176D</u>

Re:    **Insured:**    **Kleenit, Inc. (a.k.a. Sudz-It; Duds Cleaners & Care Cleaners)**
        **Location:**    **293 and 295 Main St., Acton, MA**
        **Claimant:**    **MADEP**
        **Type of Loss:**    **Alleged release of hazardous materials**
        **Your File No.**    **0650008154**

Dear Mr. Keyes:

As you know from our previous letters in September and November 2002, this firm represents your former insured, Kleenit, Inc. ("Kleenit") with respect to the above referenced matter. On behalf of Kleenit and in accordance with M.G.L. c. 93A, §11 and M.G.L. c. 176D, we hereby demand immediate defense and coverage under the policies for this matter. Because Royal has failed over the past three months to even acknowledge the existence of the policies, let alone confirm defense and coverage, if you fail before January 20, 2003 to either (1) enter into a tolling and standstill agreement to stay time limitations, if any, to bring an action against Royal seeking coverage with respect to this matter, or (2) confirm that defense and coverage will be provided to Kleenit in this matter, Kleenit will be forced take steps to establish and protect its legal rights, which will likely include filing a declaratory judgment action to determine Royal's legal obligations to Kleenit. If we are required to file such a lawsuit and establish a duty of defense or coverage, we will seek and be entitled to multiple damages and attorney's fees in accordance with M.G.L. c. 93A and 176D based upon, <u>inter alia</u>, Royal's unfair, bad faith and/or deceptive practices relative to its investigation and claims settlement of Kleenit's claims.

536560_1

RUBIN AND RUDMAN LLP

Kevin S. Keyes
January 10, 2003
Page 2

We enclose a copy of a Notice of Responsibility ("NOR") issued by the Massachusetts Department of Environmental Protection ("DEP") to Kleenit, dated December 30, 2002, ordering Kleenit to perform hazardous waste cleanup actions at the site under M.G.L. c.21E and the Massachusetts Contingency Plan, 310 CMR 40.0000 ("MCP"). DEP's NOR requires Kleenit to inter alia, submit a completed Tier Classification submittal and Tier I Permit application, or a Response Action Outcome Statement on or before October 29, 2003. As we informed you in our letter dated September 25, 2002, the case law in Massachusetts clearly holds that an NOR issued by DEP triggers an insurer's duty to defend. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689 (1990).

As you are aware, on September 25, 2002 we provided you with specific and detailed information concerning the claim, the factual and legal basis for defense and indemnification, and Kleenit's policies, including policy numbers, coverage dates, contemporaneous company documents identifying and describing the policies, a copy of a specimen policy from the relevant coverage periods. The Appeals Court has determined that this evidence is more than sufficient to establish the existence and contents of the policies. See, e.g., Rubenstein v. Royal Ins. Co. of America, 44 Mass.App.Ct. 842, 846-847 (1998) (lost or destroyed policy proved through documents and testimony on, inter alia, the purchase of the policy, a schedule of insurance showing policy numbers and dates, and specimen forms of policies.) Kleenit has placed the loss within the insuring clause, and the burden is on you to prove that the cause of the claim is not covered as a result of particular exclusions within the policies or otherwise. Murray v. Continental Ins. Co., 313 Mass. 557 (1943).

On November 13, 2002, at your request, we also provided to you voluminous documents and reports substantiating the claim. Rubin and Rudman also responded to the litany of purported defenses to coverage that you had raised, including specific case citations negating your purported defenses. We believe that you have failed to demonstrate that there are valid, good faith defenses to Kleenit's claim.

Because more than 100 days have elapsed without Royal confirming that it will provide a defense in this instance, Royal has forfeited its opportunity to select counsel of its choice and Kleenit has therefore selected this firm to represent and defend it in this matter.

Based upon the foregoing, we demand that Royal inform us on or before January 20, 2003 whether it will enter into a tolling and standstill agreement or provide defense and indemnification under the Policy. If you fail to agree to one of those steps, Kleenit may file a

536560_1

RUBIN AND RUDMAN LLP

Kevin S. Keyes
January 10, 2003
Page 3

lawsuit to establish your defense and coverage obligations and seek multiple damages and attorney's fees under M.G.L. c.93A and c.176D.  Please contact us with your response.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

PJF/ees
Enclosure
cc:     Keith Crider, Kleenit, Inc. (w/encl.)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 04 10351 NG**

KLEENIT, INC.,
     **Plaintiffs**

v.

**SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,**
     **Defendants**

## EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TAB 8**

ROYAL &
SUNALLIANCE.

Environmental Claim Dept
Suite 440
9140 Arrowpoint Blvd
Charlotte NC 28273

Phone
704 522-2000

January 14, 2003                        **VIA FAX & REGULAR MAIL**

Peter Feurbach
Rubin and Rudman, LLP
50 Rowles Wharf
Boston, MA  02110

RE:     Insured:      Kleenit, Inc. (a.k.a. Sudz-It; Duds Cleaners & Care Cleaners)
        Site:         28 Central Square, Chelmsford, MA
        Our File No:  0650008155

Dear Mr. Feurbach:

Please note that we have forwarded our file to Zelle, Hoffman, Voelbel & Gette for a
coverage opinion. We will advise you of our position upon receipt of their opinion.

Sincerely,

Kevin S. Keyes
Environmental Claim Dept
704-522-2274
kevin_keyes@rsausa.com

• American and Foreign Insurance Company
• Atlantic Indemnity Company
• Atlantic Security Insurance Company
• Carolina American Insurance Company
• The Connecticut Indemnity Company
• Connecticut Specialty Insurance Company

• Design Professionals Insurance Company
• EBI Indemnity Company
• Employee Benefits Insurance Company
• Financial Structures Insurance Company
• The Fire and Casualty Insurance Company of Connecticut
• Globe Indemnity Company

• Grocers Insurance Company
• Guaranty National Insurance Company
• Guaranty National Insurance Company of Connecticut
• Landmark American Insurance Company
• Marine Indemnity Insurance Company of America
• Orion Insurance Company

• Peak Property and Casualty Insurance Corporation
• Phoenix Assurance Company of New York
• Royal & SunAlliance Personal Insurance Company
• Royal Indemnity Company
• Royal Insurance Company of America
• Royal Lloyd's of Texas

• Royal Surplus Lines Insurance Company
• Safeguard Insurance Company
• The Sea Insurance Company of America
• Security Insurance Company of Hartford
• Unisun Insurance Company
• Viking Insurance Company of Wisconsin

A member of the worldwide Royal & Sun Alliance Insurance Group plc

B7964 0502

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 04 10351 NG**

**KLEENIT, INC.,**
        **Plaintiffs**

**v.**

**SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,**
        **Defendants**

### EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
### IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
### FOR PARTIAL SUMMARY JUDGMENT

# TAB 9

T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit

Throa Farm Glen Boulevard
Farmington, CT 06032-1970

Telephone: (860) 954-5040
Facsimile: (860) 954-5857

**Via Facsimile Transmission (508) 732-8971**
**and**
**Certified Mail/RRR (#7099 3400 0015 9498 7999)**

January 17, 2003

Donald P. Nagle, Esq.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360

      **Policyholder:**  Kleenit, Inc. ("Kleenit")

         **Site 1:**  28 Central Square and Beaver Brook, Chelmsford, Massachusetts
          **Re:**  Massachusetts Department of Environmental Protection ("MA-DEP")
              Notice of Responsibility ("NOR") letter dated January 28, 2001

         **Site 2:**  293 and 295 Main Street, Acton, Massachusetts
          **Re:**  Massachusetts Department of Environmental Protection ("MA-DEP")
              Notice of Responsibility ("NOR") letter dated December 30, 2002

Dear Mr. Nagle:

I am in receipt of your January 13, 2003 correspondences. I understand that your firm has taken over the handling of the coverage aspect of these matters from Rubin and Rudman ("R&R"). As you may know, I am a member of Travelers Special Liability Coverage Unit ("SLCU"). The SLCU has reviewed these letters with counsel, and believes that your claim that Kleenit is entitled to multiple damages and attorney's fees in accordance with M.G.L. c. 93A is incorrect. A detailed response will follow by a separate letter. However, as set forth in this letter, Travelers is willing to participate in Kleenit's defense of the captioned NORs, subject to the following reservation of rights.

**SUMMARY OF POLICIES**

Travelers policy research has been unable to locate in our records copies of any Commercial General Liability ("CGL") policies which were issued to Kleenit. The copy of the policy which Kleenit's former counsel, R&R, provided to the SLCU appears to be a policy issued by The Travelers Indemnity Company:

Donald P. Nagle, Esq.
January 17, 2003
Page 2

|      Policy Number      |          Policy Period          |
|-------------------------|---------------------------------|
|      ND 9087145         |  August 28, 1970 to August 28, 1973 |

Because Travelers has been unable to locate a copy in its records of the policy provided by R&R, Travelers reserves its rights should any other evidence of policy content come to light.

Additionally, Travelers research has located reference in its records to the following policy (the "Alleged Policy"), but has been unable to locate a copy of this policy:

|      Policy Number      |          Policy Period          |
|-------------------------|---------------------------------|
|      ND 3873892         |  August 1, 1967 to August 1, 1970 |

Please be aware that because this Alleged Policy has not been located, Travelers is unable to confirm the terms, limits and conditions of the Alleged Policy. Please provide us with any information you have regarding the Alleged Policy.

Please note that R&R previously alleged that Travelers issued policies to Kleenit from 1962 through 1973. However, Travelers has searched exhaustively through all available records and finds no evidence of any other CGL policies than the above two.

## LATE NOTICE / PRE-TENDER COSTS

We have reviewed with our counsel the case law related to late notice and pre-tender costs referenced by R&R in previous correspondence and found it to be unpersuasive. A detailed response will follow by a separate letter. Travelers has no obligation to reimburse Kleenit for any costs it incurred in connection with the Chelmsford NOR prior to tender, i.e., prior to September 27, 2002. In addition, Travelers may have no potential defense or indemnity obligations for the Chelmsford matter to the extent that Kleenit did not provide timely and adequate notice of the Chelmsford matter to Travelers, and/or to the extent that Kleenit voluntarily incurred costs or obligations without Travelers knowledge and consent, and/or to the extent that Kleenit has violated any other conditions precedent to coverage under the policy. Please note that the policy issued to Kleenit contains the following pertinent provisions:

## GENERAL CONDITIONS

. . .

3.    Insured's Duties in the Event of Loss, Accident or Occurrence

    a.    Sections II and III -

        (1)    In the event of an accident or occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information respecting time, place and circumstances thereof, and the

names and addresses of the injured and of available witnesses, shall be given by or on behalf of the Insured to The Travelers or any of its authorized agents as soon as practicable.

(2)     If a claim is made or suit is brought against the Insured, the Insured shall immediately forward to The Travelers every demand, notice, summons or other process received by him or his representative.

(3)     Coverages D, F, and G- The insured shall cooperate with The Travelers and, upon The Travelers request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

Based on the information you have provided the SLCU, it is apparent that Kleenit has been aware of the Chelmsford matter since at least January, 2001. Kleenit was aware of its alleged liability for a period of over two (2) years prior to its notice to Travelers. Therefore, it appears that Travelers may have no defense or indemnity obligation because Kleenit did not "notify Travelers of an 'occurrence' which might result in a claim as soon as practicable," nor did it "immediately forward to Travelers copies of the demands, notices, summonses or other process received by it regarding the Chelmsford NOR immediately." In addition, all defense and indemnification costs that were paid by Kleenit prior to Kleenit's September 27, 2002 tender of the Chelmsford NOR to Travelers, as well as all defense and indemnification costs which Kleenit has agreed or committed to pay prior to September 27, 2002, are not covered under any policy issued to Kleenit by Travelers.

Nevertheless, without waiver of Travelers position that it has or may have no defense or indemnity obligations to Kleenit, and explicitly reserving Travelers right to decline all coverage for these matters, Travelers is willing to further consider these matters as set forth below. However, consistent with Massachusetts law, although Travelers agrees to defend Kleenit under the policy, to the extent that any costs related to the Chelmsford matter that you tender to Travelers for payment are for costs associated with the fulfillment of work previously agreed to be completed at that site, those costs are not reimbursable. Augat, Inc. v. Liberty Mutual Insurance Company, 410 Mass. 117, 121-123, 571 N.E.2d 357 (1991).

Donald P. Nagle, Esq.
January 17, 2003
Page 4

## OFFER OF DEFENSE

Please be advised that Travelers will participate in Kleenit's defense of the Chelmsford and Acton NORs under the policy in effect from August 28, 1970 to August 28, 1973, subject to the complete reservation of rights set forth in this letter, which includes, but is not limited to, the right to seek recoupment of defense costs should it be determined that there is no potential indemnity coverage for these matters.

Pursuant to this offer of defense, Travelers will contribute to the reasonable and necessary defense-related counsel fees and expenses billed by an appropriately qualified law firm of Kleenit's choice and incurred subsequent to the tender of the Chelmsford and Acton NORs to Travelers by Kleenit on September 27, 2002. Please note that "defense-related counsel fees and expenses" do not include certain costs relating to the relief that the MA-DEP is attempting to obtain from Kleenit by the NORs. Such costs, which may include the expense of conducting studies to determine the nature and extent of contamination at or around the captioned Site, and/or medical monitoring costs, or to plan or undertake containment, abatement or other remedial measures at or around the Site, or otherwise to implement measures designed to bring the Site or its environs into compliance with governmental regulations, will only be considered for payment as "defense-related expenses" if they clearly relate to the resolution of a question of Kleenit's liability at issue in this matter, and if resolving such issue is necessary to Kleenit's defense. Otherwise, these costs will be considered for indemnity coverage, should Travelers determine that it may have an indemnity obligation to Kleenit.

## RESERVATION OF RIGHTS

The policy contains conditions, exclusions and other language which may limit or preclude coverage for this matter. Therefore, Travelers investigation of this matter is not intended to be, and should not be deemed or construed as: an admission that any defense or indemnity coverage is available for this matter; an expansion of any obligation that Travelers may subsequently acknowledge (if any); a waiver of any right or defense to coverage available to Travelers, whether under the policy or at law or in equity; or a course of performance. Travelers reservation of rights includes, but is not limited to, the following specific reservations:

1)  Coverage applies only to sums which the insured is legally obligated to pay as damages because of property damage.

2)  Except as required by policy provisions or applicable and controlling law, coverage does not apply to punitive or exemplary damages, fines or penalties sought or recovered in the captioned matter.

3)  Coverage does not apply to any alleged damage or injury which does not constitute property damage as defined in the policy.

Donald P. Nagle, Esq.
January 17, 2003
Page 5

4)  Any property damage which takes place prior and/or subsequent to the dates during which Travelers provided liability insurance to Kleenit is not covered by the policy issued by Travelers, and thus, Travelers is under no obligation to defend lawsuits or pay claims, settlements or judgments for any such property damage.

5)  Coverage does not apply to any alleged damage or injury unless caused by an accident or occurrence as defined in the policy.

6)  Coverage does not apply to property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.

7)  Coverage does not apply to property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant resulting from or contributed to by any condition in violation of or non-compliance with any governmental rule, regulation or law applicable thereto.

8)  Coverage does not apply to property damage arising out of any emission, discharge, seepage, release or escape of petroleum or petroleum derivatives into any body of water.

9)  Coverage does not apply if the insured failed or fails to provide notice to or cooperate with Travelers, or impairs Travelers contribution or subrogation or other insurance rights (if any), in accordance with the conditions of the policy and with applicable law.

10) Coverage does not apply to any payment made, obligation assumed or expense incurred voluntarily by the insured or without Travelers knowledge and consent (other than for first aid to others at the time of any occurrence) in accordance with the conditions of the policy, nor to any pre-tender costs.

11) For the purpose of determining the limit of Travelers liability under the policy (if any), all property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered arising out of one occurrence.

12) Any payments that might be made by Travelers in this case are subject to the applicable limits of liability and/or deductibles as contained in (or as otherwise applicable to) the policy.

13) In accordance with the assignment condition of the policy, coverage is not afforded for any person or entity whose interest in the policy is secured without the written consent of Travelers.

In addition to the foregoing, Travelers specifically reserves its right to withdraw its participation in Kleenit's defense of the Chelmsford and Acton NORs, and to seek recoupment of any defense costs or other sums paid to Kleenit or on its behalf. Travelers also reserves all rights and defenses to coverage which might arise under any other policies of insurance which it may subsequently confirm that it issued to Kleenit (if any).

Travelers also expressly reserves the right to contest the adequacy of your purported demand letter of January 13, 2002 as a sufficient ad proper demand under Chapters 93A and/or 176D and Travelers specifically denies that its conduct in response to Kleenit's demands for coverage of these matters has in any way been violative of the provisions of Chapters 93A and/or 176D.

Further, should Travelers coverage position be litigated and should a court of appropriate jurisdiction reject any right or defense to coverage asserted by Travelers with respect to the Chelmsford and Acton NORs, whether specifically enumerated above, or otherwise reserved by this or any other communication from the SLCU, Travelers will provide coverage only to the extent mandated by such court (subject to its right to pursue reconsideration, review or appeal, etc.), and will seek recoupment of any payments made other than in accordance with the theory of coverage adopted by such court.

As these matters develop further, you will be advised of any additional legal principles or policy provisions which might limit or preclude any obligations which Travelers has undertaken or may undertake, if any.

As previously stated, the SLCU's role in these matters will be limited to determining Travelers defense and/or indemnity obligations, if any. A staff member from Travelers Special Liability Group – Home Office Environmental Claims Unit ("SLG-HOECU") located in Farmington, Connecticut may also be in touch with you. That individual will not be involved in the investigation and resolution of the coverage issues but will be available to assist Kleenit with regard to defense of the Chelmsford and Acton matters, and will be your contact person for the review and payment of defense bills consistent with the parameters set forth in this letter. Information Kleenit provides to the SLG-HOECU with regard to the liability issues raised by these matters will not be forwarded to the SLCU without Kleenit's express, written permission. If you wish to avoid potentially duplicative requests for information, please advise me in writing that you have no objection to the SLG-HOECU sharing such information it receives from Kleenit with the SLCU.

Please note that the SLCU, not the SLG-HOECU, will determine Travelers share of Kleenit's post-tender defense costs relative to the shares borne by Kleenit's other carriers. Please inform us of the identity, policy number and period, address and phone number, and claim representative name for all other carriers to which Kleenit has tendered this matter, so we may contact them to arrange cost-sharing.

Kleenit should forward all liability related correspondence and bills for defense related costs to:

Mr. Jonathan P. Metz
Travelers Special Liability Group
Home Office Environmental Claims Unit
One Farm Glen Blvd.
Farmington, Connecticut 06032

DONALD P NAGLE__

Donald P. Nagle, Esq.
January 17, 2003
Page 7

Please reference file numbers ANU2983 (the Chelmsford matter) and ANU3053 (the Acton matter) on all communication and submissions to SLG-HOECU. Please be advised that the SLG-HOECU's availability and assistance is not, and shall not be construed as: an admission of coverage; a waiver of Travelers right to decline coverage; grounds for any claim of estoppel against Travelers; or a course of performance. Travelers coverage position with regard to the captioned matter will be conveyed to Kleenit <u>only</u> by a member of the SLCU.

Please be aware that it is Kleenit's burden to provide evidence that third-party property damage occurred during Travelers policy period and was caused by an occurrence. Therefore, in order to assist the SLCU with its investigation of this matter, please provide the following information, if and when it becomes available:

Please provide all available information regarding the source and timing of pollutant releases at or from the site, including all documentation of the handling of dry cleaning chemicals (PCE, etc.) or other pollutants, and the identity and last known address of all individuals who worked at the sites prior to and/or during Travelers policy period or who may otherwise have any knowledge regarding the storage, handling, use, disposal or other release of any pollutants at the sites.

Any additional information you believe would facilitate the SLCU's coverage analysis should be forwarded to my attention for review and consideration.

Please contact me at the direct dial number above if you have any questions regarding this letter. If it is more convenient, you may leave a message for me at our toll-free number (1-800-954-9633), and I will return your call as soon as possible. If I am unavailable at the time of your telephone call, you may contact Mr. Robert Harris at (860) 954-2959 for assistance.

Sincerely,

*T. Jill Donan / RJH*

T. Jill Donan
Associate Account Executive

cc:    SLG – HOECU
       File No.: ANU2983 – Chelmsford
       File No.: ANU3053 – Acton

tjd497

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
      **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
      **Defendants**

<u>EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>

# <u>TAB 10</u>

# TUCKER, HEIFETZ & SALTZMAN, LLP

THREE SCHOOL STREET
BOSTON, MASSACHUSETTS 02108
617-557-9696

DONNA D. BUENDO
OF COUNSEL

FACSIMILE - 617-227-9191
BUENDO@THS-LAW.COM

April 2, 2003

Robert A. Fasanella, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA 02110-3319

Re:     Insured:    Kleenit, Inc.
           Locus:      28 Central Square, Chelmsford, MA
           Client:      Graphic Arts Mutual Insurance Company
                          as part of the Utica National Insurance Group
           Client File:  711577

Dear Mr. Fasanella:

At the direction of Rick Heifetz, I am writing in response to your letter of March 27, 2003 in which you request confirmation that Utica National Insurance Group "promptly pay Kleenit's defense costs and/or at a minimum finalize and execute the proposed Joint Defense Agreement." While Utica is not required to sign the Joint Defense Agreement, we are, in the spirit of co-operation, scheduling a meeting with our co-defendants in order to discuss and determine our respective pro rata shares of defense costs.

We realize the importance of this matter and are giving it our full attention.

Very truly yours,

Donna D. Buendo

Cc:   Michael F. Aylward, Esq.
      Karl A. Vasiloff, Esq.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
    **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
    **Defendants**

### EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TAB 11

# TUCKER, HEIFETZ & SALTZMAN, LLP

THREE SCHOOL STREET
BOSTON, MASSACHUSETTS 02108
617-557-9696

DONNA D. BUENDO
OF COUNSEL

FACSIMILE - 617-227-9191
BUENDO@THS-LAW.COM

April 25, 2003

Peter J. Feuerbach, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA 02110-3319

Re:     Insured:       Kleenit, Inc.
        Locus:         28 Central Square, Chelmsford, MA
        Client:        Graphic Arts Mutual Insurance Company
                       as part of the Utica National Insurance Group
        Client File:   711577

Dear Mr. Feuerbach:

Relative to the above-captioned matter, I am writing to request documents that you referred to in your letters of September 25, 2002 to Graphic Arts Mutual Insurance Company, 400 Garden City Plaza, Garden City, NY and Utica National Insurance Group, 401 Edgewater Place, Wakefield, MA. In the second paragraph of each of those letters you refer to Kleenit's "Prepaid Insurance" ledgers as proof of the existence of the policy. We do not have the "Prepaid Insurance" ledgers from June 1980, 1981, 1982 and 1984 in our files. Utica National Insurance Group has converted to a "paperless" system, which is not without flaws. As a result, there are occasions when documents do not make it to our office. This appears to be the case in this instance. Would you be so kind as to send a copy of the aforementioned "Prepaid Insurance" ledgers to the attention of Rick Heifetz or me?

Thank you for your courtesy and cooperation. Should you have any questions, please feel free to contact this office.

Very truly yours,

Donna D. Buendo

DDB/cf

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
     Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
     Defendants

**EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

# TAB 12

ROYAL &
SUNALLIANCE™

www.royalsunalliance-usa.com
9300 Arrowpoint Blvd
Charlotte NC  28273
*Environmental claim Dept*
Phone
704 522-2000

May 28, 2003     **CERTFIED MAIL – RETURN RECEIPT REQUESTED**

Robert A. Fasanella
Rubin and Rudman, LLP
50 Rowes Wharf
Boston, MA  02110

RE:    Insured:     Kleenit, Inc. (a.k.a. Sudz-It; Duds Cleaners; and Care Cleaners)
       Location:     28 Central Square, Chelmsford, MA
       Claimant:     MADEP
       Type of Loss:   Alleged release of hazardous materials
       Our File No:   0650008155

Dear Mr. Fasanella:

I am writing to update you with respect to Royal's policy search and its position regarding the availability of insurance coverage to Kleenit. To date, we have identified the following policy numbers and policy periods for Kleenit, Inc.:

GYAD 36485 (10/1/84-85)
GYAD 36485 (10/1/85-86)
GYAD 36485 (10/1/86-87)

GYAL 33151 (10/1/87-88)
GYAL 33151 (10/1/88-89)
GYAL 33151 (10/1/89-90)
GYAL 33151 (10/1/90-91)

GSP 112849 (10/1/90-91)
GSP 112849 (10/1/91-92)
GSP 112849 (10/1/92-93)
GSP 112849 (10/1/93-94)

GLA 206270 (10/1/86-87)
GLA 227838 (10/1/87-88)
GLA 237582 (10/1/88-89)

GLZ 102602 (12/20/85-86)
GLZ 102603 (12/20/86-87)
GLZ 102603 (12/20/87-88)

* American and Foreign Insurance Company
* Atlantic Indemnity Company
* Atlantic Security Insurance Company
* Carolina American Insurance Company
* The Connecticut Indemnity Company

A member of the Royal & SunAlliance group

* Financial Structures Insurance Company
* The Fire and Casualty Insurance Company of Connecticut
* Globe Indemnity Company
* Grocers Insurance Group
* Guaranty National Insurance Company

* Guaranty National Insurance Company of Connecticut
* Landmark American Insurance Company
* Marine Indemnity Insurance Company of America
* Orion Insurance Company
* Peak Property and Casualty Insurance Corporation

* Phoenix Assurance Company of New York
* Royal Indemnity Company
* Royal Insurance Company of America
* Royal Lloyds of Texas
* Royal Surplus Lines Insurance Company

* Safeguard Insurance Company
* The Sea Insurance Company of America
* Security Insurance Company of Hartford
* Unition Insurance Company
* Viking Insurance Company of Wisconsin

87964 0303

PYAD 36485 (10/1/84-85)

Based on the information obtained to date, we have been able to determine that policies with a prefix of GYAD, PYAD, GYAL and GLA provide some form of liability coverage, including property damage. However, the limited information available to us has not allowed us to determine the specific terms and conditions of such coverage, including: 1) what locations are covered by the policies; 2) all exclusions which may be applicable; 3) whether any endorsements are applicable; 4) the limits of coverage that apply; 5) and other terms and conditions which might bear on coverage. In addition, as a general matter, the GYAD, PYAD, GYAL and GLA policies listed above which incepted on or after 10/1/85 almost certainly contain an absolute pollution exclusion. Finally, as noted in prior correspondence, policies with a GLZ prefix are pollution liability policies which would have been written on a claims made basis. Thus, even if copies of these policies could be located, and it was determined that the policies provided coverage for the locations at issue, coverage would still not be afforded for these sites under the GLZ policies listed above.

Under these circumstances, Royal is unable to confirm that its policies provide coverage for the claims asserted by Kleenit in connection with the above-captioned sites, and is therefore unable to honor Kleenit's request for a defense at this time. In the event that it is determined that the terms and conditions of Royal's polices can be established, Royal continues to reserve all of its rights, including potential defenses based on pollution and owned property exclusions; the timing, cause, nature and extent of any alleged property damage; Kleenit's compliance with conditions pertaining to notice and voluntary payments; and any other defenses which become apparent.

If you have any further information which you believes has a bearing on coverage in this matter, please bring it to our attention.

Sincerely,

Kevin S. Keyes
Environmental Claim Dept
704-522-2274
kevin_keyes@rsausa.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
        Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
        Defendants

EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

# TAB 13



T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit

(860) 954-5040 (Tel.)
(860) 954-5857 (Fax)
tdonan@travelers.com

One Tower Square, 6 MS
Hartford, CT 06183-6016

**VIA FACSIMILE (508) 732-8971**
**AND U.S. MAIL**

July 21, 2003

Donald P. Nagle, Esq.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360

| | | |
|---|---|---|
| Policyholder: | Kleenit, Inc. ("Kleenit") | |
| Site 1: | 28 Central Square and Beaver Brook, Chelmsford, Massachusetts | |
| Re: | Massachusetts Department of Environmental Protection ("MA-DEP") Notice of Responsibility ("NOR") letter dated January 28, 2001 | |
| Site 2: | 293 and 295 Main Street, Acton, Massachusetts | |
| Re: | Massachusetts Department of Environmental Protection ("MA-DEP") Notice of Responsibility ("NOR") letter dated December 30, 2002 | |

Dear Mr. Nagle:

I have received and reviewed your July 11, 2003 letter and have discussed it with counsel.

As you know, Travelers agreed to participate in Kleenit's defense of these matters and, per the request of your co-counsel, Rubin and Rudman ("R&R"), agreed to contribute (along with Kleenit's other carriers) its pro rata share of reasonable and necessary post-tender defense related costs. Since that time, as I informed you in our June 19, 2003 telephone conversation, Travelers has been in contact with Royal and Utica and is in the process of working out a defense cost sharing agreement among the three participating carriers which will provide Kleenit 100% of its reasonable and necessary post-tender defense costs. Travelers will contribute 47%, with Utica and Royal contributing the remaining 53%.

I have again consulted with counsel and been advised again that your interpretation of *Augat* is incorrect. Please identify for me the exact language in *Augat* you believe requires that an insurer must show prejudice when an insured makes a voluntary payment, and I will review this with counsel.

You state that you are "confused" as to why I am directing you to Ms. Kozyra regarding "adjustments and payments of defense costs". Let me take this opportunity to again explain to you the difference between the Special Liability Coverage Unit ("SLCU"), of which I am a member, and Special Liability Group - Home Office Environmental Claim Unit ("SLG-HOECU"), of which Ms. Kozyra is a member. As I have explained before, the SLCU's role in these matters is limited to determining the existence and scope of Travelers defense and/or indemnity coverage obligations, if any. If the SLCU determines that Travelers will participate in the defense of a certain matter, then the matter is forwarded to the SLG-HOECU which is available to assist the insured with regard to its defense, as well as being responsible

Donald P. Nagle, Esq.
July 21, 2003
Page 2

for the review and payment of defense bills. Therefore, though SLCU has determined what Travelers pro-rata share is for these matters, SLG is responsible for the review of defense bills in order to determine the reasonableness and necessity of those bills prior to paying Travelers predetermined pro-rata share.

I understand that Ms. Kozyra's April 24, 2003 letter to R&R asked for more information with respect to the bills submitted, but she has received no response. Should she contact you instead? Your July 11, 2003 letter states "your assumption that the costs presented by R&R include costs related to indemnity is wrong." However, since Ms. Kozyra has not had any response to her request for clarification regarding the bills tendered, she has had no choice but to question those costs. If you or R&R will provide her with the information and documentation she needs, she will re-review any questionable billings, and work with you and R&R to resolve any disputes regarding whether particular costs are defense-related, and reasonable and necessary to Kleenit's defense.

Finally, with regard to your frequent threats to file a declaratory judgment action, Travelers reminds you that pursuant to your request the parties previously entered into a tolling agreement in order to avoid litigation. Moreover, what would be the purpose of such action given that Kleenit's carriers, including Travelers, have agreed to pay 100% of Kleenit's reasonable and necessary post-tender defense related costs? Therefore, Travelers submits that the parties' time would be better spent constructively discussing any outstanding issues rather than engaging in unnecessary posturing.

Please contact me at the direct dial number above if you have any questions regarding this letter. If it is more convenient, you may leave a message for me at our toll-free number (1-800-954-9633), and I will return your call as soon as possible. If I am unavailable at the time of your telephone call, you may contact Mr. Robert Harris at (860) 954-2959 for assistance.

Sincerely,

T. Jill Donan
Associate Account Executive

tjd596

cc:    Catherine Kozyra, SLG – HOECU
       File No.: ANU2983 – Chelmsford
       File No.: ANU3053 – Acton

       Robert A. Fasanella, Esq.
       Peter J. Feuerbach, Esq.
       Rubin and Rudman, LLP
       50 Rowes Wharf
       Boston, Massachusetts 02110-3319

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
        Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
        Defendants

## EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TAB 14

ROYAL &
SUNALLIANCE.

www.royalsunalliance-usa.com
Environmental Claim Dept
9300 Arrowpoint Blvd
Charlotte NC 28273

Phone
704 522-2000

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

August 11, 2003

Peter J. Feuerbach
Rubin and Rudman. LLP
50 Rowes Way
Boston, MA 02110

RE:  Insured:              Kleenit, Inc.
     Claimant:             MADEP
     Location of Loss:     28 Central Square, Chelmsford, MA
     Policy No:            See Attachment "A"
     Our File No:          065000815500

Dear Mr. Feuerbach:

This letter shall serve as a follow up to our letter of May 28, 2003 and to update Royal & SunAlliance's coverage position regarding the above mentioned policies with respect to the above captioned claim. It is our understanding that the insured has leased space at the above location since approximately 1960. On January 28, 2001, the insured was issued a Notice of Responsibility after chlorinated solvents were detected in ground water that was being pumped from a sump pump located in the basement of a business located at 34 Central Square. Royal & SunAlliance was subsequently placed on notice of this matter on September 25, 2002.

We understand that two other parties, ExxonMobil and Energy North, Inc. were also issued Notices of Responsibility. We understand that ExxonMobil has demanded that the insured contribute a one third share of ExxonMobil's past and future response action costs. We understand that to date the insured has refused ExxonMobil's demand. Royal & SunAlliance was placed on notice of this matter on September 25, 2002.

We have evaluated the claims asserted by the MADEP and ExxonMobil against the coverage provided by the referenced policies. These allegations raise serious questions of insurance coverage as they relate to the terms, conditions and provisions of the above mentioned policies.

• American and Foreign Insurance Company
• Atlantic Indemnity Company
• Atlantic Security Insurance Company
• Carolina American Insurance Company
• The Connecticut Indemnity Company
• Financial Structures Insurance Company

A member of the Royal & SunAlliance group

• The Fire and Casualty Insurance Company of Connecticut
• Globe Indemnity Company
• Grocers Insurance Company
• Guaranty National Insurance Company
• Guaranty National Insurance Company of Connecticut

• Landmark American Insurance Company
• Marine Indemnity Insurance Company of America
• Orion Insurance Company
• Peak Property and Casualty Insurance Corporation
• Phoenix Assurance Company of New York

• Royal Indemnity Company
• Royal Insurance Company of America
• Royal Lloyd's of Texas
• Royal Surplus Lines Insurance Company
• Safeguard Insurance Company

• The Sea Insurance Company of America
• Security Insurance Company of Hartford
• Union Insurance Company
• Viking County Mutual Insurance Company
• Viking Insurance Company of Wisconsin

87964 0603

We refer you to the applicable portions of the Insuring Agreement, the definition of "pollution incident", definition of "property damage", Conditions for policies GLZ 102643 (12/20/83 – 12/20/84), GLZ 102708 (12/20/84 – 12/20/85), GLZ 102602 (12/20/85 – 12/20/86), GLZ 102603 (12/20/86 – 12/20/87) and GLZ 103510 (12/20/87 – 12/20/88).

## I.    POLLUTION LIABILITY COVERAGE

A.    The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as compensatory damages because of bodily injury or property damage to which this insurance applies, provided that:

(1)    such bodily injury or property damage is caused by a pollution incident which commences subsequent to the retroactive date shown in the declarations of this policy; and

(2)    the claim for such damages is first made against the insured during the policy period and reported to the company during the policy period or within fifteen days after its termination.

A claim shall be deemed to have been made only when suit is brought or written notice of such claim is received by the insured.

All claims for damages because of bodily injury or property damage sustained by any one person or organization as a result of any one pollution incident shall be deemed to have been made at the time the first of those claims is made.

The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. The company may make such investigation and settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

B.    The company will reimburse the insured for reasonable and necessary clean-up costs incurred by the insured in the discharge of a legal obligation validly imposed through governmental action which is initiated during the policy period, provided that:

(1)    such clean-up costs are incurred because of environmental damage to which this insurance applies; and

(2)    the environmental damage is caused by a pollution incident which commences subsequent to the retroactive date shown in the declarations of this policy.

The company shall have the right, but not the duty, to participate at its expense in any proceeding seeking to impose legal obligations because of such environmental damage.

The company will also reimburse the insured for other clean-up costs which the insured incurs, provided that:

(1)    the clean-up costs are reasonable and necessary; and

(2)    during the policy period, the company grants the insured prior written consent to undertake the clean-up. The company will grant its consent when, in its sole discretion, a pollution incident which commences subsequent to the retroactive date shown in the declarations of this policy or the threat of a pollution incident presents an imminent and substantial danger of bodily injury, property damage, or environmental damage to which this insurance applies.

To the extent that the costs incurred by Kleenit do not qualify as sums Kleenit is legally obligated to pay "as damages" because of property damage would not be covered under the above referenced policies.

## EXCLUSIONS

This insurance does not apply:

(e)    to property damage or environmental damage to:

   (1)    a waste facility, or
   (2)    property owned or occupied by or rented to the insured, or
   (3)    property used by the insured, or
   (4)    property in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control;

(l)    to bodily injury, property damage, or environmental damage arising out of a pollution incident which results from or is directly or indirectly attributable to failure to comply with any applicable statute , regulation, ordinance, directive, or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of

   (1)    the insured, or
   (2)    any named insured, or any member, partner, or executive officer thereof

Any circumstances that trigger application of the above exclusion would not be covered and we reserve our rights accordingly.

## VI.  DEFINITIONS

"environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of solid, liquid, gaseous, or thermal contaminants, irritants, or pollutants;

"pollution incident" means emission, discharge, release, or escape of:

(1)  any solid, liquid, gaseous, or thermal contaminants, irritants, or pollutants directly from the insured site, or

(2)  any waste materials from the operation of the insured site which are legally consigned for delivery or delivered to a waste facility for storage, disposal, processing, or treatment

into or upon land, the atmosphere, or any watercourse or body of water, provided that such emission, discharge, release, or escape of fuels results in environmental damage. The entirety of any such omission, discharge, release, or escape, whether sudden or gradual, shall be deemed to be one "pollution incident".

The coverage provided under part (2) of this definition shall be excess insurance over any other valid and collectible insurance available to the insured;

"property damage" means (1) physical injury to, destruction of, or contamination of tangible property, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured, destroyed, or contaminated by has been evacuated, withdrawn from use, or rendered inaccessible because of a "pollution incident";

Any circumstances that do not fall within the contemplation of the insuring agreement would not be covered under the policies. Those circumstances which are determined to be outside the definition of "pollution incident" would not be covered under the policy. Any "pollution incident" or "property damage" taking place during a time period not covered by the captioned policy would not, in any event, be covered under the policy. Further, those circumstances, claims and/or costs that are determined to be outside the definition of "property damage" would not be covered under the policy.

## VII.  CONDITIONS

## 3.   ASSISTANCE AND COOPERATION OF INSURED

The insured shall give written notice to the company as soon as practicable of:

(1)  any claim made against the insured; or

(2)    any action or proceeding to impose an obligation on the insured for clean-up costs.

The notice shall identify the insured and contain reasonably obtainable information with respect to the time, place, circumstances, and nature of the incident, injury, or damage, including the names and addresses of any persons or organizations sustaining injury or damage and of available witnesses. If a claim is made, a suit is brought, or an action is initiated against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by the insured or the insured's representatives.

The insured and each of its employees shall cooperate with the company and, upon the company's request, assist in (a) making settlements, (b) the conduct of suits or proceedings, and (c) enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured, and any of its members, partners, officers, directors, administrators, stockholders, and employees that the company deems necessary, shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation, or incur any expense.

Any breach of the previously stated conditions may preclude coverage under this policy.

Policies GLZ 102643 (12/20/83 – 12/20/84). GLZ 102708 (12/20/84 – 12/20/85), GLZ 102602 (12/20/85 – 12/20/86), GLZ 102603 (12/20/86 – 12/20/87) and GLZ 103510 (12/20/87 – 12/20/88) are claims made policies and require that the claim for damages be made against the insured during the policy period and reported to the company during the policy period or within fifteen days of its termination. We must respectfully disclaim coverage for defense and indemnity under these policies as the claim was not made during the policy periods and was not reported to us within fifteen days of the policies' termination.

We refer you to the Insuring Agreement, definition of "occurrence", definition of "property damage", Exclusions and Insured's Duties In The Event of Occurrence, Claim or Suit for policies GYAD 36485 (10/01/84 – 10/01/85), GYAD 36485 (10/01/85 – 10/01/86), GYAD 36485 (10/01/86 – 10/01/87), GYAL 33151 (10/01/87 – 10/01/88), GYAL 33151 (10/01/88 – 10/01/89) and GYAL 33151 (10/01/89 – 10/01/90). GYAL 33151 (10/01/90 – 10/01/91) was cancelled flat on 10/01/90.

I.    COVERAGE A – BODILY INJURY LIABIILTY
       COVERATE B – PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A.    bodily injury
B.    property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend and suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

## EXCLUSIONS

The following exclusion is part of policy GYAD 36485 (10/01/84 – 10/01/85):

This insurance does not apply:

(f)    to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, release or escape is sudden and accidental;

The following exclusion is added by endorsement and is part of policies GYAD (36485 (10/01/85 – 10/01/86), GYAD 36485 (10/01/86 – 10/01/87) and GYAL 33151 (10/01/87 – 10/01/88), GYAL 33151 (10/01/88 – 10/01/89) and GYAL 33151 (10/01/89 – 10/01/90).

## POLLUTION EXCLUSION

It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

(1)    to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a)    at or from premises owned, rented or occupied by the named insured;

(b)    at or from any site or location used by or for the named

insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)   which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

(d)   at or from any site or location on which the named insured of any contractors of subcontractors working directly or indirectly on behalf of the named insured are performing operations;

(i)    if the pollutants are brought on or to the site or location in connection with such operations; or

(ii)   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2)   to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The following exclusion is part of policies GYAD 36485 (10/01/84 – 10/01/85), GYAD 36485 (10/01/85 – 10/01/86), GYAD 36485 (10/01/86 – 10/01/87) AND GYAL 33151 (10/01/87 – 10/01/88), GYAL 33151 (10/01/88 – 10/01/89) and GYAL 33151 (10/01/89 – 10/01/90).

(k)   to property damage to

(1)   property owned or occupied by or rented to the insured.
(2)   property used by the insured, or
(3)   property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured;

Any circumstances that may trigger application of these exclusions would preclude

coverage under these policies.

## DEFINITIONS

"occurrence" means an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Any allegations or circumstances not qualifying as a policy defined occurrence or property damage would not be covered and we reserve our rights accordingly. Any property damage taking place during a time period not covered by our policy would not be covered and we reserve our rights accordingly.

### Insured's Duties in the Event of Occurrence, Claim or Suit

(a)   In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b)   If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c)   The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

Any breach of the above stated conditions may preclude coverage for this loss under this policy.

Based on the absolute pollution exclusion, we must respectfully decline coverage for defense and indemnity under polices GYAD 36485 (10/01/85 – 10/01/86), GYAD 36485 (10/01/86 – 10/01/87), GYAL 33151 (10/01/87 – 10/01/88), GYAL 33151 (10/01/88 – 10/01/89) and GYAL 33151 (10/01/89 – 10/01/90).

We refer you to the Insuring Agreement, definition of "occurrence", definition of "property damage", Exclusions and Insured's Duties In The Event of Occurrence, Claim or Suit for policies GLA 177203 (02/03/85 - 10/01/85), GLA 206123 (10/01/85 – 10/01/86), GLA 206270 (10/01/86 – 10/01/87) AND GLA 227838 (10/01/87 – 10/01/88).

## INSURING AGREEMENT

### 1.    Coverage

The company agrees to pay on behalf of the insured the Ultimate Net Loss, in excess of the applicable Underlying or Retained Limit, which the insured shall become legally obligated to pay because of:

(a)    Personal Injury
(b)    Property Damage
(c)    Advertising Liability

caused by an occurrence which takes place during the policy period anywhere in the world.

### 2.A.    Defense Supplementary Payments

With respect to any occurrence not covered by underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy, without regard to the Retained Limit contained herein, the company shall

(1)    have the right and duty to defend and suit against the insured seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(2)    pay premiums on appeal bonds required in any such suit, and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, but the company shall have no obligation to apply for or furnish any such bonds;

(3)    pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the

company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(4)    reimburse the insured for all reasonable expenses incurred at the company's request including loss of earnings not to exceed $50 a business day;

and the amounts so incurred except settlements of claims and suits are payable by the company in addition to the applicable limit of liability of this policy.

In jurisdictions where the company may be prevented by law or otherwise from carrying out this agreement the company shall pay any expense incurred with its written consent in accordance with this agreement. The insured shall promptly reimburse the company for all sums paid on behalf of the insured within the Retained Limit specified in the declarations.

2.B.    When underlying insurance, whether or not listed in the Schedule of Underlying Insurance, does apply to an occurrence, the company shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the company shall have the right and opportunity to associate with the insured and any underlying insurer in the defense and control of any claim or suit reasonably likley to involve the company under this policy.

3.    Limit of Liability

A.    With respect to coverages 1(a), 1(b) or 1(c), the company's liability shall be only for the Ultimate Net Loss, resulting from any one occurrence in excess of either:

(1)    the amount recoverable under underlying insurance as stated in the declarations and the amount recoverable under any other underlying insurance collectible by the insured, or

(2)    the Retained Limit as stated in the declarations.

B.    (1)    Except as provided in B(2) below, when the underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance collectible by the insured contains coverage(s), which are subject to an aggregate limit of liability for all insured damages, the company's liability shall likewise be limited to the amount stated in Item 3. Aggregate Limits, of the declarations with respect to all occurrences during each annual period. The umbrella policy aggregate limit, so amended, shall apply separately to each underlying insurance coverage which carries an aggregate.

(2)   There is no limit to the number of occurrences during the policy period for which claims may be made, except that the company's total limit of liability arising out of the products hazard or the completed operations hazard or both combined shall not exceed the amount stated in Item 3. Aggregate Limit of the declarations as respects all occurrences during each annual period commencing with the effective or anniversary date of this policy.

C.   All personal injury, property damage and advertising liability arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

D.   In the event of reduction or exhaustion of the aggregate limits of liability under the underlying insurance by reason of losses paid thereunder, this policy shall:

(1)   in the event of reduction, pay the excess of reduced underlying insurance, and

(2)   in the event of exhaustion, continue in force as underlying insurance in accordance with the terms and conditions of this policy.

E.   In no event shall the company be liable for an amount in excess of that set forth in the declarations on account of each occurrence happening during the period commencing with the effective or anniversary date of this policy.

4.   **Underlying Limit – Retained Limit**
The company shall be liable only for the Ultimate Net Loss in excess of the greater of the insured's:

A.   UNDERLYING LIMIT – An amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule of Underlying Insurance, plus the applicable limits of any other underlying insurance collectible by the insured; or

B.   RETAINED LIMIT – The amount specified in Item 3 of the declarations as a result of any one occurrence not covered by underlying insurance, and which shall be borne by the insured.

## EXCLUSIONS

This policy does not apply:

4.      To property damage to property owned by the insured :

The following exclusion is added by endorsement:

It is hereby understood and agreed that Section III, Exclusion Number 10 is amended to read as follows:

It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

(1)     to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a)     at or from premises owned, rented or occupied by the named insured;

    (b)     at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)     which are or at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

    (d)     at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

        (i)     if the pollutants are brought on or to the site or location in connection with such operations; or

        (ii)     if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2)     to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminants, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Any circumstances that trigger application of the above exclusion would not be covered and we reserve our rights accordingly.

**DEFINITIONS**

"Property damage" means (a) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence.

"Occurrence" with respect to coverage 1(a) and (b) means an accident, happening or event, including continuous or repeated exposure to conditions which causes injury to persons or tangible property neither expected nor intended from the standpoint of the insured during the policy period. With respect to Coverage 1(c) "Occurrence" means all damages involving the same injurious material or act regardless of frequency or repetition thereof, the number or kind of medial used, and the number of claimants and all such damages shall be deemed to arise our of one happening.

"Ultimate Net Loss" means: the total sums actually paid or payable as damages in settlement of a claim with the written consent of the company or in satisfaction of a judgment for which the insured is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the insured with respect to damages covered hereunder. "Ultimate Net Loss" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the insured, (b) office costs and expenses of the insured and salaries and expenses of employees of the insured or (c) general retainer fees of counsel retained by the insured.

Any allegations or circumstances not qualifying as a policy defined occurrence or property damage would not be covered and we reserve our rights accordingly. Any property damage taking place during a time period not covered by our policy would not be covered and we reserve our rights accordingly.

## CONDITIONS

7.    Maintenance of Underlying Insurance

It is warranted by the insured that the underlying policy(ies) listed in the Schedule of Underlying Insurance, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. In the event of failure by the insured so to maintain such policy(ies) in force, the insurance afforded by this policy shall apply in the same manner as it would have applied had such policy(ies) been so maintained in force.

8.    Assistance and Cooperation

Except as provided in Insuring Agreement 2., the company shall not be called

upon to assume charge of settlement or defense of any claim made, suit brought or proceeding instituted against the insured; but the company shall have the right and shall be given the opportunity to associate with the insured in the defense and control of any claim, suit or proceeding reasonably likely to involve the company. In such event the insured and the company shall cooperate fully.

Any breach of the previously stated conditions may preclude coverage under this policy.

Based on the absolute pollution exclusion, we must respectfully decline coverage for both defense and indemnity under polcies GLA 177203 (02/03/85 - 10/01/85), GLA 206123 (10/01/85 – 10/01/86), GLA 206270 (10/01/86 – 10/01/87) AND GLA 227838 (10/01/87 – 10/01/88).

We refer you to the Insuring Agreement, definition of "occurrence", definition of "property damage", Exclusions and Insured's Duties In The Event of Occurrence, Claim or Suit for policies GSP 112849 (10/01/90 – 10/01/91), GSP 112849 (10/01/91 – 10/01/92), GSP 112849 (10/01/92 – 10/01/93), GSP 112849 (10/01/93 – 10/01/94).

## SECTION 1 – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any occurrence and settle any claim or suit that may result. But:

   (1)   The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   (2)   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

   b.   This insurance applies to bodily injury and property damage only if:

   (1)   The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

    (2)    The bodily injury or property damage occurs during the policy period.

    c.    Damages because of bodily injury include damages claimed by any one person or organization for care, loss of services or death resulting at any time from the bodily injury.

To the extent that the costs incurred by Kleenit do not qualify as sums Kleenit is legally obligated to pay "as damages" because of property damage would not be covered under the above referenced policies.

## 2.   EXCLUSIONS

This insurance does not apply to:

**f.(1)**   Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b)    At or from any premises, site or location which is or was at any time use by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        (i)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        (ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)    Any loss, cost or expense arising out of any:

    (a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or

    (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j.**    Property damage to:

(1)    Property you own, rent or occupy;

(2)    Premises you sell, give away or abandon, if the property damage arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this agreement does not apply to property damage included in the products-completed operations hazard.

Any circumstances that trigger application of the above exclusion would not be covered and we reserve our rights accordingly.

## DEFINITIONS

Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
Property damage means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

b.   Loss of use of tangible property that is not physically injured. All such loss that shall be deemed to occur at the time of the occurrence that caused it.

Any allegations or circumstances not qualifying as a policy defined occurrence or property damage would not be covered and we reserve our rights accordingly. Any property damage taking place during a time period not covered by our policy would not be covered and we reserve our rights accordingly.

## CONDITIONS

2.   **Duties In The Event Of Occurrence, Claim Or Suit**

a.   You must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim. To the extent possible, notice should include:

(1)   How, when and where the occurrence or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the occurrence or offense.

b.   If a claim is made or suit is brought against any insured, you must:

(1)   Immediately record the specifics of the claim or suit and the date received; and

(2)   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as

soon as practicable.

c.   You and any other involved insured must:

(1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

(2)   Authorize us to obtain records and other information;

(3)   Cooperate with us in the investigation, settlement or defense or the claim or suit; and

(4)   Assist us, upon our request, in the enforcement of any right against person or organization which may be liable to the insured because of bodily injury or damage to which this insurance may also apply.

d.   No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Any breach of the previously stated conditions may preclude coverage under this policy.

Based on the absolute pollution exclusion, we must respectfully decline coverage for both defense and indemnity under policies GSP 112849 (10/01/90 – 10/01/91), GSP 112849 (10/01/91 – 10/01/92), GSP 112849 (10/01/92 – 10/01/93), GSP 112849 (10/01/93 – 10/01/94).

In summary, Royal & SunAlliance agrees to participate in the defense of Kleenit, Inc., subject to a reservation of rights under policy GYAD 36485 (10/01/84 – 10/01/85).

In addition, Royal & SunAlliance must respectfully decline coverage for both defense and indemnity under policies GLZ 102643 (12/20/83 – 12/20/84). GLZ 102708 (12/20/84 – 12/20/85), GLZ 102602 (12/20/85 – 12/20/86), GLZ 102603 (12/20/86 – 12/20/87) and GLZ 103510 (12/20/87 – 12/20/88) as the claim was not made during the policy periods and was not reported to us within fifteen days of the policies' termination.

Royal & SunAlliance must respectfully decline coverage for both defense and indemnity under policies GYAD 36485 (10/01/85 – 10/01/86), GYAD 36485 (10/01/86 – 10/01/87), GYAL 33151 (10/01/87 – 10/01/88), GYAL 33151 (10/01/88 – 10/01/89), GYAL 33151 (10/01/89 – 10/01/90), GLA 177203 (02/03/85 - 10/01/85), GLA 206123 (10/01/85 – 10/01/86), GLA 206270 (10/01/86 – 10/01/87) AND GLA 227838 (10/01/87 – 10/01/88), GSP 112849 (10/01/90 – 10/01/91), GSP 112849 (10/01/91 – 10/01/92), GSP 112849 (10/01/92 – 10/01/93) and GSP 112849 (10/01/93 – 10/01/94) due to the absolute pollution exclusion. In addition, Royal & SunAlliance declines coverage for any defense or other costs incurred prior to the time this claim was tendered to Royal.

Any actions by any representative of our company shall not be construed as a waiver of any said rights or as an admission of coverage under the policies. We expressly reserve our right to update, modify or supplement our current position and to disclaim coverage for defense and/or indemnity as may be warranted at any time during our involvement in this matter. We reserve the right to withdraw from the defense of these matters as warranted and to seek reimbursement of our expenses should it be determined that coverage does not exist.

Should you have any questions, please feel free to contact me directly.

Sincerely,

Kevin S. Keyes
Environmental Claim Dept
704-522-2274
kevin_keyes@rsausa.com


cc:

Keith Crider
Kleenit, Inc.
44 Park St.
Ayer, MA  01432

**KLEENIT, INC.**
**ATTACHMENT "A"**

GLZ 102643 (12/20/83 – 12/20/84)
GLZ 102708 (12/20/84 – 12/20/85)
GLZ 102602 (12/20/85 – 12/20/86)
GLZ 102603 (12/20/86 – 12/20/87)
GLZ 103510 (12/20/87 – 12/20/88)

GYAD 36485 (10/01/84 – 10/01/85)
GYAD 36485 (10/01/85 – 10/01/86)
GYAD 36485 (10/01/86 – 10/01/87)

GYAL 33151 (10/01/87 – 10/01/88)
GYAL 33151 (10/01/88 – 10/01/89)
GYAL 33151 (10/01/89 – 10/01/90)
GYAL 33151 (10/01/90 – 10/01/91)

GLA 177203 (02/03/85 – 10/01/85)
GLA 206123 (10/01/85 – 10/01/86)
GLA 206270 (10/01/86 – 10/01/87)
GLA 227838 (10/01/87 – 10/01/88)

GSP 112849 (10/01/90 – 10/01/91)
GSP 112849 (10/01/91 – 10/01/92)
GSP 112849 (10/01/92 – 10/01/93)
GSP 112849 (10/01/93 – 10/01/94)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
     **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
     **Defendants**

<u>EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>

# <u>TAB 15</u>



# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Peter J. Feuerbach
Direct Dial: (617) 330-7136
E-mail: pfeuerbach@rubinrudman.com

February 4, 2004

Karl A. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason & Gette LLP
950 Winter Street - Suite 1300
Waltham, MA 02451
(for Royal)

RE:     <u>Kleenit, Inc. - Acton Site</u>

Dear Mr. Vasiloff:

This letter is to inform you that we received a first check from Royal & SunAlliance yesterday (485 days after Kleenit's notice of claim) in the amount of $573.77. This extremely low payment (i.e. 0.4% of Kleenit's defense costs) is wholly unreasonable for the reasons set forth in our numerous letters to the insurers. The proffered payment represents a "pennies on the dollar" settlement offer and further evidences Royal's unfair claim settlement practices in violation of M.G.L. c.176D, §3(9), and M.L.G. c.93A. Kleenit will nonetheless accept and cash this check as <u>partial</u> payment of monies due and payable by Royal, while <u>reserving</u> all rights and remedies to seek Royal's full payment of all defense costs, including pre-tender and post-tender costs, coverage and indemnification under the relevant policies.

Very truly yours,

Peter J. Feuerbach

PJF/ees
cc:     Kleenit, Inc.
        Robert A. Fasanella, Esq.
        Donald P. Nagle, Esq.

584768_1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
      **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
      **Defendants**

## EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TAB 16

DONALD P. NAGLE, PC

ATTORNEY AT LAW
5 MAIN STREET EXTENSION, SUITE 300
PLYMOUTH, MASSACHUSETTS 02360
TEL: 508-732-8970 FAX: 508-732-8971

May 12, 2003

T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit
Travelers
Three Farm Glen Boulevard
Farmington, Connecticut 06032-1970

RE:    Policy Holder:    Kleenit, Inc. ("Kleenit")
       Site:             28 Central Square Beaver Brook, Chelmsford and
                         295 Main Street, Acton, Massachusetts

Dear Ms. Donan:

This letter is in response to your letter of April 16, 2003. You are correct that I am handling insurance coverage for defense costs. In your January 17, 2003 letter, you agreed to offer defense coverage. However, the proposed terms of such coverage set out in your most recent correspondence are unacceptable and contradict established case law in Massachusetts. Furthermore, your April 24, 2002 letter to Rubin and Rudman proposal to address Travelers' obligation for Kleenit's defense with a payment of only $233.10 of the $87,248.18 (i.e., 0.3 %) of the defense costs incurred is hard to take seriously, at best. I must question whether Travelers is engaging in unfair and bad faith settlement practices here. In Massachusetts, it is an unfair settlement practice for an insurer to agree to reimburse or defend only smaller claims or portions of claims while forcing claimants to litigate on larger claims pursuant to M.G.L. c.176D, §3(9)(f) and (g). See Whyte v. Conn. Mutual Life Ins. Co., 818 F.2d 1005 (1st Cir. 1987).

Your failure to include defense costs incurred prior to the date of tender to Travelers is also contrary to established case law. As explained to you in the March 11, 2003 correspondence from Rubin and Rudman, the insurer is required to pay such costs unless it affirmatively demonstrates prejudice. See Atlas Tack Corp. v. Liberty Mutual Ins. Co., 48 Mass.App.Ct. 378, 383 (1999). This position is consistent with controlling authority in Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980) and M.G.L. c.75, §112.

It is our position that an attempt to limit defense coverage to the "tender date" is premised upon an unwarranted assertion of late notice. The Supreme Judicial Court in the Johnson Control decision turned away from a "strict contractual interpretation of notice provisions as a condition precedent to an insurer's liability." Johnson Controls, Inc. v. Bowes, 381 Mass. at 280. It held:

DONALD P. NAGLE, PC

T. Jill Donan
May 12, 2003
Page 3

In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed . . . , even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and **it follows neither logic nor fairness to relieve the insurance company of its obligations** under the policy in such a situation.

Id. at 282, 409 N.E.2d 185, quoting Brakeman v. Potomac Ins. Co., 472 Pa. 66, 74-75, 371 A.2d 193 (1977) (emphasis supplied).

Here, Travelers has not even alleged prejudice, let alone demonstrated it.

While the Joint Defense and Insurance Defense Agreement proffered by Rubin & Rudman proposed a pro-rata allocation of defense coverage among the four insurers, this arrangement is predicated upon 100% of the defense costs being covered by all the insurers. Lacking such an agreement among the insurers, each insurer is jointly and severally liable for the full defense coverage. See Rubenstein v. Royal Insurance Company of America, 45 Mass.App.Ct 244, 696 N.E.2d 973 (1998). Likewise, in High Voltage Engineering Corp. v. American Employer's Ins. Co., 1995 WL 809557, the Court held that the insured is "required to provide full coverage once coverage under the policy has been triggered." Id., quoting J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502 (Pa. 1993); see also, Lac D'Amiante du Quebec v. American Home Assurance Co., 613 F.Supp. 1549, 1563 (D.C.N.J. 1985).

Furthermore, you improperly limit defense costs based on "time on the risk," which is a method for calculating underlying coverage, not defense costs. See Rubenstein, supra. As stated by the High Voltage Court:

> [T]his Court holds that [the insurer] is **obligated to provide full coverage to HB, and is therefore jointly and severally liable for the costs incurred in defending** against the Brechner, Blanchard and RHI actions. This Court notes that notwithstanding this conclusion, '[t]here is no bar against an insurer obtaining a share of . . . defense costs from other insurers under the other insurance clauses or under the equitable doctrine of contributions.'

Id. at **5 (emphasis supplied), quoting J.H. France, supra at 509.

Moreover, not only do I dispute Travelers' methodology, but your application of this method is also flawed. First, the policy period you use to determine Travelers' share

DONALD P. NAGLE, PC

T. Jill Donan
May 12, 2003
Page 3

is incorrect. Notably, you failed to include the policy that Travelers admits it issued for the period from August 1, 1967 to August 1, 1970, which you identified in your January 17, 2003 letter as Policy Number ND 3873892.

Finally, your arbitrary exclusion of Kleenit's investigation and assessment costs from your proffered defense costs is not in conformity with your January 17, 2003 letter or established legal principles. Environmental assessment costs properly qualify as covered defense costs. See Wasserman v. Commerce Ins. Co., Mass.Super.Ct, July 9, 2002. See also, Aerojet General Corp. v. Transport Indemnity Corp., 948 P.2d 909 (Cal. 1997). The detailed defense cost figures submitted to you by Rubin and Rudman on March 11, 2003, excluded cleanup actions performed by the LSP, which were reasonably considered indemnification for purposes of that letter. However, the balance of the LSP's and contractors' actions and costs were attributable to investigatory and assessment actions that were specifically intended to resolve whether Kleenit was liable as alleged by DEP in its NORs and to defend Kleenit from DEP's allegations.

For example, the actions have been designed and implemented to determine if alleged sources of contamination on Kleenit's property, or contamination from others Potentially Responsible Parties, properties, were causing the contamination alleged by DEP in its NORs. These actions were undertaken and costs incurred purely to defend Kleenit from the allegations set forth in DEP's NORs. In view of your January 17, 2003 letter, committing Travelers to pay these exact costs as defense costs, your April 16 letter retracting that commitment has to be considered as bad faith insurance practices.

In summary, your proposal for defense costs is wholly inconsistent with settled law and not supported by the facts. Unless Travelers is prepared to address these flaws, we will be forced to recommend to Kleenit that it seek a declaratory judgment on Travelers' liability for defense costs and for underlying liability, plus other damages and penalties under M.G.L. c.93A and c.176D.

I look forward to your prompt reply.

Very truly yours,

Donald P. Nagle

cc: Keith Crider, Kleenit, Inc.
    Robert A. Fasanella, Esq.
    Peter J. Feuerbach, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
        Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
        Defendants

EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

# TAB 17

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319
TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

**FILE**
**8856 - 002**

Peter J. Feuerbach
Direct Dial: (617) 330-7136
E-mail: pfeuerbach@rubinrudman.com

May 30, 2003

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA  02110

RE:   **Policy Holder:**   Kleenit, Inc. ("Kleenit")
      **Site:**           28 Central Square Beaver Brook, Chelmsford and
                          295 Main Street, Acton, Massachusetts
      **Your Client:**    Graphic Arts/Utica National
      **Your File No.:**  711577

Dear Mr. Heifetz:

This letter responds to your letter dated May 1, 2003.  It also notifies you and your clients of a new claim, as set forth below.

Your proposal to address Utica National's and Graphic Arts' (collectively "Utica") obligation for Kleenit's defense with a payment of only $3,630 of the $87,248.18 of the defense costs incurred (i.e., only 4.1 %) can not be taken seriously.  Utica is obligated by law to pay 100% of Kleenit's defense costs.  It is clear that, by offering to pay only 4.1% of Kleenit's costs, Utica is engaging in unfair and bad faith settlement practices.  In Massachusetts, it is an unfair settlement practice for an insurer to agree to reimburse or defend only smaller claims or portions of claims while forcing claimants to litigate on larger claims, pursuant to M.G.L. c.176D, §3(9)(f) and (g).  See Whyte v. Conn. Mutual Life Ins. Co., 818 F.2d 1005 (1st Cir. 1987).

While the Joint Defense and Insurance Defense Agreement that we proposed in March incorporated a pro-rata allocation of defense coverage among four insurers, that proposal was predicated upon 100% of the defense costs being covered by the insurers.  However, lacking such an agreement among the insurers, the case law is clear that Utica is jointly and severally liable for the full defense coverage.  See Rubenstein v. Royal Insurance Company of America, 45 Mass.App.Ct 244 (1998).

553465_1

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
May 30, 2003
Page 2

Likewise, in High Voltage Engineering Corp. v. American Employer's Ins. Co., 1995 WL 809557, the Court held that the insurer is "required to provide full coverage once coverage under the policy has been triggered." Id., quoting J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502 (Pa. 1993); see also, Lac D'Amiante du Quebec v. American Home Assurance Co., 613 F.Supp. 1549, 1563 (D.C.N.J. 1985) ("When more than one insurer was on the risk. . . they are jointly and severally liable to plaintiff for costs of defending the suit."). As a result, Utica is obligated to pay 100% of Kleenit's $87,248.18 in defense costs incurred as of March 11, 2003.

Your arbitrary exclusion of Kleenit's site investigation and assessment costs, which were triggered by DEP's Notices of Responsibility, from your proffered defense costs is contrary to Massachusetts' law. Environmental assessment costs properly qualify as covered defense costs. See, e.g., Wasserman v. Commerce Ins. Co., 2002 WL 31187681; see also, Aerojet General Corp. v. Transport Indemnity Corp., 948 P.2d 909 (Cal. 1997). The detailed defense cost figures that we submitted to you on March 11, 2003, excluded cleanup actions performed by the LSP, which were reasonably considered indemnification for purposes of that letter. However, the balance of the LSP's and contractors' actions and costs were attributable to investigatory and assessment actions that were specifically intended to resolve whether Kleenit was liable as alleged by DEP in its NORs and to defend Kleenit from DEP's allegations.

For example, the actions have been designed and implemented to determine if alleged sources of contamination on Kleenit's property, or contamination from other potentially responsible parties, were causing the contamination alleged by DEP in its NORs. These actions have been undertaken and costs incurred purely to defend Kleenit from the allegations set forth in DEP's NORs. Although Utica has purported to offer to provide a defense, in reality, its refusal to pay site assessment costs as defense costs has to be considered as bad faith insurance practices.

Finally, there are obvious errors in your statement that, "[a]t this time we are not considering the Acton Site in this offer as Exxon/Mobil is engaged in clean-up activities." As an initial matter, you must be confusing the Acton and Chelmsford locations, because Exxon Mobil is not conducting any activities at the Acton Site. More substantively, at the Chelmsford Site, which involves Exxon Mobil, Kleenit has been actively engaged in assessment and response actions as we discussed in our several letters to you dating back to September 25, 2002.

Although Exxon Mobil claims that it has conducted separate response activities at the Chelmsford location, those purported actions do not obviate the need for Kleenit to perform certain activities in defense of the claims set forth in DEP's NORs. In addition, Exxon Mobil's alleged actions do not relieve Utica of its obligation to provide defense and indemnification to Kleenit with respect to the site. Further, as we discussed in our letters to you dating back to

553465_1

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
May 30, 2003
Page 3

September 25, 2002, Exxon Mobil had previously alleged that Kleenit was liable for one-third of Exxon Mobil's response action costs.

Furthermore, by letter dated May 13, 2003, Exxon Mobil has sent a purported demand letter to Kleenit pursuant to M.G.L. c.21E, §4A, alleging, inter alia, that Kleenit is liable for 40 percent of Exxon Mobil's alleged costs. (A copy of Exxon Mobil's letter dated May 13, 2003, is enclosed herewith.) We will prepare Kleenit's response to Exxon Mobil's letter and will represent it with respect to the defense of Exxon Mobil's claims. Based upon the foregoing and our previous letters to you, Utica is obligated to provide complete defense and indemnification for all claims pertaining to both the Chelmsford and Acton Sites, including DEP's NORs and Exxon Mobil's purported demand letter.

In summary, your proposal for defense costs is wholly inconsistent with settled law and not supported by the facts. Unless Utica is prepared to promptly address these flaws within the next fifteen (15) days, we will be forced to recommend to Kleenit that it seek a declaratory judgment on Utica's liability for defense costs and for underlying liability, plus other damages and penalties under M.G.L. c.93A and c.176D.

I look forward to your prompt reply.

Very truly yours,

Peter J. Feuerbach

PJF/ees
Enclosure
cc: Keith Crider, Kleenit, Inc. (w/o encl.)

553465_1

Hanover Insurance Company, Claims Manager/Department
May 30, 2003
Page 5

for the contamination alleged to be present at 34 Central Square, we note that Exxon Mobil previously asserted that Kleenit should contribute a one-third share of Exxon Mobil's past and future response action costs. Exxon Mobil previously claimed that its past and projected future costs total more than $250,000. As of this date, Kleenit has not agreed to pay any of Exxon Mobil's alleged costs and would intend to defend vigorously any action seeking such costs.

By letter dated May 13, 2003, Exxon Mobil has sent a purported demand letter to Kleenit pursuant to M.G.L. c.21E, §4A, alleging, inter alia, that Kleenit is liable for 40 percent of Exxon Mobil's alleged response action costs. (A copy of ExxonMobil's letter dated May 13, 2003, is attached as Tab 6.) We will prepare Kleenit's response to Exxon Mobil's purported Section 4A demand letter and will represent it with respect to the defense of Exxon Mobil's claims.

### Request for Insurance Defense and Coverage

Based upon the foregoing, Kleenit requests that the Company provide coverage under the Policy for all matters related to or arising out of DEP's NOR and Notice to Conduct IRAs, and Exxon Mobil's Section 4A demand. Further, Kleenit requests coverage for the cleanup and removal of pollutants and loss for the breakdown and malfunction of its equipment.

The Policy in effect at all relevant times provided coverage for loss of or damage to buildings and additions, including the structural foundations, under Section A. In this case, it is clear that the building and addition thereto have suffered loss and damage caused by the accidental release of contaminants thereunder.

Furthermore, Section 5.h provides $25,000 in coverage for Kleenit's clean up and removal of the subject pollutants, which Kleenit intends to undertake. In addition, Section 5.t provides coverage for loss Kleenit has suffered, including the cost to repair and restore the building and addition with respect to the hazardous substances, caused by or resulting from the malfunctions of and accidents to its equipment. It is believed in this case that the presence of contamination may be due to the malfunction and breakdown of Kleenit's equipment.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In addition, insurance coverage is triggered by an enforcement letter issued by a government agency to an insured asserting that a release of contamination has occurred, such as the NOR and Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the Company should provide defense and indemnification under the Policy for all claims arising out of DEP's NOR and Notice to Conduct IRAs.

554423_1

# McCusker, Anselmi, Rosen, Carvelli & Walsh

A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

127 MAIN STREET, CHATHAM, NEW JERSEY 07928

TEL: (973) 635-6300  FACSIMILE: (973) 635-7044

Writer's Direct Dial: 973-457-0118

e-mail: agrossman@marc-law.com

Website: www.marcw.com

JOHN B. McCUSKER
ANDREW E. ANSELMI
BRUCE S. ROSEN
PAUL F. CARVELLI
JOSEPH T. WALSH, III
JONATHAN T.K. COHEN

AMY C. GROSSMAN
MARITZA BERDOTE BYRNE
GAIL E. SLAUGHTER
PAUL G. McCUSKER
MICHAEL T. MILLAR
WENDY B. GREEN
JAMES A. MESZAROS
SCOTT H. GOLDSTEIN
JAMES P. SPIELBERG
ALICYN B. CRAIG
EDWARD A. STURCHIO, JR.
_____
SUZANNE M. MURPHY
ROSEMARIE DASILVA
Of Counsel

New York City Office:

The Chrysler Building
405 Lexington Avenue, 42nd Floor
New York, New York 10174
Tel: (212) 308-0070

Toms River Office:

98 East Water Street
Toms River, NJ 08753
Tel: (732) 914-9114
Facsimile: (732) 914-8024

May 13, 2003

_VIA FEDERAL EXPRESS AND CERTIFIED MAIL R.R.R._

David G. Carpenter, Esq.
Bingham Dana LLP
150 Federal Street
Boston, Massachusetts 02110

John Lovely, Esq.
Cashman & Lovely, P.C.
60 Austin Street
Newtonville, Massachusetts 02460

Re:    Notification and Demand Pursuant to Massachusetts General Laws, Chapter 21E, Section 4A, Property Address: 34 Central Square, Chelmsford, Massachusetts

Dear Gentlemen:

We represent Exxon Mobil Corporation in this matter.  As you are aware, the Massachusetts Department of Environmental Protection ("MADEP") has reported contamination of petroleum constituents and chlorinated volatile organic compounds in the soil, groundwater and

David G. Carpenter, Esq.
Bingham Dana, LLP

May 13, 2003

John Lovely, Esq.
Cashman & Lovely, P.C.
Page 2

indoor air on, in and under the property located at 34 Central Square, Chelmsford, Massachusetts ("the Property"), which is not owned by Exxon Mobil Corporation ("ExxonMobil"). The MADEP notified ExxonMobil that it was one of the potentially responsible parties, because it operates a gasoline service station at 30 Central Square, Chelmsford, MA. The MADEP also advised that the parties you represent, Kleen-It, a dry cleaning facility, which utilizes chlorinated volatile organic compounds at 28 Central Square, Chelmsford, MA, and Energy North, that operates a gasoline service station at 7 Acton Road, Chelmsford, MA, both which were potentially responsible parties for the cleanup of the contamination.

After the MADEP notified ExxonMobil, Kleen-It and Energy North of the contamination in and under 34 Central Square, Chelmsford, MA, and demanded an Immediate Response Action (IRA) by all three parties in a letter dated January 5, 2001, ExxonMobil, without prejudice, attempted to work out an agreement to share the costs of the IRA. All such attempts to work out a cost sharing agreement for the IRA failed. Therefore, ExxonMobil, subject to a reservation of rights, undertook the IRA on its own, keeping both of you informed as to the progress of the IRA, and providing information about the response actions, but without the benefit of any payments by either Kleen-It or Energy North towards the cost of the IRA. ExxonMobil repeatedly requested that Kleen-It and/or Energy North contribute towards the costs of the IRA, and both parties wrongfully refused, despite their liability for the response action taken.

Therefore, this letter is to notify you that Kleen-It and Energy North are responsible parties to this cleanup action, and that ExxonMobil is hereby making a demand pursuant to Section 4A of the Massachusetts General Laws, Chapter 21E, with regard to the response actions for the contamination at 34 Central Square, Chelmsford, MA. Further, ExxonMobil is notifying you under Section 4A, Chapter 21E of the factual and legal basis for its claims:

1) ExxonMobil, without prejudice, has undertaken certain necessary, reasonable, and appropriate response actions with respect to the contamination found at 34 Central Square, Chelmsford, MA (again, "the Property");

2) ExxonMobil has incurred certain costs as a result of the presence of contamination originating from sources upgradient of the Property;

3) Both Kleen-It and Energy North are upgradient of the Property, and are sources of the contamination at the Property;

4) ExxonMobil has incurred certain other damages as a result of the contamination at the Property;

David G. Carpenter, Esq.
Bingham Dana, LLP

May 13, 2003

John Lovely, Esq.
Cashman & Lovely, P.C.
Page 3

5) Exxon Mobil reasonably believes that Kleen-It and Energy North are liable pursuant to Section 5 of Chapter 21E of the Massachusetts General Laws, with respect to the contamination at the Property; and

6) Exxon Mobil demands that you make contribution or reimbursement or pay your equitable share of the costs of those response actions or other liability pursuant to the provisions of Chapter 21E.

A.    Contamination of the Property

MADEP has determined that 34 Central Square, Chelmsford has a condition of Substantial Release Migration and Critical Exposure Pathway, through indoor air quality. ExxonMobil as part of its IRA, which is discussed in detail below, conducted indoor air quality sampling on several occasions through licensed consultants. The results of the air quality sampling demonstrated the presence of diclorobenzene, xylenes, vinyl chloride, and chloroform above indoor air quality standards. Soil and groundwater sampling at the Property have detected the presence of petroleum hydrocarbons and volatile organic compounds (VOCs). Standing water has been observed in and around a floor drain in the basement of the Property. Some samples of the standing water also contained VOCs.

B.    IRA

On January 5, 2001, ExxonMobil received a letter of Notice of Need to Conduct IRA and Designation of Interim Deadlines issued by the MADEP. This IRA condition is addressed under Release Tracking Number (RTN) 3-20265. ExxonMobil owns a Mobil Gas Station site located at 30 Central Square, Chelmsford, MA, listed by the DEP as Site No. 3-2747. ExxonMobil commenced an IRA plan, to address the substantial release migration and critical exposure pathway to contamination that is believed to be causing the indoor air impact at 34 Central Square, Chelmsford, including a day care facility located in the building. To date, ExxonMobil has incurred $416,904.94 in remediation costs for the IRA. It is anticipated that ExxonMobil will continue to incur remediation costs for this IRA.

Progress reports for the IRA have previously been supplied to both of you. If you require further information about the actions that were taken for the IRA, please advise. In general, modifications were made to the building to seal the basement from vapors, seal off the sump drains, re-route drainage and connect the drains to the local sewer system, seal air intakes and cracks, cleaning and sealing the building's chimney and ventilation system, inspections and monitoring of ventilation system, and changing building access to the basement. Other remediation was part of the IRA, and was included in the progress reports provided to you previously.

C.    Legal Basis for Your Liability

David G. Carpenter, Esq.
Bingham Dana, LLP

May 13, 2003

John Lovely, Esq.
Cashman & Lovely, P.C.
Page 4

First, the MADEP had identified Kleen-It and Energy North as Potentially Responsible Parties (PRPs) for the remediation and for the IRA. Kleen-It and Energy North wrongfully refused to conduct the IRA, and ExxonMobil in order to protect human health and the environment, conducted the IRA.

Second, as to Kleen-It, based upon the groundwater sampling, some of the constituents are clearly chemical components, and degradation products of chemicals used by a dry cleaning facility. These chemicals were never used by ExxonMobil, which owned a gasoline service station. These contaminants, such as chloroform, and vinyl chloride, originated from Kleen-It. Further, the groundwater sampling demonstrates that Kleen-It is upgradient of 34 Central Square, and the groundwater contouring confirms that Kleen-It is the source of these contaminants impacting the groundwater at the Property.

In addition, analytical data and data available from the MADEP indicate that releases of chemicals of the same constituents have occurred from the Kleen-It site that are found in the groundwater in the area of the Property.

Furthermore, as to Energy North, it is also upgradient of 34 Central Square. It also operates a gasoline service station, and is likely a source of VOCs, as well as petroleum hydrocarbons to the soils and groundwater in the vicinity of the Property. The groundwater contouring prepared by the licensed site professionals as part of the IRA, clearly demonstrate that Energy North is a leading source of these contaminants. Moreover, analytical data compiled as a result of site investigations in the area and data available from the MADEP confirms that releases of gasoline have occurred from the Energy North site.

Given the facts set forth herein, it is clear that Kleen-It and Energy North at a minimum are jointly and severally liable for the costs and damages incurred by ExxonMobil as a result of the contamination at the Property, which originated from the Kleen-It and Energy North sites. Kleen-It and Energy North are legally responsible for the pervasive release of gasoline and hazardous materials present at the Property, since contamination originating from Kleen-it and Energy North have continuously migrated to the Property. Under M.G.L. ch. 21E, sec. 5(a), Kleen-It and Energy North are liable for the contamination as the owner, operator and the person who is legally responsible for the contamination, and are jointly and severally liable for the remediation of this contamination.

D.      Response Actions and Other Costs Incurred by ExxonMobil

ExxonMobil has shared with both Kleen-It and Energy North its proposed actions under the IRA, and requested that Kleen-It and Energy North participate in the IRA. Both Kleen-It and Energy North have refused to participate. ExxonMobil has provided status reports and updates to Kleen-It and Energy North numerous times over the past two years, advising of the reasonable, measured actions that ExxonMobil intended to take under the IRA to remedy the contamination.

David G. Carpenter, Esq.
Bingham Dana, LLP                                                            May 13, 2003

John Lovely, Esq.
Cashman & Lovely, P.C.
Page 5

Generally, ExxonMobil has conducted air sampling, air monitoring, installation of an indoor air scrubber system, sealing of sumps in the basements of the Property, installation of a groundwater treatment system, investigation of groundwater and soil through sampling and monitoring, as well as inspections of the property, building, foundation, and survey of all monitoring wells in the vicinity, and developing groundwater contours for the area as part of the IRA.

E.    Kleen-It and Energy North's Liability

It is ExxonMobil's position that Kleen-It and Energy North are each individually responsible for the remediation expenses incurred by ExxonMobil for the IRA. Therefore, ExxonMobil is seeking to recover all of its IRA costs, plus attorneys' fees and costs of suit from each party. In addition, ExxonMobil is seeking an Order providing that all additional costs incurred by ExxonMobil under the IRA will be split, by Kleen-It and Energy North each being ordered to pay a share of all costs to be incurred by ExxonMobil in the future.

Pursuant to Chapter 21E, Section 4A, you have 45 days from receipt of this notification to respond in writing. In the event that you fail to respond or fail to agree to pay your equitable share of the liability for the contamination at the Property, despite the fact that the liability of Kleen-It and Energy North is clear, you shall be liable for ExxonMobil's litigation costs and attorneys' fees under Section 4A. Despite the fact that one or more parties to this matter are jointly and severally liable to ExxonMobil, and therefore each may be liable for all of the damages of ExxonMobil, ExxonMobil shall consider the equitable division of the damages among the responsible parties and encourage such parties to cooperate toward reaching a consensus with respect to such equitable division. To the extent that M.G.L., Chapter 21E requires this demand to contain a figure on your equitable share of the damages described herein, you may consider your equitable share of the damages as 40% each.

I look forward to your prompt response. It is my hope that we are able to reach an amicable resolution of this matter without resorting to court intervention on these issues.

Very truly yours,

Amy C. Grossman

ACG:kpf

cc:    Rene Gonzalez, Esq.
       Joseph T. Walsh, III, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
    **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
    **Defendants**

## EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TAB 18

# TUCKER, HEIFETZ & SALTZMAN, LLP

THREE SCHOOL STREET
BOSTON, MASSACHUSETTS 02108
617-557-9696

RICHARD E. HEIFETZ

FACSIMILE – 617-227-9191
HEIFETZ@THS-LAW.COM

January 12, 2004
VIA FACSIMILE – (617) 439-9556
[2 pages]

Robert A. Fasanella, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA 02110-3319

Re:      Insured:       Kleenit, Inc.
         Locus:        28 Central Square, Chelmsford, MA
                       293-295 Main Street, Acton, MA
         Client:        Graphic Arts Mutual Insurance Company
                       as part of the Utica National Insurance Group

Dear Mr. Fasanella:

   This letter serves as a response on behalf of the Utica National Insurance Group
to your correspondence dated December 24, 2003, which is styled as both a demand
pursuant to M.G.L c. 93A and 176D and a "Settlement Offer."

   By agreement, Utica has consented to payment of proper post-tender defense
costs incurred by Kleenit relative to the Chelmsford and Acton sites. This agreement
was entered into among Kleenit's insurers, Utica, Travelers and Royal. Utica submits
that it has timely paid all post-tender invoices provided by Kleenit with the exception of
those invoices submitted in December 2003 which are under receipt and review.

   Utica acted diligently and in the utmost good faith to see that Kleenit is
reimbursed for its post-tender defense costs incurred relative to the Acton and
Chelmsford sites. As was explained to Mr. Feuerbach in correspondence dated
November 25, 2003, it is the practice among the carriers to have Travelers' Special
Liability Group collect and review Kleenit's invoices and make a recommendation as to
the recoverable amount. After review of the invoices, Travelers notifies the remaining
carriers of the recommended total amount of payment and the pro rata share for which
each insurer is responsible. As soon as Utica receives notice of the suggested amount of
payment, Utica issues payment. Other than those invoices that constitute pre-tender
defense costs, Utica has tendered payment on all invoices submitted by Kleenit for

Robert A. Fasanella, Esq.
January 12, 2004
Page Two

post-tender costs. To the extent that Kleenit claims non-payment on any post-tender invoices, Utica requests that Kleenit identify which post-tender invoices have not been paid. Utica will be happy to check its records to ensure that the payments were properly issued; however, it is Utica's understanding that all such invoices have been paid or are presently under review.

Utica will not, and has not, agreed to pay pre-tender defense costs incurred by Kleenit. As Utica has discussed repeatedly in previous correspondence, Massachusetts law does not require that insurers pay for pre-notice defense costs. This is because no duty to defend can arise before the insurer is on notice of the claim. Accordingly, Kleenit cannot recover its pre-tender costs from Utica. *See Managed Health Care Sys., Inc. v. St. Paul Fire & Marine Insurance Company*, 2001 U.S. Dist. LEXIS 18302, at *6 (D. Mass. 2001) (finding that insurer not liable for pre-notice defense costs under Massachusetts law); *Hoppies Oil Serv., Inc. v. Ins. Co. of N. Am.*, 783 F. Supp. 1505, 1509 (D. Mass. 1992) (holding that "[n]o duty to defend or to participate in a defense can arise before the insurer has notice of the suit against the insured, or at least of the underlying claim and the likelihood of suit."); *See also Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 260 F. Supp. 2d 334, 344 (D. Mass. 2003) (stating "it is unfair to force the insurer, who might have made different choices, to pay for the defense prior to notification of a claim."); *Am. Mut. Liab. Ins. Co. v. Beatrice Cos.*, 924 F. Supp. 861, 874 (N. D. Ill. 1996) (stating that under Massachusetts law, "insurers are not liable for pre-notice defense costs"). Utica stands firm in its position that it is not responsible for Kleenit's pre-tender defense costs.

In light of this uncontroverted case law, Utica asks that you reconsider your intention to file a Declaratory Judgment Action against Utica. Also, Utica requests that you identify which post-tender invoices have not been paid as Utica's understanding is that payment has been rendered on all post-tender invoices.

Very truly yours,

Richard E. Heifetz

Cc:  Karl Vasiloff, Esquire
     Joseph Schmidt, Esquire
     Ms. T. Jill Donan
     Lydia Berez, Esquire

VIA FACSIMILE   781-466-0701
VIA FACSIMILE   860-954-0359
VIA FACSIMILE   860-954-5857
VIA FACSIMILE   315-266-4182