### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 04 10351 NG**

| |
|---|
| **KLEENIT, INC.,**<br>        **Plaintiffs** |
| **v.** |
| **SENTRY INSURANCE COMPANY,**<br>**ROYAL & SUN ALLIANCE, UTICA**<br>**NATIONAL INSURANCE GROUP, and**<br>**TRAVELERS PROPERTY AND**<br>**CASUALTY,**<br>        **Defendants** |

### EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
### IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
### FOR PARTIAL SUMMARY JUDGMENT

# **TAB 19**



*T. Jill Donan*
*Associate Account Executive*
*Special Liability Coverage Unit*

*One Tower Square, 6MS*
*Hartford, CT 06183-6016*
*Phone: (860) 954-5040*
*Fax : (860) 954-5857*
*TDonan@Travelers.com*

*Via Facsimile (617) 439-9556*
*and U.S. Mail*

January 13, 2004

Robert A. Fasanella, Esq.
Rubin and Rudman, LLP
50 Rowes Wharf
Boston, Massachusetts 02110-3319

|  |  |  |
|---|---|---|
| **Policyholder:** | | Kleenit, Inc. ("Kleenit") |
| **Site 1:** | | 28 Central Square and Beaver Brook, Chelmsford, Massachusetts |
| **Re:** | | Massachusetts Department of Environmental Protection's ("MA-DEP") Notice of Responsibility ("NOR") letter dated January 28, 2001 |
| **Site 2:** | | 293 and 295 Main Street, Acton, Massachusetts |
| **Re:** | | Massachusetts Department of Environmental Protection's ("MA-DEP") Notice of Responsibility ("NOR") letter dated December 30, 2002 |

Dear Mr. Fasanella:

I am in receipt of your December 24, 2003 correspondence, which was addressed to Ms. Catherine L. Kozyra of Travelers Special Liability Group-Home Office Environmental Claims Unit ("SLG-HOECU"). As I have explained, both to you and Mr. Nagle, in earlier correspondence, I am a member of Travelers Special Liability Coverage Unit ("SLCU"). The SLG-HOECU is responsible for the review and payment of defense bills, while the SLCU is responsible for determining Travelers defense and/or indemnity coverage obligations, if any. Therefore, to the extent your December 24, 2003 correspondence contained a Settlement Offer (as the RE: line of your letter indicates) your letter should have been sent to the SLCU. Further, as Karl Vasiloff of Royal indicated to you by way of his December 29, 2003 letter, it is not evident by your correspondence whether a "Settlement Offer" is actually contained in your letter. I would appreciate clarification.

That said, please be reminded that it remains Travelers position that in accordance with Massachusetts law, Travelers has no obligation to contribute towards Kleenit's pre tender defense costs.

Robert A. Fasanella, Esq.
January 13, 2004
Page 2

Pending resolution of the coverage issues raised by these matters, Travelers continues to fully reserve its rights in these matters as more fully detailed in the SLCU's previous correspondence. Neither this correspondence nor any future communication or investigation should be deemed or construed as an admission that coverage is available for these matters, or as a waiver of any right or defense to coverage available to Travelers (whether under its contracts of insurance, or at law or in equity), or as an expansion of any duties which may be subsequently acknowledged by Travelers.

Please contact me at the direct dial number above if you have any questions regarding this letter. If it is more convenient, you may leave a message for me at our toll-free number (1-800-954-9633) and I will return your call as soon as possible. If I am unavailable at the time of your telephone call, you may contact Mr. Brian Temte at (860) 954-4893 for assistance.

Sincerely,

T. Jill Donan
Associate Account Executive

tjd672

cc:    Catherine Kozyra, SLG-HOECU, 5 MS
       File No.: ANU2983 – Chelmsford
       File No.: ANU3053 – Acton

       Joseph Schmitt, Esq., ELG, 6 MS

       Donald P. Nagle, Esq.
       5 Main Street Extension, Suite 300
       Plymouth, Massachusetts 02360
       *Via Facsimile (508) 732-8971
       and U.S. Mail*

       Karl Vasiloff, Esq.
       *Via Facsimile (781) 466-0701*

       Richard Heifetz, Esq.
       *Via Facsimile (617) 227-9191*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
    **Plaintiffs**

v.

**SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,**
    **Defendants**

## EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TAB 20

# RUBIN and RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

January 8, 2003

<u>CERTIFIED MAIL NO. 7099 3400 0018 4006 7895</u>
RETURN RECEIPT REQUESTED

Kevin S. Keyes
Environmental Claim Department
Royal & Sunalliance
9140 Arrowpoint Blvd., Suite 440
Charlotte, NC 28273

## Demand Letter under MGL C. 93A and 176D

Re:  **Insured:**        **Kleenit, Inc. (a.k.a. Sudz-It; Duds Cleaners & Care Cleaners)**
      **Location:**       **28 Central Square, Chelmsford, MA**
      **Claimant:**       **MADEP**
      **Type of Loss:**   **Alleged release of hazardous materials**
      **Your File No.**   **0650008155**

Dear Mr. Keyes:

As you know from our previous letters in September and November 2002, this firm represents your former insured, Kleenit, Inc. ("Kleenit") with respect to the above referenced matter. On behalf of Kleenit and in accordance with M.G.L. c. 93A, §11 and M.G.L. c. 176D, we hereby demand immediate defense and coverage under the policies for this matter. Because Royal has failed over the past three months to even acknowledge the existence of the policies, let alone confirm defense and coverage, if you fail before January 17, 2003 to either (1) enter into a tolling and standstill agreement to stay time limitations, if any, to bring an action against Royal seeking coverage with respect to this matter, or (2) confirm that defense and coverage will be provided to Kleenit in this matter, Kleenit will be forced take steps to establish and protect its legal rights, which will likely include filing a declaratory judgment action to determine Royal's legal obligations to Kleenit. If we are required to file such a lawsuit and establish a duty of defense or coverage, we will seek and be entitled to multiple damages and attorney's fees in accordance with M.G.L. c. 93A and 176D based upon, inter alia, Royal's unfair, bad faith and/or deceptive practices relative to its investigation and claims settlement of Kleenit's claims.

536156_1

RUBIN AND RUDMAN LLP

Kevin S. Keyes
January 8, 2003
Page 2

As you are aware, on September 25, 2002 we provided you with specific and detailed information concerning the claim, the factual and legal basis for defense and indemnification, and Kleenit's policies, including policy numbers, coverage dates, contemporaneous company documents identifying and describing the policies, a copy of a specimen policy from the relevant coverage periods. The Appeals Court has determined that this evidence is more than sufficient to establish the existence and contents of the policies. See, e.g., Rubenstein v. Royal Ins. Co. of America, 44 Mass.App.Ct. 842, 846-847 (1998) (lost or destroyed policy proved through documents and testimony on, inter alia, the purchase of the policy, a schedule of insurance showing policy numbers and dates, and specimen forms of policies.) Kleenit has placed the loss within the insuring clause, and the burden is on you to prove that the cause of the claim is not covered as a result of particular exclusions within the policies or otherwise. Murray v. Continental Ins. Co., 313 Mass. 557 (1943).

On November 26, 2002, at your request, we also provided to you voluminous documents and reports substantiating the claim. Rubin and Rudman also responded to the litany of purported defenses to coverage that you had raised, including specific case citations negating your purported defenses. We believe that you have failed to demonstrate that there are valid, good faith defenses to Kleenit's claim.

Because more than 100 days have elapsed without Royal confirming that it will provide a defense in this instance, Royal has forfeited its opportunity to select counsel of its choice and Kleenit has therefore selected this firm to represent and defend it in this matter.

Based upon the foregoing, we demand that Royal inform us on or before January 17, 2003 whether it will enter into a tolling and standstill agreement or provide defense and indemnification under the Policy. If you fail to agree to one of those steps, Kleenit may file a lawsuit to establish your defense and coverage obligations and seek multiple damages and attorney's fees under M.G.L. c.93A and c.176D. Please contact us with your response.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

PJF/ees
cc:    Keith Crider, Kleenit, Inc.

536156_1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
    **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
    **Defendants**

## EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TAB 21

DONALD P. NAGLE, PC

ATTORNEY AT LAW
5 MAIN STREET EXTENSION, SUITE 300
PLYMOUTH, MASSACHUSETTS 02360
TEL: 508-732-8970  FAX: 508-732-8971

July 11, 2003

BY FAX AND FIRST CLASS MAIL

T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit
Travelers
One Tower Square, 6 MS
Hartford, Connecticut 06183 6016

Re:    Kleenit, Inc. ("Kleenit")
       28 Central Square Beaver Brook, Chelmsford, Massachusetts
       293 and 295 Main Street, Acton, Massachusetts

Dear Ms. Donan:

This is in response to your June 12, 2003 letter. Rather than directly responding to my correspondence of May 12, 2003, your response rehashes the position set forth in your April 16, 2003 letter, which I have already indicated to you is not supported by established case law. I called you on June 19, 2003 to clarify your apparent misunderstanding of Kleenit's position regarding defense coverage.

I now seek to reinforce the clarity of our position and to notify you of Kleenit's intention to take further action absent a prompt and reasonable offer of defense coverage from Travelers.

Kleenit seeks 100% coverage of defense costs from Travelers. I encourage you to contact the other carriers regarding an allocation agreement. Travelers' offer of 13.66% of these costs, based on its alleged pro-rata share of post-tender costs is unreasonable and not in compliance with established law, as discussed in my May 12, 2003 letter.

You should also understand from my communications that defense costs properly include pre-tender costs and are not based on your purported "time on the risk" scheme. Furthermore, your proposal arbitrarily excludes pre-tender costs without even alleging prejudice.

You are apparently puzzled by my accurate characterization of Travelers' absurdly low offer to pay 0.3% of Klennit's defense costs. As I explained to you in my May 12, 2003 letter, Catherine L. Cozyra of Travelers proposes in her April 24, 2003 correspondence to appointed defense counsel Attorneys Fasanella and Feurbach of Rubin

DONALD P. NAGLE, PC

T. Jill Donan
July 11, 2003
Page 2

and Rudman, LLP ("R&R") that Travelers pay Kleenit $233.10 in defense costs. This number is 0.3% of $87,248.18, which is the defense costs presented by R&R in its March 11, 2003 correspondence to all the carriers. For your information, 0.3% is rounded up from 0.002672, which is about one quarter of one percent of the defense costs presented by Kleenit. No court would view this offer as reasonable.

Ms. Cozyra apparently comes up with this number based on your proposed 13.66% pro rata share, which I have already indicated is not an acceptable. Ms. Cozyra also justifies her miniscule offer of defense costs by stating that deductions were made for costs "incurred prior to the date on which these matters were tendered" and that the deducted costs also "included work performed in relation to site clean-up."

Neither you nor Ms. Cozyra provide any explanation whatsoever why Travelers is excused from paying pre-tender costs or costs allegedly incurred in relation to cleanup. Your assumption that the costs presented by R&R include costs related to indemnity is wrong. Only reasonable defense costs are included, which includes the costs of assessment necessary to properly defend Kleenit against government agency claims. Travelers has an obligation to pay assessment costs as part of its duty to defend under the policy. *See* Preferred Mutual Insurance Company v. Bernard L. Gordon and Esther S. Gordon, WL 21077026, Civil Action No. 02-3147, Mass.Super., May 13, 2003 (Duty to defend extends to assessment costs); *Also see* Wasserman v. Commerce Insurance Co., 15 Mass.L.Rptr. 170, 2002 WL 31187681, Mass.Super., Jul 09, 2002 No. 0619(B), July 9, 2002.

Your June 12, 2003 letter purports that the reason Travelers has denied pre-tender costs is not due to alleged late notice, but to alleged violation of the voluntary payment provisions of the policy. I do not understand why you insist on maintaining this argument when both R&R and I have already revealed the flaws in your assertion. As explained in my last correspondence to you, violation of the voluntary payment provisions requires the insurer to make an affirmative demonstration of prejudice. Atlas Tack Corp. v. Liberty Mutual Ins. Co., 48 Mass.App.Ct. 378, 383 (1999); Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980) and M.G.L. c.75, §112.

You also know from R&R's March 11, 2003 letter to all the carriers that your assertion that Travelers is not obligated to pay defense costs incurred by Kleenit prior to tendering its claims in September 2002 is legally incorrect. R&R explained in this letter that reliance on Augat, Inc. vs. Liberty Mutual Insurance Co., 410 Mass. 117 (1991) is misplaced, and that case does not relieve Travelers obligations to Kleenit. Augat does not stand for the proposition that an insurer is free of liability under a policy, without having to show prejudice, if an insured makes a voluntary payment.

DONALD P. NAGLE, PC

T. Jill Donan
July 11, 2003
Page 3

Without apparently reading or understanding R&R's March 11, 2003 letter, you continue to cite the Augat case, which you should know does not support your failure to pay pre-tender costs. Subsequent to Augat, the Appeals Court ruled that reliance on such an argument is "fallacious." See Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465, 480 (1997). "[T]he general rule is that the insured's noncompliance with a voluntary payment clause does not discharge the insurer's contractual duty unless the insurer demonstrates actual prejudice. . . ." Atlas Tack Corp. v. Liberty Mut. Ins. Co., 48 Mass. App. Ct. 378, 383 (1999), citing Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305-306 (1994) and Employers' Liability Assur. Corp., supra (Emphasis added). In this case, you have failed to even allege prejudice, let alone demonstrate actual prejudice.

In Augat, contrary to the actions taken on behalf of Kleenit, the insured engaged in extensive settlement discussions with government regulators, without the knowledge or permission of its insurer, agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cleanup cost, and paid a portion of that cost. As explained in R&R's March 11, 2003 letter, Kleenit merely conducted assessment activities without engaging in or obligating itself to perform costly cleanup except for limited costs to remove discrete contamination in the Chelmsford matter to mitigate its potential damages to other third-party claimants. In addition, Kleenit has not engaged in formal settlement discussions with any government agencies, agreed to pay any settlement amount, nor entered into any consent orders, as did the insured in Augat. As a result, the extremely reasonable measures that Kleenit undertook prior to September 2002 to defend itself and/or mitigate potential damages have not caused any prejudice or deprived Travelers any opportunity to protect their respective interests.

I am confused as to why you are directing me to Ms. Kozyra regarding "adjustments and payment of defense costs" when your letter is replete with attempts to support the proffered payment of $233.10 of the $87,248.18 in defense costs presented by R&R. I have not heard from Ms. Kozyra in response to my May 12, 2003 letter, which you said you would forward to her. I have provided her a copy of this letter directly and invite either of your responses.

Kleenit hereby reiterates its demand that Travelers pay 100% of defense costs individually or jointly with the other carriers. As I indicated to you on the phone, other carriers have contacted R&R and are prepared to negotiate allocation of defense costs. I encourage you to contact these carriers and participate in such discussions.

DONALD P. NAGLE, PC

T. Jill Donan
July 11, 2003
Page 4

Contrary to your assertions, thus far Travelers has failed to adequately and fairly address its responsibilities under the one or more policies and may be subject to liability under G.L. c. 93A and G.L. 176D for its unfair and deceptive act or practices due to its failure to pay reasonable defense costs. Legal action seeking a declaratory judgment under these and other provisions is imminent. Travelers can avoid litigation and assessment of attorneys fees and costs by immediately agreeing to pay reasonable defense costs consistent with R&R's March 11, 2003 statement of costs.

Very truly yours,

Donald P. Nagle

cc: Keith Crider, Kleenit, Inc.
Robert A. Fasanella, Esq.
Peter J. Feuerbach, Esq.
Catherine L. Kozyra

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
        Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
        Defendants

**EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

# TAB 22

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

## CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

March 11, 2003

Michael F. Aylward, Esquire
Morrison, Mahoney and Miller
250 Summer Street
Boston, MA 02210
(for Sentry)

Karl A. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason & Gette LLP
950 Winter Street - Suite 1300
Waltham, MA 02451
(for Royal)

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA 02110
(for Graphic Arts/Utica)

T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit
Travelers
Three Farm Glen Boulevard
Farmington, CT 06032-1970

RE:    Kleenit, Inc. - Acton and Chelmsford Sites, Massachusetts

Dear Counsel:

This letter is to further our discussions on insurance coverage pertaining to the Notices of Responsibility and alleged releases of oil and hazardous materials at the sites operated by Kleenit, Inc. in Acton and Chelmsford, Massachusetts. We have enclosed a chart summarizing Kleenit's expert costs and expenses through January 2003, and attorneys' fees through February, 2003, along with copies of the invoices and checks. As you can see, for the present purposes of identifying defense costs, we have deducted from Kleenit's total payments the amounts attributable to the presentment of its insurance claims and the amounts attributable to indemnification, which relate principally to the removal of some contaminated material from the Chelmsford site. Although presentment and indemnification costs are not included in the present analysis, Kleenit reserves its rights to pursue payment of them in the future.

Kleenit's defense-related costs pertain to assessment and investigation activities in response to the NORs and the releases and, therefore, should be reimbursed promptly by the insurance companies. As you can see in the proposed Joint Defense and Insurance Defense Agreement that is enclosed herewith, we propose a cost sharing arrangement whereby your clients would pay Kleenit's defense costs on a pro rata basis. That approach was adopted in Rubenstein v. Royal Ins. Co. of America, 45 Mass App Ct. 244, 247 (1998), rev. den. 428 Mass.

543600_1

RUBIN AND RUDMAN LLP

**CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE**

Michael F. Aylward, Esquire, et al.
March 11, 2003
Page 2


1105 (1998) ("Requiring [one insured] to pay its pro rata share of the defense costs advanced by [another insurer] will deter insurers from stonewalling their defense obligations while other insurers are forced to shoulder more than their share involving the shared risk.")

In response to coverage defenses that have been raised, your clients would be wrong to assert that they are not obligated to pay defense costs incurred by Kleenit prior to tendering its claims in September 2002. Reliance on Augat, Inc. vs. Liberty Mutual Insurance Co., 410 Mass. 117 (1991) is misplaced, and that case does not relieve the insurance companies of their obligations with regard to Kleenit. Augat does not stand for the proposition that an insurer is free of liability under a policy, without having to show prejudice, if an insured makes a voluntary payment. In fact, subsequent to Augat, the Appeals Court ruled that such an argument is "fallacious." See Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465, 480 (1997). "[T]he general rule is that the insured's noncompliance with a voluntary payment clause does not discharge the insurer's contractual duty unless the insurer demonstrates actual prejudice. . . ." Atlas Tack Corp. v. Liberty Mut. Ins. Co., 48 Mass. App. Ct. 378, 383 (1999), citing Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305-306 (1994) and Employers' Liability Assur. Corp., supra.

We also note that in Augat, unlike in Kleenit's matters, the insured, without the knowledge or permission of its insurer, engaged in extensive settlement discussions with government regulators, agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cleanup cost, and paid a portion of that cost. In Kleenit's case, it has merely conducted assessment activities without engaging in or obligating itself to perform costly cleanup except for limited costs to remove discrete contamination in the Chelmsford matter to mitigate its potential damages to other third-party claimants, as discussed above. In addition, Kleenit has not engaged in formal settlement discussions, agreed to pay any settlement amount nor entered into any consent orders. As a result, the extremely reasonable measures that Kleenit undertook prior to September 2002 to defend itself and/or mitigate potential damages have not caused any prejudice or deprived the insurance companies of any opportunity to protect their respective interests.

An insurer cannot merely assert prejudice, but instead must demonstrate specific and material prejudice:

[T]he prejudice shown, to relieve the insurer, must have been **material and specific**. The insurer is challenged to show that it suffered 'actual prejudice,' not just a 'possibility' of it; that there has been '**actual harm**' to its interests; that it has been relegated to a 'substantially less favorable position than it would have been in had timely notice been provided.' Further, the insurer has 'the burden of identifying the precise manner in which its interests have suffered.'

543600_1

RUBIN AND RUDMAN LLP

CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

Michael F. Aylward, Esquire, et al.
March 11, 2003
Page 3

Employers' Liability Assur. Corp., Ltd., 43 Mass. App. Ct. at 476, citing Darcy v. Hartford Ins. Co., 407 Mass. 481, 486-487 (1990).

In the present matters, despite several months of investigations, the insurance companies have failed to assert, let alone demonstrate, specific and material prejudice caused by Kleenit's actions. However, the companies have at the same time attempted to deny Kleenit's costs incurred prior to September 2002. The insurance companies should reconsider their wrongly held positions and agree to pay such defense costs in light of their clear obligations under Massachusetts law.

In view of Kleenit's ongoing, extensive defense at the two separate sites, and in view of the financial burden it is suffering as a result, the insurance companies should promptly agree to pay the defense costs enumerated in the enclosed documents and agree to the insurance Defense Cost Sharing Agreement proposed herein.

Under separate cover we will provide you with status reports concerning activities at the two sites, along with information on future defense costs as they are incurred.

Please feel free to contact us if you have any questions concerning these enclosures or matters. Thank you for your assistance and consideration.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

PJF/ees
Enclosures
cc:    Keith Crider, Kleenit, Inc. (w/encls.)
       Jonathan P. Metz, Travelers SLG-HOECU (w/encls.)

543600_1

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE

RUBIN RUDMAN

KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
JANUARY 2001 TO FEBRUARY 2003

| PAYEE | TOTAL AMOUNT OF PAYMENT | CLAIM PRESENTMENT AMOUNT | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT |
|---|---|---|---|---|
| Rubin and Rudman LLP | $44,681.73 | $28,298.11 | $16,383.62 | 0 |
| Donald Nagle P.C. | $1,500.00 | $1,500.00 | 0 | 0 |
| Harry Nason, Inc. | $4,387.18 | $3,509.74 | $877.44 | 0 |
| R.G. Construction | $5,505.72 | 0 | $5,505.72 | 0 |
| Waste Management | $2,930.84 | 0 | 0 | $2,930.84 |
|  | $3,000.00 | 0 | 0 | $3,000.00 |
|  | $3,000.00 | 0 | 0 | $3,000.00 |
| Regenisis | $3,164.40 | 0 | 0 | $3,164.40 |
| Enviro-Safe Corp. | $1,658.00 | 0 | 0 | $1,658.00 |
|  | $1,500.00 | 0 | 0 | $1,500.00 |
|  | $952.00 | 0 | 0 | $ 952.00 |

1

538758_2

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE

RUBIN RUDMAN

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO FEBRUARY 2003

| PAYEE | TOTAL AMOUNT OF PAYMENT | CLAIM PRESENTMENT AMOUNT | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT |
|---|---|---|---|---|
| D'Amore Associates, Inc. | $1,650.00 | 0 | $1,650.00 | 0 |
| | $1,628.00 | 0 | $1,628.00 | 0 |
| | $ 300.00 | 0 | $ 300.00 | 0 |
| | $300.00 | 0 | $ 300.00 | 0 |
| | $463.50 | 0 | $ 463.50 | 0 |
| | $2,450.00 | 0 | $2,450.00 | 0 |
| | $1,000.00 | 0 | $1,000.00 | 0 |
| | $1,000.00 | 0 | $1,000.00 | 0 |
| | $2,025.00 | 0 | $2,025.00 | 0 |
| | $1,612.50 | 0 | $1,612.50 | 0 |
| | $1,500.00 | 0 | $ 750.00 | $750.00 |
| | $1,884.88 | 0 | $1,884.88 | 0 |
| | $2,000.00 | 0 | $ 950.00 | $1,050.00 |
| | $2,351.54 | 0 | $2,351.54 | 0 |
| | $337.50 | 0 | $ 337.50 | 0 |
| | $3,150.00 | 0 | $3,150.00 | 0 |
| | $953.00 | 0 | $ 953.00 | 0 |
| | $3,354.00 | 0 | $3,354.00 | 0 |
| | $1,500.00 | 0 | $1,500.00 | 0 |
| | $1,800.00 | 0 | $1,800.00 | 0 |
| | $1,050.00 | 0 | $1,050.00 | 0 |
| | $750.00 | 0 | $ 750.00 | 0 |
| | $600.00 | 0 | $ 600.00 | 0 |
| | $2,054.00 | 0 | $2,054.00 | 0 |
| | $300.00 | 0 | $ 300.00 | 0 |

2

538758_2

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE

RUBIN RUDMAN

KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
JANUARY 2001 TO FEBRUARY 2003

| PAYEE | TOTAL AMOUNT OF PAYMENT | CLAIM PRESENTMENT AMOUNT | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT |
|---|---|---|---|---|
| D'Amore Associates, Inc. (continued) | $300.00 | 0 | $ 300.00 | 0 |
| Coler & Colantonio, Inc. | $3,000.00 | 0 | $3,000.00 | 0 |
|  | $2,000.00 | 0 | $2,000.00 | 0 |
|  | $13,523.23 | 0 | $13,523.23 | 0 |
|  | $5,000.00 (Estimate of future site assessment costs) | 0 | $5,000.00 | 0 |
| Risk Management Inc. | $1,500.00 | 0 | $1,500.00 | 0 |
|  | $1,245.65 | 0 | $1,245.65 | 0 |
|  | $198.60 | 0 | $ 198.60 | 0 |
| Commonwealth of Massachusetts. | $3,500.00 | 0 | $3,500.00 | 0 |
| TOTAL | $138,561.27 | $33,307.85 | $87,248.18 | $18,005.24 |

3

538758_2

DRAFT

PRIVILEGED & CONFIDENTIAL

## JOINT DEFENSE AND INSURANCE DEFENSE AGREEMENT

THIS AGREEMENT is made by and between Kleenit, Inc., a Massachusetts corporation having its principal place of business at 44 Park Street, Ayer, Massachusetts 01433 (hereinafter "Kleenit"), and the following insurance companies and their affiliates, subsidiaries and parents and respective successors and assigns (hereinafter referred to collectively as "the Companies"): Graphic Arts Mutual Insurance Company as part of the Utica National Insurance Group, a New York corporation having its principal place of business at Utica, New Hartford, New York ("Utica"); Royal Insurance Company of America, an Illinois corporation having its principal place of business in Illinois ("Royal"); Sentry Insurance, a Wisconsin corporation having its principal place of business at 1800 North Point Drive in Stevens Point, Wisconsin ("Sentry"); the Travelers Indemnity Company, Travelers Casualty and Surety Company and their subsidiaries, parents and affiliates, a Connecticut corporation having its principal place of business at Three Farm Glen Boulevard, Farmington, Connecticut ( "Travelers") (Kleenit and the Companies hereinafter referred to collectively as "the Parties").

WHEREAS, Kleenit owns and operates dry cleaning businesses on land located at 28 Central Square, Chelmsford, Massachusetts and 293 and 295 Main Street, Acton, Massachusetts (collectively "the Sites").

WHEREAS, the Massachusetts Department of Environmental Protection ("DEP") has issued Notices of Responsibility ("NORs") to Kleenit asserting that there were releases ("Releases") of oil and hazardous materials at the Sites and requiring Kleenit to take response actions to address the Releases in accordance with M.G.L. c.21E and the Massachusetts Contingency Plan, 310 CMR 40.0000 ("MCP").

WHEREAS, the Companies have agreed under reservations of rights to provide and pay for Kleenit's defense pertaining to the Releases and NORs (hereinafter referred to collectively as "the Matters").

WHEREAS, the Companies have agreed that the law firm of Rubin and Rudman LLP, 50 Rowes Wharf, Boston, Massachusetts (hereinafter "Firm") shall provide the defense of Kleenit with respect to the Matters in accordance with the terms and conditions set forth herein.

WHEREAS, the Companies, collectively or individually, and Kleenit and/or the Firm may engage in discussions with respect to the investigation, defense and coverage of the Matters, Releases and NORs.

WHEREAS, the undersigned counsel for the Parties ("Counsel" or "Counsel member"), on behalf of their respective clients ("Clients" or "Client" or "Client member"), desire to enter into a joint defense agreement, so-called, relating to all pending or future inquiries, investigations, and administrative or civil proceedings arising from or relating to the Matters.

PRIVILEGED & CONFIDENTIAL

NOW, THEREFORE, for adequate consideration, the receipt and sufficiency of which are hereby acknowledged, the Companies and Kleenit agree as follows:

## A.    Joint Defense Agreement

### 1.    Background

The nature of the Matters, and the relationship among the Clients, make it likely that there are and will be legal and factual issues common to the Clients, thus warranting joint effort in preparation of a potential common defense. It is the desire and purpose of the Clients that every lawful, ethical and proper step be taken to assure that they and their respective Counsel may share and exchange strategies, legal theories, confidences, information and documents which may be useful in each Counsel's preparation of the case. Accordingly, Clients and Counsel have undertaken to permit such exchanges and sharing in furtherance of a joint defense pursuant to the provisions of this joint defense agreement.

### 2.    Maintenance of Privilege

In order to avoid any suggestion that privileged communications have been waived, Counsel and Clients agree that communications among Counsel, and joint interviews of the Clients or other prospective witnesses, are confidential and are protected from disclosure to any third party by their Clients' attorney-client and work product privileges. It also is believed that, from time to time, the mutual interests of their respective Clients will be best served by sharing legal research and analyses, defense strategies, documents, factual material, mental impressions, memoranda, interviews, reports and other information, including the confidences of their Clients (hereinafter referred to collectively as "Defense Materials"). Some or all of the Defense Materials may be privileged from disclosure to adverse or third parties as a result of the attorney-client privilege or the attorney work product privilege, or other applicable privileges. By exchanging or disclosing Defense Materials under this Agreement, Counsel and their Clients do not intend to, and do not, waive or diminish in any way the confidentiality of such materials or any privilege attaching thereto. Counsel specifically agree to preserve and to invoke in all further proceedings of whatever kind relating to the Matters, to the fullest extent possible, the work product and attorney-client privileges, the protections of the joint defense doctrine, statutory protections and all other applicable rights and privileges to protect Defense Materials disclosed pursuant to this Agreement.

### 3.    Consents and Other Rights

Counsel have further agreed that neither they nor their Clients will voluntarily disclose Defense Materials received from each other, or the contents thereof, to anyone except their respective Clients, attorneys within their firms, their employees or agents unless they have first obtained the written consent of Counsel to the party from whom the materials were obtained. Counsel reserve the right to place further restrictions on the disclosure of specific items of confidential information under this Agreement. Counsel also recognize that any party to this Agreement may choose not to share with other parties information known to him or his Counsel. The failure of any Counsel or Client to disclose such information to other Counsel or Clients shall not in any way affect the binding effect of this Agreement or the application of its terms. This

PRIVILEGED & CONFIDENTIAL

Agreement shall only restrict Counsel or their Clients from using or disclosing materials that it or they received from each other and which they did not, or could not, have otherwise independently obtained.

### 4.    Use of Defense Materials

Defense Materials that are shared, and the information contained therein, are to be used solely by Counsel, their Clients, employees or agents in connection with the Matters and all pending or future inquiries, investigations, and administrative or civil proceedings arising from or relating to the Matters. Upon demand, Counsel receiving Defense Materials agree to return the original and any copy(ies) to the disclosing party. Counsel further agree that they and their Clients will use their best efforts to ensure that the confidentiality of Defense Materials is maintained at all times and that no disclosure is made that would result in a waiver or loss of any privilege, protection or confidentiality right otherwise available. Specifically, in the event that any Counsel or Client receives a subpoena or any form of discovery request from any person (including other parties to this Agreement) that requires the disclosure of Defense Materials, such Counsel shall immediately notify all Counsel who are parties to this Agreement of that fact and shall not voluntarily surrender any Defense Materials without permitting all affected Counsel an opportunity to protect their respective interests by motion in an appropriate court or by other means.

### 5.    Changed Circumstances

Each Client to this Agreement will notify all parties to this Agreement if he/she/it enters into any agreement with the United States of America or the Commonwealth of Massachusetts or any department or agency or political subdivision thereof that may make his/her/its interests adverse to any other Client to this Agreement. Said notice shall be provided within two business days after entering into any such agreement. After giving such notice, that Client shall withdraw from the Agreement if requested to do so by any other Client to this Agreement.

### 6.    Limitation of Duties and Conflicts

Each Client member of this Agreement understands and acknowledges that they are represented only by their own Counsel in this matter, and that while the Counsel representing the other Client members of this Agreement have a duty to preserve the confidences disclosed to them pursuant to this Agreement, each Counsel will be acting only as the attorney for their respective Client and will owe a duty of loyalty only to their own Client. Each Client member also knowingly and intelligently waives any conflict of interest that may arise from another Counsel member of this Agreement, other than their own Counsel, examining them at any proceeding.

### 7.    Injunctive Relief

Counsel acknowledge on behalf of their Clients that disclosure of any communication or Defense Materials in violation of this Agreement will cause the parties hereto to suffer irreparable harm for which there is no adequate legal remedy. Each party hereto acknowledges that immediate injunctive relief is an appropriate and necessary remedy for violation of this Agreement.

PRIVILEGED & CONFIDENTIAL

8.    Continuance of Agreement

This Agreement shall continue in effect notwithstanding any conclusion or resolution as to any party hereto of the Matters or any pending or future inquiry, investigation, and administrative or civil proceedings arising from or relating to it. Counsel agree that they and their Clients will continue to be bound by this Agreement following any such conclusion or resolution.

9.    Non-Waiver

Any waiver in any particular instance of the rights and limitations contained herein shall not be deemed, and is not intended to be, a general waiver of any rights or limitations contained herein and shall not operate as a wavier beyond the particular instance.

10.    Explanation and Modification

By executing this Agreement, Counsel for each Client represents that he or she has advised his or her Client fully concerning the advantages and disadvantages of a joint defense agreement. It has been explained to each Client, and each Client understands, that in the event that the Client should at some point become a witness at a trial relating to the subject matter of this Agreement, that the Counsel for other Clients party to this Agreement who are litigants in the case would have information that had been shared pursuant to this Agreement available to use to support cross-examination of the testifying witness. Such information may include statements of confidences the testifying witnesses shared with his or her Counsel. In entering into this Agreement, each party knowingly and intelligently waives any objection that might otherwise be available to him or her to being cross-examined by Counsel for another Client party to this Agreement using information that has been shared pursuant to this Agreement. In waiving such objection, each Client specifically is aware of the fact that this Agreement does not require it (or him or her) to share any particular information and that it will be the option of the Client's Counsel, acting upon the Client's authority, to contribute or withhold any particular information from the other parties to this Agreement. In executing this Agreement, each Client preserves and specifically does not waive any rights, claims or defenses that it has or may have against another Client in any action, claim or lawsuit by or between the Clients. Any modifications to this Agreement must be in writing and signed by all parties.

11.    Application of Agreement

This Agreement also confirms that, to the extent that Counsel have already been in communication with one another since the commencement of the Matters, their communications and work product are subject to the joint defense privilege and now are subject to this written Agreement.

B.    **Insurance Defense Agreement**

1.    The Companies agree to pay on a pro rata basis the reasonable and necessary defense-related counsel and consultant fees, costs and expenses (hereinafter referred to collectively as "the Defense Costs") pertaining to the Matters that are incurred by the Firm or consultants it retains in

)

PRIVILEGED & CONFIDENTIAL

defense of the Matters, which consultants are subject to the approval of the Companies, whose approval shall not be unreasonably withheld. Without limiting the individual or the type or scope of work of the consultants that may be retained hereunder, the Companies hereby acknowledge and approve the Firm's engagement of Coler & Colantonio, Inc., Risk Management, Inc., D'Amore Associates, Inc., and R.G. Construction, Inc., among other consultants and experts that the Firm may determine to be necessary for the defense of the Matters. The Companies agree to pay the following Defense Costs including but not limited to the following:

a.    Defending the subject matter of the NORs and the assertions and claims contained therein.

b.    Site studies, investigations and assessments including field work, test pits, installation, sampling and/or analysis of soil, groundwater, sediment, air and monitoring wells, borings and points, and preparation and submission of reports and plans.

c.    Meetings and discussions with DEP, other potentially responsible parties, potentially affected third parties, and counsel and consultants.

d.    Filing fees and compliance fees.

e.    Administrative, adjudicatory and litigation fees, expenses and costs.

f.    Response to and defense of third-party claims, demands, actions, proceedings or lawsuits arising out of or related to the Matters.

g.    Any other costs, fees or expenses related to the defense of the Matters.

2.    The Companies agree to pay as aforesaid all Defense Costs until the Matters are resolved. Defense Costs shall include hourly time charges and out-of-pocket expenses of the Firm, and those fees, out-of-pocket expenses, and expert consultant or witness fees, if any.

3.    The Companies agree to pay as aforesaid the legal services performed by the Firm for Kleenit at the following rates in general:

| | |
|---|---|
| Robert A. Fasanella, Partner | $250.00/hour |
| Peter J. Feuerbach, Partner | $235.00/hour |
| Senior Associates | $195.00/hour |
| Associates | $190.00/hour |
| Paralegals | $100.00/hour |
| Law Clerks | $75.00/hour |

PRIVILEGED & CONFIDENTIAL

The Companies agree that the Firm may increase the hourly rate specified within this Agreement on an annual basis based on standard Firm practices, at which time the Companies will receive written confirmation of any hourly rate changes.

4.    The Firm's hourly time charges pertaining to the Matters may include, but are not limited to: reviewing documents and other materials; on-site inspections; legal research; opinions and memoranda for Kleenit or the Companies; meetings and hearings; preparation time; drafting of correspondence and other documents; travel time and expenses; telephone and office conferences; discovery; motions filed in DEP or in other regulatory agencies or court; and, DEP or other administrative or court hearings and adjudicatory or trial sessions.

5.    The Companies agree to pay for all out-of-pocket disbursements incurred in connection with the Matters. Costs and expenses shall be charged at the following rates:

| | | |
|---|---|---|
| A. | Mileage | $0.36/mile |
| B. | Copying | $0.15/page |
| C. | Facsimile | $2.00 per 1st page of single transmission and $1 per page thereafter |
| D. | Other Expenses: | Actual cost (toll phone calls, postage, exhibits, witness fees, investigations, stenographers, transcripts, travel, filing fees, service fees). |

6.    The Firm will bill the Companies monthly or after major events within the case that require significant time. Each bill shall enumerate legal services rendered on a daily basis, by whom, and the time spent on each work item. Bills are due and payable upon receipt. The Companies will issue checks for such bills payable to the Firm, "Rubin and Rudman LLP" or to any other consultant, expert or agent retained by Kleenit for defense as provided in this Agreement. Failure to pay bills within thirty (30) days of receipt of such invoices shall entitle the Firm to charge interest at 1.5% per month. In any collection action to seek payment of past invoices, the Companies agree that the Firm can likewise seek necessary costs and attorneys fees in any such action.

## C.    General Terms

### 1.    Persons Bound

The terms of this Agreement shall be binding upon the Parties, their parent companies, subsidiaries, affiliates, officers, employees, agents, contractors, attorneys, successors, and assigns.

### 2.    Authorization

The Parties and persons signing this Agreement represent and warrant that this Agreement has been duly executed and delivered on its behalf by a person with the authority to act on its behalf and to bind it and all who may claim through it to the terms and conditions of this Agreement.

PRIVILEGED & CONFIDENTIAL

3.    Counterparts

This Agreement may be signed in any number of counterparts and each signed counterpart shall be deemed an original hereof.

This Agreement shall be dated as of _____, 2003.

_____
Robert A. Fasanella, Esq.
Rubin and Rudman LLP
Counsel for Kleenit, Inc.

_____
Michael F. Alyward, Esq.
Morrisson, Mahoney and Miller, LLP
Counsel for Sentry Insurance

_____
Karl A. Vasiloff, Esq.
Zelle, Hoffman, Voelbel, Mason & Gette LLP
Counsel for Royal Insurance Company

_____
Richard E. Heifetz, Esq.
Tucker, Heifetz & Saltzman LLP
Counsel for Graphics Arts Mutual Insurance Company as part of the Utica National Insurance Group

_____
T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit
Travelers

DRAFT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
      **Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
      **Defendants**

**EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

# TAB 23

# RUBIN AND RUDMAN LLP.

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

November 8, 2002

<u>CERTIFIED MAIL NO. 7099 3400 0021 4886 0591</u>
<u>RETURN RECEIPT REQUESTED</u>

Kevin S. Keyes
Environmental Claim Department
Royal & Sunalliance
9140 Arrowpoint Blvd.
Suite 440
Charlotte, NC  28273

Re:    Insured:        **Kleenit, Inc. (a.k.a. Sudz-It; Duds Cleaners & Care Cleaners)**
           Location:      **28 Central Square, Chelmsford, MA**
           Claimant:      **MADEP**
           Type of Loss:  **Alleged release of hazardous materials**
           Your File No.  **0650008155**

Dear Mr. Keyes:

Pursuant to your request, I enclose the following documents with respect to the above-referenced matter:

1.     Our notice letter to The Travelers Company (policy years 1960-1973), dated September 27, 2002, and notice letters to Sentry Insurance Company (policy years 1974-1977), Graphic Arts Mutual Insurance Company (1978-1982), and Utica National Insurance Group (1982-1985), all dated September 25, 2002.

2.     Correspondence from The Travelers Company, dated October 9, 2002, and Utica Mutual, dated October 28, 2002.

3.     Four environmental reports prepared by D'Amore Associates, Inc., to address the Substantial Release Migration ("SRM") condition that was the subject of the Notice of Responsibility ("NOR") that the Massachusetts Department of Environmental Protection issued to Kleenit in January 2001. (See, Immediate Response Action ("IRA") Status Report and IRA Plan Modification, May 20, 2002; Supplemental Field Investigation Report, January 16, 2002; IRA Modification Report, March 3, 2001; and IRA Plan, February 15, 2001.)

529654_1

RUBIN AND RUDMAN LLP

Kevin S. Keyes
November 8, 2002
Page 2

4.    Correspondence between the attorneys for the potentially responsible parties. (See, Cushman & Lovely letter, October 1, 2002; Bingham McCutchern letter, September 20, 2002; McCusker, Anselmi, Rosen, Carvelli & Walsh letters, September 11, 2002 and June 25, 2002 (without attachments)).

Kleenit has requested the company to provide it with a complete copy of the policies, declaration page(s) and any endorsements or riders. If the company contends that the policies, declaration page(s), endorsements and/or riders do not exist, the company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame. Please let me know the status of those copies.

I would also like to address several purported defenses to coverage that you have asserted in your letter. With respect to alleged "late notice," there is no legal basis to assert that the timing of Kleenit's notice to the company bars coverage under the policies. The case law in Massachusetts is clear that, even if an insurer were able to prove that an insured had failed to comply with a notice provision, coverage would still not be barred unless the insurer could also prove that it was prejudiced by the late notice. See, e.g., Darcy v. Hartford Ins. Co., 407 Mass. 481, 482 (1990) (affirming the trial court's decision that the insurer "had not carried its burden of proving that the delay in giving notice had materially prejudiced its interests," even where notice was provided more than six years after the accident); G.L. c.175, §112 ("An insurance company shall not deny insurance coverage . . . because of failure of an insured to seasonably notify an insurance company . . . unless the insurance company has been prejudiced thereby").

The same reasoning undercuts your assertion that Kleenit's pre-tender defense costs are barred. Th settled law holds that, "in the absence of a showing of prejudice, the insurer's duty to defend includes the duty to reimburse for reasonable costs of defense prior to notice, as well as for subsequent defense costs." TPLC, Inc. v. United National Insurance Company, 44 F.3d 1484, 1493 (1995) (Court rejected insurer's contention that it was not liable for pre-notice defense costs where insurer "failed to produce any evidence that the costs incurred by [insured] were not reasonable."). See also, Peavey Company v. M/V ANPA, 971 F.2d 1168, 1178 (1992) ("Delayed notice of a claim . . . relieves the insurer of its obligation [to defend] if the insurer was actually prejudiced by the delay." Court found that the insurer was not prejudiced where insurer obtained "benefit from [insured's] investigative efforts prior to notification.")

Likewise, with respect to alleged voluntary payments and pre-tender costs, the case law is clear that Kleenit's actions taken thus far would not bar coverage. For example, in Chemical Applications Co. v. Home Indemnity Co., 425 F.Supp. 777 (D.Mass. 1977), the Court held that the insured's response actions costs were covered even though they were incurred without the consent of the insurer because, as in Kleenit's case, the insured was required by the government and regulations to take immediate actions, the resulting actions and costs were reasonable, and the insurer benefited by the prompt and reasonable measures taken by the insured.

RUBIN AND RUDMAN LLP

Kevin S. Keyes
November 8, 2002
Page 3

Accordingly, bald assertions by an insurer that it has been prejudiced, or that its investigation has been impaired, or that an insured's actions were not reasonable, are not legally sufficient to establish prejudice or bar coverage. If your company believes that it has evidence to prove actual prejudice, or unreasonable actions taken by Kleenit, please provide such evidence to us as soon as possible.

Finally, we cited three cases in our notice letter to you demonstrating that the owned property exclusion is not applicable here. (See, Wasserman, Rubenstein, and Hakim, cited in our letter dated September 25, 2002.) In Kleenit's Chelmsford matter, the letter from the Massachusetts Department of Environmental Protection clearly asserts that there is a threat to, or demonstrated contamination of, property of others and groundwater, thereby making the owned property exclusion inapplicable under well-established case law in Massachusetts.

As set forth in our initial letter to your company, Kleenit requests defense and coverage under the policies. In addition, Kleenit requests that the company approve the risk assessment, soil and groundwater assessment, and other response actions that Kleenit has discussed in past or enclosed correspondence.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

PJF/ees
Enclosures
cc:    Keith Crider, Kleenit, Inc. (without enclosures)



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

Article Sent To:
*PIP / RUBIN AND RUDMAN    08856-002*

| | |
|---|---|
| Postage | $ 8.05 |
| Certified Fee | 3.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 13.10 |

Postmark Here
NOV 8 2002
USPS
FORT POINT STA BOSTON MA 02210

Name (Please Print Clearly) (to be completed by mailer)
*KEVIN S. KEYES — FOUR DEPARTMENT*
Street, Apt. No.; or PO Box No.
*ROYAL + SUN ALLIANCE*
*9140 ARROW POINT BLVD, SUITE 440*
City, State, ZIP+4
*CHARLOTTE, NC 28273*

PS Form 3800, July 1999          See Reverse for Instructions

7003 1460 0002 4886 0591

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kevin S. Keyes
Environmental Claim Dept
Royal & SonAlliance
9140 Arrowpoint Blvd.
Suite 440
Charlotte, NC 28273

08856-002

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Brenda Payne_    ☐ Agent    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Brenda Payne    1-12

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7099 3400 0021 4886 0591

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

# Certified Mail Provides:

■ A mailing receipt.
■ A unique identifier for your mailpiece
■ A signature upon delivery
■ A record of delivery kept by the Postal Service for two years

*Important Reminders:*

■ Certified Mail may ONLY be combined with First-Class Mail or Priority Mail.
■ Certified Mail is *not* available for any class of international mail.
■ NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
■ For an additional fee, a *Return Receipt* may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse the mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS postmark on your Certified Mail receipt is required.
■ For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement *"Restricted Delivery".*
■ If a postmark on the Certified Mail receipt is desired, please present the arti-cle at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, July 1999 *(Reverse)*    102595-99-M-2087

• Sender: Please print your name, address, and ZIP+4 in this box •

Peter J. Feuerbach, Esq.
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
**Plaintiffs**

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
**Defendants**

<u>EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>

# <u>TAB 24</u>

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

August 11, 2003

**By Facsimile:  617-227-9191**

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA  02110
(For Utica)

**By Facsimile:  781-466-0701**

Karl S. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason
& Gette LLP
950 Winter Street, Suite 1300
Waltham, MA  02451
(For Royal)

RE:    **Final Demand for Defense Pursuant to M.G.L. c.93A, §11 and c.176D**
      Policy Holder:     Kleenit, Inc. ("Kleenit")
      Sites:             Acton and Chelmsford Sites, Massachusetts

Dear Rick and Karl:

      This letter responds to Attorney Vasiloff's letter dated July 25, 2003, wherein he enclosed a proposed "Interim Defense Cost-Sharing and Non-Waiver Agreement" ("Proposed Defense Agreement") on behalf of Royal Insurance Company ("Royal"), Utica Mutual Insurance Company ("Utica") and The Travelers Indemnity Company of America ("Travelers") (Royal, Utica and Travelers are collectively referred to as the "Carriers".)  We are somewhat pleased that the Carriers have finally agreed on a cost sharing pro-rata share that covers %100 of certain defense fees.  However, Kleenit is troubled by the attempt to exclude pre-tender defense fees without just cause.

      Kleenit is extremely disappointed and frustrated by the Carriers' long-awaited Proposed Defense Agreement because, <u>inter alia</u>, it is overreaching and violates established case law to which we have referred the Carriers on many occasions during the past ten (10) months when the Carriers have purportedly been "investigating" Kleenit's claims.  The Proposed Agreement seeks to require Kleenit to waive and release important legal rights while at the same time denying Kleenit basic financial and procedural protections afforded by the policies and law.  Some provisions are so vague as to be unworkable in practice and will likely result in future arguments about defense costs and little real reimbursement by the Carriers.

560366_1

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 2

Due to the Carriers' long intransigence and unfair settlement practices over the past ten (10) months, which has forced Kleenit to spend tens of thousands of dollars in legal fees to pursue its claims, we could not recommend the proposed "Defense Agreement" to Kleenit unless, inter alia, it paid Kleenit's costs to pursue its claims and provide a full defense (i.e., including pre-tender costs). Kleenit has for months now challenged the Carriers' rote assertion that they are not liable for pre-tender defense costs or voluntary payments. As discussed in our multiple letters to you on this issue, the case law clearly holds that <u>the Carriers are obligated by law to demonstrate actual and specific prejudice</u> allegedly caused by Kleenit's actions, if they purport to deny coverage for alleged pre-tender costs or voluntary payments. Based on 10 months of "investigations" we would think the Carriers would have been able to demonstrate numerous actual and specific elements of prejudice, if such prejudicial actions in fact existed. Despite the Carriers' clear liability for pre-tender costs under established case law, Rick Heifetz's and Travelers' recent letters and the Proposed Agreement all purport to deny Kleenit's pre-tender costs <u>without any evidence whatsoever demonstrating actual prejudice</u>. In short, the Proposed Agreement is but the latest piece to the Carriers' persistent pattern of unfair and deceptive claim settlement practices in violation of M.G.L. c.93A, §11, and M.G.L. c.176, §3(9), and is therefore rejected by Kleenit as presently drafted. The Proposed Defense Agreement must eliminate the exclusion of pre-tender defense costs.

We have challenged the Carriers several times on any allegations of prejudice, including our letter dated March 11, 2003, the pertinent parts of which are quoted below for your convenience. Almost five months have passed and not one of the Carriers has demonstrated one instance of actual prejudice in this matter contrary to their clear, legal obligations. The Carriers nonetheless continue to deny pre-tender costs, which has caused Kleenit to incur substantial legal fees prosecuting its claims, and which constitutes unfair claim settlement practices in violation of M.G.L. c.93A and M.G.L. c.176D.

Our March 11, 2003 letter to the Carriers stated:

"In response to coverage defenses that have been raised, your clients would be wrong to assert that they are not obligated to pay defense costs incurred by Kleenit prior to tendering its claims in September 2002. Reliance on <u>Augat, Inc. vs. Liberty Mutual Insurance Co.</u>, 410 Mass. 117 (1991) is misplaced, and that case does not relieve the insurance companies of their obligations with regard to Kleenit. <u>Augat</u> does not stand for the proposition that an insurer is free of liability under a policy, without having to show prejudice, if an insured makes a voluntary payment. In fact, subsequent to <u>Augat</u>, the Appeals Court ruled that such an argument is "fallacious." See <u>Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp.</u>, 43 Mass. App. Ct. 465, 480 (1997). "[T]he general rule is that the insured's noncompliance with a

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 3

---

voluntary payment clause does not discharge the insurer's contractual duty unless the insurer demonstrates actual prejudice. . . ." Atlas Tack Corp. v. Liberty Mut. Ins. Co., 48 Mass. App. Ct. 378, 383 (1999), citing Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305-306 (1994) and Employers' Liability Assur. Corp., supra.

We also note that in Augat, unlike in Kleenit's matters, the insured, without the knowledge or permission of its insurer, engaged in extensive settlement discussions with government regulators, agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cleanup cost, and paid a portion of that cost. In Kleenit's case, it has merely conducted assessment activities without engaging in or obligating itself to perform costly cleanup except for limited costs to remove discrete contamination in the Chelmsford matter to mitigate its potential damages to other third-party claimants, as discussed above. In addition, Kleenit has not engaged in formal settlement discussions, agreed to pay any settlement amount nor entered into any consent orders. As a result, the extremely reasonable measures that Kleenit undertook prior to September 2002 to defend itself and/or mitigate potential damages have not caused any prejudice or deprived the insurance companies of any opportunity to protect their respective interests.

An insurer cannot merely assert prejudice, but instead must demonstrate specific and material prejudice:

[T]he prejudice shown, to relieve the insurer, must have been material and specific. The insurer is challenged to show that it suffered 'actual prejudice,' not just a 'possibility' of it; that there has been 'actual harm' to its interests; that it has been relegated to a 'substantially less favorable position than it would have been in had timely notice been provided.' Further, the insurer has 'the burden of identifying the precise manner in which its interests have suffered.'

Employers' Liability Assur. Corp., Ltd., 43 Mass. App. Ct. at 476, citing Darcy v. Hartford Ins. Co., 407 Mass. 481, 486-487 (1990).

In the present matters, despite several months of investigations [as of March 11, 2003], the insurance companies have failed to assert, let alone demonstrate, specific and material prejudice caused by Kleenit's actions. However, the companies have at the same time attempted to deny Kleenit's costs incurred prior to September 2002. The insurance companies should reconsider their wrongly held positions and agree to pay such defense costs in light of their clear obligations under Massachusetts law."

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 4

_____

See, also, Augat, 410 Mass. at 122 ("We have previously ruled that a showing of actual prejudice is required where the insurer seeks to disclaim coverage based on the violation of a provision requiring that the insured promptly notify the insurer of a claim, [or] that the insurer consent to a settlement affecting a claim . . . .")

Even though we do not agree with the Appeals Court's ruling in Eastern Products Corporation v. Continental Casualty Company, 58 Mass.App.Ct. 16 (2003), the case which the Carriers recently proffer, that decision still does not relieve the Carriers of their legal burden to demonstrate actual prejudice. In fact, if the Carriers read Eastern Products carefully they will be forced to acknowledge that the case fully supports Kleenit's position that the Carriers must demonstrate actual prejudice.

The Court in Eastern Products determined that the insurers in that case met their burden of demonstrating actual prejudice where, inter alia, the long-time president and largest shareholder of the insured had died and the insured had wound up its business and "destroyed all of its correspondence and business receipts." Id. at 21, 23-24. Furthermore, the Court determined that the insured in Eastern Products had "entered into a binding agreement" with the Department of Environmental Protection to completely clean up its site at its own expense by "appl[ying] to DEP for a waiver of the written approvals necessary for remedial response actions. . . .".. Id., at 24-26.

As you and the Carriers know, none of the circumstances at issue in Eastern Products are present in Kleenit's case. (Kleenit's documents and witnesses are available and Kleenit has not entered into "waivers" or any binding agreements to completely clean the sites). See also, M.G.L. c.175, §112, requiring the Carriers to demonstrate prejudice due to alleged late notice. The Carriers are therefore unable in the present case to demonstrate actual prejudice or deny pre-tender costs.

Given the amount of time, expense and delay in reaching this point in the proposed Defense Agreement, Kleenit will not release (as suggested in the draft Defense Agreement #5) its bad faith claims that it may be entitled to bring against the Carriers for failure to provide defense, especially if the Carriers continue to maintain that they do not owe pre-tender defense expenses and have acted or do act in bad faith regarding their duty to indemnify Kleenit pursuant to the respective policies. Furthermore, Kleenit will not agree to allow the Carriers to attempt at some later time to recoup its defense fees as suggested in Paragraph 4 of the draft proposed Defense Agreement. As you know, an insurer has a duty to provide such defense even if claims made by the litigants, such as the DEP or other third parties are presently or are eventually determined to be frivolous or baseless. These defense rights are what Kleenit paid for and are

RUBIN AND RUDMAN LLP

Richard E. Heifetz, Esquire
Karl S. Vasiloff, Esquire
August 11, 2003
Page 5

expecting from its Carriers.: Therefore, we have deleted such provisions from the proposed Defense Agreement.

Based upon the foregoing, we demand that the Carriers, including Travelers, which will obtain a copy of this letter through Attorney Donald Nagle (Kleenit's counsel in its claim with Travelers), to promptly revise the Proposed Agreement so that it is not overreaching and immediately provide specific evidence of actual prejudice, if you continue to propose to exclude Kleenit's pre-tender costs. We have enclosed a marked-up tracked revision of the proposed Defense Agreement with changes highlighted for your convenience. We believe that failure to revise the Agreement as proposed or to provide such evidence will constitute unfair settlement practices in violation of M.G.L. c.93A and M.G.L. c.176D. If we cannot resolve the matter of pre-tender defense costs, then we unfortunately must recommend that Kleenit reject the proposed Defense Agreement and file a declaratory Judgment Action seeking a Court Order and all defense and claim related fees and expenses incurred to date.

Very truly yours,

Robert A. Fasanella

RAF/PJF/ees
Enclosure
cc:    Keith Crider, Kleenit, Inc.
       Peter J. Feuerbach, Esq.
       Donald P. Nagle (by facsimile 508-732-8971)
       Andrew Cardoza (for Hanover)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
    Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
    Defendants

<u>EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>

# <u>TAB 25</u>

DONALD P. NAGLE, PC

ATTORNEY AT LAW
5 MAIN STREET EXTENSION, SUITE 300
PLYMOUTH, MASSACHUSETTS 02360
TEL: 508-732-8970  FAX: 508-732-8971

October 17, 2003

By Certified Mail, Return Receipt
Requested
Michael F. Aylward, Esquire
Morrison, Mahoney and Miller, LLP
250 Summer Street
Boston, MA 02210
(for Sentry)

By Certified Mail, Return Receipt Requested
Karl A. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason & Gette LLP
950 Winter Street - Suite 1300
Waltham, MA 02451
(for Royal)

By Certified Mail, Return Receipt
Requested
Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA 02110
(for Graphic Arts/Utica)

By Certified Mail, Return Receipt Requested
T. Jill Donan
Associate Account Executive
Special Liability Coverage Unit
Travelers
Three Farm Glen Boulevard
Farmington, CT 06032-1970

RE:   Kleenit, Inc.
      28 Central Square, Chelmsford, MA
      293-295 Main Street, Acton, MA

      Notice of Termination of Tolling Agreements

Gentlemen and Ms. Donan:

This letter responds to Ms. Donan's letter dated September 10, 2003, which indicates that it was written on behalf of Travelers, Utica and Royal in response to Attorney Fasanella's letter dated August 11, 2003.

As discussed below, we believe that Ms. Donan' letter on behalf of the three insurers continues a pattern of unfair claim settlement practices in violation of M.G.L. c. 176D, §3(9) with respect to these claims. The insurers' misrepresentation of and failure to acknowledge certain key facts in these claims, in addition to taking a legal position contrary to clear appellate caselaw, constitutes violations of the following provisions of M.G.L. c. 176D, §3(9), among others:

DONALD P. NAGLE, PC

Michael F. Aylward, Esq.
Richard E. Heifetz, Esq.
Karl A. Vasiloff, Esq.
T. Jill Donan
October 17, 2003
Page 2

(a) <u>Misrepresenting pertinent facts</u> or insurance policy provisions relating to coverages at issue;

. . . .

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonable clear;

. . .

(n) <u>Failing to provide promptly a reasonable explanation of the basis</u> in the insurance policy <u>in relation to the facts or applicable law</u> for denial of a claim or for the offer of a compromise settlement. (emphasis added)

## Analysis of Case Law

In her letter, Ms. Donan alleges that, with respect to Attorney Fasanella's letter, "several of [his] citations to authority are either incorrect or, worse, misleading." As her prime example, Ms. Donan asserts that "[Fasanella's] quote from *Atlas Tack Corp.* conveniently omits the first word of the sentence (which is 'although') and then stops before the actual point is made." Ms. Donan contends that the "actual point" is that the Courts in *Atlas Tack* and *Augat* "did not require a showing of prejudice before granting a carrier summary judgment on the voluntary payments clause."

The position of Ms. Donan and the insurers is unreasonable and taken in bad faith in view of the Courts' clear language in *Atlas Tack* and *Augat*, cited below; and the pertinent facts of Kleenit's two matters, which, as we informed you by numerous letters, are vastly different than those in *Atlas Tack* and *Augat*. The insurers' present position does not represent a good faith interpretation of unclear or unsettled law, but instead a purposeful and unreasonable repudiation of settled law which has the effect of unfairly prolonging and undermining the process of settling Kleenit's claims and compelling Kleenit to institute litigation to recover amounts due under its policies.

I quote below the complete text of the pertinent paragraph of the Appeals Court's 1999 holding in *Atlas Tack* to demonstrate that, contrary to Ms. Donan's hyperbole, Attorney Fasanella's letter was not incorrect or misleading. His letter accurately quoted the Court's "general rule" in Massachusetts that an insurer can rely on a voluntary payment clause *only if* the insurer is able to demonstrate actual prejudice due to the insured's actions.

DONALD P. NAGLE, PC

Michael F. Aylward, Esq.
Richard E. Heifetz, Esq.
Karl A. Vasiloff, Esq.
T. Jill Donan
October 17, 2003
Page 3

"One issue, in our view, is decisive of both appeals: namely, Liberty's meritorious contention that it may deny coverage based on the voluntary payment clause. In *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 117, 123, 571 N.E.2d 357 (1991), the court held that an insurer was entitled to deny coverage on the basis of a voluntary payment clause where the insured, without notifying the insurer or obtaining its permission, had "agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cost of the cleanup, and in fact paid a portion of that cost." Similarly, Atlas Tack breached the voluntary payment clause when it broadly agreed in the 1984 consent judgment to "the complete clean up of the lagoon and surrounding area, if necessary, at the site and the removal of all pollutants to appropriate waste facilities," and made substantial payments pursuant to that agreement, all before notifying Liberty. Although the general rule is that the insured's noncompliance with a voluntary payment clause does not discharge the insurer's contractual duty unless the insurer demonstrates actual prejudice, see *Sarnafil, Inc. v. Peerless Ins. Co.*, 418 Mass. 295, 305-306, 636 N.E.2d 247 (1994); *Employers' Liab. Assur. Corp. v. Hoechst Celanese Corp.*, 43 Mass.App.Ct. 465, 479-481, 684 N.E.2d 600 (1997), the court in *Augat* required no further showing of prejudice <u>where the record clearly established</u> that the insured's breach undermined the purpose of the voluntary payment clause--that of giving the insurer an opportunity to protect its interests. The court noted that by the time the insured involved the insurer, "it was too late for the insurer to act to protect its interests. There was nothing left for the insurer to do but issue a check." 410 Mass. at 123, 571 N.E.2d 357. <u>The facts in this case are indistinguishable</u> in material respects from those in *Augat*, where "the particular facts established prejudice without more." *Employers' Liab. Assur. Corp. v. Hoechst Celanese Corp.*, 43 Mass.App.Ct. at 481, 684 N.E.2d 600."

<u>Atlas Tack Corp. v. Liberty Mut. Ins. Co.</u>, 48 Mass. App. Ct. 378, 383-384 (1999) (emphasis added).

Any reasonable doubt as to whether, following the 1991 holding in *Augat*, an insurer was required to prove prejudice was eliminated in the Appeals Court's 1997 holding in *Employers Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp.*, 43 Mass App. Ct. 465 (1997). To ensure that no one can claim being misled, I quote the complete text of the pertinent passage from *Hoechst Celanese* below:

"Incidentally, the excess insurers appear from the start to be <u>misreading</u> *Augat itself* when they suggest that, in the face of a violation by an insured of

DONALD P. NAGLE, PC

Michael F. Aylward, Esq.
Richard E. Heifetz, Esq.
Karl A. Vasiloff, Esq.
T. Jill Donan
October 17, 2003
Page 4

the express prohibition of voluntary payments in a primary policy, the insurer is forthwith discharged of responsibility without having to demonstrate prejudice. In *Augat* the particular facts established prejudice without more. Thus the court said, "We conclude that no showing of prejudice is required *in this case* " (emphasis supplied). The later case of *Sarnafil, Inc. v. Peerless Ins. Co.*, 418 Mass. 295, 636 N.E.2d 247 (1994), involved a claimed breach of a voluntary payment provision, as well as a notice provision, in a primary policy. The court was clear (418 Mass. at 305, 636 N.E.2d 247) that "before Peerless could be relieved of responsibility based on Sarnafil's violations of insurance provisions, Peerless would have to show that it had incurred actual prejudice. *Augat, Inc. v. Liberty Mut. Ins. Co.*, [410 Mass.] at 122-123 [571 N.E.2d 357]. *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 491 [554 N.E.2d 28] (1990)." And again, "It may very well be that [the insurer] will prevail at trial based on ... a showing of prejudice ..." but the issue could not be prejudged on summary judgment. *Sarnafil, Inc. v. Peerless Ins. Co.*, 418 Mass. at 306, 636 N.E.2d 247. See also *New England Extrusion, Inc. v. American Alliance Ins. Co.*, 874 F.Supp. 467, 471 (D.Mass.1995). For an analytical demonstration that an insured's breach of a voluntary payment provision (like breach of a notice provision) should not avail the insurer unless the insurer sustains the burden of proving that it has been prejudiced thereby, see *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F.Supp. at 1516-1518, citing *Roberts Oil Co. v. Transamerica Ins. Co.*, 113 N.M. 745, 751, 833 P.2d 222 (1992)."

Employers Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass App. Ct. at 481 (emphasis added)

Ms. Donan's and the insurers' purported analysis of and references to *Sarnafil, Inc. v. Peerless Ins. Co.*, 418 Mass 295 (1994) and several other string-cited cases is disingenuous and just plan wrong. In her letter, Ms. Donan stated that, "In *Sarnafil*, the carriers note that the majority opinion does not even address the duty defend. The dissent, however, correctly observes that an insurer's duty to defend its policyholder is contingent on the insured notifying its insurer of the claims being made against it." As an initial matter, it is incomprehensible that the insurers' position is based on *the dissent* in *Sarnafil*. Furthermore, as evidence of the insurers' bad faith misrepresentations of *Sarnafil*, even a cursory reading of that case demonstrates that the "duty to defend" was addressed in that case. Contrary to Ms. Donan's and the insurers' assertion, the Supreme Judicial Court addressed the duty to defend in the following passages from *Sarnafil*:

DONALD P. NAGLE, PC

Michael F. Aylward, Esq.
Richard E. Heifetz, Esq.
Karl A. Vasiloff, Esq.
T. Jill Donan
October 17, 2003
Page 5

"We consider, however, *Sarnafil's* claim for reimbursement for the <u>costs associated with the defense of the counterclaim</u> in the arbitration. The over-all issue is whether Sarnafil's breach of the voluntary payment and notice provisions of the policies justified Peerless's <u>failure to offer a defense</u> to Sarnafil. Although Sarnafil was contractually obligated to notify Peerless of the initiation of arbitration and the filing of Taylor's counterclaim, resolution of certain factual questions in Sarnafil's favor could be found to excuse Sarnafil from any requirements imposed on it under the policies, and to impose on Peerless liability for some part of the <u>cost of defending</u> the counterclaim. We had previously stated that 'the violation of a policy provision should bar coverage <u>only</u> where the breach frustrates the purpose underlying that provision.' *Augat, Inc. v. Liberty Mut. Ins. Co.,* 410 Mass 117, 123 (1991) . . . . Finally, apart from the factual considerations just discussed, before Peerless could be relieved of responsibility based on Sarnafil's violations of insurance provision, <u>Peerless would have to show that it had incurred actual prejudice. *Augat, Inc. v. Liberty Mut. Ins. Co.,* supra</u> 410 Mass at 122-123; *Darcy v. Hartford Ins., Co.,* 407 Mass 481, 491 (1990). 'In view of the agreement between Taylor and Sarnafil calling for arbitration of the dispute, the immanence of litigation in Iowa at the time arbitration was filed, and the successful result Sarnafil achieved in the arbitration, on the one hand, and the length of delay in giving notice, on the other, <u>prejudice was an issue of fact for trial</u>.' *Sarnafil, Inc. v. Peerless Ins. Co.,* 34 Mass. App. Ct. 248, 254 (1993)."

<u>*Sarnafil, Inc. v. Peerless Ins. Co.,*</u> 418 Mass 295, 302, 305-306 (1994) (emphasis added).

*Sarnafil*, along with *Augat* and *Atlas Tack*, stands for the proposition that Ms. Donan and the insurers must prove, and not baldly assert, actual prejudice due to Kleenit's alleged late notice. Any position to the contrary contradicts clear appellate case law and demonstrates bad faith settlement practices.

The several other cases that Ms. Donan includes in her string-cite do not fairly or reasonably support the insurers' position. For instance, in *Hoppy's Oil Service, Inc. v. Insurance Company of North America*, 783 F. Supp. 1505 (D.Mass. 1992), the Court's analysis and holding fully support Kleenit's, and not the insurers,' position:

"Under Massachusetts law, an insurer may disclaim coverage for failure to provide seasonable notice <u>only if</u> that failure has prejudiced the insurer. *Darcy v. Hartford Ins. Co.,* 47 Mass. 481, 554 N.E.2d 28 (1990). The <u>loss of critical evidence</u> is sufficient harm. *Id.,* 554 N.E.2d at 31. The <u>destruction of the tanks</u>

DONALD P. NAGLE, PC

Michael F. Aylward, Esq.
Richard E. Heifetz, Esq.
Karl A. Vasiloff, Esq.
T. Jill Donan
October 17, 2003
Page 6

and accessories . . . is such a loss of critical evidence. . . . Hoppy's failure to seasonably notify its insurers of the claim against it has caused the insurers to suffer actual harm. <u>The tanks were removed and destroyed</u>, thereby substantially diminishing the chances of proving that the discharge was not sudden."

<u>Hoppy's Oil Service, Inc. v. Insurance Company of North America</u>, 783 F.Supp. at 1510-1511 (emphasis added).

As discussed below, there has been no "loss of critical evidence" in Kleenit's case, and therefore, no actual harm suffered by the insurers. *See also Eastern Products Corporation v. Continental Casualty Co.*, 58 Mass. App. Ct. 16, 21, 23-24 (2003), wherein the Appeals Court determined that the insurers in that case met their burden of demonstrating actual prejudice where, *inter alia,* the long-time president and largest shareholder of the insured had died and the insured had wound up its business and "destroyed all of its correspondence and business receipts." No such facts are present in Kleenit's case, as indicated in our letter to you dated August 11, 2003 and in earlier correspondence.

## Analysis of Relevant Facts

As stated in *Atlas Tack*, "the particular facts [of *Atlas Tack* and *Augat*] established prejudice without more." In *Augat and Atlas Tack*, unlike in Kleenit's matters, the insureds, without the knowledge or permission of their insurers, engaged in extensive settlement discussions with government regulators, agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cleanup cost, and paid significant portions of that cost. In Kleenit's case, it has merely conducted assessment activities without engaging in or obligating itself to perform costly cleanup except for limited costs to remove discrete contamination in the Chelmsford matter to mitigate its potential damages to other third-party claimants, as discussed in numerous prior letters, including those from September 2002 and March 11 and August 11, 2003.

Kleenit has notified and sought approval from the insurers pertaining to various work activities proposed in defense of the DEP's Notices of Responsibility. In addition, Kleenit has not engaged in formal settlement discussions, agreed to pay any settlement amount nor entered into any consent orders. As a result, the extremely reasonable measures that Kleenit undertook prior to September 2002 to defend itself and/or mitigate potential damages have not caused any prejudice or deprived the insurance companies of any opportunity to protect their respective interests. Furthermore, critical evidence related to Kleenit's defense of the NORs has not been lost in this instance. Therefore, unlike in *Atlas Tack, Augat, Hoppy's Oil* and the other cases cited in Ms. Donan's letter, Kleenit's actions do <u>not</u> establish prejudice "without more."

DONALD P. NAGLE, PC

Michael F. Aylward, Esq.
Richard E. Heifetz, Esq.
Karl A. Vasiloff, Esq.
T. Jill Donan
October 17, 2003
Page 7

### Conclusion

As discussed above, the insurers' position that they are not required to prove prejudice is contrary to clear and settled appellate caselaw. The insurers have also failed to acknowledge in good faith that the facts present in Kleenit's matters are vastly different than those at issue in *Augat* and *Atlas Tack*. The insurers' unreasonable positions will cause Kleenit to commence a lawsuit to recover amounts due to it under the policies. The insurer's unreasonable and risky actions in these matters constitute violations of M.G.L. c. 176D, §3(9).

Based upon the insurers' prior representations to Kleenit that they would offer a reasonable settlement of Kleenit's claims, Kleenit has previously been willing to extend its deadlines to file a suit to recover amounts due it under the policies. However, in view of the insurers' recent demonstration of bad faith interpretation of law and facts applicable to this case, Kleenit is no longer willing to extend the time to file suit.

Accordingly, Kleenit hereby provides you and your respective clients notice of termination of any existing tolling agreements entered into with Kleenit pertaining to Kleenit's claims. If the insurers do not properly resolve and settle Kleenit's claims by October 27, 2003, Kleenit will prepare and shortly file suit to recover, *inter alia*, amounts due it under the policies, its costs and fees incurred to obtain coverage, multiple damages and attorneys fees as allowed under M.G.L. c. 176D and c. 93A.

Please contact me if you have any questions.

Very truly yours,

Donald P. Nagle

cc:    Keith Crider, Kleenit, Inc.
       Robert A. Fasanella, Esq.
       Peter A. Feuerbach, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

KLEENIT, INC.,
        Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
        Defendants

EXHIBITS TO AFFIDAVIT OF DONALD P. NAGLE, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

# TAB 26

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

**CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE**

January 27, 2004

Michael F. Aylward, Esquire
Morrison, Mahoney and Miller
250 Summer Street
Boston, MA  02210
(for Sentry)

Karl A. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason & Gette LLP
950 Winter Street - Suite 1300
Waltham, MA  02451
(for Royal)

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA  02110
(for Utica)

Catherine L. Kozyra
Associate Account Executive
Travelers
Special Liability Group
1 Tower Square, 1 FG
Hartford, CT  06183-6016

T. Jill Donan
Associate Account Executive
Travelers
Special Liability Coverage
One Tower Square, 6 MS
Hartford, Connecticut  06183-6016

RE:    Kleenit, Inc. - Acton and Chelmsford Sites, Massachusetts

Dear Counsel and Ms. Kozyra:

This letter provides updated defense cost information to you and addresses comments in recent correspondence from Ms. Donan and Mr. Heifetz.

1.    Enclosed please find three invoices from D'Amore Associates, Inc., dated August 12, December 15, and December 24, 2003, in the amount of $2,090.00, $2,575.00, and $1,200 respectively, and one invoice from RMI dated January 12, 2004 in the amount of $1,260 ($510 plus $750 retainer).  These invoices were not included in the chart of Kleenit, Inc.'s costs and expenses that we provided to you with my letter dated December 24, 2003.

580767_1

RUBIN AND RUDMAN LLP

Michael F. Aylward, Esquire, et al.
January 27, 2004
Page 2

Also enclosed is a revised chart of Kleenit's costs and expenses, which includes the subject invoices from D'Amore and RMI and the invoices I submitted to you on December 30, 2003, and January 9, 2004. As you can see, **the total defense costs incurred by Kleenit through these invoices is $146,356.92.** In contrast, the insurers have reimbursed Kleenit only $17,443.23, or less than 12% of Kleenit's defense costs. .

D'Amore's, RMI's and the other invoiced services constitute reasonable and necessary defense costs and should therefore be paid within the next twenty (20) days by the carriers as necessary and appropriate defense costs as documented in our letters dated December 24 and 30, 2003, and January 9, 2004. Thank you for your prompt attention to this matter.

2.    Contrary to assertions in recent letters, the carriers have *not* paid all *post*-tender costs. For instance, there is no evidence that the carriers reimbursed Kleenit for two payments of $3,000 and $2,000 made to Coler and Colantoio on November 25, 2002 and January 6, 2003, even though we provided you with copies of the invoices and checks back in Marhc 2003.

The carriers have also not paid all post-tender defense costs incurred at the Acton site, namely, invoices for defense-related work performed *after* we notified the carriers on or about September 25, 2002, of the claim and DEP's Notice of Responsibility for the Acton site. (As we alerted you in our claim letter of September 25, 2002, DEP's NOR would relate back to the filing Kleenit was required to make with DEP in October 2002, as discussed in detail in the claim letter.) The unpaid, post-tender invoices total $23,500.31 (RMI $2,944.25; Coler & Colantonio $13,523.23; Rubin and Rudman $7,032.83). Further, it is our understanding that Mr. Vasiloff's client, Royal Insurance, has not made any payments toward Kleenit's defense costs.

In addition, the carriers have not paid the invoices set forth in our letters dated December 24 and 30, 2003, January 9, 2004, and herein.

3.    Finally, the federal case law cited in Mr. Heifetz's recent letter is simply a repeat of inapplicable "authority" submitted to us in prior letters. As previously explained in detail in letters from this firm and Attorney Donald Nagle, the federal case law is not applicable, does not support your position, and does not provide a good faith basis under M.G.L. c.93A or M.G.L. c.176D to deny Kleenit's claim for complete reimbursement of pre-tender and post-tender defense costs.

4.    In view of the tremendous financial strain that these defense costs have placed on Kleenit, we demand that the carriers immediately review the figures and supporting documents, and approve and process all pre-and post-tender defense payments to Kleenit. The insurers' failure to timely pay all pre-and post-tender defense costs and provide coverage is the basis for Kleenit's decision to pursue a declaratory judgment action against the carriers pursuant to M.G.L. c.93A and c.176D.

580767_1

RUBIN AND RUDMAN LLP

Michael F. Aylward, Esquire, et al.
January 27, 2004
Page 3

Thank you for your prompt attention to this.

Very truly yours,
Rubin and Rudman LLP

Robert A. Fasanella

PJF/ees
Enclosures
cc:    Kleenit, Inc. (w/encls.)
       Peter J. Feuerbach, Esq. (w/o encls.)
       Donald P. Nagle, Esq. (w/encls.)

580767_1

D'Amore Associates, Inc.
148 Ponakin Road
Lancaster, MA 01523
Tel (978)368-1802  Fax (978)368-1608

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 8/1/2003 | 2163 |

**BILL TO**

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| TERMS | DUE DATE |
|-------|----------|
| Due on receipt | 8/1/2003 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Personnel | Quarterly sampling | 6 | 75.00 | 450.00 |
| Outside Serv | Laboratory charges | | 1,640.00 | 1,640.00 |

Thank you for your business.

**Total**  $2,090.00

D'Amore Associates, Inc.

148 Ponakin Road
Lancaster, MA 01523
Tel (978)368-1802  Fax (978)368-1608

# Invoice

| DATE | INVOICE NO. |
|---|---|
| 12/15/2003 | - 2278 |

**BILL TO**

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| TERMS | DUE DATE |
|---|---|
| Due on receipt | 12/15/2003 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| Personnel | Quarterly sampling | 4 | 75.00 | 300.00 |
| Personnel | Field technician | 8 | 55.00 | 440.00 |
| Outside Serv | Laboratory | | 1,835.00 | 1,835.00 |

*Sent to Bob Giganella
Tuesday 12/16/03
11:40 A.M*

Thank you for your business.

| | **Total** | $2,575.00 |
|---|---|---|

D'Amore Associates, Inc.

148 Ponakin Road
Lancaster, MA 01523
Tel (978)368-1802  Fax (978)368-1608

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 12/24/2003 | 2293 |

BILL TO

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| ITEM | DESCRIPTION | QTY | TERMS | DUE DATE |
|------|-------------|-----|-------|----------|
| | | | Due on receipt | 12/24/2003 |
| | | | RATE | AMOUNT |
| Personnel | IRA Status Report | | 1,200.00 | 1,200.00 |

Thank you for your business.

**Total**                    $1,200.00

*7C-3*

JAN 08 2004 10:01                    978 772 4381        PAGE.02

**Risk Management Inc.**
27 Stoneymeade Way
Acton, MA 01720-5676

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 1/12/2004 | 269 |

 Small Business
Solutions

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| P.O. NO. | TERMS | DUE DATE | Account # | PROJECT |
|----------|-------|----------|-----------|---------|
| | Due on receipt | 1/12/2004 | 2003-0820-101 | MCP Method 3 RC |

| ITEM | QUANTITY | DESCRIPTION | RATE | AMOUNT |
|------|----------|-------------|------|--------|
| Consulting - 2003 | 8 | RMI Proposal 2003-0820-101, dated 20th August 2003. Work Item 1.g. MCP Method 3 RC Final Report - report preparation. Note: completion of final report is on-hold until MADEP and Sanborn, Head & Associates, Inc. issues regarding collection of additional soil and/or groundwater data from beneath 295 Main Street have been addressed. | 130.00 | 1,040.00 |
| Consulting - 2003 | 1.5 | Out-of-Scope Services: Review of Sanborn, Head & Associates, Inc. (SHA) comments on RMI's MCP Draft Method 3 Risk Characterization. Preparation of Responses and Internal Memorandum to correct SHA's misunderstanding of the MCP requirements for development of Exposure Point Concentrations and use of Johnson & Ettinger SG-Screen Model Version 1.0 03/01 versus Version 2, 04/03, which was finalized 06/06/03 and released as Version 3.0 June 2003 for estimation of indoor air concentrations of VOCs. | 130.00 | 195.00 |
| Research Assistant | 0.5 | Out-of-Scope Services: Copying and mailing of Internal Memorandum to Kleenit, Inc., Rubin & Rudman; Coler & Colantonio, Inc. | 50.00 | 25.00 |
| Retainer | 1 | Balance of Retainer 2003-0820-101 Account Applied 12th January 2004. Retainer Account Balance = $0 Kleenit, Inc. (d.b.a. Dud's Cleaners and Launderers 293 and 295 Main Street Acton, MA 01720 RTN 2-14526 Professional Services: Peter W. Woodman, Ph.D. | -750.00 | -750.00 |

Please make your check payable to "Risk Management Incorporated"

"Overdue invoices will be subject to interest at the rate of 1 1/2 percent per month." For Billing Questions please call (978) 266-2878. Ext. 15. Thank you.

FEDERAL ID: 04-3433069

| | |
|---|---|
| **Total** | $510.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $510.00 |

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

## CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

January 27, 2004

Michael F. Aylward, Esquire
Morrison, Mahoney and Miller
250 Summer Street
Boston, MA  02210
(for Sentry)

Karl A. Vasiloff, Esquire
Zelle, Hoffman, Voelbel, Mason & Gette LLP
950 Winter Street - Suite 1300
Waltham, MA  02451
(for Royal)

Richard E. Heifetz, Esquire
Tucker, Heifetz & Saltzman LLP
Three School Street
Boston, MA  02110
(for Utica)

Catherine L. Kozyra
Associate Account Executive
Travelers
Special Liability Group
1 Tower Square, 1 FG
Hartford, CT  06183-6016

T. Jill Donan
Associate Account Executive
Travelers
Special Liability Coverage
One Tower Square, 6 MS
Hartford, Connecticut  06183-6016

RE:    <u>Kleenit, Inc. - Acton and Chelmsford Sites, Massachusetts</u>

Dear Counsel and Ms. Kozyra:

    This letter provides updated defense cost information to you and addresses comments in recent correspondence from Ms. Donan and Mr. Heifetz.

    1.    Enclosed please find three invoices from D'Amore Associates, Inc., dated August 12, December 15, and December 24, 2003, in the amount of $2,090.00, $2,575.00, and $1,200 respectively, and one invoice from RMI dated January 12, 2004 in the amount of $1,260 ($510 plus $750 retainer). These invoices were not included in the chart of Kleenit, Inc.'s costs and expenses that we provided to you with my letter dated December 24, 2003.

580767_1

RUBIN AND RUDMAN LLP

Michael F. Aylward, Esquire, et al.
January 27, 2004
Page 2

Also enclosed is a revised chart of Kleenit's costs and expenses, which includes the subject invoices from D'Amore and RMI and the invoices I submitted to you on December 30, 2003, and January 9, 2004. As you can see, **the total defense costs incurred by Kleenit through these invoices is $146,356.92.** In contrast, the insurers have reimbursed Kleenit only $17,443.23, or less than 12% of Kleenit's defense costs.

D'Amore's, RMI's and the other invoiced services constitute reasonable and necessary defense costs and should therefore be paid within the next twenty (20) days by the carriers as necessary and appropriate defense costs as documented in our letters dated December 24 and 30, 2003, and January 9, 2004. Thank you for your prompt attention to this matter.

2.      Contrary to assertions in recent letters, the carriers have *not* paid all *post*-tender costs. For instance, there is no evidence that the carriers reimbursed Kleenit for two payments of $3,000 and $2,000 made to Coler and Colantoio on November 25, 2002 and January 6, 2003, even though we provided you with copies of the invoices and checks back in Marhc 2003.

The carriers have also not paid all post-tender defense costs incurred at the Acton site, namely, invoices for defense-related work performed *after* we notified the carriers on or about September 25, 2002, of the claim and DEP's Notice of Responsibility for the Acton site. (As we alerted you in our claim letter of September 25, 2002, DEP's NOR would relate back to the filing Kleenit was required to make with DEP in October 2002, as discussed in detail in the claim letter.) The unpaid, post-tender invoices total $23,500.31 (RMI $2,944.25; Coler & Colantonio $13,523.23; Rubin and Rudman $7,032.83). Further, it is our understanding that Mr. Vasiloff's client, Royal Insurance, has not made any payments toward Kleenit's defense costs.

In addition, the carriers have not paid the invoices set forth in our letters dated December 24 and 30, 2003, January 9, 2004, and herein.

3.      Finally, the federal case law cited in Mr. Heifetz's recent letter is simply a repeat of inapplicable "authority" submitted to us in prior letters. As previously explained in detail in letters from this firm and Attorney Donald Nagle, the federal case law is not applicable, does not support your position, and does not provide a good faith basis under M.G.L. c.93A or M.G.L. c.176D to deny Kleenit's claim for complete reimbursement of pre-tender and post-tender defense costs.

4.      In view of the tremendous financial strain that these defense costs have placed on Kleenit, we demand that the carriers immediately review the figures and supporting documents, and approve and process all pre-and post-tender defense payments to Kleenit. The insurers' failure to timely pay all pre-and post-tender defense costs and provide coverage is the basis for Kleenit's decision to pursue a declaratory judgment action against the carriers pursuant to M.G.L. c.93A and c.176D.

580767_1

RUBIN AND RUDMAN LLP

Michael F. Aylward, Esquire, et al.
January 27, 2004
Page 3


Thank you for your prompt attention to this.

Very truly yours,
Rubin and Rudman LLP

Robert A. Fasanella

PJF/ees
Enclosures
cc:    Kleenit, Inc. (w/encls.)
       Peter J. Feuerbach, Esq. (w/o encls.)
       Donald P. Nagle, Esq. (w/encls.)

580767_1

D'Amore Associates, Inc.
148 Ponakin Rond
Lancaster, MA 01523
Tel (978)368-1802  Fax (978)368-1608

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 8/1/2003 | 2163 |

**BILL TO**

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| TERMS | DUE DATE |
|-------|----------|
| Due on receipt | 8/1/2003 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Personnel | Quarterly sampling | 6 | 75.00 | 450.00 |
| Outside Serv | Laboratory charges | | 1,640.00 | 1,640.00 |

Thank you for your business.

| | Total | $2,090.00 |
|--|-------|-----------|

D'Amore Associates, Inc.

48 Ponakin Road
Lancaster, MA 01523
Tel (978)368-1802  Fax (978)368-1608

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 12/15/2003 | - 2278 |

**BILL TO**

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| TERMS | DUE DATE |
|-------|----------|
| Due on receipt | 12/15/2003 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Personnel | Quarterly sampling | 4 | 75.00 | 300.00 |
| Personnel | Field technician | 8 | 55.00 | 440.00 |
| Outside Serv | Laboratory | | 1,835.00 | 1,835.00 |

*Sent to Bob Eulawlla*
*Tuesday*
*12/16/05*
*11:40 A.M*

Thank you for your business.

| | **Total** | $2,575.00 |
|--|-----------|-----------|

D'Amore Associates, Inc.
148 Ponakin Road
Lancaster, MA 01523
Tel (978)368-1802  Fax (978)368-1608

# Invoice

| DATE | INVOICE NO. |
|---|---|
| 12/24/2003 | 2293 |

**BILL TO**

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| TERMS | DUE DATE |
|---|---|
| Due on receipt | 12/24/2003 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| Personnel | IRA Status Report | | 1,200.00 | 1,200.00 |

Thank you for your business.

| **Total** | $1,200.00 |
|---|---|

JC-3

JAN 08 2004 10:01                    978 772 4381      PAGE.02

**RMI** Risk Management Inc.
27 Stoneymeade Way
Acton, MA 01720-5676

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 1/12/2004 | 269 |

 **D&B** Small Business Solutions

Mr. Keith Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

| P.O. NO. | TERMS | DUE DATE | Account # | PROJECT |
|----------|-------|----------|-----------|---------|
|  | Due on receipt | 1/12/2004 | 2003-0820-101 | MCP Method 3 RC |

| ITEM | QUANTITY | DESCRIPTION | RATE | AMOUNT |
|------|----------|-------------|------|--------|
| Consulting - 2003 | 8 | RMI Proposal 2003-0820-101, dated 20th August 2003. Work Item 1.g. MCP Method 3 RC Final Report - report preparation. Note: completion of final report is on-hold until MADEP and Sanborn, Head & Associates, Inc. issues regarding collection of additional soil and/or groundwater data from beneath 295 Main Street have been addressed. | 130.00 | 1,040.00 |
| Consulting - 2003 | 1.5 | Out-of-Scope Services: Review of Sanborn, Head & Associates, Inc. (SHA) comments on RMI's MCP Draft Method 3 Risk Characterization. Preparation of Responses and Internal Memorandum to correct SHA's misunderstanding of the MCP requirements for development of Exposure Point Concentrations and use of Johnson & Ettinger SG-Screen Model Version 1.0 03/01 versus Version 2. 04/03, which was finalized 06/06/03 and released as Version 3.0 June 2003 for estimation of indoor air concentrations of VOCs. | 130.00 | 195.00 |
| Research Assistant | 0.5 | Out-of-Scope Services: Copying and mailing of Internal Memorandum to Kleenit, Inc., Rubin & Rudman; Coler & Colantonio, Inc. | 50.00 | 25.00 |
| Retainer | 1 | Balance of Retainer 2003-0820-101 Account Applied 12th January 2004. Retainer Account Balance = $0 Kleenit, Inc. (d.b.a. Dud's Cleaners and Launderers 293 and 295 Main Street Acton, MA 01720 RTN 2-14526 | -750.00 | -750.00 |
|  |  | Professional Services: Peter W. Woodman, Ph.D. |  |  |

Please make your check payable to "Risk Management Incorporated"

"Overdue invoices will be subject to interest at the rate of 1 1/2 percent per month." For Billing Questions please call (978) 266-2878. Ext. 15. Thank you.

FEDERAL ID: 04-3433069

| | |
|---|---|
| **Total** | $510.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $510.00 |

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
## JANUARY 2001 TO JANUARY 2004
## Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| R.G. Construction (Chelmsford) | 2/22/02 | $5,505.72 | 0 | $5,505.72 | 0 |
| Waste Management (Chelmsford) | 5/2/02 | $2,930.84 | 0 | 0 | $2,930.84 |
| | 5/2/02 | $3,000.00 | 0 | 0 | $3,000.00 |
| | 5/2/02 | $3,000.00 | 0 | 0 | $3,000.00 |
| Regenesis | 6/19/02 | $3,164.40 | 0 | 0 | $3,164.40 |
| Enviro-Safe Corp. | 9/19/01 | $1,658.00 | 0 | 0 | $1,658.00 |
| | 9/19/01 | $1,500.00 | 0 | 0 | $1,500.00 |
| | 10/17/01 | $952.00 | 0 | 0 | $952.00 |
| D'Amore Associates, Inc. | 3/3/01 | $1,650.00 | 0 | $1,650.00 | 0 |
| | 4/26/01 | $1,628.00 | 0 | $1,628.00 | 0 |
| | 5/28/01 | $300.00 | 0 | $300.00 | 0 |
| | 6/27/01 | $300.00 | 0 | $300.00 | 0 |

---

1 Kleenit offers these amounts for insurance settlement purposes only and Kleenit's proffer of such amounts is not and shall not be construed as a waiver of Kleenit's right to seek or obtain insurance coverage and payment for such amounts, or the admission of any fact, law or liability. Kleenit specifically reserves the right to pursue and obtain coverage for such amounts.

2 See Note 1, above.

538758_7

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
### Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| D'Amore Associates, Inc | 8/4/01 | $4,450.00 | 0 | $4,450.00 | 0 |
| | 9/1/01 | $2,025.00 | 0 | $2,025.00 | 0 |
| | 10/1/01 | $3,384.88 | 0 | $2,634.88 | $750.00 |
| | 10/27/01 | $1,612.50 | 0 | $1,612.50 | 0 |
| | 11/30/01 | $4,351.54 | 0 | $3,301.54 | $1,050.00 |
| | 12/30/01 | $337.50 | 0 | $337.50 | 0 |
| | 2/1/02 | $3,150.00 | 0 | $3,150.00 | 0 |
| | 3/1/02 | $953.00 | 0 | $953.00 | 0 |
| | 3/30/02 | $3,354.00 | 0 | $3,354.00 | 0 |
| | 5/1/02 | $1,500.00 | 0 | $1,500.00 | 0 |
| | 5/31/02 | $1,800.00 | 0 | $1,800.00 | 0 |
| | 5/31/02 | $1,050.00 | 0 | $1,050.00 | 0 |
| | 7/2/02 | $750.00 | 0 | $750.00 | 0 |
| | 8/2/02 | $2,054.00 | 0 | $2,054.00 | 0 |
| | 9/2/02 | $300.00 | 0 | $300.00 | 0 |
| | 9/29/02 | $300.00 | 0 | $300.00 | 0 |
| | 11/1/02 | $463.50 | 0 | $463.50 | 0 |
| | 11/29/02 | $600.00 | 0 | $600.00 | 0 |
| | 5/3/03 | $13,757.00 | 0 | $9,410.00 | $4,347.00 |
| | 5/30/03 | $1,400.00 | 0 | $1,400.00 | 0 |
| | 6/30/03 | $750.00 | 0 | $750.00 | 0 |
| | 7/7/03 | $3,282.52 | 0 | $3,282.52 | 0 |
| | 8/12/03 | $2,090.00 | 0 | $2,090.00 | 0 |
| | 12/15/03 | $2,575.00 | 0 | $2,575.00 | 0 |

538758_7

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
## JANUARY 2001 TO JANUARY 2004
### Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| Coler & Colantonio, Inc. | 12/24/03 | $1,200.00 | 0 | $1,200.00 | 0 |
| | 11/6/02 | $8,616.42 | 0 | $8,616.42 | 0 |
| | 12/20/02 | $4,906.81 | 0 | $4,906.81 | 0 |
| | 03/29/03 | $6,758.27 | 0 | $6,758.27 | 0 |
| | 10/17/03 | $4,098.33 | 0 | $4,098.33 | 0 |
| | 11/25/03 | $4,083.66 | 0 | $4,083.66 | 0 |
| | 12/16/03 | $999.21 | | $999.21 | |
| Risk Management Inc. | 10/30/02 | $1,500.00 | 0 | $1,500.00 | 0 |
| | 10/30/02 | $1,245.65 | 0 | $1,245.65 | 0 |
| | 12/20/02 | $198.60 | 0 | $198.60 | 0 |
| | 09/4/03 | $2,750.00 | | $2,750.00 | 0 |
| | 11/6/03 | $7,183.63 | | $7,183.63 | 0 |
| | 12/6/03 | $76.69 | | $76.69 | 0 |
| | 12/20/03 | $467.50 | | $467.50 | 0 |
| | 01/12/04 | $1,260.00 | 0 | $1,260.00 | 0 |
| Commonwealth of MA RE: Annual Compliance Fees | | $3,500.00 | 0 | $3,500.00 | 0 |

538758_7

3

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| SUB TOTAL | | $130,724.17 | 0 | $108,371.93 | $22,352.24 |
| **Rubin and Rudman LLP** | | | | | |
| Acton | 07/22/02 | $189.30 | $114.30 | | 0 |
| Acton | 09/09/02 | $1,510.75 | $1,510.75 | $75.00 | 0 |
| Acton | 10/09/02 | $2,299.62 | $743.75 | 0 | 0 |
| Acton | 10/30/02 | $3,768.70 | $2,271.22 | $1,555.87 | 0 |
| Acton | 11/11/02 | $2,705.24 | $1,497.48 | | 0 |
| Acton | 12/11/02 | $2,965.82 | $2,001.37 | $703.87 | 0 |
| Acton | 01/16/03 | $2,527.69 | $298.08 | $2,667.74 | 0 |
| Acton | 01/31/03 | $4,065.50 | $855.72 | $1,671.97 | 0 |
| Acton | 02/05/03 | $1,688.03 | $2,532.00 | $1,533.50 | 0 |
| Acton | 02/26/03 | $3,053.19 | $528.41 | $1,159.62 | 0 |
| Acton | 03/12/03 | $3,156.33 | $261.60 | $2,791.59 | 0 |
| Acton | 04/07/03 | $1,706.93 | $2,404.46 | $751.87 | 0 |
| Acton | 04/23/03 | $223.99 | $568.41 | $1,138.52 | 0 |
| Acton | 05/27/03 | $1,321.67 | $223.99 | 0 | 0 |
| Acton | 06/18/03 | $1,033.23 | $1,173.64 | $148.03 | 0 |
| Acton | 07/21/03 | $1,220.66 | $1,033.23 | 0 | 0 |
| Acton | 08/22/03 | $3,243.44 | $1,171.84 | $48.82 | 0 |
| Acton | 09/26/03 | $2,615.78 | $2,488.51 | $754.93 | 0 |
| Acton | 10/15/03 | $2,773.45 | $1,587.21 | $1,028.57 | 0 |
| Acton | 10/28/03 | $4,848.69 | $673.73 | $2,099.72 | 0 |
| Acton | | | $51.08 | $4,797.61 | 0 |

538738_7

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

KLEEN1, INC.'S ENVIRONMENTAL EXPENSES
JANUARY 2001 TO JANUARY 2004
Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| Rubin and Rudman LLP (continued) | 07/22/02 | $248.75 | $248.75 | 0 | 0 |
| Chelmsford | 09/09/02 | $1,470.80 | $1,292.40 | $178.40 | 0 |
| Chelmsford | 10/09/02 | $1,050.47 | $1,050.47 | 0 | 0 |
| Chelmsford | 10/30/02 | $2,840.72 | $2,301.61 | $539.11 | 0 |
| Chelmsford | 11/11/02 | $2,190.23 | $1,580.23 | $610.00 | 0 |
| Chelmsford | 12/11/02 | $1,546.00 | $1,001.80 | $544.20 | 0 |
| Chelmsford | 1/31/03 | $1,172.50 | $1,020.00 | $152.50 | 0 |
| Chelmsford | 02/05/03 | $121.10 | $121.10 | 0 | 0 |
| Chelmsford | 02/26/03 | $2,879.01 | $2,879.01 | 0 | 0 |
| Chelmsford | 03/12/03 | $3,455.29 | $3,392.79 | $62.50 | 0 |
| Chelmsford | 04/07/03 | $2,891.93 | $1,356.32 | $1,535.61 | 0 |
| Chelmsford | 04/23/03 | $329.37 | $55.00 | $274.37 | 0 |
| Chelmsford | 05/27/03 | $2,262.77 | $868.90 | $1,393.87 | 0 |
| Chelmsford | 06/18/03 | $1,586.03 | $674.06 | $911.97 | 0 |
| Chelmsford | 07/21/03 | $4,069.06 | $476.08 | $3,592.98 | 0 |
| Chelmsford | 08/22/03 | $2,151.45 | $1,101.50 | $1,049.95 | 0 |
| Chelmsford | 09/26/03 | $2,250.00 | $1,237.94 | $1,012.06 | 0 |
| Chelmsford | 10/28/03 | $897.23 | $543.81 | $353.42 | 0 |
| Donald Nagle P.C. | 2/1/03 | $1,622.02 | $1,297.62 | $324.40 | 0 |
| | 5/1/03 | $999.00 | $925.00 | $74.00 | 0 |
| | 5/31/03 | $518.00 | $463.00 | $55.00 | 0 |

RUBIN AND RUDMAN LLP

538758_7

CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED DOCUMENT
ADVANCED FOR SETTLEMENT PURPOSES ONLY

RUBIN AND RUDMAN LLP

## KLEENIT, INC.'S ENVIRONMENTAL EXPENSES
### JANUARY 2001 TO JANUARY 2004
### Chelmsford and Acton Sites, Massachusetts

| PAYEE | DATE | TOTAL AMOUNT OF INVOICE | CLAIM PRESENTMENT AMOUNT[1] | DEFENSE AMOUNT | INDEMNIFICATION AMOUNT[2] |
|---|---|---|---|---|---|
| | 7/1/03 | $499.50 | $481.00 | $18.50 | 0 |
| | 9/1/03 | $259.00 | $259.00 | 0 | 0 |
| | 10/1/03 | $221.06 | $221.06 | 0 | 0 |
| | 11/4/03 | $600.35 | $600.35 | 0 | 0 |
| Harry Nason, Inc. | 6/30/02 | $4,387.18 | $3,509.74 | $877.44 | 0 |
| SUB TOTAL | | $89,436.83 | $51,451.84 | $37,984.99 | 0 |
| SUB TOTAL | | 0 | | | |
| TOTAL | | $220,161.00 | $51,451.84 | $146,356.92 | $22,352.24 |

538756_7