UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SENTRY INSURANCE COMPANY, )<br>ROYAL & SUNALLIANCE, UTICA )<br>NATIONAL INSURANCE GROUP, and )<br>TRAVELERS PROPERTY AND )<br>CASUALTY, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 04-10351 (NG) |

**DEFENDANTS GLOBE INDEMNITY COMPANY'S AND ROYAL INSURANCE COMPANY OF AMERICA'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ROYAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Globe Indemnity Company and Royal Insurance Company of America (collectively "Royal") submit this Reply Memorandum in further support of their Motion for Partial Summary Judgment concerning Kleenit's claim that Royal has an obligation to pay Kleenit's pre-tender defense costs and that Royal has violated G.L. c. 93A and c. 176D. In its Opposition Memorandum, Kleenit attempts to avoid the clear rule under Massachusetts law that an insured is not entitled to pre-tender defense costs regardless of late notice or prejudice by citing cases which are not on point and which, when analyzed correctly, do not support Kleenit.

Thus, in stark contrast to the cases relied upon by Kleenit - Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994), Amtrol v. Tudor Ins. Co., 2002 WL 31194863 (D. Mass. Sept. 10, 2002) and Pacific Ins. Co. v. Eaton Vance Mgmt., 260 F. Supp. 2d 334 (D. Mass 2003), rev'd in part and vacated in part, 369 F.3d 584 (1st Cir. 2004) - Royal has never denied **coverage** based

1

on late notice or the voluntary payments provision.  Indeed, Royal has agreed to pay its share of all post-tender costs to date, and has refused only to reimburse Kleenit's pre-tender defense costs.  [Royal's Statement of Material Facts, ¶ 21]  Contrary to Kleenit's assertions, Royal's position in this regard is entirely correct under the law.

Finally, it is important to note that Kleenit concedes that there are no material facts in dispute.  [Opposition Memorandum, p. 2]   In its concise statement, Kleenit does identify two issues (paragraphs "a" and "b" on page 1), which it contends remain to be determined at trial.  However, both issues (whether prejudice is required for pre-tender costs, and the applicable standard for 93A and 176D), are legal issues within the province of the Court.  Further, in contravention of Local Rule 56.1, the remainder of Kleenit's Concise Statement is not an identification of material facts which Kleenit contends are in dispute.  Rather, Kleenit either reiterates facts established in Royal's moving papers, or sets forth improper and erroneous argument as fact. (See, e.g., ¶¶ 12, 13, 14, 15, 16, 17).

**I.    SARNAFIL IS INAPPLICABLE BECAUSE PRE-TENDER DEFENSE COSTS WERE NOT AT ISSUE.**

Kleenit places primary reliance to the Supreme Judicial Court's decision in Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994).  However, Kleenit's basic premise that Sarnafil "was, in fact, a 'pre-tender' case," is fatally flawed.  As the SJC in Sarnafil unequivocally stated: "[t]he **over-all issue** is whether [the insured's] breach of **voluntary payment** and **notice provisions** of the policies justify [the insurer's] failure to offer a defense to [the insured]."  418 Mass. at 302.  (Emphasis added.)  Thus, the court in American Mut. Liability Ins. v. Beatrice Companies, Inc.,

924 F. Supp. 861, 873 (D. Ill. 1996), recognized that <u>Sarnafil</u> was not a pre-tender defense costs case:[1]

> The only issue on defense costs addressed in <u>Sarnafil</u> was whether the insured's delay in notifying the insurer of litigation (in that case, arbitration) prejudiced the insurer. The court did not evaluate whether [the insurer] could be held responsible for pre-notice defense costs.

Indeed, the facts presented in <u>Sarnafil</u> demonstrate that it was not and could not have been a pre-tender defense costs case. First, before Sarnafil incurred a penny in defense costs it informed the insurer that it "intend[ed] to hold [the insurer] fully responsible for all costs in assessing, analyzing, settling and/or defending against the claim made by [two litigants], including [insured's] attorney fees…" <u>Id</u>. at 299.[2] Equally critical, the SJC held that, at the time the insured began to incur defense costs (December 7, 1984), a finder of fact could conclude that the insurer had already denied coverage, and that the insurer's December 18, 2004 letter to the insured (a mere 11 days later) constituted a formal disclaimer of coverage. <u>Id</u>. at 304.

Thus, unlike the present case, the SJC in <u>Sarnafil</u> confronted a situation where it was possible to prove that the insured began to incur costs of defense **after the insurer had initial notice** and **after the insurer had disclaimed coverage**. <u>Id</u>. It was only after undertaking this lengthy factual analysis that the SJC noted that, in the event the fact finder determined that the insurer **had not** disclaimed coverage, and that Sarnafil had an obligation to provide separate

---

[1] Although <u>Beatrice Companies</u> was analyzing the Massachusetts Appeals Court decision of <u>Sarnafil, Inc. v. Peerless Ins. Co.</u>, 34 Mass. App. Ct. 248 (1993), the Appeals Court in <u>Saranfil</u> applied the same standard as the SJC and held that the insurer would be required to demonstrate prejudice in order to avoid coverage for all of the defense costs associated with the counterclaim. Thus, contrary to Kleenit's argument, <u>Beatrice Companies</u> was not operating under an incorrect view of Massachusetts law. Further, like the SJC, the Appeals Court in <u>Sarnafil</u> did not discuss or consider the pre-tender issue.

[2] The SJC cited approximately five different occasions between September 1984 and November 1, 1984 that the insured notified the insurer that it intended to hold the insurer responsible for defense expenses, including attorney's fees. <u>Id</u>. All occurred before the insured incurred any defense costs.

3

notice of the counterclaim filed against it in the arbitration, that the insurer would be required to demonstrate prejudice to be relieved of **all** of its coverage obligations.  Id. at 305-6.

In sharp contrast to the insured in Sarnafil, Kleenit did not provide notice of any kind regarding the Chelmsford or Acton sites until **months** after it was both notified of its potential liability and began incurring defense costs.  When it did provide notice and make its claim to Royal, Kleenit's counsel did so under policy forms **which could not under any circumstances provide coverage for the claims at issue.**  [Royal's Statement of Material Facts, ¶¶ 16-18] Rather than simply deny the claims on this basis, Royal conducted an exhaustive search for potentially applicable policies, ultimately located a **potentially applicable** policy, produced it to Kleenit, and agreed to participate in Kleenit's defense under this policy despite the presence of a seemingly applicable pollution exclusion.  **Finally**, Royal has not disclaimed coverage.  [Id. at ¶ 7]

Kleenit's argument that Sarnafil trumps both Hoppy's Oil Service, Inc. v. Insurance Company of North America, 783 F. Supp. 1505 (D. Mass. 1992), and Managed Health Care, 2001 WL 34114949 (D. Mass. Sept. 28, 2001) is simply wrong.  First, M.G.L. c. 175, § 112 was in full effect when Judge Keeton ruled in Hoppy's Oil that the duty to defend is created by contract, and as such, it cannot arise "before the insurer has notice of the suit against the insured, or at the least of the underlying claim and the likelihood of suit."[3]  783 F. Supp. at 1509. Kleenit's assertion that this principle of law is dictum is likewise incorrect because it was critical to the Court's analysis and ultimate conclusion that the insured's breach of the notice provision precluded **coverage** for all defense costs.  Id.

---

[3] Although Kleenit again attempts to argue otherwise, the prejudice requirement in G.L. c. 175, § 112 does not apply to the instant case because Royal has not denied **coverage** based on late notice or for any reason, as the statute expressly contemplates.  Cf. Managed Health Care Systems v. St. Paul Fire & Marine Insurance Company, 2001 WL 34114949 (D. Mass. 2001)

4

Similarly, there is no reason to believe that the Court in Managed Health Care was "oblivious" to Sarnafil, as Kleenit contends. Rather, in light of the fact that Sarnafil is not a pre-tender defense costs case, the Managed Health Care Court must have concluded (correctly) that Sarnafil is simply not on point.

**II.    TO THE EXTENT APPLICABLE, AMTROL ACTUALLY SUPPORTS ROYAL'S POSITION.**

Kleenit's reliance on Amtrol is even further off the mark. The insurer in Amtrol did contend that the insured had incurred pre-tender defense costs for which it was not liable. The Court refused to grant the insurer summary judgment on this issue because of the existence of an issue of fact. 2002 WL 31194863, at *11. However, it is clear that the fact issue was not prejudice, but whether the insured had put the insurer on notice prior to incurring defense costs by virtue of a letter which it sent to the broker **the day after** suit was filed against it. Id. at *2-3 and n.9. It is therefore not surprising that the Amtrol Court never mentions prejudice in the context of the pre-tender defense costs issue, and the Court's pre-tender analysis therefore actually supports Royal's position. See id. at *11.

In Amtrol, the Court does note that, "[i]n order for an insurer to deny **coverage** based on the voluntary payments provision, it must be able to establish that it was prejudiced." 2002 WL 31194863 at *10. (Emphasis added.) However, this statement was made in the context of analyzing whether the insured's payments to third parties for property damage, and for the costs to repair or replace defective heaters (in other words, potential indemnity costs), were barred by virtue of the insured's breach of the voluntary payments provision. Id. at 10.[4] This also explains

---

[4] At page 15 of its Opposition Memorandum, Kleenit concedes that the Amtrol Court's discussion of the voluntary payments provision **does not** pertain to pre-tender defense costs.

5

why Amtrol does not discuss, much less distinguish, either Beatrice Companies, Inc. or Managed Health Care Systems, cases which clearly hold that prejudice is irrelevant to the pre-tender issue.

**III.    EATON VANCE IS NOT ON POINT ON THE MERITS, AND HAS ALSO BEEN VACATED BY THE FIRST CIRCUIT.**

Eaton Vance, the last case presented by Kleenit, is easily distinguished, since it deals with critically different policy language and policy obligations. However, as a threshold matter it is important to note that the District Court's decision was reversed on the core issue of whether coverage exists, and vacated and remanded on the issue of defense costs in light of the reversal on the coverage question. Pacific Insurance Company v. Eaton Vance, 369 F.3d 584, 593-4 (1st Cir. 2004).

The insured in Eaton Vance sought to recover Employee Retirement Income Security Act (ERISA) reimbursement payments made to certain employees, as well as the costs of defense and investigation, under a mutual fund errors and omissions policy. 260 F. Supp. 2d 334 at 338. Most importantly, the policy in Eaton Vance "clearly delegates the responsibility to defend to [the insured]." Id. at 343. This difference, which Kleenit acknowledges, was the sole, but critical, basis upon which the District Court rejected the insurer's argument and supporting case law[5] that it did not have to reimburse pre-tender defense costs regardless of prejudice because the Court was "not convinced that their reasoning applies where the insured is wholly responsible for defending itself." Id. at 344.

Nevertheless, the Eaton Vance Court did recognize that, where the insurer has a duty to defend the insured, "[e]ssentially, it is unfair to force the insurer, who might have made different choices, to pay for the defense prior to notification of a claim." Id. Although these pre-tender

---

[5] In support of the insurer's contention in Eaton Vance that it was not obligated to reimburse pre-tender defense costs regardless of prejudice, the insurer cited: Managed Health Care Systems, supra; Hoppy's Oil Service, Inc.

defense costs principles did not apply to the insurer in Eaton Vance because of the policy language, the Eaton Vance Court strongly inferred that an insurer in Royal's position is not obligated to pay pre-tender defense costs regardless of prejudice. Eaton Vance does not in anyway support Kleenit's position that an insurer in Royal's position must show prejudice before it can deny reimbursement of pre-tender defense costs.

**IV.    ROYAL IS ENTITLED TO SUMMARY JUDGMENT ON KLEENIT'S 93A CLAIM.**

Kleenit acknowledges, as it must, that Royal has relied on what Kleenit refers to as "pure" pre-tender decisions which fully support Royal's position. Under the standard articulated in Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 14 (1989), which precludes the imposition of liability under 93A so long as the insurer's position is based upon a "plausible" reading of the policy, it is beyond debate that Royal is entitled to summary judgment. Indeed, Royal's reading of the policy is not only "plausible" and supported by decisions **of this Court**, it is also consistent with the majority of jurisdictions which have ruled on the pre-tender issue. SL Indust. Inc. v. Amer. Motorists Ins. Co., 607 A.2d 1266, 1272 (N.J. 1992); Towne Realty Inc. v. Zurich Ins. Co., 548 N.W.2d 64, 68 (Wis. 1996); Great Am. Ins. Co. v. Aetna Cas. & Sur. Co., 876 P.2d 1314, 1319-20 (Haw. 1994); Crist v. Ins. Co. of North America, 529 F. Supp. 601, 604 (D. Utah 1982); Legacy Partners, Inc. v. Travelers Indem. Co., 2003 WL 22905287, *4 (9th Cir. Dec. 9, 2003); Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 399 n. 19 (5th Cir. 1995); Gully & Assoc., Inc. v. Wausau Ins. Co., 536 So. 2d 816, 818 (La. Ct. App. 1988); Fireman's Fund Ins. Co. v. Ex-Cell-O Corp., 790 F. Supp. 1318, 1330 (D. Mich. 1992).

---

supra; and Beatrice Companies, supra. Significantly, the Eaton Vance Court did not express disagreement with those decisions.

Incredibly, at page 17 of its Opposition Memorandum, Kleenit states that it provided "prompt" notice of the underlying claims, and that the carriers refused even to acknowledge the existence of their policies. Of course, had Kleenit provided prompt notice (instead of initially exercising its right to control the defense as a business decision – see Royal's Opening Memorandum, p. 7), there would be no dispute over the pre-tender issue. Perhaps even more egregious, however, is the suggestion that Royal improperly failed to acknowledge its policies.

As noted, Kleenit, **through its outside counsel**, originally claimed coverage under policy forms which could not provide coverage for the claims at issue, a conclusion which Kleenit has never contested. [Royal's Statement of Material Facts, ¶¶ 16-18] Nevertheless, Royal took it upon itself to locate and produce the actual policies issued to Kleenit, and Royal agreed to defend Kleenit under one of those policies despite the presence of a "sudden and accidental" pollution exclusion. See Lumbermens Mut. Cas. Co. v. Belleville Industries, Inc., 407 Mass. 675, 680-681, 555 N.E.2d 568, 572 (1990).

It required some time for Royal to locate these policies, and this accounts for the delay in Royal's acknowledgement of its defense obligation.[6] However, had Royal not searched for and located these polices, and instead accepted Kleenit's counsel's view of the applicable coverage, Royal would have simply and correctly denied Kleenit's claim. In essence, Kleenit seeks to punish Royal for taking the time necessary to do what Kleenit could not – locate the correct policies. Under these circumstances and in light of the decisional law emanating from this Court supporting Royal's position on pre-tender defense costs, it is outrageous for Kleenit to assert that Royal is in violation of 93A or 176D.

---

[6]  Kleenit's principal complaint about Royal's conduct is the time lag between Kleenit's presentation of the claim under inapplicable policy forms, and Royal's substantive response upon locating the actual policies. As set forth in Royal's Opening Memorandum, the policies were finally located by Royal within an old claim file stored in a warehouse.

## CONCLUSION

For the reasons set forth above and in its Opening Memorandum, Royal respectfully requests that this Court grant its Motion for Partial Summary Judgment.

Dated: August 16, 2004                    Respectfully submitted,

**ROYAL INSURANCE COMPANY OF AMERICA and GLOBE INDEMNITY COMPANY**

By Its Attorneys,


/s/ Seth V. Jackson
Karl S. Vasiloff, Esq. (BBO #555638)
Seth V. Jackson, Esq. (BBO #658669)
**ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP**
950 Winter Street, Suite 1300
Waltham, MA 02451
(781) 466-0700

## CERTIFICATE OF SERVICE

      I hereby certify that on August 16, 2004, I electronically filed Defendants Globe Indemnity Insurance Company and Royal Insurance Company of America's Reply Memorandum in Support of Royal's Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**Plaintiff, Kleenit, Inc.  (Electronically)**
Donald P. Nagle, Esq.
**Law Office of Donald P. Nagle, P.C.**
5 Main Street Extension, Suite 300
Plymouth, MA  02360

**Defendant, Sentry Insurance Company (Electronically)**
Michael Aylward, Esq.
**Morrison, Mahoney & Miller, LLP**
250 Summer Street
Boston, MA  02210

**Defendant, Utica National Insurance Group (Electronically)**
Richard E. Heifetz, Esq.
**Tucker, Heifetz & Saltzman, LLP**
Three School Street
Boston, MA  02108

**Defendant, Travelers Indemnity Company (Electronically)**
Joseph S. Berman, Esq.
**Berman & Dowell**
210 Commercial Street
Boston, MA  02109

**Defendant, Utica National Insurance Group (First Class Mail)**
Danielle M. Maloney, Esq.
**Tucker, Heifetz & Saltzman, LLP**
Three School Street
Boston, MA  02108

Dated:  August 16, 2004                      /s/ Seth V. Jackson
                                                          Karl S. Vasiloff, Esq. (BBO #555638)
                                                          Seth V. Jackson, Esq. (BBO #658669)
                                                          **ZELLE, HOFMANN, VOELBEL,**
                                                          **MASON & GETTE LLP**
                                                          950 Winter Street, Suite 1300
                                                          Waltham, MA  02451
                                                          (781) 466-0700