# EXHIBIT
## " A "

# United States District Court
# District of Massachusetts

KLEENIT, INC.,
        Plaintiff,

      v.                             CIVIL ACTION NO. 04-10351-RBC

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE,
UTICA NATIONAL INSURANCE GROUP,
TRAVELERS PROPERTY AND CASUALTY,
        Defendants.

## *FURTHER SCHEDULING*
## *ORDER - RULE 16(b), FED. R. CIV. P.*

COLLINGS, U.S.M.J.

The Court enters the within Further Scheduling Order pursuant to Rule 16(b), Fed. R. Civ. P.

(1)    Initial set(s) of interrogatories and requests for production of documents must be served **on or before the close of business on Tuesday, January 18, 2005;** responses, answers and/or objections shall be served **within the time provided by the Federal Rules.**

# EXHIBIT
# "B"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 04 10351 NG

| | |
|---|---|
| KLEENIT, INC. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SENTRY INSURANCE COMPANY, | ) |
| ROYAL & SUN ALLIANCE, | ) |
| UTICA NATIONAL INSURANCE GROUP, and | ) |
| TRAVELERS PROPERTY AND CASUALTY | ) |
| | ) |
|     Defendants. | ) |
| | ) |

### AFFIDAVIT OF ROBERT E. KINNEY

I, Robert E. Kinney, hereby depose and state the following:

1.    I am currently a resident of North Chelmsford, Massachusetts, and have lived for sixteen years at my home located at 11 Empire Street, in North Chelmsford.

2.    I am 51 years old and employed as professional masonry water proofer for Chapman Water Proofing, located in Dorchester, Massachusetts.

3.    In 1968, while attending Chelmsford High School, I started to work part-time at Care Cleaners on Drum Hill Road in Chelmsford through a work-study program. After graduating high school in 1971, I continued working at this location full-time until 1975.

4.    My duties at Drum Hill included all aspects of operating the store, including pressing, running the dry-cleaning machine, waiting on customers, and learning management

responsibilities.

5.    In 1975, I began working at the Chelmsford Center store in Central Square and worked there for six years, until 1981. I still lived in Chelmsford during this time, so when an opportunity came up to work at the Central Square store, I started working there full-time. I was the manager of the Central Square store until I left in 1981.

6.    In 1983, after working elsewhere, I returned to Kleenit and worked at the Wayland store until 1985. In 1985, I returned to Chelmsford and worked until 1987.

7.    In Chelmsford, there was one machine with a thirty pound capacity. Perchloroetheylene or "perc" was delivered about once a month from a tanker truck. The driver pumped perc into the dry cleaning machine from the truck through a hose, like home heating oil is delivered to a house. The dry cleaning machine held about 30 gallons on perc.

8.    When the pressure gauge of the machine increased by a certain amount, this indicated that the perc became too dirty to use. First thing in the morning, I would empty the dirty perc into the still pot, turn on the still, and adjust the temperature. When the perc got hot enough, it would boil and the clean evaporated perc was reclaimed. When the perc started to boil, the temperature had to be turned down, or the perc would boil over. This process of reclaiming the perc was the same for the Wayland, Drum Hill Road and Central Square stores.

9.    During my full-time employment at the Chelmsford store, from 1975 to 1981, I operated the machine, the still, the press, and waited on customers. Sometimes, most often when I was waiting on customers, I would forget to turn the temperature down, and the perc would boil over. I would smell the perc, and then realize I forgot to turn down the temperature on the still. When this happened, 3 to 5 gallons of perc would spill out of the still

2

onto the floor. As a young man back then, I enjoyed socializing with the customers, which I admit distracted me from paying attention to the temperature of the still. Also, at times when it was very busy, I would forget about the still and it would boil over before I had the chance to turn the temperature down. Every once in a while this would occur, or maybe 4 or 5 times a year, the still would boil over. When the perc boiled over and spilled on the floor, I would grab rags to mop it up and wring out the spilled perc back into the machine. Anyone else who was working would help, but we could never get it all. The floor was concrete and covered in most places with linoleum tile. But the perc would seep through cracks in the floor and tile before we got it all. As a waterproofer, I know that the perc would have found its way through the floor.

10.     Most of the perc we were able to clean up was the sludgy material from the still, but the liquid perc was much harder to clean up. On one occasion, I remember that so much perc was spilled that it flowed out the back door before we could get to it. It is hard to estimate, but about 8 gallons of perc spilled on that occasion.

11.     In about the Spring or Summer of 1983, I started working at the Wayland store.

12.     I was manager at this store the whole time I worked there, until 1985. It was a small store and often worked alone. When I got busy, waiting on customers, sometimes a spill would occur. I would forget to turn down the temperature and several gallons of perc would spill on the floor, like the accidents in Chelmsford. I would try to mop up the spills when they occurred, but a lot was lost through the cracks in the concrete floor. The floor was painted, but the concrete was old and some perc was lost. At least some of the spilled perc would have reached the floor drain before I noticed that there was a boil over and had a

3

chance to catch it with rags or large items that were to be cleaned. I remember one time I tired to capture spilled perc with a big quilt.

13.    The spills would not always result from the still accidentally boiling over. I remember a time when I did not close the dry cleaning door securely and, when the machine was filled with perc, about half way up the window in the door, the door opened and the perc spilled out.

14.    While I worked at the Central Square store, I witnessed at least 20 to 25 spills from 1978 to 1981, when I stopped working for Kleenit.

15.    When I returned to the Central Square store in 1985, I was more responsible about operating the still, so fewer spills occurred. But a few times each year during this period, a spill would occur as a result of the still boiling over when I was busy and I didn't turn the still temperature down in time.

I swear under the pains and penalties of perjury the above statements of fact are true and accurate to the best of my personal knowledge.

Robert E. Kinney

Date: 12-12-05

4

# EXHIBIT
## "C"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KLEENIT, INC. | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10351 (NG) |
| SENTRY INSURANCE COMPANY, ROYAL & SUNALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF 30(B)(6) DEPOSITION OF KEITH CRIDER

TO:    Kleenit Inc. and its counsel,
Donald Nagle
5 Main Street Extension, Suite 300
Plymouth, MA 02360

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Defendants Globe Indemnity Company and Royal Insurance Company of America (collectively

"Royal") will take the deposition upon oral examination for the purpose of discovery and/or use

at trial of Mr. Keith Crider of Plaintiff Kleenit before a Notary Public or other person authorized

to render an oath. The deposition of Mr. Crider will take place at the offices of **Zelle, Hofmann,**

**Voelbel, Mason & Gette, 950 Winter Street, Suite 1300, Waltham, Massachusetts 02451** on

a subsequently agreed upon time between the parties on the subject set forth in the attached

Schedule A. Since Kleenit has already designated Keith Crider to appear on its behalf, Mr.

Crider should submit to examination under oath concerning the matters identified in the attached

Schedule A.

Dated: October 26, 2004

Respectfully submitted,

**ROYAL INSURANCE COMPANY OF AMERICA and GLOBE INDEMNITY COMPANY**

By Its Attorneys,

Karl S. Vasiloff, Esq. (BBO #555638)
Seth V. Jackson, Esq. (BBO #658669)
**ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP**
950 Winter Street, Suite 1300
Waltham, MA 02451
(781) 466-0700

2

## SCHEDULE A

## DEFINITIONS

In addition to the uniform definitions set forth in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts that Royal hereby fully incorporates by reference, the following definitions apply.

<u>Definition No. 1.</u>    <u>Kleenit</u>.  This term shall mean the Plaintiff Kleenit, Inc. and any of its predecessors, successors, employees, officers, directors, agents, or representatives.

<u>Definition No. 2.</u>    <u>Royal</u>.  This term shall collectively mean the Defendants, Globe Indemnity Company and Royal Insurance Company of America, and any of its employees, officers, directors, agents, or representatives.

<u>Definition No. 3.</u>    <u>Sites</u>.  This term shall mean the drycleaning and laundering facilities located at 28 Central Square Chelmsford, Massachusetts, 293-295 Main Street, Acton, Massachusetts, and 298 Boston Post Road, Wayland, Massachusetts.

<u>Definition No. 4.</u>    <u>Policies.</u>  This term shall mean the Royal policies issued to Kleenit regarding the Sites.

<u>Definition No. 5.</u>    <u>Environmental Claims</u>.  This term shall mean the claims asserted against You arising out of the Sites.

<u>Definition No. 6.</u>    <u>Relate</u>.  This term shall mean consisting of, containing, mentioning, suggesting, reflecting, concerning, summarizing, analyzing, discussing, involving, dealing with, emanating from, directed at, pertaining to in any way, or in any way logically or factually connected or associated with the matter discussed.

<u>Definition No. 7.</u>    <u>You or Your</u>.  These terms shall refer to the Plaintiff Kleenit.

<u>Definition No. 8.</u>    <u>Release</u>.  This term shall mean any intentional, unintentional, or

3

accidental spilling, dumping, leaking, leaching, or transferring of any hazardous substance, fuel

oil, or gasoline, or its components, into the uncontrolled, natural environment.

Definition No. 9.     Sudden and Accidental.  This term shall mean a release applied to

those release that are both unexpected and abrupt in the temporal sense.

Definition No. 10.     Remediate.  This term shall mean the terms "remove," "removal,"

"response," and "response action" as defined in M.G.L. ch. 21E, §2.

Definition No. 11.     Hazardous Materials, Operator, Assess, Environment, Release.

These terms shall be defined as in M.G.L. ch. 21E, §2.

## TOPICS FOR EXAMINATION

1.     All facts relating to the Environmental Claims at the Sites.

2.     All facts relating to communication with any federal, state, or local regulatory

agency or board (including but not limited to the Massachusetts Department of Environmental

Protection) regarding the Environmental Claims at the Sites.

3.     All facts relating to communication with private parties, including Your

landlord(s) regarding the Environmental Claims at the Sites.

4.     All facts relating to the alleged environmental contamination that is the subject of

the Environmental Claims, including the cause, extent, source and timing of such contamination

and any allegedly sudden and accidental release giving rise to such contamination.

5.     All facts relating to cleanup, remediation, removal, or abatement of the alleged

environmental contamination performed at the Sites.

6.     All facts relating to cleanup, remediation, removal, or abatement of the alleged

environmental contamination performed at locations surrounding or near the Sites.

7.     All facts relating to the cause and timing of the alleged environmental

contamination in the soil, surface water, groundwater and air at the Sites, including but not

4

limited to any inspections, testing, sampling or analysis.

8.    All facts relating to the implication of coverage by the Royal policies for the Environmental Claims at the Sites.

9.    Communication between You and Royal regarding the Environmental Claims at the Sites.

10.    All facts relating to the damages allegedly suffered by Kleenit, including but not limited to Your actual or anticipated costs, expenses, and/or attorney fees incurred or to be incurred in defense of the Environmental Claims.

11.    Identity of all current or former Kleenit employees with knowledge or information relating to the Environmental Claims at the Sites.

12.    Identity of all persons who performed any investigation, analysis, cleanup, remediation, removal, or abatement regarding the Environmental Claims at the Site.

# EXHIBIT
# "D"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SENTRY INSURANCE COMPANY, | ) |
| ROYAL & SUNALLIANCE, UTICA | ) |
| NATIONAL INSURANCE GROUP, and | ) |
| TRAVELERS PROPERTY AND | ) |
| CASUALTY, | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.  04-10351 (NG)

## **DEFENDANTS GLOBE INDEMNITY COMPANY AND ROYAL INSURANCE COMPANY OF AMERICA'S FIRST SET OF INTERROGATORIES TO PLAINTIFF KLEENIT**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Globe Indemnity Company and Royal Insurance Company of America (collectively "Royal") demand responses to the following interrogatories within thirty (30) days at the office of Zelle, Hofmann, Voelbel, Mason & Gette, LLP, 950 Winter Street, Suite 1300, Waltham, Massachusetts 02451.

## **DEFINITIONS**

In addition to the uniform definitions set forth in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts that Royal hereby fully incorporates by reference, the following definitions apply to these Interrogatories.

Definition No. 1.    Kleenit.  This term shall mean the Plaintiff Kleenit, Inc. and any of its predecessors, successors, employees, officers, directors, agents, or representatives.

Definition No. 2.    Royal.  This term shall collectively mean the Defendants, Globe Indemnity Company and Royal Insurance Company of America, and any of its employees,

officers, directors, agents, or representatives.

Definition No. 3.    Sites.  This term shall mean the drycleaning and laundering facilities located at 28 Central Square Chelmsford, Massachusetts, and 293-295 Main Street, Acton, Massachusetts and 298 Boston Post Road, Wayland, Massachusetts.

Definition No. 4.    Policies.  This term shall mean the Royal policies issued to Kleenit regarding the Sites.

Definition No. 5.    Environmental Claims.  This term shall mean the claims asserted against You arising out of the Sites.

Definition No. 6.    Relate.  This term shall mean consisting of, containing, mentioning, suggesting, reflecting, concerning, summarizing, analyzing, discussing, involving, dealing with, emanating from, directed at, pertaining to in any way, or in any way logically or factually connected or associated with the matter discussed.

Definition No. 7.    You or Your.  These terms shall refer to the Plaintiff Kleenit.

Definition No. 8.    Release.  This term shall mean any intentional, unintentional, or accidental spilling, dumping, leaking, leaching, or transferring of any hazardous substance, fuel oil, or gasoline, or its components, into the uncontrolled, natural environment.

Definition No. 9.    Sudden and Accidental.  This term shall mean a release applied to those release that are both unexpected and abrupt in the temporal sense.

Definition No. 10.    Remediate.  This term shall mean the terms "remove," "removal," "response," and "response action" as defined in M.G.L. ch. 21E, §2.

Definition No. 11.    Hazardous Materials, Operator, Assess, Environment, Release. These terms shall be defined as in M.G.L. ch. 21E, §2.

## GENERAL INSTRUCTIONS

Instruction No. 1.     The discovery requests contained herein are continuing, and should You obtain other information or documents which would add to or change Your responses, You are directed to provide such additional information or documents to the undersigned attorneys for Royal immediately upon Your discovery or receipt of such information or documents.

Instruction No. 2.     If You claim that the attorney-client privilege or any other privilege or discovery immunity applies to any discovery requested herein, please provide information sufficient to support Your claim of privilege or discovery immunity as follows: With respect to a document, state separately for each document, the type of document (e.g., letter, memorandum, etc.); the subject matter of the document; each and every person who prepared, signed, or participated in the preparation of the document; each and every person who received the document; and the identity of all attachments or enclosures to the document. For all privileges or discovery immunities claimed, state the nature of the privilege or immunity asserted and any statutes or rules that You contend support Your assertion of the privilege.

Instruction No. 3.     The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

Instruction No. 4.     The singular shall be construed to include the plural, and vice versa, to make the request inclusive rather than exclusive.

Instruction No. 5.     The masculine shall be construed to include the feminine, and vice versa, to make the request inclusive rather than exclusive.

Instruction No. 6.     "Each" includes the word "every," and "every" includes the word "each."  "Any" includes the word "all," and "all" includes the word "any."  "And" includes the word "or," and "or" includes the word "and."

3

Instruction No. 7.    If You object to any part of a specific Interrogatory, state the objections in full and provide an answer to the remaining portions of such Interrogatory to which no objections is interposed.

## INTERROGATORIES

Interrogatory No. 1.    Identify each and every person who has answered, provided any information, been consulted, or participated in the preparation of the answers to these Interrogatories and, for each such person identified, identify the Interrogatories with which the person was involved.

Interrogatory No. 2.    Identify all communications by or between You and any person, including but not limited to any local, state, or federal government agencies or officials, concerning the alleged environmental contamination at issue in this litigation.

Interrogatory No. 3.    Identify all Environmental Claims which have been or may be asserted against Kleenit relating to the alleged environmental contamination at issue in this litigation. For each claim identified, please include the following information: the identity of the claimant(s) and/or potential claimant(s) and the specific subject matter or nature of the claim (including, but not limited to the alleged damages, including the amount of alleged damages; identification of all contaminants and/or material(s) at issue with respect to the claim, including specifically identifying the nature of the alleged environmental contamination; and a description of all property that is the subject or source of the claim).

Interrogatory No. 4.    Identify any lawsuit and/or other proceedings (including every local, state or federal judicial, administrative, legislative or alternative dispute resolution proceeding) which has been, or is expected to be, filed with respect to the Environmental Claims at the Sites, including the venue or expected venue of the action, the parties or expected parties, and, where applicable, the case or docket number, a description of the facts alleged and the relief

4

sought by each claimant, the date on which Kleenit became aware of the claim and the identity of all Kleenit employees having knowledge regarding the claim.

Interrogatory No. 5.    Identify each expense which Kleenit has incurred to date or estimates that it will incur for the defense, investigation, cleanup or abatement of the Environmental Claims at the Sites, including but not limited to a description of each such expense, the amount of the expense, the date on which the expense was incurred, the reason for the expense, what payment has been made, and the person or persons seeking payment.

Interrogatory No. 6.    Itemize and identify all damages which You seek in this case, including the amount of each item of damage, the date on which it was or will be incurred, and the reason for which it was or will be incurred.  In responding to this interrogatory, please identify each person performing services for which such costs were incurred and identify all bills, statements, invoices, or other documents in Your possession which detail the nature, date, amount, and charge for such services and identify the custodian thereof.

Interrogatory No. 7.    Identify and describe the alleged environmental contamination at issue in this litigation, including but not limited to the following information: the identity, location and use of the property where the alleged environmental contamination is located; the owner and operator of the property where the alleged environmental contamination is located; the date(s) on which the property was exposed to the alleged environmental contamination; the date(s) on which the alleged environmental contamination was removed, remediated, cleaned up or abated; and the cause or causes of the alleged environmental contamination, including without limitation when and how the substances allegedly contaminating the environment at or near the Sites entered the air, soil, surface water or groundwater at the Sites.

Interrogatory No. 8.    Identify all property damage that has occurred in connection with the alleged environmental contamination through a detailed description of each such alleged

Interrogatory No. 13.  Identify all persons, including past or present Kleenit employees, with knowledge of the alleged environmental contamination or whose duties include any contact with the alleged environmental contamination which is at issue in this litigation.

Interrogatory No. 14.  Describe when and how You first became aware of the presence of the environmental contamination at the Sites, including the identity of all persons with knowledge of the facts relating to Your first knowledge and the identity of all documents relating thereto.

Interrogatory No. 15.  Please identify all agents, servants, employees or other representatives of Kleenit, Inc., who participated in the procurement , negotiation, execution, administration or interpretation of the alleged polices or the maintenance of insurance coverage for or on behalf of Kleenit, Inc, and in Your answer please state the period(s) of time during which each person performed such functions; the function(s) each such person performed; the identity of each such person's employer during the period of time in which each such function was performed; the position or job title of each such person if currently employed by Kleenit, and, if not currently employed by Kleenit, state the date of termination of each such person's employment with Kleenit and the current address at which each such person may be reached.

Interrogatory No. 16.  Please identify all brokers or agents used by Kleenit to inquire about, negotiate, execute, or otherwise obtained the alleged policies, and in Your answer please identify the alleged policies for which each such broker or agent had responsibilities.

Interrogatory No. 17.  Please state with respect to each of the alleged policies whether You have in Your possession, custody or control:

a)    the signed original of the policy;
b)    a signed copy of the policy;
c)    an unsigned copy of the policy;
d)    any part of the original policy;

7

e)    any part of a copy of the policy; and

f)    the location and present custodian of each such document identified in items a through e.

Interrogatory No. 18.  Please identify all demands, requests for coverage, or claims made by or on behalf of the plaintiff to Royal demanding or requesting that Royal provide You with a legal defense, indemnity, or any other coverage under any of the alleged Policies.

Interrogatory No. 19.  Please identify any and all claims paid by Royal under any of the alleged policies, regardless of their relation to the allegations of the complaint, including, but not limited to, the amount of the claim, the amount paid by Royal, and the date of the claim.

Interrogatory No. 20.  Please identify in detail and with particularity all documents upon which You rely to prove or establish the existence, terms, conditions, provisions, and/or exclusions of the alleged policies.

Interrogatory No. 21.  Please identify the dates of coverage, type of policy (liability, garage policy, etc.) issued by Sentry Insurance Company, Utica National Insurance Group and Travelers Property & Casualty, and list the policy numbers and effective dates of coverage for each such policy.

Interrogatory No. 22.  For each of the alleged Royal policies, please state in detail and with particularity all facts upon which You rely to support Your contention that the policy exists or ever existed.

Interrogatory No. 23.  For each of the alleged Royal policies, identify the basis upon which You contend that the policies provide You coverage with respect to the environmental claims including an identification of all policy provisions that You contend entitle You to coverage, including that any discharge, dispersal, release or escape of hazardous substances giving rise to environmental contamination was sudden or accidental.

Interrogatory No. 24. Set forth the name and address of all proposed witnesses who You expect to call at trial, and, as to each witness, please state the subject matter upon which the witness is expected to testify and the substance of the facts to which the witness is expected to testify.

Interrogatory No. 25. Identify all documents, including all exhibits and attachments thereto, that You intend to use at any trial of this action.

Dated: October 26, 2004                    Respectfully submitted,

                                           **ROYAL INSURANCE COMPANY OF
                                           AMERICA and GLOBE INDEMNITY
                                           COMPANY**

                                           By Its Attorneys,

                                           Karl S. Vasiloff, Esq. (BBO #555638)
                                           Seth V. Jackson, Esq. (BBO #658669)
                                           **ZELLE, HOFMANN, VOELBEL,
                                           MASON & GETTE LLP**
                                           950 Winter Street, Suite 1300
                                           Waltham, MA 02451
                                           (781) 466-0700

## CERTIFICATE OF SERVICE

I Seth V. Jackson, hereby certify I served a copy of the foregoing document on October 26, 2004, on all parties of record, by first class mail, postage prepaid to:

**Plaintiff, Kleenit, Inc.**
Donald P. Nagle, Esq.
**Law Office of Donald P. Nagle, P.C.**
5 Main Street Extension, Suite 300
Plymouth, MA  02360

**Defendant, Sentry Insurance Company**
Michael Aylward, Esq.
**Morrison, Mahoney & Miller, LLP**
250 Summer Street
Boston, MA  02210

**Defendant, Utica National Insurance Group**
Richard E. Heifetz, Esq.
**Tucker, Heifetz & Saltzman, LLP**
Three School Street
Boston, MA  02108

**Defendant, Travelers Indemnity Company**
Joseph S. Berman, Esq.
**Berman & Dowell**
210 Commercial Street
Boston, MA  02109

**Defendant, Utica National Insurance Group**
Danielle M. Maloney, Esq.
**Tucker, Heifetz & Saltzman, LLP**
Three School Street
Boston, MA  02108

_____
Seth V. Jackson, Esq.