UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 - RBC

| | |
|---|---|
| KLEENIT, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SENTRY INSURANCE COMPANY, | ) |
| ROYAL & SUN ALLIANCE, | ) |
| UTICA NATIONAL INSURANCE GROUP, and | ) |
| TRAVELERS PROPERTY AND CASUALTY | ) |
| | ) |
| Defendants. | ) |

**THE PLAINTIFF KLEENIT, INC.'S OPPOSITION TO THE DEFENDANTS', UTICA NATIONAL INSURANCE GROUP AND ROYAL INDEMNITY COMPANY, MOTION TO EXCLUDE THE AFFIDAVIT OF ROBERT E. KINNEY AND TO EXCLUDE TESTIMONY**

## I.   INTRODUCTION

The Plaintiff Kleenit, Inc. ("Kleenit") files this opposition to the Defendants', Utica National Insurance Group ("Utica") and Royal Indemnity Company ("Royal"), Motion to Exclude the Affidavit of Robert E. Kinney and to Exclude Testimony at trail. In support of its opposition, Kleenit states that its production of the Affidavit of Robert E. Kinney ("Kinney Affidavit") was made pursuant to its duty under F.R.C.P. 26(e)(2) to amend materially incomplete responses to prior discovery requests. Furthermore, Utica and Royal are not prejudiced by Kleenit's supplementation because Kleenit has already offered to stipulate to an amended discovery schedule that would provide ample

opportunity to depose Mr. Kinney and to investigate facts disclosed by his testimony. Affidavit of Donald P. Nagle, attached as Exhibit A. Litigation has not proceeded to the point where Kleenit's supplementation could be prejudicial to Utica or Royal. Factual discovery has only recently concluded. Dispositive motions regarding coverage have not been filed. No party has identified their expert witnesses, and a trial date has yet to be set.

If Kleenit had failed to supplement its response to factual discovery in compliance with F.R.C.P 26(e)(2), Kleenit would have been subject to sanctions under F.R.C.P. 37(c). Utica and Royal's attempt to exclude Kleenit's supplementation is wholly without basis, and can only be explained by the fact that such supplementation strengthens Kleenit's claims against the insurers. Granting Utica and Royals' motion would have the bizarre effect of sanctioning Kleenit's good faith compliance with the Federal Rules of Civil Procedure. Even if Utica and Royal's attempt to block Kleenit's discovery supplementation had any merit, which it does not, their request to exclude the Affidavit of Robert E. Kinney is draconian and would be highly prejudicial to Kleenit.

By supplementing its incomplete response to discovery requests, Kleenit did not violate this Court's Scheduling Order, as Utica and Royal assert, but simply complied with the Federal Rules of Civil Procedure. As required under these rules, upon discovering that a fact witness was available whose testimony would materially change the nature of its previous responses, Kleenit immediately disclosed the existence of the fact witness and produced an affidavit summarizing his expected testimony.

## II.   FACTUAL BACKGROUND

On or about September 25, 2002, Kleenit submitted notices of claim to Utica, Royal, as well as Sentry Insurance Company and the Travelers Indemnity Company ('the Insurers") pertaining to Notices of Responsibility ("NORs") issued by the Massachusetts Department of Environmental Protection ("DEP") to Kleenit. DEP issued the NORs pursuant to M.G.L. c. 21E for alleged contamination at two drycleaning facilities owned by Kleenit and located in Action and Chelmsford, Massachusetts. The Insurers agreed to pay Kleenit's reasonable post-tender defense costs but refused to reimburse Kleenit for pre-tender defense cost and also had not paid all post-tender defense costs and had not paid Kleenit's post-tender attorneys' fees incurred in defending the NORs. The insurers also reserved their rights regarding the duty to indemnify Kleenit for any costs incurred to cleanup or remediate pollution at the Acton and Chelmsford sites. In response to the Insurers' failure to pay pre-tender costs all of Kleenit's post-tender attorneys' fees in defending the NORs, on November 14, 2003, Kleenit filed a complaint in the Lowell Superior Court against the insurers, seeking declaratory relief and for breach of their liability insurance policies and violation of M.G.L. c. 93A and 176D.

On February 19, 2004, after serving the Complaint and obtaining a short order of notice, Kleenit filed and served an Emergency Motion for Preliminary Injunction in Lowell Superior Court. The insurers removed the action to this Court on February 20, 2004 and thereafter filed an answer and counterclaim seeking a declaration of rights regarding defense and indemnity for the Chelmsford, Acton, and the Wayland store. Kleenit re-filed an Emergency Motion for Preliminary Injunction, which it had originally

3

filed in the Lowell Superior Court. The defendants filed oppositions and the motion was denied by Judge Nancy Gertner On September 13, 2004.

In May, 2004, the parties appeared before Judge Gertner for a Rule 16 Scheduling Conference. At that conference, Judge Gertner approved the discovery schedule agreed to by the parties and further ordered that the defendants file their respective motions for partial summary judgment as to the issue of pre-tender defense costs by the middle of June, 2004. Per this order, the Insurers filed motions for partial summary judgment and Kleenit filed its opposition in July, 2004. Shortly thereafter, the Court scheduled hearing on the motions on October 14, 2004. The hearing did not go forward as scheduled, however, because Judge Gertner reassigned this action to this session. Immediately prior to the rescheduled hearing, the parties reached a settlement on the issue of pre-tender costs and claims under G.L. c. 93A and G.L. c. 176D.

After a status conference on December 22, 2005, Magistrate Judge Collings issued a Further Scheduling Order requiring that all non-expert discovery be completed by April 29, 2005. The parties appeared before Magistrate Judge Collings at the next status conference on July 26, 2005, at which time all discovery was completed except for the deposition of a Kleenit Rule 30(b)(6) witness. After repeatedly rescheduling this deposition, the Insurers finally completed their deposition of Kleenit's Rule 30(b)(6) witnesses on August 10, 2005.

Throughout this period of factual discovery, the Insurers constantly requested Kleenit to supplement its responses with additional documents not initially requested or to provide documentation supporting testimony made during depositions. The Insurers demanded additional documentation of occurrences during their respective policy periods

4

which gave rise to the insurance claims. These requests were burdensome to Kleenit because the documents requested were relating to activities which occurred, in some instances, over 40 years ago. As a small, family owned business, Kleenit did not have a systemized archival system enabling easy retrieval of historical documents. Many requested documents had been thrown away years ago, making disclosure of otherwise pertinent witnesses or documents impossible. Furthermore, Kleenit struggled to provide the manpower dedicated to conduct these time-consuming searches. Nevertheless, Kleenit did not object to these burdensome requests and attempted in good faith to respond to the Insurers' request to supplement its responses in a timely manner. Kleenit continued to search even unlikely locations for documents requested to support deposition testimony or to help refresh recollection of memories of events which occurred thirty or forty years ago.

At the August 30, 2005 Status Conference, all parties agreed to participate in the Court's Alternative Dispute Resolution program, as an alternative to further litigation. Mediation sessions occurred on November 9, 2005 and December 15, 2005. During this process, Kleenit continued to search for documents which may support their claims and initial documentation produced during discovery. In fact, prior to the November 9, 2005 mediation session, Kleenit did find some additional documents, including ledger entries and a copy of an insurance policy. These documents were produced to the insurers prior to the mediation. In addition, in order to facilitate mediation, Kleenit prepared a summary of costs and a separate chart summarizing documented occurrences within policy periods and coverage provided by each policy. These summaries and additional

documentation only recently discovered was provided to the insurers prior to the first mediation session.

Prior to the second mediation session, scheduled for December 15, 2005, Keith Crider, who is currently the Vice President of Kleenit, having worked in a management capacity for Kleenit since 1967, was reminded of the name of a former Kleenit employee by his barber. A description of this admittedly serendipitous encounter, is set forth in the Affidavit of Keith Crider, attached ad Exhibit B.

Mr. Crider was deposed by all the insurers on June 15, 2005 and again on July 7, 2005, during which time he was repeatedly asked about former employees and his recollection of spills, which would give rise to a claim under the policies issued by the insurers. Affidavit of Keith Crider ("Aff. Crider"), ¶ 4.

In late November, 2005, while Mr. Crider was getting a haircut, his barber mentioned to him that he recently saw Robert Kinney at an event in Boston. Robert Kinney had been a former Kleenit employee and a customer of Mr. Crider's barber. Aff. Crider, ¶ 6.

Prior to this, Mr. Crider had no recollection of Robert Kinney's name, not did he associate Mr. Kinney with any specific spill occurrence during his employment at Kleenit. Aff. Crider, *Id.* In fact, Mr. Crider has not heard from or of Mr. Kinney for over 15 years but, given all the questions Mr. Crider was asked about historical information in this case, he decided to give Mr. Kinney a call. Aff. Crider, *Id.*

When Mr. Crider spoke to Mr. Kinney, he was reminded that Mr. Kinney worked at the Wayland Cleaners store in Wayland and at Care Cleaners in Chelmsford. Mr.

Kinney described his years as a dry cleaner at these locations and informed Mr. Crider of several accidental spills that happened during his tenure at these stores. Aff. Crider, ¶ 7.

While Utica and Royal attempt to characterize Mr. Kinney's experience as typical "dirty practices" of Kleenit, Mr. Crider, having worked at Kleenit since 1967, was aware of only a few releases of the cleaning agent, perchloroethelyne, and Kleenit took great care to recapture as much as possible because it was expensive. Aff. Crider, ¶ 8. 9. Mr. Crider recognizes that, as a manager Kleenit, accidental spills occurred of which he was not always informed. Aff. Crider, ¶ 7,8.

Prior to speaking with Mr. Kinney and reviewing his December 12, 2005 Affidavit, Mr. Crider was not aware of the specific incidents Mr. Kinney described and would have disclosed this knowledge earlier, had he known. Aff. Crider, ¶ 8.

Prior to the second mediation session on December 15, 2005, Kleenit submitted in affidavit form Mr. Kinney's testimony of occurrences and a revised chart identifying each documented occurrence and policy coverage for each insurer. Thereafter, mediation failed to result in a global settlement of this matter.

## **III. DISCUSSION**

Kleenit's supplementation of its response to Utica and Royal's discovery is required under F.R.C.P. 26(e)(2) and the attempt by Utica and Royal to exclude the Affidavit of Robert Kinney and his testimony at trial is without merit. The Federal Rule provides:

> A party is under a duty seasonably to amend a prior response an interrogatory, request for production, or a request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective

information has not otherwise been made known to the other
parties during the discovery process or in writing.

F.R.C.P. 26(e)(2).

Kleenit complied with this rule by submitting the Affidavit of Robert E. Kinney within days of determining that he is in possession of facts material to this case. This affidavit was provided to Utica and Royal prior to the requirement of any party to identify expert witnesses, prior to the filing of dispositive motions on the remaining issue of indemnity, and even prior to setting a date for trial. Such disclosure was therefore seasonably made in compliance with F.R.C.P. 26(e)(2). This rule contemplates that additional information may come to light _after_ responses to discovery have been completed.

Thus, the rule imposes an ongoing duty to supplement responses when information not previously known or discoverable is revealed. Supplementation after the deadline for non-expert factual discovery does not violate the rule, it complies with it. Failure to disclose known information previously requested in discovery is the omission the rule seeks to prohibit. However, Utica and Royal argue that Kleenit should be punished for supplementing its discovery responses by excluding the Kinney's Affidavit. This sanction is properly imposed under F.R.C.P. 37(a), when a party, unlike Kleenit, fails to comply with F.R.C.P. 26(e)(2) by strategically withholding amendment of discovery responses until the last possible moment, such as the eve of trial.

Kleenit would gain no such strategic advantage by withholding the disclosure of Robert E. Kinney as a 30(b)(6) witness. Kleenit may have avoided the cost of litigation to date had Mr. Kinney's existence been known earlier. Utica and Royal are seeking

sanctions normally imposed under F.R.C.P. 37(a) for a failure to comply with the ongoing duty to supplement. "Where a party fails to comply with the disclosure requirements, Rule 37 of the Federal Rules of Civil Procedure gives the court the ability to impose sanctions, including the preclusion of certain witness testimony." Borden v. Ingersoll-Rand Co., 2003 WL 21488511(E.D. Pa.).

Rule 37(c) provides, in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2) is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. Pro. 37(c)(1).

Kleenit is justified in disclosing Robert E. Kinney as a witness because prior knowledge of his availability and the substance of his testimony was not previously known, despite the best efforts of Kleenit to fully respond to discovery requests. Affidavit of Keith Crider. Consequently, Kleenit did exactly what they should have done to avoid the very sanction the insurers are seeking to impose.

Kleenit supplemented its response to discovery requests on a number of occasions before during and after the depositions. Additional documents were requested during the depositions and such documents were produced without requiring insurers to seek leave of court. Now that significant factual information has been produced by Kleenit pursuant to its obligations to supplement under Rule 26e(2) which is not favorable to Insurers',

9

Utica and Royal, they now seek to exclude it, even though they are not prejudiced. Under these circumstances, Defendants are seeking unjustified draconian measures to exclude evidence that is otherwise favorable to Kleenit. "The preclusion of witness testimony is an extreme sanction, and as such, courts should be wary of imposing such a sanction absent a showing of a willful or flagrant violation." Id., *citing* Meyers v. Pennypack Woods Home Ownership Association, 559 F.2d 894 at 905 (3d Cir.1977).

Borden follows the analysis set out in Pennyback in determining whether sanctions should be imposed under Rule 37 and summarizes the approach as follows:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order. Said another way, exclusion of testimony is appropriate only if a party (1) has revealed previously undisclosed evidence when trial was either imminent or in progress, or (2) acted in bad faith.

Borden at 2 (internal citations omitted).

Applying this analysis to the instant case, at this stage of the litigation, prejudice or surprise simply is not a factor, particularly since Kleenit has offered to stipulate to a proposed revised scheduling order which provides an opportunity to depose Kinney and renew its discovery requests. To the extent any prejudice results, the opportunity to cure has already been offered to Utica and Royal before they filed their motion. As the parties attempt to resolve this case through mediation has only recently concluded and no action has commenced since the case has been referred back to Magistrate Judge Collings, no disruption to the orderly and efficient trial of the case is evident. Kleenit has demonstrated no bad faith or willfulness in its seasonable disclosure under Rule 26(e)(2). In fact, the opposite is true.

Finally, trail is neither imminent or in progress. Utica and Royal have ample opportunity to adjust their litigation strategy to the newly discovered evidence disclosed by Kleenit. No bad faith can be ascribed to Kleenit, since Mr. Crider's discovery of the availability of Mr. Kinney was purely coincidental and not a result of prior strategic non-disclosure. In fact, prior disclosure, had the availability of Mr. Kinney been known, would have been to the advantage of Kleenit.

Utica and Royal baldly assert without support that Kleenit's failure to disclose the availability of Mr. Kinney at the outset precludes his testimony at trial. As discussed above, such a sanction is wholly inappropriate when Kleenit's disclosure was made in compliance with the requirement of Rule 26(e) to supplement discovery responses.

The insurers assertion that allowance of Mr. Kinney's affidavit would result in "significant delay in litigating this matter" has no merit. Kleenit has already agreed to stipulate to a new proposed schedule which could be accomplished promptly. The insurers' failure to accept Kleenit's offer and file its motion ensures more delay than would likely result from a new discovery schedule. Clearly, Utica and Royal are not prejudiced by any modest delay of trial.

The enclosed affidavit of Keith Crider demonstrates that Kleenit's supplemental response to discovery is with "good cause." An extension of the schedule is warranted in this case because the Affidavit of Robert E. Kinney and his availability as a 30(b)(6) witness materially affects Kleenit's case. Exclusion of this evidence would be highly prejudicial to Kleenit. The insurers arguments that Kleenit should sanctioned under the Rule 37(c), as discussed above, simply are not relevant. Kleenit is justified in its seasonable disclosure of a witness when the availability of such witness was not

previously known by Kleenit. As described in the Affidavit of Keith Crider, Kleenit had no idea of the availability of a former employee who worked for Kleenit no more recently that 20 years ago. But for the happenstance described in Mr. Crider's affidavit, Kleenit would still be unaware of Mr. Kinney's availability.

### III.   CONCLUSION

For the reasons set forth above, Kleenit opposes Utica and Royal's Motion to Exclude the Affidavit of Robert E. Kinney and his Testimony at trial.

Respectfully submitted,

KLEENIT, INC.

By its Attorney,

Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970

Dated: February 3, 2006

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 RBC

KLEENIT, INC.,
    Plaintiffs

v.

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE, UTICA
NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND
CASUALTY,
    Defendants

## AFFIDAVIT OF ATTORNEY DONALD P. NAGLE

I, Donald P. Nagle, hereby depose and state the following:

1. I am an attorney licensed to practice in the Commonwealth of Massachusetts. I am counsel for the plaintiff, Kleenit, Inc. ("Kleenit"), with respect to its notices of claim to, and request for defense and indemnification from, Sentry Insurance Company ("Sentry"), Royal & Sun Alliance ("Royal"), Utica National Insurance Group ("Utica") and Travelers Property and Casualty ("Travelers").

2. On January 20, 2006, I received a phone call from Danielle M. Maloney, attorney for Utica. She informed me that she planned to file a motion to exclude the Affidavit of Robert E. Kinney produced by Kleenit pursuant to it's obligation to supplement discovery responses. I told her that I would be happy to stipulate to a joint motion to extend the discovery period to provide the insurers ample opportunity to depose Robert E. Kinney and conduct any necessary further discovery based on information learned through such deposition.

3.  Without responding to my offer, she simply said that she would file the motion.

Signed under the pains and penalties of perjury this 3${}^{rd}$ day of February, 2006.

_____
Donald P. Nagle

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 NG

|  |  |
|---|---|
| KLEENIT, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| SENTRY INSURANCE COMPANY, ROYAL & SUN ALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY | ) ) ) ) ) |
| Defendants. | ) ) |

## AFFIDAVIT OF KEITH CRIDER

I, Keith Crider, hereby depose and state the following:

1. My name is Keith Crider, I have been employed by Kleenit, Inc. ("Kleenit") since 1967. I am currently Vice President of Kleenit.

2. Kleenit has operated a dry-cleaning and laundering business in Central Massachusetts since 1940. When I started working for Kleenit, its main facility was in Ayer, where it continues to operate. Six additional stores were located in Littleton, Groton, Acton, Fitchburg, Leominster, and two stores in Chelmsford.

3. On the average, Kleenit had 7 or 8 people working a shift at each store. Some of these employees were students who worked part-time or only during the summer.

4. I do not remember the names of all the employees who worked at Kleenit over the nearly 40 years since I have worked at Kleenit. Employee records are thrown out after several years, so I have no recollection of many former employees who worked decades ago. Consequently, when asked questions about former employees in discovery requests and during my

deposition for this case, I answered to the best of my ability and disclosed all information requested of me to the best of my recollection.

5.  To this day, I would still not recall the name of Robert Kinney if my barber did not speak his name to me before the Thanksgiving Holiday in 2005 while I was getting a haircut at the Image Salon in the Drum Hill section of Chelmsford.

6.  The owner of the Image Salon, Rick Mater, informed me that, while attending a recent function in Boston, he saw Bob Kinney. Bob Kinney was a former employee of Kleenit and a former customer of Mr. Mater. I hadn't heard from Mr. Kinney for at least 15 years but, given all the questions asked of me about historical information in this case, I decided to give him a call.

7.  When I spoke to Mr. Kinney, he reminded me that he worked at our Wayland Cleaners store in Wayland and at Care Cleaners in Chelmsford. He recalled his years as a dry cleaner at these locations and informed me of several accidental spills that happened during his tenure at these stores.

8.  As I indicated during my deposition, I was aware of only a few releases of perchloroethelyne, and Kleenit took great care to recapture as much as possible because it was expensive. However, accidental spills occurred of which I was not always informed. Prior to speaking with Mr. Kinney and reviewing his December 12, 2005 Affidavit, I was not aware of the specific incidents he described and certainly would have disclosed this knowledge earlier, had I known.

I swear under the pains and penalties of perjury the above statements of fact are true and accurate to the best of my personal knowledge.

*Keith Crider  2/3/06*
Keith Crider, Executive Vice President
Kleenit, Inc.

Dated: February 2, 2006

2

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2006, I electronically filed Plaintiff Kleenit, Inc.'s Opposition to the Defendant's, Utica National Insurance Group and Royal Indemnity Company Motion to Exclude the Affidavit of Robert E. Kinney and to Exclude Testimony with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Defendant, Sentry Insurance Company (Electronically)
Michael Aylward, Esq.
Morrison, Mahoney & Miller, LLP
250 Summer Street
Boston, MA 02210

Defendant, Utica National Insurance Group (Electronically)
Richard E. Heifetz, Esq.
Danielle M. Maloney, Esq.
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108

Defendant Travelers Indemnity Company (Electronically)
Joseph S. Berman, Esq.
Berman & Powell
210 Commercial Street
Boston, MA 02109

Karl S. Vasiloff, Esq. (BBO #555638)
Seth V. Jackson, Esq. (BBO #65 8669)
Zelle, Hoffman, Voelbel,
Mason & Gette LLP
950 Winter Street, Suite 1300
Waltham, MA 02451

Dated: February 3, 2006

Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970