## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 04 10351 - RBC

_____
　 　 　 )
KLEENIT, INC.　 　 )
　 　 　 )
　 　 Plaintiff,　 　 )
　 　 　 )
v.　 　 　 )
　 　 　 )
SENTRY INSURANCE COMPANY,　 )
ROYAL & SUN ALLIANCE,　 　 )
UTICA NATIONAL INSURANCE GROUP, and　 )
TRAVELERS PROPERTY AND CASUALTY　 )
　 　 　 )
　 　 Defendants.　 　 )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT RULING THAT THE DEFEENDANTS ARE JOINTLY AND SEVERALLY LIABLE FOR ALL DEFENSE COSTS INCURRED BY KLEENIT

### I.　　Introduction

Plaintiff Kleenit, Inc. ("Kleenit") moves this Court Pursuant to Fed.R.Civ.P. 57 to declare that Defendants Utica National Insurance Group ("Utica") and Travelers Property and Casualty ("Travelers") are jointly and severally liable for all costs incurred by Kleenit defending third-party environmental liability claims arising from Kleenit properties in Acton, Chelmsford and Wayland.

Utica and Travelers, along with two other defendant insurance companies, Royal Indemnity Company ("Royal") and Sentry Insurance Company ("Sentry"), agreed to pay Kleenit's defense costs soon after Kleenit initiated this lawsuit.  However, since Kleenit has reached a settlement with Royal and Sentry, Utica now claims it is obligated to pay only 75% of Kleenit's defense costs.

Any agreement among the Insurers to allocate Kleenit's defense costs among themselves is not binding on Kleenit. Under <u>Rubenstein v. Royal Ins. Co. of America</u>, 44 MassApp.Ct. 842 (1998), when multiple insurance policies are triggered to cover the same obligation, each insurer is jointly and severally liable to cover the insurance obligation.

## II.    **Factual Background**

On or about September 25, 2002, Kleenit submitted notices of claim to Utica, Royal, Travelers and Sentry ('the Insurers") pertaining to Notices of Responsibility ("NORs") issued by the Massachusetts Department of Environmental Protection ("DEP") to Kleenit pursuant to M.G.L. c. 21E for alleged contamination at two drycleaning facilities owned by Kleenit and located in Action and Chelmsford, Massachusetts.

Kleenit subsequently received an NOR from DEP regarding alleged contamination at its Wayland facility. On or about June 3, 2003, Kleenit tendered this NOR to Utica and Royal, requesting defense and indemnification under insurance policies Utica and Royal issued to Kleenit. The Insurers agreed to pay Kleenit's reasonable post-tender defense costs incurred at the Acton and Chelmsford facilities, but refused to reimburse Kleenit for pre-tender defense costs and also had not paid all post-tender defense. The Insurers also reserved their rights regarding the duty to indemnify Kleenit for any costs incurred to cleanup or remediate pollution at the Acton and Chelmsford sites.

In response to the Insurers' failure to pay pre-tender costs and all of Kleenit's post-tender defense costs, on November 14, 2003, Kleenit filed a complaint in the Lowell Superior Court against the Insurers, seeking declaratory relief and for breach of their

liability insurance policies and violation of M.G.L. c. 93A and 176D. The Insurers removed the action to this Court on February 20, 2004.

On or about March 16, 2004 Utica, Royal and Kleenit entered in to an undated Interim Defense Cost-Sharing and Non-Waiver Agreement ("Defense Agreement") regarding the Wayland facility, a copy of which is attached as **Exhibit A**. Under this agreement, Utica and Royal agree to pay all defense costs incurred by Kleenit regarding the Wayland property only and indicates that Utica shall pay 75% of such costs and Royal shall pay the remaining 25%. Utica apparently bases its claim that its obligation to pay Kleenit's defense costs is limited to 75% based upon this agreement.

Paragraph 9 of the Agreement indicates that the Agreement shall terminate upon, *inter alia*, "the **full** payment of all Covered Defense Costs rendered thereto." (Emphasis added).

Paragraph 8 of the Agreement provides that the parties will not initiate litigation against each other with respect to any matter addressed by the agreement.  Despite this restriction against litigating the duty to defend under their respective policies, Utica nevertheless filed on September 16, 2004 an Amended Counterclaim against Kleenit seeking remedies which include a declaration by the Court that Utica does not have a duty to defend Kleenit against pollution liability claims at the Wayland property.

On or about May 16, 2006, Royal and Kleenit entered into a settlement agreement and on May 23, 2006 Royal was dismissed from this case.

In a June 20, 2006 letter to Kleenit defense counsel Robert Fasanella from counsel to Utica, a copy of which is attached as **Exhibit B**, Danielle Maloney addresses Utica's obligation to pay defense costs regarding the Wayland site, as follows:

> With respect to Kleenit's demand that Utica pay 100% of the
> Ambient invoices and Rubin & Rudman invoices from mid-March

3

> on, the law simply does not support the position that Utica is
> responsible for the 25% contribution formerly paid by Royal.
> Utica will continue to pay its 75% share of these invoices.

Letter from Danielle Maloney to Robert Fasanella, dated June 20, 2006.

Utica agreed to pay Kleenit's defense costs for the Wayland facility, sharing this

obligation with Royal, as set forth in the Defense Agreement.  Now that Royal has

reached a settlement with Kleenit, Utica has without legal justification unilaterally

concluded that it is not obligated to fully defend Kleenit.

### III.    **Argument**

The Utica policy provisions which are applicable to the issue of allocating defense

costs among several insurers provide:

> The company will pay on behalf of the insured **all sums, which the
> insured shall become legally obligated to pay as damages** because of
>
> A.    bodily injury or
> B.    property damage
>
> to which this insurance applies, caused by an occurrence, and the
> company shall have the right and duty to defend any suit against
> the insured seeking damages on account of such bodily injury or
> property damage, even if any of the allegations of the suit are
> groundless, false or fraudulent . . . .

*See* July 9, 2003 letter from Utica Staff Attorney Kristin H. Martin to Robert A.

Fasanella, attached as **Exhibit C** (Emphasis added).

According to this language of its own policy, Utica's obligation is to provide full

coverage and defense to the insured.  This obligation is not otherwise limited due to the

fact that Kleenit has tendered claims under other policies or insurers for the same liability

or damages.

4

The leading case in Massachusetts which addresses this issue, _Rubenstein v. Royal Ins. Co. of America_, cites the identical policy language in support of the joint and several approach:

> Royal's policy contains standard language providing that the insurer will pay on behalf of the insured **"*all sums* which the insured shall become legally obligated to pay as damages...."** Courts in other jurisdictions have interpreted this same language to mean that, when multiple policies are triggered to cover the same loss, each policy provides indemnity for the insured's entire liability, and each insurer is jointly and severally liable for the entire claim. See, e.g., _Keene Corp. v. Insurance Co. of N. America,_ 667 F.2d 1034, 1047-1050 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 1645, 71 L.Ed.2d 875 (1982); _Hatco Corp. v. W.R. Grace & Co.,_ 801 F.Supp. 1334, 1345 (D.N.J.1992), judgment vacated on other grounds, 59 F.3d 400 (3d Cir.1995)."

_Rubenstein v. Royal Ins. Co. of America_**,** 44 Mass.App.Ct. 842, 694 N.E.2d 381, Mass.App.Ct.,(1998) (Emphasis added).

In its review of the lower court ruling, the Massachusetts Appellate Court opined: "we think that the [lower court ] judge did not err in failing to allocate liability among insurers" and concluded that "Royal's claim for allocating damage awards based upon years of coverage therefore fails." Id. at 852.

Utica provides no hint in its June 20, 2006 letter of the basis of its assertion that it is required to pay only 75% of defense costs, but merely claims without support that the "law simply does not support the position that Utica is responsible" for the portion of defense costs previously assumed by the settling insurer. However, if Utica intends to assert that it can limit its defense obligation to a pro rata share based on the years of coverage compared with the other insurers (in response to what is sometimes referenced as 'long tail' claims), such an argument fails under _Rubenstein_.

While Utica may have appropriately allocated its obligations with other insurers, with regard to its obligation to Kleenit, Utica is jointly and severally liable for all defense

costs incurred by Kleenit. "Of course, there is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under the doctrine of equitable contribution. Id., citing *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 42, 626 A.2d 502 (1993).

In fact, Utica did obtain a share of its obligation to pay defense costs from Royal, as set forth in the Defense Agreement. However, such an arrangement with Royal is not binding on Kleenit. Utica's and Royal's allocation scheme was strictly between the two insurers. Kleenit never gave up its contractual right to a full defense from either insurer, until its settlement with Royal. As apparently misunderstood by Utica, by entering into such settlement with Royal, Kleenit did not thereby waive its right to a full defense from Utica. Utica remains legally obligated to pay "all sums" incurred by Kleenit in defending pollution liability claims asserted against it. Such obligation is unaffected by Kleenit's settlement with Royal or by Utica's previous allocation arrangement with Royal.

The "all sums" approach in *Rubenstein* has been consistently adopted by a variety of courts, including this Court. "I find nothing in Massachusetts law inconsistent with the legal policy announced by the Massachusetts Appeals Court in Rubenstein I: There is to be no allocation among policies, let alone years of exposure or injury. *Liberty Mut. Ins. Co. v. Black & Decker Corp.*, 383 F.Supp.2d 200, D.Mass.(2004).

This Court subsequently reinforced *Rubenstein* as the law of Massachusetts on this issue, despite the fact that the Massachusetts Supreme Judicial Court has not taken up this point of law:

> Specifically, the London Insurers assert that no state statutes or case law clarifies, first, the circumstances in which environmental damage triggers an insurance policy and, second, if coverage is triggered, whether attendant liability applies jointly and severally or pro rata across all relevant insurers. These questions have been considered only by the Appeals Court of Massachusetts, not by the

> Supreme Judicial Court. *See, e.g., Rubenstein v. Royal Ins. Co. of America,* 44 Mass.App.Ct. 842 (1998). In determining state law on an issue, however, a federal court may reasonably rely upon intermediate appellate court decisions, if no persuasive information indicates that the highest court would rule otherwise. *See Liberty Mutual Ins. Co. v. The Black and Decker Corp.,* 2004 WL 1941351, *13 (D.Mass.2004).

*Boston Gas Co. v. Century Indem. Co.*, 2005 WL 212621, D.Mass. (2005).

The Massachusetts Supreme Judicial Court ("SJC"), however, has recognized that "[t]he proper allocation of so-called 'long tail' claims has twice been addressed by the Appeals Court and twice resolved in favor of the 'all sums' method." A.W. Chesterton Co. v. Massachusetts Ins. Insolv. Fund, 445 Mass. 502, 838 N.E.2d 1237, n.3 (2005) citing Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd's London, 59 Mass.App.Ct. 646, 653- 55, 797 N.E.2d 434,439-46 (2003); and Rubenstein v. Royal Ins. Co., 44 Mass.App.Ct. 842, 852- 53 694 N.E.2d 381, 388 (1998).  Indeed, every Massachusetts court to address the allocation question in recent years has held that general liability policies, once triggered, are jointly and severally liable for the entire claim, up to the policy limit. See id.; see also *Commercial Union Ins. v. Gillette Co.*, 17 Mass.L.Rptr. 726, 2004 WL 1427157 (Mass.Super. May 27, 2004).  Even though the SJC has not directly ruled on the allocation issue, it has twice declined to question the decisions of the Appeals Court in *Rubenstein* and *Chicago Bridge*, by denying requests to hear appeals of the allocation rulings in both cases. See *Rubenstein v. Royal Ins. Co. of Am.*, 708 N.E.2d 639 (Mass. 1999); *Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd's, London*, 803 N.E.2d 332 (Mass. 2004).

Massachusetts law clearly imposes a joint and several obligation upon Utica and Travelers to pay Kleenit's defense costs.  Utica cannot reduce this obligation to Kleenit by virtue of a prior allocation agreement with another insurer.

### IV.     **Conclusion**

For the reasons set forth above, Kleenit respectfully requests this Court to declare

that Utica and Travelers are jointly and severally liable to pay for all its defense costs.


Respectfully submitted,

KLEENIT, INC.

By its Attorney,

Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970

Date:   July 12, 2006

EXHIBIT "A"

CONFIDENTIAL – SETTLEMENT DOCUMENT

## INTERIM DEFENSE COST-SHARING AND NON-WAIVER AGREEMENT

This Interim Defense Cost-Sharing and Non-Waiver Agreement ("Agreement"), effective as of this _____ day of January, 2004, is entered by and between: ROYAL INSURANCE COMPANY OF AMERICA ("Royal"); UTICA MUTUAL INSURANCE COMPANY, ("Utica"); and KLEENIT, INC., ("Kleenit"). (Royal and Utica may be collectively referred to as the "Carriers")

### WITNESSETH:

**WHEREAS,** by letter dated April 9, 2003 Kleenit was issued a Notice of Responsibility ("NOR") by the Massachusetts Department of Environmental Protection ("MA-DEP") with regard to 298 Boston Post Road, Wayland, Massachusetts (the "Site"); and

**WHEREAS,** the Carriers issued or allegedly issued certain primary-level general liability insurance policies to Kleenit ("the Policies"); and

**WHEREAS,** Kleenit tendered the NORs to the Carriers on or about June 3, 2003 and requested defense and indemnification under the Policies; and

**WHEREAS,** the Carriers each agreed, subject to a complete reservation of its rights under its respective Policies, to contribute to the reasonable and necessary defense costs incurred by Kleenit in connection with the NOR from the dates on which the NOR was tendered to the Carriers; and

**WHEREAS,** Kleenit has requested the Carriers to defend and indemnify it in the NOR pursuant to the terms of the Policies; and

**WHEREAS,** a dispute exists among the Carriers and Kleenit regarding whether Royal and/or Utica have any obligation under the Policies to defend or indemnify Kleenit, in whole or

584281_1

1

CONFIDENTIAL – SETTLEMENT DOCUMENT

in part, with respect to the NOR; and

WHEREAS, the Carriers and Kleenit believe that an agreement between them to apportion the cost of defending Kleenit in the NOR, on an interim basis, would preclude the need for litigation between them at this time regarding the issue of defense, and it is in their mutual interest to avoid such litigation.

NOW, THEREFORE, in consideration of the foregoing, and of the mutual promises and covenants set forth hereinafter, the parties agree as follows:

1.    Scope of Agreement. This agreement applies only to the payment of Covered Defense Costs, as defined in paragraph 3 herein, and to the defense of Kleenit with respect to the NOR. All other past, present or future controversies between the Carriers and Kleenit are preserved.

2.    Reservation of Rights. This Agreement does not adopt any specific theory of coverage. Except as provided herein, the parties fully reserve all rights with regard to all issues of defense and indemnity.  Neither the existence of this Agreement nor any actions taken in accordance with its terms by any party shall be construed in any way so as to prejudice the interests or rights of any other party at this Site or any other site. All of the provisions, exclusions, endorsements, conditions and other terms of the Policies, and all rights, defenses to coverage, causes of action, claims or benefits of all parties which are not expressly waived or limited by this Agreement are preserved.

The Carriers reserve their rights to seek contribution or reimbursement from any person or entity, other than Kleenit, for any payments made in accordance with the terms of this Agreement or for any other payments. The parties acknowledge each other's reservation of rights, and, except as otherwise specifically provided herein, no waiver or estoppel shall arise as a result of this Agreement, or any delay in its having been undertaken.

This Agreement is not intended to be, and shall not be construed as, an agreement by the Carriers
584281_1

2

CONFIDENTIAL – SETTLEMENT DOCUMENT

to indemnify Kleenit in the NOR, and the Carriers reserve the right to decline to indemnify Kleenit in the NOR as fully as though this Agreement had never been entered into. Nothing herein shall act as a waiver or relinquishment of any right or rights of the Carriers or Kleenit relative to any other site for which Kleenit may be held responsible or may file or has filed a claim.

3.    Covered Defense Costs. Covered Defense Costs shall include the reasonable and necessary counsel fees, expenses and costs incurred by Kleenit after the date of tender of the NOR to the Carriers in connection with the defense of the NOR, and shall include other reasonable and necessary expenses that are directly attributable to Kleenit's attempts to reduce or eliminate its liability as alleged in the NOR, if incurred during the term of this Agreement. Notwithstanding anything to the contrary contained in this Agreement, Covered Defense Costs shall include but not be limited to the $16,655.72 requested by Kleenit by letter dated January 14, 2004 from Rubin and Rudman LLP. The Carriers agree that Kleenit may use the firm of Rubin and Rudman LLP as independent counsel to represent it with respect to the NOR and MyKroWaters Inc., and other firms as the Carriers may approve as are reasonable and necessary. The Carriers also agree that Kleenit may enter into a Cost-Sharing Agreement with other Potentially Responsible Parties to the NOR to share the costs of retaining MyKroWaters and other defense related fees.

Covered Defense Costs shall not include fees and expenses or any other costs incurred by Kleenit in the investigation of the nature and extent of environmental contamination at or around the Site unless such investigation is necessary to the resolution of a liability issue presented by the allegations of the NOR, and Covered Defense Costs shall not include fees and expenses or any other costs incurred by Kleenit in connection with mitigative or remedial activities at or around the Site, it being understood by the parties that Kleenit reserves the right to assert that such costs, fees and expenses are covered under the Policies as an item of indemnity, and the Carriers reserve the right to

584281_1

3

CONFIDENTIAL – SETTLEMENT DOCUMENT

contest any such assertion. Covered Defense Costs shall also not include fees and expenses or any

other costs incurred by Kleenit in attempting to obtain insurance coverage from Royal, Utica, or

any other insurance carrier or insurance guaranty fund.

4.     Apportionment and Payment of Covered Defense Costs. Kleenit's independent defense

counsel shall forward itemized bills and statements, along with supporting documentation as is

reasonably requested by the Carriers, separately to the following addresses or to such other

addresses as may be subsequently designated by the Carriers in writing:

> Royal & Sun Alliance
> Environmental Claim Dept.
> 9140 Arrowpoint Blvd., Suite 440
> Charlotte, NC 28273-8138
> Attn: Kevin Keyes
>
> File No.: 065000815401
>
> And
>
> Zelle, Hofmann, Voelbel, Mason & Gette LLP
> 950 Winter Street, Suite 1300
> Waltham, MA 02451
> Attn: Karl S. Vasiloff
>
> Utica Mutual Insurance Company
>
> Tucker, Heifetz & Saltzman, LLP
> Three School Street
> Boston, MA 02108
> Attn: Richard E. Heifetz, Esquire
>
> And
>
> Lydia Berez, Esquire
> Utica Mutual Insurance Group
> P.O. Box 6568
> Utica, N.Y. 13504
>
> File No.: 713115

584281_1

4

CONFIDENTIAL – SETTLEMENT DOCUMENT

The Carriers shall review such bills and statements, and consult with each other and Kleenit to propose such deletions or adjustments as are reasonable and necessary to determine Covered Defense Costs. Covered Defense Costs shall be allocated among the Carriers as follows:

| Royal | 25% |
| Utica | 75% |

The Carriers shall at all times make reasonable efforts to pay Kleenit its Covered Defense Costs within thirty (30) calendar days of receipt of Kleenit's bills, statement and documentation of such covered defense costs. The Carriers shall specify the amount of payment made and reference each invoice(s) paid so that all parties can track payment of such covered defense costs.

5.      Release. Kleenit hereby acknowledges that payment of Covered Defense Costs by the Carriers and the Carriers performance of their obligations under this Agreement is in satisfaction of Kleenit's claims for defense-related costs and expenses incurred by it prior to and during the term of this Agreement in connection with the NOR, and Kleenit accordingly releases the Carriers from all claims, rights, counts or causes of action which it might have with respect to such costs, whether or not asserted or whether or not known; provided, however, that if one of the Carriers terminates this Agreement pursuant to paragraph 9, such release shall only be effective with respect to such costs incurred, and paid, up to the date of termination. The provisions of this paragraph 5 shall survive the termination of this Agreement.

6.      Good Faith. Kleenit hereby acknowledges that the Carriers acceptance of and compliance with this Agreement represents a good faith response to Kleenit's request, pursuant to the Policies, for defense of the NOR. Kleenit hereby waives and releases any claims, rights, counts or causes of action against Royal and/or Utica, whether or not asserted or whether or not known, alleging that

584281_1

5

CONFIDENTIAL – SETTLEMENT DOCUMENT

Royal and/or Utica and/or any of their employees or agents acted in "bad faith," whether arising by contract, statute or common law, in connection with the defense of the NOR prior to the effective date of this Agreement, or during the term of this Agreement: provided, however, that this paragraph and such release and waiver are not effective: (i) as to acts or omissions regarding resolution of indemnity coverage issues; or (ii) should Royal and/or Utica terminate this Agreement or otherwise breach this Agreement. The provisions of this paragraph 6 shall survive the termination of this Agreement.

7.      Waiver of Future Claims. Kleenit hereby acknowledges that it has been advised by counsel in the negotiation and execution of this Agreement, and expressly includes within the scope of the waivers and releases set forth at paragraphs 5 and 6 of this Agreement any claims which are not known to it or are not ascertainable at the time this Agreement is executed. The provisions of this paragraph 7 shall survive the termination of this Agreement.

8.      Forbearance of Litigation. The parties will not initiate litigation against each other with respect to any matter addressed by this Agreement applying to the Wayland Site during the term of this Agreement.

9.      Termination of Agreement. This Agreement shall terminate upon issuance of a "no further action" letter or its functional equivalent by the MA-DEP or other appropriate governmental authority with respect to the NOR or a Response Action Outcome filing by the Licensed Site Professional of the Wayland Site, and the full payment of all Covered Defense Costs rendered thereto. As noted therein, however, paragraphs 5, 6, and 7 of this Agreement shall survive termination. This Agreement shall also terminate thirty (30) days after written notice of termination provided by any party to this Agreement to all other parties by certified mail, return receipt requested, commercial overnight mail or by hand delivery.

584281_1

6

CONFIDENTIAL – SETTLEMENT DOCUMENT

10.    Confidentiality of Agreement. The existence and terms of this Agreement may be disclosed by the Carriers to any excess insurer or any other primary insurer of Kleenit, to its reinsurers and/or retrocessionares, and to its auditors, and may be disclosed by any party in any litigation regarding insurance coverage for Kleenit with respect to the NOR and/or the Site, but neither the existence nor the terms shall otherwise be disclosed by any party except as provided herein or as required by law or order of court or with the written consent of all parties hereto. A party making such disclosure shall notify the person or entity receiving information regarding the existence or terms of this Agreement that such information is confidential and shall use best efforts to obtain a written commitment from the person or entity to maintain such confidentiality.

11.    Successors. This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors in interest.

12.    Amendments. No amendments or variations of the terms of this Agreement shall be valid unless made in writing and signed by the parties hereto.

13.    Execution. This Agreement may be executed in duplicate counterparts, each of which shall be deemed to be an original.

14.    Construction. The Carriers and Kleenit have each participated in the drafting of this Agreement after consulting with counsel. Therefore, the language of this Agreement shall not be presumptively construed either in favor of or against any of the parties hereto. The Carriers and Kleenit agree the terms of this Agreement shall be enforced by courts in the Commonwealth of Massachusetts and shall be governed by Massachusetts Law.

15.    Headings. Paragraph headings contained herein are for purposes of organization only and shall not constitute a part of this Agreement.

584281_1

CONFIDENTIAL – SETTLEMENT DOCUMENT

16.    Entire Agreement. This Agreement is an integrated agreement, containing the entire understanding among the Carriers and Kleenit regarding the matters addressed herein and, except as set forth in this Agreement, no representations, warranties or promises have been made or relied upon by the parties to this Agreement. This Agreement shall prevail over prior communications among the Carriers and Kleenit regarding the matters contained herein.

17.    Notices. Except as set forth in paragraph 4, all notices and communications in connection with the Agreement shall be directed to the representatives of each party listed in Exhibit A to this Agreement.

18.    Authority. The individuals signing this Agreement warrant and represent that they are authorized to bind and commit the parties for whom they are signing to the terms and conditions set forth in this Agreement.

19. Counterparts. This agreement may be executed in counterparts and when so executed shall have the same force and effect as if executed as a whole document.


IN WITNESS WHEREOF, the parties hereto, by their duly authorized representatives affix their signatures hereto.

FOR ROYAL:                                    FOR UTICA:

(Name)_____        (Name)____ _Berez_____

(Print)_____        (Print)___ Lydia Berez_____

(Title)_____        (Title)___ Staff Attorney____


5R4281_1

8

CONFIDENTIAL – SETTLEMENT DOCUMENT

16.    Entire Agreement. This Agreement is an integrated agreement, containing the entire understanding among the Carriers and Kleenit regarding the matters addressed herein and, except as set forth in this Agreement, no representations, warranties or promises have been made or relied upon by the parties to this Agreement. This Agreement shall prevail over prior communications among the Carriers and Kleenit regarding the matters contained herein.

17.    Notices. Except as set forth in paragraph 4, all notices and communications in connection with the Agreement shall be directed to the representatives of each party listed in Exhibit A to this Agreement.

18.    Authority. The individuals signing this Agreement warrant and represent that they are authorized to bind and commit the parties for whom they are signing to the terms and conditions set forth in this Agreement.

19. Counterparts. This agreement may be executed in counterparts and when so executed shall have the same force and effect as if executed as a whole document.


IN WITNESS WHEREOF, the parties hereto, by their duly authorized representatives affix their signatures hereto.

FOR ROYAL:

(Name) _Kevin J. Keyes_

(Print) _Kevin S. Keyes_

(Title) _Claim Specialist_

FOR UTICA:

(Name)_____

(Print)_____

(Title)_____


584281_1

<u>CONFIDENTIAL – SETTLEMENT DOCUMENT</u>

Exhibit A.
Representatives of the Parties

For Royal

Karl S. Vasiloff, Esq.
Zelle, Hofmann, Voelbel, Mason & Gette LLP
950 Winter Street, Suite 1300
Waltham, MA 02451

Telephone: (781) 466-0700
Facsimile: (781) 466-0701


For Utica

Richard E. Heifetz, Esq.
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108

Telephone: (617) 557-9696
Facsimile: (617) 227-9191


For Kleenit

Robert A. Fasanella, Esq. Peter J. Feuerbach, Esq.
Rubin and Rudman LLP
50 Rowes Wharf
Boston, Massachusetts 02110-3319

Telephone: (617) 330-7000
Facsimile: (617) 439-9556

Don Nagle, Esq.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360

Telephone: (508) 732-8970
Facsimile: (508) 732-8971


584281_1

# EXHIBIT "B"

# TUCKER, HEIFETZ & SALTZMAN, LLP

100 FRANKLIN STREET
BOSTON, MASSACHUSETTS 02110
617-557-9696

FACSIMILE - 617-227-9191
www.ths-law.com

RICHARD E. HEIFETZ***
PAUL SALTZMAN*
JAMES T. SCAMBY**
SCOTT J. TUCKER

BARBARA M. CALLAHAN
JAMES R. DYER
SCOTT H. KREMER
DANIELLE M. MALONEY
WILLIAM P. MCGOVERN, Jr.▲
KIMBERLY A. MIALE* ◆
M. THERESE ROCHE
SYD A. SALOMAN*

***Also Admitted in NH
*Also Admitted in RI
**Also Admitted in PA & NJ
▲Also Admitted in LA
◆Also Admitted in CT

*OF COUNSEL:*
MEREDITH H. GREENE

MALONEY@THS-LAW.COM

June 20, 2006

**VIA FACSIMILE -- 617-439-9556**
Robert A. Fasanella, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA 02110-3319

Re:    Kleenit, Inc.
vs.    Sentry Insurance Company, Royal & Sun Alliance, Utica National  Insurance
       Group, and Travelers Property and Casualty
       United States District Court, Civil Action No. 2004-10351-RBC
       Wayland

Dear Bob:

I write in response to your inquiry regarding payment of several of the Ambient
Engineering invoices and Rubin & Rudman LLP invoices.  Please be advised that, per
your March 29, 2006 letter, Utica issued a check on May 1, 2006, in the amount of
$22,523.82, made payable to Kleenit, Inc., in satisfaction of the following invoices:

### Ambient Engineering Invoices
- Invoice dated 1/24/06 totaling $6,505.00;
- Invoice dated 1/24/06 totaling $9,950.00;
- Invoice dated 2/20/06 totaling $5,081.47;
- Invoice dated 3/13/06 totaling $25,043.41;

### Rubin & Rudman LLP
- January 17, 2006, invoice # 317262, totaling $3,333.38
- February 8, 2006, invoice #318016, totaling $4,361.72
- March 7, 2006, invoice #319121, totaling $5,810.03

TUCKER, HEIFETZ & SALTZMAN, LLP

Robert A. Fasanella, Esq.
June 20, 2006
Page Two

Apparently, Keith Crider had contacted my client and requested that the check be sent directly to him. Utica complied with his request and sent the May 1, 2006 check for $22,523.82 to Mr. Crider's attention.

Thus, according to Utica's records, Utica owes payment on the following invoices:

### Ambient Engineering Invoices

- Invoice dated 4/6/06 totaling $15,757.36 – **Utica's 75% share is $3,939.34**
- Invoice dated 5/11/06 totaling $15,213.18 – **Utica's 75% share is $3,803.29**

### Rubin & Rudman LLP

- April 12, 2006, invoice #320803, totaling $4,785.24 - **Utica's 75% pro rata share of this invoice is $3,588.93**

Utica has previously paid Ambient Engineering invoices dated June 30, 2005 and August 31, 2005.

With respect to Kleenit's demand that Utica pay 100% of the Ambient invoices and Rubin & Rudman invoices from mid-March on, the law simply does not support the position that Utica is responsible for the 25% contribution formerly paid by Royal. Utica will continue to pay its 75% share of these invoices.

Finally, in order to avoid future confusion regarding payment of Kleenit's invoices, I ask that you please order Mr. Crider to stop communicating with Utica directly. In addition, I ask that invoices submitted for reimbursement by Rubin & Rudman be sent directly to my attention – and not Utica's. I will forward the bills to Utica after review. In order to further facilitate matters, I will have Utica only send payments to Rubin & Rudman and not directly to Kleenit. With this procedure in place, I am confident that we can have future bills and invoices paid in a timely manner.

Thank you for your attention to these matters. If you would like to discuss them further, please feel free to call me.

Very truly yours,

Danielle M. Maloney

cc:    Scott Godkin – 315-266-4182
       Donald Nagle -- 508-732-8971

# EXHIBIT "C"



Kristen H. Martin
Staff Attorney

P.O. Box 6568, Utica, New York 13504
Telephone: (315) 734-2917
Fax: (315) 734-2198

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

## RESERVATION OF RIGHTS

July 9, 2003

**CRR:  7000 1670 0004 1189 4716**
Robert A. Fananella, Esq.
Rubin and Rudman, LLP
Counsellors at Law
50 Rowes Wharf
Boston, MA 02110-3319

**CRR:  7000 1670 0004 1189 4709**
Mr. Kevin Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

**Re:    Utica File No:        713115**
**298 Post Rd, Wayland, MA**
**Insured:            Kleenit**
**Policy No.:         FMP 1946**
Dear Sirs:

## ACKNOWLEDGEMENT

This will acknowledge the receipt of your letter dated June 3, 2003, advising us of a claim and requesting defense and indemnification relating to a release of hazardous materials that caused building and property damage at and around 298 Boston Post Road, Wayland, Massachusetts.

## BACKGROUND

According to the information provided, on or about April 9, 2003, the Massachusetts Department of Environmental Protection (hereinafter "DEP") issued to Kleenit a Notice of Responsibility relating to a release of oil and/or

Re:    Utica File No:   713115                                        2
       298 Post Road, Wayland MA

hazardous materials at the above referenced location.  It is alleged that the
hazardous waste has migrated off site to surrounding property.

It is unclear from your letter when and for what purpose the property was
used.   It is also unclear as to when the release occurred.  Without an
understanding of the use and occupation of the building, or the alleged dates of
release, it is impossible to consider defense and indemnity under any known
Utica policy or policies.  With the express reservation and contingent on the fact
that this information will be forthcoming, Utica is constrained to reply to your
demand subject to your ability to provide this critical information,

It is our understanding that you are seeking response costs, including
costs for the environmental scientist retained by you.  You further state that
Exxon Mobil, another potentially responsible party, is seeking contribution from
Kleenit for its share of response costs.

## YOUR POLICY

Kleenit, Inc. was insured by Graphic Arts Mutual under FMP 1946 for the
period 10/01/79 – 10/1/82. The property damage policy limits were $100,000 per
occurrence / $100,000 in the aggregate.  Our archive search has not located any
other policy issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance
Group.  If you are in possession of any documents which would establish the
existence of a 1982 – 1985 policy and/or the umbrella policy referenced in your
letter please forward said documents to my attention.  Upon receipt of the
documents, I will address any coverage that those policies would provide.  We
reserve our rights to deny coverage for defense and indemnification under all
policies issued by Utica or a related company.

Your primary policy, a Comprehensive General Liability Policy, (6395a-x-c Ed. 1-
73) contained the following language:

I.       COVERAGE A-BODILY INJURY LIABILITY

         COVERAGE B-PROPERTY DAMAGE LIABILITY

         The company will pay on behalf of the insured all sums, which the
         insured shall become legally obligated to pay as damages because
         of

         A.      bodily injury or

         B.      property damage

         to which this insurance applies, caused by an occurrence, and the
         company shall have the right and duty to defend any suit against

Re:    Utica File No:   713115                                                      3
        298 Post Road, Wayland MA

the insured seeking damages on account of such bodily injury or
property damage, even if any of the allegations of the suit are
groundless, false or fraudulent, and may make such investigation
and settlement of any claim or suit as it deems expedient, but the
company shall not be obligated to pay any claim or judgment or to
defend any suit after the applicable limit of the company's liability
has been exhausted by payment of judgements or settlements.

The policy also defines the terms "occurrence" and " property damage." Those terms are
defined as:

"occurrence" means an accident including continuous or repeated
exposure to conditions, which results in bodily injury or property damage
neither expected nor intended from the standpoint of the insured;

"property damage" means (1) physical injury to or destruction of tangible
property which occurs during the policy period, including the loss of use
thereof at any time resulting therefrom, or (2) loss of use of tangible
property which has not been physically injured or destroyed provided such
loss of use is caused by an occurrence during the policy period;

**Graphic Arts Mutual expressly reserves the right to disclaim
coverage for defense and indemnification because the facts known to date
do not establish that there has been an "occurrence: which has resulted in
"property damage" as defined by our policy. Pending a determination as to
when the contamination occurred, we reserve our rights to disclaim
coverage at a later date.**

Your policy also contained the following exclusions:

This policy does not apply:

(f)    to bodily injury or property damage arising out of the discharge,
        dispersal, release or escape of smoke, vapors, soot, fumes, acids,
        alkalis, toxic chemicals, liquids or gases, waste materials or other
        irritants, contaminants or pollutants into or upon land, the
        atmosphere or any water course or body of water; but this
        exclusion does not apply if such discharge, dispersal, release or
        escape is sudden and accidental:

**Graphic Arts Mutual expressly reserves the right to disclaim coverage
relating to this matter on the ground that the release of the contaminants
was neither sudden or accidental and therefore does not fall within the
savings clause of exclusion f.**

Re:    Utica File No:   713115                                                                4
       298 Post Road, Wayland MA

    (k)    property damage to

        (1)    property owned or occupied by or rented to the insured.

        (2)    property used by the insured, or

        (3)    property in the care, custody or control of the insured or as
            to which the insured is for any purpose exercising physical
            control:

the insured is for any purpose exercising physical control: but parts
(2) and (3) of this exclusion do not apply with respect to liability
under a written sidetrack agreement and part (3) of this exclusion
does not apply with respect to property damage (other than to
elevators) arising out of the use of an elevator at premises owned
by, rented to or controlled by the named insured:

**Graphic Arts Mutual expressly reserves the rights to disclaim coverage
for any damage  to the property owned or occupied by or rented by Kleenit.
To the extent that there is any damage to property owned by a third party
we will investigate and determine whether it is covered by the policy.**

The policy issued by Graphic Arts Mutual contains the following conditions.

**CONDITIONS**

    **4.** Insured's Duties in the Event of Occurrence, Claim or Suit:

    **(a)** In the event of an occurrence, written notice containing
        particulars sufficient to identify the insured and also reasonably
        obtainable information with respect to the time, place and
        circumstances thereof, and the names and addresses of the
        injured and of available witnesses, shall be given by or for the
        insured to the company or any of its authorized agents as soon
        as practicable.

    **(b)** If claim is made or suit is brought against the insured, the
        insured shall immediately forward to the company every
        demand, notice, summons or other process received by him or
        his representative.

    **(c)** The insured shall cooperate with the company and, upon the
        company's request, assist in making settlements, in the conduct
        of suits and in enforcing any right of contribution or indemnity

Re:    Utica File No:   713115                                                                5
        298 Post Road, Wayland MA

against any person or organization who may be liable to the
insured because of injury or damage with respect to which
insurance is afforded under this policy; and the insured shall
attend hearings and trials and assist in securing and giving
evidence and obtaining the attendance of witnesses.  The
insured shall not, except at his own cost, voluntarily make any
payment, assume any obligation or incur any expense other
than for first aid to others at the time of accident.

The policy also has an other insurance condition that states as follows:

6.  Other Insurance: The insurance afforded by this policy is
primary insurance, except when stated to apply in excess of or
contingent upon the absence or other insurance.  When this
insurance is primary and the insured has other insurance which
is stated to be applicable to the loss on an excess or contingent
basis, the amount of the company's liability under this policy
shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the
same basis, whether primary, excess or contingent, the company shall not
be liable under this policy for a greater proportion of the loss than that
stated in the applicable contribution provision below:

(a) Contribution by Equal Shares.  If all of such other valid and
collectible insurance provides for contribution by equal shares,
the company shall not be liable for a greater proportion of such
loss than would be payable if each insurer contributes an equal
share until the share of each insurer equals the lowest
applicable limit of liability under any one policy or the full amount
of the loss is paid, and with respect to any amount of loss not so
paid the remaining insurers then continue to contribute equal
shares of the remaining amount of the loss until each such
insurer has paid its limit in full or the full amount of the loss is
paid.

(b) Contribution by Limits.  If any of such other insurance does
not provide for contribution by equal shares, the company shall
not be liable for a greater proportion of such loss than the
applicable limit of liability under this policy for such loss bears to
the total applicable limit of liability of all valid and collectible
insurance against such loss.

Re:    Utica File No:  713115                                                6
       298 Post Road, Wayland MA

   We trust you have put all Kleenit carriers whose coverage may be implicated
on notice.  Please provide us with the responses to this claim you have received
form any other carriers.

## CONCLUSION

   Graphic Arts will undertake an investigation of this matter subject to a
reservation of rights.  Our investigation into this matter should not be deemed as
a waiver of any rights we may have under the policy.

   I ask that you please forward to the attention of Attorney Richard Heifetz
any reports prepared by the environmental scientist retained by Kleenit as well as
any documentation received from the DEP or prepared by or on behalf of Kleenit
in response to a request by the DEP at your earliest convenience.

   Finally, as stated above our archive search did not reveal the existence of
any policy other than the Graphic Arts Mutual (1979-1982).  If other policies are
located, we reserve our right to address those policies at a later date.

                                    Very truly yours,

                                    Kristen H. Martin
                                    Staff Attorney

CC:    Richard E. Heifetz
       Tucker, Heifetz & Saltzman
       Three School Street
       Boston, Massachusetts 02108