**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Civil Action No. 04-10351-RBC

_____
                                                          )
KLEENIT, INC.,                                    )
     Plaintiff,                              )
                                                          )
v.                                                        )
                                                          )
SENTRY INSURANCE CO.,                 )
ROYAL & SUNALLIANCE,               )
UTICA NATIONAL INSURANCE  )
GROUP, and TRAVELERS               )
PROPERTY AND CASUALTY,         )
     Defendants.                           )
_____)


**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY**
**BY DEFENDANT THE TRAVELERS INDEMNITY COMPANY**

     Plaintiff, a chain of dry cleaning stores, seeks insurance coverage for environmental

remediation of three sites[1] in response to Notices of Responsibility from the Massachusetts

Department of Environmental Protection. The defendant, The Travelers Indemnity Company

("Travelers"), issued a single three-year policy to the plaintiff for the period August 28, 1970-

August 28, 1973.[2] However, the plaintiff has alleged the Travelers insured it, not only for the

1970-1973, but also for the period 1964-1970. Because the plaintiff will be unable to offer

admissible evidence to support its assertions of additional coverage, the Court should enter

partial summary judgment in favor of Travelers, declaring that its insurance obligations, if any,

---

[1] While there are three sites for which plaintiff seeks coverage in this case, it is undisputed that Travelers did not insure the plaintiff at any time that it had an interest in the site located in Wayland, Massachusetts. Consequently, as to Travelers, only two sites are at issue: Chelmsford and Acton.

[2] Travelers does not concede that it owes any coverage obligation under the 1970-1973 policy, and it reserves until trial its right to contest any claim that does owe any such coverage obligation.

are limited to those under the single policy as set forth above as neither Travelers nor plaintiff has been able to locate a copy of any other policy.

## **STATEMENT OF FACTS**

Pursuant to Local Rule 56.1, Travelers submits that the following facts are undisputed. Travelers has separately filed a Statement of Undisputed Material Facts.

### **The Travelers Policies**

Plaintiff Kleenit, Inc. ("Plaintiff" or "Kleenit") owns and operates dry-cleaning service facilities in Chelmsford and Acton, Massachusetts. Complaint, ¶12. (Attached as Exhibit "A" to Statement of Undisputed Material Facts ("SUMF")).

The Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility ("NOR") to Kleenit regarding the Chelmsford facility on January 28, 2001 and issued a second NOR to Kleenit regarding the Chelmsford facility on June 19, 2001. Complaint, ¶14. According to Kleenit, DEP also issued a NOR to Kleenit pertaining to the Acton facility on December 30, 2002. Id. DEP alleges in its NORs that Kleenit is a responsible party for the release or threat of release of hazardous materials at the sites under Mass. G.L. c. 21E. Complaint, ¶ 15.

On or about September 25, 2002, Kleenit tendered claims to the defendants, including Travelers, relative to the NORs. Complaint, ¶ 16. The defendants, including Travelers, have agreed to provide a defense to Kleenit.

Following a diligent file review, Travelers has located one policy of insurance that it issued to Kleenit for the coverage period of August 28, 1970 until August 28, 1973, policy

2

number ND9087145, with limits of $100,000 per occurrence.  A true and complete copy of this policy is attached to the SUMF as Exhibit "B."

Nevertheless, Kleenit contends that it is entitled to coverage under two successive policies purportedly issued to it by Travelers for the coverage periods of, respectively, August 1, 1964 until August 1, 1967 and August 1, 1967 until August 1, 1970.  Notwithstanding this assertion, however, plaintiff has not produced a copy of either purported policy nor any other evidence of their existence sufficient to meet its burden or proof on this issue.

### The Purported Policy Allegedly in Effect from August 1, 1964 until August 1, 1967

Kleenit attempts to support its claim for coverage from August 1, 1964 until August 1, 1967 by introducing several purported handwritten ledger entries, attached to the SUMF as Exhibit "C," that allegedly were made by a now-deceased individual named Harry Nason, an outside accountant for Kleenit during those years.  *See* Exhibit "C"; *see also* Deposition of Keith Crider conducted on June 15, 2005 ("Crider Dep. Vol. I"), attached to the SUMF as Exhibit "D," at pp. 58-59;  Deposition of Keith Crider conducted on June 9, 2006 ("Crider Dep. Vol. III"), attached to the SUMF as Exhibit "E," at pp. 56-57, 80-81.   These purported ledger entries are devoid of any information other than the fact that Kleenit purportedly made some payments to one Milt Esterbrook and/or E.J. Wells during those years, and the purported ledger entries provide absolutely no information regarding the purposes of those payments.  *See* Exhibit "C"; *see also* Crider Dep. Vol.  III, at pp. 62-63.  Kleenit alleges that Estabrook or Wells may have been insurance agents for Kleenit at some time.  However, there is no evidence that the E.J. Wells Insurance Agency and/or Milt Esterbrook were exclusive agents for Travelers at any time. Indeed, Milt Estabrook brokered policies on behalf of Lumberman's Mutual Casualty Company

and Fireman Fund Insurance Company. <u>See</u> Crider Dep. Vol. III, at p. 53-54, 73-74. In sum, there is no evidence that the payments by Kleenit to Estabrook or the Wells Agency were premium payments for a policy issued by Travelers. Even if plaintiff could draw a connection between the payments and Travelers, there is no evidence that the payments were for a policy of commercial liability insurance (as opposed to, for example, workers compensation or automobile insurance) that would have indemnified Kleenit for the claims at issue in this case. Nor is there any evidence as to the terms, conditions and exclusions of this hypothetical policy, or the monetary limits of coverage.

Kleenit's former president, Keith Crider, has testified at deposition that Mr. Nason was Kleenit's accountant from approximately the late 1950s until 2001 or 2002, and that he "kept very fastidious records" and "kept every policy number that [Kleenit] ever had." <u>See</u> Crider Dep. Vol. I, at p. 58. In further explaining the accounting documents purportedly prepared and maintained by Mr. Nason during his tenure as Kleenit's accountant, including the handwritten ledger sheets relied upon by Kleenit in this litigation, Mr. Crider testified the documents were moved from Mr. Nason's office to Mr. Crider's office when Mr. Nason retired in 2001 or 2002, and that Mr. Nason's records included "all the policy numbers, the companies listed, everything in detail, the umbrella policy numbers." <u>See</u> Crider Dep. Vol. I, at pp. 60-61. However, as noted above, the purported ledger sheets contain no reference to any Travelers policy or policy number. *See* Exhibit "C." Moreover, while the ledger sheets make occasional references of payments to Milton Estabrook or E.J. Wells, the sheets do not provide any means for determining the nature of these payments, much less that they were payments of insurance policy premiums. Even if they were premium payments, there is no evidence as to the identity of the

insurer, or the type of insurance, that is related to the payment. <u>See</u> Crider Dep. Vol. III, at pp. 62-63.

Mr. Crider did not join Kleenit until October 1967, and he did not become involved in the procurement of insurance on behalf of Kleenit "until several years later." <u>See</u> Crider Dep. Vol. III., at p. 68. The person responsible for procuring insurance was Kleenit's then-owner, Russell D. Munro, who died in 1985. <u>See</u> Crider Dep. Vol. III, at pp. 50, 63. Mr. Munro was Mr. Crider's father-in-law.

Neither Mr. Crider nor any other officer or employee of Kleenit saw Mr. Nason's purported handwritten ledger entries prior to approximately 2000 or 2001, shortly before Mr. Nason's retirement. <u>See</u> Crider Dep. Vol. III, at pp. 80-81, 85.

### The Purported Policy Allegedly in Effect from August 1, 1967 until August 1, 1970

Kleenit attempts to support its claim for coverage from August 1, 1967 until August 1, 1970 by introducing several purported handwritten ledger entries, attached hereto as Exhibit "F," that also allegedly were prepared by Mr. Nason. <u>See</u> Crider Dep. Vol. III, at pp. 66. While some of these ledger entries make reference to Travelers, they do not provide any additional information that would allow a fact-finder to even conclude that Travelers provided coverage to Kleenit much less ascertain the type and limits of coverage that might have been provided by Travelers during the time period reflected on the ledger sheets. <u>See</u> Exhibit "F."[3]

Neither Mr. Crider nor any other officer or employee of Kleenit saw the documents

---

[3]These documents include annotations that indicate Milt Estabrook issued policies on behalf of Lumberman's Mutual Casualty Company and Firemans Fund Insurance Company, further diminishing the possibility that payments made by Kleenit to Milt Estaborook and/or E.J. Wells Insurance Agency necessarily indicate premiums payable to Travelers for the earlier period, 1964-1967. <u>See</u> Exhibit C; <u>see</u>, <u>also</u>, Crider Dep. Vol. III, at pp. 73-74.

attached hereto as Exhibit "F" prior to 2000 or 2001, and Mr. Crider does not know when Mr. Nason actually prepared the documents.  <u>See</u> Crider Dep. Vol.  III, at pp. 80-81, 84-86.  Mr. Nason never submitted the documents to anyone at Kleenit for a review of accuracy, and he never filed them with any governmental or other third-party entity; rather, he simply kept them in his office. <u>See</u> Crider Dep. Vol.  III, at pp. 84-87.

Mr. Crider has testified that, aside from the documents attached hereto as Exhibits "C" and "F," he is not aware of any other documentary evidence that Travelers provided coverage to Kleenit between 1964 and 1970.  <u>See</u> Crider Dep. Vol.  III, at pp. 87-88.  Finally, the documents contain multiple notations and annotations that are unclear in their meaning, even to Mr. Crider. <u>See</u> Crider Dep. Vol.  III, at pp. 58, 71-83.

<u>ARGUMENT</u>

**A.    <u>Travelers is Entitled To Judgment as a Matter of Law</u>**

The party moving for summary judgment (Travelers, here), "'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the records which it believes demonstrate the absence of a genuine issue of material fact.'"  <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which it has the burden of proof, to demonstrate that a trier of fact reasonably could find it its favor."   <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997) (*citing* <u>Celotex</u>).  In opposing summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of the pleading, but must set forth specific facts

6

showing that there is a genuine issue of material fact as to each issue on which he or she would bear the ultimate burden of proof at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos, supra., 217 F.3d at 52 (citations omitted).

Evidence that is inadmissible at trial, such as hearsay, may not be considered at summary judgment. Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005). The reasons for the rule are obvious: a plaintiff who seeks to avoid summary judgment must demonstrate a triable issue of fact. If the sole basis of the plaintiff's case consists of inadmissible hearsay, trial would be futile. The rule is critical in this case, as we will explain below.

Under Massachusetts law, a putative insured such as Kleenit bears the burden of proving both the existence and terms of an insurance policy by a preponderance of the evidence. Rubenstein v. Royal Ins. Co. of America, 44 Mass. App. Ct. 842, 846 (1998); Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465, 484 (1997) (putative insured "bears the burden of proving that the [policies] were issued, and he must also prove their terms"). Although a witness who is familiar with the terms of a policy may testify to prove the contents of said policy, he must have "direct recollection" in order for the testimony to be probative." Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F.Supp.2d 374 (D.P.R. 2002), citing Sanstrom, Inc. v. Hartford Accident & Indemnity Co., 940 F.2d 1535 (9th Cir. 1991). Here, Kleenit offers no witness with any familiarity or personal knowledge of the purported Travelers policies or their terms, conditions and exclusions.

The purported "evidence" of coverage tendered by Kleenit does not satisfy this burden of proof as to either the existence or the terms of the purported policies, and, consequently, Travelers is entitled to partial summary judgment as a matter of law.

**B.     The ledger entries are inadmissible hearsay**

As an initial matter, the ledger entries on which Kleenit relies are inadmissible hearsay, and the documents do not fall within any exception to the rule.

Kleenit's "evidence" that Travelers provided coverage under the two purported policies from August 1, 1964 until August 1, 1970 is limited to the handwritten documents attached hereto as Exhibits "C" and "F," which were purportedly prepared by a now-deceased accountant who never asked Kleenit to review the documents for accuracy. Indeed, Kleenit never even saw the documents until approximately 2000 or 2001, when the accountant was in the process of cleaning out his office and retiring. Kleenit does not know when the documents were actually written. There is no information as to who made the records or the information relied on in making them. The accountant never submitted the documents to any other governmental or third party entity; rather, he simply kept them in his office.

Accordingly, the ledger entries are inadmissible hearsay under Rule 802 of the Federal Rules of Evidence. The documents consist solely of handwritten ledgers, clearly offered to prove the truth of the matter asserted. The documents are not excepted from Rule 802 by the "regularly conducted activity" exception set forth in Rule 803(6), the so-called "business records exception," because there exists insufficient information to determine that the documents were "made at or near the time by, or from information transmitted by, a person with knowledge [and] kept in the course of a regularly conducted business activity."

Rule 803(6) provides for admission of otherwise-excluded business records as follows:

> A memorandum, report, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the ordinary course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, ...

Fed.R.Evid. 803(6).

The United States Court of Appeals for the First Circuit has held that admission under the business records exception, "[r]equires both the testimony of a qualified custodial witness and a showing that the declarant was a person with knowledge acting in the course of a regularly conducted business activity." United States v. Kayne, 90 F.3d 7, 12 (1st Cir. 1996). Although the declarant need not actually have prepared the document, he must be able to, "[e]xplain and be cross-examined concerning the manner in which the records are made and kept." Wallace Motor Sales v. American Motors Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985). Records are inadmissible where they are so "cryptic" that the fact finder must guess as to the source of the information. Petrocelli v. Gallison, 679 F.2d 286, 291 (1st Cir. 1982).

Accordingly, the Nason ledgers do not qualify under the business records exception. Kleenit has not offered the testimony of any qualified witness to authenticate the ledger sheets. Records are not automatically incorporated into another entity's business records simply when the other gains control of the records. Belber v. Lipson, 905 F.2d 549, 552 (1st Cir. 1990). There exists no custodian or other qualified witness who can testify that "it was the regular practice of [Mr. Nason] to make the" documents or that they were made in the normal course of his

9

business.  See Federal Rules of Evidence, Rules 802 and 803.  Mr. Nason is deceased.  Kleenit

has offered no other employee from Mr. Nason's firm to testify about the records: either how

they were made or maintained.  Mr. Crider, by his own admission, is not qualified to do so, since

he has no personal knowledge of how the records were made and maintained.  Crider never

discussed the records with Nason before Nason stopped working.  Indeed, until about 2001 or

2002, the records were not even in Kleenit's possession.  There is no evidence as to the chain of

custody of the records that would provide any imprimatur of reliability or credibility.

Furthermore, the 1964-1967 records are particularly "cryptic" in that they do not refer to

Travelers, only an insurance agent who wrote policies for other carriers.

Moreover, the purported records consist of double hearsay.  Not only is there no evidence

to satisfy Rule 803(6), even if there were, Kleenit relies on information apparently reported to its

outside accountant by third parties.  Thus, Kleenit's argument relies on the notations on the

ledgers as to payments allegedly made by Kleenit to its insurance agent.  These notations

necessarily rely on the statements of non-parties, offered for the truth of the matter asserted.  In a

similar case, the Massachusetts Appeals Court refused to consider a schedule of primary

insurance listed on an excess policy.  Atlas Tack v. Vermont Mutual Ins. Co., 53 Mass. App. Ct.

1110 (2002) (unpublished opinion).  "An assertion by [the excess carrier] that such a policy had

been issued was necessarily based upon the assertion of someone who was not a part of [the

excess carrier's] business."  Id; see also Cameron v. Otto Bock Orthopedic Industry, Inc., 43

F.3d 14, 16 (1st Cir. 1994) (information on a business document provided by a non-party to the

business renders the business record inadmissible under the business record exception).  Here,

there is no evidence that Nason actually saw the purported insurance policies.

10

For similar reasons, and because the ledger sheets do not possess "circumstantial guarantees of trustworthiness," the Court should not admit them under the so-called residual exception to the hearsay rule.  Polansky v. CNA Ins. Co., 852 F.2d 626, 631 (1st Cir. 1988); Fed.R.Evid. 803(24).

**C.    Kleenit cannot meet its burden of proving that Travelers provided coverage between August 1, 1964 and August 1, 1967**

As discussed above, the Court may easily resolve the issue of the so-called "missing policies," because Kleenit's argument rests solely on inadmissible and unreliable documents. However, even if there were no hearsay problem, Kleenit still could not rely on the documents to survive summary judgment.  The ledger entries provide no information that would establish, by a preponderance of the evidence, that Travelers provided general liability coverage to Kleenit from August 1, 1964 until August 1, 1967.  The documents contain multiple notations and annotations that are unclear in their meaning, even to Mr. Crider.  The documents do not identify a Travelers policy, by number of by some other mark.  In fact, there is no reference to "Travelers" on the 1964-1967 notations.  Instead, Kleenit relies on the references to its former insurance agent and argues, purely by speculation, that payments to the agent could represent premium payments to Travelers.  However, the mere fact that Kleenit made payments to an insurance agent does not show – nor does it even suggest – that the payments were made to Travelers.  The Wells Agency was not an exclusive Travelers agent.  Payments made to the agent were also used to pay premiums for policies issued by other insurers.  Noticeably absent is any document from Kleenit's insurance agent that would show a policy from Travelers.  For example, Kleenit offers no certificates of insurance or correspondence that would support its allegation of a Travelers

11

policy.  *Compare* <u>Rubenstein v. Royal</u>, *supra*., 44 Mass. App. Ct. at 847 (insured offered "extensive" testimony about purchases of insurance and schedule of insurance from agent, clearly identifying specific policy); *see also* <u>Burroughs Wellcome Co. v. Commercial Union Ins. Co.</u>, 632 F.Supp. 1213, 1222-1223 (S.D.N.Y. 1986).

Even if the entries provided some evidence of a payment to Travelers, Kleenit has offered no proof of the second element: the terms of the purported "policies."  There is no proof that Travelers issued to Kleenit a commercial general liability policy and that any such policy would have provided coverage for the environmental claims for which Kleenit seeks coverage in the litigation.  Kleenit has not offered any evidence as to the terms, conditions or exclusions of the alleged policies or what the monetary limits of any such "policy" would have been.  Again, comparison with <u>Rubenstein</u> is dispositive: there the insured provided documentation from its agent that clearly identified a policy and the terms, conditions and exclusions of similar policies used by the carrier at the time.  The insured also provided testimony and documents from the insurer (including, for example, internal memos) demonstrating both the existence and specific terms of the policy.  <u>Rubenstein v. Royal</u>, *supra*., 44 Mass. App. Ct. at 847.  Here, by contrast, Kleenit relies solely on inadmissible hearsay, speculation and conjecture.  This "evidence" fails to satisfy its burden of proof and summary judgment is appropriate.

**D.**     **<u>Kleenit cannot meet its Burden of Proving that Travelers Provided Coverage between August 1, 1967 and August 1, 1970</u>**

For the same reasons, Kleenit cannot satisfy its burden of proving the existence and terms of an alleged policy between 1967 and 1970.  First, the documents are inadmissible hearsay, and

they do not fall within any exception.[4]  And, even if the entries were admissible, they contain

insufficient evidence to demonstrate the existence and terms of any policy.

      Admittedly, Kleenit has provided marginally more information for the 1967-1970

"policy" than it does for the 1964-1967 "policy."  The ledger entries refer to Travelers, unlike

the earlier entries, which simply refer to an insurance agent.  And, Kleenit has alleged a policy

number that it asserts is associated with a policy issued by Travelers.  However, for several

reasons, these additional facts are also insufficient to withstand summary judgment.

      First, as discussed above, it is not enough simply for Kleenit to present some evidence

that Travelers issued it a policy.  It must prove the terms, conditions and exclusions of the

policy.  This may be accomplished by the simple expedient of producing the actual policy.  In

the absence of a policy, however, Kleenit must provide evidence of the terms, conditions and

exclusions of the policy sufficient for the fact finder to conclude by a preponderance of the

evidence that such a policy actually was issued.  Here, Kleenit has produced no admissible

evidence whatsoever of the terms, conditions and exclusions, nor has Kleenit proven the

monetary limits of any such coverage.  Thus, if Kleenit were allowed to argue to the fact finder

that it carried an insurance policy with Travelers between 1967 and 1970, the jury would have no

basis on which to determine what the terms, conditions or exclusions of the policy would have

been or how much money Travelers would have been obligated to pay.  *Compare* Employers'

Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., *supra*., 43 Mass. App. Ct. at 483-485

---

[4]Indeed, as discussed in Section "B," above, the entries on which Kleenit would rely to prove the
1967-1970 "policy" are second-level hearsay.  The 1968-1970 ledgers refer to "Travelers."  To
the extent that Kleenit argues that the notations on Mr. Nason's ledgers demonstrate the
existence of an insurance policy, those notations necessarily are based on information provided
to Nason by others, *i.e.*, that Travelers issued an insurance policy.

(although Appeals Court had "some misgivings," it affirms denial of summary judgment based on inference as to coverage limits of excess policy where evidence showed that "first and only layer of excess coverage was $5 million as a minimum"). In contrast to <u>Hoechst</u>, there is absolutely no evidence as to what the limits of insurance would have been on the hypothetical policy.

<strong><u>CONCLUSION</u></strong>

Because the plaintiff will be unable to provide admissible evidence concerning the existence and terms of any Travelers policy before August 1, 1970, the Court should enter partial summary judgment in favor of Travelers that the only policy, if any, under which Travelers must defend and indemnify the plaintiff is the policy for the period August 1, 1970-August 1, 1973.

Respectfully submitted
THE TRAVELERS INDEMNITY
COMPANY
By its attorneys,


_____/s/ Joseph S. Berman_____
Joseph S. Berman, BBO NO. 566006
BERMAN & DOWELL
210 Commercial Street
Boston, MA 02109
Telephone (617) 723-9911

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2006, I filed a copy of the foregoing by electronic means with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification to the following, to: Richard Heifetz, Esq. and Danielle M. Maloney, Esq., Tucker, Heiftez & Saltzman, LLP, Three School Street, Boston, MA 02108; and  Donald P. Nagle, Esq., Law Office of Donald P. Nagle, P.C., 5 Main Street Extension, Suite 300, Plymouth, MA 02360.

_____ /s/ Joseph S. Berman _____
Joseph S. Berman