# EXHIBIT A

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
C.A. NO.

|  |  |
|---|---|
| KLEENIT, INC. | ) |
| Plaintiff, | ) |
|  | ) |
| SENTRY INSURANCE COMPANY, ROYAL & SUN ALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY | ) |
| Defendants. | ) |

## COMPLAINT

1.       This Complaint seeks a declaration of rights under G.L. c. 231A, damages for breach of contract, and multiple damages pursuant to G.L. c. 176D and c. 93A, for unfair and deceptive insurance claim settlement practices in connection with the denial of defense and coverage under insurance policies issued to Plaintiff by Defendants.

### I.       PARTIES AND JURISDICTION

2.       Plaintiff Kleenit, Inc. is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal office at 44 Park Street, in Ayer, Middlesex County, Massachusetts.

3.       Defendant Sentry Insurance Company ("Sentry") is an insurance company, and upon information and belief is duly organized and existing under the laws of the state of Wisconsin with a principal place of business at 3 Carlisle Road in Westford, Massachusetts 01886 and/or at 1800 North Point Drive, Stevens Point, Wisconsin.

4.    Upon information and belief, Defendant Sentry serves commercial and individual insureds in the Commonwealth of Massachusetts and maintains minimum contacts within Massachusetts. Upon information and belief, Defendant Sentry is licensed to conduct business is the Commonwealth of Massachusetts.

5.    Royal & Sun Alliance is an insurance company which include Royal Insurance Company of America and the Globe Indemnity Company (collectively "Royal & Sun Alliance" or "Royal"), and upon information and belief is duly organized and existing under the laws of the state of Illinois with a principal place of business at 25 New Chardon Street in Boston, Massachusetts 02114.

6.    Upon information and belief, Defendant Royal & Sun Alliance serves commercial and individual insureds in the Commonwealth of Massachusetts and maintains minimum contacts within Massachusetts. Upon information and belief, Defendant Royal is licensed to conduct business is the Commonwealth of Massachusetts.

7.    Defendant Utica National Insurance Group is an insurance company which includes Graphic Arts Mutual Insurance Company (collectively "Utica"), and upon information and belief is duly organized and existing under the laws of the state of New York with a principal place of business at 401 Edgewater Place in Wakefield, Massachusetts and/or in New Hartford, New York.

8.    Upon information and belief, Defendant Utica serves commercial and individual insureds in the Commonwealth of Massachusetts and maintains minimum contacts within Massachusetts. Upon information and belief, Defendant Utica is licensed to conduct business is the Commonwealth of Massachusetts.

9.    Defendant Travelers Property and Casualty ("Travelers") is an insurance company, and upon information and belief is duly organized and existing under the laws of the

2

state of Connecticut with a principal place of business at 44 Bedford Street in Middleborough, Massachusetts 02344 and/or 300 Crown Colony Drive, Quincy, Massachusetts.

10.    Upon information and belief, Travelers serves commercial and individual insureds in the Commonwealth of Massachusetts and maintains minimum contacts within Massachusetts. Upon information and belief, Travelers is licensed to conduct business is the Commonwealth of Massachusetts.

11.    Jurisdiction is based on G.L. c. 93A and G.L. c. 176D. Further jurisdiction to review and declare the rights and duties of the parties is specifically conferred upon this Court by G.L. c. 231A, §1, et seq.

## II.    STATEMENT OF FACTS

12.    Plaintiff owns and operates dry-cleaning and laundering service facilities located at 28 Central Square, Chelmsford, Middlesex County, Massachusetts ("Chelmsford Site"), and 293-295 Main Street, Acton, Middlesex County, Massachusetts ("Acton Site").

13.    Plaintiff is an insured under comprehensive general liability, multi-peril, and other insurance policies (collectively "Policies") issued by Defendants regarding the Chelmsford and Acton Sites.

14.    Plaintiff was issued a Notice of Responsibility ("NOR") by the Massachusetts Department of Environmental Protection ("DEP") with regard to alleged contamination at the Chelmsford Site by letters dated January 28, 2001 and June 19, 2001, and was issued an NOR by DEP on December 30, 2002 regarding alleged contamination at the Acton Site (collectively, the Chelmsford and Acton Sites are hereinafter referred to as "the Sites").

15.    DEP alleges in its NORs that Plaintiff is liable as a responsible party for the release or threat of release of hazardous materials at the Sites under M.G.L. c.21E.

16.   Plaintiff tendered claims to the Defendants relative to the NORs and Sites on or about September 25, 2002, requesting that they defend and indemnify it with respect to the NORs and claims pursuant to the terms of the Policies.

17.   As of the date of this Complaint, the defendant insurance companies have wrongfully refused to provide Plaintiff with a full defense and indemnification of the NORs.

18.   The Plaintiff has been forced to file this lawsuit due to Defendants' wrongful refusal to provide full defense and indemnification under the Policies.

## COUNT ONE
### (DECLARATORY JUDGMENT)

19.   Plaintiff incorporate by reference herein Paragraphs 1 through 18.

20.   A dispute has arisen and presently exists between the Defendants and Plaintiff as to the Defendants' obligations under their respective insurance policies issued to the Plaintiff.

21.   The Defendants are contractually required by the terms of the Policies to fully defend and indemnify the Plaintiff, as the insured under the Policies issued by each Defendant, with respect to the defense and settlement of the underlying liability to the DEP and third parties under the NORs and G.L. c. 21E.

22.   Wherefore, the Plaintiff requests a declaration that the Defendants are obligated to defend and indemnify it for the full amount, up to the respective Policy limits, of any past, present and future liability, and for damages incurred by or assessed against the Plaintiff.

23.   The Plaintiff further requests a declaration that the Defendants are obligated to defend and indemnify it for the full amount, up to the respective Policy limits, of any past,

4

present and future liability to DEP or any third party for damages incurred by or assessed against the Plaintiff.

24.    In addition, Plaintiff requests a declaration that it is entitled to prompt reimbursement of all of its past, present and future defense costs, including without limitation environmental consultant costs, investigation and assessment costs, and attorneys' fees, with respect to the NORs and claims of DEP, and reimbursement of all costs associated with any other future claims made in connection with Plaintiff's operation of and involvement with the Sites.

### COUNT TWO
### (BREACH OF CONTRACT)

25.    Plaintiff incorporate by reference herein Paragraphs 1 through 24.

26.    The Defendants have breached their insurance contracts and Policies with the Plaintiffs by wrongfully refusing to defend and indemnify Plaintiff under the Policies with respect to the NORs and other claims pertaining to the Sites.

27.    Plaintiff has suffered severe economic damages due to Defendants' breach of the contracts and Policies, as it has been required inter alia, to incur significant and unreimbursed out of pocket expenses defending and responding to the NORs and related claims.

28.    WHEREFORE, the Plaintiff requests damages for Defendants' breach of its insurance contracts and Policies in the amount of Plaintiff's expenses incurred and to be incurred with respect to the defense of the NORs and DEP's and other claims under G.L. c. 21E, response action costs related thereto, and attorneys' fees incurred and to be incurred in connection with Plaintiff's defense and response and with Plaintiff's claim against Defendants for reimbursement of defense and settlement.

## COUNT THREE
### (VIOLATIONS OF G.L. c. 93A AND c. 176D)

29.    Plaintiff incorporate by reference herein Paragraphs 1 through 28.

30.    The Defendants have violated Chapter 93A, § 11 by willfully and knowingly engaging in unfair and deceptive insurance trade practices.

31.    In addition to repeatedly providing full factual and legal support for its request for defense costs and indemnification for damages incurred in connection with the NORs and claims of the DEP, Plaintiffs have demonstrated to the Defendants that the Massachusetts case law supports the Plaintiff's claim for full defense and coverage under the Policies. The Defendants have nonetheless continued to wrongfully deny full defense coverage and indemnity obligations.

32.    The Defendants continued denial of defense and coverage under the circumstances constitutes bad faith, an unfair and deceptive business practice as defined by G.L. c. 93A, §§ 2 and 11, and an unfair claim settlement practice as defined by c. 176D, § 3(9).

33.    WHEREFORE, the Plaintiff demands judgment pursuant to G.L. c. 93A, §§2 and 11 and G.L. c. 176D, § 3 for three times the full amount of past, present, and future damages and litigation costs incurred in connection with Defendants' unfair insurance claims settlement practices.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff requests:

(1)    a declaratory judgment by the Court stating the Defendants' duties to fully defend and indemnify Plaintiff under the Policies with respect to the NORs and other claims;

(2)    reimbursement of all defense costs, response action costs (including without limitation environmental consultants and investigation and assessment costs), attorneys' fees and settlement costs relative to compliance with DEP and the NORs; .

(3)    multiple damages for Defendants' bad faith insurance claim settlement practices in failing to provide full defense and indemnity in violations of G.L. c. 93A, §§2 and 11 and G.L. c. 176D;

(4)    reimbursement of reasonable attorney fees, expenses and costs in connection with Plaintiff's claim against Defendants and for bringing this action; and,

(5)    Whatever other monetary and equitable relief this Court deems just.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable.

Respectfully submitted,

KLEENIT, INC.
By its attorney,

Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970

# **EXHIBIT B**



# THE TRAVELERS INDEMNITY COMPANY

### HARTFORD · CONNECTICUT

(A Stock Insurance Company, Herein Called The Travelers)

(POLICY TITLE)

BUSINESS OWNERS

In case of fire notify the Company or its local Agent at once in writing.

No. ND  9087145

## MEMORANDUM OF INSURANCE

Insurance is afforded only under those sections of this policy as are indicated by entry of "Included" opposite thereto. The insurance afforded under a section is limited to the extent set forth in the declarations, forms and other policy provisions applicable to the section.

**Item 1.** Named Insured — KLEEN-IT, INC AND AS ENUMERATED ON ENDORSEMENT ND2A

Address
(No., street, town, county, state)
44 PARK ST
AYER MASS 01432

**Item 2.** Policy effective from  AUG 28 1970  to  AUG 28 1973  12 noon, standard time at the address of the Named Insured as stated herein.

**Item 3.**

| Section—Kind of Insurance | | (Included) | | Symbol numbers of applicable declarations pages forming a part of this policy on its effective date. |
|---|---|---|---|---|
| I | Fire and Other Related Physical Damage Perils | INCLUDED | ND3A | |
| II | General Liability | INCLUDED | 30A | |
| III | Automobile Liability | | | |
| IV | Automobile Physical Damage | | | |
| V | Crime | | | |

**Item 4.** Payment of Provisional Premium: $27,721.95  Total Provisional Premium
$ 9,241.95  Due at policy inception
$ 9,240.00  Due at end of each subsequent 12 month period

In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Schedule, this Company, for the term from inception date shown above (At Noon Standard Time) to expiration date shown above or until canceled (At Noon Standard Time) at location of property described, to an amount not exceeding the amount(s) specified in the Declarations above and legal representatives, to the extent of the actual cash value of the property at the time of loss, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREIN PROVIDED, to the property herein described while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

E. J. Wells Insurance Agency, inc.

HENRY F. BARRY, JR.

Agency at _____  _____ Agent

This is furnished simply as a memorandum of said Policy as it stands at the date of issue hereof, and is given as a matter of information only and confers no rights on the holder and imposes no liability upon The Travelers.

I-3895A Massachusetts  Edition May 1964  PRINTED IN U.S.A.

Page 1

The Travelers (Package Policies)

SECTIONS I AND II—DECLARATIONS

Forming part of Policy No. ND **9087145**

Effective from **8-28-70** 12 noon standard time at the address of the Named Insured stated in the policy declarations.

**Item 1.** Location of Premises:

| Building No. | Address (No., street, town, county, state) (Enter "Same" if same location as address on page 1 of policy) | Part of Building Occupied by Insured | Purpose of Use |
|---|---|---|---|
| 1. | SAME | ENTIRE | DRY CLEANER & LAUNDERER |
| 2. | 45 PARK ST. AYER MASS (LIABILITY COV. ONLY) | | |
| 3. | 31 CENTRAL AVE. AYER MASS | ENTIRE | LAUNDRY & PICK UP STATION |
| 4. | 28 CENTRAL SQ. CHELMSFORD MASS | ENTIRE | DRY CLEANER & SELF SERVICE L |

**Item 2.** The insurance afforded is only with respect to such of the following coverages (or item thereof) as are indicated herein by entry of a specific limit of liability applicable thereto, subject to any Supplemental Declarations-Sections I and II made a part hereof. A limit inserted under "Blanket" applies under Section I to a coverage and at the building for which the word "Included" is inserted.

| Coverage | Limits of Liability | | | | |
|---|---|---|---|---|---|
| | Bldg. No. 1 | Bldg. No. 2 | Bldg. No. 3 | Bldg. No. 4 | Blanket |
| **Section I** A. Building | $ 60,000 | LIABILITY | $ 60,000 | $ 60,000 | $ |
| B. Personal Property | $ 60,000 | COVERAGE | $ 55,000 | $ | $ |
| C. Business Interruption | $ | ONLY | $ | $ | $ |
| Rental Income | $ | | $ | $ | $ |
| Loss of Income | $ | | $ | $ | $ |

| | Single Limits | Separate Limits | | | |
|---|---|---|---|---|---|
| **Section II** D. Liability | 1. Bodily Injury and | 1. Bodily Injury | $ each person | $ each occurrence | $ aggregate |
| | 2. Property Damage $ 100,000 each occurrence $ 100,000 aggregate | 2. Property Damage $ each occurrence | $ aggregate | | 00029 |
| | 3 Personal Injury | $ each person aggregate | | $ general aggregate | |

E. Premises Medical Payments $         each person    $         each accident

**Item 3.** Symbol numbers of forms, endorsements, and supplemental contracts forming a part of Section I or II of this policy on its effective date: ND **2A, 11A, 24, 56, 84, 141, 162, 165, 166, 167, 200 G210A, G513, 19390**

**Item 4.** (a) 80% Coinsurance applies to Coverages A and B. Exceptions, if any **(90% COINSURANCE APPLIES)**

(b)        % Coinsurance applies to Coverage C—Business Interruption, which _____ ordinary payroll expense. (includes/excludes)

(c) Not more than 1/9th of the limit applies for each 30 days or part thereof under Coverage C—Rental Income. Exceptions, if any:

(d)        % Coinsurance applies to Coverage C—Loss of Income.

**Item 5.** $100 deductible applies to loss under Coverages A and B. Exceptions, if any: **WAIVED EXCEPT FOR DEDUCTI OF $50. ON LOSS BY WIND OR HAIL TO BLDGS AND PROPERTY IN THE OPEN**

**Item 6.** Coverage A or B — Property at premises not owned, leased, operated or regularly used by the Insured, as defined and limited in Extension of "Extensions of Coverage" in the Standard Form, is insured subject to the following provisions:

(a) The Travelers shall not be liable in any one loss:

(1) As respects any one such premises, for more than 10% of the sum of the limits applicable to Coverages A and B or $5,000, whichever is less, unless a limit is inserted hereafter $_____;

(2) As respects all such premises, for more than $5,000 in the aggregate unless a limit is inserted hereafter $_____.

(b) The Coinsurance Clause contained in the Standard Form shall apply only when the limit is increased in (1) or (2) above.

(Continued on page 2)                ND 30A (Mass. & Minn.)

# EXHIBIT C

Case 1:04-cv-10351-RBC    Document 95-2    Filed 08/23/2006    Page 13 of 68

PAYMENTS CHECKED FROM CASH BOOK IN PERIOD ENDING

| Date | Paid after 3-7 | | ✓ | PAID | Date | PURCHASED FROM | Vchr. No. | Amount 211 Acct. Pay. | 1,2 Outside Lab |
|---|---|---|---|---|---|---|---|---|---|
| | | | ✓ | | 7-27 | Klant Inc. | 1 | 2595 | |
| | | | ✓ | | 7-3 | " | 2 | 876 - | |
| | | | ✓ | | 6-30 | Superior Products Co. Inc. | 3 | 378 - | |
| | | | ✓ | | 7-7 | " | 4 | 3760 | |
| | | | ✓ | | 6-29 | Northeast Offset Inc. | 5 | 18 - | |
| | | | | | 6-2 | Stephen-Roger Inc. | 6 | 2086 | |
| | | | ✓ | | 7-6 | " | 7 | 170 - | |
| | | | ✓ | | 7-13 | " | 8 | 19521 | |
| | | | ✓ | | 7-14 | B.V. Moore Lumber Co Inc. | 9 | 779. | |
| | | | ✓ | | 7-1 | Simplex Time Recorder Co | 10 | 27 - | |
| | | | ✓ | | 6-28 | The General Chemical Products Inc. | 11 | 12538 | |
| | | | ✓ | | 7-28 | " | 12 | 21645 | |
| | | ✓ | | | 6-30 | Hall Electric Supply Co. | 13 | = . | |
| | | | ✓ | | 7-30 | " | 14 | 14209 | |
| | | | | | 6-30 | George Hyde | 15 | 5519 | |
| | | | | | 7-31 | | 16 | 7953 | |
| | | | ✓ | | 6-8 | Middlesex Supply Inc. | 17 | 320 | |
| | | | ✓ | | 6-21 | Fulton Estabrook | 18 | 19303 | |
| | | | ✓ | | 8-5 | " | 19 | 42408 | |
| | | | ✓ | | 8-6 | " | 20 | 100 - | |
| | ✓ | | ✓ | | 7-26 | Fort Devens Package | 21 | 19493 | |
| | ✓ | | ✓ | | 7-6 | " | 22 | 54122 | |
| | | ✓ | | | 6-30 | " | 23 | 64624 | |
| | | | ✓ | | 7-6 | The Diehl Co. | 24 | 3000 - | |
| | | ✓ | | | 7-1 | Carlton Crothers | 25 | 2360 | |
| | | | ✓ | | 7-1 | Percy Baker | 26 | 8140 | |
| | | ✓ | | | 7-3 | Carth Paint + Hdwe C. | 27 | 1095 | |
| | | ✓ | | 2.59 | 7-2 | N E T + T Co. | 28 | 50. | |
| | ✓ | | | | 6-28 | " | 29 | 3446 | |
| | | ✓ | Corr | | 7-28 | " | 30 | 3375 | |
| Add 143 to | | | ✓ | | 7-2 | PIL | 31 | 10270 | |
| | | ✓ | | | 7-13 | Jennie Sweeney | 32 | 7476 | |
| | | | ✓ | | 6-30 | May + Halley Inc. | 33 | 292 - | |
| | | | | | 7-1 | Dimplex Guthridge | 34 | 270 - | |
| | | | ✓ | | 7-1 | Jim Grunwald | 35 | 125 - | |
| | | | | | 7-1 | Arthur Flynn | 36 | 75 - | |
| | | | | | | | 37 | | |
| | | | | | | | 38 | | 1652 41 |
| | | | | | | | 39 | | |
| | | | | | | | 40 | ✓ | |
| | | | | | | | 41 | | |
| | | | | | | | 42 | | |
| | | | | | | | 43 | | |
| | | | | | | | 44 | | |
| | | | | | | | 45 | | |
| | | | | | | | 46 | | |
| | | | | | | | 47 | | |
| | | | | | | | 48 | | |
| | | | | | | | 49 | | |
| | | | | | | | 50 | | |

Totals Forwarded

## GENERAL LEDGER

| SUNDRY EXP. | | | | | | 131-SUPPLIES | | | | | 141 | Vchr. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amount | Acct. No. | Allowances | EXPLANATION | Acct. No. | Amount | .2 Mark | .3 Wash | .5 Irdn | .6 Pack | | Ppd. Ins. | No. |
| | | | | | | | | | | | | 1 |
| | | | | | | | | | | | | 2 |
| | | | | | | | | | 378 - | | | 3 |
| | | | | | | | | | 37 60 | | | 4 |
| | | | | | | | | | | | | 5 |
| | | | | | | | | | 20 86 | | | 6 |
| | | | | | | | | | 195 21 | | | 7 |
| | | | | | | | | | | | | 8 |
| | | | | | | | | | | | | 9 |
| | | | | | | | | | 125 38 | | | 10 |
| | | | | | | | | | 216 45 | | | 11 |
| | | | | | | | | | | | | 12 |
| | | | | | | | | | | | | 13 |
| | | | | | | | | | | | | 14 |
| | | | | | | | | | | | | 15 |
| | | | | | | | | | | | | 16 |
| | | | | | | | | | 193 08 | 03 w/c cux | | 17 |
| | | | | | | | | | 424 08 | w/c amt | | 18 |
| | | | | | | | | | 100 - | Bal amt | | 19 |
| | | | and water | | 60 80 | | | | | | | 20 |
| | | | | | | | | | | | | 21 |
| | | | Mach & Equip | | 3000 - | | | | | | | 22 |
| | | | | | | | | | | | | 23 |
| | | | | | | | | | | | | 24 |
| | | | | | | | | | | | | 25 |
| | | | | | | | | | | | | 26 |
| | | | | | | | | | | | | 27 |
| | | | | | | | | | | | | 28 |
| | | | | | | | | | | | | 29 |
| | | | | | | | | | | | | 30 |
| | | | | | | | | | | | | 31 |
| | | | | | | | | | | | | 32 |
| | | | | | | | | | | | | 33 |
| | | | | | | | | | | | | 34 |
| | | | | | | | | | | | | 35 |
| | | | | | | | | | | | | 36 |
| | | | | 3260 9 | 742 - | | | 1200 58 | | 717 11 | | 37 |
| | | | | | | | | | | | | 38 |
| | | | | | | | | | | | | 39 |
| | | | | | | | | | | | | 40 |
| | | | ✓ | | | | | | ✓ | | | 41 |
| | | | | | | | | | | | | 42 |
| | | | | | | | | | | | | 43 |
| | | | | | | | | | | | | 44 |
| | | | | | | | | | | | | 45 |
| | | | | | | | | | | | | 46 |
| | | | | | | | | | | | | 47 |
| | | | | | | | | | | | | 48 |
| | | | | | | | | | | | | 49 |
| | | | | | | | | | | | | 50 |

| | Date | PURCHASED FROM | Vehr. No. | Amount 211 Acct. Pay. | 1.3 Outside Ldy. |
|---|---|---|---|---|---|
| ✓ | 8-8 | Lily L. Inc. | 1 | 451 37 | 451 37 |
| ✓ | 9-4 | " | 2 | 475 84 | 475 84 |
| ✓ | 9-11 | " | 3 | 484 78 | 484 78 |
| ✓ | 9-18 | " | 4 | 486 98 | 486 98 |
| ✓ | 9-17 | The Deer Little Corp. | 5 | 5 80 | |
| ✓ | 9-3 | David Allan, Inc. | 6 | 161 20 | |
| ✓ | 9-2 | Nancy Sales Co. Inc. | 7 | 264 42 | |
| ✓ | 9-13 | Textile Maintenance & Supply Corp. | 8 | 273 15 | |
| | 8-26 | Adrian Advertising Associates | 9 | 501 60 | |
| ✓ | 9-8 | " | 10 | 380 63 | |
| ✓ | 8-1 | Consult the Lowell Sun | 11 | 13 80 | |
| ✓ | 8-23 | Thomas J. Fleherty Co. | 12 | 1075 25 | |
| ✓ | 8-27 | Craig Supply Co. Inc. | 13 | 37 85 | |
| | 8-31 | Ideal House Cleaner | 14 | 125 - | |
| ✓ | 8-31 | " | 15 | 150 - | |
| ✓ | 9-7 | Norman E. Day Inc. | 16 | 5 - | |
| ✓ | 8-26 | Industrial Fasteners & Equip Corp. | 17 | 465 0 | |
| | 8-31 | Chelmsford Nursery | 18 | 67 20 | |
| ✓ | 8-31 | Lowell Gas Co. | 19 | 390 52 | |
| ✓ | 8-31 | Certin Paint + House | 20 | 5 32 | |
| ✓ | 8-31 | National Cash Register Co. | 21 | 44 28 | |
| ✓ | 8-31 | Ernest H. Ford | 22 | 22 50 | |
| ✓ | 9-4 | Garment Machinery Co. | 23 | 15 - | |
| ✓ | 9-9 | " | 24 | 17 23 | |
| ✓ | 9-10 | " | 25 | 1 44 | |
| ✓ | 8-30 | Hall Electric Supply Co. | 26 | 5 51 | |
| ✓ | 9-8 | " | 27 | 258 50 | |
| ✓ | 8-31 | George Hyde | 28 | 55 32 | |
| ✓ | 8-30 | Burgess Industrial Supply Co. | 29 | 36 - | |
| ✓ | 9-3 | Stephen Royce Inc. | 30 | 9 78 | |
| ✓ | 9-7 | " | 31 | 31 - | |
| | 9-7 | Mass. Electric Co. | 32 | 236 05 | |
| ✓ | 8-31 | Macy & Welby | 33 | 17 50 | |
| ✓ | 8-28 | N E T + T Co. | 34 | 298 98 | |
| ✓ | 9-? | " | 35 | 33 42 | |
| | 8-31 | Anthony M. Vaccaro | 36 | 6 28 | |
| ✓ | 9-1 | Mario J. Barba Inc. | 37 | 75 - | |
| ✓ | 8-27 | Superior Products Co. Inc. | 38 | 76 50 | |
| ✓ | 9-1 | Milton Estabrook | 39 | 283 31 | |
| ✓ | 9-16 | " | 40 | 16 80 | |
| ✓ | 9-1 | " | 41 | 1608 - | |
| ✓ | 9-1 | " | 42 | 323 - | |
| ✓ | 9-13 | Louis Ferrara | 43 | 99 50 | |
| ✓ | 8-31 | The Eddie Hart Shop | 44 | 17 15 | |
| ✓ | 8-31 | Lowell Glass & Inc. | 45 | 14 80 | |
| ✓ | 8-31 | Albert H. Nutone + Son Inc. | 46 | 10 50 | |
| | 9-2 | Forester Stores | 47 | 39 78 | |
| ✓ | 9-13 | J. Sweeney | 48 | 74 35 | |
| ✓ | 9-13 | PJC | 49 | 95 45 | |
| ✓ | 8-31 | First Avenue Exchange | 50 | 871 46 | |
| | | Totals Forwarded | | | |

(margin notes) lew Bible  3:49   55.20

GENERAL LEDGER

SUNDRY EXP.

| Acct. No. | Allowances | EXPLANATION | Acct. No. | Amount | 131-SUPPLIES | | | | 141 Ppd. Ins. | Vchr. No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | .2 Mark | .3 Wash | .5 Iron | .6 Pack | | |
| | | | | | | | | | | 1 |
| | | | | | | | | | | 2 |
| | | | | | | | | | | 3 |
| | | | | | | | | | | 4 |
| | | | | | | | | | | 5 |
| | | | | | | | | | | 6 |
| | | | | | | | | | | 7 |
| | | | | | | | | | | 8 |
| | | | | | | | | | | 9 |
| | | | | | | | | | | 10 |
| | | | | 1075 25 | | | | | | 11 |
| | | | | | | | | | | 12 |
| | | | | | | | | | | 13 |
| | | | | | | | | | | 14 |
| | | | | | | | | | | 15 |
| | | Wash & Grade | | 465 50 | | | | | | 16 |
| | | | | | | | | | | 17 |
| | | | | | | | | | | 18 |
| | | | | | | | | | | 19 |
| | | | | | | | | | | 20 |
| | | | | | | | | | | 21 |
| | | | | | | | | | | 22 |
| | | | | | | | | | | 23 |
| | | | | | | | | | | 24 |
| | | | | | | | | | | 25 |
| | | | | | | | | | | 26 |
| | | | | | | | | | | 27 |
| | | | | | | | | | | 28 |
| | | | | | | | 97 85 | | | 29 |
| | | | | | | | 31 — | | | 30 |
| | | | | | | | | | | 31 |
| | | | | | | | | | | 32 |
| | | | | | | | | | | 33 |
| | | | | | | | | | | 34 |
| | | | | | | | | | | 35 |
| | | | | | | | | | | 36 |
| | | | | | | | | | | 37 |
| | | | | | | | 283 35 | | | 38 |
| | | | | | | | | | | 39 |
| | | | | | | | | | | 40 |
| | | | | | | | | | 1608 — | 41 |
| | | | | | | | | | 323 — | 42 |
| | | | | | | | 99 50 | | | 43 |
| | | | | | | | | | | 44 |
| | | | | | | | | | | 45 |
| | | | | | | | | | | 46 |
| | | | | | | | | | | 47 |
| | | | | | | | | | | 48 |
| | | | | | | | 11 47 | | | 49 |
| | | | | | | | | | | 50 |

Form R.1

PAYMENTS CHECKED FROM CASH BOOK IN PERIOD ENDING

| Date | | Invoice Date | PURCHASED FROM | Vchr. No. | 211 Acct. Pay. Amount | L3 Outside Lsty. |
|---|---|---|---|---|---|---|
| | ✓ | 10-14 | Milton Estabrook | 1 | 410 97 | |
| | ✓ | 10-13 | " | 2 | 5 8 12 | |
| | ✓ | 10-13 | " | 3 | 94 | |
| | ✓ | 9-30 | Fort Devens Galery | 4 | 720 01 | |
| these were refers only aw 8-13-41 | | 9-28 | Chase + Sons | 5 | 74 - | |
| | | 9-29 | " | 6 | 175 - | |
| | ✓ | 9-28 | S. E. | 7 | 120 - | |
| | ✓ | 10-13 | " | 8 | 1 20 | |
| | | 10-2 | N E T + T Co. | 9 | 50 | |
| | ✓ | 9-25 | " | 10 | 37 60 | |
| | ✓ | 9-17 | Mass Electric Co. | 11 | 132 84 | |
| | ✓ | 10-6 | " | 12 | 22 51 | |
| Bubble it | ✓ | 9-30 | " | 13 | 17 50 | |
| 2.10 | ✓ | 9-29 | Lowell Gas Co. | 14 | 360 28 | |
| | ✓ | 10-11 | Boston Gas Co. | 15 | 2 91 | |
| | ✓ | 10-11 | " | 16 | 249 32 | |
| | ✓ | 1-1 | Town of Ayer | 17 | 255 - | |
| | ✓ | 10-18 | Ayer Industrial Supply Co. | 18 | 65 85 | |
| | ✓ | 10-4 | Norman E. Day Inc. | 19 | 6 - | |
| | ✓ | 9-29 | Stephen Roger Inc. | 20 | 123 80 | |
| | ✓ | 9-29 | " | 21 | 234 46 | |
| | ✓ | 9-29 | " | 22 | 20 50 | |
| | ✓ | 10-14 | " | 23 | 105 67 | |
| | ✓ | 9-30 | George Hyde | 24 | 74 17 | |
| | ✓ | 10-15 | Hoyt Mfg Corp. | 25 | 7 67 | |
| | ✓ | 9-25 | Kleenit Inc. | 26 | 726 - | |
| | ✓ | 9-24 | " | 27 | 43 88 | |
| | ✓ | 10-13 | Louis Furman | 28 | 1 05 | |
| | ✓ | 9-10 | Superior Products Co Inc. | 29 | 1 71 | |
| | ✓ | 9-15 | " | 30 | 26 60 | |
| | ✓ | 9-17 | " | 31 | 33 60 | |
| | ✓ | 9-?? | " | 32 | 69 - | |
| | ✓ | 9-2 | " | 33 | 205 74 | |
| | ✓ | 9-26 | the Public Spirit | 34 | 11 - | |
| | ✓ | 10-2 | Earl Bowanger | 35 | 140 - | |
| | ✓ | 9-24 | Center Paint + Hdwe Co. | 36 | 7 96 | |
| | ✓ | 9-30 | Ideal House Cleaner | 37 | 3 50 - | |
| | ✓ | 10-5 | Marie J. Barlow Inc. | 38 | 254 37 | |
| | ✓ | 9-30 | Ernest H. Ford | 39 | 22 - | |
| | ✓ | 9-27 | Adrian Advertising Associates | 40 | 82 50 | |
| | ✓ | 9-24 | " | 41 | 385 - | |
| | ✓ | 9-24 | " | 42 | 37 50 | |
| | ✓ | 9-24 | Moblew Inc. | 43 | 22 74 | |
| | ✓ | 9-15 | Thomas J. Flaherty Co. | 44 | 8 69 - | |
| | ✓ | 9-30 | " | 45 | 206 25 | |
| | ✓ | 10-14 | " | 46 | 816 - | |
| | ✓ | 9-25 | Luby it Inc. | 47 | 579 26 | 579 |
| | ✓ | | " | 48 | 518 25 | 518 |
| | ✓ | | " | 49 | 508 51 | 508 |
| | ✓ | | " | 50 | 628 34 | 628 |

Totals Forwarded ____

GENERAL LEDGER

| ment | Acct. No. | Allow- ances | EXPLANATION | Acct. No. | Amount | 131-SUPPLIES | | | | 141 Ppd. Ins. | Vchr. No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | .2 Mark | .3 Wash | .5 Icnn | .6 Pack | | |
| | | | | | | | | | | 41097. | 1 |
| | | | | | | | | | | | 2 |
| | | | | | | | | | | | 3 |
| | | | | | | | | | | | 4 |
| | | | | | | | | | | | 5 |
| | | | | | | | | | | | 6 |
| | | | | | | | | | | | 7 |
| | | | | | | | | | | | 8 |
| | | | | | | | | | | | 9 |
| | | | | | | | | | | | 10 |
| | | | | | | | | | | | 11 |
| | | | | | | | | | | | 12 |
| | | | | | | | | | | | 13 |
| | | | | | | | | | | | 14 |
| | | | | | | | | | | | 15 |
| | | | Award Tax | 255 - 1 | | | | | | | 16 |
| | | | | | | | | | | | 17 |
| | | | | | | | | | | | 18 |
| | | | | | | | | | | | 19 |
| | | | | | | 123 80 | | | | | 20 |
| | | | | | | 234 46 | | | | | 21 |
| | | | | | | 70 50 | | | | | 22 |
| | | | | | | 105 67 | | | | | 23 |
| | | | | | | | | | | | 24 |
| | | | | | | | | | | | 25 |
| | | | | | | | | | | | 26 |
| | | | | | | 105 | | | | | 27 |
| | | | | | | 175 | | | | | 28 |
| | | | | | | 26 60 | | | | | 29 |
| | | | | | | 33 60 | | | | | 30 |
| | | | | | | 69 - | | | | | 31 |
| | | | | | | 205 74 | | | | | 32 |
| | | | | | | | | | | | 33 |
| | | | | | | | | | | | 34 |
| | | | | | | | | | | | 35 |
| | | | | | | | | | | | 36 |
| | | | | | | | | | | | 37 |
| | | | | | | | | | | | 38 |
| | | | | | | | | | | | 39 |
| | | | | | | | | | | | 40 |
| | | | | | | | | | | | 41 |
| | | | | | | | | | | | 42 |
| | | | | | | 869 - | | | | | 43 |
| | | | | | | 206 25 | | | | | 44 |
| | | | | | | 816 - | | | | | 45 |
| | | | | | | | | | | | 46 |
| | | | | | | | | | | | 47 |
| | | | | | | | | | | | 48 |
| | | | | | | | | | | | 49 |
| | | | | | | | | | | | 50 |

| | Invoice Date | PURCHASED FROM | Vchr. No. | Amount 211 Acct. Pay. | 1.3 Outside Ldgr. |
|---|---|---|---|---|---|
| ✓ | 1/12 | P/L | 1 | 1 02 32 | |
| ✓ | 2/16 | P/L | 2 | 99 61 | |
| ✓ | 1/25 | J. Sweeney | 3 | 65 75 | |
| ✓ | 1-12 | G. V. Moore Lumber Co. Inc. | 4 | 9 33 | |
| ✓ | 1-22 | The Chain Shop Co. | 5 | 28 — | |
| ✓ | 1-17 | Norman E. Day Inc. | 6 | 4 50 | |
| ✓ | 1-24 | " | 7 | 8 — | |
| ✓ | 2-7 | " | 8 | 77 93 | |
| ✓ | 1-10 | Lowell Glass Co. Inc. | 9 | 39 90 | |
| ✓ 2(-1) | 2-4 | Thomas J. Flaherty Co. | 10 | 1 28 25 | |
| ✓ | 1-27 | Town + Country | 11 | 19 75 | |
| ✓ | 1-7 | Mass. Electric Co. | 12 | 2 40 81 | |
| ✓ | 1-19 | " | 13 | 1 25 35 | |
| ✓ | 1-11 | Boston Gas Co. | 14 | 29 31 | |
| ✓ | 1-11 | " | 15 | 28 86 | |
| ✓ | 1-31 | Mass Electric Co. | 16 | 17 50 | |
| ✓473 | 1-2 | N E T + T Co. | 17 | 2 93 | |
| ✓ | 1-31 | Lowell Gas Co. | 18 | 4 77 16 | |
| ✓ | 2-7 | Bergen Industrial Supply Corp. | 19 | 16 50 | |
| ✓ | 1-26 | State Chemical Co. Inc. | 20 | 11 60 | |
| ✓ | 1-24 | " | 21 | 2 29 — | |
| ✓ | 2-3 | " | 22 | 32 96 | |
| ✓ | 1-4 | Louis Ferren | 23 | 4 95 | |
| ✓ | 1-18 | " | 24 | 5 60 | |
| ✓ | 1-18 | Garant Trucking Co. | 25 | 7 98 | |
| ✓ | 2-9 | " | 26 | 6 24 | |
| ✓ | 1-11 | W. J. Barba | 27 | 76 58 | |
| ✓ | 1-11 | " | 28 | 36 15 | |
| ✓ | 1-1 | Milton Estabrook | 29 | 1 47 11 | |
| ✓ | 1-1 | " | 30 | 1 47 11 | |
| ✓ | 2-1 | " | 31 | 1 31 8 27 | |
| ✓ | 2-10 | " | 32 | 12 40 | |
| ✓ | 2-10 | " | 33 | 12 40 | |
| ✓ | 12-5 | Craig Supply Co. Inc. | 34 | 14 85 | |
| ✓ | 1-31 | " | 35 | 1 41 13 | |
| ✓ | 2-2 | Center Paint + Hdwe Co. | 36 | 25 43 | |
| ✓ | 1-5 | Superior Products Co. Inc. | 37 | 1 15 85 | |
| ✓ | 1-14 | " | 38 | 31 50 | |
| ✓ | 1-28 | " | 39 | 1 53 20 | |
| ✓ | 1-14 | The General Chemical Products Inc. | 40 | 1 50 95 | |
| ✓ | 1-6 | Stephen + Roger Inc. | 41 | 2 53 35 | |
| ✓ | 1-10 | " | 42 | 5 56 | |
| ✓ | 1-21 | " | 43 | 38 16 | |
| ✓ | 1-25 | " | 44 | 67 90 | |
| ✓ | 1-20 | Brady Business Forms | 45 | 5 15 — | |
| ✓ | 1-31 | Kleint | 46 | 51 29 | |
| ✓ | 1-31 | The Public Spirit | 47 | 67 87 | |
| ✓ | 1-31 | " | 48 | 96 50 | |
| ✓ | 2-1 | Christie + Thomson | 49 | 6 17 | |
| ✓ | 1-27 | Adrian Advertising Associates | 50 | 75 05 | |

Totals Forwarded

| | Acct. No. | Allow-ances | EXPLANATION | Acct. No. | Amount | 131-SUPPLIES | | | | 141 Ppd. Ins. | Vchr. No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | .2 Mark | .3 Wash | .5 Iron | .6 Pack | | |
| | | | | | | | | | | | 1 |
| | | | | | | | | 52 83 | | | 2 |
| | | | | | | | | | | | 3 |
| | | | | | | | | | | | 4 |
| | | | | | | | | | | | 5 |
| | | | | | | | | | | | 6 |
| | | | | | | | | | | | 7 |
| | | | | | | | | | | | 8 |
| | | | | | | | | | | | 9 |
| | | | | | | | 1285 25 | | | | 10 |
| | | | | | | | | | | | 11 |
| | | | | | | | | | | | 12 |
| | | | | | | | | | | | 13 |
| | | | | | | | | | | | 14 |
| | | | | | | | | | | | 15 |
| | | | | | | | | | | | 16 |
| | | | | | | | | | | | 17 |
| | | | | | | | | | | | 18 |
| | | | | | | | | | | | 19 |
| | | | | | | | | | | | 20 |
| | | | Trash + Gap | 229 - √ | | | | | | | 21 |
| | | | | | | | | | | | 22 |
| | | | | | # | | | 4 95 | | | 23 |
| | | | | | | | | 5 60 | | | 24 |
| | | | | | | | | | | | 25 |
| | | | | | | | | | | | 26 |
| | | | | | | | | | | | 27 |
| | | | | | | | | | | | 28 |
| | | | | | | | | | | 14711 . | 29 |
| | | | | | | | | | | 14711 . | 30 |
| | | | | | | | | | | 1318 27. | 31 |
| | | | | | | | | | | 12 40 | 32 |
| | | | | | | | | | | 12 40 | 33 |
| | | | | | | | | 14 85 | | | 34 |
| | | | | | | | | 141 13 | | | 35 |
| | | | | | | | | 115 85 | | | 36 |
| | | | | | | | | 31 50 | | | 37 |
| | | | | | | | | 153 20 | | | 38 |
| | | | | | | | | | | | 39 |
| | | | | | | | | 150 95 | | | 40 |
| | | | | | | | | 253 35 | | | 41 |
| | | | | | | | | 5 56 | | | 42 |
| | | | | | | | | 38 16 | | | 43 |
| | | | | | | | | 67 90 | | | 44 |
| | | | | | | | | | | | 45 |
| | | | | | | | | | | | 46 |
| | | | | | | | | 15 - | | | 47 |
| | | | | | | | | | | | 48 |
| | | | | | | | | | | | 49 |
| | | | | | | | | | | | 50 |

| PAYMENTS CHECKED FROM CASH BOOK IN PERIOD ENDING | | | | Invoice | | Vchr. | Amount | | |
|---|---|---|---|---|---|---|---|---|---|
| Date | | | | Date | PURCHASED FROM | No. | 211 Acct. Pay. | 1.3 Outside Ldgr. |
| | | | | 5-19 | Mass. Electric Co. | 1 | 11 3 73 | |
| | | | | 5-9 | " | 2 | 2 58 19 | |
| | | | | 5-31 | " | 3 | 1 7 50 | |
| | | | | 5-26 | Lynell Gay Co. | 4 | 3 56 08 | |
| | | | | 5-11 | Boston Gas | 5 | 7 77 | |
| | | | | 5-11 | " | 6 | 26 29 1 | |
| | | | | 5-27 | N E T & T Co. | 7 | 39 29 | |
| | | PAID | | 5-26 | Fort Devens Exchange | 8 | 12 3 91 | |
| | | | ✓ | 6-13 | Bridle + Spur | 9 | 1 54 27 | |
| | | | ✓ | 5-18 | Delaux Mfg. Co. | 10 | 22 70 | |
| | | | ✓ | 5-19 | Ace Sewing Mach. Co. | 11 | 16 95 | |
| | | | ✓ | 5-27 | The Ball Co. | 12 | 79 44 | |
| | | | ✓ | 5-31 | Earl Bowryer | 13 | 1 40 - | |
| | | | ✓ | 5-7 | Sudz it | 14 | 4 83 02 | 483 02 |
| | | | | 5-14 | " | 15 | 4 84 19 | 484 19 |
| | | | ✓ | 5-21 | " | 16 | 4 15 95 | 415 95 |
| | | | | 5-28 | " | 17 | 5 34 49 | 534 49 |
| | | | ✓ | 5-10 | Milton Estabrook | 18 | 1 60 7 | |
| | | | ✓ | 5-31 | Miller Ins. | 19 | 16 16 | |
| | | | ✓ | 5-31 | Tracy + Kelly Ins. | 20 | 1 94 76 | |
| | | | ✓ | 5-5 | Adrian Advertising Associates | 21 | 68 63 | |
| | | | ✓ | 5-31 | Bob Massler | 22 | 75 - | |
| | | | ✓ | 5-30 | Arthur Flynn | 23 | 75 - | |
| | | | ✓ | 5-30 | Fort Devens Exchange | 24 | 8 76 68 | |
| | | | | 4-31 | Mass. Electric Co. | 25 | 1 7 50 | |
| | | | | | | 26 | 19 9 13 | 917 65 |
| | | | | | | 27 | | |
| | | | | | | 28 | | |
| | | | | | | 29 | ✓ | |
| | | | | | | 30 | | |
| | | | | | | 31 | | |
| | | | | | | 32 | | |
| | | | | | | 33 | | |
| | | | | | | 34 | | |
| | | | | | | 35 | | |
| | | | | | | 36 | | |
| | | | | | | 37 | | |
| | | | | | | 38 | | |
| | | | | | | 39 | | |
| | | | | | | 40 | | |
| | | | | | | 41 | | |
| | | | | | | 42 | | |
| | | | | | | 43 | | |
| | | | | | | 44 | | |
| | | | | | | 45 | | |
| | | | | | | 46 | | |
| | | | | | | 47 | | |
| | | | | | | 48 | | |
| | | | | | | 49 | | |
| | | | | | | 50 | | |
| | | | | | Totals Forwarded | | | |

| Amount | Acct. No. | Allow-ances | EXPLANATION | Acct. No. | Amount | .2 Mark | .3 Wash | .5 Iron | .6 Pack | 141 Ppd. Ins. | Vchr. No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 1 |
| | | | | | | | | | | | 2 |
| | | | | | | | | | | | 3 |
| | | | | | | | | | | | 4 |
| | | | | | | | | | | | 5 |
| | | | | | | | | | | | 6 |
| | | | | | | | | | | | 7 |
| | | | | | | | | | | | 8 |
| | | | | | | | | | | | 9 |
| | | | | | | | | | | | 10 |
| | | | | | | | | | | | 11 |
| | | | | | | | | | | | 12 |
| | | | | | | | | | | | 13 |
| | | | | | | | | | | | 14 |
| | | | | | | | | | | | 15 |
| | | | | | | | | | | | 16 |
| | | | | | | | | | | | 17 |
| | | | | | | | | | | 1607 - 1P/L | 18 |
| | | | | | | | | | | | 19 |
| | | | | | | | | | | | 20 |
| | | | | | | | | | | | 21 |
| | | | | | | | | | | | 22 |
| | | | | | | | | | | | 23 |
| | | | | | | | | | | | 24 |
| | | | | | | | | | | | 25 |
| | | | | | | 1604.75 | 1273.91 | | | 1607 - | 26 |
| | | | | | | | | | | | 27 |
| | | | | | | | | | | | 28 |
| | | | | | | ✓ | ✓ | | | ✓ | 29 |
| | | | | | | | | | | | 30 |
| | | | | | | | | | | | 31 |
| | | | | | | | | | | | 32 |
| | | | | | | | | | | | 33 |
| | | | | | | | | | | | 34 |
| | | | | | | | | | | | 35 |
| | | | | | | | | | | | 36 |
| | | | | | | | | | | | 37 |
| | | | | | | | | | | | 38 |
| | | | | | | | | | | | 39 |
| | | | | | | | | | | | 40 |
| | | | | | | | | | | | 41 |
| | | | | | | | | | | | 42 |
| | | | | | | | | | | | 43 |
| | | | | | | | | | | | 44 |
| | | | | | | | | | | | 45 |
| | | | | | | | | | | | 46 |
| | | | | | | | | | | | 47 |
| | | | | | | | | | | | 48 |
| | | | | | | | | | | | 49 |
| | | | | | | | | | | | 50 |

| Date | | Invoice Date | PURCHASED FROM | Vchr. No. | Amount 211 Acct. Pay. | 1,3 Outside Ldy. | Outside |
|---|---|---|---|---|---|---|---|
| | ✓ | 9-24 | Lautz et Inc. | 1 | 435 64 | 435 64 | |
| | ✓ | 10-1 | " | 2 | 438 54 | 438 54 | |
| | ✓ | 10-8 | " | 3 | 443 39 | 443 39 | |
| | ✓✓ | 10-15 | " | 4 | 407 46 | 407 46 | |
| Do not pay until due  Bill 1— | $10 | 10-4 | Milton Estabrook | 5 | 1638 — | | |
| Cash | $10 | 10-4 | " | 6 | 265 — | | |
| | ✓ | 9-29 | Klemt, Inc. | 7 | 401 67 | | 40. |
| | ✓ | 9-24 | " | 8 | 103 861 | | |
| | ✓ | 9-30 | Westford Academy Boston | 9 | 15 — | | |
| 150 | ✓ | 10-2 | A E T T T C. | 10 | 180 | | |
| | ✓ | 9-31 | " | 11 | 45 34 | | |
| | ✓ | 9-20 | Mass. Electric Co. | 12 | 1750 | | |
| 10-29 | | 9-23 | " | 13 | 157 33 | | |
| | ✓ | 10-6 | " | 14 | 250 02 | | |
| | ✓ | 9-29 | Lowell Gas Co. | 15 | 366 16 | | |
| | ✓ | 9-19 | Norman E. Day Inc. | 16 | 859 5 | | |
| | ✓ | 10-10 | " | 17 | 22 01 | | |
| | ✓ | 10-1 | Kiwanis Club | 18 | 6 — | | |
| | ✓ | 9-24 | Town & Country | 19 | 22 — | | |
| | ✓ | 9-29 | Garnet Machinery Co | 20 | 6038 | | |
| | ✓ | 10-2 | " | 21 | 279 4 | | |
| | ✓ | 10-1 | Eastern States Advertising | 22 | 50 — | | |
| | ✓ | 9-28 | Superior Products Co. Inc. | 23 | 2029 | | |
| | ✓ | 9-24 | " | 24 | 208 57 | | |
| | ✓ | 10-14 | " | 25 | 64 89 | | |
| | ✓ | 10-3 | Thomas J. Flaherty Co. | 26 | 805 — | | |
| | ✓ | 9-19 | Stephen - Roger Inc. | 27 | 53 12 | | |
| | ✓ | 9-26 | " | 28 | 131 43 | | |
| | ✓ | 10-4 | " | 29 | 101 01 | | |
| | ✓ | 9-30 | Burgess Industrial Supply Co. | 30 | 58 01 | | |
| | ✓ | 9-30 | Henry | 31 | 191 88 | | |
| | ✓ | 10-6 | James D. Morey | 32 | 63 — | | |
| | ✓ | 10-1 | The Public Spirit | 33 | 22 — | | |
| | ✓ | 9-30 | Richard Price | 34 | 140 — | | |
| | ✓ | 9-2 | Louis Farnum | 35 | 50 63 | | |
| | ✓ | 9-19 | The General Chemical Products, Inc. | 36 | 6 83 | | |
| | ✓ | 9-20 | " | 37 | 194 46 | | |
| | ✓ | 9-27 | The L. B. Robinson Co. | 38 | 120 — | | |
| | ✓ | 9-20 | Ernest W. Ford | 39 | 22 — | | |
| | ✓ | 9-20 | The Eddie Hart Shop | 40 | 1050 | | |
| | ✓ | 9-9 | Merchant Hayward Signs | 41 | 28 — | | |
| | ✓ | 9-2 | May & Walley Inc. | 42 | 225 38 | | |
| | ✓ | 9-20 | Hall Electric Supply Co. | 43 | 206 27 | | |
| | ✓ | 9-2 | George Hyde | 44 | 51 14 | | |
| | ✓ | 9-1 | Albert H. Fortini & Son Inc. | 45 | 1050 | | |
| | ✓ | 10-10 | Adrien Advertising Associates | 46 | 1175 | | |
| | ✓ | 10-11 | " | 47 | 668 50 | | |
| | ✓ | 9-28 | G. V. Moore Lumber Co. Inc. | 48 | 470 | | |
| | ✓ | 9-30 | Chelmsford Newsweekly | 49 | 78 — | | |
| | ✓ | 9-22 | PIL | 50 | 767 4 | | |
| | | | Totals Forwarded | | | | |

GENERAL LEDGER

| | Acct. No. | Allow-ances | EXPLANATION | Acct. No. | Amount | 131-SUPPLIES | | | | 141 Ppd. Ins. | Vchr. No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | .2 Mark | .3 Wash | .5 Iron | .6 Pack | | |
| | | | | | | | | | | | 1 |
| | | | | | | | | | | | 2 |
| | | | | | | | | | | | 3 |
| | | | | | | | | | | | 4 |
| | | | | | | | | | | 1688 - PL | 5 |
| | | | | | | | | | | 265 - PL | 6 |
| | | | | | | | | | | | 7 |
| | | | | | | | | | | | 8 |
| | | | | | | | | | | | 9 |
| | | | | | | | | | | | 10 |
| | | | | | | | | | | | 11 |
| | | | | | | | | | | | 12 |
| | | | | | | | | | | | 13 |
| | | | | | | | | | | | 14 |
| | | | | | | | | | | | 15 |
| | | | | | | | | | | | 16 |
| | | | | | | | | | | | 17 |
| | | | | | | | | | | | 18 |
| | | | | | | | | | | | 19 |
| | | | | | | | | | | | 20 |
| | | | | | | | | 20 29 | | | 21 |
| | | | | | | | | 208 57 | | | 22 |
| | | | | | | | | 64 89 | | | 23 |
| | | | | | | | | | | | 24 |
| | | | | | | 805 - | | | | | 25 |
| | | | | | | | | 53 12 | | | 26 |
| | | | | | | | | 131 43 | | | 27 |
| | | | | | | | | 101 01 | | | 28 |
| | | | | | | | | | | | 29 |
| | | | | | | | | | | | 30 |
| | | | | | | | | | | | 31 |
| | | | | | | | | | | | 32 |
| | | | | | | | | | | | 33 |
| | | | | | | | | | | | 34 |
| | | | | | | | | 50 63 | | | 35 |
| | | | | | | | | 6 83 | | | 36 |
| | | | | | | | | 194 46 | | | 37 |
| | | | | | | | | | | | 38 |
| | | | | | | | | | | | 39 |
| | | | | | | | | | | | 40 |
| | | | | | | | | | | | 41 |
| | | | | | | | | | | | 42 |
| | | | | | | | | | | | 43 |
| | | | | | | | | | | | 44 |
| | | | | | | | | | | | 45 |
| | | | | | | | | | | | 46 |
| | | | | | | | | | | | 47 |
| | | | | | | | | | | | 48 |
| | | | | | | | | | | | 49 |
| | | | | | | | | | | | 50 |

PAYMENTS CHECKED FROM CASH BOOK IN PERIOD ENDING

| Date | | | | | Invoice Date | PURCHASED FROM | Vchr. No. | Amount 211 Acct. Pay. | | 1.3 Outside Ldy |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | ✓ | | 1-1 | Milton Estabrook | 1 | 1 5 7 8 ⁷ | | |
| | | | ✓ | | 1-1 | " | 2 | 1 7 7 ¹⁴ | | |
| | | | ✓ | | 2-1 | " | 3 | 1 3 1 8 ²⁷ | | |
| | | | | | 3-9 | " | 4 | 2 3 ³⁴ | | |
| | | | ✓ | | 3-26 | " | 5 | 3 5 — | | |
| | | | ✓ | | 2-22 | Fort Devens Exchange | 6 | 7 3 4 ⁵⁶ | | |
| | | | | ✓ | 3-3 | " | 7 | 2 9 2 ²⁴ | | |
| | | | | ✓ | 2-24 | " | 8 | 5 3 6 ⁹² | | |
| | | | | ✓ | 2-7 | P/L | 9 | 9 5 ⁶⁷ | | |
| | | | | ✓ | 7-1-66 | Marblehead Printing for Agency | 10 | 3 2 3 ¹¹ | | |
| | | | | ✓ | 3-1 | A. Flynn | 11 | 5 0 — | | |
| | | | ✓ | | 3-1 | R. Mascio | 12 | 7 5 — | | |
| | | | ✓ | ✓ | 3-1 | Jaycees | 13 | 1 5 — | | |
| | | | ✓ | | 12-30 | Joseph L. Aiken Jr. | 14 | 2 — ?? | | |
| | | | | | 2-11 | Kleint Inv. | 15 | 1 0 3 8 61 | | |
| | | | | | | | 16 | 1 2 0 9 7 7 3 | 1 8 2 0 77 |
| | | | | | | | 17 | | | |
| | | | | | | | 18 | ✓ | | |
| | | | | | | | 19 | | | |
| | | | | | | | 20 | | | |
| | | | | | | | 21 | | | |
| | | | | | | | 22 | | | |
| | | | | | | | 23 | | | |
| | | | | | | | 24 | | | |
| | | | | | | | 25 | | | |
| | | | | | | | 26 | | | |
| | | | | | 125.— | | 27 | | | |
| | | | 1/20/67 | | 68.14 | | 28 | | | |
| | | | 1/16/67 | | | | 29 | | | |
| | | | | | 125. | | 30 | | | |
| | | | 1/31 | | 125. | | 31 | | | |
| | | | 2/4 | | 125. | | 32 | | | |
| | | | | | 125. | | 33 | | | |
| | | | 2/15 | | 249.56 | | 34 | | | |
| | | | 2/24 | | 125.— | | 35 | | | |
| | | | 3/14 | | | | 36 | | | |
| | | | | | | | 37 | | | |
| | | | | | | | 38 | | | |
| | | | | | | | 39 | | | |
| | | | | | | | 40 | | | |
| | | | | | | | 41 | | | |
| | | | | | | | 42 | | | |
| | | | | | | | 43 | | | |
| | | | | | | | 44 | | | |
| | | | | | | | 45 | | | |
| | | | | | | | 46 | | | |
| | | | | | | | 47 | | | |
| | | | | | | | 48 | | | |
| | | | | | | | 49 | | | |
| | | | | | | | 50 | | | |
| | | | | | | Totals Forwarded | | | | |

| Acct. No. | Allow-ances | EXPLANATION | Acct. No. | Amount | 131-SUPPLIES | | | | 341 Ppd. Ins. | Vchr. No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | .2 Mark | .3 Wash | .5 Iron | .6 Pack | | |
| | | | | | | | | | 157.82 | 1 |
| | | | | | | | | | 177.12 | 2 |
| | | | | | | | | | 1318.27 | 3 |
| | | | | | | | | | 23.34 | 4 |
| | | | | | | | | | 35.- | 5 |
| | | | | | | | | | | 6 |
| | | and note | | 104.98 ✓ | | | | | | 7 |
| | | | | | | | | | | 8 |
| | | | | | | | | | 323.11 | 10 |
| | | | | | | | | | | 11 |
| | | | | | | | | | | 12 |
| | | | | | | | | | | 13 |
| | | | | | | | | | | 14 |
| | | | | | | | | | | 15 |
| | | | | 316.93 | | | | 602.69 | 2034.66 | 16 |
| | | | | ✓ | | | | | | 17 |
| | | | | | | | ✓ | | ✓ | 18 |
| | | | | | | | | | | 19 |
| | | | | | | | | | | 20 |
| | | | | | | | | | | 21 |
| | | | | | | | | | | 22 |
| | | | | | | | | | | 23 |
| | | | | | | | | | | 24 |
| | | | | | | | | | | 25 |
| | | | | | | | | | | 26 |
| | | | | | | | | | | 27 |
| | | | | | | | | | | 28 |
| | | | | | | | | | | 29 |
| | | | | | | | | | | 30 |
| | | | | | | | | | | 31 |
| | | | | | | | | | | 32 |
| | | | | | | | | | | 33 |
| | | | | | | | | | | 34 |
| | | | | | | | | | | 35 |
| | | | | | | | | | | 36 |
| | | | | | | | | | | 37 |
| | | | | | | | | | | 38 |
| | | | | | | | | | | 39 |
| | | | | | | | | | | 40 |
| | | | | | | | | | | 41 |
| | | | | | | | | | | 42 |
| | | | | | | | | | | 43 |
| | | | | | | | | | | 44 |
| | | | | | | | | | | 45 |
| | | | | | | | | | | 46 |
| | | | | | | | | | | 47 |
| | | | | | | | | | | 48 |
| | | | | | | | | | | 49 |
| | | | | | | | | | | 50 |

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS
NO. 04-10351 (NG)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COPY**

KLEENIT, INC.,
    Plaintiff

    vs.

SENTRY INSURANCE COMPANY, ROYAL
AND SUN ALLIANCE, UTICA NATIONAL
INSURANCE GROUP AND TRAVELERS
PROPERTY AND CASUALTY,
    Defendants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF KEITH CRIDER, a
witness called on Behalf of the Defendant,
Utica National Insurance Group, pursuant to
Massachusetts Rules of Civil Procedure,
before Diane M. Durette, a Registered
Professional Reporter and Notary Public in
and for the Commonwealth of Massachusetts,
at the Offices of Tucker, Heifetz &
Saltzman, 3 School Street, Boston,
Massachusetts on Wednesday, June 15, 2005,
commencing at 10:15 a.m.

1   Q.   Is it your understanding they were agents

2        for the Travelers?

3   A.   They were agents for other people, but I

4        know that they handled Travelers, yes.

5   Q.   When you came on board, would you be the

6        person who would pay the insurance bills?

7   A.   Yes.

8   Q.   So you would see invoices from EJ Wells?

9   A.   Yes.

10  Q.   What about the insurance policies, would

11       they come to you as part of your business

12       management?

13  A.   Yes.

14  Q.   What would you do with them?

15  A.   Well, we stored them for awhile but our

16       accountant kept very fastidious records.

17       Mr. Harry Nason in Boston was our accountant

18       from probably late 1950s through 2001 or 2,

19       he got ill but he kept every policy number

20       that we ever had.

21  Q.   Can you spell Nason?

22  A.   N A S O N.  In fact --

23  Q.   Did Mr. Nason work for a company?

24  A.   He was his own individual practitioner.

1   Q.   So he worked alone?

2   A.   That's correct.

3   Q.   Where was his office?

4   A.   294 Washington Street, right across the

5        street.

6   Q.   Kleenit used him from the 1950s to just a

7        few years ago?

8   A.   That's correct.

9   Q.   Is he still alive?

10  A.   Yes.  He's in nursing home now.

11  Q.   Did he sell his practice?

12  A.   He just closed it.

13  Q.   Who is your CPA now?

14  A.   I'm trying to think of the name of it.  Ron

15       Gacciccie is our CPA.  He works for a firm

16       out in Braintree, I believe.

17  Q.   Do you know the name of it?

18  A.   It just escapes my mind right now.  I'll

19       think of it later.

20  Q.   Can you spell Gacciccie?

21  A.   G A C C I C C I E, I think.

22  Q.   He's in Braintree?

23  A.   Yes.

24  Q.   Do you know if the records from Mr. Nason

1    were transferred to his office?

2  A.  They were transferred to me.  Basically, I

3      picked up all the books from 1960 right to

4      current from his office when he closed it.

5  Q.  Who did you deal with?  In other words, when

6      Mr. Nason got sick were you contacted by his

7      lawyer?

8  A.  You mean --

9  Q.  To pick up his books?

10  A.  No, his sister worked for him so we picked

11      up, I went down to his office and picked

12      them up.

13  Q.  Do you know his sister's name?

14  A.  Evelyn Astorian, A S T O R I A N but I just

15      understand she had a stroke.

16  Q.  Just so I can understand, Mr. Nason kept

17      records of the insurance issued to Kleenit?

18  A.  Well, the statements of insurance.  Like, if

19      you're doing an audit.

20  Q.  Sure.

21  A.  You keep a list of all the prepaid insurance

22      and he took it even one step further.  He

23      had all the policy numbers, the companies

24      listed, everything in detail, the umbrella

1    policy numbers.  We had everything.  And he

2    kept those records, you know, time

3    immemorial.  He was very fastidious.

4    Everything was handwritten but it was there.

5  Q.  Did he keep it on a ledger of some kind?

6  A.  In his working papers or ledgers.

7  Q.  You picked up these working papers when?

8  A.  I would say mid, late 2002, maybe.

9  Q.  These papers went back to the '60s?

10  A.  Yes.

11  Q.  Where are these papers now?

12  A.  They're in my office.

13  Q.  And they have all the insurance policies

14    issued to Kleenit in terms of the company,

15    the policy number and the amount paid?

16  A.  Yes, yes, they do, for the most part.

17    MR. HEIFETZ:  Don, I'm going to ask

18    you for those records.

19  A.  Well, I think that we gave all the records,

20    we gave all the records to Bob Fasanella

21    when the initial notices went out to the

22    insurance companies.  This is what

23    promulgated these things.  Everything that

24    you got from Bob Fasanella would have been

Page 114

1                    C E R T I F I C A T E

2

3    STATE OF MASSACHUSETTS)

4    COUNTY OF SUFFOLK)

5

6            I, Diane M. Durette, Registered

7    Professional Reporter and Notary Public,

8    certify that I was authorized to and did

9    stenographically report the deposition of

10   Keith Crider; that a review of the

11   transcript was requested; and that the

12   transcript is a true and complete record of

13   my stenographic notes.

14           I further certify that I am not a

15   relative, employee, attorney, or counsel of

16   any of the parties, nor am I a relative or

17   employee of any of the parties' attorneys or

18   counsel connected with the action, nor am I

19   financially interested in the action.

20           DATED this 28th day of June, 2005.

21

22

23                          Diane M. Durette, RPR

24

# EXHIBIT E

Page 1

COPY

Volume: III

Pages: 1-98

Exhibits: 1-11

UNITED STATES DISTRICT COURT

For the District of Massachusetts

CIVIL ACTION NO. 2004-10351-RBC

* * * * * * * * * * * * * * * * * *

KLEENIT, INC.,                          :

        PLAINTIFF                       :

                                        :

v.                                      :

                                        :

UTICA NATIONAL INSURANCE GROUP,         :

and TRAVELERS PROPERTY AND              :

CASUALTY,                               :

        DEFENDANTS                      :

* * * * * * * * * * * * * * * * * *

CONTINUED DEPOSITION OF KEITH CRIDER, a witness called on behalf of the Defendant, Utica National Insurance Group, pursuant to the provisions of the Federal Rules of Civil Procedure, before Lisa McDonald Valdario, (CSR #130093), a Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Tucker, Heifetz & Saltzman, LLP, 100 Franklin Street, Boston, Massachusetts 02110, on Friday, June 9, 2006, commencing at 10 a.m.

Page 50

1          MR. DAY:  Thank you.

2          (Documents marked Exhibit Nos. 7-10 for

3          identification.)

4                    CROSS-EXAMINATION

5    BY MR. DAY:

6    Q    Good morning, again, Mr. Crider.  My name is

7         Attorney Day, and I represent Travelers in this

8         matter.  I just have a few follow-up questions.

9              First, I understand from your earlier

10        deposition testimony that you became an employee

11        of Kleenit in 1967, October of 1967; correct?

12   A    Yes.

13   Q    Now, were you involved at that time with any

14        aspect of procuring insurance?

15   A    No.

16   Q    Who was responsible for procuring insurance at

17        that time?

18   A    Mr. Monro, who was the owner of the company.

19   Q    Did you have any involvement, and when I say at

20        that time, let's confine it to the first three

21        years of your employment; from 1967 to 1970, did

22        you have any involvement with negotiating terms

23        of insurance?

24   A    No, the only thing I ever did was wrote the

Page 53

1      on any insurance agency business outside of the

2      work he did under the name of E.J. Wells

3      Insurance Agency?

4    A  No, he did not.  It was E.J. Wells.

5    Q  Did you know whether or not E.J. Wells Insurance

6      Agency was an exclusive agent of Travelers?

7    A  Pretty much.  Pretty much.

8    Q  Well, do you know whether E.J. Wells ever issued

9      policies by other insureds?

10   A  Not that I'm aware of.

11   Q  Do you know, when you say pretty much, can

12      you --

13   A  I'm sorry, I'm just saying that as far as my

14      knowledge, it was almost exclusively Travelers.

15      That's all I ever, you know, ever heard or was

16      exposed to in those early days.

17   Q  But did you ever have any discussions with

18      Mr. Estabrook about his business operations with

19      regard to E.J. Wells Insurance Agency?

20   A  No.  No.

21   Q  So you don't know definitively whether or not

22      E.J. Wells Insurance Agency also issued policies

23      on behalf of other insurers.

24           MR. NAGLE:  Objection.

Page 54

1    Q   You can answer.

2    A   Not to my knowledge.

3    Q   But my question again is, do you know for sure?

4        MR. NAGLE:  Objection.  Question asked and

5        answered.

6    Q   Did you ever see any correspondence from E.J.

7        Wells Insurance Agency?

8    A   No.

9    Q   You never saw any letterhead.

10   A   Oh, I saw letterheads with bills on them.

11       That's about -- I wrote most of the checks;

12       i.e., you know, many years I wrote checks to

13       E.J. Wells.

14   Q   Did any of that letterhead ever include any

15       indication that E.J. Wells was an exclusive

16       agent of Travelers?

17   A   I don't recall.

18   Q   Does the E.J. Wells Insurance Agency still

19       exist, to your knowledge?

20   A   Does not.

21   Q   Do you know when it ceased existing?

22   A   My best estimate, it was sold to the Murphy

23       Insurance Company in 2000 maybe.  Don't -- you

24       know, I don't know exactly.

Page 56

1   was only one person who prepared those

2   documents?

3   A   Well, this is before I came with the company.  I

4       don't -- I came with the company in October of

5       '67, so this, it looks to me like -- I'm not

6       sure whose writing this is.

7   Q   Okay.

8   A   One of the secretaries, I presume.

9   Q   You see on the --

10  A   Can you excuse me for a minute.

11              (Recess taken.)

12  Q   Mr. Crider, before we broke I was asking you to

13      take look at Exhibit No. 7, which is the, I'll

14      represent to you appears to be voucher records

15      for a period between 1964 and 1967.  It was

16      attached as Exhibit B to a letter that Mr. Nagle

17      had sent to Joe Berman on April 19 of 2006, and

18      you had testified you weren't sure who had

19      prepared this document, correct?

20  A   What document is this?

21  Q   This document that's marked as Exhibit 7, whose

22      handwriting is this?

23  A   Oh, this is Mr. Nason's handwriting.  He did

24      write-up work, I think before I got there, for

Page 57

1      Mr. Monro at the time, I think.  This is his

2      handwriting, definitely his handwriting.

3   Q  So for all of these pages, is it Mr. Nason's

4      handwriting?

5   A  I would say yes.  Yes.

6   Q  Now, do you know -- I'll just ask the question

7      this way:  If you look at the first page after

8      Exhibit B, it shows July 24, 1965, do you see

9      that, at the top right-hand corner?

10  A  Yes.  Yes.

11  Q  Now, if you go down, you'll see a list of

12     handwritten, I'll call them entities underneath

13     the Purchase From column; do you see that?  It's

14     about the second half of the piece of paper on

15     the right-hand side.

16  A  Right.  Right.

17  Q  Immediately before that, you see at the top the

18     heading is entitled:  Date.  Do you see that?

19  A  Entitled what, Paid?

20  Q  Date, D A T E?

21  A  Yes.

22  Q  Then you'll see there's a series of handwritten

23     numbers beneath that, is that right?

24  A  Right.

Page 58

1    Q    Now, do you know why those dates aren't in

2         chronological order?

3    A    Well, I think that probably he was recording the

4         bills as he had them there that applied to this

5         period.  Our accounting period is broken down

6         into 13, four-week periods, so what he probably

7         did is he got the invoices that were applicable

8         to July 24 and then recorded them accordingly.

9         Whether they were -- that's the only

10        explanation.  I wasn't there and I don't know

11        exactly, but I can understand.

12   Q    And you'll see the first date is dated, looks

13        like July 27th, correct?

14   A    Right.  But that might have been a transaction

15        that applied to before the 24th.

16   Q    Again, respectfully, you don't know, correct?

17   A    I don't know.

18   Q    Okay.  Let me ask you this, Mr. Crider.  When

19        you were preparing checks, once you began

20        working in 1967, I realize this is before you in

21        1967, and you paid the insurance premiums, did

22        you make them payable to Milton Estabrook or to

23        E.J. Wells Insurance Agency?

24   A    Both.

Page 62

|    |   |                                                   |
|----|---|---------------------------------------------------|
| 1  |   | later, you know, later at a later date, but       |
| 2  |   | Mr. Estabrook is, you know, that's him.  I was    |
| 3  |   | in Rotary with him.                               |
| 4  | Q | Well, when you say that Mr. Estabrook placed all  |
| 5  |   | of the insurance, does that include like          |
| 6  |   | automobile insurance coverage?                    |
| 7  | A | He had everything, for my knowledge.  When I got  |
| 8  |   | there, everything was Travelers; the              |
| 9  |   | automobiles, the boiler insurance, the SMP was    |
| 10 |   | always Travelers until 1973, from all the years   |
| 11 |   | that I was there.                                 |
| 12 | Q | And worker's compensation?                        |
| 13 | A | Worker's comp.  I'm not -- I would say yes.        |
| 14 |   | Yes.  I'm not -- I mean, I don't know exactly     |
| 15 |   | what -- you know, from 1967 on, I know that that  |
| 16 |   | was the case, but I think they had the whole      |
| 17 |   | package.                                          |
| 18 | Q | But if we go back to Exhibit 7 and that line 18   |
| 19 |   | that I had pointed out a moment ago, it shows,    |
| 20 |   | "Purchased from Milton Estabrook."  Do you have   |
| 21 |   | any way of determining whether that, what type    |
| 22 |   | of insurance, if it was insurance, that payment   |
| 23 |   | was for?                                          |
| 24 | A | Well, obviously I don't.  But the only thing is,  |

Page 63

1        what I'm making a point to you, that when

2        Mr. Nason put that in the book, I'm sure that

3        one was for one area, one was for another,

4        another.  It indicated that Travelers had

5        everything, virtually, at that point.

6   Q    Okay.  How many times did you meet Frank Geray?

7   A    What's that?

8   Q    How many times did you meet Frank Geray?

9   A    Over the years -- he'd dead now.  I saw him

10       periodically, not saying we were friends, good

11       friends, but he was very -- he always came in to

12       visit Mr. Monro.  Mr. Monro died in 1985, and he

13       always came in to see Mr. Monro.  Mr. Monro had

14       a very, you know.

15  Q    It was a personal relationship?

16  A    No, not a personal relationship, but they were

17       friends.  They were friends.

18  Q    But do you know when, how often Mr. Geray would

19       come in to see Mr. Monro?

20  A    Maybe once every six months, something like

21       that, of that nature.

22  Q    Did he come in alone or with Mr. Estabrook?

23  A    Well, Mr. Estabrook had passed away in early

24       '70s, so he --

Page 66

1  see at the top there is a couple of stamps.  One

2  is Kleenit, Inc. and then there's a stamp right

3  below and to the right of that, June 29, 1968;

4  do you see that?  This is at the top of the

5  page.

6 A Oh, yeah, right.  Right.

7 Q And then you will see to the left of the

8  June 28, 1968, the handwritten words "prepaid

9  insurance;" do you see that?

10 A Yes.  Yes.

11 Q Do you know who prepared this document?

12 A Mr. Nason.

13 Q Now, you'll look, please, you'll see there's a

14  series of lines on the left-hand side, the

15  numbers marked, the line numbers, you see that,

16  far left-hand side?

17 A Yeah.

18 Q Number 4, immediately to the right of that, it

19  looks like the word "machinery" is handwritten;

20  do you see that?

21 A Yeah.

22 Q And I want to go now to line number 5.  You'll

23  see that the first handwritten words are the

24  words the Travelers Indemnity Company; do you

Page 68

1   A   Yeah.  Yeah.

2   Q   And does this refresh your memory -- by this

3       time you were working for the company, correct?

4   A   Yes, I had just joined them.  I mean, within a

5       year.  Well, actually, June 28, '68, I would

6       have been there about five, six months probably.

7   Q   You started in October of?

8   A   October of '67, but you know, I didn't get

9       involved with any of this until several years

10      later.

11  Q   Does the fact that Estabrook is written in line

12      2 then, immediately beneath that for line 5 is

13      this little, I forget what it's called, but it's

14      a grammatical way of saying, same as above, does

15      that refresh your memory as to Mr. Milton

16      Estabrook was still running E.J. Wells Insurance

17      Agency as of 1968?

18  A   I think at that point he was probably there on a

19      part-time basis, but he was phasing out with

20      Henry Barry.  I think Henry Barry was taking

21      over in '68, '69, in that range.

22  Q   Now, you'll see to the right of that, the words,

23      looks like, "Business Owner's Policy"?

24  A   Right.

Page 71

1    A    Yup.

2    Q    And if you look over to the right, first

3         handwritten notice you see, or handwritten

4         notation you see are ND3873892; do you see that?

5    A    On line 18?

6    Q    Line 27, sorry.

7    A    27.  Oh, line 27 is an entry, Travelers

8         Indemnity.  What did you say the entry was?

9    Q    Well, I'm asking you.  You'll see where line 27

10        and column one intersect, looks like the number

11        ND3873892.

12             MR. NAGLE:  They're hard to read

13        especially without glasses.

14   A    Probably ND.  It would be ND; that's what that

15        would refer to.

16   Q    Right.  That's what I asked you.

17   A    Yeah.

18   Q    And you'll see to the immediate right of that

19        number, that series of the numbers, is again the

20        letter M; do you see that?

21   A    Yes.

22   Q    Do you know in this capacity what that M stands

23        for?

24   A    That I'm not positive on.

Page 72

1   Q   Then you'll see what looks like a couple of

2       initials to the right of that.  Can you make

3       what those are?

4   A   P.

5           MR. NAGLE:  Could you ask the question

6       again, please.

7   Q   Sure.  Do you know what those numbers or letters

8       are?

9           MR. NAGLE:  What line?

10  Q   Line 27, column 3.

11  A   I would think that L would stand for liability

12      of some sort.  Whether it be personal liability,

13      I'm not sure.

14  Q   Okay.  Now, if you look up, Mr. Crider, to line

15      18, do you see that?

16  A   Yes.

17  Q   And if you look over to the right of that, it

18      says, Aetna Casualty and Surety company; do you

19      see that?

20  A   Right.

21  Q   Then if you look in line 18, column 2, the word

22      "Priest" is written.

23  A   Right.

24  Q   Who, what does the Priest signify, do you know?

Page 73

1    A    I don't know.

2    Q    Was there anyone that at, to your knowledge, at

3         E.J. Wells Insurance Agency by the name of

4         Priest?

5    A    Not that I am aware of.

6    Q    If you look at line 23, you will see, the first

7         handwritten notation you'll see says,

8         Lumberman's Mutual Casualty Company; do you see

9         that?

10   A    Yup.

11   Q    Then if you look over in column 2, it looks

12        like, reading from above, that that should have

13        Estabrook written in it; do you see that?

14   A    That's correct.

15   Q    Does that refresh your memory as to whether E.J.

16        Wells Insurance Agency provided coverage by

17        insurers other than Travelers?

18   A    Not that I am aware of.

19   Q    But do you have any understanding as to why

20        Estabrook's name would be associated with a

21        policy that appears to have been issued by

22        Lumberman's Mutual Casualty Company?

23   A    Well, appears to me this was a glass policy in

24        the store that I think they opened in Littleton

Page 74

1    in perhaps that year.

2    Q  But respectfully, that's not my question though.

3       Do you know whether or not Mr. Estabrook issued

4       that policy to Kleenit on behalf of Lumberman's?

5    A  I don't know.

6    Q  And then if you look, Mr. Crider, excuse me, on

7       line 31, you will see the first handwritten

8       notation is Fireman Fund Insurance Company; do

9       you see that?

10   A  Um hmm.

11   Q  And you look over column 2, it looks like the

12      word Hodgedon or Hodgeson is written there; do

13      you see that?

14   A  Yes.

15   Q  Do you recall anyone at E.J. Wells Insurance

16      Agency by the name of Hodgeson?

17   A  No, I don't.

18   Q  Do you recall anybody involved with the

19      insurance by that name?

20   A  Not that I'm aware of.

21   Q  And just, forgive me if I asked you this, but do

22      you recall anybody involved in the insurance

23      business that Kleenit had by the name of Priest?

24   A  No, I'm not.

Page 75

1    Q    Okay.  I may, Mr. Crider, now I'd like for you

2         to take a look at Exhibit No. 9 which has

3         already been marked as well, and again, this was

4         attached to Mr. Nagle's April 19, 2006 letter as

5         Exhibit E.  You'll see at the top it looks like

6         it has a stamp notation of Kleenit, Inc., 44

7         Mark Street, Ayer, Mass., and then to the right,

8         a little beneath that, a date of June 28, 1969;

9         do you see that?

10   A    Yeah.

11   Q    Do you know who prepared this document?

12   A    Mr. Nason.

13   Q    What was the capacity in which Mr. Nason would

14        prepare a document like this?

15   A    Well, he's our CPA.  He's our CPA.  Mr. Monro

16        insisted that this would be done, whatever.

17   Q    Right.  I'd like to point you, if I may, to line

18        number 25.  And you'll see immediately to the

19        right of that are the words, it looks like the

20        Travelers Indemnity Company; do you see that?

21   A    Right.

22   Q    I apologize.  I actually want to -- I'd like to

23        point you to line number 34.  You'll see that

24        the first handwritten notation there appears to

1     be a series of numbers, 3873892; do you see

2     that?  This would be in column number 1.

3  A  Yup.

4  Q  Do you have any indication who that coverage is

5     offered by?  To the extent that that --

6  A  Everything, indicated to me that everything was

7     Travelers, and I think this was a Customer Goods

8     Supplemental, and I'm just conjecturing that

9     this was probably on furs, fur policy.

10  Q  What's Customer Goods Supplemental?

11  A  Well, in other words, you have goods, goods that

12     are on racks, that you bring your suit in the

13     cleaners; if we have a fire or something, we're

14     covered, you know, under that policy.  It's a

15     Bailey type policy but it might be a

16     supplemental over, you know, that you have extra

17     amounts.

18  Q  Now, if you go back up to line number 8, you'll

19     see those, again those, I guess they're

20     quotation marks, whatever they are, same as

21     above?

22  A  Ditto.

23  Q  Ditto marks.  Then you'll see what looks like

24     the letters -- well, I don't want to speculate.

Page 77

1    Do you see those little, looks like maybe two

2    handwritten letters immediately to the right of

3    that, just to the right of the ditto marks?

4  A  Yeah.

5  Q  What are those, do you know?

6  A  Wait a minute now, where was this at again?

7  Q  On line 8, immediately to the right of those

8    ditto marks.

9  A  Well, I'm looking at -- I don't know. I don't

10    know what that was referenced to at all.

11  Q  And you'll see again in column one, those

12    numbers 3873892; you see that?

13  A  Yup. Yup.

14  Q  Then in column 2, you'll see ditto marks, and

15    above you'll see "Estabrook;" do you see that?

16  A  Yeah.

17  Q  Does that refresh your memory as to whether or

18    not, as of the summer of 1969, Mr. Estabrook was

19    still running the E.J. Wells Insurance Agency?

20  A  I said I think it was in a period of transition

21    at that point, at that stage. I can't tell you

22    definitely.

23  Q  Then you'll see to the right it actually goes

24    from column 3 to column 4, the words, "Business

1       Owner's Policy."  Do you see that?

2   A   Yup.

3   Q   Do you have any indication whether or not the

4       terms of that policy included liability

5       coverage?

6   A   I'm not sure.

7           MR. DAY:  Do you want to take a break so

8       you can confer with your client?

9   A   I guess I have trouble reading the thing, but my

10      feeling that the policies, whether he broke

11      everything out that was in the policy, I don't

12      know.  But I think in most, on all of our

13      policies, that we had public liability

14      insurance.

15  Q   Public liability insurance?

16  A   Public, or whatever.  You know, whatever.

17  Q   Do you see -- I'll withdraw that.

18          If you notice, Mr. Crider, back, if we go

19      back to, let's go back to line 5, if you would,

20      please, over on the left-hand side.  Immediately

21      above line 5, on line 4 you see the word

22      "machinery;" you see that?

23  A   Yeah.

24  Q   And if you look back at Exhibit 8, same thing

 1      happened on Exhibit 8 with that series of

 2      policies.  I asked you that line, I asked you

 3      about line 5 on Exhibit 8, and again, right

 4      above that on line 4 is the word "machinery;" do

 5      you see that?

 6   A  Is it under "Power Expense"?

 7   Q  No, it's, if you look at Exhibit 8 for instance,

 8      "Power" is written in line one, correct?

 9   A  Right.

10   Q  Then it looks like line 2 has an indentation.

11   A  Machinery, right.

12   Q  Then line 4 is machinery?

13   A  Right.

14   Q  Then line 5 below that, that's the line I asked

15      you some questions about on Exhibit 5; do you

16      recall that?

17   A  Yes.

18   Q  Do you know why the word machinery is written

19      right above line 5 and line 4?

20   A  I can't explain that, whether his method of

21      amortizing the cost in his accounting ledgers

22      would be the thing, because if you look at the

23      top, the power, that is the boiler policy, okay.

24      And he probably had categories of power,

1     machinery, delivery, branch office, indirect,

2     and office.  Harry had categories that he

3     transferred this information to the tax return,

4     and that was his category of account listings

5     for our industry.

6   Q   Did Harry prepare those categories himself?

7   A   I would say that yes, but these were standard,

8     the way these items were amortized in our

9     industry.

10  Q   Okay.  Have you seen Exhibits 8 or 9 before?

11  A   I think I've reviewed them, but as I say, Frank

12    has been, Mr. Murphy has been handling most of

13    this situation and he would have better

14    knowledge of it than I have.  I haven't gleaned

15    over these, but I've examined roughly the

16    schedules.

17  Q   Did you see these schedules back when they were

18    initially prepared back in 1968, 1969?

19  A   No, I didn't; no.

20  Q   Would Mr. Nason have sent these over to Kleenit,

21    or would he have kept them, to your knowledge?

22  A   He would have kept them.  These were his working

23    papers.

24  Q   To your knowledge, when did anyone from Kleenit

Page 81

1           first see Exhibit 8 or Exhibit 9?

2      A    Harry Nason died last year, okay.  And I think

3           in early 2000, maybe late 2001, we procured all

4           of his work papers, and that's basically what we

5           have here, from --

6      Q    Now, if you go back to Exhibit 9, again, if you

7           look at line 8, column 6, you're going to see a

8           series of numbers, 45,000; do you see that?

9      A    Yes.

10     Q    And right below that?

11     A    Right.

12     Q    60,000?

13     A    Right.

14     Q    7,000 and then 35,000; do you see that?  You see

15          those series of numbers?

16     A    You mean under line 21?

17     Q    No, I'm looking at column 6, lines 8, 9, 10 --

18          8, 9 and 10.  Actually, it's 8 and 9 is where

19          those four groups of numbers are located.

20     A    Yeah.

21     Q    You see those?

22     A    Yup.

23     Q    Do you know what those signify?

24     A    I don't.

Page 82

1 Q If you look over again on line 8, column 11, you

2  see the numbers 549; you see that?

3 A Yes.

4 Q Do you know what that signifies?

5 A That would probably be the premium, the premium

6  that was paid on the policy, and then this, on

7  91.50 would be the unamortized portion at

8  June 28th.

9 Q Where do you see on this ledger that, an

10  indication that would be what that is, that that

11  would be the premium?

12 A Well, it would have to be followed through the

13  cash book. Whatever entry we had in the cash

14  book to E.J. Wells, I think it could be possibly

15  followed, if we were really looking this over

16  through the voucher register onto here.

17 Q Do you have the cash book for this time frame,

18  1968 and '69?

19 A I don't know. I think we supplied everything

20  that we had.

21 Q Okay. Do you know on line 8, column 12, there

22  is, looks like again some, a handwritten

23  notation just to the right of where it says 2

24  over 12; you see that?

Page 83

1    A    2 over 12.   Yeah.

2    Q    Do you know what that handwritten notation is?

3    A    I can't even see it.

4    Q    You see it, but --

5    A    I see it, but I can't, I don't know what it

6         says.

7    Q    Do you know again what that notation which

8         appears to be 2 over 12 means?

9    A    No, I don't.

10   Q    Now, Mr. Crider, I'd like to provide you with a

11        copy of what's been previously marked as

12        Deposition Exhibit No. 10, which I'll represent

13        to you is also a document that was provided by

14        Mr. Nagle in his April 19th letter.  This was

15        marked as Exhibit F in Mr. Nagle's letter to Joe

16        Berman.  You'll see it at the top, stamped words

17        Kleenit, Inc., Ayer, Mass., then just below and

18        to the right of that, the stamp, June 27, 1970;

19        do you see that?

20   A    Yes.

21   Q    Have you ever seen this document before?

22   A    I think I gleaned over it just briefly.

23   Q    Okay.  When was that?

24   A    Pardon me?

Page 84

1  Q  When did you glean over this document briefly?

2  A  Probably a year ago, year or two ago.

3  Q  Okay.  Had you ever seen it before then?

4  A  No.

5  Q  And correct me if I'm wrong, but is this also a

6     document that was prepared by Mr. Nason?

7  A  Yes.  Yes.

8  Q  For all three of these Exhibits, 8, 9 and 10,

9     like we've noted, they all have a stamp at the

10    top, a date stamp.  Like this one it dated

11    June 27.

12 A  Yes, that's the fiscal year end in 1970; yes.

13 Q  Do you know whether Mr. Nason prepared these

14    documents on that particular date or prior to

15    then?

16 A  Would be after the date because that, we close

17    our year end probably in, and file a tax return

18    September 15th, so could have been any time

19    within a three month range after, you know,

20    after June 27th.  That's when we would do the

21    book closings.

22 Q  Well, what would Mr. Nason, and this question

23    pertains to Exhibits 8, 9 and 10, what would

24    Mr. Nason do with these documents once he

Page 85

1      prepared them?

2   A   He kept them.  He kept them.  He had brown

3      folders for each year that he had.  Why, I don't

4      know.

5   Q   So he never filed these with anybody to your

6      knowledge, any sort of governmental entity or

7      anything?

8   A   No.

9   Q   And to your knowledge, he never provided copies

10     of them to Kleenit?

11  A   No.

12  Q   So my question is, and again with, let's go back

13     briefly to Exhibit 8, it's dated June 29, 1968,

14     which you've represented is the end of the

15     fiscal year?

16  A   Right.

17  Q   But do you know the date or dates in which

18     Mr. Nason actually prepared that document,

19     wrote, did the handwriting on that document?

20  A   I would say somewhere within a three-month

21     window up to September 15, because we had to

22     file our tax return and complete.  So we'd have

23     to close the books and have them, the tax return

24     ready by September 15th of -- it was two and

Page 86

1      half months after the fiscal year ended.  We

2      never filed for extension.  We usually got it

3      out right away, so --

4    Q  But he wouldn't file this, nobody would file

5      this document as part of your tax returns, would

6      you?

7    A  No.  No.

8    Q  So he could have prepared these documents prior

9      to June of 1968 for all you know.

10             MR. NAGLE:  Objection.

11   Q  Let me rephrase the question.  Do you know of

12     any reason why Mr. Nason couldn't have prepared

13     this document before June 29, 1968?

14             MR. NAGLE:  Objection.

15   Q  I think you can answer the question.  There's an

16     objection for the record.

17   A  Oh.  The only thing I can say is these were

18     filed somewhere between September 15 of, this

19     one case it would be '70, and when he did them

20     throughout the year, I had no idea.  I mean, he,

21     you know, I can't say that.

22   Q  And you don't know, to your knowledge, he never

23     asked anyone from Kleenit to review either

24     Exhibit 8, 9 or 10 for accuracy.

Page 87

1    A    Well, he had no reason to.

2    Q    Mr. Crider, are you aware of any cancelled

3         checks that reflect payments made by Kleenit for

4         insurance between 1964 and 1970?

5    A    I think we accumulated many, many checks that

6         were payable to the E.J. Wells Insurance Agency.

7         I believe.  I'm not -- Mr. Murphy again has been

8         handling that part of it.  I remember writing a

9         lot of them to the company.

10   Q    Aside from documents that I've provided you

11        today, which are Exhibits 7, 8, 9 and 10, are

12        you aware of any evidence that Travelers

13        provided coverage to Kleenit between 1964 and

14        1970?

15        MR. NAGLE:   Objection.

16   A    I firmly believe that they had coverage before

17        1964.  I say '60 on.

18   Q    Let me ask you the question again.  Aside again

19        from documents that have been marked today as

20        Deposition Exhibits 7, 8, 9 and 10, are you

21        aware of any documentary evidence that Travelers

22        provided coverage to Kleenit between 1964 and

23        1970?

24        MR. NAGLE:   Objection.

1   A   Are you speaking just those three years, '64

2       to --

3   Q   Six years, from 1964 to 1970.

4   A   Well, I think the evidence is here.

5   Q   Respectfully, Mr. Crider, aside from the, these

6       four Deposition Exhibits today, I'm asking you

7       if you're aware of any other documentary

8       evidence.

9           MR. NAGLE:  Objection.

10          THE WITNESS:  Can I confer with you, Don?

11  Q   Can you answer the question first?

12          MR. NAGLE:  If you can't answer the

13      question, say, I can't answer the question.

14  A   Okay.  I guess I can't answer the question.

15  Q   Well, respectfully --

16          MR. NAGLE:  Why don't we take a break.

17  Q   In all fairness, I think that you can tell me

18      whether you're aware or not and then, because

19      why -- are you asserting as a privilege why you

20      can't answer the question?

21          MR. NAGLE:  Objection.  Argumentative.

22          MR. DAY:  No, I'm not trying to be

23      argumentative.

24          MR. NAGLE:  I'm requesting we take a break

Page 96

1                    C E R T I F I C A T E
2     COMMONWEALTH OF MASSACHUSETTS
3     MIDDLESEX, SS.
4
5            I, Lisa McDonald Valdario, Registered
      Professional Reporter and Notary Public, in and
6     for the Commonwealth of Massachusetts, do hereby
      certify that:
7
             KEITH CRIDER, the witness whose deposition
8     is hereinbefore set forth, was duly sworn by me,
      that I saw a picture identification for him in the
9     form of his driver's license, and that the
      foregoing transcript is a true and accurate
10    transcription of my stenotype notes to the best of
      my knowledge, skill and ability.
11
             I further certify that I am not related to
12    any of the parties in this matter by blood or
      marriage and that I am in no way interested in the
13    outcome of this matter.
14           IN WITNESS WHEREOF, I have hereunto set my
      hand and notarial seal this 16th day of June,
15    2006.
16
17
18    _____
19    Lisa McDonald Valdario, RPR, RMR
20    Notary Public
      My commission expires: June 9, 2011
21
             THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
22    DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME
      BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL
23    AND/OR DIRECTION OF THE CERTIFYING REPORTER.
24

# EXHIBIT F

BURROUGHS CORPORATION
TODD COMPANY DIV.
Form 11521

KLEMETT, INC.
44 PARK STREET
AYER, MASS.

JUN 28 1969

