## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC., ) | |
| Plaintiff ) | |
| vs. ) | CIVIL ACTION |
| ) | NO. 04-10351-NG |
| SENTRY INSURANCE COMPANY, ) | |
| ROYAL & SUN ALLIANCE, ) | |
| UTICA NATIONAL INSURANCE GROUP, and ) | |
| TRAVELERS PROPERTY AND CASUALTY, ) | |
| Defendants ) | |

## DEFENDANT UTICA NATIONAL INSURANCE GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff, Kleenit, Inc. ("Kleenit") commenced this action seeking defense costs and indemnification from Utica National Insurance Group ("Utica"), among other insurers, in connection with claims brought against Kleenit by the Department of Environmental Protection ("DEP") for the alleged release of perchloroethylene ("perc"), at three Kleenit dry-cleaning stores. Kleenit alleges that Utica issued, among other policies, a $1,000,000 umbrella liability policy with respective annual policy periods from 1983 to 1985.

There is no dispute that Kleenit cannot produce any evidence of these alleged umbrella policies and it has yet to explain why it never made a diligent search. Further, Kleenit cannot establish a foundation for the introduction of secondary evidence to prove the existence and terms of these alleged lost policies. Even if the foundation was properly laid, the insufficient secondary evidence Kleenit offers falls well short of its burden of proof. Since Kleenit cannot prove the existence of these policies, Utica

respectfully requests that this Court grant its motion for partial summary judgment and declare that the alleged umbrella policies do not exist as a matter of law.

## I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

By letters dated September 25, 2002, Kleenit tendered notice to Utica of its claims for defense and indemnification with respect to the alleged pollution arising from Kleenit's dry-cleaning operations at the Chelmsford and Acton sites.  (Utica's Concise Statement of Material Facts ("SMF") ¶1)  Kleenit alleged that Utica issued an "All Risks/Special Multi-Peril Policy" which allegedly provided coverage from October 1, 1982 to October 1, 1985.  (SMF ¶2)  Additionally, Kleenit claimed the existence of an excess or Umbrella Liability Policy.  (SMF ¶3) According to Kleenit, this policy, and its renewal policy, covered the periods from February 3, 1983 to February 3, 1984 and February 3, 1984 to February 3, 1985. (SMF ¶4)

In response to the September 25 letters, Utica conducted a diligent search of its records to locate policies issued to Kleenit during the period of 1979-1985.  (SMF ¶5) Approximately one month after receiving notice of the claims, Utica sent Kleenit separate Partial Disclaimers of Coverage and Reservation of Rights letter for each site. (SMF ¶6)

Utica ultimately acknowledged the existence of a comprehensive general liability policy ("CGL"), policy with effective dates of October 1st to October 1st covering the periods from 1979-1982 and 1982-1985 with limits of $100,000 per occurrence and $100,000 in the aggregate.  (SMF ¶7)  The CGL policy was issued by Graphic Arts Mutual, an affiliated company of Utica Mutual Insurance Group.  (SMF ¶8)  It has not

yet been determined whether the CGL policy is applicable to Kleenit's claims, and Utica is defending the clams under a reservation and subsequent determination as to whether Kleenit met the requisite notice requirements to trigger coverage and whether there are exclusions applicable to Kleenit's claims.  (SMF ¶9)

The diligent search of Utica's archival records revealed no umbrella liability policies, or any evidence that umbrella policies were issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance Group during the years 1982-1985.  (SMF ¶10) Utica has no records of correspondence or telephone communication with anyone regarding umbrella liability coverage purportedly issued to Kleenit, Inc. by Graphic Arts Mutual or Utica Mutual Insurance Company during the years 1982-1985.

 (SMF ¶11)  Utica has no record of premium payments for umbrella liability coverage made by Kleenit or its claimed agent, Henrick Johnson Insurance Agency of Lowell, MA to Graphic Arts Mutual Company or Utica Mutual Insurance Company during the years 1982-1985.  (SMF ¶12)  Utica has no record of claims being made against the purported umbrella liability coverage, nor records of any payment being made on claims by Graphic Arts Mutual Company or Utica Mutual Insurance Company during the years 1982-1985. (SMF ¶13)  Utica has no documentation to support the purported renewal of any umbrella policy from policy years 1983-1984 to 1984-1985.  (SMF ¶14) Utica has no record of a schedule of underlying insurance or a record of supporting documentation that would have been required by Utica's underwriters at that time to issue an umbrella policy.  This would include but not be limited to policies, declaration pages of the underlying policies, or information regarding the underlying insurance.

3

(SMF ¶15) At all times relevant, Utica underwriters required a schedule of underlying insurance, to secure a primary layer of coverage and in order that Utica could check the financial ratings of the underlying insurers. (SMF ¶16)

Kleenit never produced a copy of the alleged umbrella policy. Instead, Kleenit produced a poor quality copy of a ledger sheet dated June 30, 1984 and entitled "Prepaid Insurance". (SMF ¶17) According to Kleenit, the ledger sheet "prov[ed] the existence" of both the general liability and umbrella polices. (SMF ¶18) Later, Kleenit produced a poor quality copy of another ledger sheet dated June 30, 1984 and entitled "Insurance". (SMF ¶19) These sheets were allegedly created and kept by Harry Nason ("Nason"), Kleenit's Boston accountant from the 1950s thru at least 2001. (SMF ¶ 20) Nason was an independent practitioner who did not work for Kleenit. (SMF ¶ 21) Nason closed his practice and was placed in a nursing home in 2005. (SMF ¶ 22) Nason's ledgers were transferred to Keith Crider, the President of Kleenit, Inc., when the office closed. (SMF ¶ 23) Nason used Kleenit's voucher register to make entries in his alleged ledger regarding insurance. (SMF ¶ 24) Nason did not have the actual insurance policies. (SMF ¶ 25) Nason did not pay the premiums on the insurance. (SMF ¶ 26)

Nason did not have access to the checkbook. (SMF ¶ 27) Crider had never sat down and looked through the alleged ledger sheets in their entirety. (SMF ¶ 28) Crider did not have occasion to sit down with Nason to go over any of the alleged ledgers before Nason stopped working. (SMF ¶ 29)

The first of Nason's alleged ledger sheets is dated June 30, 1984 and is entitled "Prepaid Insurance." The following is Line 18 from this ledger sheet:

4

"18. Utica Mutual Ins Co.  LU 6406P  Johnson  Umbrella Liability Policy  1000000  2-3-84  1yr  2-3-85  750  7/12  437.50"

(SMF ¶ 30)  The second of Nason's alleged ledger sheets is dated June 30, 1984 and entitled "Insurance."  The following is Line15 from this ledger sheet:

"15.  6-30-84  4531-                              Umbrella  750  920                      1101  1760              1760"

(SMF ¶ 31)  Kleenit also produced a poor-quality copy of a duplicate check from its files numbered 2193 and dated 6/27/84.  (SMF ¶32)  This check drafted to the order of Henrick F. Johnson in the amount of $750.00.  (SMF ¶ 33)  The words "umbrella policy" are noted in the memo section of the check. (SMF ¶ 34)   Kleenit later produced a very poor-quality copy that purports to be a page from Kleenit's voucher register purportedly kept at Kleenit offices in Ayer, Massachusetts; the page had the following entry:

"11.  []193        Henrick F. Johnson        6/27/04                        750"

(SMF ¶35)  Kleenit claims these documents prove that Utica issued a $1,000,000 umbrella liability policy, and renewal policy, effective from 2/3/84 to 2/3/85. (SMF ¶ 36)

Kleenit originally made no clear allegation that the alleged umbrella policy covered the policy year from 1983 to 1984. (SMF ¶ 37)  It was not until a letter from Kleenit's attorney dated April 14, 2006 that Kleenit alleged the existence of umbrella liability coverage from February 3, 1983 to February 3, 1984. (SMF ¶ 38).  To "prove" the extra year of this coverage, Kleenit produced a poor-quality copy of Nason's alleged ledger sheet dated July 2, 1983 entitled "Prepaid Insurance."  The following is Line 17 from this ledger sheet:

"17.  Utica Mutual  LU 6406P  Johnson  Umbrella liability policy  1000000  2-3-83  1yr  2-3-84  750  7/12  437.50"

(SMF ¶39)  Kleenit also produced a copy of a duplicate check number 18425 dated

March 2, 1983, drafted to the order of Henrick F. Johnson in the amount of $750.00.

(SMF ¶40)  Kleenit claims these two documents prove that Utica issued a $1,000,000

umbrella liability policy effective from February 3, 1983 to February 3, 1984.  (SMF ¶ 41).

Crider was not aware of any other policies bought by Kleenit from the

1960s to 1994 for its insurance program besides property/casualty, automobile and

worker's compensation.  (SMF ¶ 42)  Kleenit relied solely on Nason's alleged records for

the existence of insurance policies prior to bringing the instant lawsuit.  (SMF ¶ 43)

Kleenit did not rely on any independent records.  (SMF ¶ 44)  Crider did not look

through any of Kleenit's checks.  (SMF ¶ 45)  Kleenit received all insurance policies at its

office in Ayer. (SMF ¶ 46)  Kleenit kept hard copies of its insurance policies in a file

cabinet in its offices in Ayer for five or six years.  (SMF ¶ 47) When Kleenit's files

became full, Kleenit's file clerk "let them go". (SMF ¶ 48)

From the time he started at Kleenit, Crider was the individual who would pay

the insurance bills. (SMF ¶ 49)  Kleenit had a voucher register record from which Nason

would transfer to his general ledger. (SMF ¶ 50)  This voucher register was kept for a

period of five to seven years then thrown away.  (Crider Dep., p. 83, ll. 13-20) (SMF ¶ 51)

Kleenit obtained insurance with Graphic Arts Mutual through Henrick Johnson,

in Lowell, MA.  (SMF ¶ 52)  During its search for policies, Kleenit contacted its

insurance agents.  Some of Kleenit's former insurance agents lost older insurance policy

records. (SMF ¶ 53)  It was extremely difficult and burdensome for Kleenit to

reconstruct its insurance records, which possibly may have been archived and/or lost. (SMF ¶ 54)    Kleenit contacted former agents to recover its records.  (SMF ¶ 55)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.  R.  Civ.  P.  56(c).  The moving party has the initial burden of demonstrating that "there is an absence of evidence to support [the nonmoving party's] case."  Celotex Corp. v Catrett, 477 U.S. 317, 325 (1986).   To overcome a motion for summary judgment, the opposing party may "not rest upon the mere allegations or denials of his pleading, but his response, by affidavits . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.  R.  Civ.  P.  56 (e); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-250 (1986).

## III.    ARGUMENT

### A.    KLEENIT HAS FAILED TO PROVE THE EXISTENCE AND ALL MATERIAL TERMS OF THE ALLEGED UMBRELLA POLICY; THEREFORE, THE COURT SHOULD GRANT UTICA SUMMARY JUDGMENT.

Utica is entitled to summary judgment because of the absence of evidence that the alleged umbrella policy ever existed and the unlikelihood that such evidence will be forthcoming at trial.

**1.  Kleenit Has Failed to Prove Utica Ever Issued The Alleged Umbrella Policy**

Kleenit, as the proponent of the alleged umbrella policy, must prove that Utica issued the policy and also prove the policy's material terms.  Employers' Liab. Assurance Corp, Ltd. v. Hoechst Celanese Corp., 43 Mass.App.Ct. 465, 484 (1997); Fed. R. Evid. 1002.  Kleenit has failed to carry its burden in this case because there is an absence of documentary or testimonial evidence that Utica ever issued the alleged umbrella policy.

Here, there is no direct physical evidence of the policy.  Kleenit never produced a copy of the actual alleged policy, a photocopy of the policy or even a single page or part of a page of the alleged policy.  This is probably due to the fact that Kleenit recklessly dumped its insurance policies after five or six years for no apparent reason other than to clean out its cabinets.  When Kleenit's files became full, Kleenit's file clerk would "let them go."  If Kleenit would have properly kept these valuable documents, it could have established that it had no umbrella coverage thereby saving time, resources and money.

Kleenit has not produced any testimonial evidence of the policy.  A witness who is familiar with the terms of an alleged policy may testify to prove the contents of that policy, but such testimony must be based on 'direct recollection' in order to be probative.  Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374 (D. Puerto Rico), citing Sanstorm Inc. v. Hartford Accident & Indem. Co., 940 F. 2d 1535 (9th

Cir. 1991).[1]  Here, Kleenit simply does not have a witness with direct recollection of the existence or terms of the alleged policy.  Kleenit produced its President, Keith Crider, who testified that he was unaware that Kleenit purchased any other insurance besides property/casualty, automobile and worker's compensation insurance during the relevant time.  He never saw the alleged umbrella policy itself, even though he was in charge of obtaining insurance and he was the one that paid the insurance bills.  In other words, the Kleenit employee in the best position to have knowledge of an alleged umbrella policy had no direct recollection of Kleenit ever having an umbrella policy.

Further, Kleenit has not produced an affidavit from the agent at the Henrick Johnson Insurance Agency who allegedly placed the umbrella policy with Kleenit. During its "search" for the policy, Kleenit did contact its former agents, presumably including Henrick Johnson.  Evidently, Henrick Johnson was not of assistance since Kleenit never produced the alleged umbrella policy or any other Henrick Johnson document which would support its claim.  Notably absent from the discovery record are insurance agent-related documents including  "certificates of insurance, letters discussing coverage, letters discussing renewal of coverage, portions of policies, letters referring to claims . . during the relevant years, endorsements . . ." that have been held sufficient to establish the existence of an insurance policy.  See Burroughs Wellcome Co. v.  Commercial Union Ins. Co., 632 F.Supp. 1213, 1222-1223 (S.D.N.Y. 1986). Henrick Johnson, as Kleenit's agent was the entity in the best position to provide such

---

[1] "[T]he adjudged construction ... given to the Federal [rule] is to be given to [the Massachusetts rule], absent compelling reasons to the contrary or significant difference in content." Rollins Envtl. Servs., Inc. v. Superior Ct., 368 Mass. 174, 179-180 (1975).

documentation, yet there is nothing in the record from Henrick Johnson, even though Kleenit contacted its former employee during Kleenit's search. "Things not made to appear must be taken as not existing." <u>Star Steel Supply v. U. S. Fidelity & Guaranty Co.</u>, 186 Mich. App. 475, 480(1991).

In short, there is a telling lack of evidence from the individuals in the best positions to have knowledge of the alleged umbrella policy. It is more likely than not that the reason for the lack of evidence is because it never existed, and not because two separate and unrelated business entities cannot produce any evidence other than the ledger sheets. For this reason, the Court should grant summary judgment to Utica as to the issue of the existence of the umbrella policy.[2]

### 2.    Kleenit Has Yet To Show It Made A Diligent Search For The Alleged Policy.

Utica is entitled to summary judgment because Kleenit has not taken responsibility for explaining the absence of the alleged original umbrella policy; therefore, Kleenit should not be allowed to introduce secondary evidence to prove the existence and material terms of the alleged umbrella policy.

The best evidence that is obtainable in the circumstances of a given case must be produced to prove any disputed fact. <u>Sylvania Products, Inc., v. Flanagan</u>, 352 F.2d 1005, 1007 (1st Cir. 1965) (citations omitted); Fed. R. Evid. 1004. Under the best evidence rule, in order to permit the use of secondary evidence, the trial judge must make a

---

[2] Kleenit is not without recourse since Utica does not dispute that it issued Comprehensive General Liability insurance coverage to Kleenit for policy years 1983-1985. Whether this CGL policy covers the claims as alleged by Kleenit, however, remains an issue before this Court.

preliminary finding that the original, if it existed at all, has become unavailable through

no fault of the proponent and that a diligent but unsuccessful search has been made for

it.  See Sylvania Products, Inc., v. Flanagan, 352 F.2d 1005, 1008 (1St Cir. 1965) (citations

omitted).  The best evidence rule is not a mere technicality.  See id.  When a missing

document forms the very foundation of the claim, as is the case here, more strictness in

proof is required than where the writings are only involved collaterally.  See id.   The

absence of a diligent search will bar admissibility of secondary evidence.  See Cartier v.

Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).  "He who seeks to introduce secondary

evidence must show that he has used all reasonable means to obtain the original, i.e.

such search as the nature of the case would suggest."  Sylvania Products, Inc., 352 F.2d

at 1008.

       Once again, there is an absence of evidence regarding Kleenit's loss of and its

search for the alleged umbrella policy.   The evidence in the record shows that any

"search" for the policy was cursory at best.   Kleenit President Keith Crider claims that

insurance policies were kept in Kleenit's Ayer offices but were routinely thrown out

after five or seven years.  Kleenit has not produced any evidence that a search was

undertaken at its Ayer offices for the alleged umbrella policy.  Kleenit produced no

affidavit from its insurance agent that the agent conducted a diligent, but unsuccessful

search of his records.

       Kleenit did produce an affidavit from its President Keith Crider dated February

5, 2004.  Paragraph 8 states: "[u]nfortunately, some of Kleenit's former insurance agents

lost older insurance policy records and it was extremely difficult and burdensome to

reconstruct its insurance records, which possibly have been archived and/or lost. Kleenit pursued all reasonable sources to recover its records, including contacting former agents, accountants and the insurance companies directly." Despite Crider's use of the term "reasonable", this Court may easily find that it was neither reasonable nor diligent for Kleenit not to issue a subpoena duces tecum to these custodians. See Cartier, 59 F. 3d at 1048. Additionally, a Kleenit states that it was "difficult and burdensome to reconstruct" does not obviate Kleenit's requirement under the case law to try. In short, there is no evidence that Kleenit conducted a diligent search for the alleged policy. Any attempt now to obtain an affidavit from Henrick Johnson or to subpoena its records would only go to further demonstrate Kleenit's lack of diligence and unreasonableness in conducting its "search" of the alleged umbrella policy at this late date. See U.S. ex rel. Magid v. Wilderman, 2004 WL 1987219 * 5 (E.D. Pa. 2004).

Additionally, Kleenit produces no evidence in the discovery record from either its President or its insurance agent that the lost or destruction of the alleged policy was not done in bad faith. In short, Kleenit cannot claim the use of secondary evidence in this case, where it has not established that it conducted a diligent search of this "lost" umbrella policy and that the policy was not lost or destroyed in bad faith.

**B.    KLEENIT IS NOT ENTITLED TO USE THE LEDGER SHEETS AS SECONDARY EVIDENCE BECAUSE THE LEDGER SHEETS ARE UNAUTHENTICATED AND OTHERWISE NOT ADMISSIBLE; THEREFORE, THE COURT SHOULD GRANT SUMMARY JUDGMENT IN UTICA'S FAVOR.**

**1.    Kleenit Has Failed To Lay The Foundation For Admissibility Of The Accountant's Ledger Sheets.**

Kleenit has not properly laid the foundation for the ledger sheets to be used evidence to prove the umbrella policy.  Evidence used to prove the contents of a writing must comply with the rules governing the admissibility of evidence generally, including the business record rule. See Yankee Bank for Fin. & Sav., FSB v. Task Assocs., Inc., 139 B.R. 71, 79 (N.D.N.Y.1992); Fed. R. Evid. 803(6).  Preliminary questions dealing with the admissibility of evidence shall be determined by the trial judge.  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 92 (2d Cir. 2002).

Foundation for admission of a business record requires that both the testimony of a qualified custodial witness and a showing that the declarant was a person with knowledge acting in the course of a regularly conducted business activity.  The qualifying witness need not be the one who prepared the document but is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept.  U. S. v. Kayne,  90 F.3d 7, 12 (1st Cir. 1996).  Without such a witness the writing must be excluded.  Belber. v. Lipson, 905 F.2d 549, 552 (1st Cir., 1992).  Here, the ledger sheets must be excluded.  First, Crider is not qualified to authenticate the ledger sheets.  Records are not automatically incorporated into another entity's business records simply when the other gains control of the records.  Belber, 905 F.2d at 552.

Crider cannot explain the ledger sheets nor be cross-examined on them. By his own admission, Crider never sat down with Nason to go over the ledger sheets before Nason stopped working. He never looked through them in their entirely. Crider only took control of the ledgers when Nason closed his office in 2005 and went into a nursing home. In short, Crider can offer no information on how Nason's records were kept, therefore he cannot authenticate them. Nason cannot authenticate them since he has since passed away.

Further, when a document contains double hearsay and is offered for admission, each level of hearsay must meet the requirements of one of the exceptions to the hearsay rule in order to be admissible. Hoselton v. Metz Baking Co., 48 F.3d 1056, 1061 (8th Cir. 1995); Fed. R. Evid. 805. Here, the ledger sheets contain double hearsay, the first being Nason's entries themselves and the second being the entries purported to have been transferred from the voucher register. For reasons stated above, Nason's entries cannot be authenticated. The voucher register is also hearsay; Kleenit has not produced a qualified custodial witness or showed that the declarant (author of the voucher register) was a person with knowledge acting in the course of a regularly conducted business activity. Crider stated that Kleenit kept voucher registers for a period of five to seven years at which time they were thrown out. Even if Kleenit could produce the person who made entries in the relevant voucher registers, those registers are presumably thrown away and unavailable to authenticate that those registers were made in the course of a regularly conducted business activity.

Besides this, Kleenit asks the Court to surmise where Nason obtained other material information found on the ledger sheets, specifically the policy dates, the liability limits and the policy numbers of the alleged umbrella policy. Kleenit fails to establish however, where Nason obtained his information. Information on a business document provided by a non-party to the business renders the business record inadmissible under the business records exception. <u>Cameron v. Otto Bock Orthopedic Indus., Inc.</u>, 43 F.3d 14, 16 (1st Cir. 1994). Nason never saw the actual insurance policies. The policy numbers, policy dates and liability limits do not appear on any check or voucher register. In short, it is a mystery where Nason obtained this information. Since, each level of hearsay must meet the requirements of one of the exceptions to the hearsay rule in order to be admissible, and the alleged policy's purported terms shown on the proffered ledger sheets come from an unknown source, that information on those ledger sheets are hearsay and therefore inadmissible both at trial and for the purposes of summary judgment.

For similar reasons, and because the ledger sheets do not possess "circumstantial guarantees of trustworthiness" equivalent to those possessed by the other listed exceptions to the hearsay rule, the Court in its discretion should not admit the ledger sheets under the so-called residual exception of the hearsay rule. <u>See</u> <u>Polansky v. CNA Ins. Co.</u>, 852 F.2d 626, 631 (1st Cir. 1988); Fed. R. Evid. 803(24).

Further, even if the ledger sheets could be authenticated and found not to contain inadmissible hearsay, all they prove it is more likely than not that Kleenit made an entry in its voucher register purportedly showing it drafted a check to the order of

Henrick Johnson. Kleenit asks the Court to speculate that because Kleenit issued a check to the order of Henrick Johnson, it follows that Henrick Johnson received the check, applied the amount towards Kleenit's alleged umbrella coverage premium, made the payment in question to Utica, and that the payment, if made, was timely so as to avoid cancellation of the policy. Utica has affirmatively stated that it has no record of ever receiving payments for an umbrella policy from either Henrick or Kleenit. Here, Kleenit has not affirmatively stated anything other than Kleenit issued a check to Henrick Johnson; it relies on pure conjecture to establish the other links in its case. Mere surmise, conjecture, or speculation about the contents of a policy will not be sufficient, particularly when the lost writing is central to the "very foundation of the claim." Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 374, 384 (D.P.R.2002). Since the "lost" umbrella policy goes to the very foundation of Kleenit's claim that Utica owes it excess liability coverage, and Kleenit is not allowed to merely rest on its pleadings, the Court should be wary of this much conjecture and speculation about the existence or terms of the policy. Further, Kleenit should not be allowed to produce any evidence of the terms of the alleged umbrella policy since Utica informed Kleenit over one year ago that it could not produce the policy and Kleenit did nothing to comply with the above requirements needed for its secondary evidence to be admissible. See E. Prod. Corp. v. Cont'l Cas. Co., 58 Mass. App. Ct. 16, 28 (2003). In short, Kleenit's secondary evidence is inadmissible and otherwise insufficient as a matter of law; therefore, the Court should grant Utica summary judgment on this issue.

**2.    The Ledger Sheets Offer Insufficient Proof That It Is More Likely Than Not That Utica Provided Kleenit With Umbrella Liability Coverage.**

Even if the foundation was properly laid for the introduction of secondary evidence, the insufficient secondary evidence Kleenit offers falls well short of its burden of proof. [3]

Of all the hundreds of pages that should exist to establish the existence and terms of the alleged umbrella policy, the only documents that Kleenit produces is Nason's handwritten ledger sheets.  Even if the ledger sheets were fully admissible, which they are not, this offer of proof falls well short of evidence offered in similar cases.

In *Bituminous Cas. Corp. v. Vacuum Tanks*, 975 F.2d 1130, 1132-1133 (5th Cir. 1992), the Fifth Circuit, in vacating and remanding a decision by the trial court which found that an insurer had a duty to defend an insured against claims which resulted from the insured's violations of federal hazardous waste cleanup laws, held that where the insured did not produce the actual policy, but instead produced the policy numbers, dates of coverage and coverage amounts, such information is insufficient to establish the policy's material terms.

Similarly, in *Star Steel Supply Co. v. United States Fidelity & Guaranty Co.*, 465 N.W.2d 17, 20 (Mich.App. 1990)(per curiam), the Court of Appeals of Michigan

---

[3] Whether Kleenit, as a proponent of a purported policy must prove the umbrella policies existence by a preponderance of evidence or by some greater evidentiary standard has not yet been decided in Massachusetts. Employers' Liability Assurance Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass.App.Ct., 465, 485 (1997).  The clear and convincing standard has been used by Massachusetts trial courts and federal courts. See E. Enter. v. Hanover Ins. Co., 1995 WL 499386 * 2  (Mass.Super. August 18, 1995) (Cratsley, J.) (citations omitted); Boyce Thompson Inst. for Plant Research v. Ins. Co., of N. Am., 751 F.Supp.  1137, 1140 n. 2 (S.D.N.Y. 1990).  Utica believes that because there is such a profound dearth of evidence in this case that Kleenit has failed in its burden under either the preponderance of evidence or the clear and convincing evidence standard.

affirmed the grant of summary disposition in favor of the insurer in a case where the insured alleged that the insurer provided product liability coverage. The Court of Appeals found that the trial court below held that the insured had "totally failed" to establish the terms of the insurance coverage, despite evidence in the record of a standard form policy and evidence that the insurer provided worker's compensation insurance to the insured. After a review of the record, the Court of Appeals found that the insured failed to sustain its burden of proving the terms of the policy and that any judgment would be based on pure conjecture.

Here, both these cases are applicable to the instant case. Kleenit, like the insureds in *Vacuum Tanks* and *Star Steel*, seeks to establish the material terms of the alleged umbrella policy by introducing a specimen policy or by other evidence not directly related to the actual alleged policy. The appellant courts in both cases found that the specimen policy was insufficient to prove the policy's terms because no evidence of the actual terms was presented. "If, plaintiff, due to lack of proof, does not make out his case, the court should so hold." Star Steel Supply Co., 465 N.W.2d at 20. These cases are also important for the fact that the courts in both cases found that the evidence proffered was insufficient under the preponderance of the evidence standard, rather than the clear and convincing standard. In short, Kleenit has failed to over come its burden of proof in this case and summary judgment should be granted to Utica.

**3.    Kleenit Has Failed To Prove The Material Terms Of The Alleged Umbrella Policy**

As stated previously, Kleenit, as the proponent of this purported umbrella policy, must prove the policy's material terms.  Employers' Liab. Assurance Corp, Ltd. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465, 484 (1997).

Here, Kleenit has failed to prove the alleged umbrella policy's material terms.  As stated previously, Nason's ledger sheets are unauthenticated, inadmissible, and insufficient and therefore cannot be used to establish the material terms of the alleged umbrella coverage.  But even if they were admitted, there is one material term for an umbrella policy that Kleenit has not and cannot produce and that is the applicable schedule of underlying insurance.  The schedule of underlying insurance would identify what policies the umbrella policy covered, as well as the coverage limits of the underlying policies that once exhausted, would "trigger" the umbrella coverage.  These terms are material for umbrella coverage.  It would be pure conjecture for the Court to assume that the other insurance policies listed on Nason's ledger sheets are part of the schedule of insurance given to Utica.  Even if the Court were to reach there, the ledger sheets do not show all the material terms of all those policies.

IV.    **CONCLUSION**

WHEREFORE, Utica respectfully requests that this Court enter an Order granting partial summary judgment in Utica's favor in this matter and declare that the excess liability policy, which Kleenit alleges to exist, does not as a matter of law.

Respectfully submitted,

UTICA NATIONAL INSURANCE GROUP,
Defendant

By Its Attorneys:

Richard E. Heifetz          BBO #229000
Barbara M. Callahan         BBO #651964
Danielle M. Maloney         BBO #647527
TUCKER, HEIFETZ & SALTZMAN, LLP
100 Franklin Street
Boston, MA 02110
617-557-9696
Dated:  August 24, 2006


## CERTIFICATE OF SERVICE


I hereby certify that on the 24th day of August 2006, I filed a copy of the foregoing by electronic means with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification to the following: Joseph S. Berman, Esq., Berman & Dowell, 210 Commercial Street, Boston, MA 02109 and Donald P. Nagle, Esq., Law Office of Donald P. Nagle, P.C., 5 Main Street, Plymouth, MA 02360.

Richard E. Heifetz