UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KLEENIT, INC.,  )<br>                        Plaintiff  )<br>vs.   )<br>   )<br>SENTRY INSURANCE COMPANY,  )<br>ROYAL & SUN ALLIANCE,  )<br>UTICA NATIONAL INSURANCE GROUP, and  )<br>TRAVELERS PROPERTY AND CASUALTY,  )<br>                       Defendants  ) | CIVIL ACTION<br>NO. 04-10351-NG |

### DEFENDANT, UTICA NATIONAL INSURANCE GROUP'S, CONCISE STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, Defendant Utica National Insurance Group ("Utica") submits this Concise Statement of Material Facts in support of its Motion for Partial Summary Judgment as to Kleenit's allegations that Utica issued, among other policies, a $1,000,000 umbrella liability policy with respective annual policy periods from 1983 to 1985. As Utica sets forth in its memorandum of law in support of its motion, Kleenit should not, as a matter of law, be allowed to prove the existence or material terms of the alleged umbrella policy by secondary evidence. For these reasons, summary judgment should enter in favor of Utica.

1. By letters dated September 25, 2002, Kleenit tendered notice to Utica of its claims for defense and indemnification with respect to the alleged pollution arising from Kleenit's dry-cleaning operations at the Chelmsford and Acton sites. (See Exhibit A, Affidavit of Richard E. Heifetz, Esq. ("Heifetz Affidavit"), Tab 1, Tender Letters (without enclosures), dated September 25, 2002)

2. Kleenit alleged that Utica issued an "All Risks/Special Multi-Peril Policy" which allegedly provided coverage from October 1, 1982 to October 1, 1985. (Id.)

3. Additionally, Kleenit claimed the existence of an excess or Umbrella Liability Policy. (Id. at ¶¶2)

4. According to Kleenit, this policy, and its renewal policy, covered the periods from February 3, 1983 to February 3, 1984 and February 3, 1984 to February 3, 1985. (Id. at Tab 2, Letter by Attorney Donald P. Nagle, dated April 14, 2006)

5. In response to the September 25 letters, Utica conducted a diligent search of its records to locate policies issued to Kleenit during the period of 1979-1985. (See Exhibit B, Affidavit of Scott Godkin, ("Godkin Affidavit"), ¶2)

6. Approximately one month after receiving notice of the claims, Utica sent Kleenit separate Partial Disclaimers of Coverage and Reservation of Rights letter for each site. (See Exhibit A, Heifetz Affidavit, Tab 3, Reservation of Rights Letters, dated October 28, 2002)

7. Utica ultimately acknowledged the existence of a comprehensive general liability policy ("CGL"), policy with effective dates of October 1st to October 1st covering the periods from 1979-1982 and 1982-1985 with limits of $100,000 per occurrence and $100,000 in the aggregate. (See Exhibit B, Godkin Affidavit, ¶2)

8. The CGL policy was issued by Graphic Arts Mutual, an affiliated company of Utica Mutual Insurance Group. (Id. at ¶4)

9. It has not yet been determined whether the CGL policy is applicable to Kleenit's claims, and Utica is defending the clams under a reservation and subsequent

2

determination as to whether Kleenit met the requisite notice requirements to trigger coverage and whether there are exclusions applicable to Kleenit's claims. (Id. at ¶3)

10.   The diligent search of Utica's archival records revealed no umbrella liability policies, or any evidence that umbrella policies were issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance Group during the years 1982-1985. (Id. at ¶ 6)

11.   Utica has no records of correspondence or telephone communication with anyone regarding umbrella liability coverage purportedly issued to Kleenit, Inc. by Graphic Arts Mutual or Utica Mutual Insurance Company during the years 1982-1985. (Id. at ¶7)

12.   Utica has no record of premium payments for umbrella liability coverage made by Kleenit or its claimed agent, Henrick Johnson Insurance Agency of Lowell, MA to Graphic Arts Mutual Company or Utica Mutual Insurance Company during the years 1982-1985. (Id. at ¶8)

13.   Utica has no record of claims being made against the purported umbrella liability coverage, nor records of any payment being made on claims by Graphic Arts Mutual Company or Utica Mutual Insurance Company during the years 1982-1985. (See Exhibit B, Godkin Affidavit, ¶9)

14.   Utica has no documentation to support the purported renewal of any umbrella policy from policy years 1983-1984 to 1984-1985. (Id. at ¶10)

15.   Utica has no record of a schedule of underlying insurance or a record of supporting documentation that would have been required by Utica's underwriters at

that time to issue an umbrella policy. This would include but not be limited to policies, declaration pages of the underlying policies, or information regarding the underlying insurance. (Id. at ¶11)

16. At all times relevant, Utica underwriters required a schedule of underlying insurance, to secure a primary layer of coverage and in order that Utica could check the financial ratings of the underlying insurers. (Id. at ¶12)

17. Kleenit never produced a copy of the alleged umbrella policy. Instead, Kleenit produced a poor quality copy of a ledger sheet dated June 30, 1984 and entitled "Prepaid Insurance". (See Exhibit A, Heifetz Affidavit, Tab 4, Prepaid Insurance Ledger Sheet, dated June 30, 1984)

18. According to Kleenit, the ledger sheet "prov[ed] the existence" of both the general liability and umbrella polices. (See id. at Tab 1 at ¶¶2)

19. Later, Kleenit produced a poor quality copy of another ledger sheet dated June 30, 1984 and entitled "Insurance". (Id at Tab 5, Insurance Ledger Sheet, dated June 30, 1984

20. These sheets were allegedly created and kept by Harry Nason ("Nason"), Kleenit's Boston accountant from the 1950s thru at least 2001. (See Exhibit C, Deposition of Keith Crider ("Crider Dep."), June 15, 2005, p. 58, ll. 15-20)

21. Nason was an independent practitioner who did not work for Kleenit. (Id. at p. 58, ll. 23-24)

22. Nason closed his practice and was placed in a nursing home in 2005. (Id. at p. 59, ll. 9-12)

23. Nason's ledgers were transferred to Keith Crider, the President of Kleenit, Inc., when the office closed. (Id. at p. 60, ll. 2-4)

24. Nason used Kleenit's voucher register to make entries in his alleged ledger regarding insurance. (Id. at p. 63, ll. 7-21)

25. Nason did not have the actual insurance policies. (See Exhibit C, Crider Dep., p. 98, ll. 3-8)

26. Nason did not pay the premiums on the insurance. (Id. at p. 129, ll. 13-15)

27. Nason did not have access to the checkbook. (Id. at p. 129, ll. 16-18)

28. Crider had never sat down and looked through the alleged ledger sheets in their entirety. (Id. at p. 65, ll. 11-20)

29. Crider did not have occasion to sit down with Nason to go over any of the alleged ledgers before Nason stopped working. (Id. at p. 64, ll. 11-14)

30. The first of Nason's alleged ledger sheets is dated June 30, 1984 and is entitled "Prepaid Insurance." The following is Line 18 from this ledger sheet:

"18.  Utica Mutual Ins Co.  LU 6406P  Johnson  Umbrella Liability Policy  1000000  2-3-84  1yr  2-3-85  750  7/12  437.50"
(See Exhibit A, Heifetz Aff., Tab 4, l. 18)

31. The second of Nason's alleged ledger sheets is dated June 30, 1984 and entitled "Insurance." The following is Line15 from this ledger sheet:

"15.  6-30-84  4531-          Umbrella  750  920          1101  1760          1760"
(Id. at Tab 5, l. 15)

32. Kleenit also produced a poor-quality copy of a duplicate check from its files numbered 2193 and dated 6/27/84. (Id. at Tab 6, copy of the copy of the duplicate check numbered 2193, dated June 27, 1984)

33. This check drafted to the order of Henrick F. Johnson in the amount of $750.00. (Id.)

34. The words "umbrella policy" are noted in the memo section of the check. (Id.)

35. Kleenit later produced a very poor-quality copy that purports to be a page from Kleenit's voucher register purportedly kept at Kleenit offices in Ayer, Massachusetts; the page had the following entry:

"11. []193        Henrick F. Johnson        6/27/04                    750"

(See Exhibit A, Heifetz Affidavit, Tab 7, copy of the copy of the purported voucher register kept by Kleenit)

36. Kleenit claims these documents prove that Utica issued a $1,000,000 umbrella liability policy, and renewal policy, effective from 2/3/84 to 2/3/85. (Id. at Tab 2)

37. Kleenit originally made no clear allegation that the alleged umbrella policy covered the policy year from 1983 to 1984. (Id. at Tab 1)

38. It was not until a letter from Kleenit's attorney dated April 14, 2006 that Kleenit alleged the existence of umbrella liability coverage from February 3, 1983 to February 3, 1984. (Id. at Tab 2)

39. To "prove" the extra year of this coverage, Kleenit produced a poor-quality copy of Nason's alleged ledger sheet dated July 2, 1983 entitled "Prepaid Insurance." The following is Line 17 from this ledger sheet:

"17. Utica Mutual  LU 6406P  Johnson  Umbrella liability policy  1000000  2-3-83  1yr  2-3-84  750  7/12  437.50"

(See Exhibit A, Heifetz Affidavit, Tab 8, Prepaid Insurance Ledger Sheet, dated July 2, 1983)

40. Kleenit also produced a copy of a duplicate check number 18425 dated March 2, 1983, drafted to the order of Henrick F. Johnson in the amount of $750.00. (Id. at Tab 9, copy of the copy of the duplicate check numbered 18425, dated March 2, 1983)

41. Kleenit claims these two documents prove that Utica issued a $1,000,000 umbrella liability policy effective from February 3, 1983 to February 3, 1984. (Id. at Tab 2)

42. Crider was not aware of any other policies bought by Kleenit from the 1960s to 1994 for its insurance program besides property/casualty, automobile and worker's compensation. (See Exhibit C, Crider Dep., p. 78, ll. 16-24, p. 79, ll. 1-14)

43. Kleenit relied solely on Nason's alleged records for the existence of insurance policies prior to bringing the instant lawsuit. (Id. at p. 79, ll. 22-24, p. 80, ll. 1-5)

44. Kleenit did not rely on any independent records. (Id. at p. 80, ll. 6-8)

45. Crider did not look through any of Kleenit's checks. (Id. at p. 80, ll. 9-11)

46. Kleenit received all insurance policies at its office in Ayer. (Id. at p. 97, ll. 21-24, p. 98, ll. 1-2)

47. Kleenit kept hard copies of its insurance policies in a file cabinet in its offices in Ayer for five or six years. (Id. at p. 98, ll. 4- 13)

48. When Kleenit's files became full, Kleenit's file clerk "let them go". (Id. at p. 98, ll. 23-24; p. 100, ll. 7-9)

49. From the time he started at Kleenit, Crider was the individual who would pay the insurance bills. (See Exhibit C, Crider Dep., p. 58, ll. 5-7)

50. Kleenit had a voucher register record from which Nason would transfer to his general ledger. (Id. at p. 83, ll. 5-9)

51. This voucher register was kept for a period of five to seven years then thrown away. (Id. at p. 83, ll. 13-20)

52. Kleenit obtained insurance with Graphic Arts Mutual through Henrick Johnson, in Lowell, MA. (Id. at p. 74, ll. 16-24)

53. During its search for policies, Kleenit contacted its insurance agents. Some of Kleenit's former insurance agents lost older insurance policy records. (See Exhibit D, Affidavit of Keith Crider ("Crider Aff."), ¶¶ 8 and 9 )

54. It was extremely difficult and burdensome for Kleenit to reconstruct its insurance records, which possibly may have been archived and/or lost. (Id. at ¶ 8)

55. Kleenit contacted former agents to recover its records. (Id. at ¶ 8)

Respectfully submitted,

UTICA NATIONAL INSURANCE GROUP,
Defendant

By Its Attorneys:

_____
Richard E. Heifetz        BBO #229000
Barbara M. Callahan    BBO #651964
Danielle M. Maloney    BBO #647527
TUCKER, HEIFETZ & SALTZMAN, LLP
100 Franklin Street
Boston, MA 02110
617-557-9696
Dated: August 24, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of August 2006, I filed a copy of the foregoing by electronic means with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification to the following: Joseph S. Berman, Esq., Berman & Dowell, 210 Commercial Street, Boston, MA 02109 and Donald P. Nagle, Esq., Law Office of Donald P. Nagle, P.C., 5 Main Street, Plymouth, MA 02360.

_____
Richard E. Heifetz