*EXHIBIT  1*

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

**Certified Mail Return**
**Receipt Requested No. 7000 1670 0007 7745 3619**

Utica National Insurance Group
401 Edgewater Place – Suite 300
Wakefield, Massachusetts 01880-6255
Attention: Claims Manager/Department

RE:    NOTICE OF CLAIM
       DEMAND FOR DEFENSE/COVERAGE
       Insured: Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
       Claim Type: Physical Loss/Property Damage/Hazardous Materials
       **Location: 293 and 295 Main Street, Acton, Massachusetts**
       Policy: All Risks/Special Multi-Peril, Policy No. FMP 1946 (1982 – 1985)
             Umbrella Liability, Policy No. LV 6406 (1982-1985)

Dear Sir or Madam:

Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 293 and 295 Main Street, Acton, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Utica National Insurance Group (the "Company").

The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. FMP 1946 ("SMP Policy"), and an Umbrella Policy, Policy No. LV 6406 ("Umbrella Policy") (collectively "Policies") between approximately October 1, 1982 and October 1, 1985. (Attached as Tab 1 is a copy of Kleenit's "Prepaid Insurance" ledger from June 1984 proving the existence of the Policies. Attached as Tab 2 are copies of the types of SMP Policy and Umbrella Policy that Kleenit believes were issued to it by the Company.)

Kleenit hereby requests defense and coverage for the foregoing claim under the Policies. In addition, Kleenit requests that the Company approve the risk assessment, soil and

522488_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 2

groundwater assessment, and other response actions that are discussed herein. Kleenit also requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and any endorsements or riders. If the Company contends that the Policies, Declaration Page(s), endorsements and/or riders do not exist, the Company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame.

**Please respond in writing to me within 30 days of the date of this Notice of Claim.**

<u>**Background of Hazardous Materials Release and Property and Building Damage**</u>

Since approximately 1962 Kleenit has leased building space and operated a dry cleaning business at 293 and 295 Main Street, Acton, Massachusetts ("Property"), which is located within the Acton Plaza shopping center. By letter dated August 14, 2002 Kleenit's landlord, E&A Northeast Limited Partnership ("E&A"), notified Kleenit of a release of hazardous materials beneath the Property and demanded that Kleenit cleanup the release pursuant to the Massachusetts "Superfund" statute, General Laws Chapter 21E, and its implementing regulations, 310 CMR 40.0000. (A copy of E&A's letter is attached as <u>Tab 3</u>) E&A claimed that vapors from the release could potentially pose a human health risk to employees, tenants and customers at the Property and Acton Plaza. E&A demanded that, <u>inter alia</u>, Kleenit report the release of perchloroethylene ("PCE") to the Massachusetts Department of Environmental Protection ("DEP") as required under Chapter 21E and 310 CMR 40.0000, by October 29, 2002. E&A also demanded that Kleenit take actions to respond to the release. Based upon DEP's practice under 310 CMR 40.0000, Kleenit expects that DEP will shortly issue a Notice of Responsibility ("NOR") to Kleenit and/or E&A under G.L. c. 21E, ordering Kleenit and/or E&A to assess and/or remediate the alleged release of hazardous materials.

In response to E&A's demand and Kleenit's potential obligations under Chapter 21E, 310 CMR 40.0000 and the lease, Kleenit has obtained proposals from two experienced environmental consultants to evaluate the potential human health risks from vapors generated by the release of PCE and to respond to the release in accordance with Chapter 21E and 310 CMR 40.0000. Enclosed herewith as <u>Tab 4</u> is a proposal from Risk Management Incorporated ("RMI"), dated September 3, 2002, pertaining to the human health risk assessment of the vapors. I also enclose as <u>Tab 5</u> a proposal from Coler & Colantonio ("C&C"), dated September 5, 2002, pertaining to the assessment of soil and groundwater conditions at the Property. On behalf of Kleenit we request that the Company approve forthwith the proposed scope of services for RMI and C&C as set forth in <u>Tabs 4</u> and <u>5</u>.

In addition, Kleenit requests the Company's approval to install an interior wall within part of its leased space, so that any potential vapors from the release of PCE can be sealed from other leased space within the building. Kleenit believes that it may be required to perform

522488_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 3

additional response actions in the future pertaining to the release in accordance with Chapter
21E, 310 CMR 40.0000 and the lease, and a Notice of Responsibility ("NON") that Kleenit
expects will be issued shortly to Kleenit and/or E&A by DEP under the statute and regulations.
Kleenit requests that the Company agree to pay for all such future response actions. In addition,
Kleenit requests that the Company agree to pay Kleenit's legal expenses in defense of E&A's
demand and the requirements and responsibilities imposed by DEP, Chapter 21E and/or 310
CMR 40.0000.

### Request for Insurance Defense and Coverage

Based upon the foregoing, Kleenit requests that the Company provide defense and
indemnification under the Policies for all matters related to or arising out of DEP's NOR and
Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for
damage to the building on the Insured's Property under Section I, Parts I and II, and for property
damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's
Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against
"all risks of physical loss" to buildings and additions and fixtures thereto, and personal property,
and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further,
coverage for property damage to others and "Off-Premises" coverage, with no applicable
exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the
SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure
against a fortuitous event, casualty or accident, such as the release of contaminants discussed in
DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass. App.
Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the
discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk &
Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk"
policy for insured's loss caused by the discharge and migration of water from a broken pipe *at
the premises adjacent to the insured's property*). "Moreover, such fortuities are insured against
even if they are not specified in the policy." Mellon at 934. Although the Company in the
present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it
chose not to do so. As a result, the Company is obligated to provide coverage as requested
herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss
which Kleenit is legally obligated to pay in the present matter as damages because of property
damage or personal injury, including the defense of the claims discussed herein. The Pollution
Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is
obligated to pay as compensatory damages because of property damage or bodily injury, and to
reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 4

and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no
applicable exclusions under the Policy.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and
groundwater by the release of hazardous material involves property damage" and loss. Hazen
Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In
addition, insurance coverage is triggered by an enforcement letter issued by a government
agency to an insured asserting that a release of contamination has occurred, such as the NOR and
Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the
Company should provide defense and indemnification under the Policies for all claims arising
out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the
standpoint of the Insured, and according to DEP's claim, involves off-site contamination and/or
impacts property and groundwater of another person if remediation is not undertaken, no
exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts
consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning
up environmental contamination which presents a threat to, or demonstrated contamination of,
property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co.,
Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will
be liable not only to defend an insured against an NOR but also to indemnify the insured for all
cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of
off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854
(1998) (An insurer's liability for all response costs is triggered "even if the contaminating
substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency
Fund, 424 Mass. 275 (1997).

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by
DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g.,
Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other
parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his
own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in
the Policies period would be rendered ineffective by Rubenstein, supra., and Trustees of Tufts
Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage
may be triggered during many time periods and not just when the damage manifests itself. As
stated in Trustees of Tufts University,

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 5

[T]he three most common 'trigger theories' include: the exposure trigger (policies in effect during years claimant's property tortiously exposed to hazardous material triggered), the continuous (or multiple) trigger (property damage occurs during each year from the time of first hazardous exposure through manifestation), and the injury-in-fact (or actual injury) trigger requires inquiry into when property damage actually occurred).

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear that the loss and damage occurred many years ago, during the Policies period. As a result, coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982) and Camp, Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, regardless of whether the insurer acted in bad faith or unreasonably. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584 (2002).

**Please respond to me in writing within 30 days of the date of this Notice of Claim.**

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc:    Kleenit, Inc. (with enclosures)

522488_1

# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Robert A. Fasanella
Direct Dial: (617) 330-7018
E-mail: rfasanella@rubinrudman.com

September 25, 2002

**Certified Mail Return**
**Receipt Requested No.  7000 1670 0007 7745 3695**

Utica National Insurance Group
401 Edgewater Place – Suite 300
Wakefield, Massachusetts  01880-6255
Attention:  Claims Manager/Department

RE:    NOTICE OF CLAIM
        DEMAND FOR DEFENSE/COVERAGE
        Insured:  Kleenit, Inc./Sudz-It/Duds Cleaners/Care Cleaners
        Claim Type:  Physical Loss/Property Damage/Hazardous Materials
        **Location:  28 Central Square, Chelmsford, Massachusetts**
        Policy:  All Risks/Special Multi-Peril, Policy No. FMP 1946 (1982 – 1985)
              Umbrella Liability, Policy No. LV 6406 (1982-1985)

Dear Sir or Madam:

Please be advised that this firm represents your insured, Kleenit, Inc. (a.k.a. Sudz-It, Duds Cleaners and/or Care Cleaners) (collectively "Insured" or "Kleenit"), regarding its notice of claim and request for defense and indemnification pertaining to a release of hazardous materials, building and property damage, and third party claims at 28 Central Square, Chelmsford, Massachusetts ("Property"), and at locations outside of the Property's boundaries. Please report this claim to the appropriate representatives at Utica National Insurance Group (the "Company").

The Company provided coverage to the Insured at the Property under an "All Risk", Special Multi-Peril Policy, Policy No. FMP 1946 ("SMP Policy"), and an Umbrella Policy, Policy No. LV 6406 ("Umbrella Policy") (collectively "Policies") between approximately October 1, 1982 and October 1, 1985. (Attached as Tab 1 is a copy of Kleenit's "Prepaid Insurance" ledger from June 1984 proving the existence of the Policies. Attached as Tab 2 are copies of the types of SMP Policy and Umbrella Policy that Kleenit believes were issued to it by the Company.)

Kleenit hereby requests defense and coverage for the foregoing claim under the Policies.

522162_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 2

In addition, Kleenit requests that the Company approve the risk assessment, soil and groundwater assessment, and other response actions that are discussed herein. Kleenit also requests the Company to provide it with a complete copy of the Policies, Declaration Page(s) and any endorsements or riders. If the Company contends that the Policies, Declaration Page(s), endorsements and/or riders do not exist, the Company should fully explain the basis of its contention and also provide a copy of its "specimen policies" issued during the relevant time frame.

**Please respond in writing to me within 30 days of the date of this Notice of Claim.**

**Background of Hazardous Materials Release and Property and Building Damage**

On or about January 28, 2001 the Massachusetts Department of Environmental Protection ("DEP") issued to Kleenit a "Release Notification – Notice of Responsibility – Notice of Need to Conduct Immediate Response Actions" ("Notice of Responsibility" or "NOR"), claiming that Kleenit was a Potentially Responsible Party ("PRP") under Massachusetts General Laws Chapter 21E for the release of oil and/or hazardous materials at the Property. (Attached at Tab 3 is a copy of the NOR). DEP claimed that Kleenit was responsible for the release of volatile organic compounds ("VOCs") at the Property and that the VOCs had migrated off of the Property and were detected at locations outside of the Property's boundaries.

The Property was first used as a dry cleaning facility in 1960 and the septic system, which is considered a potential source of contamination, was in use until approximately 1990. Based upon the migration and extent of contamination claimed by DEP, the release of hazardous materials and the property damage likely occurred many years ago and within the Policy period. The release of hazardous materials such as VOCs may have resulted from the sudden and accidental releases from the malfunctions of older equipment, spills and/or inadvertent releases from the disposal of perchloroethylene ("PCE") waste products in containers or bags discarded in former dumpsters stored on-site for routine pick-up and disposal prior to the enactment of G.L. c. 21E, which, along with other laws, required licensed hazardous waste contractors to pick-up, manifest and dispose of hazardous wastes at licensed facilities.

DEP further asserted in the NOR that the VOCs at the Property "extend[ed] to the 34 Central Square property and Beaver Brook." (See NOR, p. 1, emphasis added). The NOR stated that "DEP has determined that a Condition of Substantial Release Migration ("SRM"), as described in 310 CMR 40.0006, exists at the subject site." DEP has incurred response action costs related to the release that DEP may recover under M.G.L. c. 21E. If Kleenit did not perform the Immediate Response Actions ("IRAs") ordered by DEP, the NOR stated that DEP would perform such actions and "seek to recover its costs and/or may initiate other appropriate enforcement actions to ensure that such response actions are conducted."

522162_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 3

On June 19, 2001 DEP issued a "Notice of Need to Conduct Immediate Response Actions" ("Notice to Conduct IRAs") to Kleenit, claiming that "contaminated groundwater at the subject site is discharging to Beaver Brook." (Attached at Tab 4 is a copy of the Notice to Conduct IRAs.) Beaver Brook is located outside of the Property's boundaries. The Notice to Conduct IRAs stated that,

"[C]hlorinated volatile organic compounds ("CVOCs") have been detected in a sump water sample collected from 34 Central Square in Chelmsford, which operates a day care facility. In addition, CVOCs in indoor air at this location [i.e., at 34 Central Square, not the Property] were also detected. This condition constitutes a Critical Exposure Pathway ("CEP") in accordance with 310 CMR 40.0006. Information available to DEP indicates that a releases [sic] of hazardous material (primarily CVOCs) has occurred at the site which extends to the 34 Central Square property and Beaver Brook, and requires the initiation of one or more IRAs as described in 310 CMR 40.0410." (emphasis and brackets added)

The NOR and Notice to Conduct IRAs required Kleenit to take certain actions to address the condition of Substantial Release Migration ("SRM") and the Critical Exposure Pathway ("CEP") described by DEP. Kleenit has at the outset retained environmental scientists, including a Licensed Site Professional ("LSP"), and environmental legal counsel to initiate its response and defense to DEP's NOR and Notice to Conduct IRAs. Kleenit and its LSP have prepared and filed with DEP certain preliminary environmental reports required by DEP. Kleenit has taken these efforts to address contamination at the Property, the alleged Substantial Release Migration off of the Property, and the potential indoor air impacts at the building located at 34 Central Square, which is beyond the Property's boundaries.

As of this date, Kleenit is required to complete additional requirements under DEP's NOR and Notice to Conduct IRAs and under Chapter 21E and the regulations promulgated thereunder. Kleenit has not resolved its alleged responsibility and liability for other potential damages or costs pertaining to the alleged release at or from the Property, 34 Central Square, Beaver Brook, or any other off-site locations. Kleenit has had discussions with representatives of other PRPs identified by DEP and to whom DEP has sent separate Notices of Responsibility, namely, Mobil Business Resources Corporation ("ExxonMobil") and Energy North, Inc. ("Energy North"), addressing potential liability, contribution and other issues related to the claims set forth in the NOR and Notice to Conduct IRAs.

Although Kleenit presently believes that it is minimally responsible, if at all, for the contamination alleged in EPA's NOR and Notice to Conduct IRA's, the Company should be aware that ExxonMobil has asserted that Kleenit should contribute a one-third share of ExxonMobil's past and future response action costs. ExxonMobil has claimed that its past and projected future costs total more than $250,000. As of this date, Kleenit has not agreed to pay

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 4

any of ExxonMobil's alleged costs.

**Request for Insurance Defense and Coverage**

Based upon the foregoing, Kleenit requests that the Company provide defense and indemnification under the Policies for all matters related to or arising out of DEP's NOR and Notice to Conduct IRAs. The SMP Policy in effect at all relevant times provided coverage for damage to the building on the Insured's Property under Section I, Parts I and II, and for property damage liability on- and off-site under Section I, Parts IV and/or V. Damage to the Kleenit's Property was covered through, inter alia, Parts I and II of the SMP Policy, which insured against "all risks of physical loss" to buildings and additions and fixtures thereto, and personal property, and did not contain a so-called "pollution exclusion" or any other applicable exclusion. Further, coverage for property damage to others and "Off-Premises" coverage, with no applicable exclusions, existed under, inter alia, Parts IV and/or V under the Extensions of Coverage of the SMP Policy.

The "all risk" SMP Policy issued by the Company to Kleenit was intended to insure against a fortuitous event, casualty or accident, such as the release of contaminants discussed in DEP's NOR and Notice to Conduct IRAs. Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass. App. Ct. 933 (1984) (coverage provided under an "all risk" policy for damage and loss caused by the discharge and migration of water from a broken pipe); Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762 (1974) (coverage provided under an "all risk" policy for insured's loss caused by the discharge and migration of water from a broken pipe *at the premises adjacent to the insured's property*). "Moreover, such fortuities are insured against even if they are not specified in the policy." Mellon at 934. Although the Company in the present case "ha[d] the option to exclude from coverage certain risks" (see Mellon at 934), it chose not to do so. As a result, the Company is obligated to provide coverage as requested herein.

The Umbrella Policy obligates the Company to pay on behalf of Kleenit the ultimate loss which Kleenit is legally obligated to pay in the present matter as damages because of property damage or personal injury, including the defense of the claims discussed herein. The Pollution Policy similarly obligates the Company to pay on behalf of Kleenit all sums which Kleenit is obligated to pay as compensatory damages because of property damage or bodily injury, and to reimburse Kleenit for cleanup costs incurred to comply with the requirements of DEP's NOR and Notice to Conduct IRAs. All of these conditions are triggered here, and there are no applicable exclusions under the Policy.

The Massachusetts Supreme Judicial Court has held that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage" and loss. Hazen Paper Co. v. U.S. Fidelity and Guar. Co., 407 Mass. 689, 698 (1990) (emphasis added). In

522162_1

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 5

addition, insurance coverage is triggered by an enforcement letter issued by a government
agency to an insured asserting that a release of contamination has occurred, such as the NOR and
Notice to Conduct IRAs issued by DEP to Kleenit in this instance. Id. Accordingly, the
Company should provide defense and indemnification under the Policies for all claims arising
out of DEP's NOR and Notice to Conduct IRAs.

Because the property damage at issue here was neither expected nor intended from the
standpoint of the Insured, and, according to DEP's claim, involves off-site contamination and/or
impacts property and groundwater of another person if remediation is not undertaken, no
exclusions, including the "owned property" exclusion, would apply. Massachusetts Courts
consistently hold that the "owned property exclusion" does not bar recovery of costs of cleaning
up environmental contamination which presents a threat to, or demonstrated contamination of,
property of others and groundwater. See, e.g., Wasserman v. Commerce Insurance Co.,
Middlesex Superior Court C.A. No. 01-0619(B) (Sanders, J.) (July 9, 2002) ("[A]n insurer will
be liable not only to defend an insured against an NOR but also to indemnify the insured for all
cleanup costs, even with an 'owned property' exclusion, so long as there is a significant threat of
off-site migration."); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 854
(1998) (An insurer's liability for all response costs is triggered "even if the contaminating
substances are solely on the insured's land."); Hakim v. Massachusetts Insurer's Insolvency
Fund, 424 Mass. 275 (1997).

Kleenit's defense in this case shall also include efforts to pursue any PRPs identified by
DEP in its NOR and Notice to Conduct IRAs, and any fees included therefor. See, e.g.,
Wasserman at p. 15 ("The NOR placed the responsibility on [the insured] to pursue the other
parties so that [the insured's] attempts to get their contribution so as to eliminate or diminish his
own liability to DEP is thus inextricably intertwined with his defense to the NOR.")

Any purported arguments that the property damage and loss in this case did not occur in
the Policies period would be rendered ineffective by Rubenstein, supra, and Trustees of Tufts
Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), which hold that insurance coverage
may be triggered during many time periods and not just when the damage manifests itself. As
stated in Trustees of Tufts University,

[T]he three most common 'trigger theories' include: the exposure trigger (policies in
effect during years claimant's property tortiously exposed to hazardous material
triggered), the continuous (or multiple) trigger (property damage occurs during each year
from the time of first hazardous exposure through manifestation), and the injury-in-fact
(or actual injury) trigger requires inquiry into when property damage actually occurred).

415 Mass. at 854, n.9. In Klennit's case, DEP's NOR and Notice to Conduct IRAs make clear
that the loss and damage occurred many years ago, during the Policies period. As a result,

RUBIN AND RUDMAN LLP

Utica National Insurance Group, Claims Manager/Department
September 25, 2002
Page 6

coverage is triggered under the Policies.

Finally, if there is any ambiguity in the Policies provisions or terms, the ambiguities are construed against the insurer in favor of the policyholder. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982) and Camp, Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass. App. Ct. 318, 326 (1991).

In the present matter, Kleenit requires the assistance of environmental consultants and environmental counsel to provide a defense to the claims asserted by DEP, the PRPs, and other third parties. Please be advised that if the Company should delay or deny its defense or coverage obligations under the Policies, Kleenit will consider bringing a declaratory judgment action to seek full defense and coverage pursuant to the Policies and Massachusetts law. As you may be aware, the Supreme Judicial Court has held that an insured who is put to the expense of establishing an insurer's duty to defend under a policy through a declaratory judgment action is entitled to recover attorney's fees in prosecuting that action, regardless of whether the insurer acted in bad faith or unreasonably. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584 (2002).

**Please respond to me in writing within 30 days of the date of this Notice of Claim.**

Please contact me if you need to discuss this claim. Thank you for your cooperation and attention to this matter.

Very truly yours,

Robert A. Fasanella

Peter J. Feuerbach

RAF/PJF/jem
Enclosures
cc:    Kleenit, Inc. (with enclosures)

522162_1

*EXHIBIT  2*

LAW OFFICE OF DONALD P. NAGLE, PC

5 MAIN STREET EXTENSION, SUITE 300

PLYMOUTH, MASSACHUSETTS 02360

TEL: 508-732-8970  FAX: 508-732-8971

April 14, 2006

**VIA FACSIMILE & FIRST CLASS MAIL**

Richard E. Heifetz, Esq.
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA  02108

**Re:**   **Kleenit v. Sentry Insurance Company, et al**
        **Civil Action No. 04-10351-NG**

Dear Rick:

Your office is now in receipt of copied documents - or has had an opportunity to review all documents - Kleenit is required to produce per Judge Collings March 16, 2006 Order. Kleenit has also produced additional documents you have requested.

As indicated in previous email communication, these documents include W-2's, quarterly reports, cancelled payroll checks, cancelled expense checks to employees, additional ledger sheets, and checks to insurance carriers and agencies. Most of these documents were contained in boxes found in a "cold storage" area in the basement of the Ayer facility, which was converted to a different use in December 2005, immediately before the December 2005 mediation session in Worcester. The documents produced are the result of a complete search of the contents of the discovered boxes.

You will recall that during the mediation Kleenit presented a check No. 2193, dated June 27, 1984. This check, which Frank Murphy found during his initial search of the newly discovered boxes, supports the existence of Utica policy No. LU 6406. This policy is referenced in ledger entries previously provided to you, covering the period of February 3, 1984 to February 3, 1985. The Check is made out to Henrick F. Johnson of E.J. Wells Insurance Agency, which sold Utica insurance to Kleenit. As indicated in the ledger entry, this policy provides $1 million per occurrence.

This search has also revealed the existence of Utica policy coverage from February 3, 1983 through February 3, 1984. Check No. 18425 is dated March 2, 1983 and, as in the June 27, 1984 check, was made out to Henrick F. Johnson. This check, which appears as the first of three checks copied and attached as **Exhibit A**, is also recorded as a ledger entry on line 17 of a ledger sheet for prepaid insurance, attached as **Exhibit B**. The ledger entry indicates in pertinent part: "Utica Mutual ...LU6406 ...Johnson... Umbrella liability policy...1000000...2-3-83...1yr...2-3-84." Clearly, Kleenit purchased a $1 million umbrella liability policy for the year February 3, 1983

WWW.DPNAGLELAW.COM

EMAIL: NAGLE@DPNAGLELAW.COM

APR-14-2006(FRI) 14:09     Law Office Of Donald P. Nagle PC     (FAX)15087328971          P. 003/0  /

LAW OFFICE OF DONALD P. NAGLE, PC

Richard E. Heifetz, Esq.
April 14, 2006
Page 2

though February 3, 1984.  This information coincides with the check and ledger
information provided for the subsequent policy year.

    Evidence of occurrences at the Wayland facility is documented through the
Affidavit of Robert Kinney.  As a result of this new information, Kleenit is increasing its
total demand for coverage to $2.7 million.

    Please contact this office with any questions.

                    Very truly yours,

                    Donald P. Nagle

Enc.
cc:  counsel of record
     Frank Murphy
     Robert Fasanella, Esq.

# EXHIBIT "A"

APR-14-2006(FRI) 14:10   Law Office Of Donald P. Nagle PC   (FAX)15087328971   P.006/0(0)70

# EXHIBIT "B"

APR-14-2006(FRI) 14:09     Law Office Of Donald P. Nagle PC     (FAX)15087328971     P. 005/0_

**KLEENIT, INC.**
BUBBLE IT LAUNDERAMA
CARE CLEANERS
DUDS CLEANERS
44 PARK STREET   AYER, MASS.   01432

| DATE | INVOICE | AMOUNT |
|------|---------|--------|

18425

PAY _____

| CHECK NO. | TO THE ORDER OF | DATE | CHECK AMOUNT |
|-----------|-----------------|------|--------------|
| 18425 | | 3-2-03 | |

UNION NATIONAL BANK
AYER, MASSACHUSETTS

*Keith C. Grider*

⑈011300456⑈   13 2026 2⑈     ⑈000007 5000⑈

---

**KLEENIT, INC.**
BUBBLE IT LAUNDERAMA
CARE CLEANERS
DUDS CLEANERS
44 PARK STREET   AYER, MASS.   01432

| DATE | INVOICE | AMOUNT |
|------|---------|--------|
| N.E.G. MAR 11 1503 | | |

18496

PAY _____

| CHECK NO. | TO THE ORDER OF | DATE | CHECK AMOUNT |
|-----------|-----------------|------|--------------|
| 18496 | | 3-2-0 | |

UNION NATIONAL BANK
AYER, MASSACHUSETTS

*Keith C. Grider*

⑈011300456⑈   13 2026 2⑈     ⑈0000 28 2900⑈

---

**KLEENIT, INC.**
BUBBLE IT LAUNDERAMA
CARE CLEANERS
DUDS CLEANERS
44 PARK STREET   AYER, MASS.   01432

| DATE | INVOICE | AMOUNT |
|------|---------|--------|
| 04 | Accunt | |

18539

PAY _____

| CHECK NO. | TO THE ORDER OF | DATE | CHECK AMOUNT |
|-----------|-----------------|------|--------------|
| 18539 | E. J. Wells Ins. Agency | 3/14/0 | |
| | Main St | | |
| | Groton, Mass  01450 | | |

UNION NATIONAL BANK
AYER, MASSACHUSETTS

*Keith Grider*

⑈011300456⑈   13 2026 2⑈     ⑈0000400000⑈

APR-14-2006(FRI) 14:09    Law Office Of Donald P. Nagle PC    (FAX)15087328971    P. 001/0ₒ/0

**DONALD P. NAGLE, PC**

ATTORNEY AT LAW

5 MAIN STREET EXTENSION, SUITE 300

PLYMOUTH, MASSACHUSETTS 02360

TEL: 508-732-8970  FAX: 508-732-8971

## FACSIMILE COVER SHEET

**To:**    Richard E. Heifetz, Esq.        **From:**  Donald P. Nagle

**Fax:**    (617) 227-9191          **Pages:**  Seven (7) Pages

**Phone:**                  **Date:**
                                  April 14, 2006

**Re:**                   **CC:**

☐ **Urgent**    ☐ **For Review** ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments**:  Please see the attached.  Thank you.  DPN

NOTICE: THIS TRANSMITTAL IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IT MAY CONTAIN INFORMATION WHICH IS PRIVILEGED AND/OR CONFIDENTIAL UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT OR SUCH RECIPIENT'S EMPLOYEE OR AGENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, COPY OR DISCOLSURE OF THIS COMMUNCICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECIEVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT 508 732-8970.

WWW.DPNAGLELAW.COM

EMAIL: NAGLE@DPNAGLELAW.COM

*EXHIBIT  3*



Kristen H. Martin                                       P.O. Box 6568, Utica, New York 13504
Staff Attorney                                              Telephone: (315) 734-2917
                                                                      Fax: (315) 734-2198

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

<u>PARTIAL DISCLAIMER OF COVERAGE AND RESERVATION OF RIGHTS</u>

October 28, 2002

CRR <u>7001 0360 0001 9522 4233</u>
Robert A. Fananella, Esq.
Rubin and Rudman, LLP
Counsellors at Law
50 Rowes Wharf
Boston, MA 02110-3319

# DROP MAIL

CRR <u>7001 0360 0001 9522 4110</u>
Mr. Kevin Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

Re:    Utica File No:    711578
          293 and 295 Main Street, Acton, Massachusetts

Dear Sirs:

## ACKNOWLEDGEMENT

This will acknowledge the receipt of your letter dated September 25, 2002,
advising us of a claim and requesting defense and indemnification relating to a
release of hazardous materials that caused building and property damage at 293
and 295 Main Street, Acton, Massachusetts.

## BACKGROUND

According to the information provided, on or about August 14, 2002,
Kleenit's landlord, E & A Northeast Limited Partnership, notified Kleenit of a
release of hazardous materials beneath the property at the above referenced
location.  E & A is claiming that the vapors from the release could potentially
pose a health risk to employees, tenants and customers at the property.  Kleenit

Re: Utica File No: 711577
   28 Central Square, Chelmsford, MA
                                                    2

the offsite migration is impacting indoor air at a building located at 34 Central Square.

It is our understanding that the property was first used as a dry cleaning facility in 1960 and that the septic system, which is being considered as a potential source of contamination, was used until 1990. Your letter claims that the release occurred many years ago within our policy period.

It is our understanding that you are seeking response costs, including costs for the environmental scientist retained by you. You further state that Exxon Mobil, another potentially responsible party, is seeking contribution from Kleenit for its share of response costs.

## YOUR POLICY

Kleenit, Inc. was insured by Graphic Arts Mutual under FMP 1946 for the period 10/01/79 – 10/1/82. The property damage policy limits were $100,000 per occurrence / $100,000 in the aggregate. Our archive search has not located any other policy issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance Group. If you are in possession of any documents which would establish the existence of a 1982 – 1985 policy and/or the umbrella policy referenced in your letter please forward said documents to my attention. Upon receipt of the documents, I will address any coverage that those policies may provide. We reserve our rights to deny coverage for defense and indemnification under all policies issued by Utica or a related company and further assert that you have the burden of producing any other policy upon which you claim coverage.

Your primary policy, a Comprehensive General Liability Policy, (6395a-x-c Ed. 1-73) contained the following language:

I.     COVERAGE A-BODILY INJURY LIABILITY

       COVERAGE B-PROPERTY DAMAGE LIABILITY

       The company will pay on behalf of the insured all sums, which the insured shall become legally obligated to pay as damages because of

       A.     bodily injury or

       B.     property damage

       to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are

Re: Utica File No:  711577
  28 Central Square, Chelmsford, MA

3

> groundless, false or fraudulent, and may make such investigation
> and settlement of any claim or suit as it deems expedient, but the
> company shall not be obligated to pay any claim or judgment or to
> defend any suit after the applicable limit of the company's liability
> has been exhausted by payment of judgements or settlements.

The policy also defines the terms "occurrence" and " property damage." Those
terms are defined as:

> "occurrence" means an accident including continuous or repeated
> exposure to conditions, which results in bodily injury or property damage
> neither expected nor intended from the standpoint of the insured;

> "property damage" means (1) physical injury to or destruction of tangible
> property which occurs during the policy period, including the loss of use
> thereof at any time resulting therefrom, or (2) loss of use of tangible
> property which has not been physically injured or destroyed provided such
> loss of use is caused by an occurrence during the policy period;

Graphic Arts Mutual expressly reserves the rights to disclaim coverage for
defense and indemnification because the facts known to date do not establish
that there has been an "occurrence" which has resulted in "property damage" as
defined by the policy.  As the Property has been used as a dry cleaning facility
for over 40 years it is possible that the contamination did not occur during the
three years Graphic Arts Mutual insured Kleenit.  Pending a determination as to
when the contamination occurred, we reserve our rights to disclaim coverage at a
later date if, and when, such a determination is made.

Furthermore as no suit has been commenced, no duty to defend had been
triggered.  As such, we expressly disclaim coverage for defense costs relating to
this matter

Your policy also contained the following exclusions:

This policy does not apply:

> (f)    to bodily injury or property damage arising out of the discharge,
>        dispersal, release or escape of smoke, vapors, soot, fumes, acids,
>        alkalis, toxic chemicals, liquids or gases, waste materials or other
>        irritants, contaminants or pollutants into or upon land, the
>        atmosphere or any water course or body of water; but this
>        exclusion does not apply if such discharge, dispersal, release or
>        escape is sudden and accidental:

Graphic Arts Mutual expressly reserves the rights to disclaim coverage relating to
this matter on the grounds that the release of the contaminants was neither

Re: Utica File No:   711577
    28 Central Square, Chelmsford, MA

4

sudden or accidental and therefore does not fall within the savings clause of exclusion f.

    (k)    to property damage to

        (1)    property owned or occupied by or rented to the insured.

        (2)    property used by the insured, or

        (3)    property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control:

the insured is for any purpose exercising physical control: but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured:

    Graphic Arts Mutual expressly reserves the rights to disclaim coverage for any damage to the property owned or occupied by or rented by Kleenit.  To the extent that there is any damage to property owned by a third party we will investigate and determine whether it is covered by the policy.

    The policy issued by Graphic Arts Mutual contains the following conditions.

## CONDITIONS

**4.**  Insured's Duties in the Event of Occurrence, Claim or Suit:

**(a)** In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

**(b)** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**(c)** The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who

Re: Utica File No:   711577
28 Central Square, Chelmsford, MA

5

may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

It is our understanding that you first became aware of this claim on January 28, 2001.  We did not receive notice of this claim until sometime on or about September 25, 2002.

In addition to an almost two year delay in providing notice, Kleenit also assumed obligations, incurred expense, and/or made voluntary payments by retaining an environmental scientist, legal counsel and negotiating with the DEP.

As a result of the late notice and undertaking of voluntary payments, Graphic Arts Mutual expressly disclaims coverage for any liabilities assumed or incurred prior to our receipt of this claim on or about September 27, 2002.

The policy also has an other insurance condition that states as follows:

6.  Other Insurance:  The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence or other insurance.  When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares**.  If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits**.  If any of such other insurance does not provide for contribution by equal shares, the company shall not be

Re: Utica File No:  711577
   28 Central Square, Chelmsford, MA

6

liable for a greater proportion of such loss than the applicable limit of
liability under this policy for such loss bears to the total applicable limit
of liability of all valid and collectible insurance against such loss.

We trust you have put all Kleenit carriers from 1960 to present on notice.
Please provide us with the responses you have received form any other carriers
to this claim

## CONCLUSION

As more fully set forth above, we are disclaiming coverage for any payment
or expense incurred prior to September 27, 2002 as well as expense costs.  We
are reserving our rights under the policy in relation to the remainder of the claim.
Our investigation into this matter should not be deemed as a waiver of any rights
we may have under the policy and is undertaken under a full reservation of
rights.

I ask that you please forward to my attention any reports prepared by the
environmental scientist retained by Kleenit as well as any documentation
received from the DEP or prepared by or on behalf of Kleenit in response to a
request by the DEP at your earliest convenience.

Finally, as stated above our archive search did not reveal the existence of
any policy other than the Graphic Arts Mutual (1979-1982) and Kleenit has the
burden of producing any policy.  If other policies are located, we reserve our right
to address those policies at a later date.

Very truly yours,

Kristen H. Martin
Staff Attorney

KHM/pcs*



Kristen H. Martin
Staff Attorney

P.O. Box 6568, Utica, New York 13504
Telephone: (315) 734-2917
Fax: (315) 734-2198

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

## PARTIAL DISCLAIMER OF COVERAGE AND
## RESERVATION OF RIGHTS

October 28, 2002

**CRR: 7001 0360 0001 9522 4349**
Robert A. Fananella, Esq.
Reuben and Rudman, LLP
Counselors at Law
50 Rowes Wharf
Boston, MA 02110-3319

**DROP MAIL**

**CRR: 7002 0860 0001 4416 0654**
Mr. Kevin Crider
Kleenit, Inc.
44 Park Street
Ayer, MA 01432

**Re:    Utica File No:   711577**
**28 Central Square, Chelmsford, MA**

Dear Sirs:

## ACKNOWLEDGEMENT

This will acknowledge the receipt of your letter dated September 25, 2002, advising us of a claim and requesting defense and indemnification relating to a release of hazardous materials that caused building and property damage at 28 Central Square, Chelmsford, Massachusetts.

## BACKGROUND

According to the information provided, on or about January 28, 2001, the Massachusetts Department of Environmental Protection (hereinafter "DEP") issued to Kleenit a Notice of Responsibility relating to a release of oil and/or hazardous materials at the above referenced location. It is alleged that the hazardous waste has migrated off site to Beaver Brook. It is further alleged that

---

Utica National Insurance Group          Utica Mutual Insurance Company          Insurance that starts with you.
and its affiliated companies.

the offsite migration is impacting indoor air at a building located at 34 Central Square.

It is our understanding that the property was first used as a dry cleaning facility in 1960 and that the septic system, which is being considered as a potential source of contamination, was used until 1990. Your letter claims that the release occurred many years ago within our policy period.

It is our understanding that you are seeking response costs, including costs for the environmental scientist retained by you. You further state that Exxon Mobil, another potentially responsible party, is seeking contribution from Kleenit for its share of response costs.

## YOUR POLICY

Kleenit, Inc. was insured by Graphic Arts Mutual under FMP 1946 for the period 10/01/79 – 10/1/82. The property damage policy limits were $100,000 per occurrence / $100,000 in the aggregate. Our archive search has not located any other policy issued to Kleenit by Graphic Arts Mutual or Utica Mutual Insurance Group. If you are in possession of any documents which would establish the existence of a 1982 – 1985 policy and/or the umbrella policy referenced in your letter please forward said documents to my attention. Upon receipt of the documents, I will address any coverage that those policies may provide. We reserve our rights to deny coverage for defense and indemnification under all policies issued by Utica or a related company and further assert that you have the burden of producing any other policy upon which you claim coverage.

Your primary policy, a Comprehensive General Liability Policy, (6395a-x-c Ed. 1-73) contained the following language:

I.    COVERAGE A-BODILY INJURY LIABILITY

COVERAGE B-PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums, which the insured shall become legally obligated to pay as damages because of

A.    bodily injury or

B.    property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are

Re: Utica File No:   711577                                                          3
   28 Central Square, Chelmsford, MA

groundless, false or fraudulent, and may make such investigation
and settlement of any claim or suit as it deems expedient, but the
company shall not be obligated to pay any claim or judgment or to
defend any suit after the applicable limit of the company's liability
has been exhausted by payment of judgements or settlements.

The policy also defines the terms "occurrence" and " property damage." Those
terms are defined as:

"occurrence" means an accident including continuous or repeated
exposure to conditions, which results in bodily injury or property damage
neither expected nor intended from the standpoint of the insured;

"property damage" means (1) physical injury to or destruction of tangible
property which occurs during the policy period, including the loss of use
thereof at any time resulting therefrom, or (2) loss of use of tangible
property which has not been physically injured or destroyed provided such
loss of use is caused by an occurrence during the policy period;

Graphic Arts Mutual expressly reserves the rights to disclaim coverage for
defense and indemnification because the facts known to date do not establish
that there has been an "occurrence" which has resulted in "property damage" as
defined by the policy.  As the Property has been used as a dry cleaning facility
for over 40 years it is possible that the contamination did not occur during the
three years Graphic Arts Mutual insured Kleenit.  Pending a determination as to
when the contamination occurred, we reserve our rights to disclaim coverage at a
later date if, and when, such a determination is made.

Furthermore as no suit has been commenced, no duty to defend had been
triggered.  As such, we expressly disclaim coverage for defense costs relating to
this matter

Your policy also contained the following exclusions:

This policy does not apply:

(f)      to bodily injury or property damage arising out of the discharge,
dispersal, release or escape of smoke, vapors, soot, fumes, acids,
alkalis, toxic chemicals, liquids or gases, waste materials or other
irritants, contaminants or pollutants into or upon land, the
atmosphere or any water course or body of water; but this
exclusion does not apply if such discharge, dispersal, release or
escape is sudden and accidental;

Graphic Arts Mutual expressly reserves the rights to disclaim coverage relating to
this matter on the grounds that the release of the contaminants was neither

Re: Utica File No:   711577                                                    4
    28 Central Square, Chelmsford, MA

sudden or accidental and therefore does not fall within the savings clause of exclusion f.


     (k)    to property damage to

          (1)    property owned or occupied by or rented to the insured.

          (2)    property used by the insured, or

          (3)    property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control:

              the insured is for any purpose exercising physical control: but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured:

    Graphic Arts Mutual expressly reserves the rights to disclaim coverage for any damage to the property owned or occupied by or rented by Kleenit.  To the extent that there is any damage to property owned by a third party we will investigate and determine whether it is covered by the policy.

    The policy issued by Graphic Arts Mutual contains the following conditions.

## CONDITIONS

**4.** Insured's Duties in the Event of Occurrence, Claim or Suit:

**(a)** In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

**(b)** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**(c)** The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who

Re: Utica File No:   711577                                                          5
28 Central Square, Chelmsford, MA

may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

It is our understanding that you first became aware of this claim on January 28, 2001.  We did not receive notice of this claim until sometime on or about September 25, 2002.

In addition to an almost two year delay in providing notice, Kleenit also assumed obligations, incurred expense, and/or made voluntary payments by retaining an environmental scientist, legal counsel and negotiating with the DEP.

As a result of the late notice and undertaking of voluntary payments, Graphic Arts Mutual expressly disclaims coverage for any liabilities assumed or incurred prior to our receipt of this claim on or about September 27, 2002.

The policy also has an other insurance condition that states as follows:

6.  Other Insurance: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence or other insurance.  When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares**.  If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits**.  If any of such other insurance does not provide for contribution by equal shares, the company shall not be

Re: Utica File No:   711577                                                    6
    28 Central Square, Chelmsford, MA

liable for a greater proportion of such loss than the applicable limit of
liability under this policy for such loss bears to the total applicable limit
of liability of all valid and collectible insurance against such loss.

We trust you have put all Kleenit carriers from 1960 to present on notice.
Please provide us with the responses you have received form any other carriers
to this claim

## CONCLUSION

As more fully set forth above, we are disclaiming coverage for any payment
or expense incurred prior to September 27, 2002 as well as expense costs. We
are reserving our rights under the policy in relation to the remainder of the claim.
Our investigation into this matter should not be deemed as a waiver of any rights
we may have under the policy and is undertaken under a full reservation of
rights.

I ask that you please forward to my attention any reports prepared by the
environmental scientist retained by Kleenit as well as any documentation
received from the DEP or prepared by or on behalf of Kleenit in response to a
request by the DEP at your earliest convenience.

Finally, as stated above our archive search did not reveal the existence of
any policy other than the Graphic Arts Mutual (1979-1982) and Kleenit has the
burden of producing any policy.  If other policies are located, we reserve our right
to address those policies at a later date.

Very truly yours,

Kristen H. Martin
Staff Attorney

KHM/pcs*