UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-10351-RBC

| | |
|---|---|
| KLEENIT, INC.,<br>          Plaintiff<br>vs.<br><br>SENTRY INSURANCE COMPANY,<br>ROYAL & SUN ALLIANCE,<br>UTICA NATIONAL INSURANCE GROUP, and<br>TRAVELERS PROPERTY AND CASUALTY,<br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**UTICA NATIONAL INSURANCE GROUP'S OPPOSITION
TO PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT RULING THAT
DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE FOR ALL DEFENSE
COSTS INCURRED BY KLEENIT**

I.   Introduction

Defendant Utica National Insurance Group ("Utica") does not disagree with the position advanced by the plaintiff, Kleenit, Inc., ("Kleenit") in its motion for declaratory judgment, namely, that when multiple policies are triggered to cover the same obligation, each insurer is jointly and severally liable to cover that obligation. Utica has not asserted that it no longer has an obligation to defend Kleenit simply because one of the insurers has been released from the lawsuit. Unfortunately, Kleenit has missed the point that Utica has been making with respect to ongoing defense obligations in connection with the Wayland site.

Utica maintains that it is entitled to a set-off against defense payments for the settlements entered into between Kleenit and the other insurers. Without a set-off,

Kleenit is afforded an incredible windfall – a result that is not only unfair and inequitable but also unintended under the law.

Accordingly, for the reasons discussed in further detail below, Utica requests that this Court deny the plaintiff's motion for declaratory judgment and order that any settlement funds received by Kleenit from the settling insurers be set off against the continuing defense obligation in accordance with the insurers' defense cost sharing agreement.

**Factual Background**

The plaintiff Kleenit, Inc. ("Kleenit") operates dry-cleaning services at facilities located at 28 Central Square in Chelmsford ("Chelmsford site"), 293-295 Main Street in Acton ("Acton site"), and 298 Boston Post Road, Wayland ("Wayland site"), all in Middlesex County, Massachusetts. The Department of Environmental Protection ("DEP"), by letter dated January 28, 2001, issued a Notice of Responsibility ("NOR") pursuant to M.G.L. c. 21E in connection with alleged environmental contamination at the Chelmsford site. On December 30, 2003, the DEP issued an NOR in connection with alleged contamination at the Acton site. On April 9, 2003 an NOR issued in connection with the Wayland site. The NORs allege that Kleenit is a responsible party for the release or threat of release of hazardous materials at the Chelmsford, Acton and Wayland sites.

Kleenit tendered the defense of the DEP's claims to four insurers, including Utica, Sentry Insurance Company ("Sentry"), Royal & Sun Alliance ("Royal"), and

Travelers Property & Casualty ("Travelers"). Utica, Travelers and Royal agreed to defend Kleenit, but did so under a reservation of rights. The insurers advised Kleenit that they were entering into a defense cost sharing agreement among themselves and that they had collectively agreed to reimburse Kleenit for 100% of its reasonable and necessary post-tender defense costs in connection with the Acton and Chelmsford sites. Pursuant to this agreement, Utica is responsible for its 39% pro rata share of Kleenit's reasonable post-tender defense costs relative to the Acton and Chelmsford sites, while Royal is responsible for its 14% share and Travelers for its 47% share. With respect to the Wayland site, Utica, Royal and Kleenit entered into a cost sharing defense agreement whereby Utica is responsible for 75% of all post-tender defense costs and Royal is responsible for 25%.

  Since the defendants entered into the defense cost sharing agreements, Kleenit has released Royal of its obligations under its policy of insurance in exchange for consideration and a sum unknown to Utica. While Utica is neither aware of the precise terms of the settlement agreement between Kleenit and Royal, nor the amount of the settlement (Utica was told that the settlement amount was confidential), correspondence between Royal and Kleenit indicates that the settlement funds are for ongoing costs associated with the sites and allegedly compensable under the Royal policy. See Exhibit A, Two Letters from Seth Jackson, Esq. to Robert Fasanella, Esq. regarding Settlement Agreement.

  Shortly after Kleenit released Royal from its obligations, Kleenit demanded that Utica pay 100% of its defense costs in connection with the Wayland site. In response,

3

Utica maintained that it would continue to pay its 75% pro rata share of defense costs pursuant to its agreement with Royal because Utica is entitled to an off-set of the settlement proceeds received by Kleenit from Royal for ongoing defense costs. It is Utica's position that it is only required to pay its 75% share of defense costs until the settlement proceeds from Royal have been exhausted.

## Argument

### I. KLEENIT IS OBLIGATED TO ASSUME ROYAL'S EQUITABLE SHARE OF DEFENSE COSTS UNTIL THE INSURANCE SETTLEMENT PROCEEDS ARE EXHAUSTED.

Stated in simplest of terms, it is Utica's position that when an insured settles with one of its several defending insurers, the insured is obligated to assume that settling insurer's equitable share of defense costs until the settlement proceeds are exhausted. The question of pro-rata allocation of defense costs during ongoing litigation is a matter of first impression in Massachusetts. The Massachusetts Appeals Court has stated in *Rubenstein v. Royal Insurance Company of America*, 44 Mass. App. Ct. 842 (1998), that when multiple policies are triggered to cover the same loss, each policy is deemed to provide indemnity for the insured's entire liability and each insurer is jointly and severally liable for the entire claim. However, *Rubenstein* does not stand for the proposition that an insured can recover double recoveries under respective policies. Upon settling indemnity, the other insurers remaining would be entitled to an offset of the settlement amount relative to the cost of indemnification. Massachusetts courts have not addressed the issue of allocation of continuing defense costs where one insurer has settled. Kleenit's reliance on *Rubenstein*, in this instance, is entirely misplaced.

Although Massachusetts Courts have not dealt with this issue, other jurisdictions have. These jurisdictions have ruled that the insured must essentially step into the shoes of the released insurer and contribute to the costs of defense. See Consolidated Edison of New York v. Fyn Paint and Lacquer Co., Inc., 2005 U.S. Dist. LEXIS 899; see also Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 1999 Conn. Super. LEXIS 1902. For example, in *Consolidated Edison of New York v. Fyn Paint and Lacquer Co., Inc.*, the federal district court held that it was unreasonable to require Providence Washington, one of many insurers on the risk, to pay 100% of the cost of defending the underlying tort claims where the unavailability of insurance coverage for other years was the result of "buy back" agreements that the insured had entered into with the other insurers. As a result of these "buy back" agreements, Providence Washington was precluded from seeking contribution from the insurers and the Court ruled that "the logic behind holding one insurer liable for all defense costs regardless of whether the insurers may have a duty to defend does not hold in this case." Consolidated Edison, 2005 U.S. Dist. LEXIS 899 *15.

A Connecticut Superior Court reached a similar result in *Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 1999 Conn. Super. LEXIS 1902. The *Lumbermens* decision is particularly instructive here. There, like here, the insured entered into a separate settlement agreement with one of its insurers, Lumbermens, releasing that insurer from any further duty to contribute towards the defense of the underlying

asbestos suits.[1]  The plaintiff insurer sued the insured and sought to hold the insured liable for its equitable share of defense costs.  The Court ruled that the insured could not compel its other insurers to absorb the costs formerly paid by Lumbermens and must, in effect, step into the shoes of the released insurer as if it was voluntarily "self insured" for the released period.  Lumbermens, 1999 Conn. Super. LEXIS 1902 *18.

In reaching this conclusion, the Connecticut Court relied on a Second Circuit decision, *Stonewall Ins. Co. v. Asbestos Claims Management*, 73 F.3d 1178 (2nd Cir. 1995).  Lumbermens, 1999 Conn. Super. LEXIS 1902 *15.  In *Stonewall*, the Second Circuit ruled that New York law required a "proration-to-the-insured" approach with respect to indemnification costs, for periods in which an insured opted to self-insure.  Id.  The Second Circuit held that under this approach, an insured would be liable to contribute its pro rata share of indemnification costs for asbestos-related personal injury claims which had triggered multiple insurance coverages under the "continuous trigger" doctrine with respect to those periods of time in which the insured opted to self-insure.  Id.  The *Lumbermens* Court pointed out that the Second Circuit "implicitly adopted the lower court's ruling that an insured, who settles its claims against one insurer where there are other insurers who remain obligated to defend and indemnify the insured, becomes 'self insured' for that period of time in which the settling insurer's coverage was in place."  Id. at * 16.  Finding this reasoning persuasive, the *Lumbermens* Court

---

[1] This is particularly instructive as asbestos as well as hazardous materials or pollutants are continuing torts, triggering each policy from the date of exposure to manifestation.

concluded that by releasing Lumbermens, the insured had "opted to become 'self-insured'" for purposes of the continuing defense obligations. Id. at 17 – 18.

The rationale underlying these two decisions was to avoid an inequitable result and a windfall to the insured. In *Lumbermens*, the Court stated:

> 'The aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of others.' (citation omitted). To allow [the insured] to release one insurer from its obligation to defend upon receipt of $300,000 and then decline to replace that insurer in sharing the equitable costs of defense would be patently inequitable.

Lumbermens, 1999 Conn. Super. LEXIS *20-21. Similarly, in *Consolidated Edison*, the Court pointed out that because of the "buy-back" agreements the insured entered into with the other two insurers, Providence would have been precluded from seeking contribution from these insurers because their defense obligations were terminated. Consolidated Edison, 2005 U.S. Dist. LEXIS 899 *14 – 15. Implicit in the Court's holding that Providence was only responsible for its pro rata share of ongoing defense costs was the fact that it was inequitable to require one insurer to bear full responsibility for the cost of defending the underlying tort claims where the unavailability of insurance coverage was the result of buy-back agreements entered into with the insured. In each case, the courts were guided by principles of fairness and equity.

Utica respectfully urges this Court to follow the holdings of *Lumbermens* and *Consolidated Edison,* and to rule that Utica is entitled to an off-set against continuing defense costs in accordance with the defense cost sharing agreement entered into with

Royal and Kleenit. The facts of this case are no different than those in *Lumbermens*. Utica is but one of four insurers on the risk, two of whom have been released from their obligations by the insured. Utica should not bear the full responsibility for defense costs until the settlement proceeds received by Kleenit from the other insurers are exhausted. Indeed, this is typically what occurs in standard tort cases in Massachusetts. In cases where there are multiple defendants and one of the defendants settles with the plaintiff, the co-defendants are entitled to a set-off. Utica is not asking Kleenit or this Court to do anything that has not been done before.

Furthermore, it is only equitable that Kleenit step into the shoes of Royal and contribute its pro rata share (25%) to the ongoing defense. To hold otherwise, would be to allow Kleenit a windfall and double recovery. Kleenit is obligated to use Royal's settlement proceeds towards the loss pursuant to the terms of its policy. To the extent that the amount of settlement and the allocation of the settlement proceeds are confidential, Utica respectfully suggests that the Court be permitted to review the terms of the settlement agreements *in camera* and determine what amounts are to be applied toward the continuing defense and indemnity obligations ongoing at the sites. To do otherwise would allow Kleenit a windfall not contemplated by the insurance obligations.

In conclusion, although Massachusetts Courts have not addressed this issue squarely, other jurisdictions have. Utica urges this Court to follow the holdings in *Consolidated Edison of New York v. Fyn Paint and Lacquer Co., Inc.*, and *Security Ins. Co. of*

*Hartford v. Lumbermens Mut. Cas. Co.*, and deny the plaintiff's motion for declaratory judgment.

## Conclusion

For the reasons discussed in this memorandum, Utica respectfully requests that this Court order disclosure *in camera* or otherwise of the settlement agreement between Royal and Kleenit; that those funds be set-off against the continuing defense obligation in accordance with the defense cost sharing agreement entered into between the insurers; and that the set-off be used as Royal's 25% pro rata share of the defense costs until the funds are exhausted.

Respectfully submitted,

UTICA NATIONAL INSURANCE GROUP,
Defendant

By Its Attorney:

Richard E. Heifetz        BBO #229000
Danielle M. Maloney    BBO #647527
TUCKER, HEIFETZ & SALTZMAN, LLP
Three School Street
Boston, MA 02108
617-557-9696

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August 2006, I filed a copy of the foregoing by electronic means with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification to the following: Joseph S. Berman, Esq., Berman & Dowell, 210 Commercial Street, Boston, MA 02109 and Donald P. Nagle, Esq., Law Office of Donald P. Nagle, P.C., 5 Main Street, Plymouth, MA 02360.

Richard E. Heifetz

# EXHIBIT A

Case 1:04-cv-10351-RBC    Document 100    Filed 08/24/2006    Page 10 of 12

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### A LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
LOS ANGELES
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

950 WINTER STREET - SUITE 1300
WALTHAM, MASSACHUSETTS 02451
781-466-0700 TELEPHONE
781-466-0701 FACSIMILE
www.zelle.com

Seth V. Jackson
(781) 466-0726
sjackson@zelle.com

June 1, 2006

<u>*Via Facsimile & First Class Mail*</u>

Robert A. Fasanella, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA 02110-3319

  Re: **Kleenit, Inc. v. Sentry Insurance Company, et al.**
    **C.A. No. 04-10351-RBC**
    **Our File Number: 4-079-0021**

Dear Bob:

  I am writing in response to your fax dated May 30, 2006 which enclosed a statement of alleged outstanding invoices from Ambient Engineering, Inc. for work relating to the Wayland site. As you know, Royal Indemnity Company ("Royal") and Kleenit, Inc. ("Kleenit") recently agreed to a sum certain settlement to resolve all outstanding defense obligations at all three sites including Wayland. Further, on May 23, 2006, Magistrate Judge Collings entered an order granting the parties' Joint Motion to Dismiss With Prejudice which dismissed all claims Kleenit had against Royal relating to these sites. Thus, I assume that this fax and statement were sent to us in error because Royal's obligations in this matter are now complete. I assume that in the future we will not receive any other such correspondence. Please do not hesitate to contact me with any questions.

            Best regards,

            ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

            Seth V. Jackson

SVJ/ko

cc: All counsel of record (Via regular mail)
   Kevin Keyes (Via regular mail)

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
A LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
LOS ANGELES
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

950 WINTER STREET - SUITE 1300
WALTHAM, MASSACHUSETTS 02451
781-466-0700 TELEPHONE
781-466-0701 FACSIMILE
www.zelle.com

Seth V. Jackson
(781) 466-0726
sjackson@zelle.com

August 7, 2006

*Via Facsimile & First Class Mail*

Robert A. Fasanella, Esq.
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, MA  02110-3319

Re:   **Kleenit, Inc. v. Sentry Insurance Company, et al.**
      **C.A. No. 04-10351-RBC**
      **Our File Number: 4-079-0021**

Dear Bob:

I am writing in response to your letter dated July 5, 2006 regarding the status of the defense of the Wayland site. As you know, Royal Indemnity Company ("Royal") and Kleenit, Inc. ("Kleenit") agreed to a sum certain settlement to resolve all outstanding defense and indemnity obligations at all three sites including Wayland. Further, on May 23, 2006, Magistrate Judge Collings entered an order granting the parties' Joint Motion to Dismiss With Prejudice which dismissed all claims Kleenit had against Royal relating to these sites. Thus, I assume that this letter was sent to Royal in error because Royal's obligations in this matter are now complete. I assume that in the future we will not receive any other such correspondence. Please do not hesitate to contact me with any questions.

Best regards,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

Seth V. Jackson

SVJ/ds

cc:   All counsel of record (Via regular mail)
      Kevin Keyes (Via regular mail)