UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 - RBC

|  |  |
|---|---|
| KLEENIT, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| SENTRY INSURANCE COMPANY, ROYAL & SUN ALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S OPPOSITION TO UTICA NATIONAL INSURANCE GROUP'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Kleenit, Inc. ("Kleenit") opposes Utica National Insurance Group's ("Utica's") Motion for Partial Summary Judgment, which challenges the existence of a $1,000,000 umbrella liability policy issued by Utica to Kleenit, with annual policy periods from 1983 to 1985 ("Umbrella Policy").[1]  Further, Utica claims that Kleenit should not be allowed, as a matter of law, to prove the existence of the Umbrella Policy through the use of secondary evidence.

---

[1] Utica acknowledges in its motion the existence of its comprehensive general liability ("CGL") Policy No. FMP1946 issued to Kleenit, with an effective date of October 1 and annual policy periods from 1979 to 1982 and 1982 to 1985 (Utica's Concise Statement of Material Facts ("CMF"), ¶7); however, Utica neglects to acknowledge, perhaps indavertantly, the same policy issued for the policy period of October 1, 1978 to October 1, 1979.  Since Utica's motion is with regard to the umbrella policy only, Kleenit's opposition is similarly limited, while reserving the right to oppose, if necessary, any challenge by Utica of the existence of the Policy No. FMP 1946 during the policy period of October 1, 1978 to October 1, 1979.

Utica has not carried its burden of proof to sustain its Motion because, viewed in light most favorable to Kleenit, Utica has failed to demonstrate any lack of evidence regarding the existence of the Umbrella Policy. In its Motion, Utica actually recognizes that evidence supports the existence of the policy, but then misapplies the Rules of Evidence in its attempt to prevent its use. For these reasons, Utica has failed to meet the onerous standard for summary judgment and its motion should be denied.

## I.      STATEMENT OF MATERIAL FACTS ASSERTED TO BE IN DISPUTE

Utica issued a $1,000,000 umbrella liability insurance policy, identified as Policy No. LU 6406 to Kleenit, with an annual policy period from February 2, 1983 to February 3, 1984, as demonstrated by:

   a.   Kleenit's concise Statement of Material Facts in Disputea cancelled check issued to Kleenit's insurance agent, dated March 2, 1983 ("SMFD"), ¶1a);

   b.   Kleenit's pre-paid insurance ledger entry recorded by Kleenit's accountant ("SMFD, ¶1b.); and,

   c.   deposition testimony of Kleenit's immediate past president and Chief Financial Officer, Keith Crider, that Kleenit purchased umbrella liability insurance. ("SMFD, ¶1c).

Utica issued a $1,000,000 umbrella liability insurance policy, identified as Policy No. LU 6406 to Kleenit, with an annual policy period from February 2, 1984 to February 3, 1985, as demonstrated by:

      a.    A cancelled check, issued to Kleenit's insurance agent, Henrick F. Johnson in the amount of $750, dated June 27, 1984, with notation "umbrella policy." ("SMFD, ¶2a.)

      b.    Kleenit's pre-paid insurance ledger entry recorded by Kleenit's accountant. ("SMFD, ¶2b); and,

      c.    Deposition testimony of Kleenit's immediate past president and Chief Financial Officer, Keith Crider, that Kleenit purchased umbrella liability insurance. ("SMFD, ¶2c.).

Kleenit has produced to Utica copies of cancelled checks representing payment of insurance premiums for Policy No. LU 6406 to Kleenit, with annual policy periods from 1983 to 1985. ("SMFD, ¶3).

Kleenit has produced to Utica copies of pre-paid insurance ledgers kept by Kleenit's accountant, which includes entries that document Kleenit's purchase of the umbrella policy, numbered LU 6406, and matches information included in cancelled checks representing payment of insurance premiums for Policy No. LU 6406 to Kleenit, with annual policy periods from 1983 to 1985. ("SMFD, ¶4).

Kleenit has produced documentation which demonstrates the schedule of all insurance policies purchased by Kleenit, including insurance polices issued by Utica, during the period of time at issue. ("SMFD, ¶5). Harry Nason was the accountant for Kleenit from the 1950's to at least 2001, and served on Kleenit Board of Directors. ("SMFD, ¶ 6). Harry Nason was an authorized agent of Kleenit, who kept insurance records on behalf of Kleenit in the normal course of business. ("SMFD, ¶7).

A witness for Kleenit, Keith Crider, has testified that during the period of time at issue, he wrote the checks which paid the premiums for insurance polices issued by Utica. ("SMFD, ¶8). A witness for Kleenit, Keith Crider, has testified that during the period of time at issue, Kleenit's accountant, Harry Nason, recorded in ledger books the payment of insurance premiums made by a "one-write" check writing system and, later, the Safeguard check writing system. ("SMFD, ¶9). A witness for Kleenit, Keith Crider, had testified that he has recollection of the procedure by which Harold Nason, accountant for Kleenit, maintained all relevant information regarding insurance coverage purchased by Kleenit in ledger books in the normal course of business. ("SMFD, ¶10). A witness for Kleenit, Keith Crider, has testified that he has a recollection that Kleenit purchased umbrella liability insurance from Utica during the period of time at issue. ("SMFD, ¶ 11). Kleenit has produced copies of ledgers maintained by Kleenit's former accountant, Harry Nason, and checks written by Kleenit's former president and chief financial officer, which document the existence of Umbrella Policy LU 6406. ("SMFD, ¶ 12). Kleenit has documentary and testimonial evidence that Utica issued Umbrella Policy LU 6406, covering annual policy periods from 1983 to 1984 and 1984 to 1985. ("SMFD, ¶ 13).

Kleenit has made a diligent search for Umbrella Policy LU 6406 demonstrating that the policy is unavailable through no fault of Kleenit and that Kleenit conducted a diligent, but unsuccessful search for the policy. ("SMFD, ¶ 14, 15, 16). Kleenit served discovery requests to Utica requesting a copy of all policies it issued to Kleenit and for any and all information regarding any such policies. ("SMFD, ¶ 17). As part of its due diligence to search for missing insurance policies issued by Utica, Kleenit contacted the

son of Kleenit's former insurance agent, Henrick Johnson, who arranged for the issuance of Utica policies to Kleenit. ("SMFD, ¶15). Kleenit engaged in a diligent effort to search for missing insurance policies issued by Utica. ("SMFD, ¶ 17).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c).

The burden is on the moving party to establish both the absence of any triable issue and his entitlement to judgment in his favor. *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989). All facts are to be viewed, and all inferences drawn, in the light most favorable to the nonmoving party. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997).

## III.    ARGUMENT

### A.    KLEENIT HAS PRODUCED SUFFICIENT EVIDENCE TO DEMONSTRATE THE EXISTENCE OF UMBRELLA POLICY LU 6406, COVERING ANNUAL POLICY PERIODS FROM FEBRUARY 2, 1983 TO FEBRUARY 2, 1985.

Utica's motion must be denied because a genuine issue of material fact exists regarding the existence of Umbrella Policy No. LU 6406. Despite the lack of the physical policy itself, Kleenit has provided ample evidence of the existence of Policy No. LU 6406. "That a policy has been lost or destroyed does not mean that its existence and contents may not be reconstructed from business records, underwriter's folios, or

5

billings of the insurance company to the insured." <u>Rubenstein v. Royal Ins. Co. of America</u>, 44 Mass.App.Ct. 842, 694 N.E.2d 381, Mass.App.Ct.,1998.

Kleenit has produced cancelled checks written to its insurance agent, Henrick F. Johnson, from which it bought Utica insurance exclusively from 1978 to 1985. Two of these checks match up with ledger entries on two separate ledger sheets, each of which is identified "Prepaid Insurance." These checks and ledger entries, along with the testimony of Kleenit's past president and chief financial officer describing the process by which their accountant kept these records, provide more than sufficient evidence to defeat Utica's motion. The original checks have been made available to Utica, which shows on the back of the check that they have been deposited, demonstrating that the premiums for the policies have been paid by Kleenit and received by Utica.

The first check, numbered 18425 and dated March 2, 1983 is made out to Kleenit's insurance agent, Henrick F. Johnson, which sold Utica insurance to Kleenit, for $750 (Nagle Aff. Tab 1), corresponds with the Kleenit ledger, dated July 2, 1983, line 17(Nagle Aff., Tab 2), which indicates:

**Utica Mutual…LU6406..P…Johnson…Umbrella Liability Policy….1000000…   2-3-83..1yr..2-3-84…750…7/12…113710**

The check is dated almost exactly a month after the inception of the policy, the time frame in which the invoice for the premium would arrive. The date of the ledger entry page, July 2, 1983, is also consistent with timing of payment and recording of the premium payment. The payee, Johnson, is recorded in the ledger, as is the amount of the check, $750. In the context of regular documentation of Kleenit's normal business activity, as described by Kleenit's former president and chief financial officer, Keith

Crider, the check and the ledger entry document Kleenit's purchase of the Umbrella Policy from Utica.

The second check, numbered 2193, and dated June 27, 1984 is also made out to Henrick F. Johnson and the amount is also for $750. This check includes the notation "Umbrella Policy." (Nagle Aff., Tab 3). This check corresponds with the Kleenit ledger, dated June 30, 1984, line 18 (Nagle Aff., Tab 4), which provides:

> **Utica Mutual Insurance Co. ... LU6406..P...Johnson...Umbrella Liability Policy...1,000,000...2-3-84..1 yr...2-3-85..750..7/12...437.50**

Here, the check is dated only a few days prior to the date of the ledger sheet. The dates of both are within the policy period indicated in the ledger, which is the subsequent annual policy period to the 1983 coverage period discussed above. The amount of the check, $750, is identified in the ledger. Both the check and the ledger indicate that the policy is an umbrella liability policy.

Contrary to Utica's assertion, there is indeed a dispute as to whether Kleenit has produced sufficient evidence to prove the existence of the Umbrella Policy. This is a triable issue that unquestionably survives summary judgment and, consequently, Utica's motion should be denied.

The only way Utica can prevail in its motion is if no evidence supports the existence of the policy. If there is any evidence supporting the existence of the Umbrella Policy, then a genuine issue of material fact is established, and Utica's motion fails. The case cited by Utica, Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass.App.Ct. 465, 684 N.E.2d 600 (1997), is actually favorable to Kleenit, as it

affirmed the lower courts denial of the insurers' motion for summary judgment because "[the superior court] judge concluded that HCC had made enough progress with its secondary evidence to create a genuine issue of fact as to the existence and terms of the policies. This averted summary judgment for the insurers under the rule of Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711-712, 575 N.E.2d 734 (1991), describing the conditions of the evidence that do or do not justify summary judgment against a party bearing the burden of proof." Hoechst Celanese, at 612.

The secondary evidence produced by the insured in Hoechst Celanese consisted of the first page of an unsigned letter, which included a "chart identified an ELAC policy, No. E-15-8091-001, for the period 1/16/64-1/16/65, in the amount, appearing under the heading "Limit," of $5 million in excess coverage over the $1 million primary coverage. The chart also identified an ESLIC policy, No. 5-16-00002, for the period 1/1/62-1/1/64, but under "Limit" Gottlieb placed a question mark." Id. (footnotes omitted.) This documentation was deemed sufficient to survive the insurer's summary judgment motion by the Massachusetts Appellate Court, despite lacking the detail that Kleenit has provided. "In support of the existence of Policy No. LU64063 and the court finding some trouble with the ESLIC policy because the chart does not tie down the amount of the coverage. However, it is possible to infer that the coverage, the first and only layer of excess coverage, was $5 million as a minimum. Id. cf. Emons Indus., Inc. v. Liberty Mut. Fire Ins. Co., 545 F.Supp. 185, 189 (S.D.N.Y.1982).

Similarly, Kleenit met its burden to avoid summary judgment by producing accounting ledgers which provide detail regarding the material terms of the policy at issue (identifies the policy limit at $1,000,000 in two separate ledger entries) the

8

coverage period and the type of policy. Kleenit has also produced two cancelled checks matching the information in the ledger and bolstering its evidentiary weight.

Utica's argument that that Kleenit has no testimonial evidence of the policy is misguided. During Utica's several depositions of Kleenit's Keith Crider, Mr. Crider conveyed his explicit recollection of purchasing insurance from Utica and that during the period in question, the purchase of umbrella policies. (See CMFD, ¶ 1C and ¶ 2C). Furthermore, Kleenit does not rely exclusively on the Mr. Crider's memory. The ledger entries and cancelled checks provide sufficient evidence of Utica's issuance of the Umbrella Policy to Kleenit and of the policy's material terms.

These cancelled checks are signed by Mr. Crider, who recalls the methodology by which the pre-paid insurance ledgers document that the checks he signed paid the premium for the Umbrella Policy.

In short, Kleenit has produced evidence that Utica issued the policy and its material terms, meeting or exceeding the standard required under <u>Hoechst Celanese</u>.

IV.  **UTICA'S ARGUMENT THAT KLEENIT SHOULD BE PROHIBITED FROM OFFERING SECONDARY EVIDENCE OF THE EXISTENCE OF THE UMBRELLA POLICY UNDER THE BEST EVIDENCE RULE FAILS BECAUSE KLEENIT HAS LOST THE POLICY THROUGH NO FAULT OF ITS OWN AND HAS DEMONSTRATED A DILEGENT SEARCH OF THE POLICY**

Utica's attempt to argue that Kleenit's evidence of the existence of the Umbrella Policy should not be considered for purposes of its summary judgment motion due to the best evidence rule simply has no merit. As discussed above, Kleenit's burden is to show that there is at least some evidence of the existence of the policy. Kleenit has done this.

Issues regarding admissibility are properly addressed at trial, not at the summary judgment stage. Furthermore, if Utica seriously thinks that Kleenit's secondary evidence is not admissible, they would have filed a motion to strike, as it already has, in an attempt to exclude evidence Kleenit produced for other purposes.

Kleenit may use secondary evidence to demonstrate the existence of the Umbrella Policy because it has demonstrated that it lost the policy that is over 20 years old due to no fault of its own and has made a diligent, albeit, unsuccessful search.

Utica concedes that Kleenit attempted to find the policy, but feebly argues that Kleenit did not try hard enough. Clearly it is in Kleenit's best interest to find the actual policy. Until now, Kleenit has not been called upon to demonstrate the specific efforts made in conducting the search for lost polices. However, Utica recognizes Keith Crider's February 5, 2004 Affidavit which indicates that Kleenit "pursued all reasonable sources to recover its records, including contacting former agents, accountants, and the insurance companies directly." Kleenit relied on their own manpower to search decades-old archived documents stored in the basement on their facility (See CMFD, Exhibit G, Affidavit of Francis X. Murphy) and the resources of the Law Firm of Rubin and Rudman to interview the son of the deceased insurance agent, Henrick F. Johnson, who sold the Umbrella Policy to Kleenit. (See Nagle Aff., Tab 9, Memorandum from Peter Feuerbach). The fact that a subpoena was not required to speak to Mr. Johnson's son should not be a basis to exclude secondary evidence of the policy.

V. **KLEENIT'S LEGDER SHEETS ARE ADMISSABLE UNDER THE BUSINESS RECORDS EXCEPTION TO THE HEARSAY RULE AND CAN BE PROPERLY AUTHENTICATED BY THE AFFIDAVITS OF KLEENIT CORPORATE OFFICERS**

The ledgers produced by Kleenit demonstrating the existence of the Umbrella Policy are admissible as a business record. Massachusetts has codified this exception to the hearsay rule, as follows:

> An entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.

M.G.L.A. 233 § 78.

The ledgers are fully within the reach of G.L. c. 233, § 78. In Rubenstein, similar documents were admitted based on this statutory directive:

> Admitted in evidence was a schedule of insurance prepared by Boit, Dalton & Church, showing that the trustees were covered by Royal insurance policy 516688, effective October 10, 1969, to October 30, 1972. Royal argues that the judge erred in admitting the schedule of insurance as evidence. We perceive no error; the **document was correctly admitted as a business record**. Cf. G.L. c. 233, § 78; Commonwealth v. LaPlante, 416 Mass. 433, 441-442, 622 N.E.2d 1357 (1993).

Rubenstein, at 847 (footnote included)(emphasis added).

Deposition testimony by Keith Crider demonstrates his qualification to establish adequate foundation for admission of the ledgers as business records. (See CMFD, 8.9), "The foundation for the admissibility of a business record does not need to be established through the testimony of the preparer nor, in this case, the transmitter of

the record.). McLaughlin v. CGU Ins. Co., 445 Mass. 815, 840 N.E.2d 935, 938 (Mass., 2006.) (citations omitted).

Even if Kleenit has not authenticated the ledger sheets, Kleenit's burden to do so only exists at trial, not at summary judgment. "We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses." Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S.Ct. 2548 (1986).

The fact that the preparer of the ledgers is not a regular employee of Kleenit is immaterial. Harry Nason, who prepared these records in the normal course of Kleenit's business activity, was Kleenit's accountant for at least 40 years. He was also a member of Kleenit's board of directors. The records prepared by Nason were used to file annual tax returns for Kleenit. Keith Crider, Kleenit's former president and chief financial officer, also a trained accountant, had broad knowledge regarding the preparation and maintenance of the ledgers, and their critical use as the basis for preparing tax returns. These elements are more than required by the Massachusetts Supreme Judicial Court in <u>McLaughlin</u>:

> In Beal Bank, SSB v. Eurich, supra, we dealt with the admissibility of the computer printouts of a customer's loan account, which showed a deficiency due the bank. The records were generated by a company that serviced loans for the bank. We concluded that the records were admissible as business records even though no witness from the loan servicing company nor the bank testified that he or she had personal knowledge regarding the preparation or maintenance of the account records at issue. The records were admissible as business records based on testimony that the servicing company had an obligation to maintain the records, and that the bank relied on them. The affidavits in this case provide a similarly sufficient (if not stronger) basis on which to support the admission of the computer printouts as business records. See Federal Deposit Ins. Corp. v. Patel, 46 F.3d 482, 484 (5th Cir.1995) (finding that former bank employee and bank

loan officer had sufficient personal knowledge of bank procedures and computer record keeping information that their affidavits were admissible under business records exception and admissible as proper summary judgment evidence). Id. at 939.

McLaughlin, at 819, 820.

Utica's contention that the ledgers contain double hearsay is irrelevant because of their admissibility as a business record. Once it is established that the ledgers are business records, which they are, the question of hearsay is irrelevant. Mr. Crider has explained in detail the procedures by which the business information was recorded in the ledgers by Harry Nason, Kleenit's accountant. He also explained in his deposition how Nason obtained the insurance information recorded in the ledger - by personally inspecting the policies - as confirmed by the letter "P" in each entry line. Mr. Crider also explains that information in the ledger regarding payment of premiums for the policy was derived by Nason from the "one-write" system, which reproduces the information on the face of each check by carbon copy, a standard recording method in the early 1980's, before use of the computer was prevalent.

Utica's allegation that Nason never saw the policies is disproved by Crider's deposition testimony. As discussed above, the information on the checks regarding the Umbrella Policy is perfectly consistent with the ledger entries, leaving no doubt that the checks were premium payments for the Umbrella Policy, the material terms of which were recorded in the ledgers. For these reasons, Utica's attempt to discredit Kleenit's evidence as hearsay utterly fails.

**IV. UTICA'S ASSERTION THAT KLEENIT'S PROOF OF THE UMBRELLA POLICY DOES NOT MEET ITS BURDEN OF PROOF IS PREMATURE FOR THIS STAGE OF LITIGATION; REGARDLESS, KLEENIT NEVERTHELESS MEETS THE APPLICABLE BURDEN OF PROOF**

Kleenit will meet the applicable burden of proof at trial demonstrating the existence of the Umbrella Policy and, further, that coverage is warranted if the excess policy is reached. However, for purposes of summary judgment, the only burden Kleenit has, as the non-moving party, is to show that there is a genuine issue of material fact. The standard imposed on the moving party is much greater. The Reporter's Notes in the Massachusetts Rules of Civil Procedure, which are identical to the federal rule, explain the strict standard imposed on the moving party:

> The important thing to realize about summary judgment under Rule 56 is that it can be granted if and only if there is "no genuine issue as to any material fact." If any such issue appears, summary judgment must be denied. So-called "trial by affidavits" has no place under Rule 56. Affidavits (or pleadings, depositions, answers to interrogatories, or admissions) are merely devices for demonstrating the absence of any genuine issue of material fact. **Introduction of material controverting the moving party's assertions of fact raises such an issue and precludes summary judgment.**

M.R.C.P. 56 (Reporter's Notes) (Emphasis added).

As in Hoechst Celanese, if Utica wants to argue that Kleenit failed to meet its burden of proof regarding the existence of the Umbrella Policy, it will have to wait for a trial on this issue. "We venture to suggest that on the present record there is a question of fact regarding the ELAC policy even if the insured is bound in the end to present more than a preponderance of the evidence; somewhat less surely so, in the case of the ESLIC policy. The order denying the motions for summary judgment is affirmed, and the case is remanded for trial." Hoechst Celanese, at 612. In the meantime, in accordance with Rule 56, Kleenit has demonstrated through its list of material facts in dispute as further supported by affidavit, deposition transcript and documents produced in discovery, that genuine issues of material fact remain regarding the existence of the Umbrella Policy.

The cases cited by Utica are inapposite because they discuss the burden of insureds to prove the existence of policies at trial, not at summary judgment stage. Regarding the burden that Kleenit must ultimately meet at trial, Rubenstein settles the debate by deciding that the standard is by a preponderance of evidence:

> The evidence used to establish the existence and terms of the missing policies is in large part evidence in possession of the party against whom it is being offered. The more burdensome standard of proof of clear and convincing evidence ought not to be required. Our view comports with other cases which disfavor a heightened standard of proof except in quasi criminal circumstances. See Guardianship of Roe, 383 Mass. 415, 422-423, 421 N.E.2d 40 (1981) (holding that a higher standard of proof is required when person will suffer stigma comparable to that of criminal conviction and face loss of liberty); Medical Malpractice Joint Underwriting Assn. of Mass. v. Commissioner of Ins., 395 Mass. 43, 46, 478 N.E.2d 936 (1985) (holding that higher standard of proof is needed only "in a very limited number of cases where 'particularly important individual interests or rights are at stake' "). See also Employers' Liab. Assur. Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass.App.Ct. 465, 485, 684 N.E.2d 600 (1997) (mentions the presence of the "careful and thoughtful argument for preserving the preponderance rule in lost policy matters" in Remington Arms Co. v. Liberty Mut. Ins. Co., 810 F.Supp. at 1423-1426).

Rubenstein, at 846

It is Kleenit's view that based on the discussion, supra, Kleenit has demonstrated by a preponderance of the evidence and by the clear and convincing standard that the Umbrella Policy exists. Furthermore, the material terms of the policy are demonstrated by the detailed information provided by the ledgers and the corresponding cancelled checks establishing that the premiums were paid by Kleenit and received by Utica. This evidence surpasses that which was offered by the insureds in Hoechst Celanese, which resulted in a denial of the insurer's motion for summary judgment, as affirmed on appeal.

## VII.    CONCLUSION

WHEREFORE, Kleenit respectfully request that this court deny Utica's Motion for Partial Summary Judgment and declare that genuine issues of material fact exist as to the existence of the Umbrella Policy, or, alternatively, that as a matter of law, the policy exists.

Respectfully submitted,

KLEENIT, INC.

By its Attorney,

\_\_/s/   Donald P. Nagle_____
Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970

Date: September 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2006, I electronically filed Plaintiff's Response to Utica National Insurance Company's Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Defendant, Utica National Insurance Group (Electronically)
Richard E. Heifetz, Esq.
Danielle M. Maloney, Esq.
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108

Defendant Travelers Indemnity Company (Electronically)
Joseph S. Berman, Esq.
Berman & Powell
210 Commercial Street
Boston, MA 02109


Dated: September 25, 2006

/s/ Donald P. Nagle
Donald P. Nagle, Esq. (BBO # 553544)
Law Office of Donald P. Nagle, P.C.
5 Main Street Extension, Suite 300
Plymouth, Massachusetts 02360
(508) 732-8970