# United States District Court
# District of Massachusetts

KLEENIT, INC.,
     Plaintiff,

     v.                             Civil Action No. 04-10351-RBC[1]

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE,
UTICA NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND CASUALTY
     Defendants.

# MEMORANDUM AND
# ORDER ON MOTION FOR PARTIAL
# SUMMARY JUDGMENT BY DEFENDANT
# TRAVELERS INDEMNITY COMPANY (#93)

COLLINGS, U.S.M.J..

## I. Introduction

This case involves the existence of decades-old insurance policies, purportedly dating back to the mid-sixties. Both the original owner and

---

[1]

    On November 17, 2004, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. §636(c). (#67)

accountant of the insured business are now deceased; the insurance agency that handled most of the insured's policies during the relevant time frame is now defunct; and neither the insurer nor the insured can locate copies of the putative policies.  Against this backdrop, the defendant insurance company has moved for summary judgment.

Plaintiff Kleenit, Inc. ("Kleenit"), the owner and operator of a dry-cleaning chain, seeks insurance coverage from Defendant Travelers Property and Casualty Company ("Travelers")  for the environmental remediation of sites in Acton and Chelmsford, Massachusetts.  Kleenit contends that Travelers insured Kleenit under a comprehensive general liability ("CGL") policy with annual policy periods from August 1, 1964 to August 1, 1967 and from August 1, 1967 to August 1, 1970. Travelers does not contest that it issued a CGL policy to Kleenit for the period 1970-1973 but argues that summary judgment should be entered in favor of Travelers due to a complete lack of evidence of insurance coverage for the period 1964-1970.  Travelers moved for partial summary judgment (#93) on August 23, 2006, and submitted a memorandum of law in support of partial summary judgment (#94), as well as a Statement of Undisputed Material Facts in Support of the Motion for Partial Summary Judgment (#95). Kleenit filed its Opposition to the Motion for Partial Summary

Judgment (#105) on September 25, 2006, along with its Concise Statement of Material Facts Asserted to be in Dispute (#106).  Travelers submitted a reply brief (#111) on October 20, 2006.  On March 9, 2007, the Court held a hearing on the matter.  This dispositive motion is therefore poised for decision.

## II.  The Facts

Kleenit owns and operates several dry-cleaning stores in Massachusetts. (#95 ¶ 1) The Massachusetts Department of Environmental Protection issued a Notice of Responsibility to Kleenit regarding its facilities in Chelmsford on June 19, 2001, and Acton on December 30, 2002.  (#95 ¶ 2)  Kleenit submitted claims regarding the notices of responsibility to several insurance companies, including Travelers.  (#95 ¶ 3)  Travelers issued a Business Owners insurance policy to Kleenit for the coverage period of August 28, 1970 until August 28, 1973, with policy number  ND 9087145, and with limits of $100,000 per occurrence.  (#95 ¶ 4; Exh. B)  Travelers also found reference to another policy of insurance for the period August 1, 1967 to August 1, 1970,  with policy number ND 3873892, but was unable to find the actual policy.  (#106 ¶ Exh. E at 2)

Russell D. Munro ("Munro"), Kleenit's owner for all the relevant time

periods, was the person exclusively responsible for procuring insurance for Kleenit. (#95 ¶ 10)  Munro died in 1985. (#95 ¶ 10)  Harry Nason ("Nason"), who is also now deceased, was Kleenit's accountant from the 1950s to 2001-2002. (#95 ¶ 9)  Keith Crider ("Crider"), a former president of Kleenit, began working at Kleenit in October 1967, but he did not become involved with purchasing insurance for Kleenit "until several years later." (#95 ¶ 10)  Crider testified that Nason "kept very fastidious records," and "kept every policy number" that Kleenit ever had. (#95, Exh. D at 58)  According to Crider, Kleenit obtained all its insurance through Milton Estabrook ("Estabrook"), an agent for E.J. Wells Insurance Agency ("E.J. Wells") during the 1960s and 1970s. (#95, Exh. E at 62)   Estabrook brokered insurance policies for Travelers and other insurance companies. (#95 ¶ 8)

When Nason retired in about 2001, Nason transferred his accounting records directly to Kleenit's offices. (#95, Exh. D at 59-60)   Kleenit has produced portions of accounting ledgers maintained by Nason. (#95, Exh. C & F)  The ledger entries show a number of payments to Estabrook during the years 1965 and 1966. (#95, Exh. C)  The ledger entries for 1968-1970 indicate payments for "prepaid insurance" to Travelers Indemnity Co. and reference the policy number ND 3873892.  (#95 Exh. F)

4

### III.  Legal Framework

### A.  Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations and citation omitted).  The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists." *Cordero-Soto v. Island Finance, Inc.*, 418 F.3d 114, 119 (1st Cir. 2005) (quoting *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1st Cir. 2004)); *see also Mulvihill*, 335 F.3d at 19.

When considering whether to grant summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgement is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006).

Despite this "notoriously liberal" standard, *Mulvihill*, 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat." *Kearney v. Town of Wareham*, 316 F.3d.l8, 22 (1st Cir. 2002). A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] 'genuine' issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (internal quotations and citations omitted). A "material fact" is "one which might affect the outcome of the suit under the governing law." *Poulis-Minott v. Smith*, 388 F.3d 354, 363 (1st Cir. 2004) (internal quotations and citation omitted). The party objecting to summary judgment must set forth specific facts proving a genuine issue of

material fact in order to "deflect the swing of the summary judgment scythe."
*Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005) (quoting *Mulvihill v.
Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). Where "the non-moving
party rests 'merely upon conclusory allegations, improbable inference, and
unsupported speculation,'" summary judgment will be appropriate. *Forestier
Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006) (quoting
*Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (further
internal citations omitted)); *see also Nieves-Luciano v. Hernandez-Torres*, 397
F.3d 1, 5 (1st Cir. 2005) (mere speculations raised by the nonmoving party that
are unsubstantiated will not be sufficient to defeat summary judgment).
Instead, Rule 56(c) "mandates the entry of summary judgment, after adequate
time for discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element essential to that
party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B.  Relevant Massachusetts Law

"Under Massachusetts law, the insured bears the initial burden of proving
that an injury occurred within the coverage ambit of the insurance policy." *U.S.*

*Liability Ins. Co. v. Selman,* 70 F.3d 684, 688 (1st Cir. 1995) (citing *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68, 74 (1993)). Then, after "the insured establishes basic risk coverage, the devoir of persuasion shifts to the insurer to prove a defense to coverage, say, the applicability of a policy exclusion or the insured's failure to comply with conditions precedent." *Id.* (citing *Gusson v. Boston Mut. Life Ins. Co.*, 326 Mass. 571, 95 N.E.2d 670, 672 (1950)); *see also Amtrol, Inc. v. Tudor Ins. Co.*, 2002 WL 31194863, *5 (D. Mass. Sept. 12, 2002) (under Massachusetts law, "[t]he initial burden lies with the insured to prove that the underlying facts state a claim for which the insurance policy provides coverage . . . . Once the insured has met this burden, the burden shifts to the insurer to establish that an exclusion of coverage applies") (citations omitted).

Here, neither Kleenit nor Travelers has been able to produce a physical copy of a policy covering the years 1964-1970. In such circumstances, the proponent of a lost insurance policy "bears the burden of proving that the instruments were issued, and he must also prove their terms." *Employers' Liability Assurance Corp., Ltd. v. Hoechst Celanese Corp.*, 43 Mass. App. Ct. 465, 484 (1997) (citing *Markline Co., Inc. v. Travelers Ins. Co.*, 384 Mass. 139, 140

(1981)). Under Massachusetts law, Kleenit must show by a preponderance of evidence both the existence and contents of a lost or missing policy. *Rubenstein v. Royal Ins. Co. of America*, 44 Mass.App.Ct. 842, 846 (1998) (rejecting clear and convincing evidence as standard of proof in lost policy cases)[2]. A proponent of a lost policy may effectively reconstruct the existence and contents of the lost policy using secondary evidence[3] such as " business records, underwriter's folios, or billings of the insurance company to the insured." *Rubenstein*, 44 Mass. App. Ct. at 846; *see also* Barry R. Ostrager & Thomas R. Newman, 2 *Handbook on Insurance Coverage Disputes* § 17.04, at 1150 (13th ed.

---

[2]

The Court assumes that the preponderance of the evidence standard applies in federal court sitting in diversity. *Servicios Comerciales Andinos, S.A. v. General Elec. del Caribe*, 145 F.3d 463, 478 (1st Cir. 1998) ("A state law 'that would be controlling in an action upon the same claim by the same parties in a State court' is substantive for *Erie* purposes if it would 'significantly affect the result of a litigation for a federal court to disregard it.'") (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). The Court recognizes that federal courts have arrived at different conclusions on this question. *See, e.g.*, *Metlife Capital Corp. v. Westchester Fire Ins. Co.*, 224 F.Supp.2d 374, 384 (D. P.R. 2002) (applying clear and convincing standard in lost policy case and citing federal cases applying different standards). Nevertheless, assuming Massachusetts does not govern the question, the Court is persuaded by those federal cases that apply the usual preponderance of the evidence standard in lost policy cases. *See, e.g., Coltec Industries, Inc. v. Zurich Ins. Co.*, 2002 WL 31185789, **4-5 (N.D. Ill. Sept. 30, 2002); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 810 F. Supp. 1420, 1423-1425 (D. Del. 1992) (reasoning that usual civil standard applies in establishing existence and terms of lost policies), *cited in Rubenstein,* 44 Mass.App.Ct. at 846. Thus, in the Court's view, the preponderance of the evidence standard governs regardless of which law (federal or Massachusetts) is applied.

[3]

Fed. R. Evid. R. 1004 governs whether Kleenit may properly introduce secondary evidence to prove the terms of the lost policy. Under the rule, whoever "seeks to introduce secondary evidence must show that he has used all reasonable means to obtain the original, i.e., such search as the nature of the case would suggest." *Sylvania Elec. Products, Inc. v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir. 1965) (citations omitted). Travelers has not objected to the diligence of Kleenit's search, nor does Travelers contest Kleenit's use of secondary evidence here. The Court finds that, given the lapse of time here and Travelers' non-opposition, the use of secondary evidence in this case is appropriate.

2006) (in establishing existence and terms of lost policy, "[d]ocumentary proof can consist of correspondence which refers to the lost policy; financial statements; annual reports; minutes of meetings of insurance committees or the company's board of directors; check registers, ledgers or other accounting records; certificates of insurance; broker's placing slips; and contracts which refer to insurance").

### IV. Analysis

Two policies are in question here. Kleenit alleges the existence of a CGL policy for the years 1964 to 1967 and for the years 1967 to 1970. The evidence that Kleenit offers in opposition to the summary judgment motion differs for the two time frames, and the Court considers them *seriatim*.

### A. Policy Period 1964-1967

Kleenit has submitted voucher records for certain months from the years 1965 and 1966 in order to show that Travelers provided liability insurance for the period 1964-1967. The ledgers were made and kept by Harry Nason while he was Kleenit's outside accountant and were then passed on to Keith Crider upon Nason's retirement in about 2002. (#95, Exh. D. at 60)  The ledger sheets reflect payments for "prepaid insurance" to Milton Estabrook, the

insurance agent at E.G. Wells.   The following entries are typical: the period ending July 24, 1965 shows an entry to Milton Estabrook dated 6/21/65 for $193.03; the period ending September 18, 1965 shows payments to Estabrook for $16.80, $1608.00 and $323.00.  (#95, Exh. C)

In addition to the ledger entries, Kleenit relies on the deposition testimony of Keith Crider.  Crider began working at Kleenit in October, 1967.  (#95, Exh. E at 50)  Crider testified in deposition that when he began working at Kleenit "everything was Travelers; the automobiles, the boiler insurance, the SMP was always Travelers until 1973, from all the years that I was there."  (#95 Exh., E at 62)  From this evidence, Kleenit asks the Court to infer that Travelers must have issued an insurance policy to Kleenit for the period 1964 to 1967.

At the threshold, Travelers has objected to the admissibility of the ledger sheets as hearsay; it argues that the ledger sheets do not fall within the business records exception to the hearsay rule, Fed. R. Evid. 803(6).  The Court need not dwell here on the evidentiary question concerning these particular entries because the Court concludes that, even if the entries were admissible, they, along with Crider's testimony, are insufficient to establish a dispute of fact as to the existence and terms of the missing policy for the years 1964-1967.  First, Crider testified that he was not involved in negotiating the terms of insurance

11

between the years 1967-1970, (#95, Exh. E at 50); he is thus not competent to testify to the terms of the alleged insurance policy. When asked at deposition about a specific voucher entry showing "prepaid insurance" and "Purchased from Milton Estabrook," Crider testified as follows:

> Q.    Do you have any way of determining whether that, what type of insurance, if it was insurance, that payment was for?
>
> A. Well, obviously I don't. But the only thing is, what I'm making a point to you, that when Mr. Nason put that in the book, I'm sure that one was for one area, one was for another, another [sic]. It indicated that Travelers had everything, virtually, at that point.

(#95, Exh. E. at 62-63)

At best, then, the ledger entries establish that Kleenit made payments to Milton Estabrook for some sort of insurance. Even assuming, favorably to Kleenit, that the payments were indeed payments of premiums to Travelers, the entries say nothing about the type of insurance involved, nor do they establish in any way the terms of the missing policy. Further, Crider, the person in the best position to testify at trial on the issue, would offer only surmise and conjecture concerning the existence and terms of the missing policy here. *Cf*. *Metlife Capital Corp.*, 224 F. Supp.2d at 384 (noting that witness with

familiarity of the terms of the original policy may testify to terms of lost policy).

For these reasons, the Court concludes that summary judgment is warranted

because Kleenit has failed to adduce sufficient evidence of the terms or

existence of the missing policy for the years 1964 to1967.

### B. Policy Period 1967-1970

Kleenit's submissions on the existence and terms of the policy for the

period 1967-1970 are somewhat more promising. First, Kleenit points out that

Travelers admits to having located a reference to policy number ND 3873892.

(#106, Exh. E)   The Court notes that Travelers itself appears to have

characterized the policy as one for comprehensive general liability.  (#106 Exh.

E)   Further, Kleenit points to ledger sheets entitled "Prepaid Insurance"

prepared by Nason, dated June 29, 1968, June 28, 1969, and June 27, 1970,

which read respectively (to the extent they are legible) as follows :

> Travelers Indemnity Co     ND3873892   M    Business Owners Policy
> [illegible] P/p 45000/60000   8-28-67   3 yr   8-28-70   549.95

(#106, Exh. D, Tab 2)

> [Travelers Indemnity Co.]  3873892     [Estabrook]  Business Owners
> Policy  [illegible]  45000/60000 8-28-67   3   8-38-70

(#106, Exh. D, Tab 3)

> The Travelers Indemnity Co.  3873892   Estabrook   Business Owners

[illegible]

(#106, Exh. D, Tab 4)

Finally, Kleenit points to two single pages purportedly taken from its annual reports for 1967 and 1968 containing a summary of Kleenit's[4] insurance coverage.   The reports state that Kleenit held comprehensive and general liability insurance, and appear to state the limits of the coverage.  (#106, Exh. 5 & 6)

Travelers challenges the admissibility of the ledger sheets as hearsay.  In addition, the Court notes that the pages taken from the annual reports pose certain evidentiary problems.  Though the Court concludes below that the pages from the annual report are inadmissible because they have not been properly authenticated, the Court notes that the case does not turn on the inadmissibility of these documents.  Rather, even assuming the admissibility of all Kleenit's summary judgment evidence here, the Court concludes that Kleenit has created at most a dispute of fact on the existence of the lost policy, but has failed to produce sufficient evidence concerning the material terms of the missing policy,

---

[4]

    In fact, the page from the annual report refers to companies called "Bubble-it" and "Care Cleaners." The deposition testimony of Keith Crider refers to "the grand opening of Care Cleaners in 1960," (#106, Exh. C at 60), but otherwise Kleenit points to nothing in the record to support a connection between Kleenit and these other companies.

an essential element of its claim under Massachusetts law.

### 1. Evidentiary Issues

### a. The Annual Reports

Although Travelers has not objected to the admissibility of the reports, the Court cannot consider these documents because they have not been properly authenticated. Each document submitted in support of summary judgment must either be properly authenticated, or must be self-authenticating under the Federal Rules. *See Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000); *see also Scott v. Edinburg*, 346 F.3d 752, 760 n. 7 (7th Cir. 2003) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence.") (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379-80 & 382-84 (1998)). The pages from the annual reports here were attached to the affidavit of Kleenit's attorney, but Kleenit's attorney is not a person through whom the reports could be admitted into evidence. *Cf. Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) ("The use of affidavits by counsel is in certain carefully confined situations undoubtedly appropriate, but it is a

tactic fraught with peril, and counsel must remember that the requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion."). In short, nothing in the record supports the authenticity of these records, and the Court will not consider them.

### b.  The Ledger Sheets

Travelers argues that the Court should not consider the ledger sheets because they are inadmissible hearsay, and do not qualify under any exception to the hearsay rule. In particular, Travelers argues that the ledger sheets do not qualify under the business records exception to the hearsay rule, Fed. R. Evid. 803(6). The Court need not decide that contention because the Court concludes that the ledger sheets are admissible under the ancient documents exception to the hearsay rule, Fed. R. Evid. 803(16), which creates a hearsay exception for statements "in a document in existence twenty years or more the authenticity of which is established." Fed. R. Evid. 901(b)(8) governs the authenticity of ancient documents, and if a document meets the requirements of Rule 901(b)(8), statements within the document qualify as exceptions to the hearsay rule under Fed. R. Evid. 803(16). *See* Jack B. Weinstein & Margaret A.

16

Berger, 5 *Weinstein's Federal Evidence*, § 803.18 (Matthew Bender 2nd ed. 2007).

Rule 901(b)(8) provides that

> a document or data compilation is sufficiently
> authenticated to be admissible if the proponent shows
> that it '(A) is in such condition as to create no suspicion
> concerning its authenticity, (B) was in a place where it,
> if authentic, would likely be, and (C) has been in
> existence 20 years or more at the time it is offered.'

*Weinstein's Federal Evidence, supra* at § 803.18 (quoting Fed. R. Evid.

901(b)(8)). Crider's deposition testimony is sufficient to authenticate the

ledger sheets under Rule 901(b)(8). There is little question that the documents

have been in existence for more than twenty years: Crider testified that Nason

would have prepared the documents in connection with Kleenit's year-end

accounting practices. (#95, Exh. E at 84) Finally, the documents were found

in a place of "natural custody" for the items. Wright & Gold, 31 *Federal Practice*

*and Procedure*, § 7113, at 141 (2000). Crider testified that Nason kept the

ledger sheets in his office until he retired in 2001 or 2002, and that Nason

transferred the documents to Kleenit's offices on his retirement. (#95, Exh. D

at 60; Exh. E at 80) *Cf. Federal Practice and Procedure, supra*, at 140 ("records

purportedly of a particular entity found with other records of that entity or on

its premises may satisfy this aspect of the rule"). Thus, Crider's testimony

establishes that the documents were in a place (Nason's office) where they would likely be if authentic. Nor are the ledger sheets in a condition that raises questions as to their authenticity: though the ledgers are at times illegible, and the notations indecipherable, those problems pertain to the probative value of the ledgers, and not their authenticity. *See, e.g., Federal Practice and Procedure, supra*, at 136-137 & n. 28 (the focus of the rule is on "whether the condition of an item provides reason to doubt that the item is what it is purported to be" and not on whether "the contents of the document or data compilation make untrustworthy assertions of facts"); *see also Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1376 (3rd Cir. 1991) ("The determination that a set of documents are, indeed, *prima facie* authentic in no way precludes counsel from challenging the content of the documents or from arguing that missing documents subject the contents to a different interpretation."); *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir.) ("Although the Rule requires that the document be free of suspicion, that suspicion goes not to the content of the document, but rather to whether the document is what it purports to be."), *cert. denied*, 476 U.S. 1153 (1986). Nothing here suggests anything suspicious about the condition or provenance of the ledger sheets, and Travelers

has made no complaint on this score.  Indeed, at oral argument, Travelers conceded that it could proffer no reason to doubt the authenticity of the documents.  The Court will consider the ledger sheets as proper summary judgment material.

## 2. The existence and terms of the 1967-1970 policy

Based on the admissible evidence of record, then, the ledgers reflect payments to Travelers, reference the same policy number that Travelers has conceded it identified in its own records, and identify the type of policy –"Business Owners Policy"– that is at stake.   From this evidence, the Court assumes favorably to Kleenit that the entries are sufficient to create a triable issue on the existence of the insurance policies for the time frames indicated, particularly because Travelers itself has conceded that it has uncovered references to a policy with the number ND 3873892, and Travelers itself appears to have characterized the insurance as comprehensive general liability insurance.  However, although the contents of the ledger sheets permit the inference that Kleenit purchased business owners insurance from Travelers, the ledger sheets say nothing about the specific material terms of the policies, and Kleenit has produced no other evidence to establish the material terms, as Massachusetts law requires.  Indeed, the summary judgment record as a whole

suggests that Kleenit lacks any such proof.

At deposition, Crider testified that although he began working at Kleenit in October 1967, he was not involved in negotiating the insurance contracts "until several years later." (#95 ¶ 10) Rather, Crider testified that his father in law, Russell Munro, was responsible for procuring insurance for Kleenit during the relevant time frames. (#95 ¶ 10) At deposition, Crider testified as follows about the particulars of the ledger entry, showing "Business Owner's Policy" and referencing No. 3873892:

> Q.  Then you'll see to the right it actually goes from column 3 to column 4, the words, "Business Owner's Policy."  Do you see that?
>
> A.  Yup.
>
> Q.  Do you have any indication whether or not the terms of that policy included liability coverage?
>
> A.  I'm not sure.

(#95, Exh. E at 77-78)   So, Crider's testimony contains no indication about the terms and conditions of the missing policies.  Nor can it:  Crider, by his own admission, lacks any personal knowledge of the content of the missing policies, and Kleenit does not maintain otherwise.  On this record, while one might infer the dates of the policies, and perhaps even the type of policy, Kleenit has failed

completely to produce any competent evidence establishing the specific terms and provisions of the policy. *Cf. Metlife Capital Corp.,* 224 F. Supp.2d at 386-387 (even assuming *arguendo* that insured had established the existence of the missing policy through "certificates and the confirmation of insurance [that] outline the type of coverage, the dates of coverage, and coverage amounts," none of those documents specify or describe any specific policy provisions and "[a]bsent proof of or reference to the specific language, the Court can make no determinations as to what duties [the insurer] may have owed [the insured] under the policy")[5]; *see also Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1131-1132 & n.2 (5th Cir. 1992) (noting that proof of the existence of policies "does not obviate . . . burden to also prove their contents"; evidence of policy numbers, dates of coverage, and coverage amounts of CGL policies insufficient for the court to make coverage decisions without proof of the actual policy terms) (applying Texas law, which requires proof of contents of missing

---

[5]

*Metlife Capital Corp.* was decided following a bench trial, and the court held that the proponent of a lost policy must establish the terms and conditions of a lost policy by "clear and convincing, or at least, strong and conclusive evidence." *Metlife Capital Corp,* 224 F. Supp.2d at 384. Despite these distinctions, the reasoning in *Metlife Capital Corp.* applies here. Kleenit, both in its opposition and at oral argument, repeatedly collapsed the crucial distinction between establishing the existence of a lost policy and its terms.

policy)[6] .

Kleenit suggests off-handedly in its opposition that "the material terms of the policy are demonstrated by the detailed information provided by the ledgers and the subsequent CGL policies, which Travelers concedes provides $100,000 coverage." (#105 at 14)  In other words, Kleenit suggests in its brief that the 1970-1973 policy supplies the likely terms of the missing contract.[7]  It is true that some cases have held that the material terms of a missing policy can be established through competent testimony suggesting that a later policy was probably a renewal of the earlier policy.  *See, e.g., Remington Arms Co.*, 810 F. Supp. at 1427 (putative insured produced, *inter alia*, "policies from a year prior to ones in question which have been marked-up for renewal and policies for a year subsequent to ones in question which have been marked as renewals"); *Unimax Corp. v. Lumbermens Mut. Cas. Co.*, 908 F. Supp. 148, 159-160

---

[6]

Notably, in *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, the insured had sought to establish the missing policies' terms by introducing a specimen policy in use during the relevant years.  Although the Fifth Circuit excluded the use of the specimen copy on evidentiary grounds not relevant here, in an appeal after remand, the Fifth Circuit held that the evidence introduced at trial supported the district court's conclusion that the terms of the missing copy matched those of the specimen policy.  *See Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1051 (5th Cir. 1996).

[7]

At oral argument, when the Court sought to draw a distinction between establishing the existence of the contract and its material terms, and pressed Kleenit on what evidence might supply the terms of the missing policy, Kleenit offered no additional argument on how the 1970-1973 policy might be of help.

(S.D.N.Y.1995) (denying insurer's motion for summary judgment on lost policy issue, where insured produced two policies containing identical language that preceded missing policy, and missing policy was referenced in existing policy); *Township of Haddon v. Royal Ins. Co. of Am.*, 1996 WL 549301, at * 3 (D. N.J. Sept. 19, 1996) ("The nearly identical wording of the relevant terms of the policies immediately preceding and immediately following the lost policy strongly suggests that the relevant terms of the missing policy are, too, nearly identical."); *cf. Boyce Thompson Inst. for Plant Research, Inc. v. Ins. Co. of North America*, 751 F. Supp. 1137, 1141 (S.D.N.Y. 1990) (affidavit of employee of insurance broker asserting that terms of existing policies were the same as terms of previous missing policies insufficient to establish dispute of fact on material terms of missing policies)[8].

There are a several problems with Kleenit's argument in this case, however. First, it is just that–argument. Here, Kleenit has pointed to no evidence supporting its assertion that the terms of the 1967-1970 policy can be

---

[8]

    *Boyce Thompson Institute for Plant Research v. Insurance Co. of North America* applied a "clear and convincing" standard in concluding that the putative insured had failed to establish the existence and terms of lost policies. Here, Kleenit has come forth with no competent evidence (such as the testimony of a witness with knowledge of the contents of the missing policy) that would permit the inference that the existing policy was a renewal of the missing policy. Along with a copy of the renewal policy, such evidence, in the Court's view, might have sufficed under the preponderance of the evidence standard to create a triable issue on the material terms of the missing policy.

inferred from the 1970-1973 policy: there is no evidence in the record to suggest that the 1970-1973 policy was a renewal of the previous policy, and there is no one competent to testify to that fact. Crider, Kleenit's only possible witness, testified that he was not involved in negotiating the terms of the insurance contracts during the relevant time frame. Because Kleenit has not introduced any competent evidence that the existing policy is a renewal, any inference that the 1964-1967 policy contained the same terms would be purely conjectural. *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir. 1992) (at summary judgment stage "[m]ere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact"); *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 684 (1st Cir. 1994) (at the summary judgment stage, "[t]he evidence cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial").

Second, although presumably Kleenit has a copy of the 1970-1973 policy, it did not submit the policy with its summary judgment materials. Although Travelers has submitted two unauthenticated pages of the existing policy (#95, Exh. A), Kleenit's burden is to establish the material terms of the policy so that,

ultimately, it can establish that its claims come within the ambit of coverage. Without a copy of the relevant coverage language before it (and any connection between the 1967-1970 policy and the later policy), Kleenit's suggestion that the 1970-1973 policy establishes the terms of the previous policy is pure surmise, and the Court need not credit that conjecture.[9]   Under the circumstances, the Court must conclude that Kleenit has not put forth any evidence of the material terms of the 1967-1970 policy.

Finally, it is worth noting that a putative insured can avoid summary judgment on the issue of the material terms in a lost policy case in a number of ways, none of which Kleenit has attempted here. As noted above, an insured may seek to create a reasonable inference that a later policy is a renewal of a previous policy.   In addition, a putative insured may seek to create a trial worthy dispute of fact by introducing evidence that standard policy forms or specimen forms reasonably supply the terms of the lost policy. *See, e.g.,* 2 *Handbook on Insurance Coverage Disputes, supra,* § 17.04, at 1150 ("When the

---

[9]

*American States Ins. Co. v. Mankato Iron & Metal, Inc.,* 848 F. Supp. 1436 (D. Minn. 1993) provides contrast.  There, the putative insured survived a motion for summary judgment in a lost policy case by submitting: evidence of the missing policy numbers and effective dates of the policies, the fact that the insurer had issued the policy, and affidavit testimony that the missing policies were CGL policies. *Id.* at 1440-1441.  But beyond this evidence, the insured also "offered evidence of the policy terms of the missing policies by offering the coverage clause that has appeared without substantial variation in CGL policies for four consecutive years." *Id.* at 1441.  From this evidence, the court concluded that a jury could reasonably find that the four subsequent CGL policies contained substantially the same language as the missing policy.

type of policy is known, it may be possible to establish the terms and conditions of the policy by reference to a standard form, such as the Comprehensive General Liability policy developed by the Insurance Services Office [ISO] or one of its two predecessors"); *see also SCA Disposal Services of New England, Inc. v. Central Nat'l Ins. Co. of Omaha*, 1994 WL 879687 (Mass. Super. Apr. 12, 1994) (summary judgment denied under clear and convincing standard where the plaintiff-insured offered the standard form state provisions from a contemporaneous policy to prove the terms and conditions of the missing policy); *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp*., 302 F.3d 83, 93 & n.6 (2nd Cir. 2002) (determining that putative insured had adduced sufficient evidence to avoid summary judgment where insured produced evidence establishing existence of CGL policy for given years, and "[w]ith respect to the *terms* of the CGL policies," the parties agreed that any CGL policy issued by insurer during the relevant years would have been insurer's "standard" or "typical" policy); *Servants of Paraclete, Inc. v. Great American Ins. Co.*, 857 F. Supp. 822, 829 (D. N.M. 1994) (concluding that genuine issue of material fact existed as to whether insured had shown existence and terms of insurance policy by preponderance of the evidence, where insured submitted, *inter alia*,

specimen policies and policy jacket forms from insurer's records), *amended on reconsideration in part on other grounds*, 866 F. Supp. 1560 (D. N.M. 1994); *Americhem Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F. Supp. 1143, 1146 (W.D. Mich. 1995) (where no insured's witness could recall the policies' specific language, insured showed the terms by offering specimen copies of a declarations form and a coverage form, which insured asserted were the state-approved comprehensive general liability forms that insurer used during relevant time frame, and insurer stipulated that it sold only state-approved forms); *Gold Fields American Corp. v. Aetna Cas. and Sur. Co.*, 661 N.Y.S.2d 948, 951 (N.Y. Sup. Ct. 1997) (noting that the question at summary judgment "boil[ed] down to whether plaintiff ha[d] sufficient proof to raise an issue of fact with respect to the terms of the policies" and holding that plaintiff-insured had adduced sufficient proof by asserting that insurer "was a member of the National Bureau of Casualty Underwriters ('NBCU') in the 1950's and 1960's" and that insurer had "on occasion, used specimen forms that followed the NBCU forms for CGL policies").

Employers' Liability Assurance Corp. v. Hoechst Celanese Corp., 43 Mass. App. Ct. 465 (1997), a case on which Kleenit relies, is instructive in this regard.

There, the Massachusetts appeals court found that summary judgment was properly denied on the basis of the affidavit of the insured's former insurance manager who produced a chart of excess and umbrella policies *and* on the finding by the trial judge "that the insurers' standard policy forms and policy jackets provided the likely texts of these lost policies." *Id*. at 484. Thus, in *Employers Liability Assur. Corp., Ltd.* there was some evidence of material terms. Here, by contrast, Kleenit has offered nothing to suggest the likely terms of the missing policy.

Further, even if Kleenit had submitted a standard form policy, "courts generally will require more proof than that the insurer used standard forms." *See, e.g.*, 2 *Handbook on Insurance Coverage Disputes, supra,* § 17.04, at 1151 (and cases cited); *see also SCA Disposal Services of New England, Inc.,* 1994 WL 879687, at *10 (noting that "[b]ecause insurance policies are often customized or manuscripted, the use of a standard form in one policy is not by itself proof that it was included in a different policy," but denying insurer's motion for summary judgment where, in addition to contemporaneous standard policy, officer in charge of the insured company's national insurance program averred that, based on first-hand knowledge, the terms of the missing policy were

28

similar to those found in the standard policy).   Here, not only has Kleenit failed
to submit evidence of coverage terms via a specimen or standard form (or a
policy in any form), it has also failed to produce evidence that would permit the
inference that Travelers' standard policy form of the time was the likely basis
for the missing policies here.[10]   Indeed, Kleenit has apparently made no effort
to depose a Travelers' representative about Travelers' use of standard forms
during the relevant time frame,[11] and the time for discovery has passed.   *Cf.*
*Marathon Flint Oil Co. v. American States Ins. Co.*, 810 F. Supp. 850, 853-854
(E.D. Mich. 1992) (leaving open the question whether plaintiff had "a right to
argue that the language of its policy must have been of a particular type given
the alternative CGL policies offered by [insurer] during the years in question,"
but granting plaintiff-insured's motion to compel discovery filed along with
opposition to motion for summary judgment, where plaintiff argued that if

---

[10]

   Indeed, to the extent that the Court considers the two pages of the existing policy appended to
Traveler's papers, the policy appears to contain a number of "forms, endorsements, and supplemental
contracts." (#95, Exh. B at 2)  This language tends to undercut any argument that a standard form policy
could have supplied the missing terms.

[11]

   It may be, for example, that the prefix "ND" is significant.   *See* Barry R. Ostrager & Thomas R.
Newman, 2 *Handbook on Insurance Coverage Disputes* (13th ed. 2006) (noting that "[a]lpha-numeric
designations or policy number prefixes may be of assistance in establishing the nature of coverage").   The
Court notes that Travelers appears to have characterized the 1967-1970 policy as one for "comprehensive
general liability." (#106, Exh. E at 2)  But in the absence of any evidence suggesting that it was more likely
than not that the terms in the two policies were the same, a jury would be left only to speculate as to the
relationship between the two numbers.

defendant insurer produced sample insurance forms, plaintiff would be able to establish coverage).  Kleenit never requested additional discovery pursuant to Fed. R. Civ. P. 56(f), and so its opposition to summary judgment rises or falls on the evidence now before the Court.  Without even a hint that the terms of the missing policy matched those of a standard policy, the Court cannot indulge a speculative inference in Kleenit's favor on this point.

Finally, for contrast, Travelers points to the evidence produced at trial in *Rubenstein v. Royal Insurance Co. of America*, 44 Mass. App. Ct. at 847.  In *Rubenstein*, the insured had produced the following evidence:

> the judge heard extensive testimony concerning the lost policies including trustee Paul Rubenstein's recollection of purchasing insurance through Boit, Dalton & Church, an insurance agency.  Admitted in evidence was a schedule of insurance prepared by Boit, Dalton & Church, showing that the trustees were covered by Royal insurance policy 516688, effective October 10, 1969, to October 30, 1972.  Specimen forms of the type of policy used by Royal at the time were submitted in evidence.  Internal company memoranda forwarded to underwriters stated that pollution exclusion provisions were not in effect when policy 516688 was in place and that riders needed to be attached to all such policies.  Two employees of Royal recalled being involved when the policy in question was written.

*Rubenstein*, 44 Mass. App. Ct. at 847 (footnote omitted).  While Kleenit is

correct in noting that *Rubenstein* did not involve a motion for summary judgment, Kleenit nevertheless is obliged on summary judgment to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp.,* 477 U.S. at 322. As it is, Travelers has met its burden for summary judgment, demonstrating an absence of a genuine issue of material fact on the terms of the missing policy. Although the Court concludes that Kleenit has succeeded in creating a triable issue on the existence of the missing policy, Kleenit has offered no evidence – such as specimen forms or indeed even basic policy language – to create a triable issue on the likely terms of the missing policy.[12] Thus, the Court concludes that Travelers is entitled to judgment as a matter of law.

## V. Conclusion

For the foregoing reasons, the Motion for Partial Summary Judgment by Defendant Travelers Indemnity Company (#93) is ALLOWED.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS

---

[12]

As noted previously, the insurer bears the burden of establishing any exclusions under Massachusetts law. If Kleenit had submitted a specimen form from the relevant time period that demonstrated coverage, presumably the burden would then have shifted to Travelers to establish the existence of a pollution exclusion. *See, e.g.*, Lee R. Russ & Thomas F. Segalla, 9A *Couch on Insurance 3d*, § 129:2 (2005).

United States Magistrate Jud

Date: March 30, 2007.