UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 - RBC

| | |
|---|---|
| KLEENIT, INC. | ) |
| Plaintiff, | ) |
| v. | ) |
| SENTRY INSURANCE COMPANY, ROYAL & SUN ALLIANCE, UTICA NATIONAL INSURANCE GROUP, and TRAVELERS PROPERTY AND CASUALTY | ) |
| Defendants. | ) |

## MOTION FOR LEAVE TO SUPPLEMENT RECORD WITH EXPERT AFFIDAVIT

Plaintiff Kleenit, Inc. ("Kleenit") requests leave of court to supplement the record with the Affidavit of Frank Loenhert, Jr., an expert in the insurance industry, to further support Plaintiff's assertions made in oral arguments regarding plaintiff's ability to come forward at trial to prove the material terms of Utica Umbrella Policy No. LU 6406. Mr. Loenhert's affidavit is attached as Exhibit A.

Such expert testimony has been instrumental in avoiding summary judgment on the issue of whether the proponent can demonstrate at trial the material terms of the policy. *PSI Energy, Inc v Home Ins Co*, 801 NE2d 705, 722, (Ind App 2004) (The insured's expert testified that based on the secondary evidence procured by the insured and his own personal knowledge of the insurance industry, that it was "more likely than

not that the terms of the excess liability policies would be 'at least as broad as' the underlying policies.").

Further, allowance of this motion may be useful in assisting this Honorable Court in rendering a decision on the pending motion.

                                              Respectfully submitted,

                                              KLEENIT, INC.

                                              By its Attorney,

                                              /Donald P. Nagle
                                              Donald P. Nagle, Esq. (BBO # 553544)
                                              Law Office of Donald P. Nagle, P.C.
                                              5 Main Street Extension, Suite 300
                                              Plymouth, Massachusetts 02360
                                              (508) 732-8970

April 19, 2007

# EXHIBIT "A"

UNITED STATES DISRTICT COURT
FOR THE DIDTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10351 – RBC

| | |
|---|---|
| KLEENIT, INC. | ) <br> ) <br> ) |
| Plaintiff | ) <br> ) |
| v. | ) <br> ) |
| SENTRY INSURANCE COMPANY, <br> ROYAL & SUN ALLIANCE, <br> UTICA NATIONAL INSURANCE GROUP. and <br> TRAVELERS PROPERTY AND CASUALTY | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants | ) <br> ) |

## AFFIDAVIT OF FRANK LOEHNERT, JR.

I, Frank Loehnert, Jr., hereby depose and state the following:

    1.    I am currently the principal of CIE Consulting, Ltd., a firm in Columbus, Ohio, which provides expert witness testimony and consulting services regarding the insurance industry. I have over 60 years experience in the Commercial Property and Liability insurance industry. I served as President of the Independent Insurance Agents Association of Ohio, Inc. ( BIG-I ) and won their Independence Bell Award. I also have more than 10 years of experience teaching insurance topics in Continuing Education, including risk management and commercial insurance. I have testified as an expert witness in over thirty court cases involving insurance disputes.

2. I earned a Bachelors of Science in Mechanical Engineering, Northwestern University and was an officer while in the US Navy.

3. In 1946, I began my career with the Ohio Inspection Bureau, now Insurance Services Office ( I.S.O. ), as a fire insurance rating engineer.

4. From 1948-1951, I worked as special agent / field representative for Great American Insurance Group and served in this capacity from 1951-1954 with Crum & Forster Group.

5. From 1954-1977, I worked at Atkinson Dauksch Agencies, Inc. and Trafford Tallmadge as an account executive, commercial accounts, sales and as an inland marine coverages specialist. During my tenure, I held various officer sales positions, attained partner status, and then, in 1974, became President of the company.

6. I served as President / Chief Executive Officer, then Chairman of Corroon & Black Corporation of Ohio, Inc. from 1977 to 1982.

7. In 1982 I joined Bernie Nagel & Associates, Inc. as account executive and President. Then, in 1985, I returned to Corroon & Black Corporation of Ohio, Inc. and continued there until 1992, during which time I served as Account Executive / Assistant Vice President of sales, and was a member of the corporation's "Quality and Professional Standards" National Review Team from 1986-1992.

8. In 1992 I joined Willis Corroon Corporation as a Consultant until 1994.

9. I then joined the Eagle Insurance Group as Executive Director and technical consultant until establishing CIE Consulting, Ltd. in 2003. At Eagle Insurance Group, I provided continuing education programs to over 40 commercial and personal lines of

property and liability insurance. These programs emphasized current insurance industry changes. I also provided commercial property and liability insurance account analysis and appeared as an expert witness on insurance- related disputes.

10. As a result of my experience in the insurance industry gained over the past 60 years, I have developed an expertise in commercial property and liability insurance, including umbrella or excess liability coverage. My expertise includes knowledge of the types of coverage provided in standard commercial property and liability insurance policies issued during the time at issue here, in the early to mid-1980's.

11. I was asked by Kleenit, Inc. to provide expert testimony regarding my knowledge of the material terms of an umbrella liability policy that would have been issued by Utica Mutual Insurance Company in February 1983 and February 1984.

12. I reviewed the record of proceedings regarding the Motion for Partial Summary Judgment filed in the above-captioned matter by Utica Insurance Company and Kleenit, Inc.'s opposition to this motion.

13. Although the terms of the umbrella policy referenced in Kleenit's Opposition cannot be determined from the policy itself, as it was lost, its material terms can be reconstructed based upon undisputed evidence in the record and upon my knowledge of the standard provisions included in umbrella liability policies issued by the insurance industry during the time in question.

14. I have examined a copy of the ledgers and cancelled checks identified as Tabs 1 through 6 of Kleenit's Opposition to Utica's Motion for Partial Summary Judgment. This information identifies a $1,000,000 Utica umbrella liability insurance policy, identified as

Policy No. LU 6406, with an annual policy period from February 2, 1983 to February 3, 1985 and also a subsequent period of February 3, 1984 to February 3, 1985.

15. I have also examined a copy of Policy No. FMP1946 identified as Exhibit A to to Kleenit's Motion for Leave to Supplement Record. Although incomplete and some pages illegible, this policy unquestionably provides comprehensive general liability coverage and sudden and accidental pollution coverage. It is more likely than not that the Utica umbrella policy would have incorporated these terms of the primary policy, which was in effect during the same coverage period.

16. The purpose of an umbrella policy is to extend the policy limits over and above primary policies then in effect with the insured. According to Rupps Insurance and Risk Management Glossary, an authoritative source relied upon by the insurance industry, the definition of an umbrella policy is:

> A special liability policy that serves three main functions: Provide high excess coverage over a primary or underlying liability policy; **Provide broader coverages than the primary liability policy**, usually excess of a self-insured retention; Provide a drop-down feature that automatically replaces coverage provided by underlying policies when they are reduced or exhausted by losses.
>
> Ordinarily used for commercial risks, umbrellas have also been developed for commercial risks, umbrellas have also been developed for personal lines. The form was first introduced in the United States by Lloyd's around 1947, but umbrellas are offered today by many American liability insurers.

*Rupps Insurance and Risk Management, Glossary*, a copy of the pertinent pages are attached as Exhibit A.

17. Since the Utica primary policy was in effect at the time of the inception of the umbrella policy, the umbrella policy extends, by definition, the policy limit of the primary policy. Whatever primary insurance policies Kleenit had in effect at the time of the issuance of

the umbrella policy would benefit from the excess coverage provided by the umbrella policy. The uncontested record indicates that the annual coverage limit of the primary Utica policy is $100,000 and the Kleenit ledger entries indicate that the umbrella limit, or excess limit, is $1 million. Therefore, if Utica issued an umbrella policy as alleged by Kleenit, it would have had the effect of providing an additional $1 million in coverage beyond that which was provided under the uncontested primary comprehensive general liability policy.

18.   The excess limits associated with umbrella policies are typically either $1 million, $5 million or $10 million. An excess limit of less than $1 million is unheard of in my sixty years in the industry.

19.   As indicated above, the material terms of the umbrella are designed to be consistent with the terms of the primary policy and, in fact, almost always provide broader coverage than the primary policy. Since the primary Utica policy does not include an absolute pollution exclusion, then it is highly unlikely the umbrella would have included such an exclusion. Umbrella policies are structured this way and provide significant additional coverage limits because the risk that excess coverage is triggered is relatively low since the primary policy must be exhausted before reaching the excess coverage provided by the umbrella.

20.   The material terms of a Utica umbrella policy issued to Kleenit in 1983 and renewed in 1984 would have incorporated by reference the material terms of the underlying Utica comprehensive general liability policy issued to Kleenit, as the great majority of umbrella policies did during the early to mid- 1980's, as they do now.

21.   Circumstances under which the umbrella policy would include an exclusion not present in the underlying is where the insurance industry practice has changed since the

5

inception of the underlying policy. The insurance industry did not adapt the absolute pollution exclusion provisions in any liability policies until at least 1985. Consequently, it is highly unlikely that the Utica umbrella policy issued in 1983 and renewed in 1984 included an absolute pollution exclusion.

22.     Attached as Exhibit B is an Umbrella/Excess Policy Analysis Checklist published by the International Risk Management Institute ("IRMI"), Commercial General Liability, Volume III. This is an authoritative source used by experts in the insurance industry. This checklist represents a typical umbrella policy that would have been issued in May 1982. Note the Policy edition date, "5/82." The check marks indicate recommended provisions selected from the checklist that would comprise the material terms of an umbrella policy issued during this time frame. It is more likely than not that the Utica umbrella policy would be substantially identical to the provisions identified in this checklist. Note that in checklist number 19, sudden and accidental coverage is checked. This is consistent with Kleenit's primary Utica Policy # FMP 1946. It is highly likely that the Utica umbrella would have also included sudden and accidental coverage. The comments and notes section at the end of the checklist also provide an authoritative description of what a typical umbrella policy would have included in 1982. The Utica umbrella at issue here would more likely than not have had these same provisions.

23.     It is my opinion that it is more likely than not that the material terms of the Utica umbrella policy issued to Kleenit, Inc. would have been substantially similar to the terms identified in the IRMI checklist attached as Exhibit B and it is highly likely that the terms of the umbrella policy would have been more broad (i.e. provide additional coverage) than the primary underlying policy issued by Utica, the terms of which are known and in the record.

6

Signed under the pains and penalties of perjury on this 19th day of April 2007.

*[signature]*
Frank Loehnert, Jr

**NOTARY:**

**Name:** *Ossama Helal*

**Title:** *Branch Asst.*

**Commission No.**

**Commission Expires**

OSAMA M. HELAL
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 04-03-08

# EXHIBIT "A"

# SECOND EDITION

# RUPP'S

## INSURANCE & RISK MANAGEMENT GLOSSARY

Richard V. Rupp, CPCU

Apr 19 2007 3:16PM   CIE Consulting, LTD           614-457-1185              p.1
Case 1:04-cv-10351-RBC    Document 114    Filed 04/19/2007    Page 12 of 18

SECOND EDITION

# U

**uberrima fides**
*Insurer Operations/Reinsurance.* (Latin for "utmost good faith.") In insurance contracts, it is expected that both parties (insurer and insured, or cedent and reinsurer) have entered into the contract in good faith, have disclosed all material facts, and intend to carry out their obligations.

It has been said that reinsurance especially requires the utmost good faith. Reinsurance premiums must be lower than the initial premium for ceding insurers to have an incentive to reinsure, and assuming reinsurers cannot incur costs of evaluating risks and handling claims if they are to charge lower premiums than the initial insurer. Cedents and reinsurers must therefore be completely honest for long-term relationships to be maintained and the reinsurance market to remain viable.

*compare:* caveat emptor; *see:* follow the fortunes, good faith, reinsurance

**UL listed**
*Loss Control.*
*see:* Underwriters Laboratories, Inc.

**ultimate mortality table**
*Life.* A mortality table based on the experience of a book of insurance policies that compensates for adverse selection by eliminating the experience of those policies that were issued within the past five to ten years.
*see:* adverse selection, mortality table

**ultimate net loss (UNL)**
*Insurer Operations.* The sum of all costs that an insured or insurer is legally obligated to pay as the result of a claim, including judgments or compromises, legal, medical and investigation expenses, minus any salvage, subrogation and reinsurance.
*see:* net loss, net underwriting profit (or loss)

**ultra vires**
*Law.* An action outside the proper authority or purposes of a corporation or corporate officer. (Latin for "beyond the power.") Courts generally validate ultra vires acts so persons who rely on a corporation's apparent authority do not incur losses unfairly.
*compare:* intra vires

**ultrasonic detector**
*Loss Control.* A burglar alarm trigger that emits an ultrasonic wave pattern into the area to be protected. When the wave pattern is disrupted by an intruder, the burglar alarm operates.
*see:* burglar alarm

**umbrella liability insurance**
*Liability.* A special liability policy that serves three main functions: provide high excess coverage over a primary or underlying liability policy; provide broader coverages than the primary liability policy, usually excess of a self-insured retention; and provide a drop-down feature that automatically replaces coverage provided by underlying policies when they are reduced or exhausted by losses. Ordinarily used for commercial risks, umbrellas have also been developed for personal lines. The form was first introduced in the United States by Lloyd's around 1947, but umbrellas are offered today by many American liability insurers.
*compare:* bumbershoot, excess liability insurance, parasol policy; *see:* drop-down provision, personal umbrella, self-insured retention

**umpire**
*Law.* A term used instead of *arbitrator* in some contracts.
*see:* arbitration, arbitrator

**unallocated benefit**
*Health.* A health insurance policy provision that sets a maximum amount of reimbursement for the costs of all extra miscellaneous hospital services without specifying or scheduling the amount that will be paid for each type of service.
*compare:* fee schedule

447

# EXHIBIT "B"

ORIG. PRINTING
MAY 1989

COMMERCIAL LIABILITY
UMBRELLA/EXCESS FORMS

# UMBRELLA/EXCESS POLICY ANALYSIS CHECKLIST

| Company: Scottsdale Insurance Company | |
|---|---|
| Policy Name: Umbrella Liability Policy | |
| Policy Form No.: UMB-J-1 | Policy Edition Date: 5/82 |
| ☐ Claims-Made  ☑ Occurrence  ☐ Follow Form Trigger (i.e., follows underlying) | ☐ Stand Alone  ☐ Follow Form  ☑ "Umbrella"  ☐ Cov. A  ☐ Cov. B |

1. **Insuring Agreement**
   - ☑ Indemnity
     - ☑ Based on legal obligation
   - ☐ Pay on behalf*
   - ☐ Bodily injury/☑ personal injury/☐ property damage/☑ advertising injury variation†
   - ☑ Personal injury includes discrimination†
   - ☐ Policy includes additional coverages

2. **Ultimate Net Loss**
   Definition includes:
   - ☑ Defense, investigation, and settlement†
   - ☐ Supplementary payments (bond premiums, accrued interest, lost earnings)

3. **Separate Defense Provision**
   - ☐ No duty to defend
   - ☑ Defend any suit*†
   - ☐ Once aggregates in retained amount exhaust by payment of "actual damages"
   - ☐ All defense/supplementary payments reduce limits
   - ☑ Defense/supplementary payments in addition to limits*†
   - ☐ Defense within SIR
   - ☐ Does not pay supplementary payments
   - ☐ Supplementary payments include pre-judgment interest*
   - ☐ Policy silent except as noted under #2

4. **Limits of Liability**
   - ☑ Apply excess of retention
   - ☑ Apply excess of underlying
   - ☐ Retained amounts met only by actual damages (e.g., not defense costs)
   - ☐ Retained amounts met only by claims covered by this policy
   - ☑ Aggregate limits apply:
     - ☐ Aggregate applies to all lines
     - ☐ P/CO aggregate*
     - ☐ Employers liability aggregate
     - ☐ All other lines aggregate
     - ☑ Aggregate does not apply to auto*
     - ☑ Wherever aggregate applies in underlying coverages

5. **Batch Clause**
   - ☐ Policy silent
   - ☑ One occurrence
   - ☐ Separate occurrences

6. **"Drop Down" Provision**
   - ☐ Does not drop down
   - ☐ Policy silent
   - ☐ Drop down on terms of umbrella
   - ☑ Drop down on terms of underlying
   - ☐ Drop down provision ambiguous

7. **Insolvency**
   - ☐ Policy silent
   - ☑ Insolvency of underlying insurer does not change attachment point
   - ☑ Insolvency of insured does not invalidate umbrella*
   - ☐ Insolvency of insured may cause policy cancellation

*Substantially the same as ISO CGL or BAP
(ff)—Policy provisions follow underlying
Dagger (†)—See comments section

Boldface—Superior provision
Italics—Inferior provision
Regular Type—Typical, standard, or moderate approach

**COMMERCIAL LIABILITY**
**UMBRELLA/EXCESS FORMS**

ORIG. PRINTING
MAY 1989

| Policy Name: Umbrella Liability Policy | Form No.: UMB-J-1 |
|---|---|

8. **Maintenance of Underlying**
   - ☑ Insured agrees to maintain
   - ☐ Notify insurer if changed
   - ☑ Failure to maintain does not invalidate umbrella
   - ☑ Failure to maintain does not change attachment point
   - ☐ *Failure to maintain may cause cancellation*
9. **Cancellation**
   - ☑ By insurer: 30 days' notice
   - ☑ For nonpayment: 10 days' notice
10. **Advertising Exclusion**
    - ☐ Policy silent
    - ☐ With exception for unauthorized appropriation of ideas based upon alleged breach of implied contract*
11. **Aircraft/Watercraft Exclusion**
    - ☐ Policy silent
    - Exclusion applies to:
    - ☑ Owned ☑ aircraft* or ☑ watercraft*
    - ☐ *Nonowned* ☐ *aircraft** or ☐ *watercraft*
    - ☑ Coverage for watercraft under 26 feet
    - ☑ Nonowned ☑ aircraft or ☐ watercraft hired without crew
    - ☑ Not applicable if underlying covers†
    - ☐ Contractual liability covered*
    - ☑ Independent contractor hazard covered*
12. **Asbestos Exclusion**
    - ☑ Policy silent*
    - ☐ *Absolute*
13. **Business Risk Exclusion**
    - ☑ Applies to loss of use only
    - ☐ *Applies to all personal injury and property damage*
    - ☐ Applies to property damage to impaired property*
14. **Discrimination/Humiliation Exclusion**
    - ☐ *All discrimination* or ☐ *all humiliation*
    - ☑ Specified discrimination†
15. **ERISA or Similar Laws Exclusion**
    - ☐ Policy silent*
    - ☑ Coverage excluded
16. **Fellow Employee Exclusion**
    - ☐ Policy silent
    - ☑ Standard exclusion*
    - ☑ Not applicable if underlying covers
    - ☐ Exception for executive officers*
17. **Intentional Acts Exclusion**
    - ☑ Intentional ☑ B.I.*/☑ P.I./☑ A.I./☑ P.D.* excluded
    - ☑ Covers if reasonable force*
18. **Nuclear Energy Exclusion**
    - ☑ Broad form*
    - ☐ Added by endorsement*
19. **Pollution Exclusion**
    - ☐ *Absolute*
    - ☑ Sudden and accidental coverage
    - ☐ Named perils coverage
    - ☐ Products-completed operations covered*
    - ☐ Off-premises releases covered*
    - ☐ Smoke damage (hostile fire) covered*
    - ☐ Limited auto collision covered*
20. **Product Recall Exclusion**
    - ☑ Insured's products or work
    - ☐ Insured's products or work or impaired property*
21. **Property Damage Exclusion**
    - ☐ Real property only
        - ☐ Occupied by
        - ☐ Leased to
    - ☐ Personal property only
        - In care, custody, or control*
    - ☑ Property (both real and personal)
        - ☐ Owned by*    ☑ Rented to*
        - ☑ Used by      ☑ Occupied by*
        - ☐ Leased to    ☐ Loaned to*

ORIG. PRINTING
MAY 1989

COMMERCIAL LIABILITY
UMBRELLA/EXCESS FORMS

| Policy Name: Umbrella Liability Policy | Form No.: UMB-J-1 |
|---|---|

- ☑ In care, custody, or control
    - ☑ Excludes only contractually assumed liability
- ☐ Damage to aircraft or watercraft rented, used, or in the care, custody, or control
- ☑ Insured's products*
    - ☐ Real property not a "product"*
- ☑ Work by insured excluded*†
- ☑ Work on behalf of insured excluded†
- ☐ Course of construction excludes "that particular part" only*
- ☐ Alienated premises*
    - ☐ Exception for completed operations*

22. Punitive Damages
    - ☑ Policy silent*
    - ☐ Covered unless against public policy
    - ☐ Punitive damages exclusion
    - ☐ Insuring agreement includes coverage for compensatory damages only

23. Uninsured/Underinsured Motorists Exclusion
    - ☑ Policy silent
    - ☐ Coverage excluded

24. War Exclusion
    - ☐ Policy silent
    - ☑ Standard exclusion
    - Excludes only:
        - ☑ Outside U.S. or Canada
        - ☐ Liabilities assumed under contract*

25. Workers Compensation Exclusion
    - ☑ Standard exclusion*
    - ☐ Excludes EL as respects OD
    - ☑ Covers WC contractual assumption*

26. Additional Exclusions
    - ☐ Policy contains additional exclusions

27. Claims-Made Coverages
    - ☐ Bodily injury*/☐ property damage*
    - ☐ Personal injury/☐ property damage

- ☐ Advertising injury
- ☐ Follows underlying

28. Definition of "Claim"
    - ☐ Received and recorded by insured or insurer*
    - ☐ Made against insured and reported to insurer
    - ☐ Written notice or demand against insured or insurer
    - ☐ Written notice or demand against insured and written notice to insurer

29. Multiple Claims/Same Occurrence
    - ☐ Policy silent
    - ☐ All claims for one entity confined to one policy*

30. Notice of Circumstance or Potential Claim
    - ☐ Notice of circumstance provision
    - ☐ Time limit to notify insurer of circumstance after event: _____ days
    - ☐ Time limit for claim to develop: _____ years
    - ☐ No time limit for claim to develop
    - ☐ Exclusion for previously reported circumstances and/or claims

31. Retroactive Date
    - ☐ Insuring agreement*
    - ☐ Exclusion
    - ☐ Occurrence before retro date*
    - ☐ Occurrence commencing before retro date

32. Extended Reporting Period
    - Availability:
        - ☐ Requires underlying ERP
        - ☐ Retro date advancement*
        - ☐ Insured cancels/nonrenews*
        - ☐ Insurer cancels/nonrenews*
            - ☐ Except for nonpayment
            - ☐ Except for noncompliance
        - ☐ Attachment of "laser" exclusion*
        - ☐ Replacement with occurrence policy*

**COMMERCIAL LIABILITY**  
**UMBRELLA/EXCESS FORMS**

ORIG. PRINTING  
MAY 1989

| Policy Name: **Umbrella Liability Policy** | Form No.: **UMB-J-1** |
|---|---|

- ☐ Automatic ERP—no additional cost to insured*
    - ☐ _____ days for IBNR
    - ☐ _____ year(s) for known circumstances
- ☐ Optional ERP*
    - ☐ **Reinstates aggregate limits***
    - ☐ Insured must request: _____ days
    - ☐ Insured must pay AP
        - ☐ _____ days after request
        - ☐ Promptly when due*

ERP applies to:
- ☐ Known* and/or ☐ unknown*

Length of ERP:
- ☐ Unlimited*
- ☐ _____ year(s)
- ☐ As provided by schedule attached
- ☐ *Not specified in form*

Maximum Cost of ERP:
- ☐ _____% maximum
- ☐ As provided by schedule attached
- ☐ *Not specified in form*

33. **Occurrence Coverage Trigger**
    - ☐ "Occurrence" definition variation
    - ☐ Anti-stacking provision

34. **Policy Territory**
    - ☐ Policy silent
    - ☑ **Occurrence anywhere in world**
    - ☐ Suit anywhere in world
    - ☐ Suit in U.S., Canada, territories only*
    - ☐ *Occurrence in U.S., Canada, territories only*

35. **Persons Insured**
    - ☑ Named insured and spouse*
    - ☑ **Partnership or joint venture named in declarations***
        - ☑ **Unclear on past joint ventures**
    - ☑ **Those obligated by contract, to extent of operations**
    - ☑ Officers, directors, employees, within scope of duties as such*
    - ☑ Real estate managers*†
    - ☑ Any person using insured's auto, except leasing agent*
    - ☑ **Additional insureds as in underlying**
    - ☐ Newly acquired organizations: _____ days
    - ☑ Legal representative, if insured dies*

---

**COMMENTS AND NOTES:**

Policy is an occurrence umbrella. Defense is in addition to policy limits but only as respects costs incurred by the insurer or at the insurer's request. An aggregate limit of liability applies wherever it applies in the underlying policy. Coverage for discrimination is included except when intentional or if insurance coverage is prohibited by law. Sudden and accidental pollution is covered. Policy is silent regarding coverage of punitive damages.

1. Definition of personal injury includes BI, sickness, disease, disability, shock, death, mental anguish, mental injury, assault and battery not committed by or at the direction of insured (unless for protection of person or property), humiliation, and discrimination if it was not committed with knowledge or consent of insured and is not prohibited by law.

2. Defense costs incurred by insured (but not at insurer's request) are covered by the policy. However, they are included within policy limits.

3. Defense costs incurred by insurer are in addition to policy limits.

11. Exception if covered by underlying applies to watercraft only, not aircraft.

14. See 1 above.

21. Exclusion for property damage to work performed by or on behalf of the insured does not apply to the extent coverage for such is afforded by underlying insurance.

35. These persons are not insured when using an auto; use includes loading and unloading.