Policy Number:

## RLI Indemnity Company

Peoria, Illinois 61615

# COMMERCIAL UMBRELLA POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **IV. WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning.

In return for the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to all the terms, of this policy we agree with you as follows:

## I. INSURING AGREEMENT

A. We will pay on behalf of the insured, "ultimate net loss" for "bodily injury" or "property damage" occurring during this policy period and "personal and advertising injury" offenses occurring during this policy period to which this insurance applies, caused by an "occurrence" anywhere in the world. If "suit" is brought, it must be brought in the United States of America (including its territories or possessions), Canada or Puerto Rico.

B. **Continuous Or Progressive Injury And Damage**

This insurance does not apply to any damages because of or related to "bodily injury" or "property damage":

1. Which first occurred, or is alleged to have first occurred, prior to the inception date of this policy; or

2. Which were, or were alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

3. Which were caused, or are alleged to have been caused, by the same condition which resulted in "bodily injury" or "property damage" which first existed prior to the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this provision applies.

## II. LIMITS OF INSURANCE

A. Regardless of the number of:

1. Insureds under this policy;

2. Persons or organizations who sustain "bodily injury," "property damage," or "personal and advertising injury";

3. Claims made or "suit's" brought on account of "bodily injury," "property damage," or "personal and advertising injury";

4. "Autos," "aircraft," or "watercraft" to which this policy applies; or

5. Coverages under which loss is insured in this policy,

We shall only be liable for the "ultimate net loss" in excess of:

1. The applicable limits of "scheduled underlying insurance" for "occurrences" covered by "scheduled underlying insurance," plus the limits of any "unscheduled underlying insurance" which also provides coverage for such "occurrences." If however, a policy shown in the Schedule Of Underlying Insurance forming a part of this policy has a Limit of Insurance:

   a. Greater than the amount shown in such schedule, this policy will apply in excess of that greater amount; or

   b. Less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule Of Underlying Insurance forming a part of this policy.

**2.** The "unscheduled underlying insurance" or the "retained limit," whichever is greater, for "occurrences" covered by "unscheduled underlying insurance" and by this policy only; or

**3.** The "retained limit," for "occurrences" covered by this policy only, but only up to the amount of our limits of insurance as stated in **ITEM 3.** of the Declarations because of any single "occurrence."

**B.** If the "aggregate limits" of insurance under "scheduled underlying insurance" are reduced or exhausted solely by payments of judgments or settlements for covered "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies, this policy shall apply in excess of such reduction or exhaustion but not for broader coverage or higher limits than was provided by the "scheduled underlying insurance."

**C.** Subject to the Limit of Insurance for each "occurrence":

  **1.** The Limit of Insurance stated in **ITEM 3.** of the Declarations as General Aggregate is the most we will pay during each policy period for "ultimate net loss" arising out of all "occurrences" insured by this policy except for "ultimate net loss":

   **a.** Arising out of the "products-completed operations hazard"; or

   **b.** Arising out of the ownership, maintenance, use, operation, "loading or unloading," or entrustment to others of an "auto."

  **2.** The Limit of Insurance stated in **ITEM 3.** of the Declarations as products-completed operations aggregate is the most we will pay during each policy period for all "ultimate net loss" arising out of the "products-completed operations hazard."

**D.** The Limits of Insurance apply separately to each policy period specified in the Commercial Umbrella Liability Policy Declarations. If a policy period is extended after policy issuance, that extension will not increase the Limits of Insurance.

## III. DEFENSE AND SUPPLEMENTARY PAYMENTS

### A. Defense Of Claims Or "Suits"

  **1.** In the event a claim or "suit" alleges damages covered by underlying policies and the obligation of all "underlying insurers" to investigate and defend the insured or to pay the costs of such investigation and defense ceases solely through exhaustion of all underlying limits of insurance by payments of judgments or settlements for covered "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies, then we shall assume the investigation and defense of the insured against "suits" seeking those damages.

  **2.** Except for the "retained limit," we will also pay for, investigate and defend any claim or "suit" brought against an insured that alleges damages arising out of an "occurrence" which is not covered, in whole or in part, by "scheduled underlying" insurance" or "unscheduled underlying insurance," but is otherwise covered by this policy.

  **3.** We will investigate and defend an insured under the circumstances described in either paragraph **A. 1.** or **A. 2.** of this section, even if the allegations of a "suit" are groundless, false or fraudulent.

  **4.** We shall also have the sole right to make any settlement of any claim or "suit" as we deem expedient. The insured agrees to reimburse us promptly for amounts paid in settlement of claims or "suits" to the extent that such amounts are within the "retained limit."

  **5.** If law does not permit us or if we are otherwise unable to perform these defense duties, then we will pay an insured for any defense costs incurred by an insured with our prior written consent.

  **6.** Subject to **B. 2.** of this Section III., amounts we pay or incur to defend or pay the costs of defense under paragraphs **A. 1.** and **A. 2.** of this section, will not reduce the Limits of Insurance unless such expenses would also have reduced underlying insurance limits.

  **7.** We have no obligation to defend or pay the costs of defense of any existing or future claim or "suit" once our applicable Limit of Insurance has been exhausted by the payment of judgments or settlements.

  **8.** We have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

  **9.** We have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

## B. Supplementary Payments

1. We will pay, with respect to any claim or "suit" we defend or as to which we reimburse you for the costs of investigations and defense:

   a. All expenses we incur.

   b. The cost of bonds to release attachments, but only for bond amounts within our applicable Limit of Insurance. We do not have to furnish these bonds.

   c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $300 a day because of time off from work.

   d. All costs taxed against the insured in the "suit."

   e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay our applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after our offer.

   f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our applicable Limit of Insurance.

   Subject to **B. 2.** of this Section **III.**, these payments will not reduce our Limits of Insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

         (e) Provides us with written authorization to:

            (i) Obtain records and other information related to the "suit"; and

            (ii) Conduct and control the defense of the indemnitee in such "suit."

Attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be deemed to be damages and will reduce the Limits of Insurance provided by this policy.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## IV. WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse (if a resident of your household) are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business. This policy does not apply to "occurrences" involving any "auto" owned by or registered in the name of any partner or member.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. This policy does not apply to "occurrences" involving any "auto" owned by or registered in the name of any member or manager.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured.

      Your:

      (1) Subsidiaries; or

      (2) Companies you manage and over which you maintain ownership or majority interest

      if known to us at or before the inception of this policy.

      Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. However, none of your "executive officers," directors or stockholders are insureds with respect to the ownership, maintenance, operation, use, loading or unloading of "autos." But this subparagraph d. shall not apply if it restricts the insurance granted under paragraph 3. below.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" but only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members or managers (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury referred to in paragraphs (1)(a) or (1)(b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member or manager (if you are a limited liability company).

(3) "Bodily injury" or "property damage" arising from "occurrences" involving "autos" owned by, rented to, or leased to any "employee."

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

e. Any other person or organization but only for that person or organization's vicarious liability arising out of your operations or facilities you own or use and only if such "occurrence" is covered by "scheduled underlying insurance." However, no coverage provided by paragraph e. will:

(1) Exceed the limits of insurance required by the written contract;

(2) Exceed the applicable limits of insurance provided by this policy; or

(3) Apply to "bodily injury" or "property damage" included in the "products-completed operations hazard."

f. Any other person or organization included as an insured in "scheduled underlying insurance," except with respect to the conduct of any current or past partnership, joint venture or limited liability company not shown as a Named Insured in the Declarations of such "scheduled underlying insurance." With respect to insurance provided such insureds, the following limitations apply:

(1) Coverage provided by this policy will be no broader than coverage provided to that person or organization by "scheduled underlying insurance."

(2) In no event will coverage for such insured exceed the scope of coverage or limits of insurance afforded by this policy.

(3) This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional service.

(4) This insurance does not apply to the "products-completed operations hazard."

3. With respect to any "auto" you own or hire for use by you or on your behalf, any person while using such "auto" and any person or organization legally responsible for the use thereof, provided its actual use is with your permission. However, the following are not insureds:

a. Any person or organization, or any agent or "employee" thereof, operating an "auto" sales agency, repair shop, service station, storage garage or public parking place, with respect to any "occurrence" arising out of the operation of such business; or

b. The owners or any lessee, other than you, of a hired "auto" or any agent or "employee" of such owner or lessee.

4. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for their liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

5. Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if covered by "scheduled underlying insurance." However:

a. Coverage under this provision is afforded only until the ninetieth (90th) day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** No coverage applies to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** No coverage applies to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## V. EXCLUSIONS

This policy does not apply to:

### A. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits, unemployment compensation law or any similar law.

### B. Employers Liability

"Bodily injury" to:

1. An employee of any insured arising out of and in the course of:

    **a.** Employment by the insured; or

    **b.** Performing duties related to the conduct of the insured's business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **1.** above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion shall also apply to liability assumed by the insured under an "insured contract."

This exclusion does not apply to claims or "suits" covered by "scheduled underlying insurance."

### C. War Or "Terrorism"

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

4. "Terrorism" including any action taken in hindering or defending against an actual or expected incident or "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism," this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

1. The total of "insured damage" to all types of property exceeds \$25,000,000. In determining whether the \$25,000,000 threshold is exceeded, we will include all "insured damage" sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, "insured damage" means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusion; or

2. Fifty (50) or more persons sustain death or "serious physical injury." For the purposes of this provision, "serious physical injury" means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

3. The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **1.** and **2.** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism," there is no coverage under this policy.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this policy.

Multiple incidents of "terrorism" which occur within a seventy-two (72) hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

### D. Damage To Property

"Property damage" to:

**1.** Property:

    **a.** You own rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

    **b.** Owned or transported by the insured and arising out of the ownership, maintenance or use of an "auto."

**2.** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**3.** Property loaned to or used by you;

**4.** Personal property in the care, custody, or control of the insured;

**5.** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**6.** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **2.** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by an insured.

Paragraphs **3., 4., 5.** and **6.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **6.** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

### E. "Your Product"

"Property damage" to "your product" arising out of it or any part of it.

### F. "Your Work"

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

### G. "Impaired property"

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**1.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**2.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### H. Recall Of Products, Work Or "Impaired Property"

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

**1.** "Your product";

**2.** "Your work"; or

**3.** "Impaired property"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**I. "Aircraft"**

Any liability for damage arising out of the ownership, maintenance, operation, use, chartering, renting, leasing, loaning, "loading or unloading," or entrustment to others of any "aircraft" by or on behalf of any insured.

This exclusion does not apply to "aircraft" that are:

1. Hired, chartered or loaned with a paid crew; and

2. Not owned by any insured.

This exclusion applies even if claims or "suits" against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

**J. Employment Related Practices**

Any liability, defense costs, fines or damages which arise out of any:

1. Refusal to employ;

2. Termination of employment;

3. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination; or

4. Consequential "bodily injury" or "personal injury" as a result of paragraphs **1.**, **2.** or **3.** above.

This exclusion applies whether an insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**K. Pollution**

1. "Bodily injury," "property damage" or "personal injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

   b. Claims or "suit" by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

**L. ERISA/COBRA**

To any claim or "suit" arising out of the actual or alleged breach of fiduciary duty, responsibility or obligation imposed by:

1. The Employee Retirement Income Security Act of 1974 as amended;

2. The Consolidated Omnibus Budget Reconciliation Act of 1985 as amended; or

3. Any similar federal, state or local laws.

**M. Director Or Officers**

Any wrongful act, error or omission by any insured arising out of their position as a director or officer of any organization.

**N. Expected Or Intended Injury**

"Bodily injury" or "property damage" resulting from an act committed by an insured with the belief that an injury is substantially certain to occur. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**O. "Watercraft"**

Any liability for damage arising out of the ownership, maintenance, operation, use, chartering, renting, leasing, loaning, loading or unloading, or entrustment to others of any "watercraft" by or on behalf of any insured unless also covered by "scheduled underlying insurance" and then for no broader coverage than is afforded by such "scheduled underlying insurance."

This exclusion applies even if the claims or "suits" against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

**P. Uninsured Motorist, Underinsured Motorist And "Auto" No-Fault**

Any liability imposed by law on any insured under any uninsured motorist, underinsured motorist, "auto" no-fault, first party personal injury, or any similar law.

**Q. "Personal And Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

4. "Personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured.

5. "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services.

9. "Personal and advertising injury" arising out of unfair competition, the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

10. "Personal and advertising injury" committed by an insured whose business is:

    a. Advertising, broadcasting, publishing or telecasting;

    b. Designing or determining the content of websites for others; or

    c. An internet search, access, content or service provider.

    However, this exclusion does not apply to paragraphs **a., b.** and **c.** of the "personal and advertising injury" definition in the **DEFINITIONS** section of this policy.

11. "Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

12. "Personal and advertising injury" arising out of the unauthorized use of another's name or product in your email address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

13. "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**R. Asbestos**

Any damages, judgments, settlements, loss, costs or expenses that:

1. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard"; or

2. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

3. Arise out of any claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard."

As used in this exclusion, "asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**S. Nuclear Energy Liability Exclusion (Broad Form)**

1. "Bodily injury" or "property damage":

   a. With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

   a. The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed there from;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   c. The loss arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility." If such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this policy:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," special "nuclear material" or "by-product material";

"Source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (1) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for: (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of special "nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

## T. Lead

Any damages, judgments, settlements, loss, costs or expenses that:

1. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred in whole or in part but for the "lead hazard"; or

2. Arise out of any request, demand or order to identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to or assess the effects of the "lead hazard"; or

3. Arise out of any claim or "suit" for damages because of the identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing or mitigating or in any way responding to or assessing the effects of the "lead hazard"; or

4. Are required to repair, replace or improve any property.

## U. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That the insured would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

   a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

## V. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid underlying insurance for the liquor liability risks described above exists or would have existed for "bodily injury" and "property damage" but for the exhaustion of underlying limits of insurance. Coverage provided will follow the provisions, exclusions and limitations of the underlying insurance unless otherwise directed by this insurance.

## W. "Fungi" Or Bacteria

1. "Bodily injury" or "property damage" which would not have occurred, or "personal and advertising injury" which would not have take place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

2. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by "fungi."

## X. Breach Of Contract

Any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury," including the duty to defend such claim or "suit," arising directly or indirectly out of the following:

1. Breach of express or implied contract;

2. Breach of express or implied warranty;

3. Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

4. Libel, slander or defamation arising out of or within a contractual relationship.

## Y. Unlawful Discrimination

To any claim or "suit" based upon or alleging unlawful discrimination against any person. Unlawful discrimination includes, but is not limited to, discrimination on the basis of age, disability, ethnic origin, marital status, physical or mental hardship, race, religious affiliation, sex or sexual orientation.

## Z. "Recreational Vehicles"

Any liability for injury or damage arising out of the ownership, maintenance, operation, entrustment, use, loading or unloading of any "recreational vehicle" unless also covered by "scheduled underlying insurance" and then for no broader coverage than is afforded by such "scheduled underlying insurance."

A "recreational vehicle," for purposes of this exclusion, includes golf carts, snowmobiles, or if not subject to motor vehicle registration, any other land motor vehicle designed for recreational use off public roads.

## AA.Securities

Any liability arising out of:

1. The purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2. Any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3. Any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

## VI. DEFINITIONS

When used in this policy (including endorsements forming a part thereof):

A. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition notices that are published include material placed on the internet or on similar electronic means of communication.

B. "Aggregate limit" means the maximum amount, stated in the policy, for which the insurer will be liable, regardless of the number of covered claims or "suits."

C. "Aircraft" means any heavier than air or lighter than air vehicle designed to transport persons or property in the air.

D. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

E. "Bodily injury" means "bodily injury," sickness or disease sustained by a person, including death from any of these at any time. "Bodily injury" also includes disability, mental anguish, mental injury, shock or fright resulting from otherwise covered "bodily injury."

F. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the insured;

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury," "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. or 6.c. of the definition of "mobile equipment."

Paragraphs b. and c. above do not apply to "occurrences" resulting in "bodily injury" or "property damage" that occur away from premises owned by or rented to an insured with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

G. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

H. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

I. "Hostile fire" means one, which becomes uncontrollable or breaks out from where it was intended to be.

J. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

K. "Insured contract" means:

1. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. An elevator maintenance agreement;

6. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph 6. does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings and specifications; or

(2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities; or

d. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

L. "Lead hazard" means an exposure or threat of exposure to the actual or alleged properties of lead and includes the mere presence or suspected presence of lead in any form or combination.

M. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

N. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an "aircraft," "watercraft" or "auto";

2. While it is in or on an "aircraft," "watercraft" or "auto"; or

3. While it is being moved from an "aircraft," "watercraft" or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the "aircraft," "watercraft" or "auto."

O. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the fol- lowing types:

a. Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily for purposes other than the transportation of person or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing;

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on "auto" or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps, generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

P. "Occurrence" means:

1. With respect to "bodily injury" and "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2. With respect to "personal and advertising injury," an offense or series of related offenses. All loss arising out of a series of related offenses, regardless of the frequency or number of claimants, shall be deemed to arise out of one offense.

Q. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

R. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

S. "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a. Products that are still in your physical possession; or

b. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

b. The existence of tools, uninstalled equipment or abandoned or unused materials.

c. Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

T. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cellular devices, data processing devices or any other media which are used with electronically controlled equipment.

U. "Retained limit" means the amount stated in ITEM 4. of the Declarations.

V. "Scheduled underlying insurance" means the insurance policies listed in the Schedule Of Underlying Insurance and includes any renewal or replacement policies that are not more restrictive than the expired or replaced policy.

W. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury," to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

X. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y. "Terrorism" means activities against persons, organizations or property of any nature:

1. That involves the following or preparation for the following:

a. Use or threat of force or violence; or

b. Commission or threat of a dangerous act; or

c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

Z. "Ultimate net loss" means the actual sums an insured is legally obligated to pay as damages for which any insured is legally liable, as determined by judgments or settlements we agree to with our written consent or direction resulting from an occurrence(s) covered by this policy.

"Ultimate net loss" does not, however, include any of the following:

1. Supplementary Payments as provided in Section III. B. of the policy;

2. Any costs or expenses related to litigation, settlement, adjustment or appeal(s) nor any costs or expenses incident to any of these which an "underlying insurer" had paid or incurred or is obligated to pay to or on behalf of the insured;

3.  Office costs and expenses of any insured and salaries and expenses of the employees of any insured;

4.  General retainer and/or monitoring fees of counsel retained by the insured;

5.  Fines, penalties, or damages for which the law applicable to the construction of this policy prohibits insurance; and

6.  Recoveries and salvages.

AA. "Underlying insurer" means any insurer whose policy covers an "occurrence" also covered by this policy. It does not include insurers whose policies were purchased specifically to be in excess of this policy. It includes all insurers providing "unscheduled underlying insurance" and "scheduled underlying insurance."

BB. "Unscheduled underlying insurance" means any insurance policies available to any insured (whether primary, excess, excess contingent, or otherwise) except the policies listed in the Schedule Of Underlying Insurance. "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

CC. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

DD. "Watercraft" means a vehicle designed to transport persons or property in or on water.

EE. "Your product":

1.  Means:

    a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)  You;

        (2)  Others trading under your name; or

        (3)  A person or organization whose business or assets you have acquired; and

    b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

2.  Includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.  "Your product" includes the providing of or failure to provide warnings or instructions.

3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

FF. "Your work":

1.  Means:

    a.  Work or operations performed by you or on your behalf; and

    b.  Materials, parts or equipment furnished in connection with such work or operations.

2.  Includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

    b.  The providing of or failure to provide warnings or instructions.

VII. CONDITIONS

This policy is subject to the following conditions:

A.  Changes

    The first Named Insured shown in the Declarations is authorized to request changes in the terms of this policy. This policy may be changed only by an endorsement issued by us and made a part of the policy. Our duly authorized representative must sign any endorsement.

    Notice to you or to our agent or knowledge possessed by us, by our agent or by any other person shall not affect a waiver or a change in any part of this policy nor prevent us from asserting any right under the terms of this policy.

B.  Assignment

    Your interest in this policy may not be transferred to another, except by an endorsement issued by us that gives our consent.

## C. Maintenance Of "Scheduled Underlying Insurance"

While this policy is in force you agree that the policies listed in the Declarations as "scheduled underlying insurance" and their renewals and replacements shall be maintained, in full effect except for any reduction or exhaustion of the "aggregate limits" provided such reduction or exhaustion is solely the result of "bodily injury" or "property damage" occurring during this policy period or "personal and advertising injury" offenses taking place during this policy period. Renewals or replacements of "scheduled underlying insurance" must not be more restrictive in coverage. If the insured fails to so maintain "scheduled underlying insurance," this condition shall not invalidate this policy. However, in the event of such failure, we will only be liable to the same extent as if the insured had complied with this condition.

You must notify us as soon as practicable when any "scheduled underlying insurance" is no longer in effect.

## D. Premium

Premiums for this policy shall be stated in the Declarations and computed in accordance with our rules, rates, rating plans, premiums, and minimum premiums applicable to this insurance. If this policy is issued for a period in excess of one (1) year, the premium for this policy may be revised on each annual anniversary in accordance with our manuals in effect during that time.

If the policy is issued on other than an audit basis, the Advance Premium becomes the policy premium, subject to the Minimum Premium shown in the Declarations.

If the policy is issued on an audit basis, the premium designated on the Declarations page as Advance Premium shall be credited to the amount of earned premium due at the end of the policy period. At the close of each audit period, the earned premium shall be computed for such period. Upon notice to the first Named Insured, it shall become due and payable. If the total earned premium exceeds the Advance Premium previously paid, the amount by which the earned premium exceeds the Advance Premium shall be due and payable to us by the first Named Insured. In no case shall the earned premium be less than the Minimum Premium shown on the Declarations page.

The first Named Insured shall maintain records of such information as are necessary for premium computation. You shall send copies of such records to us at the end of this policy period and at such times during the policy period as we may direct.

## E. Inspection And Audit

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

Also, we do not warrant that the property or operations that are the subject of this insurance :

1. Are safe or healthful; or

2. Comply with any laws, rules, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or other organization, which makes insurance inspections, surveys, reports or recommendations.

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

## F. Appeals

If an insured or any of an insured's underlying insurers elect not to appeal a judgment in excess of the limits of liability afforded by the "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit," we may elect to appeal. Our Limit of Insurance shall not be increased because of such appeal. We will, however, pay the following costs and expenses:

1. All premiums on bonds to release attachments for an amount not in excess of the applicable Limit of Insurance in this policy;

2. All premiums on appeal bonds required in any such defended "suit," but without any obligation to apply for or furnish such bonds;

3. Court fees;

4. Costs and expenses taxed against an insured by the appellate court and interest accruing after entry of a judgment against an insured and before we have paid, or offered to pay, or deposited in court the part of the judgment that is within the applicable limits of insurance. If any "underlying insurers" attempt to terminate their liability to pay interest on the judgment by an offer to pay their limits, the insured shall demand that such limits be paid. If the appeal is successful, such amounts not obligated to be paid shall be returned to such "underlying insurer."

## G. Legal Action Against Us

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

2. To sue us on this policy

Unless all of its terms and those of the underlying insurance have been fully complied with and the amount of the insured's obligation to pay has been finally determined by judgment against the insured after an actual trial or by written agreement between us, the insured and the claimant.

We will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance.

## H. Financial Impairment

Bankruptcy, rehabilitation, receivership, liquidation or other financial impairment of the insured or any "underlying insurer" shall neither relieve nor increase any of our obligations under this policy.

In the event there is diminished recovery or no recovery available to the insured as a result of such financial impairment of any insurer providing "scheduled underlying insurance" or "unscheduled underlying insurance," the coverage under this policy shall apply only in excess of the limits of "scheduled underlying insurance" or "unscheduled underlying insurance." Under no circumstances shall we be required to drop down and replace the limits of insurance of a financially impaired insurer. Nor shall we assume any other obligations of a financially impaired insurer.

## I. Severability Of Interests

The insurance afforded applies separately to each insured against whom claim is made or "suit" is brought. However, the inclusion of more than one insured shall not operate to increase the limits of our insurance.

## J. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or any of our authorized agents advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Sixty (60) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be computed pro rata. If the first Named Insured cancels, the refund will be computed at ninety percent (90%) of pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## K. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. At our request, the insured will bring "suit" or otherwise assist us in enforcing those rights. We will cooperate with the insured and all other interests. Any amounts recovered shall be apportioned in the following order:

1. Any amount paid in excess of the payments under this policy shall first be reimbursed up to the amount paid by those, including the insured, who made such payments;

2. We are then to be reimbursed up to the amount we paid;

3. Any remainder shall be available to the interests of those over who this coverage is in excess and who are entitled to claim such remainder.

Expenses necessary for the recovery of any such amounts shall be divided between the interests concerned, including the insured, in the ratio of their respective recoveries as finally settled.

If there is no recovery as a result of proceedings instituted solely at our request, we will bear all expenses of such proceedings.

L. **Duties Of The Insured In The Event Of An "Occurrence" Which Has Not Resulted In A Claim Or "Suit"**

You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit." To the extent possible, notice should include:

1. Particular information sufficient to identify the insured;

2. Reasonably obtainable information with respect to time, place and circumstances of the "occurrence"; and

3. The names and addresses of the injured persons and witnesses.

M. **Duties of the Insured in Event of Claims or "Suits"**

Immediate written notice shall be given by the insured to us whenever:

1. A claim is made or "suit" is brought against the insured;

2. The insured receives notice that a right to bring a claim or "suit" against the insured will be asserted; or

3. The insured obtains information that the obligations of "underlying insurers" to investigate, defend, pay on behalf of or indemnify the insured have ceased.

You and any other involved insured must:

1. Authorize us to obtain records and other information;

2. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

3. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Every demand, notice, summons, amended complaint or other process received by the insured or a representative of the insured shall be forwarded with each notice.

N. **Settlement Of Claims Or "Suits"**

We may pay, but we are not obligated to pay, any part or the entire amount of the "retained limit" to effect settlement of, or to defend or pay for the defense of, any claim or "suit." Upon notification of the action taken, you shall promptly reimburse us for such part of the "retained limit" that we paid. All Named Insureds are jointly and severally responsible for our reimbursement within thirty (30) days after we give the insured written notice or demand for payment.

O. **Other Insurance**

Whenever the insured is covered by other primary, excess or excess contingent insurance not scheduled on this policy as "scheduled underlying insurance," this policy shall apply only in excess of, and will not contribute with, such other insurance. This policy shall not be subject to the terms, conditions or limitations of any such other insurance. In the event of any payment under this policy where the insured is covered by such other insurance, we shall be subrogated to all of the insured's rights of recovery against such other insurance. The insured shall execute and deliver instruments and papers, including assignments of rights, and do whatever else is necessary to secure such rights.

## P. Sole Agent

The insured first named in **ITEM 1.** of the Declarations is authorized to act on behalf of all insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in **ITEM 1.** of the Declarations is responsible for the payment of all premiums. The other Named Insureds jointly and severally agree to make such payments in full if the first Named Insured fails to pay the amount due within thirty (30) days after we give written notice or demand.

## Q. Conformity

Terms of this policy that are in conflict with the laws of the state where this policy is issued are hereby amended to conform to such laws.

## R. Employers Liability Common Law Defenses

As a condition to the recovery of any loss under this policy, with respect to "bodily injury" to or death of an "employee" arising out of and in the course of employment by you, you warrant that you have not and will not abrogate your common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise. In the event you should, at any time during the policy period, abrogate such defenses, such insurance as is afforded by this policy with respect to such "employee" will terminate at the same time.

## S. Representations

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

2. The underlying insurance information in the Schedule Of Underlying Insurance is accurate and complete;

3. The statements and information in **1.** and **2.** of this **Representations** condition are based upon representations you made to us;

4. We have issued this policy in reliance upon your representations; and

5. If you should unintentionally fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

## T. When Damages Are Payable

We will not make any payments under this policy unless and until the total applicable limit of "scheduled underlying insurance," "unscheduled underlying insurance" and/or the "retained limit" has been exhausted by payment of loss.

When the amount of loss has finally been determined, we will promptly pay on behalf of the insured the amount of such loss within the applicable Limits of Insurance of this policy subject to exhaustion requirement set forth above.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Vice President & Corporate Secretary

_____
President & COO

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2007, I served a copy of the foregoing Motion for Leave to Supplement Opposition to Utica's Motion for Partial Summary Judgment, along with Affidavit of Donald P. Nagle upon Attorney Rick E. Heifetz in hand and upon Attorney Joseph S. Berman by first class mail, postage prepaid.

Donald P. Nagle

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2007, I served a copy of the foregoing Motion for Leave to Supplement Opposition to Utica's Motion for Partial Summary Judgment, along with Affidavit of Donald P. Nagle upon Attorney Rick E. Heifetz in hand and upon Attorney Joseph S. Berman by first class mail, postage prepaid.


_____
Donald P. Nagle