# United States District Court
# District of Massachusetts

KLEENIT, INC.,
      Plaintiff,

    v.                         Civil Action No. 04-10351-RBC[1]

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE,
UTICA NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND CASUALTY
      Defendants.

# *MEMORANDUM AND ORDER ON MOTIONS #97, #114, #115 AND #116)*

COLLINGS, U.S.M.J.

## *I. Introduction*

Plaintiff Kleenit, Inc. ("Kleenit"), the owner and operator of a dry-cleaning chain, seeks insurance coverage from Defendant Utica National Insurance Group ("Utica") for the environmental remediation of sites in Acton and Chelmsford,

---

[1]

    On November 17, 2004, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. §636(c). (#67)

Massachusetts.  Kleenit contends that Utica insured Kleenit under an umbrella policy for the years 1983 to 1985.  Utica does not contest that it issued a comprehensive general liability ("CGL") policy to Kleenit for the periods 1979 to 1982 and 1982 to 1985.  Utica argues, however, that summary judgment should be entered in its favor due to a complete lack of evidence of insurance coverage under an umbrella policy for the period 1983 to 1985.  Thus, the question presented here is whether Kleenit has produced sufficient evidence to create a triable issue on the existence and terms of the missing umbrella policies.

Utica filed its Motion for Partial Summary Judgment (#97) on August 24, 2006, and submitted a Memorandum of Law in Support of Partial Summary Judgment (#98), as well as a Concise Statement of Material Facts (#99). Kleenit filed its Opposition to Utica National Insurance Group's Motion for Partial Summary Judgment (#103) on September 25, 2006, along with its Concise Statement of Material Facts Asserted to be in Dispute (#104).  On October 5, 2006, Utica submitted its Reply of Defendant Utica National Insurance Group to the Plaintiff's Opposition to Utica National Insurance Group's Motion for Partial Summary Judgment (#107). On March 9, 2007 and on April 6, 2007, the Court held  hearings on the matter.  At that juncture, the

2

dispositive motion was poised for resolution.

Thereafter, however, Kleenit sought for the first time to submit certain supplemental materials in support of its opposition to summary judgment. (*See* Motion for Leave to Supplement Opposition to Utica's Motion for Partial Summary Judgment, #115, and Motion for Leave to Supplement Record with Expert Affidavit, #114). Utica has moved to strike those materials (*see* Defendant Utica National Insurance Group's Motion to Strike Plaintiff's Motion for Leave to Supplement Opposition to Utica's Motion for Partial Summary Judgment and Plaintiff's Motion for Leave to Supplement Record with Expert Affidavit, #116), and Kleenit has filed a response to that motion, (*see* Plaintiff Kleenit's Opposition to Defendant Utica National Insurance Group's Motion to Strike, #117). Thus, at the threshold, the Court considers Utica's motion to strike.

## II.  Motion to Strike

Briefing was completed on this motion for summary judgment on October 5, 2006. On March 9, 2007, the Court held a hearing on the motion, at which time the Court encouraged the parties (including defendant Travelers Property and Casualty ["Travelers"]) to flesh out their respective positions on the issue

of whether Kleenit had sufficiently established a triable question on the material terms of the missing policies. The Court pressed Kleenit on the issue and suggested that Kleenit's opposition materials were likely to fall short in establishing the material terms of the missing umbrella policy. On March 30, 2007, the Court issued its Memorandum and Order on Travelers' Motion for Partial Summary Judgment (#113), setting out the Court's analysis of the Motion for Partial Summary Judgment by Defendant the Travelers Indemnity Company (#93), which had raised issues quite similar to those raised in Utica's motion. In its Memorandum and Order, the Court concluded that Kleenit had failed, as a matter of law, to establish a triable question on the material terms of certain lost policies. *See Kleenit, Inc. v. Sentry Ins. Co.*, 2007 WL 1149850, *11 (Mar. 30, 2007 D. Mass.). At that point, the Court withheld its decision on Utica's companion motion for summary judgment for one reason alone: in its motion for summary judgment, Utica referenced a "specimen policy" that the Court had been unable to locate in the record. So, in an abundance of caution, the Court held a second hearing on April 6, 2007, at which the Court sought to discover from the parties whether such a specimen policy actually existed in the summary judgment record before the Court.

At that second hearing, Kleenit filed in open court its first motion for leave to supplement its summary judgment opposition, (#115). Among other things, the motion sought to introduce a copy of the undisputed CGL policy, and a specimen copy of a "Commercial Umbrella Policy," dated 05/02. (*See* #115, Exh. A & C) Kleenit also stated at the hearing that it was prepared to offer expert testimony at trial on the material terms of the policy.[2] The Court noted that such a proffer would be insufficient to defeat summary judgment. *See, e.g., Garside v. Osco Drug, Inc.* 895 F.2d 46, 50 (1st Cir. 1990) ("a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax").

Nearly two weeks later, on April 19, 2007, Kleenit filed its second motion for leave to supplement its opposition (#114), this time seeking to introduce the affidavit of an expert in reconstructing lost insurance policies. In its motion to strike the additional materials, Utica argues that it will be unfairly prejudiced by the late submissions (#116). The Court agrees and will strike the affidavit and other materials.

First, the Court notes that discovery was to be completed by July 7, 2006,

---

[2]

Kleenit made other arguments based solely on the summary judgment materials in the record before the Court; the Court takes up these arguments below.

and briefing was completed on this partial motion for summary judgment on October 5, 2006.[3] However, at no point did Kleenit seek relief under Rule 56(f). The purpose of Rule 56(f) is to "buy[] time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." *Vargas-Ruiz v. Golden Arch Development, Inc.*, 368 F.3d 1, 3 (1st Cir. 2004) (internal quotations and citation omitted).

While the Court need not "insist on slavish compliance" with Rule 56(f), *id.*, the Rule does have its imperatives. First, "[a] party seeking relief under Rule 56(f) must act celeritously to inform the trial court of his predicament." *Id.* at 4. Kleenit never complained to the Court that it needed additional time for discovery, or was somehow hindered in its efforts to oppose summary judgment. (Under Rule 56(f) parlance, Kleenit never expressly or "authoritative[ly]," invoked the rule, *Vargas-Ruiz*, 368 F.3d at 4 (internal quotations and citation omitted).) Further, a party must invoke Rule 56(f) "promptly upon service of the defendant's dispositive motion, *Vargas-Ruiz*, 368 F.3d at 4; *see also Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d

---

[3] The Court set out its original Scheduling Order for dispositive motions on April 27, 2006, and both parties sought extensions, which the Court granted.

6

1198, 1204 (1st Cir. 1994)(a party must seek Rule 56(f) relief "within a reasonable time following receipt of a motion for summary judgment"). Notably, in this case the Court scheduled two separate hearings on Utica's motion for summary judgment. *Cf. North Bridge Associates, Inc.*, 22 F.3d at 1204 n.8 (observing that under the federal rules "[t]he only deadline that arguably might apply arises out of the requirement [in Rule 56(c)] that affidavits opposing a motion for summary judgment must be submitted at least one day before the scheduled hearing on the motion"). Kleenit moved to introduce supplementary materials in open court at the April 6, 2007 hearing. Then again, nearly two weeks later and on the eve of this Court issuing its ruling in the matter, Kleenit moved to introduce the affidavit of the insurance expert. Both motions are untimely by any measure.

Further, Kleenit's sole argument for submitting the materials at this late date is that "[o]nly since the oral argument has the specific argument emerged that evidence previously submitted by Kleenit to establish the <u>material terms</u> of the umbrella policy was insufficient." (#117 at 1) This assertion is demonstrably untrue: Utica squarely raised the issue in its original memorandum of law, and correctly pointed out that Kleenit bore the burden of

establishing the material terms of the umbrella policy.  (*See* # 98 at 7-9, 16-17)
Kleenit can hardly claim to have been surprised by Utica's position.  Indeed,
Kleenit's position all along–and at the hearing on the matter--has been that its
original opposition materials were sufficient to establish the material terms of
the missing policy.   (*See* #103 at 8, 15)  The Court thus rejects Kleenit's
explanation for the untimely submissions.  *Cf. Vargas-Ruiz*, 368 F.3d at 5 ("a
party seeking to postpone the adjudication of a summary judgment motion . .
. must explain why, in the exercise of due diligence, he has been unable to
obtain the necessary information").

   In sum, if Kleenit thought that it was unable properly to oppose the
motion for summary judgment without additional discovery or without
mustering additional evidentiary support, it should have timely availed itself of
Fed. R. Civ. P. 56(f).  It did not, and the Court and Utica were entitled to
assume that Kleenit was willing to stand on its original opposition.  Accordingly,
the Court declines to consider the late-submitted materials, and will assess the
summary judgment motion based on the original filings and oral argument.
Even so, the Court notes in its discussion below that the supplementary
materials would be unlikely to alter the result here.

### III.  Facts

Kleenit owns and operates several dry-cleaning stores in Massachusetts. (#99, Exh. A, Tab 1)   The Massachusetts Department of Environmental Protection issued a Notice of Responsibility to Kleenit regarding its facilities in Chelmsford and Acton.  (#99, Exh. A, Tab 1)   Kleenit submitted claims regarding the notices of responsibility to several insurance companies, including Utica. (#99, Exh. A, Tab 2) Graphic Arts Company, an affiliated company of Utica, issued a CGL policy to Kleenit for the coverage periods of October 1, 1979 to October 1, 1982, and October 1, 1982 to October 1, 1985, with policy number FMP1946, and with limits of $100,000 per occurrence. (#99 ¶ 7)  That policy is not at issue in this motion for summary judgment.

Harry Nason ("Nason"), who is now deceased, was Kleenit's accountant from the 1950s to 2001-2002.  (#99 ¶ 20)  Keith Crider ("Crider"), President and former Chief Financial Officer of Kleenit, began working at Kleenit in the late 1960's.  (#104 Exh. H ¶ 1)   During the relevant years here, Kleenit's insurance broker was Henrick F. Johnson.  (#104, Exh. A, Tab 7)

When Nason retired in about 2001, Nason transferred his accounting records directly to Kleenit's offices. (#99 ¶ 23)  Kleenit has produced portions

9

of accounting ledgers maintained by Nason.  (#99, Exh. A, Tabs 5, 8)  The ledger entries show payments for a one-year Utica umbrella policy, number LU6406, for the periods 2-3-83 to 2-3-84 and 2-3-84 to 2-3-85 in the amount of $1,000,000.  Kleenit has also produced a check written to Henrick F. Johnson dated 3/2/83 (#99, Exh. A, Tab 9) and a check written to Henrick F. Johnson dated 6/27/84 referencing "umbrella policy," (#99, Exh. A, Tab 6).

## IV.  Legal Framework

### A.  Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations and citation omitted).  The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that

such a dispute exists.'" *Cordero-Soto v. Island Finance, Inc.*, 418 F.3d 114, 119 (1st Cir. 2005) (quoting *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1st Cir. 2004)); *see also Mulvihill*, 335 F.3d at 19.

When considering whether to grant summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgement is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006).

Despite this "notoriously liberal" standard, *Mulvihill*, 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat." *Kearney v. Town of Wareham*, 316 F.3d l8, 22 (1st Cir. 2002). A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] 'genuine' issue exists if there is sufficient evidence supporting the claimed factual dispute to

require a choice between the parties' differing versions of the truth at trial."
*Garside,* 895 F.2d at 48 (internal quotations and citations omitted).  A "material
fact" is "one which might affect the outcome of the suit under the governing
law."  *Poulis-Minott v. Smith*, 388 F.3d 354, 363 (1st Cir. 2004) (internal
quotations and citation omitted).  The party objecting to summary judgment
must set forth specific facts proving a genuine issue of material fact in order to
"deflect the swing of the summary judgment scythe." *Noviello v. City of Boston*,
398 F.3d 76, 84 (1st Cir. 2005) (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d
15, 19 (1st Cir. 2003)).  Where "the non-moving party rests 'merely upon
conclusory allegations, improbable inferences, and unsupported speculation,'"
summary judgment will be appropriate.  *Forestier Fradera v. Municipality of
Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006) (quoting *Benoit v. Technical Mfg.
Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (further internal citations omitted));
*see also Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 5 (1st Cir. 2005) (mere
speculations raised by the nonmoving party that are unsubstantiated will not be
sufficient to defeat summary judgment).  Instead, Rule 56(c) "mandates the
entry of summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B. Relevant Massachusetts Law

"Under Massachusetts law, the insured bears the initial burden of proving that an injury occurred within the coverage ambit of the insurance policy." *U.S. Liability Ins. Co. v. Selman,* 70 F.3d 684, 688 (1st Cir. 1995) (citing *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68, 74 (1993)). Then, after "the insured establishes basic risk coverage, the devoir of persuasion shifts to the insurer to prove a defense to coverage, say, the applicability of a policy exclusion or the insured's failure to comply with conditions precedent." *Id.* (citing *Gusson v. Boston Mut. Life Ins. Co.*, 326 Mass. 571, 95 N.E.2d 670, 672 (1950)); *see also Amtrol, Inc. v. Tudor Ins. Co.*, 2002 WL 31194863, *5 (D. Mass. Sept. 10, 2002) (under Massachusetts law, "[t]he initial burden lies with the insured to prove that the underlying facts state a claim for which the insurance policy provides coverage . . . . Once the insured has met this burden, the burden shifts to the insurer to establish that an exclusion of coverage applies") (citations omitted).

Here, neither Kleenit nor Utica has been able to produce a physical copy of the alleged umbrella policies.  Under such circumstances, the proponent of a lost insurance policy "bears the burden of proving that the instruments were issued, and he must also prove their terms." *Employers' Liability Assurance Corp., Ltd. v. Hoechst Celanese Corp.*, 43 Mass. App. Ct. 465, 484 (1997) (citing *Markline Co., Inc. v. Travelers Ins. Co.*, 384 Mass. 139, 140 (1981)).  Under Massachusetts law, Kleenit must show by a preponderance of evidence both the existence and contents of a lost or missing policy.  *Rubenstein v. Royal Ins. Co. of America*, 44 Mass. App. Ct. 842, 846 (1998) (rejecting clear and convincing evidence as standard of proof in lost policy cases)[4].  A proponent of a lost policy may effectively reconstruct the existence and contents of the lost policy using

---

[4]

        The Court assumes that the preponderance of the evidence standard applies in federal court sitting in diversity.  *Servicios Comerciales Andinos, S.A. v. General Elec. del Caribe*, 145 F.3d 463, 478 (1st Cir. 1998) ("A state law 'that would be controlling in an action upon the same claim by the same parties in a State court' is substantive for *Erie* purposes if it would 'significantly affect the result of a litigation for a federal court to disregard it.'") (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)).  The Court recognizes that federal courts have arrived at different conclusions on this question.  *See, e.g., Metlife Capital Corp. v. Westchester Fire Ins. Co.*, 224 F.Supp.2d 374, 384 (D. P.R. 2002) (applying clear and convincing standard in lost policy case and citing federal cases applying different standards).  Nevertheless, assuming Massachusetts law does not govern the question, the Court is persuaded by those federal cases that apply the usual preponderance of the evidence standard in lost policy cases.  *See, e.g., Coltec Industries, Inc. v. Zurich Ins. Co.*, 2002 WL 31185789, **4-5 (N.D. Ill. Sept. 30, 2002); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 810 F. Supp. 1420, 1423-1425 (D. Del. 1992) (reasoning that usual civil standard applies in establishing existence and terms of lost policies), *cited in Rubenstein*, 44 Mass.App.Ct. at 846.  Thus, in the Court's view, the preponderance of the evidence standard governs regardless of which law (federal or Massachusetts) is applied.

secondary evidence[5] such as "business records, underwriter's folios, or billings of the insurance company to the insured." *Rubenstein*, 44 Mass. App. Ct. at 846; *see also* Barry R. Ostrager & Thomas R. Newman, 2 *Handbook on Insurance Coverage Disputes* § 17.04, at 1150 (13th ed. 2006) (in establishing existence and terms of lost policy, "[d]ocumentary proof can consist of correspondence which refers to the lost policy; financial statements; annual reports; minutes of meetings of insurance committees or the company's board of directors; check registers, ledgers or other accounting records; certificates of insurance; broker's placing slips; and contracts which refer to insurance").

## V.  Analysis

Kleenit asserts that Utica issued an umbrella policy with coverage limits of $1,000,000 for the annual policy periods February 2, 1983 to February 3, 1984 and February 2, 1984 to February 3, 1985.  (#99, Exh. A, Tab 1)  As evidence of the existence and terms of the missing policies, Kleenit has submitted ledger sheets that were made and kept by Harry Nason while he was

---

[5]

      Fed. R. Evid. 1004 governs whether Kleenit may properly introduce secondary evidence to prove the terms of the lost policy.  Under the rule, whoever "seeks to introduce secondary evidence must show that he has used all reasonable means to obtain the original, i.e., such search as the nature of the case would suggest."  *Sylvania Elec. Products, Inc. v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir. 1965) (citations omitted). Although Utica objected to the diligence of Kleenit's search in its memorandum of law, at oral argument Utica abandoned its objection to Kleenit's use of secondary evidence here. The Court finds that, given the lapse of time here, Utica's non-opposition and evidence in the record, (*see* #104, Exh. 6 ), the use of secondary evidence is appropriate in this case.

Kleenit's outside accountant.  The ledger sheets were then passed on to Keith

Crider upon Nason's retirement in about 2002.  (#99, Exh. C. at 60)    The

ledger sheets dated July 2, 1983 and June 30, 1984, reflect payments for

"prepaid insurance" respectively as follows:

> Utica National  LU6406  P Johnson  Umbrella liability policy 1,000,000
> 2-3-83 1 yr. 2-3-84 750 7/12  [illegible]

(#99, Exh. A, Tab 8)

> Utica National Ins. Co.  LU6406 P Johnson    Umbrella liability policy
> 1,000,000 2-3-84 1 yr. 2-3-85  750 [illegible] [illegible]

(#99, Exh. A, Tab 4)

In addition to the ledger entries, Kleenit has submitted two checks reflecting

payments to Henrick F. Johnson: the first is dated 3-2-83 for $750, (#99, Exh.

A, Tab 9), and the second is dated 6-27-84 for $750 and references "Umbrella

policy," (#99, Exh. A, Tab 6).  Finally, Kleenit relies on the deposition testimony

of Keith Crider, the former president and chief financial officer of Kleenit.

Crider began working at Kleenit in the late 1960's.  (#104, Exh. H ¶ 1) From

this evidence, Kleenit asks the Court to infer the existence and terms of the

missing umbrella policies.

## A.  Preliminary Evidentiary Challenges

At the threshold, Utica has objected to the admissibility of the ledger

sheets as hearsay; it argues that the ledger sheets do not fall within the business records exception to the hearsay rule, Fed. R. Evid. 803(6). The Court need not decide that contention because the Court concludes that the ledger sheets are admissible under the ancient documents exception to the hearsay rule, Fed. R. Evid. 803(16), which creates a hearsay exception for statements "in a document in existence twenty years or more the authenticity of which is established." Fed. R. Evid. 901(b)(8) governs the authenticity of ancient documents, and if a document meets the requirements of Rule 901(b)(8), statements within the document qualify as exceptions to the hearsay rule under Fed. R. Evid. 803(16). *See* Jack B. Weinstein & Margaret A. Berger, 5 *Weinstein's Federal Evidence*, § 803.18 (Matthew Bender 2nd ed. 2007). Rule 901(b)(8) provides that

> a document or data compilation is sufficiently authenticated to be admissible if the proponent shows that it '(A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered.'

*Weinstein's Federal Evidence, supra* at § 803.18 (quoting Fed. R. Evid. 901(b)(8)). Crider's deposition testimony is sufficient to authenticate the ledger sheets under Rule 901(b)(8). There is little question that the documents have been in existence for more than twenty years: Crider's testimony

sufficiently establishes that Nason would have prepared the documents in connection with Kleenit's year-end accounting practices.    Further, the documents were found in a place of "natural custody" for the items.  Wright & Gold, 31 *Federal Practice and Procedure*, § 7113, at 141 (2000).  Crider testified that Nason kept the ledger sheets in his office until he retired in 2001 or 2002, and that Nason transferred the documents to Kleenit's offices on his retirement. (#99 ¶ 23; #104, Exh. D at 60)  *Cf. Federal Practice and Procedure*, *supra*, at 140 ("records purportedly of a particular entity found with other records of that entity or on its premises may satisfy this aspect of the rule").    Thus, Crider's testimony establishes that the documents were in a place (Nason's office) where they would likely be if authentic.  Nor are the ledger sheets in a condition that raises questions as to their authenticity:   although the ledgers are at times illegible, that problem pertains to the probative value of the ledgers, and not to their authenticity.  *See, e.g.*, *Federal Practice and Procedure*, *supra*, at 136-137 & n. 28 (the focus of the rule is on "whether the condition of an item provides reason to doubt that the item is what it is purported to be" and not on whether "the contents of the document or data compilation make untrustworthy assertions of facts"); *see also Threadgill v. Armstrong World Industries, Inc.*, 928

F.2d 1366, 1376 (3rd Cir. 1991) ("The determination that a set of documents are, indeed, *prima facie* authentic in no way precludes counsel from challenging the content of the documents or from arguing that missing documents subject the contents to a different interpretation."); *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir.) ("Although the Rule requires that the document be free of suspicion, that suspicion goes not to the content of the document, but rather to whether the document is what it purports to be."), *cert. denied*, 476 U.S. 1153 (1986).   Nothing here suggests anything suspicious about the condition or provenance of the ledger sheets, and Utica has made no complaint on this score. Indeed, at oral argument, Utica conceded that it could proffer no reason to doubt the authenticity of the documents.   The Court will consider the ledger sheets as proper summary judgment material.

## B. The Existence and Terms of the Missing Policies

The ledgers reflect payments to Johnson, and identify the policy number and type of policy –"Umbrella liability policy"– that is at stake.  In addition, the ledgers show the coverage periods, and the limits of liability.   The checks correlate to the premium amount indicated on the ledger sheets.  From this evidence, the Court assumes favorably to Kleenit that the entries are sufficient

to create a triable issue on the existence of the insurance policies for the time frames indicated. However, although the contents of the ledger sheets permit the inference that Kleenit purchased umbrella liability insurance from Utica, the ledger sheets say nothing about the specific material terms of the policies, and, apart from its belated offers, Kleenit has produced no other evidence to establish the material terms, as Massachusetts law requires.

Crider, Kleenit's former president and chief financial officer, is perhaps the person in the best position to testify at trial on the issue of the existence and terms of the missing policy here. *Cf. Metlife Capital Corp.,* 224 F. Supp.2d at 384 (noting that witness with familiarity of the terms of the original policy may testify to terms of lost policy). However, the record suggests that Crider could offer only surmise and conjecture concerning the material terms of the policy. In any event, if Crider had some knowledge of the terms of the missing policy or was otherwise competent to testify to the material terms of the policy, Kleenit has not established that fact in its summary judgment materials before the Court. At most, the testimony to which Kleenit points (*see* #104 ¶ 1.c) suggests that Crider is competent to testify to the existence of an umbrella policy, but not its material terms. In short, the Court can discern nothing in the record (as it

existed prior to the hearings on the matter) to create a triable issue on the

material terms of the missing policy.  *Cf. Metlife Capital Corp.,* 224 F. Supp.2d

at 386-387 (even assuming *arguendo* that insured had established the existence

of the missing policy through "certificates and the confirmation of insurance

[that] outline the type of coverage, the dates of coverage, and coverage

amounts," none of those documents specify or describe any specific policy

provisions and "[a]bsent proof of or reference to the specific language, the

Court can make no determinations as to what duties [the insurer] may have

owed [the insured] under the policy")[6]; *see also Bituminous Cas. Corp. v.*

*Vacuum Tanks, Inc.*, 975 F.2d 1130, 1131-1132 & n.2 (5th Cir. 1992) (noting

that proof of the existence of policies "does not obviate . . . burden to also prove

their contents"; evidence of policy numbers, dates of coverage, and coverage

amounts of CGL policies insufficient for the court to make coverage decisions

without proof of the actual policy terms) (applying Texas law, which requires

---

[6] *Metlife Capital Corp.* was decided following a bench trial, and the court held that the proponent of a lost policy must establish the terms and conditions of a lost policy by "clear and convincing, or at least, strong and conclusive evidence." *Metlife Capital Corp*, 224 F. Supp.2d at 384.  Despite these distinctions, the reasoning in *Metlife Capital Corp.* applies here.  Kleenit, both in its opposition and at oral argument, repeatedly collapsed the crucial distinction between establishing the existence of a lost policy and its terms.

proof of contents of missing policy).[7]

The Court notes that a putative insured may seek to create a trial worthy dispute of fact by introducing evidence that standard policy forms or specimen forms reasonably supply the terms of the lost policy.[8] *See, e.g.,* 2 *Handbook on Insurance Coverage Disputes, supra,* § 17.04, at 1150 ("When the type of policy is known, it may be possible to establish the terms and conditions of the policy by reference to a standard form, such as the Comprehensive General Liability policy developed by the Insurance Services Office [ISO] or one of its two predecessors"); *see also SCA Disposal Services of New England, Inc. v. Central Nat'l Ins. Co. of Omaha,* 1994 WL 879687 (Mass. Super. Apr. 12, 1994) (plaintiff-insured offered the standard form state provisions from a

---

[7]

Notably, in *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, the insured had sought to establish the missing policies' terms by introducing a specimen policy in use during the relevant years. Although the Fifth Circuit excluded the use of the specimen copy on evidentiary grounds not relevant here, in an appeal after remand, the Fifth Circuit held that the evidence introduced at trial supported the district court's conclusion that the terms of the missing copy matched those of the specimen policy. *See Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1051 (5th Cir. 1996).

[8]

Utica suggested in its opposition (citing *Bituminous Cas. Corp.*) that Kleenit had attempted to demonstrate the use of the terms here by means of a specimen policy. (#98 at 18) Because the Court was unable to locate such a specimen policy in the record, and because Kleenit itself did not refer to one in its summary judgment papers, the Court conducted a hearing to clarify any confusion. As it turns out, Kleenit had not relied on a specimen umbrella policy in its opposition. Although Kleenit sought to introduce a sample policy at the hearing (*see* #115, Exh. C), even if the Court were to consider it, the Court notes that that policy is dated 5/02, and Kleenit offered no connection between that sample policy and the actual policies that Utica might have used during the relevant time frame.

contemporaneous policy to prove the terms and conditions of the missing policy);  *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp*., 302 F.3d 83, 93 & n.6 (2nd Cir. 2002) (insured produced evidence establishing existence of CGL policy for given years, and "[w]ith respect to the *terms* of the CGL policies," the parties agreed that any CGL policy issued by insurer during the relevant years would have been insurer's "standard" or "typical" policy);  *Servants of Paraclete, Inc. v. Great American Ins. Co.*, 857 F. Supp. 822, 829 (D. N.M. 1994) (concluding that genuine issue of material fact existed as to whether insured had shown existence and terms of insurance policy by preponderance of the evidence, where insured submitted, *inter alia*, specimen policies and policy jacket forms from insurer's records), *amended on reconsideration in part on other grounds,* 866 F. Supp. 1560 (D. N.M. 1994); *Americhem Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F. Supp. 1143, 1146 (W.D. Mich. 1995) (where no insured's witness could recall the policies' specific language, insured showed the terms by offering specimen copies of a declarations form and a coverage form, which insured asserted were the state-approved comprehensive general liability forms that insurer used during relevant time frame, and insurer stipulated that it sold only state-approved forms); *Gold Fields American Corp. v. Aetna Cas. and*

*Sur. Co.*, 661 N.Y.S.2d 948, 951 (N.Y. Sup. Ct. 1997) (noting that the question at summary judgment "boil[ed] down to whether plaintiff ha[d] sufficient proof to raise an issue of fact with respect to the terms of the policies" and holding that plaintiff-insured had adduced sufficient proof by asserting that insurer "was a member of the National Bureau of Casualty Underwriters ('NBCU') in the 1950's and 1960's" and that insurer had "on occasion, used specimen forms that followed the NBCU forms for CGL policies").

Further, as these cases suggest, "courts generally will require more proof than that the insurer used standard forms." *See, e.g.*, 2 *Handbook on Insurance Coverage Disputes, supra,* § 17.04, at 1151 (and cases cited); *see also SCA Disposal Services of New England, Inc.,* 1994 WL 879687, at *10 (noting that "[b]ecause insurance policies are often customized or manuscripted, the use of a standard form in one policy is not by itself proof that it was included in a different policy"; officer in charge of the insured company's national insurance program averred that, based on first-hand knowledge, the terms of the missing policy were similar to those found in the standard policy).

The Court is persuaded that Kleenit must establish "some clear link," *Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015, 1021 (6th Cir.

1995), between a sample policy and the missing policy in order to create a genuine dispute of fact.  The following reasoning applies:

> Here no jury could find, absent sheer speculation, the scope of coverage, the relevant notice requirements, and all of the other aspects of the policy, on which coverage often hinges. Nor can [the insured] rely on some contemporaneous version of the policy that it has secured from other parties, or from Appellees, absent some clear link, such as there being only one version of the policy, direct testimony linking the sample policy to the one issued, or solely cosmetic differences between versions. The very fact that there are different versions undermines [the insured's] claim.

*Id.*[9]

*Employers' Liability Assurance Corp., Ltd. v. Hoechst Celanese Corp.*, 43 Mass. App. Ct. 465 (1997), a case which involved excess and umbrella policies (and a case on which Kleenit relies), is instructive in this regard.  There, the Massachusetts appeals court found that summary judgment was properly denied on the basis of the affidavit of the insured's former insurance manager who produced a chart of excess and umbrella policies *and* on the finding by the trial judge "that the insurers' standard policy forms and policy jackets provided the likely texts of these lost policies." *Id.* at 484.  Thus, in *Employers Liability Assur.*

---

[9]

Even if the Court were to consider the expert affidavit that Kleenit submitted at the eleventh hour, that affidavit succeeds at best in painting a picture of what a contemporaneous version of the missing policy would probably look like.  The expert's own affidavit makes apparent that umbrella policies of the time were not carbon copies.  (*See* #115, Exh. B to Exh. A)

*Corp., Ltd.,* some evidence of material terms was supplied by *the insurers' own* standard policy forms.  Here, Kleenit has apparently made no effort to depose a Utica representative about Utica's use of standard forms during the relevant time frame.[10]  The time for discovery has long passed, and Kleenit, as noted, never sought relief under Rule 56(f).[11] *Cf. Marathon Flint Oil Co. v. American States Ins. Co.*, 810 F. Supp. 850, 853-854 (E.D. Mich. 1992) (leaving open the question whether plaintiff had "a right to argue that the language of its policy must have been of a particular type given the alternative CGL policies offered by [insurer] during the years in question," but granting plaintiff-insured's motion to compel discovery filed along with opposition to motion for summary judgment, where plaintiff argued that if defendant insurer produced sample insurance forms, plaintiff would be able to establish coverage).  Kleenit's opposition to summary judgment rises or falls on the evidence now before the

---

[10]

It may be, for example, that the prefix "LU" is significant.  *See* Barry R. Ostrager & Thomas R. Newman, 2 *Handbook on Insurance Coverage Disputes* (13th ed. 2006) (noting that "[a]lpha-numeric designations or policy number prefixes may be of assistance in establishing the nature of coverage").  Again, however, the Court notes that Kleenit has apparently not deposed a Utica representative on the meaning of the prefix.

[11]

As noted *supra* note 8, Kleenit sought to introduce  a sample umbrella policy at the April 6, 2007 hearing.  This policy is dated May, 2002.  (*See* #115, Exh. C) Kleenit has offered no evidence to suggest that Utica used such a policy during the relevant time frame.  Without more, this late submission would not create a triable issue on the material terms of the missing policy.

Court. Without any evidence that the terms of the missing policy matched those of a standard policy, the Court cannot indulge a speculative inference in Kleenit's favor on this point.

The Court makes a final observation. At oral argument Kleenit suggested that the very nature of umbrella policies *qua* umbrella policies permits the inference that the CGL policy that Utica indisputably issued supplies the likely terms of the missing policy, because umbrella policies are likely to follow the form of the underlying insurance policy. (This is also the gist of the expert affidavit that Kleenit sought belatedly to introduce.) The Court has considered the argument, but must reject it. Even if the Court assumes favorably to Kleenit that the Utica CGL policy is the underlying policy here,[12] Kleenit would still be obliged at trial to establish the terms of the umbrella policy, which would govern. While one may make general observations about how umbrella policies operate,[13] this approach can only take Kleenit so far here because Massachusetts

----

[12]

First, the Court notes that Kleenit sought belatedly to introduce the Utica CGL policy, despite ample opportunity to do so. The Court further notes that the expert affidavit proceeds on the assumption that the Utica CGL policy was the underlying policy here. (*See* #114, Exh. A ¶ 17) Without a schedule of underlying insurance, which would have formed part of the missing policy, or without some direct evidence (such as the testimony of an insurance broker or a person with knowledge) suggesting the purpose of this particular umbrella policy, not even expert testimony can offer an opinion on what this particular umbrella policy covered.

[13]

In *Commercial Union Ins. Co.* v. *Walbrook Ins. Co., Ltd.*, 7 F.3d 1047, 1053 (1st Cir. 1993), the First Circuit concluded that one party's interpretation of a specific umbrella policy better comported with the "basic nature and

law and the federal summary judgment standard require more than surmise about the terms of the policy in question. In the end, based on the record before the Court, Kleenit has offered only conjecture in the form of argument about the terms of the missing policy.

Kleenit is obliged on summary judgment to "make a showing sufficient to establish the existence of an element essential to [its] case. *Celotex Corp.*, 477 U.S. at 322. Although the Court concludes that Kleenit has succeeded in creating a triable issue on the existence of the missing policy, Kleenit has failed to create a triable issue on the terms of the missing policy. Thus, the Court concludes that Utica is entitled to judgment as a matter of law.

---

purpose of 'umbrella policies.'" The starting point in that case, however, was the terms of the specific policy in question. Generalities about the nature of a type of policy may provide a useful gloss when interpreting a specific policy, but the Court rejects the notion that one can infer the terms of a specific lost policy, without more, from the basic nature of umbrella policies generally.

## VI. Conclusion and Order

For the foregoing reasons, it is ORDERED that Plaintiff Kleenit, Inc.'s Motion for Leave to Supplement Record with Expert Affidavit (#114) and Motion for Leave to Supplement Opposition to Utica's Motion for Partial Summary Judgment (#115) be, and the same hereby are, DENIED.  IT IS FURTHER ORDERED that Defendant Utica National Insurance Group's Motion to Strike Plaintiff's Motion for Leave to Supplement Opposition to Utica's Motion for Partial Summary Judgment and Plaintiff's Motion for Leave to Supplement Record with Expert Affidavit (#116), and Motion for Partial Summary Judgment (#97) be, and the same hereby are, ALLOWED.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge


Date: May 31, 2007.