# United States District Court
# District of Massachusetts

KLEENIT, INC.,
    Plaintiff,

v.                                       CIVIL ACTION NO 2004-10351-RBC[1]

SENTRY INSURANCE COMPANY,
ROYAL & SUN ALLIANCE,
UTICA NATIONAL INSURANCE GROUP, and
TRAVELERS PROPERTY AND CASUALTY,
    Defendants.

## *MEMORANDUM AND ORDER ON THE PLAINTIFF KLEENIT'S MOTION FOR DECLARATORY JUDGMENT RULING THAT THE DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE FOR ALL DEFENSE COSTS INCURRED BY KLEENIT   (#90)*

COLLINGS, U.S.M.J.

---

[1] On November 17, 2004, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. §636(c). (#67)

## I. Introduction

Plaintiff Kleenit, Inc. ("Kleenit") has brought suit against several insurance companies seeking insurance coverage for the environmental remediation of properties located in Massachusetts. Kleenit entered into an interim defense cost-sharing agreement with defendant Utica National Insurance Group ("Utica") and defendant Royal Sun & Alliance ("Royal") concerning the property located in Wayland, Massachusetts. (*See* #91, Exh. A) Since then, Kleenit has settled its claims against Royal, and Royal has been dismissed from this case. The issue now before the Court is what effect Kleenit's settlement agreement with Royal has on the remaining defendants' insurance obligations going forward.

On July 12, 2006, Kleenit filed its Motion for Declaratory Judgment Ruling that the Defendants are Jointly and Severally Liable for All Defense Costs Incurred by Kleenit (#90) and an accompanying Memorandum of Law in Support (#91). On August 23, 2006, defendant Travelers Property and Casualty ("Travelers") filed its Response by Defendant the Travelers Indemnity Company to Plaintiff's Motion for Declaratory Judgment (#96), and on August 24, 2006, defendant Utica filed its Opposition to Plaintiff's Motion for

Declaratory Judgment Ruling that Defendants are Jointly and Severally Liable for All Defense Costs Incurred by Kleenit (#100). On July 7, 2006, Kleenit filed its Response to Utica National Insurance Company's and Travelers Indemnity Company's Opposition to Plaintiff's Motion for Declaratory Judgment (#102). This Court held a hearing on September 21, 2006, at which the Court determined that it needed a copy of the settlement agreement between Royal and Kleenit in order to resolve the present motion. At that point, the Court pretermitted the motion pending receipt of defendants' joint report and a copy of the settlement agreement with mutually agreed upon redactions. On October 12, 2006, Utica and Travelers filed their Joint Statement of the Defendants Regarding Plaintiff's Motion for Declaratory Judgment as to Defense Costs (#108). The Court ordered that the settlement agreement be sealed. On October 20, 2006, the Court heard additional oral argument. The motion is therefore poised for resolution.

## II. Background

Royal, Utica and Kleenit entered into a defense cost-sharing agreement concerning the defense of environmental claims against Kleenit at the Wayland

site.[2] In that agreement, the parties agreed that covered defense costs would be allocated between Royal and Utica, with Royal paying 25% of defense costs and Utica paying 75%. (*See* #91, Exh. A at 5) On March 16, 2006, Kleenit entered into a settlement agreement with Royal, in which it settled all claims against Royal. Kleenit maintains in its motion that Utica must now assume 100% of the defense costs incurred since March 17, 2006, the date after which Kleenit and Royal entered into settlement. Utica argues that its defense obligations going forward should remain limited to 75% of the costs, at least until the proceeds of the Kleenit-Royal settlement are exhausted.

### III. Analysis

The Court begins by noting that the parties do not dispute several propositions of law. First, the parties agree that, under Massachusetts law, the insurers are jointly and severally liable for all defense costs incurred by Kleenit. *See Rubenstein v. Royal Ins. Co. of America*, 44 Mass. App. Ct. 842, 852, 694 N.E.2d 381, 388 (1998). Thus, "when multiple policies are triggered to cover

---

[2] Travelers makes the point that Kleenit appears in the present motion to complain only about Utica's defense obligations at the Wayland site, *see* #96 at 3, and not about Travelers' obligations at other sites in Chelmsford and Acton. The Court agrees that Kleenit's motion appears to address only Utica's defense obligations at the Wayland site. However, the Court's resolution of the issue presented here does not depend on defendant-specific facts. Travelers and Utica represented at oral argument that although future defense costs at the Chelmsford and Acton sites seem unlikely, those sites have not been closed. Given that the issue presented here may still arise at those open sites, the conclusions stated below will govern similar disputes.

the same loss, each policy provides indemnity for the insured's entire liability, and each insurer is jointly and severally liable for the entire claim." *Rubenstein*, 44 Mass. App. Ct. at 852, 694 N.E.2d at 388; *cf. Tilcon Capaldi, Inc. v. Feldman*, 249 F.3d 54, 62 (1st Cir. 2001) ("the phrase 'joint and several' . . . means that damages are a single sum specified in the judgment, that each wrongdoer is liable for the full amount, but the wronged party cannot collect under the judgment *more* than the single sum. . . . [E]ach party jointly liable for a judgment for breach of contract is liable for the *full* amount."). Under this approach, Kleenit may elect to seek full coverage for its liability from one insurer, *see generally Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034, 1050 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644 (1982). That insurer, in turn, may "obtain[] a share of indemnification or defense costs from other insurers under the doctrine of equitable contribution." *Rubenstein*, 44 Mass. App. Ct. at 852, 694 N.E.2d at 388 (citation omitted). Kleenit may have elected, then, to seek all of its defense and indemnity costs from Utica; Utica, in turn, could have sought contribution from the other insurers. *See* Mass. Gen. L. ch. 231B, §4.

However, two facts complicate the ordinary application of these principles.

First, Kleenit entered into a cost-sharing agreement with Royal and Utica, in which the insurers agreed to allocate defense costs between themselves. Second, Kleenit subsequently settled its claims with Royal.

At this juncture, Kleenit's settlement with Royal (provided it was entered into in good faith) is a bar under Massachusetts law to Utica seeking later contribution from Royal. *See United States v. Dynamics Research Corp.*, 441 F. Supp.2d 259, 268 (D. Mass. 2006) (citing Mass. Gen. L. ch. 231B, § 4). On the other hand, the total amount that Kleenit recovers under the applicable policies cannot exceed the amount of its total loss. *See Rubenstein*, 44 Mass. App. Ct. at 856, 694 N.E.2d at 390. For that reason, Massachusetts law provides that Utica will be entitled to seek a credit for the settlement that Kleenit has received from Royal. *See id.* at 856, 694 N.E.2d at 390; *see also* Mass. Gen. L. ch. 231B, § 4(a). The parties appear not to dispute this point. So, the only real question presented in this motion is *when* Utica should receive a credit of the settlement amount, and the extent of the credit.

Kleenit argues that the defense sharing agreement, in which Utica agreed to pay 75% of defense costs and Royal 25%, has no effect on Kleenit's contractual right under its insurance policy with Utica to demand that Utica now

assume 100% of the defense costs going forward. Utica's position is that Utica ought to continue to pay 75% of the defense costs, pursuant to the cost-sharing agreement, because Utica is entitled (at some point) to a credit for the settlement proceeds that Kleenit has received from Royal. Thus, according to Utica, Utica ought to receive the benefit of the off-set immediately, and it should continue to pay 75% of defense costs until the settlement proceeds from Royal are exhausted. (*See* #100 at 4)[3]

The Court concludes that Kleenit has the better argument. First, the cases on which Utica relies are inapposite. Utica argues under this line of cases that Kleenit has effectively become "self-insured" for Royal's pro rata share of expenses. *See* #100 at 6. However, each of the cases on which Utica relies follows a pro rata approach to allocation, an approach that Massachusetts courts have not adopted. A critical distinction between the pro rata approach and the joint and several approach is that, as noted, under the joint and several approach, an insured may require one insurer to cover the entire liability. Under the pro rata approach, each insurer is liable only for its time on the risk, and liability is allocated among policy years. *See, e.g., Stonewall Ins. Co. v. Asbestos*

---

[3] The Court does not take Utica to be challenging its agreement to defend Kleenit under a reservation of rights.

*Claims Management Corp.*, 73 F.3d 1178, 1203-1204 (2d Cir. 1995). Thus, Utica's argument that Kleenit has elected to become "self-insured" for Royal's pro rata share under the settlement agreement might make sense under a "pro rata" approach, but the argument is inconsistent with the joint and several liability approach applied in Massachusetts.

Otherwise, Utica's main argument seems to rest on its contention that the cost-sharing agreement remains in effect until Kleenit has exhausted its settlement proceeds. (*See* #100 at 2) But Utica cites no law for this proposition, nor does the cost-sharing agreement itself compel this result. Indeed, the cost-sharing agreement appears to have terminated upon Royal having settled its claims with Kleenit, and upon Royal giving notice to that effect. (*See* #91, Exh. A ¶ 9).[4] Otherwise, the cost-sharing agreement itself appears to have preserved Kleenit's rights "with regard to all issues of defense and indemnity." (#91, Exh. A ¶ 2) The cost-sharing agreement states:

> Neither the existence of this Agreement nor any actions taken in accordance with its terms by any party shall be

---

[4] Under the terms of the cost-sharing agreement, Kleenit "acknowledge[d] that payment of Covered Defense Costs by the Carriers and the Carriers' [*sic*] performance of their obligations under th[e] Agreement is in satisfaction of Kleenit's claims for defense-related costs and expenses incurred by it prior to and during the term of the this Agreement . . . ; provided, however, that if one of the Carriers terminates [the] Agreement pursuant to paragraph 9, such release shall only be effective with respect to such costs incurred, and paid, up to the date of termination." (#91, Exh. A ¶ 5)

> construed in any way so as to prejudice the interests or rights of any other party at this site or any other site. All of the provisions, exclusions, endorsements, conditions and other terms of the Policies, and all rights, defenses to coverage, causes of action, claims or benefits of all parties which are not expressly waived or limited by this Agreement are preserved. The Carriers reserve their rights to seek contribution or reimbursement from any person or entity, other than Kleenit, for any payments made in accordance with the terms of this Agreement or for any other payments.

(#91, Exh. A ¶ 2 )  If under the joint and several approach followed in Massachusetts, Kleenit would have been entitled to turn to Utica for its defense in the absence of the cost-sharing agreement, it follows that Kleenit may choose to invoke its right to turn to Utica to make Kleenit whole going forward now that the cost-sharing agreement has been terminated, subject of course to Utica's right ultimately to seek a credit for settlement amounts.

The Court is persuaded, however, that a credit at this juncture is premature.  Here, the settlement agreement between Royal and Kleenit does not "purport to separate the portion attributable to indemnity from defense costs." *Rubenstein*, 44 Mass. App. Ct. at 856, 694 N.E.2d at 390.  But at this point, the Court cannot conclude that Kleenit's failure to allocate the settlement proceeds between defense and indemnity leads inevitably to the conclusion that Kleenit

will receive a double recovery here, as Utica maintains. *Cf. United Technologies Corp. v. American Home Assurance Co.*, 237 F. Supp.2d 168, 173 (D. Conn. 2001) (declining to "fault[] the [insured] for failing to draft the settlement agreements in such a way that clearly allocated the settlement funds").[5] Rather, the Court concludes that the appropriate time to decide the reduction issue is "in the overall context of coverage verdicts, prior settlements, and total costs, with no material factual disputes remaining." *Id.* (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 121-122 (2000)). In other words, the question seems properly reserved to the post-judgment phase. Notably, the trial court in *Rubenstein*, the leading Massachusetts case on this question, resolved all the set-off issues after judgment had entered against the non-settling insurer, and after the insured had been fully reimbursed for defense costs. *See Rubenstein v. Liberty Mut. Ins. Co.*, 1995 WL 873786, *10-11 (Mass. Super. Aug. 23, 1995)(Botsford, J.), *aff'd in part and remanded in part on other grounds*, 44 Mass. App. Ct. 842, 694 N.E.2d 381 (1998). Other cases similarly suggest that the set-off issue ought to await resolution of liability issues. *Cf.*

---

[5] Indeed, at oral argument, Utica emphasized that it is often difficult to distinguish between defense costs and indemnity costs. It is precisely for this reason that the Court is loathe to resolve these doubts against Kleenit at this point and on so slim a record.

*Grace v. Buckley*, 13 Mass.App.Ct. 1081, 1082, 435 N.E.2d 655, 657 (1982) (rescript) ("The right of a joint tortfeasor not so released is merely to have the value of any consideration given for such a release subtracted from the total of the damages found to have been suffered by the victim."); *Medical Professional Mut. Ins. Co. v. Breon Laboratories, Inc.*, 966 F.Supp. 120, 124 (D. Mass. 1997) ("In order to avoid the plaintiff obtaining a windfall double recovery, any amount paid in settlement is subtracted from a judgment obtained by the plaintiff against any non-settling tortfeasor.") (internal quotations and citation omitted); *see also Liberty Mutual Ins. Co. v. Black & Decker Corp.*, 383 F. Supp.2d 200, 216-217 & n.14 (D. Mass. 2004) (noting formula for allocating damages, after final judgment, if settlement agreement itself did not allocate between affected sites); *Boston Gas Co. v. Century Indemnity Co.*, 2006 WL 1738312, *3 (D. Mass. Jun. 21, 2006) (determining that resolution of non-settling insurer's entitlement to credit for settlement amounts need not precede entry of final judgment).

In sum, the Court concludes that Utica is not entitled at this juncture to receive the benefit of a credit for the settlement proceeds that Kleenit has received from Royal. Utica has cited no Massachusetts law that supports

accelerating the reduction for the settlement Kleenit has obtained. At this point, Kleenit cannot know what its future costs will be at the Wayland site, and the Court similarly has no framework within which to assess fully and fairly whether Kleenit will receive a double recovery here. *Cf. United Technologies Corp.*, 237 F. Supp.2d at 174-75 (reserving decision on reducing non-settling insurer's judgment until court arrives at "global determination of coverage" supported by developed evidentiary record). The Court will revisit the reduction issue at an appropriate time after the coverage issues have been determined.

### IV. Conclusion and Order

For the foregoing reasons, it is ORDERED that The Plaintiff Kleenit's Motion for Declaratory Judgment Ruling that the Defendants are Jointly and Severally Liable for All Defense Costs Incurred by Kleenit (#90) be, and the same hereby is, ALLOWED.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

July 30, 2007.