# IMMEDIATE RESPONSE ACTION (IRA) PLAN
# AND IMMINENT HAZARD (IH) EVALUATION

304 Boston Post Road
Wayland, Massachusetts

DEP Release Tracking Number 3-25637

**prepared for:**

Wayland Cleaners & Launderers, Inc.,
298 Boston Post Road
Wayland, Massachusetts 01778-1823

R&E Realty Trust
20 Hickory Hill Road
Wayland, Massachusetts 01778-1823

Kleenit, Inc.
4 Park Street
Ayer, MA 01433

**prepared by:**

Ambient Engineering, Inc.
100 Main Street
Concord, Massachusetts

**March 2006**
**Ambient Project 12-12**



1.0   INTRODUCTION..................................................................................................1

2.0   NAME, ADDRESS, AND TELEPHONE NUMBER OF PERSONS
      UNDERTAKING RESPONSE ACTIONS......................................................2

3.0   DESCRIPTION OF THREAT OF RELEASE, SITE CONDITIONS AND
      SURROUNDING RECEPTORS........................................................................2
      3.1   Site Conditions ............................................................................................3
      3.2   Surrounding Receptors ................................................................................3

4.0   DESCRIPTION OF ACTIVITIES UNDERTAKEN TO DATE .......................3
      4.1   Baseline Indoor Air and Ambient Air Investigations..................................3
      4.2   Evaluation of HVAC System ......................................................................4
      4.3   DEP Site Visit and Sump Water Sampling .................................................5
      4.4   Implementation of Air Treatment System...................................................5
      4.5   Follow-Up Indoor Air Sampling..................................................................5
      4.6   Communications to Residential Property Owner .......................................6

5.0   IMMINENT HAZARD EVALUATION ...........................................................6

6.0   EVALUATION OF SUBSTANTIAL RELEASE MIGRATION (SRM) AND
      CRITICAL EXPOSURE PATHWAYS (cep) .....................................................7
      6.1   Substantial Release Migration (SRM) ........................................................7
      6.2   Critical Exposure Pathway (CEP)...............................................................8

7.0   DESCRIPTION OF PROPOSED IRA ACTIVITIES.........................................8
      6.1   System Inspection and Screening ...............................................................8
      6.2   Indoor Air Sampling....................................................................................8

8.0   REMEDIATION WASTE..................................................................................8

9.0   PERMITS ...........................................................................................................9

10.0  PUBLIC INVOLVEMENT................................................................................9

11.0  LSP OPINION AND POSSIBLE OUTCOME ..................................................9

12.0  LIMITATIONS.................................................................................................10

TABLES

Table 1   Indoor and Ambient Air Sampling Results-304 Boston Post Road

FIGURES

Figure 1   Locus Map
Figure 2   Site Plan

APPENDICES

Appendix A     BWSC 103-Release Notification Form
               BWSC 105-IRA Transmittal Form
               BESC-107-Tier Classification Form (To Link RTNs)
Appendix B     Notice of Responsibility
Appendix C     Laboratory Analytical Reports-Indoor Air
Appendix D     Imminent Hazard Evaluation
Appendix E     Report Submittal Letter-Property Owner of 304 Boston Post Road
Appendix F     Public Notification Letters

## 1.0  INTRODUCTION

Ambient Engineering, Inc. (Ambient) submits this Immediate Response Action (IRA) Plan and Imminent Hazard Evaluation o behalf of Wayland Cleaners & Launderers, Inc., R&E Realty Trust and Kleenit, Inc. (Client).  This submittal addresses a release of tetrachloroethylene (PCE) to the indoor air of an occupied office building at levels designating a Condition of Imminent Hazard (IH), as defined by the Massachusetts Contingency Plan (MCP).

Ambient conducted indoor air sampling at 304 Boston Post Road (the "Site") on October 28, 2005 and January 10, 2006 and ambient air sampling on January 10, 2006 at 304 Boston Post Road.  This sampling was conducted as part of MCP Phase II investigations at Wayland Cleaners, 298 Boston Post Road, Wayland Massachusetts.  The office building at 304 Boston Post Road is located west of, and hydraulically downgradient to 298 Boston Post Road.  The indoor air sampling at 304 Boston Post Road was conducted as a next step following the discovery of elevated concentrations of chlorinated Volatile Organic Compound (VOC) concentrations detected in groundwater at the property.

Ambient's risk assessor conducted an IH Evaluation of the indoor and ambient air sampling data for 304 Boston Post Road and concluded that a Condition of IH was determined to exist.  Ambient, on behalf of the PRPs, notified the Massachusetts Department of Environmental Protection (DEP) of the condition on February 2, 2006 within two hours of obtaining knowledge of the Condition of IH.  DEP issued a Notice of Responsibility to the PRPs on February 14, 2006.  A copy of the NOR is included as Appendix B.

Remedial measures were implemented at 304 Boston Post Road immediately upon obtaining knowledge of the Condition of IH.  These measures included included cross-ventilation of the basement of the building.  A subsequent remedial measure was implemented on February 23, 2006, which included installation of a granulated activated carbon adsorber unit, equipped with a blower, as requested by DEP.

A Release Notification Form (BWSC-103) and IRA Transmittal form (BWSC-105) are included in Appendix A.  Ambient has also included BWSC-107 (Tier Classification Form) to link RTN 3-25637 to RTN 3-22753 (a Tier-Classified Disposal Site at 298 Boston Post Road, Wayland, Massachusetts).  This form is also included in Appendix A.

## 2.0 NAME, ADDRESS, AND TELEPHONE NUMBER OF PERSONS UNDERTAKING RESPONSE ACTIONS

Mr. Ralph Wegener
Property Owner
Trustee, R&E Realty Trust
20 Hickory Hill Road
Wayland, Massachusetts 01778-1823
(508) 358-7172

Mr. Hyung Kim
Current Operator
President, Wayland Cleaners & Launderers, Inc.
298 Boston Post Road
Wayland, Massachusetts 01778-1823
(508) 358-2391

Mr. Francis X. Murphy
Former Operator
Kleenit, Inc.
44 Park Street
Ayer, MA 01432-1121
978-772-3391

## 3.0 DESCRIPTION OF THREAT OF RELEASE, SITE CONDITIONS AND SURROUNDING RECEPTORS

Ambient is currently conducting MCP Phase II investigations at 298 Boston Post Road, Wayland, Massachusetts under RTN 3-22753. The western portion of the property has operated as a dry cleaner since the late 1970's and is currently operating as Wayland Cleaners. Subsurface activities at the site under RTN 3-22753 include soil, groundwater and soil gas sampling at 298 Boston Post Road, along with off-site investigations. The off-site investigations included soil, groundwater and indoor air sampling at 304 Boston Post Road in 2005.

Concentrations of PCE were detected in groundwater at 304 Boston Road at levels ranging from non-detect to 12,000 micrograms per liter (ug/L) and exceeding MCP Method 1 GW-2 Standards. Based on this exceedance, Ambient conducted indoor air sampling at the Site in October 2005 and January 2006. Ambient conducted an IH Evaluation to determine if the indoor air results were indicative of a Condition of IH. Based on the results of the evaluation, a Condition of IH was determined to exist.

The Site is located within an area of both residential and commercial usage. Site receptors are office workers and visitors to the Site, along with construction, utility workers and trespassers.

### 3.1 Site Conditions

The Site location and adjacent area is presented in Figure 1, Site Locus. Figure 2 depicts the Site and pertinent information associated with the easterly abutting Wayland Cleaners property. The Site is comprised of an approximate 1,200 square foot two-story building, constructed on a basement. The building is utilized as office space, with approximately ten employees. The building was constructed in 1960 and is situated on an approximate 0.24-acre parcel. The northern and eastern portions of the parcel are asphalt-paved. Landscaped areas are located along the northern and eastern perimeters of the property. According to the Town of Wayland Assessor's card, the property is owned by 304 BPR LLC.

### 3.2 Surrounding Receptors

The Site and surrounding area are located within areas of commercial industrial usage.

Potential receptors include:

- Residents and visitors
- Construction/utility workers, and
- Trespassers on the Site.

According to the Town of Wayland GIS Map (dated 2005), the Site is located within an Aquifer Protection District, thereby designating groundwater as "GW-1" under the MCP There are no known private wells located within 500 feet of the Site. There are no known day care centers or institutions within 500 feet of the Site. There are no Areas of Critical Environmental Concern, Species of Special Concern, and Threatened or Endangered Species Habitat within 500 feet of the Site. An un-named stream is located within 500 feet west of the Site.

### 4.0 DESCRIPTION OF ACTIVITIES UNDERTAKEN TO DATE

The following activities were conducted at the Site under the IRA Plan.

### 4.1 Baseline Indoor Air and Ambient Air Investigations

Ambient conducted two baseline indoor air sampling events and one ambient air sampling event at the Site.

October 2005 Sampling

Ambient conducted indoor air sampling at the Site on October 28, 2005. The samples were collected on the occupied first floor office (AMB-301) and the unoccupied basement (AMB-302) of the Site building. The samples were collected using evacuated summa canisters over a six-hour duration. The samples were submitted to ENSR Air Laboratory of Harvard, Massachusetts for laboratory analysis of EPA Method T0-15 (select parameters). Due to the presence of basement flooding within one day of the sampling event (attributed to a broken sump pump), Ambient suspected that the data may not be representative, since impacted groundwater entering the basement may have impacted indoor air levels in the basement (and would thereby not accurately reflect indoor air levels attributable to vapor intrusion under normal conditions).

Ambient conducted a second sampling event on January 10, 2006. One ambient air sample was collected northeast of the property building and two indoor samples were collected on the first floor and basement of the building. The samples were collected using evacuated summa canisters over an 8-hour duration and submitted for laboratory analysis of EPA Method T0-15 (select).

Ambient subcontracted Dr. Kathryn Ewald, risk assessor, to conduct an IH Evaluation of the air sampling data conducted over the two sampling events. Based on Dr. Ewald's review, a Condition of IH was deemed to exist.

Ambient, on behalf of its client, notified DEP on February 2, 2006 and within two hours of obtaining knowledge of the Condition of IH. Ambient obtained authorization from DEP to implement ventilation measures to mitigate the Condition of IH. Based on the Condition of IH, Ambient proposed cross-ventilation of the basement as a temporary measure to mitigate PCE concentrations in indoor air. DEP authorized this measure and recommended that additional measures be implemented.

Indoor and ambient air sampling results are presented as Table 1. Laboratory Analytical Reports are included as Appendix C.

**4.2    Evaluation of HVAC System**

Ambient conducted a Site visit on February 9, 2006 with a heating, ventilation and air conditioning (HVAC) specialist to inspect the existing heating system at the Site building. According to the property owner, cross-ventilation measures in the basement would potentially cause pipes to freeze over time. Additionally, Ambient evaluated systems that would not cause a buildup of negative pressure in the basement (which may inadvertently cause soil gas to rise into the building). Based on these criteria, the HVAC specialist recommended that a heat/energy recovery ventilator be installed. The proposed schedule for installation of the system would be within approximately two weeks of the inspection.

### 4.3 DEP Site Visit and Sump Water Sampling

Mr. Paul Giddings of the Massachusetts Department of Environmental Protection (DEP) visited the Site with Ambient on February 16, 2006. During his visit, Mr. Giddings collected one sump water sample from the basement on February 16, 2005. The sample was collected by DEP for analysis of PCE. Based on DEP's analysis, a concentration of PCE measured 2,300 micrograms per liter (ug/L).

Mr. Giddings did not concur with Ambient's recommendation for installation of the heat/energy recovery ventilator. DEP recommended that a granulated activated carbon adsorber unit, equipped with a blower, be installed in the basement of the Site building as soon as possible to mitigate PCE concentrations in indoor air.

### 4.4 Implementation of Air Treatment System

Ambient installed a carbon air filter at the Site on February 23, 2006. The system was supplied by Carbtrol Corporation of Bridgeport, Connecticut. The system is comprised of a 55-gallon drum that contains approximately 200 pounds of granulated activated carbon and is equipped with a blower. The blower serves as a vacuum to intake contaminated air and route it through the carbon with a flow rate of 90 cubic feet per minute ($ft^3$/min.). The system operates 24 hours per day.

Due to noise concerns expressed by the property owner, along with limited basement access, the system was placed within an exterior sheltered area along the northwestern portion of the Site building. Flexible hoses were installed at both the intake (influent) and exhaust (effluent) and routed to the basement via a window at the northwestern portion of the building. The drum was insulated to reduce noise and to maintain the indoor air temperature of influent to effluent.

### 4.5 Indoor Air Sampling-Post-System Implementation

Ambient conducted indoor air sampling on March 6, 2006. The samples were collected approximately two weeks after the indoor air treatment system was implemented. The system was in operation at the time of sampling.

The samples were collected on the 1st floor (AMB-301) and basement (AMB-302). Samples were collected over an 8-hour duration using evacuate summa canisters. The samples were submitted to Alpha Analytical Laboratories of Westborough, Massachusetts for laboratory analysis of select chlorinated VOC parameters per EPA Method TO-15.

A concentration of PCE was detected in the 1st floor sample at 11.8 $ug/m^3$ or slightly above the indoor air background concentration of 11 $ug/m^3$. The concentration of PCE detected in the basement (67.9 $ug/m^3$) is a reduction of approximately 50% since implementation of the system. The indoor air sampling results are presented as Table 1. The Laboratory Analytical Report is included as Appendix C.

### 4.6   Indoor Air Screening and System Inspection

Ambient conducted screening of the air treatment system on March 15, 2006. Screening for VOCs was conducted using a sensitive photoionization detector (PID). Non-detect concentrations of VOC were detected at the effluent stream using a ppbRAE PID. Background concentrations ranged from non-detect to 242 parts per billion (ppb). The highest detections were encountered within the area of the sump, which contained standing water. The system was operating properly.

### 4.6   Communications to Residential Property Owner

Ambient provided the results of indoor air sampling to the property owner and notified him of the Condition of IH within two hours of obtaining knowledge of the condition. It is Ambient's understanding that the property owner has notified his tenants of the Condition of IH and the measures implemented to mitigate the condition. Ambient also provides the results of indoor air sampling to the property owner within the same day of receipt by the laboratory.

### 5.0   IMMINENT HAZARD EVALUATION

Ambient contracted Kathryn A. Ewald, Ph.D. of KERA Environmental, LLC to prepare an IH Evaluation, based on the elevated concentrations of PCE detected in indoor air.  The IH Evaluation is based on actual and likely exposures to human and environmental receptors based on current Site conditions, considering the current use(s) of the Disposal Site and the surrounding environment, and considering an appropriate short period of time (generally five years) (310 CMR 40.0953).  A copy of the IH Evaluation is included as Appendix D.

### 5.1   Evaluation of Baseline Data

An MCP Method 3-type quantitative risk characterization for human health was completed in this IH Evaluation. The IH Evaluation was performed on the two sets of data collected on October 2005 and January 2006.

The constituents of concern were PCE, trichloroethylene (TCE) and cis-1,2 dichloroethene (DCE). Concentrations of TCE and cis 1,2-DCE did not exceed background concentrations in samples collected on the first floor. Two Exposure Point Concentrations (EPCs) were developed to addressed the first floor and basement data. Non-cancer and cancer IH risks were calculated for inhalation by employees and visitors.

The resultant Cumulative Receptor Cancer Risks were compared to the MCP's Cumulative Cancer Risk Limit for Imminent Hazard Evaluations, which is an Excess Lifetime Cancer Risk (ELCR) equal to one-in-one hundred thousand ($1 \times 10^{-5}$).  The resultant Cumulative Receptor Non-Cancer Risks were compared to the MCP's Cumulative Non-Cancer Risk Limit, which is a Hazard Index (HI) equal to ten (10) (310 CMR 40.0955(2)(b) and (c)). The ELCR for an employee was $4 \times 10^{-5}$.  This indicates that there is an IH for employees and a cancer-driven IH risk to receptors.   The HI was calculated at 0.01, indicating that the levels of compounds detected in indoor air pose no non-cancer IH risk to receptors.

## 5.2   Evaluation of Post-System Implementation Data

An IH Evaluation was conducted on indoor air collected in March 2006 and subsequent to implementation of the air treatment system.  Using the same exposure assumptions, there is no Condition of Imminent Hazard since the system was implemented.


## 6.0   EVALUATION OF SUBSTANTIAL RELEASE MIGRATION AND CRITICAL EXPOSURE PATHWAYS


The following is an evaluation of Conditions of Substantial Release Migration and Critical Exposure Pathway at the Site.

## 6.1   Substantial Release Migration

Pursuant to 310 CMR 40.0006, a Condition of Substantial Release Migration designates a condition at a disposal Site that includes any of the following:

- <u>Release that has resulted in the discharge of separate-phase OHM to surface waters, subsurface structures, or underground utilities or conduits</u>.   Based on available information regarding the release, no separate-phase OHM has been detected at or in surface waters, subsurface structures, or underground utilities or conduits.

- <u>Releases to the ground surface or to the vadose zone that, if not promptly removed or contained, are likely to significantly impact the underlying groundwater, or significantly exacerbate an existing condition of groundwater pollution.</u>  Based on recent sampling results, concentrations of chlorinated solvent compounds have been detected at concentrations exceeding MCP Method 1, 2 and 3 Groundwater Standards.  There does not appear to be a continuing source of this release and the release appears to have stabilized.

- Releases to the groundwater that have migrated or are expected to migrate more than 200 feet per year.  Based on Ambient's calculations for groundwater flow velocity (Phase II/Phase II Report, RTN 3- 04803, groundwater is not expected to migrate more than 200 feet per year.

- Releases to the groundwater that have been or within one year are likely to be detected in a surface water body, wetland or public water supply.

A Condition of Substantial Release will be evaluated under RTN 3-22753.

**6.2    Critical Exposure Pathway**

Pursuant to 310 CMR 40.0006, a Critical Exposure Pathway is defined by those routes by which OHM released at a disposal Site are transported, or are likely to be transported, to human receptors via:

- Vapor-phase emissions of measurable concentrations of OHM into the living or working space of a pre-school, daycare, school, or occupied residential dwelling.

- Ingestion, dermal absorption or inhalation of measurable concentrations of OHM from drinking water supply wells located at and servicing a pre-school, daycare, school, or occupied residential dwelling.

Since there are no pre-schools, day care facilities, schools or residential dwellings at the Site, a Critical Exposure Pathway does not exist.

**7.0    DESCRIPTION OF PROPOSED IRA ACTIVITIES**

The following is a discussion of proposed IRA activities.

**6.1    System Inspection and Screening**

Ambient proposes one inspection of the system within the first two weeks of system start-up and quarterly inspections, thereafter.  The system will be inspected visually and the effluent stream will be screened for VOCs with a photoionization detector (PID).  The screening will be conducted to assess carbon breakthrough.  Additionally, the PID will be used to screen indoor air.

**6.2    Indoor Air Sampling**

Ambient proposes one indoor air sampling event to assess the ongoing effectiveness of the air treatment system.

**8.0    REMEDIATION WASTE**

According to Carbtrol Corporation, based on the concentrations of PCE detected in the baseline indoor air samples, approximately 0.01 pounds of PCE would be adsorbed onto the carbon.  Based on this adsorption rate, Ambient does not anticipate any carbon

---

Ambient Engineering, Inc.                           8                              Project 12-12
Concord, Massachusetts                                                          March 2006

changes within the next twelve months of system operation.  In the future, spent carbon will be managed under a Bill of Lading or Hazardous Waste Manifest.

## 9.0    PERMITS

There are no local, state or federal permits required to implement the activities addressed in this IRA Plan and Imminent Hazard Evaluation.

## 10.0    PUBLIC INVOLVEMENT

Notification regarding availability of this IRA Plan and IH Evaluation have been provided to the Town of Wayland Board of Selectman Chairperson and Board of Health per 310 CMR 40.0428.  Copies of public notification letters are attached as Appendix E.  As required per 310 CMR 40.1403, additional notification was made via telephone within 48 hours of implementing of the IRA taken to prevent, control, abate or eliminate the Condition of IH and addressed the purpose, nature and expected duration of the IRA.  Notification regarding the availability of IRA Status and Completion Statements will also be made.

## 11.0    LSP OPINION AND POSSIBLE OUTCOME

The carbon air filter system appears to have effectively reduced concentrations of chlorinated VOC compounds in indoor air at the Site building.  The level detected in the office space of the structure is slightly above background, indicating that the Condition of IH appears to have been mitigated.  Ambient concurs that additional system screening is required to assess potential carbon breakthrough and at least one additional indoor air sampling event is proposed to evaluate system effectiveness.

There are appears to be a Condition of Substantial Release Migration, which will be addressed under separate investigations being conducted under RTN 3-22753.  A Critical Exposure Pathway does not exist at the Site.

**12.0   LIMITATIONS**

The MADEP transmittal forms prepared for this report, and the LSP opinions stated therein, are to be considered part of this IRA Plan and IH Evaluation.  No warranty, whether expressed or implied, is given with respect to this plan or any opinions expressed herein.  It is expressly understood that this plan and the opinions expressed herein are based upon site conditions as they existed only at the time of investigation.  In preparing this report, Ambient Engineering has relied upon and presumed accurate certain information about the site and adjacent properties provided by governmental agencies, the client and others identified in the report.  Except as otherwise stated in the plan, Ambient Engineering has not attempted to verify the accuracy or completeness of any such information.