UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-10351-RBC

| | | |
|---|---|---|
| KLEENIT, INC., | | ) |
| | **Plaintiff** | ) |
| **vs.** | | ) |
| | | ) |
| **UTICA NATIONAL INSURANCE GROUP, and** | | ) |
| **TRAVELERS PROPERTY AND CASUALTY,** | | ) |
| | **Defendants** | ) |

## EXPERT WITNESS REPORT OF ROBERT M. CATALDO

I, Robert M. Cataldo, herby depose and state the following:

1.      I am a Licensed Site Professional (LSP) who has prepared the Expert Witness Report, dated December 6, 2007.  My resume has been included as Attachment A of this document.

2.      The data and other information considered by me in forming my opinion are set forth in Attachment B of this document.

3.      My qualifications as an expert witness, including a list of my publications are included in Attachment A of this document.

4.      My compensation paid for the development of my opinion is $150/hour and the compensation paid for my testimony is $175/hour.

5.      I have not testified or been deposed as an Expert within the preceding four years.

Signed this 6th day of December, 2007 under the pains and penalties of perjury,

Robert M. Cataldo, PG, LSP

## EXPERT WITNESS REPORT

**CURRICULUM VITAE**

Copy of CV is included as Attachment A.

**PURPOSE OF REPORT**

I have been retained by the Utica National Insurance Company to review documents related to environmental conditions at the Wayland Cleaners and Launderers, Inc. (Wayland Cleaners) facility located at 298 Boston Post Road in Wayland, Massachusetts and to render an opinion on the most feasible manner to achieve compliance with requirements for site environmental cleanup as specified in the Massachusetts Contingency Plan (MCP) (310 CMR 40.000).

**DOCUMENTS RELIED ON TO PREPARE THIS REPORT**

During preparation of the opinions in this report, I have relied on information provided in the documents listed in Attachment B.

**SITE AND HISTORICAL CONDITIONS**

According to the Environmental Site Assessment report prepared by MyKro Waters, Inc. (MKWI) in September 2003 and supported by subsequent reports, contaminants associated with a dry cleaning operation have been detected in the groundwater and soil outside of the building located at 298 Boston Post Road (the Site) in Wayland, Massachusetts. These contaminants have also been detected on properties located at 304 and 310 Boston Post Road to the west of the site, and on the far side of Boston Post Road to the south and west. The source of these contaminants, which include tetrachloroethene (also known as perchloroethene or PCE) and its breakdown products, is reported to be Wayland Cleaners, Inc. (1, page 25 & 2, page 12), which has operated at the site since 1978 to the present.

<u>General Site Setting</u>

The address of the Site is 298 Boston Post Road, Wayland, Massachusetts. The building at 298 Boston Post Road was constructed in 1970 and was owned by Cumberland Farms prior to being purchased by R & E Realty Trust in 1978. Beginning in this year, the building has been operated as a commercial cleaning business. Kleenit leased space in the building and operated Wayland Cleaners from 1980 until 1998 (1, page 19)., when the business was sold to Hyung Kim who is the current owner The primary chemical used in the dry cleaning process was PCE.

The 298 Boston Post Road property is a flat, mostly paved area. The 298 Boston Post Road building is a one-story brick structure constructed on a cement slab (1, page 20) which is shared by Wayland Cleaners and Kabloom Florist. Conflicting reports exist

addressing the number and location of floor drains in the building; however, MKWI indicated that there is one active floor drain in the northwestern part of the building (1, page 20). This floor drain is reportedly located near the door to the boiler room in the northwest corner and discharges to the storm-drain system. The Site was formerly connected to an on-site septic system with a leach field located south of the building in the parking lot. This system is no longer in use as Wayland Cleaners connected with to the local sanitary sewer system in 2001 (1, page 18). Potable water is supplied by the municipal water system. The Baldwin Pond well field, which contributes to the Wayland public water supply, is located approximately one mile north-northwest of the property (1, page 7). The property is located within a Wellhead Protection Zone II for the Baldwin Pond well field (1, page 6).

There are two properties located to the west of the site which have been identified as locations where impacts associated with releases on the Wayland Cleaners site have been detected. The 304 Boston Post Road property is immediately west of 298 Boston Post Road. The building on the property, which is located approximately 90 feet from the Wayland Cleaners building, consists of a two story office building. The building has a basement. A sump located in the basement of the property is reported in the Phase II report to discharge to the ground surface on the property. The 310 Boston Post Road property is located approximately 140 feet west of the Wayland Cleaners building. The building consists of 2 stories used for commercial uses on the first floor with a second floor apartment. The building has a basement. Two sumps located in the basement are reported to discharge to the unnamed stream to the west of the property.

## Site History

According to information reviewed by MKWI, the Site was unoccupied at least prior to 1955, but previous buildings did occupy the site as early as 1961 (1, page 19). The current site building was constructed in 1970 and may have been used as a convenience store. The Site has been used as a dry cleaning facility since 1978 when it was purchased by R&E Realty Trust. Kleenit, Inc. leased the facility on June 12, 1980 and operated until it sold the business to Wayland Cleaners and Launderers, Inc. in 1998. Based on this history, dry cleaning operations have been performed at the site for approximately 29 years.

## Local Geology and Hydrogeology

The uppermost layer of soil at the Site consists of fine to medium sand to depths of at least 10 feet, becoming progressively siltier with depth. At a depth of about 15 feet in much of the Site soil consists of silt, clayey silt, and clay. Ambient Engineering, Inc. (Ambient) reported that bedrock is deeper than 20 feet beneath the site. (2, page 5).

Groundwater at the site is reported to be found at depths between 4 and 6 feet and flows generally to the west from the Wayland Cleaners property toward the unnamed stream located approximately 200 feet west of the Site (1, page 7). The horizontal hydraulic gradient is reported to be 0.034 ft/ft (2, page 5) and the hydraulic conductivity

is reported to be 0.039 ft/day (1, page 9).  Hydraulic conductivity, also known as permeability, is a measure of the ability of soil to transmit water. The vertical hydraulic gradient is reportedly in a downward direction (1, page 7).

## ENVIRONMENTAL ISSUES PERTAINING TO THE SITE

### Regulatory Classifications

The Massachusetts Contingency Plan (MCP) is the state environmental regulation which governs the cleanup of sites where releases of hazardous materials have taken place.  The MCP specifies the steps to be followed to establish cleanup criteria for environmental media including soil, groundwater, surface water, and indoor air.  The MCP specifies three possible groundwater classifications for a site, GW-1, GW-2, and GW-3.  A GW-1 classification applies at locations where groundwater is used or may potentially be used as drinking water.  A GW-2 classification applies in locations where volatile contaminants potentially could move from groundwater into the air in buildings which are inhabited.  A GW-3 classification applies in locations where contaminants in groundwater may discharge to surface water including rivers, lakes, and wetlands.  It is possible that groundwater at a site can have more than one classification.

The MCP specifies three possible soil classifications, S-1, S-2, and S-3.  An S-1 classification applies to accessible soil at depths of 0 to 3 feet.  An S-2 classification applies to potentially accessible unpaved soil located at a depth between 3 and 15 feet or paved soil from 0 to 15 feet.  An S-3 classification applies to isolated sub-surface soils located at a depth greater than 15 feet or under a permanent structure.

Based on the available information with regards to the site, including the 2006 Phase II Comprehensive Site Assessment report prepared by Ambient (2), the groundwater classifications that apply to the site are GW-1, GW-2 and GW-3, and the soil classifications that apply to impacted soil are S-2/GW-1/2/3.  The Site is classified as GW-1 because it is located within the Zone II Aquifer Protection Area for the Baldwin Pond well field.  Because vapors in the groundwater have the potential to represent an indoor hazard, groundwater is classified as GW-2.  By default, all waters within Massachusetts are classified as GW-3.  The classifications for soil are based on the presence of impacted soils beneath the paved parking lot areas (S-2) and beneath the building slab (S-3).

### Regulatory History of the Site

In a letter to Wayland Cleaners, dated June 12, 2002, the MADEP requested information pursuant to Site information related to septic system, storm drain and chemical usage.  This request for information related to the detection of volatile organic compounds (VOCs) detected in groundwater samples collected at the Town of Wayland's Baldwin Pond supply well #2.

In a letter, dated October 21, 2002 and received by the MADEP on November 18, 2002, the MADEP issued a Notice of Noncompliance (NON) to Wayland Cleaners stating that the agency not yet received a response to the June 12, 2002 request for information. On November 14, 2002, the above-requested information was furnished to the MADEP by Wayland Cleaners.

In a letter, dated December 18, 2002, the MADEP requested access to the Wayland Cleaners property for the purpose of installing and sampling wellpoints.

In a Memorandum for the Record, dated January 27, 2003, the MADEP outlined the results of their January 2003 investigation at the Site. In summary, VOCs (including PCE) were detected along the northwest side of the building. Based on these findings, the MADEP recommended that Notice of Responsibility (NOR) be issued to the Site and that any preferential migration pathways be addressed.

In a letter, dated April 9, 2003, the MADEP issued a NOR notice to Wayland Cleaners and issued the Release Tracking Number (RTN) 3-22753 for the Site. The letter identified Wayland Cleaners as a disposal site and outlined necessary response actions that needed to be taken.

In a response letter to Rubin and Rudman LLP, dated July 2, 2003, the MADEP clarified some issues related to the site, including the fact that RTN related only to chlorinated VOCs (CVOCs) and not to gasoline-related VOCs detected at the Site. MADEP did state; however, that it still considered that Wayland Cleaners (or Kleenit) as a PRP for the CVOCs at the Site.

In a Memorandum for the Record, dated January 16, 2004, the MADEP presented is review of the September 2003 MKWI site assessment report. In summary, the MADEP concluded that additional assessment work is needed and established a deadline of April 9, 2004 to complete a Tier Classification Submittal and recommended that the MADEP's compliance group consider this facility for a multi-media inspection.

In a Memorandum, dated May 26, 2004, the MADEP presented its review of the BWSC Permit submitted for the Site. The Memorandum summarizes and corrects information included in the permit submittal and goes on to state that the Site does not appear to be a source of the VOCs that have been detected at the Baldwin Pond well field. The Memorandum concludes that the Tier IC classification is sufficient for the Site.

In October 2005, Ambient conducted indoor air sampling at the downgradient 304 Boston Post Road site and detected VOC concentrations indicating a condition of IH. Based on this finding, the MADEP issued RTN 3-25637 to address the IH conditions. In April 2006, Ambient linked RTN 3-25637 to RTN 3-22753 such that all subsequent work related to the IH was conducted under RTN 3-22753.

In a letter, dated February 5, 2007, the United States Environmental Agency (USEPA) authorized the NPDES permit to discharge water from the remediation system presumably installed to treat the water in the 304 Boston Post Road sump.

**Regulatory Status of the Site**

Currently, the site is listed as having a Tier IC Classification with RTN 3-22753 assigned to the site.  As mentioned above, RTN 3-25647 was linked to the original RTN for the Site.

**Previous Investigations and Studies**

The first investigation activities performed at the site included installation of two well points by MADEP in the rear of the Wayland Cleaners building in January 2003. During this field work, groundwater samples were collected from depths of 20, 30, and 40 feet below the ground surface (bgs). PCE was identified above regulatory levels in all samples collected.

Between 2003 and 2006, a series of additional investigations were performed to determine the concentration and distribution of PCE and other contaminants in soil, groundwater, soil gas, and surface water.  Groundwater samples have been collected from more than 30 wells and wellpoints on the Site and two downgradient properties located to the west at 304 and 310 Boston Post Road.  In addition, water samples were collected from one sump in the site building at 304 Boston Post Road and two sumps in the building at 310 Boston Post Road.  Soil samples have been collected from more than 30 locations on the Site and 304 Boston Post Road properties.  Soil gas samples were also collected from the buildings located on-site and at 304 and 310 Boston Post Road.  Surface water samples were collected from the unnamed stream located approximately 200 feet to the west of the Site.

The results of these investigations indicate that the highest concentration of PCE in soil (43 milligrams-per-kilogram or mg/kg) was detected northwest of the Wayland Cleaners building at a depth of approximately 4 feet.  Concentrations of PCE in exceedence of regulatory levels were also detected on the south side of the Site in the area around the former septic system at a depth of approximately 10 feet (5.7 mg/Kg) and on the eastern side of the 304 Boston Post Road property at a depth of approximately 12 feet (5.4 mg/Kg).  No concentrations of PCE above analytical detection limits were detected on the 310 Boston Post Road property.

The highest concentration of PCE in groundwater (28,000 micrograms-per-liter or ug/l) was observed in a monitoring well installed immediately downgradient from Wayland Cleaners at a depth of 8 feet.  Groundwater concentrations were measured at depths between 8 and 60 feet. Concentrations of PCE at least 10 times regulatory levels were detected at depths of as much as 60 feet.  The highest concentrations of PCE were found at the shallower depths and were shown to decrease with depth.  The maximum concentration of PCE detected on the 304 Boston Post Road property was 14,000 ug/l.

Elevated concentrations of PCE were also detected in the sumps in the basements of 304 and 310 Boston Post Road.

In 2005, samples were collected from two soil gas monitoring points installed beneath the floor of the Wayland Cleaners building. The highest concentration of PCE measured in soil gas was 150,000 micrograms-per-cubic meter (ug/M$^3$). Data from the sampling program were used to complete a preliminary evaluation of risks to human health associated with breathing indoor air. Using a model, which calculates the transmission of contaminant vapors from soil gas to indoor air, concentrations of PCE in indoor air were calculated to be in excess of protective target concentrations. According the report, these concentrations do not pose an IH because elevated concentrations of PCE in indoor air are to be expected in dry cleaning establishments.

In October of 2005 and January of 2006, indoor air samples were collected at the 304 Boston Post Road building. The highest concentration of PCE measured from a sample collected in the basement in January was 130 ug/M$^3$. Using these data, Ambient determined that an IH existed in the building. In response to this evaluation, an air treatment system was installed. Indoor air sampling performed in March of 2006, after the treatment system had been installed, indicated that the concentration of PCE had been reduced to 68 ug/M$^3$. An additional evaluation was performed based on this post treatment data that indicated that an IH condition no longer existed.

In February of 2006, indoor air samples were collected at the 310 Boston Post Road building. The highest concentration of PCE measured, from a sample collected in the basement, was 56 ug/M$^3$. A sample collected on the second floor, which is used for residential purposes, had a PCE concentration of 6 ug/M$^3$. An IH evaluation was performed on these data and determined that concentrations of PCE in the first and second floor of the building do not exceed MADEP default indoor air background values. Although concentrations of PCE in the basement did exceed background values, the Phase II Comprehensive Site Assessment report concluded that PCE in indoor air in the basement do not constitute an IH because people do not often occupy the basement.

In October of 2005 and January of 2006, surface water samples were collected from the unnamed stream located to the west of the 298 Boston Post Road property. The maximum concentration of PCE measured in surface water was 11 ug/L. Based on this measurement, it was determined that a condition of Substantial Release Migration (SRM), as specified in the MCP, existed. A Stage I screening for potential ecological receptors was performed to evaluate the data. That evaluation determined that there is No Significant Risk to the environment as specified in the MCP.

According to information contained in the Ambient Phase II report, the vertical and horizontal limits of the PCE plume(s) have been delineated (2, page 13).

## Contaminants of Concern

The primary contaminants of concern (COCs) are PCE and its daughter products, including trichloroethene (TCE); 1,1-dichloroethene (DCE), and vinyl chloride. Daughter products represent constituents which are formed when PCE is decomposed by biological processes. PCE is known to be associated with dry cleaning operations and is identified as being used during operations at the Wayland Cleaners facility.

A Memorandum to the Record prepared by Massachusetts Department of Environmental Protection (MADEP) personnel, dated January 27, 2003 and the Response to a Notice of Responsibility, dated May 28, 2003 identified other secondary COCs, including the gasoline-related constituents methyl tertiary butyl ether (MTBE), benzene and toluene, at the site, although the analytical data reviewed for this document did not include detection of these constituents. According to the response, gasoline constituents, as well as PCE and TCE, were used at properties adjacent to 298 Boston Post Road. Because it has not been demonstrated that gasoline was ever used at the Site, the only COCs that will be addressed in this document are PCE and other dry cleaning-related constituents. This is supported by the findings of the MADEP, who stated that "The NOR [Notice of Responsibility] letter sent to Wayland Cleaners, R&E Realty Trust, and Kleenit cited chlorinated VOCs, only" (3, page 2).

## Timing of the Release

There are no reports of specific spills, leaks, or other releases which may have lead to contaminated soil, groundwater, and/or soil gas at the Wayland Cleaners site. However, based on the location of the PCE plumes, it has been determined that two separate source locations were present; one in the rear of the Site building and a second from the septic system located south of the building (2, page 23). Based on the absence of any specific information and additional work, the timing of the release can not be determined other than to state that it must have been prior to the 2002 when it was identified by the MADEP. It should be noted that flow to the septic system ceased when the site was connected to the municipal sewer in September 2001. Therefore, impacts related to the southern plume would have been before this date.

## Nearby Drinking Water Receptors

The Wayland Baldwin Pond supply wells are located approximately 1 mile north-northwest of the Site, and the site is considered to be within the delineated Zone II recharge area of the supply wells. According to the MADEP response letter, dated July 2, 2003, the MADEP agrees that "…the Wayland Cleaners site is not a likely source of the supply well contamination" (3, page 1). According to the Ambient surface water data collected in January 2006, Site groundwater is impacting the abutting un-named stream; however, at a concentration "…slightly about the Method 1 GW-1 Standard…" (2, page 13). Assuming that concentrations remain at or below the GW-1 standards at this portion of the un-named brook, then it is unlikely that the Baldwin Pond well field will be impacted by contaminants released at the Site.

Expert Witness Report
Wayland Cleaners Site

CONFIDENTIAL
Page 7

December 6, 2007
298 Boston Post Road, Wayland, Massachusetts

**Nearby Indoor Air Receptors**

Although some initial work has been done regarding the evaluation of sub-slab impacts, at this time ENSR has not been provided with any information pertaining to a comprehensive evaluation or risk assessment of indoor air at the site. Therefore, additional evaluation of the potential for on-site indoor air needs to be performed.

As part of the ongoing assessment of the contaminant plume, indoor air was evaluated at the two properties downgradient to the Wayland Cleaners site (304 and 310 Boston Post Road). The buildings on both these properties have basements. The results of preliminary screening determined the presence of indoor air contamination at both sites and that an IH was present at 304 Boston Post Road. Remedial measures were installed in the basement of both buildings in the form of carbon treatment and recirculation of the air and the covering of the open water sump in the basement of 304 Boston Post Road. Based on recent air samples collected at both locations, an IH no longer exists. However, the risks related to the presence of indoor air vapors still needs to be completed.

**Other Potential Responsible Parties within the Area**

In addition to the Site, MKWI identified at least 16 other sites within a 1-mile radius that have reportedly had releases. Although none of these sites are considered to be contributing sources of chlorinated VOCs to the Wayland Cleaners property, they might be contributing sources to the chlorinated compounds detected in the Baldwin Pond well field.

A facility formerly occupied by Raytheon Corp., where it is reported that organic compounds including chlorinated hydrocarbons were previously used, is located in a raised area to the northwest between the Wayland Cleaners building and the Baldwin Pond well field (1, page 12).

**DISCUSSION**

It is not clear when PCE was released from the dry cleaning facility at the Site other than to state that it was sometime prior to 2002 when the MADEP first identified it. However, the site has been used as a dry cleaning facility for approximately 29 years, and flow to the septic system ceased when the site was connected to municipal sewer in September 2001.

Impacts to the soil and groundwater at the Site and downgradient to the Site continue to exist. Although the Ambient Phase II report stated that the vertical and horizontal limits of the plume had been delineated, the statement does not seem to take into account the mobility and future location of the contaminant plume, nor the possibility of a continuing source of PCE in the form of non aqueous phase liquids (NAPL) present within the pore spaces of the site.

An IH evaluation has been completed and remediation conducted at the 304 and 310 Boston Post Road properties.  Although no current IH is reported to exist, a comprehensive risk assessment of the indoor air has not been performed.  In addition, no formal evaluation of indoor air has been performed for the Wayland Cleaners property.

Under the MCP, cleanup criteria for contaminants in groundwater, soil, or indoor air are established based on an evaluation of risks to human health and the environment.  This evaluation, known as a risk characterization, can be completed using one or more of three methods; Method 1, Method 2, or Method 3.  Method 1 characterizations are completed for soil and groundwater by comparing concentrations of contaminants in soil or groundwater to cleanup criteria tabulated in the MCP.  Method 2 characterizations are completed by recalculating the Method 1 criteria following procedures specified in the MCP.  Method 3 characterizations are completed by calculating site-specific risks using site data and toxicological evaluation procedures specified by MADEP, the United States Environmental Protection Agency (EPA), or other organizations.

If all contaminated media at a site meet cleanup criteria established by a risk characterization, a condition of No Significant Risk is said to exist.  If media do not meet cleanup criteria and a condition of No Significant Risk does not exist, it is necessary to perform a remedial action if it is feasible.  The goal of that remedial action is to attain a condition of No Significant Risk.  If this goal is met, a Permanent Solution has been achieved.

Achievement of a Permanent Solution is documented by submitting a Response Action Outcome (RAO) statement to MADEP.  There are three types of RAO; Class A, Class B, and Class C.  A Class A RAO is accomplished if a condition of No Significant Risk is attained following implementation of a remedial action.  A Class B RAO is achieved if a condition of No Significant Risk is reached without implementation of a remedial action.  A Class C RAO is attained if a condition of No Significant Risk has not been achieved but a Temporary Solution has been implemented.  In order for a Temporary Solution to be achieved, it is necessary to demonstrate that a condition of No Substantial Hazard exists at the site.  A No Substantial Hazard evaluation compares concentrations of COC at a site with cleanup criteria which are less stringent than those required for a condition of No Significant Risk.  Risks which pose No Substantial Hazard represent acceptable risks under current conditions.  A No Substantial Hazard evaluation is performed by completing a risk characterization using similar methods to those used in a No Significant Risk evaluation.

Other than the IH evaluations described previously, no human health risk characterization has been performed for any of the properties.  Although this is true, concentrations of PCE in groundwater exceed Method 1 GW-1 and GW-2 cleanup criteria published in the MCP. Concentrations of PCE in soil exceed S-1 standards for all groundwater classifications and S-2 and S-3 standards for GW-1 and GW-2

groundwater.   Based on these facts, a condition of No Significant Risk does not exist at the site and a remedial action may be required

The MCP specifies that remedial actions implemented at a site are required to achieve a Permanent Solution if it is feasible.  If it is not feasible to achieve a condition of No Significant Risk, a Temporary Solution should be achieved.   A feasibility evaluation includes a determination whether or not it is technically possible to achieve all relevant cleanup criteria.  Based on experience at sites similar to the Wayland site, achievement of GW-1 cleanup criteria is unlikely.   This conclusion is based on evaluation of three factors, including the following:

- The possible presence of residual NAPL in the pore spaces of the soil at the Site.

- The variability in the composition of on-site and off-site soil.

- The elevated concentrations of PCE measured in groundwater at the site compared to the stringent GW-1 standards

NAPL is the pure form of a chemical before it is absorbed by soil or dissolved in groundwater.  NAPL can provide a continuing source of contamination to groundwater, because it can persist in the subsurface for decades, slowly dissolving into groundwater.  The NAPL form of PCE is a dense nonaqueous phase liquid (DNAPL), which is heavier than water and tends to sink, spreading throughout the soil column.  A general rule of thumb is that NAPL will be found at a site if concentrations of a contaminant in groundwater are more than 1 to 10 percent of the solubility of the contaminant in water.  The maximum concentration of PCE measured in groundwater at the Site is 28,000 ug/L.  This represents 19 percent of the solubility of PCE in water, which is 150,000 ug/L.  This provides evidence of the possible presence of PCE DNAPL in the subsurface.

Ex situ remedial actions, those performed by physically removing the contamination such as NAPL pumping and excavation into the water table, are not generally effective because these liquids form discrete pools and ganglia that typically do not respond to pumping. Likewise, excavation will not be a feasible remedial action at the Wayland site because of the wide distribution of dissolved PCE, the depths at which contamination has been found, the shallow depth to groundwater, and the presence of permanent structures.

In-situ remedial actions are those performed by treating subsurface contamination in place.   Typical in situ remedial actions include air sparging/soil vapor extraction (AS/SVE), enhanced bioremediation, and chemical oxidation.  Each of these options involves the introduction of fluids, air or remedial additives, to the source area to destroy or otherwise remove contamination from the subsurface.

As discussed previously, soil at the site varies significantly with depth.  Shallow soil consists of sand which has a relatively high hydraulic conductivity.  Deeper soils consist

of silts and clays that have relatively lower hydraulic conductivities. It is more feasible to distribute additives required to implement in-situ treatment technologies to soil with high permeability values. Soil with lower permeabilities both limits the ability to force additives into the soil and inhibits thorough distribution of additives.

Even when NAPL is not present at a site and where all soil is of appropriate hydraulic conductivity, in-situ remedial technologies typically reduce concentrations of contaminants in soil and groundwater by a factor of 2 or 3 and in the best cases by a factor of 10. In order to achieve GW-1 groundwater cleanup criteria at the site, it will be necessary to reduce concentrations by a factor of more than 1,000.

Typical in-situ technologies are discussed below:

AS/SVE for remediation of PCE involves the injection of air below the water table to strip contamination from groundwater and subsequent the extraction of vapors from above the water table. AS/SVE is generally not effective in silty soils like those present more than 15 feet below grade at the site, due to the difficulty of distributing air uniformly through the source area. To remediate PCE by AS/SVE, direct contact between sparged air and virtually all source material, including DNAPL is necessary. This is not possible at the site.

Likewise, in-situ chemical oxidation requires direct contact between injected oxidant and aqueous-phase contamination. Chemical oxidation is infeasible at the site because obtaining thorough distribution through the low-permeability soils is not possible and because NAPL is resistant to chemical oxidation, because it is not in the aqueous phase. Chemical oxidants are highly reactive and thus do not persist in the subsurface nearly as long as NAPL and thus cannot be used to remediate the site.

Enhanced bioremediation of PCE involves the injection of a food source for microbes to stimulate the biodegradation of PCE. Like other in-situ technologies, enhanced bioremediation requires that good distribution of injected fluids be achieved, although not to the extent required by in-situ chemical oxidation or AS/SVE. Like chemical oxidation, bioremediation occurs in the aqueous phase, which means that bioremediation must continue until NAPL has fully dissolved. However, bioremediation additives do not persist for more than a few years, and thus cannot complete the remediation of the site, because NAPL dissolves over the course of decades. For that reason, enhanced bioremediation of the site is considered infeasible.

Moreover, the stringent cleanup criteria for the site require a greater than 99.9% reduction in contaminant concentration, which is a treatment objective that cannot realistically be anticipated under the best circumstances, regardless of technology. The combination of DNAPL, low-permeability soils, and stringent groundwater cleanup standards make it infeasible to remediate the site using any technology. Similar sites are typical of those sites where it has been determined that it is technically impracticable to complete remediation. Such technical impracticability determinations have been made by USEPA and other agencies without consideration of costs, where

the best efforts of large corporations or the federal government have been inadequate to achieve cleanup. Where DNAPL, low-permeability soils, and stringent cleanup criteria exist, there is no feasible engineering approach to achieving a Permanent Solution at the site.

## OPINION

It is my opinion that it is not feasible to achieve GW-1 groundwater cleanup standards at the site based on an evaluation of technical feasibility as described previously but that it will be feasible to achieve a condition of No Substantial Hazard. For that reason, the appropriate remedial action at the Wayland Cleaners site is one that will achieve a Temporary Solution as documented in a Class C RAO.

## RECOMMENDED ACTIONS

Based on this evaluation a condition of No Significant Risk does not exist at the Wayland Cleaners site. As discussed previously, when a condition of No Significant Risk does not exist, a remedial action is required in order to achieve a Permanent Solution if it is feasible. Achieving a Permanent Solution at the site is not feasible. For that reason, it will be necessary to achieve a Temporary Solution and complete the requirements for a Class C RAO. The steps required to submit a Class C RAO include the following:

Based on the information reviewed and the evaluation presented above, the following items are recommended:

- Conduct a Method 3 Risk Evaluation of the Wayland Cleaners building and downgradient buildings to determine if any unacceptable risks, including those associated with inhalation of indoor air, are present.

- Conduct several additional rounds of groundwater sampling from some of the on-Site monitoring wells and surface water locations to identify a baseline.

- Implementation of actions to continue to address impacted groundwater in the basements at 304 and 310 Boston Post Road properties. It is expected that this activity will also address potential exposures to COC in indoor air.

The estimated cost to complete this scope of work is as follow:

- Planning & Project Management ............................................................. $5,300
- Method 3 Risk Assessment
    - Soil Gas Investigation ................................................................. $10,500
    - Risk Characterization .................................................................. $20,000
- Site Reconnaissance and Well Location .................................................. $1,500
- Groundwater Monitoring ......................................................................... $9,000

- Implementation of Systems to address groundwater in basements (raising basement floors).................................................................................. $25,000
- Activity and Use Limitations...................................................................... $5,400
- <u>Response Action Outcome</u> ..................................................................... $10,500
  **Total**................................................................................................. **$87,200**

The risk characterization to be performed for the site will include an evaluation of the migration of COC in groundwater using a fate and transport model to determine if higher VOC concentrations in groundwater might impact the downgradient occupied buildings and the stream. The model will help determine whether PCE and other contaminants dissolved in groundwater have reached steady state. Steady state is a condition in which COC will not travel any further than they have already been detected. If it is determined that COC in groundwater have not reached steady state, remedial actions to address continuing sources of COC may be necessary. In order to address this possibility, a cost estimate to use in situ oxidation to remediate soil near the Wayland Cleaners building has been developed. As discussed previously, this remedial action will not achieve groundwater cleanup standards at the site. The estimated cost of implementing in situ oxidation is $114,400.

**DOCUMENTS NOTED IN THIS OPINION**:

(1)     MyKro Water, Inc., Phase I Initial Site Investigation Report, dated April 2004.

(2)     Ambient Engineering, Inc., Phase II Comprehensive Site Assessment, Phase III Identification, Evaluation and Selection of Remedial Action Alternatives and Remedial Action Plan, dated April 2006.

(3)     Massachusetts Department of Environmental Protection, DEP Response to May 28, 2003 letter to Rubin and Rudman LLP, dated July 2, 2003.

**ATTACHMENT A**

**CV – ROBERT CATALDO**

**ROBERT M. CATALDO, PG, LSP**
**22 Parkwood Drive**
**Pepperell, Massachusetts  01463**
**(978) 433-5404 Home/(508) 864-4515 Mobile**

---

## WORK EXPERIENCE

**ENSR/Fugro/IEP        Vice President/Senior Hydrogeologist        1989-Present**

Currently part of the newly-created Project Management Department, which is responsible for ENSR's initiative for standardization of project management, SOPs, and other company protocols and procedures.

Manager of the Petroleum and Property Services department.  Responsible for the oversight, management and sales goals for over 50 technical, financial and administrative personnel in three offices.  Annual sales revenues of ~$7 million.

Program Manager, 7-Eleven National Alliance form 1989 until 2005.  Responsible for over 50 technical, financial and administrative personnel located in 10 offices throughout the eastern and mid-western regions.  Annual sales revenues of $8 million and cumulative revenues of ~ $100 million.

**Areas of Operation**:   Eastern, Mid-Western, Southern United States, Caribbean, Italy and the Philippines.

**O.H. Materials, Corp.                 Hydrogeologist                          1987-1989**

Project Manager, hazardous waste assessment and remediation of petroleum, chemicals, metals, PCBs and solid waste.  Emergency responder/supervisor for petroleum and chemical releases.

**Areas of operation:** New England, New York, New Jersey, Pennsylvania and Michigan

**Chevron USA, Inc                  Petroleum Geologist/Geophysicist 1981-1986**

Development and exploration geologist, and geophysicist for offshore and onshore oil and gas reserves.

**Areas of Operation:** Offshore Louisiana and Texas, and Onshore Texas

**Syracuse University                    Teaching Assistant                    1978-1980**

## EDUCATION

**University of Massachusetts, Lowell**                    **2006-Present**

   Coursework towards PhD in Geology/Marine Sciences

**University of Southwestern Louisiana**                    **1981-1982**

   Post-Master Coursework in Geophysics

**Syracuse University**                    **1978-1980**

   Master of Science – Geology.  Thesis: Longshore Transport of Sediments along the New Jersey Coastline

**Brooklyn College**                    **1973-1978**

   Post-Bachelor coursework - Geology
   Bachelor of Arts - Economics

**Staten Island Community College**                    **1971-1973**

   Associate of Science

## LICENSES/CERTIFICATIONS

   Massachusetts Licensed Site Professional #9635
   Wisconsin Professional Geologist #257-013
   Pennsylvania Professional Geologist #2360-G
   Delaware Professional Geologist #S4-0000948
   New Hampshire Professional Geologist #PG 597
   Arkansas Professional Geologist #820

## PUBLICATIONS

Wagner, K.J. and R. Cataldo. 1997. Achieving multiple compliance objectives through a storm water pollution prevention plan.  Massachusetts Environment, Spring 1997.

Overcoming MTBE Myths, Cataldo, R., LSP and Moyer, E., PhD, PE, Environmental Protection, May 2001, pages 24 - 27,

Remediation of Releases Containing MTBE at Gas Station Sites, Cataldo, R., PG, LSP and Moyer, E., PhD, PE, Contaminated Soil, Sediment & Water, Spring 2001, pages 87-90.

Remediation of Releases Containing MTBE at Gasoline Station Sites – ENSR International's Experience, Cataldo, R., PG, LSP, MTBE Remediation Handbook, edited by Moyer, E. and Kostecki, P. 2003

Geophysics as a Risk Management Tool for Environmental Due Diligence: Japitana, Jesse and Cataldo, Robert, PG, LSP, Indiana NEWs, Air & Waste Management Association, January 2006, pages 12-13.

**ATTACHMENT B**

**LIST OF REVIEWED DOCUMENTS**

**ATTACHMENT B**
**WAYLAND, MASSACHUSETTS REFERENCE LIST**

January 18, 1996. Massachusetts Department of Environmental Protection. "First Compliance Inspection Evaluation"

June 12, 2002. Massachusetts Department of Environmental Protection. "Wayland Cleaners & Launderers, Inc. Request for Information Pursuant to M.G.L. ch. 21E, Sections 2,4, & 8."

September 10, 2002. Massachusetts Department of Environmental Protection. "September 03, 04, and 05, 2002 DEP Phone Logs and September 6, 2002 Property Visit."

October 21, 2002. Massachusetts Department of Environmental Protection. "Notice of Noncompliance."

November 15, 2002. Wayland Cleaners & Launderers, Inc. "Certification of Submittal-Request for Information Response."

December 18, 2002. Massachusetts Department of Environmental Protection. "Request for Property Access."

January 27, 2003. Massachusetts Department of Environmental Protection. "January 2003 DEP Field Work and Results."

April 9, 2003. Massachusetts Department of Environmental Protection. "Notice of Responsibility."

May 6, 2003. Coler & Colantonio, Inc. "Proposal for Services: Lined Environmental Research & Reconnaissance."

May 28, 2003. Rubin and Rudman LLP. "Response to Notice of Responsibility."

June 2, 2003. Massachusetts Department of Environmental Protection. "Wayland Cleaners & Launderers, Inc. DEP Response to May 28, 2003 Letter."

June 3, 2003. Rubin and Rudman LLP. "Notice of Claim, Demand for Defense/Coverage-298 Boston Post Road, Wayland MA."

July 10, 2003. Wayland Cleaners & Launderers, Inc. "Supplemental Response to Request for Information."

July 18, 2003. Susan J. Crane, Attorney at Law. "Notification of Legal Representation- Wayland Cleaners and R & E Realty Trust."

September 2003. MyKro Waters, Inc. "Environmental Site Assessment for 298 Post Road, Wayland, MA RTN#3-0022753

September 18, 2003. Environmental Data Resources, Inc. "The EDR Radius Map with Geocheck."

October 27, 2003. The RETEC Group, Inc. "Re: Review of Historical Files."

April 2004. MyKro Waters, Inc. "Phase I Initial Site Investigation Report for 298 Post Road, Wayland, MA PTN #3-0022753."

May 26, 2004. Massachusetts Department of Environmental Protection. "Memorandum Re: BWSC Permit Review."

January 16, 2004 Massachusetts Department of Environmental Protection. "DEP Review of September 2003 MyKroWaters Site Assessment Report."

February 3, 2005. Ambient Engineering, Inc. "Phase II Scope of Work."

April 19, 2005. Ambient Engineering, Inc. "Scope of Services."

April 29, 2005. Rubin and Rudman LLP. "Status Update Phase II Site Assessment."

November 8, 2005. Coler & Colantonio, Inc. "Proposed Alternatives for Duds Cleaners."

February 14, 2006 Massachusetts Department of Environmental Protection. "Notice of Responsibility."

March 1, 2006. Rubin and Rudman LLP. "Status Update of Defense."

March 2006. Sanborn, Head & Associates. "Downgradient Property Status Opinion-304 Boston Post Rd."

March 2006. Ambient Engineering, Inc. "Immediate Response Action (IRA) Plan and Imminent Hazard (IH) Evaluation."

April 2006. Ambient Engineering. "Phase II Comprehensive Site Assessment, Phase III Identification, Evaluation and Selection of Remedial Action Alternatives and Remedial Action Plan."

April 13, 2004. MyKro Waters, Inc. "Notices to be Published."

May 10, 2006. Ambient Engineering. "Proposed Scope of Services: Remedial Action and Monitoring."

May 24, 2006. OHI Engineering, Inc. "Environmental Review-Wayland Cleaners."

June 6, 2006. Ambient Engineering, Inc. "Re: Limited Soil Subsurface Investigation."

June 7, 2006. Ambient Engineering, Inc. "Re: Cost Estimate Request."

June 7, 2006. Susan J. Crane, Attorney at Law. "Comparison of Ambient and OHI Remediation Proposals for Wayland Cleaners."

June 27, 2006. Ambient Engineering, Inc. "Remedial Alternatives for Plume Treatment."

July 5, 2006. Rubin and Rudman LLP. "Status of Defense-Wayland Cleaner Site RTN: 3-25637."

July 27, 27, 2006. Ambient Engineering, Inc. "Sump Water Remediation Work Plan: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

July 28, 2006. Susan J. Crane, Attorney at Law. "Comparison of Ambient and OHI Remediation Proposals for Wayland Cleaners."

August 2006. Ambient Engineering, Inc. "Modified Immediate Response Action (IRA) Plan and Imminent Hazard (IH) Evaluation: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

September 18, 2006. Ambient Engineering, Inc. "August 2006 Remedial Monitoring Report: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

November 30, 2006. Ambient Engineering, Inc. "Permission to Discharge Sump Water into Unnamed Stream at 326 Boston Post Road, Wayland, Massachusetts."

December 2006. Ambient Engineering, Inc. "Immediate Response Action Status Report #2: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

January 11, 2007. Ambient Engineering, Inc. "Pilot Test Results."

January 23, 2007. Ambient Engineering, Inc. "December 2006 Remedial Monitoring Report: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

February 5, 2007. United States Environmental Protection Agency Region 1. "Re: Wayland Cleaners site at 304 Boston Post Road, Wayland, MA 01778: Authorizations # MAG910287."

February 21, 2007. Ambient Engineering, Inc. "January 2007 Remedial Monitoring Report: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

February 2007. Ambient Engineering, Inc. "Immediate Action Plan: Modification No. 2: Wayland Cleaners 298 Boston Post Road, Wayland, Massachusetts. RTN #3-22753 and 3-25637."

March 9, 2007. The RETEC Group, Inc. "Memorandum Re: Former Kleenit Drycleaner."

March 28, 2007. Ambient Engineering, Inc. "February 2007 Remedial Monitoring Report: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

April 30, 2007. Ambient Engineering, Inc. "April 2007 Remedial Monitoring Report: 304 and 310 Boston Post Road, Wayland, MA (RTN #3-22753)."

April 30, 2007. Coler & Colantonio, Inc. "Memorandum Re: Wayland Dry Cleaner Investigation Activities."

July 9, 2007. Ambient Engineering, Inc. "Scope of Services: Removal of Contaminated Sediments."

July 25, 2007. Rubin and Rudman LLP. "Proposals for Age-Dating."

October 23, 2007. Ambient Engineering, Inc. "Memorandum- Summary of Basement Mitigation Options."